IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON & PETER DeLUCA | Case No. 13-2635 |
| Plaintiffs, | Judge |
| vs. | |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Now come the Plaintiffs, ALAN CARLSON and PETER DeLUCA, by their attorney, Michael Bartolic, THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the defendants, they state:

### NATURE OF THE ACTION

1. This is a case about an employer purporting to provide severance benefits to employees through a written instrument, yet deciding to outright deny the cash payment portion of those benefits to the laid off employees simply because of how much severance the employees earned based on their years of service, meanwhile paying the continued medical and dental coverage benefits under the plan.

2. Alan Carlson and Peter DeLuca worked for Northrop Grumman Technical Services, Inc., a subsidiary of Northrop Grumman Corporation, for 35 and 38 years respectively. Most recently, Alan Carlson worked as a Program Manager of Threat Simulation Systems in the

1

Technical Services Sector. Peter DeLuca worked as an Engineering Manager in the Technical Services Sector.

3. Northrop Grumman Corporation laid off Alan Carlson, Peter DeLuca, and two other people in their sector at the same time as part of a Reduction in Force. The other two individuals had 32 years of service, and 25 years of service with the company.

4. After terminating Alan Carlson's and Peter DeLuca's employment, and the employment of the others in their Sector, Northrop Grumman did not provide severance to any of them, though it did continue their medical, dental, and vision benefits coverage in accordance with the terms of the severance plan. Northrop Grumman simply did not want to pay out the cash portion of the benefits, and prevented a condition from occurring, which it then blamed for why it would not pay the severance.

5. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and in the alternative as a breach of contract. Plaintiffs bring this action against both the Northrop Grumman Severance Plan, and Northrop Grumman Corporation, seeking (1) remedies under 29 U.S.C. § 1132(a)(1)(B) for benefits due pursuant to the terms of an employee benefit plan governed by ERISA, (2) remedies under 29 U.S.C. § 1132(a)(3) for Northrop Grumman Corporation's actions in interfering with Plaintiffs' protected rights in violation of ERISA, 29 U.S.C. § 1140, (3) breach of contract under state law (assuming ERISA does not apply), and (4) costs and attorneys' fees.

## JURISDICTION AND VENUE

6. Jurisdiction of the Court is based upon federal question with respect to the ERISA based claims—in particular, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1140. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court

2

jurisdiction over actions that arise under the laws of the United States. Jurisdiction with respect to the breach of contract claim is based upon diversity pursuant to 28 U.S.C. § 1332, which gives the District Court jurisdiction over actions that arise between citizens of different States where the amount in controversy is in excess of $75,000.

7. Venue is proper in the Northern District of Illinois. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391(b)(2).

## THE PARTIES

8. Plaintiff, ALAN CARLSON (hereinafter "Carlson"), is a former employee of Northrop Grumman Technical Services, Inc., a subsidiary of Northrop Grumman Corporation. By virtue of this employment, he is and at all relevant times was a participant in the Northrop Grumman Severance Plan.

9. Plaintiff PETER DeLUCA (hereinafter "DeLuca") is a former employee of Northrup Grumman Technical Services, Inc., a subsidiary of Northrop Grumman Corporation. By virtue of this employment, he is and at all relevant times was a participant in the Northrop Grumman Severance Plan.

10. The NORTHROP GRUMMAN SEVERANCE PLAN (hereinafter the "Plan") purports to be an employee benefit plan. The terms of the purported employee benefit plan are contained in the document attached hereto and thereby incorporated herein by reference as Exhibit 1. The Plan is administered in California, and for purposes of diversity jurisdiction is a resident of California. The denial of Plaintiffs' severance benefits took place in Illinois, making the Plan subject to jurisdiction in Illinois.

11. Defendant NORTHROP GRUMMAN CORPORATION (hereinafter "Northrop Grumman") is the parent company of Plaintiffs' former employer. In addition, Northrop Grumman purports to be the sponsor of the Plan and its administrator, delegating its responsibility to its own Chief of Human Resources. Northrop Grumman is headquartered in Virginia, and has its principal place of business in Virginia. Northrop Grumman maintains an office in Rolling Meadows, Illinois, which is the office where Plaintiffs worked. Northrop Grumman is financially responsible for paying any benefits awarded under the Plan.

**COUNT I—ERISA 29 U.S.C. § 1132(a)(1)(B) CLAIM FOR BENEFITS DUE AND CLARIFICATION AS TO RIGHTS UNDER THE PLAN (AGAINST ALL DEFENDANTS)**

12. Plaintiffs reallege and incorporate by reference herein paragraphs 1–11 of the preceding allegations.

13. Plaintiffs plead this count in the alternative to, and not in addition to, Counts II and III.

14. The Plan is an employee welfare benefit plan providing severance benefits within the meaning of 29 U.S.C. § 1002(1) and (3).

15. The Plan states an employee is eligible under the Plan if "you work in the United States, you are regularly scheduled to work at least 20 hours per week and you have been notified in writing by your management that you are covered by this Plan. If you are represented by a union you are eligible only if your collective bargaining agreement provides for participation in this plan. The fact that you received this document does not necessarily mean that you are eligible; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to you individually by name."

4

16. The Plan specifically excludes certain classes of employees, none of which Plaintiffs were a member.

17. On July 12, 2012, Northrop Grumman notified Plaintiffs that their employment would be terminated. Plaintiffs' last day worked for Northrop Grumman was August 3, 2012.

18. Neither Carlson nor DeLuca received a memo from a Vice President of Human Resources advising he would receive severance benefits. The Plan states nothing about which employees will receive such a memo for a Vice President of Human Resources.

19. Because ERISA requires that any plan, fund, or program have a class of participants or beneficiaries that a reasonable person could ascertain, the Plan administrator cannot enforce the purported requirement that a Vice President deliver a memo to a terminated employee in order to render that former employee a participant. *See* 29 U.S.C. § 1104(a)(1)(D) (only allowing fiduciaries to administer the plan in accordance with the Plan documents to the extent the terms are consistent with ERISA).

20. A plan provision that purports to allow the Plan administrator to select—on an ad hoc basis, in its discretion, and subject to its whims—who will be a participant in the Plan is not consistent with ERISA.

21. Under the Plan, an employee eligible for severance benefits receives one week of pay per year of service, with no maximum, plus continued medical, dental, and vision benefits, for up to 26 weeks.

22. Carlson had 35 years of service, DeLuca had 38 years of service, and the other two employees in Technical Services whose claims for severance Defendants denied had 32 and 25 years of service.

23. In 2011, three employees who worked in the same sector as Plaintiffs were laid off and each received all severance benefits under the Plan, the cash payment and continued medical, dental, and vision benefits.

24. In particular, in March 2011, Northrop Grumman terminated the employment of James Bergstrand in connection with a Reduction in Force. Mr. Bergstrand had 37 years of service, and Northrop Grumman paid him 37 weeks of severance pay under the Plan, plus continued medical, dental and vision coverage for 26 weeks.

25. After Northrop Grumman terminated Plaintiffs' employment, on August 23, 2012, Carlson claimed the severance benefits. On August 27, 2012, DeLuca claimed his severance benefits as well.

26. Northrop Grumman provided both Plaintiffs with the continued medical, dental, and vision coverage under the terms of the Plan.

27. Nothing in the Plan states it may provide some of the severance benefits under the Plan, but not all of them.

28. Despite providing Plaintiffs with some of the benefits under the terms of the Plan, on November 9, 2012, Northrop Grumman made an adverse benefit determination, as that term is defined in 29 C.F.R. § 2560.503-1, with respect to both Plaintiffs' claims insofar as those claims concerned the cash payment portion of the severance benefits. Northrop Grumman's stated reason for denying the benefits was that a Vice President of Human Resources did not select Plaintiff to received benefits under the Plan. (Ex. 2).

29. On December 3, 2012, DeLuca timely appealed the adverse benefit determination. On January 3, 2013, Carlson timely appealed the same. (Ex. 3).

30. On February 1, 2013, Northrop Grumman upheld its original adverse benefit determinations of Carlson's and DeLuca's claims, resulting in a final administrative denial for all Plaintiffs. (Ex. 4).

31. Plaintiffs met all required conditions to receive benefits under the Pan.

32. To the extent required to do so, Plaintiffs properly exhausted any required administrative claims procedure prior to filing suit in Court.

33. This complaint is timely filed under any statute of limitations or limitations period found in the Plan.

34. Northrop Grumman's denials of Plaintiffs' claims for benefits were contrary to the terms of the Plan and contrary to law.

35. Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

36. As a direct and proximate result of Northrop Grumman's denial of Plaintiffs' claims for benefits, there has been created a case of actual controversy by and between the parties hereto entitling Plaintiffs to a declaration of rights clarifying the benefits to which they are entitled under the Plan.

WHEREFORE, Plaintiffs pray for the following relief as to this count of the complaint:

A. That the Court enter judgment in favor of Plaintiffs and against the Defendants, and award Plaintiffs all benefits due with interest;

B. That the Court award Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

C. That Plaintiffs recover any and all other relief to which they may be entitled, as well as costs of suit.

### COUNT II—VIOLATION OF 29 U.S.C. § 1140
### (AGAINST NORTHROP GRUMMAN)

37. Plaintiffs reallege and incorporate by reference herein paragraphs 1–11 of the preceding allegations.

38. Plaintiffs plead this count in the alternative to, and not in addition to, Counts I and III.

39. Title 29 U.S.C. § 1140, provides in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pensions Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

40. Plaintiffs are members of the class protected by 29 U.S.C. § 1140 by reason of their participation in the Plan.

41. Participants are empowered to bring suit to redress 29 U.S.C. § 1140 violations via § 1132(a)(3).

42. The Plan is an employee welfare benefit plan providing severance benefits within the meaning of 29 U.S.C. § 1002(1) and (3).

43. The Plan states an employee is eligible under the Plan if "you work in the United States, you are regularly scheduled to work at least 20 hours per week and you have been notified in writing by your management that you are covered by this Plan. If you are represented by a union you are eligible only if your collective bargaining agreement provides for

8

participation in this plan. The fact that you received this document does not necessarily mean that you are eligible; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to you individually by name."

44. The Plan specifically excludes certain classes of employees, none of which Plaintiffs were a member.

45. On July 12, 2012, Northrop Grumman notified Plaintiffs that their employment would be terminated. Plaintiffs' last day worked for Northrop Grumman was August 3, 2012.

46. Neither Carlson nor DeLuca received a memo from a Vice President of Human Resources advising he would receive severance benefits.

47. Carlson consistently received positive reviews for his performance at Northrop Grumman. Upon information and belief, DeLuca similarly received positive performance reviews.

48. Upon information and belief, the reason Northrop Grumman did not have a Vice President of Human Resources deliver a memo to Plaintiffs, or the other individuals in their sector who were terminated at the same time as Plaintiffs, was because each of them qualified for a high number of weeks of severance pay under the Plan.

49. Carlson had 35 years of service, DeLuca had 38 years of service, and the other two employees in Technical Services whose claims for severance Defendants denied had 32 and 25 years of service.

50. In 2011, three employees who worked in the same sector as Plaintiffs were laid off and each received severance benefits under the Plan.

9

51. In particular, in March 2011, Northrop Grumman terminated the employment of James Bergstrand in connection with a Reduction in Force. Mr. Bergstrand had 37 years of service, and Northrop Grumman paid him 37 weeks of severance pay under the Plan, plus continued medical, dental and vision coverage for 26 weeks.

52. Northrop Grumman discriminated against Plaintiffs in not delivering to them the memo from a Vice President in order to interfere with their attainment of severance benefits.

53. The Director of Human Resources, Demile Robinson Gilmore, explained in an email to Margaret Collin, Retirement Administrator, on September 21, 2012 that Carlson, and other employees in his sector, were not offered severance and not given the memo by a Vice President of Human Resources because the sector's new contract is funded at a lower level than the expiring contract. (Ex. 5).

54. Northrop Grumman stated in an initial draft of the adverse benefit determination on Carlson's claim—before being edited by the Plan's counsel—that the sector in which Carlson worked did not perform well financially, which was why Carlson was not selected for severance. (Ex. 6).

55. These reasons for not offering the severance, however, were the exact same reasons stated in Carlson's personnel records as the reason for the layoff of the four individuals in the Technical Services sector, including Carlson and DeLuca. (Ex. 7).

56. Northrop Grumman, however, did not assert the non-delivery of a memo from a Vice President of Human Resources in order to deny the continued medical, dental, and vision coverage to Plaintiffs. Northrop Grumman provided Plaintiffs with that portion of the Plan benefits.

57. The foregoing conduct constitutes unlawful interference with Plaintiffs' rights to attain benefits protected by 29 U.S.C. § 1140.

58. Because employers may not simply deny claims for benefits out of hand, they also may not prevent conditions for receiving benefits from occurring merely to avoid paying the benefits. *See Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir. 1995).

59. As a direct and proximate result of Northrop Grumman's unlawful and discriminatory acts, Plaintiffs suffered a loss of income, including past-due severance benefits under the Plan.

60. Because Northrop Grumman unlawfully interfered with Plaintiffs' right to attain benefits under the Plan, Northrop Grumman is liable to Plaintiffs for all past-due severance benefits under the Plan.

WHEREFORE, Plaintiffs pray for the following relief as to this count of the complaint:

A. That the Court declare Northrop Grumman liable for the interference with Plaintiffs' rights under the Plan;

B. That the Court order Northrop Grumman to pay Plaintiffs the value of the severance pay denied, plus prejudgment interest on all benefits that should have been paid but were not paid;

D. That the Court award Plaintiffs reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

F. That Plaintiffs recover any and all other relief to which they may be entitled, as well as the costs of suit.

11

## COUNT III—BREACH OF CONTRACT
## (AGAINST NORTHROP GRUMMAN)

61. Plaintiffs reallege and incorporate by reference herein paragraphs 1–11 of the preceding allegations.

62. Plaintiffs plead this Count in the alternative to, and not in addition to, Counts I and II.

63. The Plan states an employee is eligible under the Plan if "you work in the United States, you are regularly scheduled to work at least 20 hours per week and you have been notified in writing by your management that you are covered by this Plan. If you are represented by a union you are eligible only if your collective bargaining agreement provides for participation in this plan. The fact that you received this document does not necessarily mean that you are eligible; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to you individually by name."

64. The Plan specifically excludes certain classes of employees, none of which Plaintiffs were a member.

65. On July 12, 2012, Northrop Grumman notified Plaintiffs that their employment would be terminated. Plaintiffs' last day worked for Northrop Grumman was August 3, 2012.

66. Plaintiffs did not receive a memo from a Vice President of Human Resources advising them they would receive severance benefits.

67. Upon information and belief, the reason Northrop Grumman did not have a Vice President of Human Resources deliver a memo to Plaintiffs, or the other two individuals in the

12

Technical Services sector who were terminated at the same time as Plaintiffs, was because each of them qualified for a high number of weeks of severance pay under the Plan.

68. Carlson had 35 years of service, DeLuca had 38 years of service, and the other two employees in Technical Services whose claims for severance Defendants denied had 32 and 25 years of service.

69. In 2011, three employees who worked in the same sector as Plaintiffs were laid off and each received severance benefits under the Plan.

70. In particular, in March 2011, Northrop Grumman terminated the employment of James Bergstrand in connection with a Reduction in Force. Mr. Bergstrand had 37 years of service, and Northrop Grumman paid him 37 weeks of severance pay under the Plan, plus continued medical, dental and vision coverage for 26 weeks.

71. Because the Plan lacks a reasonably ascertainable class of intended participants or beneficiaries, the Plan is not governed by ERISA. *See Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982); *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811–12 (7th Cir. 1994) (following the *Dillingham* test).

72. The Plan is therefore a contract between the parties, supported by offer, acceptance, and consideration.

73. Northrop Grumman honored the portion of the contract that obligated it to provide continued medical, dental, and vision coverage, but did not honor the portion providing the cash portion of the benefits purportedly because it did not itself deliver Plaintiff a memo from a Vice President of Human Resources.

13

74. By intentionally preventing a condition for receipt of severance from not occurring, and then using that non-occurrence as a purported basis to not pay the severance, Northrop Grumman breached the implied covenant of good faith and fair dealing.

WHEREFORE, Plaintiffs pray for the following relief as to this count of the complaint:

A. That a finding be entered that Northrop Grumman breached the implied covenant of good faith and fair dealing of the Plan;

B. That Plaintiffs be awarded as damages the full value of all the severance benefits in the Plan;

C. That Plaintiffs be awarded their costs of maintaining this action, including reasonable attorneys' fees and all costs and expenses of suit;

D. That Plaintiffs be awarded such other and further relief as this Court deems appropriate.

Respectfully Submitted,

By: /s/ Michael Bartolic
One of the Attorneys for the Plaintiff

Michael Bartolic
The Law Offices of Michael Bartolic, LLC
29 S. LaSalle Street
Suite 1120
Chicago, Illinois 60603
Tel: 312-635-1600
Fax: 312-635-1601
ARDC No. 6285708

14