**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALAN CARLSON & PETER DELUCA | Case No. 13-2635 |
| Plaintiffs, | Hon. Judge Joan H. Lefkow |
| vs. | |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | **BRIEF IN SUPPORT** |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT**

---

Nancy G. Ross (6190243)
Sam P. Myler (6309755)
MCDERMOTT WILL & EMERY LLP
227 W. Monroe
Chicago, IL 60606
Tel: 312.372.2000
Fax: 312.984.7700

---

## INTRODUCTION

Plaintiffs Alan Carlson and Peter DeLuca (together, "plaintiffs") allege that Northrop Grumman Corporation ("Northrop") and the Northrop Grumman Severance Plan (the "Plan") have failed to pay them benefits that they claim they are owed under the terms of the Plan. They have brought an ERISA § 1132(a)(1)(B) claim, or alternatively if ERISA does not apply, a state-law breach of contract claim to enforce this alleged promise. Also in the alternative, plaintiffs allege that if benefits are not owed under the Plan, it is because Northrop interfered with their entitlement to them in violation of ERISA § 510, 29 U.S.C. § 1140. None of these claims provide a basis for relief and all should be dismissed with prejudice.

Plaintiffs readily admit that they have failed to satisfy the Plan's unambiguous condition that severance benefits are only available to those employees Northrop management has selected as eligible for their receipt. Plaintiffs' argument that this condition is unenforceable because it conflicts with ERISA's provisions is irreconcilable with the large body of case law which holds that plan sponsors are free to design welfare plans that delegate eligibility decisions to the discretion of their managers. Therefore, plaintiffs' § 1132(a)(1)(B) claim should be dismissed. With respect to their § 510 claim, plaintiffs fail to identify either the adverse employment action or an entitlement to benefits such a claim requires. Finally, plaintiffs' state law breach of contract claim is both preempted by ERISA, and fundamentally fails to establish the existence of a contract that could be breached. This claim should be dismissed as well.

## BRIEF STATEMENT OF THE FACTS

Since July 1, 2002, Northrop has administered the Northrop Grumman Severance Plan. (Dkt. # 1, Complaint, Ex. # 1 at 10). The Plan, as amended and restated on January 1, 2012, was designed to provide Northrop with the ability to select from among certain classes of employees

those that it wished to offer severance benefits. Under its terms, if Northrop wished to offer particular employees severance, a Vice-President of Human Resources was required to execute a memorandum notifying those employees that they were eligible. (*Id.* at 4). Only if the employee received such a memorandum and satisfied a number of other conditions for receiving benefits, including the execution of a Confidential Separation Agreement and General Release, would they be entitled to benefits of the type and in the amount provided for by the Plan. (Dkt. # 1, Complaint, Ex. 1 at 3). The Plan Administrator was given "sole absolute discretion over claims and appeals issue and determination." [*sic*] (*Id.* at 8.) Finally, the Plan provided that it would be administered pursuant to, and participants would enjoy the protections of, ERISA. (*Id.* at 10).

On August 3, 2012, Northrop terminated the employment of plaintiffs, two management-level employees, as part of a Reduction in Force. (Dkt. # 1, Complaint ¶ 3). Plaintiffs submitted claims for severance benefits that they believed they were owed under the Plan. (*Id.* ¶ 28). The Plan Administrator denied their claims on the basis that neither of them had received, nor were they intended to receive, the required memorandum from one of Northrop's Vice-Presidents of Human Resources notifying them that they were eligible for severance benefits under the Plan. (Dkt. #1, Complaint, Ex. # 2). The denial of their claims was upheld by the Corporate Severance Plan Review Committee—the body tasked with hearing employees' administrative appeals for benefits under the Plan—again, on the basis that plaintiffs had not received a memorandum from a Vice-President of Human Resources designating them as eligible for severance benefits. (*Id.* at Ex. # 4).

After exhausting their administrative remedies, plaintiffs filed their three-count complaint against Northrop and the Plan alleging, in the alternative, claims for: (1) benefits due and the clarification of rights under the plan (the "§ 1132(a)(1)(B) claim"); (2) improper interference

with their entitlement to benefits (the "§ 510 claim"); and (3) state-law breach of contract. (Dkt. # 1, Complaint). These claims are all similarly premised on the argument that Northrop either breached its agreement with plaintiffs or violated ERISA by failing to provide them severance benefits under the Plan. (*Id.*).

## ARGUMENT

Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The facts alleged therein, even when accepted as true and construed in the light most favorable to plaintiffs, *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010), fail to state a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), a violation of 29 U.S.C. § 1140, or a state-law claim for breach of contract.

## I.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR BENEFITS DUE UNDER THE TERMS OF THE PLAN

29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a plan participant "to recover benefits due to him ***under the terms of his plan***, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* (emphasis added). Prior to bringing a claim under § 1132(a)(1)(B), the plaintiff must exhaust all administrative remedies provided by the plan for appealing a denial of benefits. *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679 (7th Cir. 2002). As is the case with the Plan, when the administrator tasked with reviewing claims is given discretionary authority to determine a participant's eligibility for benefits, the courts will defer to the administrator's decisions unless arbitrary or capricious. *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 15 (1989)). Because Defendants' denial of plaintiffs' claims was neither arbitrary nor capricious, and was in fact the

*only* reasonable application of the Plan's unambiguous terms, plaintiffs' § 1132(a)(1)(B) claims should be dismissed.

The Plan's preamble unequivocally states: "This is a Severance Plan that is being offered to *selected* employees of Northrop Grumman Corporation . . . . The fact that you have received this document does not necessarily mean that you are eligible for severance benefits."[1] (Dkt. # 1, Complaint Ex. # 1 at 2) (emphasis added). Eligibility for severance benefits requires that the employee satisfy the "Conditions for Receiving Benefits," (*Id.* at 3), which include the following: the employee must (1) be laid-off, (2) sign a Confidential Separation Agreement and General Release of claims against the Company, and most importantly, (3) "be designated as eligible for [the Plan] by a Vice-President of Human Resources (or his/her designee)." (*Id.*) The Plan terms provide that the Vice-Presidents of Human Resources are to designate those employees that they select as eligible by providing each with a memorandum addressed to them personally and notifying them that they were being offered severance benefits. (*Id.*) The Plan design therefore enables Northrop, through its Vice-Presidents of Human Resources, to make case-by-case decisions with regards to whether severance is appropriate for any particular laid-off employee. As plaintiffs concede, neither of them received the required memorandum designating them as eligible. (Dkt. # 1, Complaint ¶ 18). Without this memorandum, which the Plan terms unambiguously required, the Plan Administrator reasonably denied plaintiffs' claims for benefits. (*Id.* ¶¶ 29, 30). *Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) ("Under the [arbitrary and capricious standard], an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language.").

---

[1]Attachments to the complaint become part of the complaint, and the court may consider those documents in ruling on a motion to dismiss. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

In an effort to avoid the consequences of the explicit plan terms requiring that participants be designated as eligible by a Vice-President of Human Resources, plaintiffs claim that this requirement and the discretion provided to Northrop to select eligible employees is inconsistent with ERISA and is therefore unenforceable. (*Id.* ¶¶ 19, 20.) As an initial matter, even if plaintiffs were correct, claims under § 1132(a)(1)(B) must be premised on the "terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A § 1132(a)(1)(B) claim does not permit a court to revise the plan terms and then enforce a new or different version of the plan. *See Gonzalez v. AutoZoners, LLC*, 860 F. Supp. 2d 333 (S.D. Tex. 2012) (holding that § 1132(a)(1)(B) does not permit a court to "estop, excise, or relax" a clear plan requirement that plaintiff failed to satisfy).

Furthermore, plaintiffs' incorrect argument fails to account for the numerous cases which have addressed this very issue and held that ERISA does not, nor was it intended to, dictate or limit the substance of welfare plans, including how benefits are calculated or beneficiaries are identified. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan."); *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."); *Krok v. University of Chicago*, 2012 WL 1117733 at *2 (N.D. Ill. 2012) ("ERISA . . . does not mandate that every employee is entitled to participate in a plan that an employer decides to offer."). Congress's concern with respect to welfare plans was ensuring that they were administered in a manner consistent with whatever promises employers made, not with requiring that employers make certain promises. Employers are free to design plans in which eligibility turns on a rigid

application of objective criteria, or as is the case with the Northrop Grumman Severance Plan, the discretionary business decisions of select company personnel.

The ability of employers to design welfare plans that delegate eligibility decisions to certain management level employees was explicitly addressed by the Seventh Circuit in *McNab v. General Motors Corp.*, 162 F.3d 959, 960 (7th Cir. 1998). In *McNab*, a group of former GM employees brought § 1132(a)(1)(B) claims challenging GM's decision to deny them early retirement benefits under a plan that allowed GM to grant or deny benefits to individual employees based solely on whether doing so was in "GM's best interest." *Id.* at 960. Similar to plaintiffs' claims that the Plan cannot allow a plan administrator to select "on an ad hoc basis, in its discretion, and subject to its whims—who will be a participant in the Plan," (Dkt. # 1, Complaint ¶ 20), the GM employees complained that GM could not select plan participants based on alleged "cronyism, whimsy and personal notions of honor, duty and fairness." *McNab*, 162 F.3d at 961. The Seventh Circuit held otherwise. The Court stated, "There's nothing wrong under ERISA with a system that gives plan administrators discretion. Subject to a few explicit rules in the statute, an employer may design a pension or welfare plan with features of its choosing." *Id.* at 962. And because "it is lawful to adopt a plan that gives discretion to senior managers, it must be lawful to *use* that discretion to evaluate what the 'best interests' of a firm are." *Id.* The Northrop Grumman Severance Plan was designed in a manner similar to the GM plan in *McNab* to allow Northrop's management flexibility and discretion to select which individuals should be offered severance. Having not been among those selected, plaintiffs were appropriately denied benefits under the unambiguous terms of the Plan. 29 U.S.C. § 1104(a)(1)(D) (requiring that a plan administrator administer the plan in accordance with the plan terms).

## II.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR IMPROPER INTERFERENCE WITH THE ATTAINMENT OF BENEFITS

Plaintiffs also claim that Defendants discriminated against them in violation of ERISA § 510 by not providing them with the memorandum required by the Plan.  That section of ERISA provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  As is clear from § 510, two essential elements of a claim for interference with the attainment of benefits are: (1) that the interference be a discriminatory or adverse employment action prohibited by that section, and (2) that the plaintiff is entitled to benefits under the Plan.  Plaintiffs have not identified a type of discriminatory or adverse employment action that can support a § 510 claim, nor can they establish an entitlement to benefits. As such, their § 510 claim should be dismissed.

### A.   Plaintiffs Have Failed to Identify an "Adverse Employment Action" Supporting Their § 510 Claim

Northrop's refusal to provide the required memorandum is not a type of adverse employment action prohibited by § 510.  It is well-recognized that a § 510 claim does not protect against all employer actions designed to interfere with the attainment of benefits.  *Teumer v. General Motors Corp.*, 34 F.3d 542, 544-45 (7th Cir. 1994).  Congress's concern when drafting § 510 was that employers would use their ability to alter the employment relationship to circumvent ERISA's provisions protecting employees' claims to benefits that were promised to them by their employers.  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990) ("Congress viewed [§ 510] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." (citing S. REP. NO. 93-127 at 35-36

(1973)). For this reason, courts require that the alleged interference implicate or alter the participant's "employment status," *Teumer*, 34 F.3d at 545, with the "prototypical" case under § 510 involving the termination of an employee to prevent them from attaining benefits. *Ingersoll-Rand Co.*, 498 U.S. at 143. When the alleged interference is not with the "employment relationship which gives rise to an individual's [benefit] rights," § 510 is not implicated. *Teumer*, 34 F.3d at 545 (quoting *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990)).

Plaintiffs admit that they were laid-off as part of a general reduction in force; they do not claim that they were terminated for the purpose of depriving them of severance benefits. Instead, plaintiffs allege that the discriminatory act upon which their § 510 claim is premised was Northrop's decision not to include them as among the employees eligible for those benefits. (Dkt #1, Complaint at ¶ 52.) Such an allegation, however, clearly does not affect their employment status or the employment relationship that existed between them and Northrop. As the Seventh Circuit has held, "a denial of eligibility, even if made in bad faith," is not an action that affects the plaintiff's employment status and therefore cannot provide the basis for a § 510 violation. *Teumer*, 34 F.3d at 545. Furthermore, the fact that other employees may have been treated more favorably, is irrelevant to a § 510 claim. *See McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 670 (7th Cir. 1993) (holding that disparate treatment of employees will not give rise to a § 510 claim when that disparate treatment is consistent with the terms of the plan). Plaintiffs' argument that the decision to not provide them benefits was a discriminatory or adverse employment action intended to deprive them of benefits is untenable and substantively nothing more than a repackaged claim for benefits allegedly due under the plan. Plaintiffs' § 1140 claim should be dismissed.

**B.      Plaintiffs Cannot Establish an Entitlement to Benefits Under the Plan that is Protected by § 510**

Furthermore, plaintiffs put the cart before the horse and claim that Northrop improperly interfered with their right to benefits when they have failed to establish that they were ever entitled to severance benefits.  The Plan specifically provided that, "Nothing in this Plan creates a vested right to benefits in any employee."  (Dkt. #1, Complaint Ex. # 1 at 10).    And plaintiffs' right to severance benefits, which depended on whether Northrop chose to provide them those benefits, was never established.  The Seventh Circuit has held that in order to state a § 510 claim, the employee must first establish that they were qualified for the denied benefits, and "[i]f *the plan itself* provides for discriminatory practices, such that they do not qualify for benefits under its terms, they cannot prevail on a § 510 claim."  *Ameritech Ben. Plan Committee v. Communication Workers of America*, 220 F.3d 814, 824 (7th Cir. 2000) (emphasis added).  Therefore, without the satisfaction of this prerequisite to the receipt of benefits, they had no entitlement protected by § 510.  *See, e.g.*, *Bailey v. U.S. Enrichment Corp.*, 2012 WL 484887 (S.D. Ohio 2012) ("Plaintiffs' § 510 claim falls well short of stating a claim for relief, primarily because as non-participants [in the severance plan], they have no right to severance benefits under the Plan.").

**III.      PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

**A.      Plaintiffs' State Law Breach of Contract Claim is Preempted by ERISA**

Plaintiffs' state law breach of contract claim is preempted by ERISA and should be dismissed.  ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  This expansive preemption provision is intended to create a uniform federal regulatory regime governing employee benefit plans and any state-law cause of action "that duplicates, supplements, or

supplants the ERISA civil enforcement remedy conflicts with the clear Congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004). ERISA will preempt a state law breach of contract claim if the claim requires the court to interpret or to apply the terms of an employee benefit plan. *Collins v. Ralson Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998).

Interpreting the Supreme Court's decision in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987), the Seventh Circuit has held that the "decisive inquiry" in determining whether a severance plan falls within ERISA's coverage is whether the plan requires an "ongoing administrative program to meet the employer's obligations." *Bowles v. Quantum Chemical Company*, 266 F.3d 622, 631 (7th Cir. 2001) (citing *Fort Halifax Packing Co., Inc.*, 482 U.S. at 7 n.5)). Periodic demands on an employer's assets, as opposed to a one-time lump-sum payment triggered by a single event that requires no administrative scheme whatsoever, weigh in favor of construing the employer's program for providing severance as an employee benefit plan for ERISA purposes. *Bowles*, 266 F.3d at 631. Additionally, the Seventh Circuit has held that severance payments are made pursuant to an ERISA plan when the administration of such payments requires the employer to make "nonclerical judgment calls" to determine an employee's eligibility. *Id.* at 632. All of these guideposts lead to the conclusion that Northrop's severance plan is an employee benefit plan governed by ERISA's regulatory and remedial scheme.

The terms of the Plan clearly create an "ongoing administrative program." The Plan, which Northrop has administered since July 1, 2002, is designed to coordinate potentially numerous grants of severance to various employees in Northrop's different divisions at different points in time. Under it, severance benefits are administered on uniform terms that are equally

applicable to all eligible employees. Both medical and cash benefits are calculated using a common formula that enables Northrop to budget for what are inevitably periodic demands on its assets by many employees at different times and under different circumstances. (Dkt. # 1, Complaint Ex. #1 at 5-6). Northrop cannot satisfy its severance obligations by "cutting a single check and making a single set of payments to all of its [employees covered by the plan] at once." *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998). Instead, the Plan requires Northrop to account and budget for payments at different times, in different amounts, and both in the form of a lump-sum (the cash payments) and continued benefits (the medical benefits). Northrop recognized the need to ensure that a plan of this size and complexity is administered properly, and toward this end, Northrop identified it as an ERISA plan, administered it in accordance with ERISA's provisions, and informed the participants of their ERISA rights in relation to the plan. (Dkt. # 1, Complaint ¶ 10).

Furthermore, the proper administration of the Plan involves much more than a "mechanical application" of its terms. *Bowles*, 266 F.3d at 631. With respect to both eligibility and the calculation of benefits owed under it, the Plan Administrator will only provide severance benefits to those employees that in its discretion it determines:

- Work at least 20 hours per week;
- Are not represented by a union whose collective bargaining agreement provides that its members are participants in the Plan;
- Are not among the various types of employees specifically excluded by the Plan;
- Are terminated as the result of a lay-off, as opposed to quitting, retiring, being transferred, or terminated for cause;
- Are designated as eligible for the Plan by a Vice-President of Human Resources; and

- Have signed a Confidential Separation Agreement and General Release that includes a release of claims the employees may have against the company.[2]

(Dkt. # 1, Complaint Ex. 1 at 3-4).

Once the Plan Administrator determines that the employee is eligible for severance, it must then calculate the benefits they are to receive under the Plan. The calculation of the benefits' cash payment and extension of the medical, dental and vision coverage requires that the Plan Administrator determine:

- The employee's weekly pay, excluding overtime and "other types of premium pay";

- The employee's years of service;

- Whether the employee is receiving any payments pursuant to the WARN Act, other "similar state laws," or other benefits "similar" to the severance benefits, that would off-set any of the severance payments; and

- Whether at the time of lay-off, the employee was a recipient of medical, dental, and vision benefits.

(Dkt. #1, Complaint Ex. # 1 at 4-7).

In addition to the above, the Plan also creates an ERISA compliant administrative claims procedure and provides participants with a "Statement of ERISA Rights," which includes information about the Plan's reporting and disclosure requirements under ERISA. (Dkt. #1, Complaint, Ex. # 1 at 8-11). Finally, the Plan Administrator is required to make benefits determinations for *each individual claimant*, including many decisions—the similarity of benefits that may give rise to an offset, the nature of the employee's termination, and the terms of applicable collective bargaining agreements—that require "nonclerical judgment calls." *See*

---

[2] The Plan also provides for various other eligibility requirements that must be met in the event that the employee's job moves or a business unit is sold. (Dkt. #1, Complaint Ex. # 1 at 3-4).

*Bowles*, 266 F.3d at 632 (7th Cir. 2001) (holding that "individualized investigation and assessment" suggests the existence of an ERISA plan).

 The fact that the Plan, which has been in place for over a decade, is part of an ongoing administrative scheme and that the Plan Administrator's burden with respect to eligibility and payment of benefits is significant shows that this is the type of plan Congress had anticipated ERISA would regulate. Therefore, plaintiffs' state law breach of contract claim should be dismissed on the basis that it is preempted by ERISA.

## B.    Plaintiffs Fail to State a Claim for Breach of Contract Under Delaware Law

Even if not preempted, which it is, plaintiffs' allegations would fail to state a claim for breach of contract. The Plan provides that, to the extent permitted by law, its terms are to be construed according to the law of Delaware. (Dkt. #1, Complaint Ex. # 1 at 11). Under Delaware law, the interpretation of a contract is a question of law suitable for determination on a motion to dismiss. *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405 at *7 (Del. Ch. 2010). A claim for breach of contract requires: (1) the existence of a valid contract, (2) the defendant's breach of that contract, and (3) damages suffered as a result of the breach. *McCoy v. Cox*, 2007 WL 1677536 at *1 (Del. Sup. 2007). Despite plaintiffs' conclusory assertion that "the Plan is . . . a contract between the parties, supported by offer, acceptance, and consideration," it is clear that plaintiffs were never offered the right to participate in the Plan. (Complaint, ¶72).

All contracts require the acceptance of a valid offer. *Fanean v. Rite Aid Corp. of Del.*, 984 A.2d 812, 822 (Del. Sup. 2009). "An offer is the communication by one person to another of his willingness to enter into a contract with him on the terms specified in the offer." *Id.* The express terms of the Plan provide in the very first sentence that the Plan is only "***offered*** to selected employees of the Northrop Grumman Corporation," and that receipt of the Plan does not mean that the recipient is eligible for severance benefits. (Dkt. #1, Complaint Ex. #1 at 2

(emphasis added)).  The Plan expressly provides that employees eligible for benefits under the Plan are those who, among other requirements, "have been notified in writing by [their] management that you are covered by this Plan."  (*Id.* at 3).  Eligible employees "must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document ***addressed to you individually by name.***"  (*Id.*) (emphasis added).  In light of such unambiguous language, plaintiffs' contention that "the Plan is therefore a contract between the parties" is patently unreasonable.  (Complaint, ¶ 72).  Because there has been no offer to participate in the Plan, there is no valid contract supporting either plaintiffs' state-law breach of contract or implied covenant of good faith and fair dealing claims.

## CONCLUSION

For the above reasons, Defendants Northrop Grumman Corporation and the Northrop Grumman Severance Plan respectfully request that plaintiffs Alan Carlson and Peter DeLuca's complaint be dismissed with prejudice.

### <u>CERTIFICATE OF SERVICE FORM FOR ELECTRONIC FILINGS</u>

   Sam P. Myler, an attorney, hereby certified that on May 17, 2013, he caused a copy of Defendants' Agreed Motion to Answer or Otherwise Respond to Complaint to be filed via ECF which will send a copy by electronic means to:

       Michael Bartolic
       The Law Offices of Michael Bartolic, LLC
       29 South LaSalle Suite 1120
       Chicago, Illinois 60603
       mbartolic@michaelbartolic.com


       s/  Sam P. Myler_____

Nancy G. Ross (6190243)
Sam P. Myler (6309755)
MCDERMOTT WILL & EMERY LLP
227 W. Monroe
Chicago, IL  60606
Tel: 312.372.2000
Fax: 312.984.7700


DM_US 42556004-2.071494.0023