**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALAN CARLSON & PETER DELUCA | Case No. 13-2635 |
| Plaintiffs, | Hon. Judge Joan H. Lefkow |
| vs. | **Reply in Support of Motion to Dismiss** |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

**I.    INTRODUCTION**

Severance plans that are designed to grant employers the discretion to determine which employees are entitled to benefits will inevitably come across as unfair to those employees that are not selected. Be that as it may, courts have universally held that the adoption and administration of these types of severance plans is consistent with ERISA.[1] The Northrop Grumman Severance Plan (the "Plan") is an example of one such plan; and plaintiffs Alan Carlson and Peter DeLuca (together, "plaintiffs") are examples of two such employees.

Under the express, unequivocal terms of the Northrop Grumman Severance Plan, eligibility for coverage requires selection by a Vice-President of Human Resources and delivery of a memorandum designating its recipient as eligible. Plaintiffs, having not been selected for

---

[1] *See McNab v. General Motors Corp.*, 162 F.3d 959 (7th Cir. 1998) (allowing employer to deny severance if it decided it was in its "best interest" to do so); *Magin v. Monsanto*, 420 F.3d 679, 688 (7th Cir. 2005) (holding that the decision to offer a waiver in exchange for severance was in the sole discretion of the employer ); *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153 (3d Cir. 1999) (finding that employer discretion to award severance when "appropriate" did not support a claim); *Nevill v. Shell Oil Co.*, 835 F.2d 209 (9th Cir. 1987) (plan allowing employer to provide severance for certain employees when necessary to "improve the efficiency of the workforce"); *Bailey v. U.S. Enrichment Corp.*, 2012 WL 4848877 at *1 (S.D. Ohio 2012) (upholding severance plan giving employer "sole discretionary authority").

benefits, offer an interpretation of the plan that is clearly untenable: They argue that this memorandum serves no other purpose than to *notify* its recipient that he has satisfied what plaintiffs argue is a more limited set of conditions. (Dkt. # 16, Response, at 7). Under plaintiffs' interpretation, the Northrop Grumman Corporation ("Northrop") is therefore required to provide severance benefits to each and every full-time Northrop employee that is laid-off. Plaintiffs advance this argument notwithstanding the clear plan terms on the first page as well as throughout the Plan providing that it is "offered to *selected* employees of Northrop Grumman Corporation . . . who receive notice of layoff," and that the receipt of the memorandum designating an employee as eligible is one of the "*Conditions* For Receiving Benefits." (Dkt. # 1, Complaint, Ex. 1 at 2-3) (emphasis added). Plaintiffs' interpretation of the Plan ignores that language and the unambiguous Plan design.

Plaintiffs' ERISA § 510 claim is similarly at odds with the Plan terms—not to mention logic. Stripped of its obfuscation, plaintiffs' argument that Northrop violated ERISA § 510 is as follows: Northrop Grumman unlawfully interfered with plaintiffs' attainment of severance benefits by not designating them as eligible for the receipt of severance benefits. (Dtk. # 16, Response, at 9). Or said otherwise, plaintiffs characterize Northrop's decision to not designate them as eligible for severance as an act which prevented them from being designated as eligible. It is this type of contorted and circular logical that has led the courts to regularly hold that the discriminatory act forming the basis for a § 510 claim must be one that affects the employment relationship. While the universe of conduct that could conceivably give rise to a § 510 claim does, in some instances, go beyond acts that affect the employment relationship, this universe does not include, and in fact expressly excludes, the type of conduct complained of here.

Finally, while plaintiffs' contract claim is preempted by ERISA, it is clear that the conditions necessary to form a contract were not met because, quite simply, Northrop never offered severance benefits to plaintiffs. Nevertheless, plaintiffs boldly argue that a contract was formed based on "partial performance" or "waiver" because Northrop gratuitously provided continued medical benefits. (Dkt. # 16, Response, at 14). Putting aside the fact that the doctrine of "partial performance" is merely an exception to the statute of frauds and is therefore inapplicable, and that "waiver" is not a basis for establishing the formation of a contract, plaintiffs' argument is an attempt to penalize Northrop for graciously providing plaintiffs with medical benefits even though Northrop had no obligation to do so.

## II.  ARGUMENT

### A.  Plaintiffs Have Not Alleged A Viable Claim For Benefits

Notwithstanding plaintiffs' contorted arguments in their effort to withstand a motion to dismiss, the simple facts and law show that they do not have a plausible claim under ERISA § 502(a)(1)(B). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). ERISA § 502(a)(1)(B) provides a participant with a claim for benefits "under the terms of his plan." 28 U.S.C. § 1132(a)(1)(B). The Plan's terms unequivocally require the receipt of a memorandum from a Vice-President of Human Resources in order to be eligible for severance. (Dkt. # 1, Complaint, Ex. 1 at 3). Plaintiffs did not receive that memorandum, hence, they are not entitled to benefits under the terms of the Plan.

Plaintiffs attempt to circumvent this requirement by offering a competing interpretation of the plan—an interpretation under which the receipt of the memorandum is not a condition to

eligibility. Thus, the present dispute over plaintiffs' claim for benefits simply turns on which of the two—the Plan Administrator's or plaintiffs'—interpretations of the Plan is controlling.

In advancing their interpretation of the Plan over the Plan Administrator's, plaintiffs fail to account for the fact that when a plan confers discretion upon a plan administrator to interpret and apply the terms of a plan, their interpretation and application of those terms will not be disturbed so long as it is reasonable. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). As the Supreme Court has noted, deferring to the plan administrator's interpretation incentivizes employers to adopt benefit plans by assuring a predictable set of liabilities and mitigating concerns that employers will be exposed to unexpected and inaccurate plan interpretations. *Conkright v. Frommert*, 559 U.S. 506 (2010).

> The Northrop Grumman Severance Plan provided:
>
> "The Plan Administrator, the administrator, and Corporate Severance Plan Review Committee shall have sole absolute discretion over claims and appeals issue and determinations regardless of the timing of such determination or exercise of such discretion. . . . The administrator is vested with all power and authority necessary or appropriate to administer the Plan on behalf of the Plan Administrator, and he has full discretionary authority in this capacity."

(Dkt. No. 1, Complaint, Ex. 1 at 8). Because the Plan granted its administrators discretion to decide claims and appeals, and "all power and authority necessary or appropriate to administer the Plan," the Plan Administrator's denial of plaintiffs' claims should only be overturned if it is "downright unreasonable." *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (quoting *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006)). The Plan Administrator's interpretation that eligibility for severance required, among other conditions, a memorandum from a Vice-President of Human Resources, was solidly based on the unambiguous Plan terms. *See Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) ("Although it is an overstatement to say that a

decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement." (quoting *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 765 (7th Cir. 1993)).

### 1. Delivery of the memorandum is not an administrative act

The first leg of plaintiffs' labyrinth argument that the memorandum is merely a confirmatory document requires the Court to construe its delivery as an administrative act undertaken by the Plan Administrator rather than a business decision made by the Northrop Grumman Corporation. (Dkt. #16, Response, at 4). Such an interpretation is inconsistent with both the law and the Plan's terms and structure.

First, the manner in which the Plan delegates authority is indicative of the fact that the delivery of the memorandum is not an administrative act. The Plan designates the Chief Human Resources and Administrative Officer of Northrop Grumman as its administrator. (Dkt. #1, Complaint, Ex. 1 at 8). Its obligations are enumerated under the section of the Plan entitled "Plan Administration." (*Id.* at 8-10). While the Plan Administrator is vested with "all power and authority necessary or appropriate to administer the Plan," it is not vested with the authority or the obligation to deliver the memorandum to employees. The Plan expressly delegates that all-important task to Northrop's various Vice-Presidents of Human Resources under the substantive terms of the Plan in the section entitled "Conditions for Receiving Benefits." (*Id.* at 3).

Notwithstanding this clear bifurcation of responsibility, plaintiffs argue that *McNab v. General Motors Corp.*, 162 F.3d 959 (7th Cir. 1998), establishes that the act of delivering the memorandum to employees Northrop chose to designate as eligible is necessarily

administrative.[2] (Dkt. # 16, Response, at 4). However, the Seventh Circuit's opinion in *McNab* contains no discussion regarding whether General Motors' decisions with respect to which employees were entitled to benefits was an administrative or a business decision made by management.[3] The courts that have taken the opportunity to draw this distinction have held that when making business decisions allowed for by the plan, an employer is not acting as a "plan administrator." *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir. 1999) ("The employer acts as a fiduciary when administering a plan but not when designing or making business decisions allowed for by a plan, even though in all three situations its determinations may impact on its employees."). *See also Adams v. LTV Steel Min. Co.*, 936 F.2d 368, 370 (8th Cir. 1991) (same); *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1079-80 (4th Cir. 1989) (same); *Rea v. Hershey Co. 2005 Enhanced Mut. Separation Plan*, CV-06-1920, 2008 WL 2782663 at *10 (M.D. Pa. 2008) (same). Northrop designed the Plan to grant its Vice-Presidents the discretion to decide, who, if anyone, would receive severance benefits upon termination. Plaintiffs do not take issue with that design, nor could they. *See McNab*, 162 F.3d at 962 ("Subject to a few explicit rules in the statute, an employer may design a pension or welfare plan with features of its choosing, provided it is willing to pay the cost.").

---

[2] Plaintiffs also cite *Ruiz v. Continental Cas. Co.*, 400 F.3d 986 (7th Cir. 2005) for the proposition that any person that makes a decision with respect to eligibility is a fiduciary because that is an act of plan administration. *Ruiz* involved a plan administrator's determination with regards to whether an employee was "disabled" under the terms of the plan. Applying the reasoning of *Ruiz* here, the Plan Administrator's determination that plaintiffs were not entitled to benefits under the plan terms because they never received the required memorandum was the act of plan administration.

[3] *McNab* can in fact be read as supporting the conclusion that the Seventh Circuit considered GM's selection of employees to be a business decision. Judge Easterbrook spoke at length about how the discretion under the plan enabled managers to make decisions regarding the best interests of the firm. *McNab*, 162 F.3d at 961-62. This is not the type of decision-making typically within the purview of plan administrators.

### 2. Plaintiffs' discussion of the scope and effect of the Plan Administrator's discretion is incorrect and irrelevant

While difficult to follow, plaintiffs appear to argue that viewed as an administrative action (which it is not), the Plan Administrator should have interpreted the condition that a memorandum be delivered to the employee as "the means by which the administrator notifies a participant he satisfied the clearly stated rules in the Plan." (Dkt. # 16, Response, at 7). Plaintiff's argument ignores the fact that the Plan does not delegate the authority to deliver the memo to the *Plan Administrator*. Rather, the memorandum is to be delivered by the *Vice-Presidents of Human Resources*. Therefore, even if the Plan Administrator were to deliver this memorandum, as plaintiffs claim it should have, its recipient would not be entitled to benefits under the terms of the Plan because the memorandum would not have come from a Vice-President of Human Resources. 28 U.S.C. § 1104(a)(1)(D) (requiring that plan administrator discharge its duties "in accordance with the documents and instruments governing the plan").

Essentially, plaintiffs interpret the Plan as providing that each and every Northrop Grumman employee that is laid-off from a position in which they worked over 20 hours per week is entitled to severance benefits under the Plan. That is clearly inconsistent with the Plan's unequivocal qualification that it is offered to "*selected* employees" and that receipt of the Plan documents "does not necessarily mean that [they] are eligible for severance benefits. (Dkt. # 1, Complaint, Ex. 1 at 2). Unlike plaintiffs' interpretation, which would obliterate clearly stated conditions for the receipt of severance, the Plan Administrator's interpretation of the Plan is consistent with the basic principle of contract interpretation that a contract should not be read so as to render any portion of it "superfluous, useless or inexplicable." 11 WILLISTON ON CONTRACTS § 32:5 (4th ed.).

The Plan's terms clearly refer to the memorandum as a pre-eligibility condition that must be met prior to the administrative act of calculating and providing benefits under the Plan, rather than a post-lay-off confirmation of eligibility. The Plan provides: "You are an eligible employee if you work in the United States, you are regularly scheduled to work at least 20 hours per week *and* you have been notified in writing by your management that you are covered by this Plan." (Dkt. # 1, Complaint, Ex. 1 at 3). The Plan further emphasizes that the receipt of the memorandum is a prerequisite to eligibility in the section entitled "***Conditions*** for Receiving Benefits," which provides: "In order to receive the benefits of this Plan . . . . you must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (*Id.*)

In order for plaintiffs to state a viable claim for benefits under § 502(a)(1)(B) they must offer an interpretation of the Plan which suggests that the Plan Administrator's interpretation was "downright unreasonable." *Edwards*, 639 F.3d at 360. They have failed to do so.

### 3. The alleged inconsistent application of the memorandum requirement does not render the Plan Administrator's decision arbitrary or capricious

Plaintiffs' last argument is as baseless as their others. They argue that even if the Plan Administrator has discretion to decide which employees would be entitled to severance benefits (which the Plan Administrator does not), the exercise of this discretion was arbitrary and capricious.[4] (Dkt. # 16, Response, at 8). Presumably in an effort to create an evidentiary issue, plaintiffs claim "the Court can reasonably infer" that prior to October 2011, Northrop Grumman

---

[4] Plaintiffs also argue that the decision is arbitrary and capricious because the Plan Administrator did not provide them with an explanation as to why they did not receive the memorandum designating them as eligible. (Dkt. # 16, Response, at 8). However, a plan administrator has no obligation to explain the reasoning behind an employer's business decisions. *Dzinglski.*, 875 F.2d at 1077-78.

did not treat the delivery of the memorandum as a discretionary act, (*Id.* at 4), and that this allegedly inconsistent application of the terms is evidence of arbitrary and capricious decision-making. (*Id.* at 9). Plaintiffs' argument fails for two reasons. First, as the Seventh Circuit has instructed, speculation cannot save their claim from dismissal. In reviewing the sufficiency of a complaint on a motion to dismiss for failure to state a claim, the Court must only consider those facts that are "well-pleaded." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013). Plaintiffs' complaint presents no facts showing that similarly-situated persons received benefits under the Plan without first receiving a memorandum designating them as eligible. Their allegation of inconsistent application is not well-pleaded and should be ignored.

Second, disparate treatment by the Vice-President of Human Resources does not render the Plan Administrator's determination to enforce the Plan's terms arbitrary or capricious. What renders a plan administrator's interpretation arbitrary or capricious when deciding a claim is its failure to "offer a reasoned explanation, based on the evidence, for a particular outcome." *Krawczyk v. Hanischfeger Corp.*, 41 F.3d 276, 279-80 (7th Cir. 1996). Here, there can be no dispute that by its clear terms—stated in three different section of the Plan—eligibility for severance turned on receipt of a memorandum by a Vice-President of Northrop, (Dkt. # 1, Complaint, Ex. 1 at 2-3), and this was clearly explained to plaintiffs. (Dkt. #1, Complaint, Ex. 2).

### B. Plaintiffs Fail To State A Claim For Violation Of ERISA § 510

Plaintiffs, like others that have tried and failed,[5] allege that their employer's failure to select them as among those eligible for severance is a discriminatory act in violation of ERISA § 510. Here, plaintiffs argue, "If the act of delivering a memo to a participant is not an act of plan

---

[5] *McNab v. General Motors Corp.*, 987 F. Supp. 1115, 1124-25 (S.D. Ind. 1997) (rejecting claim that not selecting plaintiffs as among those entitled to severance is a violation of § 510); *Bailey v. U.S. Enrichment Corp.*, 2012 WL 4848877 at *1 (S.D. Ohio 2012).

administration, but a post-plan design 'business decision,' then Plaintiffs properly alleged a violation of § 1140 [because] Northrop Grumman unlawfully interfered with Plaintiffs' attainment of benefits." (Dkt. No. 16, Response, at 9). This novel argument that § 510's prohibitions extend to what one might characterize as "passive" interference is without precedent. *See, e.g., Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250-51 (5th Cir. 2003) (rejecting as without precedent the argument that the defendant passively interfered with their entitlement to severance by deciding not to terminate them).

Rather than explaining how Northrop's conduct falls within the scope of § 510, plaintiffs cite to *Feinberg v. RM Acquisitions*, 629 F.3d 671 (7th Cir. 2011), for the proposition that interference or discrimination sufficient to give rise to a viable § 510 claim includes more than acts directed at the employment relationship. (Dkt. # 16, Response, at 11). There is no dispute that an individual may violate § 510 by taking action which interferes with benefits to which, for example, a deceased employee's beneficiaries are entitled. *Feinberg*, 629 F.3d at 675. But the general rule, which is "thoroughly embedded in § 510 jurisprudence," *Mattei v. Mattei*, 126 F.3d 794, 799 (6th Cir. 1997), is that a § 510 violation implicates the employment relationship. This rule illustrates the type of conduct Congress intended to prohibit in enacting § 510. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990) ("We have no doubt that [improper termination] is prototypical of the kind [of act] Congress intended to cover under § 510."). Plaintiffs plead no facts which show an effort by Northrop to "circumvent the provision of promised benefits." *Id.* Plaintiffs allege only that Northrop's failure to provide them severance benefits constituted unlawful discrimination. That exact claim was rejected in *McNab*. *McNab v. General Motors Corp.* 987 F. Supp. 1115, 1125 (S.D. Ind. 1997) (holding that the refusal to provide severance benefits under the plan could not form the basis for both a § 502(a)(1)(B)

claim and a § 510 claim). But as shown above and in Northrop's opening brief, plaintiffs have no right to promised benefits under the severance plan, and hence there was nothing for Northrop to attempt to circumvent.

### C. Plaintiffs Fail to State a Claim for Breach of Contract

#### 1. Plaintiffs' state law breach of contract claim is preempted by ERISA

Plaintiffs argue, relying on *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809 (7th Cir. 1994), that if the Northrop employees are not participants until they receive a memorandum designating them as eligible for benefits, the Plan is not governed by ERISA because it would lack a "reasonably ascertainable class of participants." (Dkt. # 16, Response, at 13). As an initial matter, plaintiffs' reliance on *Diak/Dillingham* in support of this argument is misplaced because the Seventh Circuit has questioned whether the approach taken in those cases is still appropriate in light of more recent Supreme Court precedent. *See Sandstrom v. Cultor Food Science, Inc.*, 214 F.3d 795, 796 (7th Cir. 2000) (questioning whether *Dillingham* is compatible with more recent precedent). The *Diak/Dillingham* test has largely been supplanted by the Supreme Court's decision in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), which discusses the considerations relevant to whether a severance plan—the type of plan at issue here—is governed by ERISA. *See e.g.*, *Anco v. ACCO Brands USA LLC*, 10-C-4275, 2012 WL 774945 at *3 n.6 (N.D. Ill. 2012) (applying *Fort Halifax* and finding that severance plan was governed by ERISA) (Lefkow, J.).

Notwithstanding that the *Diak/Dillingham* analysis does not apply, it is clear that even if it did, the Plan would not lack an identifiable class of beneficiaries. The Plan clearly specifies its class of intended beneficiaries, which are those individual employees that are selected as eligible for benefits by a Vice-President of Human Resources. Once these individuals are selected, the Plan Administrator is tasked with providing severance benefits in a manner consistent with the

Plan's uniform terms. That the Court cannot ascertain which individuals will ultimately be selected for receipt of severance does not mean the Plan is not governed by ERISA. If it did, then any plan that granted discretion to the employer or plan administrator to determine employees' eligibility for any form of benefits would not be governed by ERISA. Clearly that is not the law. *See e.g.*, *Noorily*, 188 F.3d at 157 (3d Cir. 1999) (applying ERISA to severance plan that allowed employer to select employees as beneficiaries if it determined that doing so was "appropriate"). *See also McNab*, 162 F.3d at 960 (applying ERISA to severance plan that allowed employer to select employees as beneficiaries if doing so was in its "best interest.").

### 2. **Plaintiffs fail to state a claim for breach of contract**

Not only is plaintiffs' state law claim for breach of contract preempted, it also fails to establish the existence of a contract or a breach thereof. Plaintiffs allege that a contract was formed via "partial performance" and "waiver" by Northrop. Neither of these doctrines support construing the Plan as a contract between Northrop and plaintiffs.

Viewed as a contract, the Plan envisages an agreement whereby Northrop first identifies certain individuals with whom it desires to contract. Northrop then extends an *offer* to them in the manner specified in the Plan (by delivering a memorandum to them designating them as eligible) and the offeree then *accepts* that offer and provides consideration by executing a Confidential Separation Agreement and General Release of Claims. As plaintiffs admit, Northrop never delivered the "offer-memorandum," (Dkt. # 1, Complaint ¶ 8), and therefore plaintiffs were never offered severance benefits in exchange for their execution of the release. (Dkt. # 1, Complaint, Ex. 1 at 2) ("This is a Severance Plan that is being *offered* to *selected* employees of Northrop Grumman Corporation.") (emphasis added).

Plaintiffs allege, however, that Northrop "partially performed" under the purported contract, and that this partial performance establishes its existence. (Dkt. # 16, Response, at 14).

In support of their undoubtedly bold argument, plaintiffs cite *Heckman v. Nero*, No. 1841-S, 1999 Del. Ch. LEXIS 50, at *9 (Del. Ch. Mar. 26, 1999) and *Shepard v. Mazzetti*, 545 A.2d 621, 623 (Del. 1988). Notably, both of these cases make clear that the doctrine of "partial performance" is merely an interpretative aid and exception to the statute of frauds that courts may use when determining whether an oral contract exists. Plaintiffs do not allege the existence of an oral contract and therefore this doctrine is inapposite. Claiming that Northrop's gratuitous decision to provide them with continued subsidized medical, dental, and vision insurance is a form of "partial performance" that obligates Northrop to also provide a cash benefit is to argue that Northrop should be penalized for conferring upon them a benefit they were not owed.[6]

Plaintiffs also allege that Northrop "waived" the memorandum requirement by giving plaintiffs continued medical, dental and vision benefits. Viewed as a contract, plaintiffs' argument that Northrop "waived" the memorandum requirement misconstrues the memorandum's function. The delivery of the memorandum is the means by which the recipient is offered severance benefits under the Plan. Northrop cannot "waive" the requirement that contracts be premised on a valid offer. *See James J. Gory Mechanical Contracting, Inc. v. BPG Residential Partners V, LLC*, 6999-VCG, 2011 WL 6935279 at *2 (Del. Ch. 2011) ("It is the blackest of black-letter law that an enforceable contract require offer, acceptance, and consideration."). Furthermore, under Delaware law,[7] waiver requires a "voluntary and intentional relinquishment of a known right." *Id.* at *3. Northrop's act of providing certain medical benefits cannot reasonably be construed as an "intentional relinquishment" of its right to not offer plaintiffs severance.

---

[6] The fact that you gave a mouse a cookie does not prove the existence of a contract which also included a glass of milk. LAURA JOFFE NUMEROFF, IF YOU GIVE A MOUSE A COOKIE (Harper & Row) (1985).

[7] The Plan provides that it shall be interpreted according to the laws of the State of Delaware to the extent Delaware law is not preempted. (Dkt. 1, Complaint, Ex. 1 at 10).

Finally, plaintiffs allege that there was a meeting of the minds sufficient to establish the existence of a contract based on the fact that they worked for Northrop Grumman for over three decades with the understanding that if they were laid-off they would receive medical and cash benefits as severance. (Dkt. # 16, Response, at 15). Putting aside the fact that the severance plan was not adopted until July 1, 2002 and plaintiffs therefore could not have relied on its representations during the thirty years of their employment, (Dkt. # 1, Complaint, at 9), to the extent that they did interpret the Plan as consisting of an offer to provide them severance if they worked for Northrop, such an interpretation was unreasonable and cannot form the basis for a contract. Courts have regularly rejected these types of arguments and dismissed similar severance "contract" claims.

In *Panaras v. Liquid Carbonic Industries Corp.*, 94-C-7360, 1995 WL 117967 (N.D. Ill. 1995), *aff'd*, 74 F.3d 786 (7th Cir. 1996), the Court construed the plaintiff's employer's severance plan under both ERISA and the common law of contract. *Id.* After holding that the plaintiff failed to state a claim under ERISA because he refused to sign a release as was required by the terms of the plan, Judge Kocoras turned to whether, assuming ERISA did not apply, plaintiff pled a viable claim that a contract had been formed by virtue of plaintiffs' employment. *Id.* at *4. Looking to the express terms of the defendant's severance plan, Judge Kocoras took note of the fact that the plan gave the defendants "absolute discretion to determine employee eligibility for benefits," and expressly provided that it was not to be "interpreted or construed to establish or be part of any . . . contract of employment" *Id.* The Court held that "given the plain language of the severance plan, the broad discretion which employers are afforded in administering their severance plans, and the fact that the plaintiff's interest in severance benefits never vested," the plaintiffs could not state a claim upon which relief could be granted. *Id.*

As is suggested by the court's analysis in *Panaras*, the question before this Court is whether a "reasonable man would, based upon the objective manifestation of assent and all of the surrounding circumstances, conclude that the parties intended to be bound by the contract." *Loveman v. Nusmile, Inc.*, 2009 WL 847655 at *3 (Del. Sup. 2009) (citing *Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986)). Here, as in *Panaras*, the terms of the plan are such that no reasonable person would conclude that either party—but especially Northrop—intended to be bound. For example, the Plan clearly states, "The fact that you have received this document does not necessarily mean that you are eligible for severance benefits; you must also have received a cover memo signed by a Vice-President of Human Resources." (Dkt. # 1, Complaint, Ex. 1 at 2). It also informs recipients that, "The Corporation reserves the right to **amend or terminate** the Plan, in its sole discretion, **at any time**." (*Id.* at 9) (emphasis added). And finally, in a section entitled "No Contract of Employment," it unequivocally provides that, "**Nothing** in this Plan creates a **vested right** to benefits in any employee or any right to be retained in the employ of the Company." (*Id.* at 9-10) (emphasis added). No reasonable person could conclude that Northrop intended to be bound.

### III. CONCLUSION

The Court should dismiss plaintiffs' complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

Dated: June 20, 2013 /s/ Sam P. Myler_____
Attorney for the Defendants

Nancy G. Ross
Sam P. Myler
MCDERMOTT WILL & EMERY LLP
227 W. Monroe
Chicago, IL 60606
Tel: 312-372-2000
Fax: 312-984-7700
Firm: 90539

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILINGS

Sam P. Myler, an attorney, hereby certifies that on June 20, 2013, he caused a copy of Defendants' Reply Brief in Further Support of Defendants' Motion to Dismiss Plaintiffs' Complaint to be filed via ECF which will send a copy by electronic means to:

Michael Bartolic
The Law Offices of Michael Bartolic, LLC
29 South LaSalle Suite 1120
Chicago, Illinois 60603
mbartolic@michaelbartolic.com

/s/ Sam P. Myler_____

DM\_US 43309479-1.071494.0023