IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ALAN CARLSON and<br>PETER DELUCA,<br><br>        Plaintiffs,<br>v.<br><br>NORTHROP GRUMMAN<br>CORPORATION and the<br>NORTHROP GRUMMAN<br>SEVERANCE PLAN,<br><br>        Defendants. | No. 13 C 2635<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. No. 11]. For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

## FACTUAL BACKGROUND

When considering a motion to dismiss, the Court accepts all well-pled facts as true and draws all reasonable inferences in favor of the plaintiff. *Alicia-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

On July 1, 2012 the Northrop Grumman Corporation ("Northrop") adopted and began administering the Northrop Grumman Severance Plan ("the Plan"). The Plan's stated purpose is to provide benefits to Northrop employees who are "laid off by the Company due to lack of work." (Compl. Ex. 1, at 10.) The Plan is divided into two parts: (1) a cash payment based on accrued years of service, and (2) an extension of medical, dental, and vision benefits. To be eligible for benefits, Northrop employees must be "regularly scheduled to work at least 20 hours per week" and be "notified in writing by [management] that [the employee is] covered by [the] Plan." (*Id.* at 3.) The Plan excludes some classes of employees based on their positions in specific sectors and cities, and based on union representation. The Plan further states "conditions for receiving benefits," which require that employees remain in their position until they are laid off, sign a separation agreement and release, and receive a memo from Northrop's Vice President of Human Resources stating their eligibility (the "Eligibility Memo"). (*Id.*)

Plaintiffs Alan Carlson and Peter DeLuca are two former employees of Northrop. Both had positions in the Technical Services Sector, where Carlson worked as a Program Manager of Threat Simulation Systems and DeLuca was an Engineering Manager. On July 12, 2013, Carlson and DeLuca were notified that they were being laid off. Their last day of work for Northrop was August 3, 2012.

Carlson and DeLuca received continued health benefits, but did not receive the cash payment described in the Plan. They filed claims for severance benefits pursuant to the Plan on August 23, 2012 and August 27, 2012, respectively. On

2

November 9, 2012, Carlson and DeLuca each received an adverse benefit determination pursuant to 29 C.F.R. § 2560.503-1, informing them that they would not receive the cash payment as a part of their severance package. The stated reason for the denial was that Carlson and DeLuca did not receive the Eligibility Memo. Deluca appealed the adverse benefit determination on December 3, 2012. Carlson filed his appeal on January 3, 2013. Their appeals were both denied on February 1, 2013.

On April 9, 2013, Plaintiffs filed a complaint seeking severance benefits from the Plan pursuant to two provisions of the Employee Retirement Income Security Act ("ERISA"): Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which governs suits for payments owed under the terms of an employee benefit plan, and Section 510, 29 U.S.C. § 1140, based on alleged interference with ERISA-protected rights. Plaintiffs also filed a state law claim for breach of contract against Northrop. Defendants seek dismissal of Plaintiffs' Section 502 claim, arguing that Plaintiffs are ineligible for benefits under the terms of the Plan. Furthermore, Defendants argue that Plaintiffs do not identify an "adverse employment action" or an entitlement to benefits, both of which are required in order to bring suit under Section 510. Finally, Defendants argue that Plaintiffs' state law claims are preempted by ERISA and therefore must be dismissed. The Court will grant the motion to dismiss as to the state law claims, but denies the remainder of the motion.

3

## DISCUSSION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(3). By reason of the parties' consent under 28 U.S.C. § 636(c)(1), this Court has authority to enter final orders on the motion presented.

I.   **MOTION TO DISMISS STANDARD OF REVIEW**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) requires a court to accept all of a plaintiff's well-pled facts as true, as well as reasonable inferences drawn therefrom. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint, not to decide the merits of a case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A plaintiff must provide only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to defeat a motion to dismiss. Fed. R. Civ. P. 8(a)(2); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also "suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## II. ANALYSIS

### A. <u>Failure to State a Claim for Benefits</u>

Defendants assert that Plaintiffs fail to state a claim to recover benefits under Section 502 because the decision to deny Plaintiffs benefits was "neither arbitrary nor capricious, and was in fact the only reasonable application of the Plan's unambiguous terms . . . ." (Br. Supp. Defs.' Mot. Dismiss at 4–5.) Defendants argue that Plaintiffs have no claim to wrongfully denied benefits because the Plan requires delivery of the Eligibility Memo and Plaintiffs admit that they did not receive it. Defendants have not shown that Plaintiffs can prove no set of facts supporting their claim for benefits, and the Court therefore denies the motion to dismiss Plaintiffs' Section 502 claim.

#### 1. Standard of review

As an initial matter, although Defendants' motion assumes that an arbitrary and capricious standard applies to the review of their decision to deny Plaintiffs' benefits, the appropriate standard is disputable. Courts review benefit determinations under ERISA using a "de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Choosing the appropriate standard requires the Court to ascertain whether the Plan "confers upon the administrator a power of discretionary judgment, so that a court can set it aside

5

only if it was 'arbitrary and capricious,' that is, unreasonable, not merely incorrect." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000). "[T]he mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim . . . does not give the employee adequate notice" that the plan administrator's decision is largely insulated from judicial review. *Id*. at 332. Statements in ERISA plans intended to result in deferential review must therefore be clear. *Id*. at 332–33.

In this case, the Plan states that "[t]he Plan Administrator . . . shall have absolute discretion over claims and appeals issue and determinations regardless of the timing . . . the administrator is vested with all power and authority necessary or appropriate to administer the Plan . . . and he has full discretionary authority in that capacity." (Compl. Ex. 1, at 8.) While this language gives the Plan Administrator the ability to exercise discretion in fact-based questions of individual claims, said language does not unequivocally leave interpretations of Plan terms in the Administrator's hands. This fact, in combination with the presumption against deference in the Seventh Circuit, leaves the appropriate standard of review an open question. *See Wal–Mart Stores, Inc. Assoc. Health and Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000) (stating the presumption against deference and noting that deferential review only applies where "plan documents give the plan's administrator discretion to interpret the plan").

6

At this stage of litigation, it is unclear whether a *de novo* or an arbitrary and capricious standard governs review of adverse benefit determinations under the Plan. This weighs against the motion to dismiss insofar as it is critical to how the Plan's terms should be applied as they relate to whether or not it was legal for Defendants to withhold the cash payment from Plaintiffs. Thus, pending later briefing, the Court will reserve its ruling on the appropriate standard of review.

### 2. Plaintiffs' eligibility for benefits

Plaintiffs claim that the basic qualifications necessary for Northrop employees to receive benefits under the Plan are: (1) working in the United States; being scheduled to work at least 20 hours per week; (2) being laid off; (3) remaining in their current positions until they have been laid off; and (4) not voluntarily quitting. While the Plan also states that an employee must receive the Eligibility Memo, Plaintiffs argue that because employees are laid off before decisions to issue the memo are made, its distribution is actually an administrative action and is not an essential element of eligibility. Defendants counter that receipt of the memo is itself a basic qualification — along with the others listed — meaning Plaintiffs were never eligible for benefits. The question of whether receiving the memo is a prerequisite to eligibility depends on the interpretation of the Plan's terms as a contract. *See Hupp v. Experian Corp.*, 108 F. Supp. 2d 1008, 1016–17 (N.D. Ill. 2000) ("An ERISA plan is a contract, and the 'meaning of a contract is ordinarily decided by the court, rather than by a party to the contract, let alone the party that drafted it.'") (quoting *Herzberger,* 205 F.3d at 330).

The plausibility of Plaintiffs' Section 502 claim turns on whether the terms of the plan are ambiguous or unambiguous in describing eligibility for benefits. Ambiguity is evidenced by language that is "subject to reasonable alternative interpretations." *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420 (7th Cir. 1998). Here, the language of the Plan suggests that eligibility for benefits is premised on whether applicants are in possession of the Eligibility Memo. However, it is plausible that the memo only serves an administrative function as a means of notifying beneficiaries that they have met eligibility requirements, given the lack of stated standards guiding who should receive it. Neither language in the four corners of the Plan nor information in the Complaint suggest that "no set of facts" will show Plaintiffs are entitled to relief under Section 502.

"It is well established that matters of contract interpretation are 'particularly suited to disposition by summary judgment.'"*Hupp*, 108 F. Supp. 2d at 1017 (quoting *Collins v. Ralston Purina Co.*, 147 F.3d 592, 598 (7th Cir. 1998)). Based on Plaintiffs' well-pled claims, it is unclear that the Plan's denial of severance benefits to Plaintiffs lawful under ERISA. The parties will be given an opportunity to further develop the facts of the case and the motion to dismiss Plaintiffs' Section 502 claims will be denied.

**B.** <u>**Improper Interference With Benefits**</u>

Defendants next contend that their denial of a cash payment to Plaintiffs was not an adverse employment action that qualifies for protection under Section 510 because Plaintiffs were not terminated in an effort to avoid providing benefits.

Defendants also argue that Plaintiffs cannot make out a Section 510 claim because they never had an entitlement to benefits, which is required by the statute. The Court finds that Plaintiffs' complaint sufficiently alleges an interference with their a protected right under the Plan and accordingly denies Defendants' motion to dismiss that claim.

Section 510 states that it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an [ERISA protected benefit plan] or for the purpose of interfering with the attainment of any right to which such participant may become entitled under [the plan]." 29 U.S.C. § 1140. While some opinions describe the statute's scope as narrowly protecting against direct changes in employment status for the purpose of depriving ERISA-protected benefits, *see, e.g. Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994); *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 668–69 (7th Cir. 1993), the Seventh Circuit has made clear that protection under Section 510 extends to various "participants" who could be harmed by a range of employer actions. *See Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 675 (7th Cir. 2011) ("Not only do the words 'suspend,' 'expel,' and 'discriminate' denote actions that can be taken against a participant or beneficiary who is not an employee, but many participants and beneficiaries are not employees . . . .").

9

Given this broader interpretation of the statute, Plaintiffs have plausibly pled that Defendants violated Section 510 by not delivering the Eligibility Memo. "[T]he emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992). Depending on the normal implementation of the Plan, failure to deliver the memo could be construed as such an action. Furthermore, similarly situated employees at Northrop received a cash payment, suggesting that Defendants may have discriminated against Plaintiffs for the purpose of blocking their access to benefits. The fact that Plaintiffs were not fired, demoted, or otherwise affected in their status as Northrop employees does not discredit their claim.

Finally, Plaintiffs do not need to prove their entitlement to severance benefits in order to survive a motion to dismiss. As the Court has stated, whether Plaintiffs had a right to benefits under the Plan is among the issues will be fleshed out through discovery and decided at a later stage of litigation. More importantly, Section 510 provides protections not only for benefits a plan participant is entitled to at the time of the interference, but also for "any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. As a result, the Court will not dismiss Plaintiffs' Section 510 claim.

### C. Preemption of State Law Contract Claim

Defendants lastly assert that Plaintiffs' claims for remedies under state law for breach of contract are preempted by the federal ERISA scheme and thus must be dismissed. Defendants add that the complaint fails to state a claim under Delaware law, as required by the Plan. Plaintiffs respond that the Plan has no ascertainable class of recipients due to the unguided requirement that recipients receive the Eligibility Memo. They argue that the resulting vagueness as to the Plan's intended beneficiaries leaves it outside of ERISA's scope, citing *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809 (7th Cir. 1994). Based on the premise that the Plan is not properly subject to ERISA, Plaintiffs conclude that a contract was formed via partial performance and waiver when Plaintiffs received healthcare benefits, and later breached the contract when a cash payout was withheld. Because the ERISA scheme explicitly provides for the preemption of state law remedies where protected benefit plans are concerned, Plaintiffs' state law contract claims will be dismissed.

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employment plans." 29 U.S.C. § 1144. Hence, the general rule is that "ERISA preempts all state law claims for severance benefits." *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 795 (7th Cir. 1996). By preempting state law claims, the ERISA scheme furthers congressional intent to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

The Plan as it applies to Plaintiffs is unmistakably governed by ERISA. (*See* Compl. Ex. 1, at 10 ("As a participant in this Plan, you are entitled to certain rights under [ERISA].")) Moreover, Plaintiffs' state law contract claims essentially duplicate the remedies requested in their Section 502 claims — payment of the cash portion of benefits denied to them under the Plan — and are therefore preempted. *See Davila*, 542 U.S. at 209 ("[A]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

Plaintiffs' reliance on *Diak* is misplaced. That case involved a completely ad hoc program, where no written benefits plan existed and pension benefits were paid to four employees without any guidelines concerning the amount that would be disbursed or additional benefits an employee would receive. *See Diak*, 33 F.3d at 811. The Seventh Circuit's conclusion that the benefits at issue were not ERISA-protected was guided by the defendant's lack of demonstrated intent to pay regular and long-term benefits and by the unspecified benefit amount employees were eligible for under that "plan." *Id.* at 812. In this case, eligible Plan beneficiaries receive "one week of pay per year of service, with no maximum, plus continued medical, dental, and vision benefits for up to 26 weeks." (Compl. ¶ 21.) Additionally, other factors courts typically consider, including whether a plan has ascertainable sources of financing through a separate fund and procedures for receiving benefits,

12

are obvious here. *See Diak*, 33 F.3d at 812–13 (failing to find sources of funding or procedure for obtaining benefits under defendant's plan and therefore concluding that it was not subject to ERISA). The Plan's lack of specificity concerning conditions for receiving the Eligibility Memo alone is insufficient to remove the Plan from ERISA's scope. Plaintiffs' state law claims will be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' Complaint [Doc. No. 11] is granted as to Plaintiffs' state law claims for breach of contract. The remainder of the Motion to Dismiss is denied.

**SO ORDERED.**  **ENTERED:**

**DATE:** __**March 31, 2014**__

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**