IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON & PETER DeLUCA, | Case No. 13-cv-2635 |
| Plaintiffs, | |
| vs. | Magistrate Judge Maria Valdez |
| NORTHROP GRUMMAN CORPORATION & NORTHROP GRUMMAN SEVERANCE PLAN, | |
| Defendants. | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**

Defendants Northrop Grumman Corporation ("Northrop Grumman") and the Northrop Grumman Severance Plan (the "Plan") (collectively, "Defendants"), by their attorneys, submit this brief in opposition to plaintiffs' motion to amend, and in support thereof state as follows.

**I. INTRODUCTION**

In seeking to amend their original complaint and turn two individual benefit claims into a roving class action, plaintiffs run afoul of Rule 15(a)(2), both in terms of untimeliness and futility. Plaintiffs' motion to amend is untimely because plaintiffs bring new class allegations over a year after they filed the original complaint and as discovery is nearing its conclusion. The new class allegations will result in additional and costly briefing and discovery and, therefore, cause prejudice to Defendants. On the other hand, plaintiffs will suffer no prejudice if the Court denies their motion to amend because the parties are already litigating the two individual benefit claims, which are ready for dispositive motion briefing. In addition, the new class allegations are futile because plaintiffs cannot satisfy the strict requirements for a class action under Rule 23, nor state a claim under Rule 12(b)(6). First, plaintiffs allege nothing but speculative conclusions

to support their claims of typicality and commonality under Rule 23, in direct violation of recent United States Supreme Court precedent. Second, with the benefit of an additional governing plan document which form the basis of plaintiffs' claims but which plaintiffs failed to attach to either of their complaints, it is clear that this Court should apply the arbitrary and capricious standard in this case and deny any claims—class or individual—under ERISA §§ 502(a)(1)(B), 510, or 502(a)(3). Plaintiffs' eleventh hour motion to grossly expand this two-plaintiff case is nothing more than a thinly-veiled attempt to extort a settlement. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment] proceedings.").

## II. BACKGROUND

In July 2002, Northrop Grumman adopted the Plan, which gave managers within various sectors and divisions of the company the opportunity to award severance benefits to employees in their discretion. (Dkt. No. 1, Compl., ¶ 10.) The Plan was structured through a Wrap Plan, attached to this Brief as Exhibit 1, and a component Severance Plan, attached to the original complaint as exhibit 1. A common feature of many ERISA plans, a wrap plan is a legal document that combines and incorporates by reference various component welfare or pension plans. *See*, *e.g.*, *Shaw v. Prudential Ins. Co. of Am.*, 2012 WL 432874, *1 (W.D. Mo. Feb. 9, 2012) (discussing the mechanics of wrap plans). The Wrap Plan defines a "Participant" in the Plan as "[a]n Employee who has fulfilled the eligibility requirements with respect to a Component Plan." (Ex. 1, Wrap Plan, § 2.10.) The Wrap Plan also states that "[a]n Employee who has fulfilled the eligibility requirements with respect to any Component Plan shall become a Participant in the Plan and shall remain a Participant for as long as provided by and in accordance with the provisions of any Component Plan." (*Id.* at § 3.01.) The Severance Plan is

2

one of a number of Component Plans; together with the Wrap Plan, the Severance Plan constitutes the Plan. (*Id.* at § 2.05 & App. B.)

The Wrap Plan clearly delegates to the Plan Administrator the ability to interpret the terms of Plan:

> The Plan Administrator and Administrative Committee, in the exercise of their responsibilities, ***shall have the full discretionary power to administer the Plan in all of its details***, subject, however, to the requirements of ERISA or other applicable law. All interpretations, findings, and decisions of the Plan Administrator and Administrative Committee, as applicable, shall be final and conclusive. ***Such powers include, but are not limited to, full discretionary authority to . . . [c]onstrue and interpret the terms of the Plan***, including the power to remedy possible ambiguities, inconsistencies or omissions.

(*Id.* at § 4.08 (emphasis added).) Additionally, the Plan Administrator has "sole absolute discretion over claims and appeals issue and determination" under the terms of the component Severance Plan. (Dkt. No. 1-1, Severance Plan, at 8.)

In order to meet the eligibility requirements to become a participant in the Plan, Northrop Grumman management must decide to offer an employee severance, and that employee's respective vice president of human resources must execute a memo notifying the employee that he or she is eligible (the "Eligibility Memo"). (*Id.* at 4.)

On April 9, 2013, plaintiffs Alan Carlson and Peter DeLuca filed a lawsuit against Defendants alleging that they violated ERISA §§ 502(a)(1)(B) and 510 by not giving plaintiffs the Eligibility Memo necessary to participate in the Plan. (Dkt. No. 1, Compl.) On March 31, 2014, the Court issued an opinion and order denying Defendants' motion to dismiss as to the two ERISA claims. (Dkt. No. 29, Mem. Op. & Order.) The Court explicitly reserved the right to reconsider its rulings, however, upon further factual development or additional briefing. (*See id.* at 7, 8, 10.) Notably, while Northrop Grumman provided plaintiffs with copies of the Wrap Plan and the Severance Plan prior to April 9, plaintiffs only attached the Severance Plan to their

3

complaint. (*See* Dkt. No. 1-1, Severance Plan.) The Severance Plan only contained a summary of the Plan Administrator's discretion in administering the Plan; the full extent of the Plan Administrator's discretion is set forth in the Wrap Plan. (*See* Ex. 1, Wrap Plan, § 4.08.)

Recently, over a year after filing their lawsuit, on June 16, 2014, plaintiffs filed a motion to amend their complaint to bring their original two claims on behalf of a class of former employees of Northrop Grumman and add a class claim for equitable reformation under § 502(a)(3). (Dkt. No. 39, Mot. to Am.) Plaintiffs defined the class as all former employees of Northrop Grumman who, among other allegations, were denied benefits because they did not receive the Eligibility Memo. (Dkt. No. 39-5, Am. Compl., ¶ 40.)

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), courts consider a number of factors when denying a motion to amend a complaint. "The right to amend a complaint is not absolute." *In re Ameritech Corp.*, 188 F.R.D. 280, 282 (N.D. Ill. 1999). "The determination of whether to grant an amendment to a complaint is within the sound discretion of the district court." *Id.* at 283. District courts may deny leave to amend where there is undue prejudice to the defendants or where the amendment would be futile. *Id.* at 282-83. Plaintiffs have the burden to show that there is no undue prejudice, which "occurs when the amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and when the additional discovery is expensive and time-consuming." *Id.* at 283 (quotations omitted). Additionally, an amended complaint is futile if it "would not withstand a motion to dismiss," *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974-75 (7th Cir. 2001), or "would not survive a motion for summary judgment." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). As shown below, plaintiffs' motion is both prejudicial and futile.

4

## IV. ARGUMENT

Plaintiffs unduly waited over a year since the initiation of the case to bring this motion to amend, and the new class action allegations will drastically increase the scope, discovery, and required briefing of what is now two simple individual benefit claims ready for dispositive motion briefing. Moreover, the amended complaint is futile because it is grossly deficient in satisfying the requirements of Federal Rule of Civil Procedure 23 and does not state a viable claim for any of its three counts. In particular, the Wrap Plan demonstrates that putative class members were not entitled to benefits under the terms of the Plan and hence have no claim under § 502(a)(1)(B), and were never participants in the Plan with standing to allege a § 510 claim. As nonparticipants, plaintiffs also lack standing to assert their claim of last resort under § 502(a)(3), which is nothing more than pure speculation in any event. This Court should deny plaintiffs' untimely, prejudicial, and ultimately futile motion to amend.

### A. The Amended Complaint Unfairly Prejudices Defendants.

Plaintiffs' motion attempts to turn a simple dispute over the availability of severance benefits to two individuals in one company division in suburban Chicago into a nationwide class action involving former employees not granted severance for various reasons by various managers. Given its delayed timing and grossly expansive claims, plaintiffs' amended complaint would result in undue prejudice to Defendants. The Seventh Circuit has instructed that it is proper to reject amended complaints that contain "new complex and serious charges" that "would undoubtedly require additional discovery for the defendants to rebut." *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993); *see also Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) (denying leave to file amended complaint because engaging in substantial additional discovery caused prejudice to opposing party). Plaintiffs' attempt to change their complaint from claims alleging that two individuals "within one division of one

sector of Northrop Grumman" were entitled to severance benefits, (Dkt No. 39, Mot. to Am., at 2), into claims challenging discrete employment decisions relating to "likely over 1,000 individuals" from numerous sectors, divisions, and programs of Northrop Grumman, (Dkt. No. 39-5, Am. Compl., ¶ 39), is exactly the type of "new complex and serious charges" frowned upon by the Seventh Circuit in *Ferguson*. Plaintiffs' unsubstantiated amendments, if allowed, would substantially change the nature of this case and vastly increase the scope of discovery.

"It is well-established that . . . additional discovery and delay constitute undue prejudice sufficient to require denial of a proposed amendment, particularly where . . . the conclusion of the case is in sight." *Jones v. GES Exposition Servs., Inc.*, 2004 WL 2011396, *7 (N.D. Ill. Sept. 7, 2004) (denying motion to amend). In this simple case, plaintiffs have already propounded *two sets* of interrogatories and *three sets* of requests for production since discovery began on April 15, 2014, which Defendants have answered. Discovery is nearing completion and this case is ready for a summary judgment briefing schedule. Expanding the scope of this case would undoubtedly necessitate new extensive discovery, further delaying its timely adjudication to the prejudice of Defendants and the Court. *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990) ("Eleventh hour additions of new legal and factual theories . . . [are] bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.").

In denying a similar motion to amend to assert a class action brought ten months after the case began, the court in *Ameritech* recognized that a "class action suit is substantially different from the pending action because class discovery issues are complex and time consuming" and found that this additional discovery would substantially prejudice plaintiffs. 188 F.R.D. at 282 at 283, 285; *see also Skokie Gold Standard Liquors v. Joseph E. Seagram*, 99 F.R.D. 108, 110

(N.D. Ill. 1983) (denying motion to add class allegations due to prejudice to defendant). The court in *Ameritech* also found that defendant did not have a valid reason for bringing its motion to amend over a year after the case began. 188 F.R.D. at 286. Plaintiffs here waited over a year to bring their new class allegations, and assert nothing but speculation that all former employees across the nation not receiving severance have identical claims.

Plaintiffs offer a number of weak excuses for filing their untimely motion, none of which entitle them to amend their complaint. Plaintiffs claim that they "did not have the necessary information to allege a class action" prior to discovery. (Dkt. No. 39, Mot. to Am., at 3.) This excuse is not credible. Plaintiffs admitted in their original complaint that they had knowledge of additional individuals who were denied severance benefits by Northrop Grumman, the same individuals they now seek to add as class members in their proposed amended complaint. (*See id.* at 3-4.) Additionally, as Defendants pointed out in opposition to the original complaint, the logical implication of plaintiffs' theory of the case was that Northrop Grumman was "required to provide severance benefits to each and every full-time Northrop employee that is laid-off." (Dkt. No. 17, Reply Br., at 2.) Plaintiffs knew at the time of filing over fourteen months ago what they know now. *See Ameritech*, 188 F.R.D. at 286 (finding that delay of over a year in amending pleading was prejudicial).

In making the irrelevant argument that Defendants should have known that plaintiffs would amend their complaint to add class allegations and claims, plaintiffs offer a litany of baseless reasons ranging from Northrop Grumman's choice of counsel,[1] to its discovery

---

[1] Plaintiffs conjecture that Defendants purposely "hired counsel who specializes in class action ERISA litigation, rather than handling individual claims." (Dkt. No. 39, Mot. to Am., at 3-4.)

responses.[2] None of these so-called reasons help plaintiffs meet their burden to prove that prejudice will not result from their actions. *See Talton v. Unisource Network Servs., Inc.*, 2004 WL 3119007, \*3 (N.D. Ill. Dec. 21, 2004) ("[A] party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party.") (quoting *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994)).

Equally problematic is that plaintiffs' allegations rest on speculation and conjecture, demonstrated by the fact that plaintiffs' motion and proposed complaint contain such phrases as: "Defendants' strategy in this case *appears* that . . ."; "Plaintiffs *suspect* . . ."; "The purpose of Defendants' discovery positions thus *appears* to be . . ."; and numerous allegations based "[u]pon information and belief." (Dkt. No. 39, Mot. to Am., at 4-5 (emphasis added); Dkt. No. 39-5, Am. Compl., ¶¶ 6, 32, 41, 42, 65.).) Such speculative allegations do not satisfy Rule 8's pleading requirements. *See Twombly, 550 U.S. at 555* ("Factual allegations must be enough to raise a right to relief *above the speculative level*[.]") (emphasis added).

Plaintiffs also implausibly claim that "[a]mendment of the complaint would not cause any undue hardship to Defendants[.]" (Dkt. No. 39, Mot. to Am., at 5.) Plaintiffs have it backwards; while denying the motion to amend will have absolutely no effect on plaintiffs, granting it will severely prejudice Defendants. "To determine whether sufficient prejudice exists to justify denial of an amendment, the Court balances the respective interests of the parties." *Ameritech*, 188 F.R.D. at 283. Plaintiffs Alan Carlson and Peter DeLuca will suffer no prejudice if the Court denies the amendment because they are already litigating their claims before this Court; denial will only affect potential class members who are not parties to this litigation, who to date have never challenged their ineligibility for severance, who apparently have no interest in doing

---

[2] Plaintiffs take issue with the request that their counsel contact a potential witness through Defendants' counsel, Defendants' attempt to limit the scope of discovery to permissible topics, and Defendants' objections to discovery requests, (Dkt. No. 39, Mot. to Am., at 4), all of which are common occurrences in federal litigation.

so, and whose rights will not be affected one way or the other by plaintiffs' individual benefits case. As described in detail above, Defendants will be significantly affected by the increased discovery and procedures associated with the new class allegations. As recognized in *Ameritech* and *Skokie*, class certification entails additional (and costly) discovery and briefing separate and apart from discovery and briefing on the underlying merits of a claim. *Ameritech*, 188 F.R.D. at 285; *Skokie*, 99 F.R.D. at 110. Plaintiffs' insinuation that class certification will not be a major issue for their amended complaint ignores not only *Ameritech* and *Skokie*, but also recent instruction from the Supreme Court as to the merits evidence that plaintiffs must prove at the class certification stage. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011); *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).

> **B. The Futility of Plaintiffs' Proposed Amendment Is an Additional Ground to Deny Their Motion.**

An amended complaint is futile if it "would not withstand a motion to dismiss." *Vargas-Harrison*, 272 F.3d at 974-75. Plaintiffs' amended complaint is futile for four distinct reasons. First, plaintiffs cannot satisfy the requirements of Rule 23 to maintain a class action. Second, plaintiffs cannot state a § 502(a)(1)(B) claim because neither they nor the class members they seek to represent received the Eligibility Memo necessary for benefits under the express terms of the Plan. Third, plaintiffs cannot state a § 510 claim because none of the plaintiffs nor class members were participants in the Plan entitled to the protection of § 510. Fourth, plaintiffs cannot state a § 502(a)(3) claim because they were not participants in the Plan with standing to bring breach of fiduciary duty claims, and the same failings as to plaintiffs' allegations in their first two Counts denies them the relief sought by the catch-all allegations pled in § 502(a)(3).

9

1.	**Plaintiffs Cannot Maintain a Class Action.**

As shown by the allegations of their own proposed amended class complaint, plaintiffs cannot satisfy the requirements of Rule 23. An amended complaint bringing new class allegations is futile if it is "insufficient as a matter of law to satisfy the required prerequisites set out in Rule 23(a) necessary to maintain a class action." *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1033 (6th Cir. 1992); *see also Panetta v. SAP Am., Inc.*, 2006 WL 2711747, *3-4 (E.D. Pa. Sept. 20, 2006) (denying motion to amend for futility because plaintiff could not satisfy Rule 23(b)). Under *Wal-Mart* and *Comcast*, "plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." *Haliburton Co. v. Erica P. John Fund, Inc.*, 124 S.Ct. 2398, 2412 (2014). Plaintiffs have utterly failed to do so here. Plaintiffs offer only conclusory allegations of typicality, commonality, and adequate representation under Rule 23(a). (*See* Dkt. No. 39-5, Am. Compl., ¶¶ 44-46.) Plaintiffs allege commonality based on nothing more than sweeping questions asking "whether" Northrop Grumman acted in a certain manner. (*Id.* at ¶ 45.) The discretion left to each employee's manager to determine a right to severance specifically undermines the commonality and typicality required for a class action. Plaintiffs fail to show that the various managers and vice presidents of human resources across the numerous sectors, divisions, and programs of Northrop Grumman nationwide acted in unison in denying severance to all putative class members, all for the same reasons, as required for predominance purposes under Rule 23(b)(3). *See Wal-Mart*, 131 S.Ct. at 2552 ("Without some glue holding the alleged *reasons* for all those [employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*."). Similarly, plaintiffs make only a broad-brush accusation that their claims are "typical," (Dkt.

No. 39-5, Am. Compl., ¶ 44). *See Smith*, 953 F.2d at 1033 (denying motion to amend where plaintiffs "offered little more than conclusory allegations to support his proposed amendment").

2.     **Plaintiffs Cannot State a § 502(a)(1)(B) Claim on Behalf of the Class.**

In its March 31 Opinion and Order, this Court stated that it was not clear whether the Plan documents conferred discretion upon the Plan Administrator to interpret the Plan terms and thus found that it was an "open question" whether the arbitrary and capricious standard should apply to the decision that the Eligibility Memo was a qualification for the plan. (*See* Dkt. No. 29, Mem. Op. & Order, at 6.) This Court also held that "[t]he plausibility of Plaintiffs' Section 502 claim turns on whether the terms of the plan are ambiguous or unambiguous in describing eligibility for benefits." (*Id.* at 8.) The Court reserved its ruling on this point "pending later briefing" and further development "of the facts of the case[.]" (*Id.* at 7-8.) The Wrap Plan, now before the Court,[3] undisputedly shows that the Plan documents conferred discretion upon the Plan Administrator to interpret the terms of the Plan, and decide any questions of ambiguity. (Ex. 1, Wrap Plan, § 4.08(f).) As quoted in section II above, the Wrap Plan language "unequivocally leave[s] interpretations of Plan terms in the Administrator's hands," (Dkt. No. 29, Mem. Op. & Order, at 6), and thus requires application of the arbitrary and capricious standard to the Plan Administrator's determination that employees not receiving the Eligibility Memo have no right to benefits. *See Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

The Plan Administrator applied the same reasoning as this Court in making its decision. As the Court determined, "the language of the Plan suggests that eligibility for benefits is

---

[3] In determining whether a complaint can withstand a motion to dismiss, courts may consider documents not attached to a complaint if they are referred to in the complaint, concededly authentic, and central to plaintiffs' claims. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). Plaintiffs recognized and relied on this rule by introducing documents outside of the complaint in opposition to the motion to dismiss. (*See* Dkt. No. 16, Resp. Br., at 4 n.1.) The Wrap Plan and its component Severance Plan make up the Plan, (Ex. 1, Wrap Plan, § 2.05), and were therefore referred to in the complaint and undoubtedly central to the claims in the amended complaint.

11

premised on whether applicants are in possession of the Eligibility Memo." (Dkt. 29, Mem. Op & Order, at 8.) Since a plain reading of the Plan terms suggests the same interpretation made by the Court as well as the Plan Administrator, the Plan Administrator's interpretation cannot be arbitrary and capricious. *See Wetzler v. Illinois CPA Soc'y & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) ("Under the [arbitrary and capricious standard], an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language."). Plaintiffs' § 502(a)(1)(B) claim fails on behalf of both class and the plaintiffs.

### 3. Plaintiffs Cannot State a § 510 Claim on Behalf of the Class.

Once the Plan Administrator's interpretation is judged under the arbitrary and capricious standard, plaintiffs' § 510 claim also fails. Under the terms of the Plan, a "Participant" is defined as "[a]n Employee who has fulfilled the eligibility requirements with respect to a Component Plan" such as the Severance Plan. (Ex. 1, Wrap Plan, § 2.10.) The Plan further states that, "[a]n Employee who has fulfilled the eligibility requirements with respect to any Component Plan *shall become* a Participant in the Plan and shall remain a Participant for as long as provided by and in accordance with the provisions of any Component Plan." (*Id.* at § 3.01 (emphasis added).) The Severance Plan, in turn, describes the Eligibility Memo as a "condition[] for receiving benefits." (Dkt. No. 1-1, Severance Plan, at 3.) Given these clear terms, the Plan Administrator's determination that to participate in the Plan an employee must receive the Eligibility Memo cannot be said to be unreasonable. *See Carr*, 195 F.3d at 294.

It then follows that if the class members whom plaintiffs seek to represent were never participants in the Plan, § 510 does not apply. As plaintiffs recognized in their opposition to the motion to dismiss, "[i]n construing any statute, a court should begin with its clear language." (Dkt. No. 16, Resp. Br., at 10.) ERISA Section 510 by its clear language applies only to

12

participants: "It shall be unlawful for any person to . . . discriminate against a *participant* or beneficiary . . . for the purpose of interfering with the attainment of any rights to which such *participant* may become entitled under the plan." 29 U.S.C. § 1140 (emphasis added). As the Plan Administrator determined looking at the plain words of the Plan, former employees who failed to receive the Eligibility Memo were not participants in the plan. *See Sallee v. Rexnord Corp.*, 985 F.2d 927, 929 (7th Cir. 1993) (dismissing claims against former employees who never became participants under a severance plan because § 510 "protects only plan participants and beneficiaries, statuses never achieved by appellants").[4]

Plaintiffs do not argue that Northrop Grumman prevented *participants* from becoming entitled to benefits under the Plan to which they were otherwise entitled (which § 510 covers). Rather, they argue that Northrop Grumman prevented *former employees* from being chosen to become *participants* in the first instance (which § 510 does not cover). *See Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 824 (7th Cir. 2000) ("For its part, section 510 only applies if the employees can show (among other things) that they were qualified under the plan for the denied benefits."); *see also Bailey v. U.S. Enrichment Corp.*, 2012 WL 4848877, *7 (S.D. Ohio Oct. 11, 2012) ("Plaintiffs' § 510 claim falls well short of stating a claim for relief, primarily because as non-participants [in the severance plan], they have no right to severance benefits under the Plan.").

---

[4] *Salle* is not inconsistent with *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786 (7th Cir. 1996), in which the Seventh Circuit held that plaintiff had standing to bring suit under § 502 against a severance plan even though he failed to satisfy one of the plan eligibility requirements – execution of a release form. In *Panaras*, plaintiff could show that he had a colorable claim to vested benefits (and thus qualified as a participant under ERISA) because his employer promised to provide severance benefits to all of its terminated employees. 74 F.3d at 791. However, in cases where a party must satisfy a <u>subsequent eligibility requirement</u> to become a participant (such as receive a discretionary Eligibility Memo) but fails to do so (as is the case with plaintiffs and class members), *Panaras* does not apply. *See Sallee*, 985 F.2d at 929 (dismissing § 510 claim where termination was an eligibility requirement but plaintiffs voluntarily quit); *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999) (dismissing § 510 claim where total disability was requirement but plaintiff failed to show she was member of this protected class).

In the March 31 Opinion and Order, the Court questioned whether all employees were participants in the Plan and whether the Eligibility Memo was simply an administrative task. (*See* Dkt. No. 29, Mem. Op. & Order, at 10.) However, with the addition of the Wrap Plan, we see that the unambiguous terms of the Plan provide that the Eligibility Memo was not simply an administrative task, but a requirement for determining *whether someone was a participant* in the Plan.[5] That interpretation comports with the finding of the Plan Administrator, who has sole authority to interpret the terms of the Plan.

As the Seventh Circuit has instructed, there is nothing improper about a severance plan, like the one here, which leaves to the discretion of management the decision of whether to offer an employee severance. *See*, *e.g.*, *McNab v. Gen. Motors Corp.*, 162 F.3d 959, 962 (7th Cir. 1998) (finding that "it is lawful to adopt a plan that gives discretion to senior managers"). Northrop Grumman management exercised the discretion, referred to in the Plan, not to give plaintiffs the Eligibility Memo necessary to entitle them to participate in the Plan. Under *McNab* and the express Plan terms, plaintiffs do not have a viable case, individually or on behalf of a class.

### 4. Plaintiffs Cannot State a § 502(a)(3) Claim on Behalf of the Class.

Plaintiffs' § 502(a)(3) claim fails for similar reasons as their § 510 claim. Plaintiffs allege that "Northrop Grumman breached its fiduciary duty of disclosure to *participants* by not amending the language of the summary plan description to explain the changes in how Northrop Grumman would apply the eligibility rules, and by continuing to tell *participants* the memorandum served the same function it did in 2010 and 2011 . . . ." (Dkt. No. 39-5, Am. Compl., ¶ 81 (emphasis added).) As an initial matter, under ERISA's strict standing

---

[5] *See* Exhibit 1, Wrap Plan, § 2.10 (stating that a Participant must have "fulfilled the eligibility requirements" of the Severance Plan); Dkt. No. 1-1, Severance Plan, at 2 (stating that a former employee "must also have received a cover memo, signed by a Vice President of Human Resources," *i.e.* the Eligibility Memo, to be eligible for the Plan).

requirements to bring a breach of fiduciary duty claim, an individual also must be a participant in a plan. *Ameritech Benefit Plan Comm.*, 220 F.3d at 824; *see also* 29 U.S.C. § 1132(a)(3). As explained above, the putative class members were never participants in the Plan. Plaintiffs' claim in Count III fails for the further reason that amending a plan is not a fiduciary action. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999) (holding that employers do not act as fiduciaries under ERISA when they "adopt, modify, or terminate welfare plans"). The final nail in the coffin is that plaintiffs' vague assertion that "Northrop Grumman made changes to the administration, interpretation, or terms of the Plan," (Dkt. No. 39-5, Am. Compl., ¶ 77), does not pass the specific pleading requirements of *Iqbal* and *Twombly*. Plaintiffs present no facts showing that Northrop Grumman changed the plan terms, nor can they, as the documents introduced by plaintiffs show that since the inception of the Plan, the Plan terms did not change. (*Compare* Dkt. No. 1-1, 2012 Plan, at 3 *with* Dkt. No. 16-1, 2010 Plan, at 3.) Plaintiffs further produce nothing to support their contention that plan administration, application, and interpretations changed. In fact, nothing changed. Rather, Northrop Grumman management exercised its discretion under the Plan terms not to provide plaintiffs with the Eligibility Memo necessary to make them eligible for severance benefits. For all of these reasons, plaintiffs' eleventh hour breach of fiduciary duty claim must fail.

## V. CONCLUSION

For the reasons stated above, the Court should deny plaintiffs' motion to amend their complaint to assert a class action and add a new claim.

Dated: July 28, 2014                          Respectfully submitted,

                                                 */s/ Kirk Watkins*
                                                 Nancy G. Ross (6190243)
                                                 Kirk Watkins (6307274)
                                                 Sam P. Myler (6309755)
                                                 MCDERMOTT WILL & EMERY LLP

227 West Monroe Street
Chicago, Illinois 60606
312.372.2000
312.984.7700 facsimile
nross@mwe.com
kwatkins@mwe.com
smyler@mwe.com

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014, I electronically filed **Defendants' Brief in Opposition to Plaintiffs' Motion to Amend** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

*/s/ Kirk Watkins*
Attorney for Defendants