# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ALAN CARLSON and PETER DELUCA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NORTHROP GRUMAN CORPORATION and the NORTHROP GRUMAN SEVERANCE PLAN, | ) ) ) ) ) | 13 C 2635<br><br>Magistrate Judge<br>Maria Valdez |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court is a Motion for Leave to File a First Amended Complaint [Doc. No. 39] by plaintiffs Alan Carlson and Peter Deluca ("Plaintiffs") pursuant to Fed. R. Civ. P. 15(a)(2). Plaintiffs seek to amend the complaint to include claims for class-wide relief. Defendants, Northrop Grumann Corporation and the Northrop Grumman Severance Plan ("Defendants"), oppose the motion. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court grants Plaintiffs' motion.

<u>**BACKGROUND**</u>

Plaintiffs are former employees of defendant Northrop Grumman Corporation ("Northrop"). As part of their employment, Plaintiffs were enrolled in the Northrop Grumman Severance Plan ("the Plan"), which is an employee "welfare benefit plan" governed by Title I of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. *See* 29 U.S.C. § 1002(1); 29 C.F.R. § 2510.3-1(a)(3). As the Plan Sponsor and Plan Administrator, Northrop is in charge of the administration and oversight of the Plan.

Before 2011, the Plan consisted of the Northrop Grumman Severance Plan Summary Plan Description ("SPD"), which is a summary of employee benefits that is distributed to all Northrop employees. However, in 2011, Northrop changed its policy and introduced the Wrap Plan. Among other things, the Wrap Plan provides Northrop with the authority to interpret the Plan's terms. According to this new scheme, the SPD is one of a number of component plans, which, together with the Wrap Plan, constitute the Plan. The Wrap Plan, however, was not distributed to employees.

At issue are the eligibility criteria for severance benefits contained in the SPD, which states in relevant part that in order to receive benefits: "[y]ou must be designated as eligible for this plan by a vice president of human resources. . . . You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (SPD at 3 [Compl., Ex. 1].) According to Plaintiffs, before 2011, Northrop merely treated the memo from human resources ("the Memo") as an

administrative tool to notify employees who were already eligible for severance benefits. However, after 2011, and pursuant to the authority conferred by the Wrap Plan, Northrop changed its policy by interpreting the SPD to mean that receipt of the Memo is a condition precedent to receiving benefits. Accordingly, whether an employee was entitled to benefits was, in part, a matter for human resources to decide on a case by case basis.

After being laid off on August 3, 2012, Plaintiffs did not receive the Memo. As a result, Northrop's claim processors determined that Plaintiffs were not eligible for severance benefits, although they continued to provide Plaintiffs health benefits under the Plan. This came as a great surprise to Plaintiffs because Northrop never communicated the policy change to its employees. Consequently, Plaintiffs filed a complaint against Defendants on April 9, 2013, claiming that Defendants violated their rights under ERISA.

Count I of the original complaint alleges that Defendants owe Plaintiffs severance benefits due under the Plan pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In Count II, Plaintiffs allege that Northrop unlawfully interfered with their right to obtain benefits under the Plan by failing to deliver the Memo, in violation of ERISA Section 510, 29 U.S.C. § 1140.[1] Now, after the parties exchanged initial discovery, Plaintiffs claim that Defendants similarly denied severance benefits to many other Northrop employees, and thus Plaintiffs seek leave to amend the complaint to include claims for class-wide relief on behalf of

---

[1] The original complaint also contained a claim for breach of contract under state law. However, this claim was dismissed on March 31, 2014. [Doc. No. 27.]

similarly situated Northrop employees. Specifically, Plaintiffs seek to bring Counts I and II on behalf of the proposed class, and to add third count for equitable reformation of the Plan pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

## DISCUSSION

Where, as here, there is no Rule 16(b) scheduling order limiting the time to amend pleadings, a proposed amendment should be analyzed under Rule 15(a). *Caliber One Indem. Co. v. Millard Chi. Window Cleaning, LLC*, No. 04 C 2424, 2005 WL 1206472, at *3 (N.D. Ill. May 12, 2005) (citing *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 n.1 (7th Cir. 2002)). In relevant part, Rule 15(a) provides that after a responsive pleading has been filed, a party may amend the pleading only by leave of court. Fed. R. Civ. P. 15(a). Leave to amend should be freely given unless the amendment would be futile, or result in undue delay or undue prejudice to the opposing party. *Id.*; *Cannon v. Washington,* 418 F.3d 714, 720 (7th Cir. 2005). However, the decision to grant leave to amend is committed to the sound discretion of the trial court. *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994).

In the instant matter, Defendants argue that Plaintiffs' Motion should be denied because: (1) Plaintiffs unduly delayed filing the Motion; (2) Defendants will be unduly prejudiced if it is granted; (3) Plaintiffs do not have standing to bring any of their claims under ERISA; and (4) Plaintiffs cannot maintain a class action under Rule 23. The Court addresses each argument in turn.

## A. <u>Undue Delay</u>

When seeking leave to amend, the movant has the burden of showing that its delay in seeking the amendment is justified. *In re Ameritech Corp.*, 188 F.R.D. 280, 286 (1999). Nevertheless, "delay alone will not generally justify denying a motion to amend a pleading absent a showing of prejudice from the delay." *King*, 26 F.3d at 723. For example, where the proposed claim was previously unknown or could not have been added earlier, courts are more likely to find excusable delay. *Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2004 WL 2966948, at *4 (N.D. Ill. Nov. 24, 2004); *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1993 WL 390176, at *3 (N.D. Ill. Oct. 1, 1993) ("Where the proposed causes of action are related to the claims contained in the initial complaint, and where the need to amend [does] not become apparent until after some discovery is completed, the general rule is to allow the movant to amend its complaint.").

Here, Plaintiffs argue that they did not unduly delay filing the proposed amendment because the facts supporting the amendment were not available until the parties exchanged initial discovery. In response, Defendants assert that Plaintiffs' delay is necessarily undue because more than a year has passed since the original complaint was filed. Furthermore, Defendants note that the original complaint alleges that at least two other Northrop employees were similarly denied severance benefits, and therefore Defendants argue that Plaintiffs could have filed a class claim at the inception of this case. The Court agrees with Plaintiffs.

Although the proposed amendment was filed more than a year after the original complaint, the record reveals that the delay was not Plaintiffs' fault. Plaintiffs filed this case on April 9, 2013. Defendants then filed a motion to dismiss on May 17, 2013. Six months later, and before the motion to dismiss was ruled upon, the Executive Committee ordered the case reassigned to another District Judge. According to the Joint Reassignment Status Report filed before that District Judge, "Defendants communicated they believe all discovery and disclosures should be stayed until [the motion to dismiss] is ruled upon." [Doc. No. 22 at 2.] Plaintiffs agreed, and thus the parties did not exchange discovery. The case then remained pending without any ruling on the motion to dismiss until March 31, 2014, after the parties consented to the jurisdiction of this Court. The Court then denied the motion to dismiss, and discovery finally commenced. As such, this case lingered for an entire year without any exchange of discovery.

Once discovery began, Plaintiffs promptly filed the instant Motion less than one month after they discovered the pertinent facts from Defendants' responses. (*See* Pls.' Mot., Exs. 3, 4.) A one-month gap is hardly a delay, much less an undue delay. *See, e.g., Cowart v. David J. Axelrod & Assocs.*, No. 03 C 5341, 2004 U.S. Dist. LEXIS 7228, at *6 (N.D. Ill. Apr. 26, 2004) (excusing eight-month delay in seeking leave to amend even though plaintiff's excuse for the delay was "lacking"). Thus, as Plaintiffs have a legitimate excuse for the year-long delay, the Court finds that it was not undue.

The Court is similarly unpersuaded by Defendants' second argument — that Plaintiffs "admitted in their original complaint that they had knowledge of additional individuals who were denied severance benefits by Northrop," and therefore Plaintiffs could have brought a class claim in the first instance. (Defs.' Br. in Opp'n at 7.) In order for this argument to succeed, it must be shown that Plaintiffs could have satisfied the pleading requirements of Rule 8 and Rule 23 based on the information available to them at that time. The Court finds that Plaintiffs could not have done so.

Rule 8 requires that a complaint state facts showing the pleader is plausibly entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For class actions, Rule 8, in conjunction with Rule 23, further requires that the complaint state facts that plausibly establish numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 8; Fed. R. Civ. P. 23. Thus, for example, in order to establish numerosity, Plaintiffs would have had to allege facts showing that joinder of the other individuals would have been impracticable. *See Danis v. USN Communs., Inc.,* 189 F.R.D. 391, 399 (N.D. Ill. 1999) (stating that numerosity requires a showing that joinder would be extremely difficult or inconvenient). In that respect, while there is no threshold required to prove numerosity, "joinder is usually deemed impracticable where the class members number 40 or more." *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D. Ill. 1995).

In light of these standards, the Court finds no basis for Defendants' assertion that Plaintiffs could have brought a class claim in the first instance. The original

complaint merely states that Northrop "laid off . . . two other people in [Plaintiffs'] sector at the same time." (Compl., ¶ 2.) That Plaintiffs knew of two other similarly situated persons when they filed the complaint is hardly sufficient to demonstrate that joinder would be impracticable. Accordingly, Plaintiffs could not have satisfied their Rule 8 burden based on the facts known to them at that time, and thus Defendants' argument fails.

**B.** **Undue Prejudice**

Like undue delay, the moving party has the burden of showing that the proposed amendment will not unduly prejudice the opposing party. *See King*, 26 F.3d at 724. Of course, nearly every pleading amendment results in some prejudice to the opponent. *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 22848968, at *2 (N.D. Ill. Dec. 1, 2003). Thus, the relevant inquiry is whether the resulting prejudice is undue. *Id.* Undue prejudice may exist where a proposed amendment brings new and separate claims, adds new parties, or would require substantial additional discovery. *Id.* However, just because additional discovery will be necessary is not a reason by itself to deny a motion to amend. *Cohn v. Taco Bell Corp.,* No. 92 C 5852, 1993 WL 390176, at *3 (N.D. Ill. Oct. 1, 1993).

Plaintiffs argue that Defendants will not be prejudiced by the proposed amendment because significant discovery has not taken place, the theories of the case have not changed, and all the work that Defendants have done in complying with discovery requests will still be necessary if the case proceeds as a class action.

In response, Defendants argue they would be prejudiced by the proposed amendment because: (1) discovery is nearing completion; (2) expanding the scope of discovery to include a class claim would lead to new, extensive, and unmanageable discovery; and (3) when weighing the relative burdens that each party would face if Plaintiffs' Motion were to be denied, it is clear that Mr. Deluca and Mr. Carlson would suffer no burden, since they can seek relief regardless of whether this case proceeds as a class action.

First, discovery is not nearing completion. The Court postponed ruling on Defendants' proposed case schedule pending its ruling on the instant Motion. Second, Defendants overstate the burden that they would incur from additional discovery, and mistakenly rely on a number of cases to support a finding of undue prejudice. For example, Defendants cite *Campbell v. Ingersoll Milling Machine Co*, 893 F.2d 925 (7th Cir. 1990) (finding undue prejudice where plaintiff moved to amend three weeks before, the claim involved none of the named parties, and the plaintiff knew of the facts supporting the claim for five years), *Ferguson v. Roberts,* 11 F.3d 696 (7th Cir. 1993) (denying proposed amendment because it was a dilatory tactic and would significantly change the theories of the case), and *Ameritech Corp. v. Computer Systems Solutions, Inc.*, 188 F.R.D. 280 (1999) (finding undue prejudice where proposed amendment was offered two months after the close of discovery and the facts supporting the amendment were known to plaintiff for over a year). According to Defendants, these cases support the proposition that "eleventh hour additions" of new legal and factual theories are necessarily unduly prejudicial.

(Defs.' Br. in Opp'n at 6.) However, a common thread in the finding of undue prejudice among Defendants' cited cases is the addition of entirely new claims, after the close of discovery, and long after the pertinent facts were known to the moving party. The instant case is a far cry from that.[2]

Defendants' third argument — that on balance, Plaintiffs will suffer no prejudice if their motion is denied, whereas Defendants will incur the cost of more discovery — misses the mark. True, in deciding whether to grant or deny a proposed amendment, courts must balance the respective interests of each party. *See Ameritech*, 188 F.R.D. at 283. However, it does not follow that the scale tips in favor of Defendants simply because Plaintiffs would be able to litigate this case as individuals regardless of the outcome of the present Motion. Indeed, if Defendants' argument were to be accepted, then virtually any case in which a plaintiff sues initially as an individual could be rejected as a class action simply because the defendant would have to incur more discovery costs. As noted above, increased discovery, by itself, is not an undue burden, *see Cohn*, 1993 WL 390176, at *3.

---

[2] Although Count III of the Proposed Amendment Complaint — a claim for breach of fiduciary duty and equitable reformation of the Plan pursuant to ERISA Section 502(a)(3) — was not in the original complaint, the substance of the allegations in Count III is neither new nor complicated. As Plaintiffs have alleged all along, Northrop denied them severance benefits by changing the eligibility requirements under the Plan without communicating the change to Plaintiffs and other Northrop employees. Thus, Plaintiffs claim they were deceived. Accordingly, Plaintiffs now seek to have the Plan reformed to reflect their original understanding of the Plan's terms. As discussed, *infra,* Plaintiffs have alleged sufficient facts to bring this claim, and the facts pertaining to Count III have been at issue since the beginning of this case. The Court therefore finds that Count III is not sufficiently new or complex to justify denying Plaintiffs leave to amend on the basis of undue prejudice.

Defendants have not demonstrated undue prejudice. Very little discovery has taken place, and no significant discovery efforts will have to be duplicated. Additionally, no new substantive legal theories have been asserted.

## C.   <u>Futility</u>

In determining the futility of an amendment, courts apply the same standard of legal sufficiency that applies under Rule 12(b)(6). *Autry v. N.W. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). Under this standard, a plaintiff must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). To that end, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002).

In the instant matter, Defendants argue that the proposed amendment is futile because Plaintiffs cannot maintain a class action under Rule 23 and they do not have standing to bring claims under ERISA Sections 502(a)(1)(B), 502(a)(3), or 510. Although Defendants' arguments cast significant doubt on whether Plaintiffs can succeed on Counts I and II, the Court finds that the record is insufficiently developed to provide for a meaningful analysis and thus declines to find Counts I and II futile at this time. With respect to Count III, however, the Court finds both

that the record is sufficient and that Plaintiffs have alleged sufficient facts to support a class-wide claim under Section 502(c)(3).

### 1. Count I – ERISA Section 502(a)(1)(B)

The jurisdictional clause of ERISA provides that a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). To bring a claim under Section 502, claimants must establish that they have standing as a "participant" within the meaning of the statute. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). Where, as here, the plaintiff is a former employee, the term "participant" has been interpreted to mean someone who has "'a colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989); *Jackson,* 176 F.3d at 978-79. Consequently, a former employee seeking to recover under Section 502(a)(1)(B) must demonstrate that the benefits to which she is allegedly entitled are actually due; that is, the plaintiff must have a right to benefits that is legally enforceable against the plan. *Jackson,* 176 F.3d at 978-79.

Under ERISA, severance benefit plans are considered "welfare benefit plans." *See* 29 U.S.C. § 1002(1); 29 C.F.R. § 2510.3-1(a)(3). Unlike retirement or pension benefits, welfare benefits do not accrue or vest under ERISA. *Young v. Standard Oil (Ind.)*, 849 F.2d 1039, 1045 (7th Cir. 1988). As a result, employers may freely alter the terms of a welfare benefit plan without violating the statute. *Id.* However, welfare benefits may nonetheless vest according to the specific terms of a plan, and thus whether an employee's welfare benefits have vested must be determined by the

terms of the governing plan documents. *Senn v. United Dominion Indus., Inc.,* 951 F.2d 806, 814 (7th Cir. 1992); *In re White Farm Equip. Co.*, 788 F.2d 1186, 1193 (6th Cir. 1986) ("The parties may themselves set out by agreement or by private design, as set out in plan documents, whether . . . welfare benefits vest, or whether they may be terminated."). Consequently, in assessing the sufficiency of Plaintiffs' Section 502(a)(1)(B) claim, the issue is whether the Plan provided Plaintiffs with a vested right to severance pay. As explained below, the Court is unable to assess, as a matter of law, whether Plaintiffs' claim is futile.

At the time Plaintiffs were terminated, the governing Plan documents were the SPD and the Wrap Plan.[3] The Wrap Plan defines a "participant" as "an Employee who has fulfilled the eligibility requirements with respect to a component plan." (Defs.' Br. in Opp'n, Ex. 1 at 3.) The Wrap Plan further provides the Plan Administrator with "full discretionary authority to . . . . construe and interpret the terms of the Plan, including the power to remedy possible ambiguities, inconsistencies or omissions." (*Id.* at 7.) In that connection, the SPD, which is the relevant component plan, states that in order to receive benefits under the Plan, "you must be designated as eligible for this plan by a Vice President of Human Resources. . . . You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (Compl., Ex. 1 at 3.)

---

[3] Although the Proposed Amended Complaint does not specifically refer to the Wrap Plan, it details how Northrop unilaterally modified the terms of the Plan by adopting a new plan document, which is the Wrap Plan. (*See, e.g.,* Prop. Am. Compl., ¶ 5.) Thus, the Court may consider the Wrap Plan in deciding the instant Motion. *See Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) (stating that in determining whether a complaint can withstand a motion to dismiss, courts may consider documents not attached to a complaint if they are referred to in the complaint, concededly authentic, and central to the claims).

Pursuant to the discretionary authority provided by the Wrap Plan, the Administrator interpreted the eligibility requirements of the SPD to mean that receipt of the Memo is a condition precedent to receiving severance benefits. The question, then, is whether the Administrator's decision to deny Plaintiffs severance benefits was arbitrary and capricious. *See Reich v. Ladish Co.,* 306 F.3d 519, 524 (7th Cir. 2002) ("If the plan confers power on the administrator to exercise discretion, the Court's review is the deferential 'arbitrary and capricious' [standard].").

Under this standard, a plan administrator's decision should not be overturned so long as any of the following are true: (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome"; (2) the decision "is based on a reasonable explanation of relevant plan documents"; or (3) the administrator "has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1142-43 (7th Cir. 1990) (citations omitted). Nevertheless, deferential review is not "no review," and thus courts should not simply rubber stamp an administrator's decision. *Gallo v. Amoco Corp.,* 102 F.3d 918, 922 (7th Cir. 1996). Indeed, in some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461(7th Cir. 2001).

Here, Defendants argue that the reasonableness of the Administrator's decision is patently obvious because the pertinent facts are simple and undisputed: (1) the Administrator interpreted the Plan to mean that receipt of the Memo is a condition precedent to receiving severance benefits; (2) in both Mr. Carlson's and Mr. Deluca's cases, the evidence before Northrop's claim processors was that neither of them received the Memo from human resources; and therefore (3) Plaintiffs were deemed ineligible for severance benefits. This, according to Defendants, is the epitome of reasonableness because the denial of Plaintiffs' benefits flows logically from the Plan language (as interpreted by the Administrator) and the fact that Plaintiffs did not receive the Memo. The Court is unconvinced.

While the Court is mindful that the arbitrary and capricious standard is extremely deferential, it finds that there is insufficient evidence, under the motion to dismiss standard, to review the Administrator's decision. Particularly, the Court cannot determine whether Plaintiffs' ineligibility for severance benefits was based on a reasonable interpretation of the Plan because there is no indication of what standard, if any, Northrop used to determine who receives the Memo and who does not. Although Defendants gloss over the issue by claiming that the only relevant consideration is whether Plaintiffs in fact received the Memo, this argument puts the cart before the horse.

The focal point for arbitrary and capricious review in this case is *why* Plaintiffs did not receive the Memo, not simply *whether* they received it. In particular, the Administrator must articulate a rational connection between the

facts found, the issue to be decided, and the choice made. *See Speciale v. Blue Cross and Blue Shield* Ass'n, 538 F.3d 615, 621-24 (7th Cir. 2008). This Court is unwilling to find that the mere existence of a memorandum (of unknown subject matter) in an employee's file meets the standard without first giving Plaintiffs the opportunity to discover information regarding the relevant *Speciale* factors. Thus, without additional information by which to judge the Administrator's decision, the Court cannot conduct any review whatsoever, much less a meaningful review. As such, the Court finds that Plaintiffs *may* be plausibly entitled to benefits under Section 502(a)(1)(B), and therefore it cannot find that Count I is futile.

Similarly, the Court further finds that a determination of whether Count I satisfies the pleading requirements of Rule 23 would be premature. The extent to which Plaintiffs' claims are typical of and common to the putative class will turn on whether Plaintiffs have standing and the reasons why Plaintiffs did not receive the Memo. Currently, these issues are unresolvable, and therefore the Court cannot say with certainty that Plaintiffs are not plausibly entitled to class-wide relief. Accordingly, the Court permits Plaintiffs to amend the complaint to bring Count I on behalf of the putative class. *See Albany Bank,* 310 F.3d at 971.

2.     *Count II – ERISA Section 510*

Section 510 states:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . . or for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan.

29 U.S.C. § 1140. To state a claim under Section 510, a plaintiff must allege that (1)

he is a "participant" within the meaning of ERISA who was (2) discharged, fined,

suspended, disciplined, or discriminated against (3) for the purpose of interfering

with his attainment of rights under the Plan. *Nauman v. Abbott Labs.*, 669 F.3d

854, 857 (7th Cir. 2012). Here, Plaintiffs allege they were entitled to severance

benefits, but that Northrop intentionally failed to deliver the Memo to them with

the specific intent of undermining their eligibility for those benefits. While

Defendants offer numerous arguments for why this claim is futile, the Court

similarly defers judgment on the issue until the facts are further developed.

Plaintiffs Section 510 claim, like their Section 502(a)(1)(B) claim, turns on whether

Plaintiffs are indeed "participants" within the meaning of ERISA, which further

requires the Court to decide whether Northrop arbitrarily or capriciously denied

Plaintiffs severance benefits. As the Court does not yet have a legitimate basis upon

which to decide that issue, it declines to find Count II futile and thus permits

Plaintiffs to bring Count II on behalf of the proposed class.

### 3. *Count III – ERISA Section 502(a)(3)*

Section 502(a)(3) provides:

> A civil action may be brought "by a participant, beneficiary, or
> fiduciary (A) to enjoin any act or practice which violates any provision
> of this subchapter or the terms of the plan, or (B) to obtain other
> appropriate equitable relief (i) to redress such violations or (ii) to
> enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). To state a claim for breach of fiduciary duty under Section

502(a)(3), a plaintiff must establish three elements: (1) the defendant is a plan

fiduciary; (2) the defendant breached its fiduciary duties; and (3) the breach caused harm to the plaintiff. *Brosted v. Unum Life Ins. Co. of Am.,* 421 F.3d 459, 465 (7th Cir. 2005) (citation omitted). In that connection, Count III of the Proposed Amended Complaint alleges the following: (1) Northrop, as the Plan Sponsor and Administrator, is a Plan fiduciary; (2) Northrop breached its fiduciary duty of disclosure under ERISA by failing to amend the language of the SPD to reflect the Administrator's interpretation of the eligibility criteria for severance benefits; (3) Despite this change in policy, Northrop continued to tell its employees that the Memo was merely an administrative tool used merely to inform employees of their eligibility; and (4) Plaintiffs were thereby deceived regarding their employment benefits and suffered harm as a result.

Defendants contend that Count III is futile on various grounds. Defendants first argue that Plaintiffs do not have standing to bring a claim under Section 502(a)(3). Second, Defendants assert that Northrop did not act as a fiduciary because the act of amending a welfare benefit plan is not a fiduciary function. Lastly, Defendants argue that Plaintiffs cannot satisfy the requirement of Rule 23 to bring a class claim. The Court disagrees.

Contrary to Defendants assertions, a plaintiff can assert a claim for breach of fiduciary duty despite a lack of standing as a "participant" or "beneficiary" under Section 502(a)(1)(B). *See Clair v. Harris Trust and Sav. Bank,* 190 F.3d 495, 497-98 (7th Cir. 1999) (explaining that ERISA's strict standing requirements pertain only to recovery of *benefits* rather than claims for breach of fiduciary duty); *Neuma, Inc.*

*v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 848 (N.D. Ill. 2006) (permitting the plaintiff to bring a Section 502(a)(3) claim despite a lack of standing as a "participant" or "beneficiary" under Section 502(a)(1)(B)). Thus, even if Plaintiffs lack standing under Sections 502(a)(1)(B) and 510, the law is clear that they may nonetheless bring a claim for breach of fiduciary duty under Section 502(a)(3). *See Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996) (explaining that Section 502(a)(3) is a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by [ERISA] violations that § 502 does not elsewhere adequately remedy"). Accordingly, Defendants' first argument fails.

Defendants' second argument similarly misses the mark. Under ERISA, "[a] person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). ERISA thus "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Though Defendants correctly state that the act of adopting, modifying, or terminating an employee welfare benefit plan is not a fiduciary function, (Defs.' Br. in Opp'n at 15 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999)), this argument fails to appreciate the distinction between the creation/modification of a plan, which an

employer may do freely,[4] and the administration of a plan, which entails ERISA disclosure requirements[5] and fiduciary obligations.[6]

ERISA requires that employers disclose certain plan information to employees, and further provides that the failure to do so may constitute a breach of fiduciary duty. *See* 29 U.S.C. § 1104(a); *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009). For example, employers are required to provide their employees with summary plan descriptions of covered welfare benefit programs. 29 U.S.C. § 1024(b)(1)(B). Thereafter, employees must be notified of material modifications of covered benefit plans. 29 U.S.C. § 1024(b)(1). A modification qualifies as "material" if it relates to "the plan's requirements respecting eligibility for participation and benefits" and any "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Here, Plaintiffs claim that Northrop violated these requirements and thereby breached its fiduciary duty.

Accordingly, the issue is whether Plaintiffs have alleged sufficient facts to support this claim. As interpreted by the Seventh Circuit, a claim alleging a breach of the fiduciary duty of disclosure under Section 502(a)(3) requires evidence of either an intentionally misleading statement, or a material omission where the fiduciary's silence can be construed as misleading. *Hecker,* 556 F.3d at 585 (citing *Varity Corp.*, 516 U.S. at 505). The Court finds the Proposed Amended Complaint sufficient in that regard.

---

[4] *See* 29 U.S.C. §§ 1051, 1081.
[5] *See* 29 U.S.C. §§ 1021-1031.
[6] *See* 29 U.S.C. §§ 1101-1114.

Plaintiffs allege that prior to 2012, Northrop considered the Memo to be purely administrative rather than a condition precedent to eligibility. (Prop. Am. Compl., ¶¶ 5, 26.) After 2012, Plaintiffs claim that Northrop informed its employees of a variety of changes in the Plan but omitted any reference to the changes regarding the Memo and eligibility for severance benefits. (*Id.,* ¶ 34; *see also* Pls.' Reply, Ex. 17.) In this same vein, Plaintiffs further allege that Northrop failed to amend the SPD to reflect the changes in eligibility criteria, leaving the language unchanged from 2010 to 2012. (Prop. Am. Compl*.,* ¶ 33 and Exs. 1, 2.) While these facts do not definitively establish Northrop's intent to deceive, they do give rise to a plausible inference in that regard and are therefore sufficient to withstand a motion to dismiss. Thus, the Court finds that Plaintiffs have alleged sufficient facts to support the claim that Northrop both acted as a fiduciary and breached its fiduciary duty of disclosure.

The last substantive issue with respect to Plaintiffs' Section 502(a)(3) claim is damages. As the Supreme Court has explained, in stating a claim for breach of fiduciary duty under ERISA, "it is not difficult to imagine how the failure to provide proper summary information, in violation of the statute, [could injure] employees even if they d[o] not themselves act in reliance on summary documents*." CIGNA Corp. v. Amara,* 131 S. Ct. 1866, 1881 (2011). Plaintiffs allege precisely the sort of injury contemplated by *CIGNA.* Accordingly, the Court finds that Plaintiffs have sufficiently pleaded damages and therefore that the Proposed Amended Complaint states a plausible claim for breach of fiduciary duty under Section 502(a)(3).

The only remaining issue, then, is whether Plaintiffs can bring Count III on behalf of the proposed class. The Court finds that they can. In pleading a class action claim, a plaintiff must allege facts sufficient to establish the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequate representation. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Additionally, "the action must qualify under one of the types of class actions listed in Rule 23(b)." *Id.* In that regard, Defendants contend that Count III is futile because Plaintiffs have not *proven* that they can certify the proposed class under Rule 23. However, there is a difference between certifying a class, which requires proof of the allegations, and pleading a class claim. Under the federal notice-pleading standards, the allegations in a complaint must simply provide the defendant with fair notice of the claim and the grounds upon which it rests so that the defendant may file an answer. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In light of this standard, the Court finds the Proposed Amended Complaint sufficiently well-pleaded.

With respect to numerosity, "the exact number of class members need not be pleaded or proved, but impracticability of joinder must be positively shown, and not merely speculative." *Keele v. Wexler,* No. 95 3483, 1996 U.S. Dist. LEXIS 3253, at *3 (N.D. Ill. Mar. 19, 1996), *aff'd* 149 F.3d 589 (7th Cir. 1998). To that end, "the court is able to make common-sense assumptions in determining numerosity." *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 644 (N.D. Ill. 2002). Here, Plaintiffs allege that the class consists of "no fewer than 100 individuals, and more likely over a 1,000 individuals." (Prop. Am. Compl., ¶ 41.) Plaintiffs support this claim by

explaining that at the beginning of 2012, Northrop reported having 67,269 Plan participants, whereas at the end of 2012, Northrop reported only 61,967. (*Id.*) Plaintiffs further note that Defendants disclosed that at least 25% of Plan participants were denied severance benefits in a manner that would place them in the class. (*Id.,* ¶ 42.) This is sufficient to satisfy numerosity at the pleading stage. *See Chandler,* 162 F.R.D. at 307 (stating that numerosity is usually satisfied where the class members number forty or more).

The Court further finds that Plaintiffs have sufficiently pleaded typicality and commonality. A plaintiff's claim is typical of a class if it arises from the same event or practice that gives rise to the claims of other class members. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). Similarly, commonality is satisfied if questions of law and fact are common among all class members. Here, Plaintiffs allege their claims are "typical of the Class," (Prop. Am. Compl., ¶ 44), and that "common questions [of law and fact] predominate," (*id.*, ¶ 45).   Although these are bare bones allegations, they are all that is required under the federal notice pleading standard. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Moreover, given that Plaintiffs' Section 502(a)(3) claim turns on the simple fact that Northrop allegedly misrepresented the change in eligibility criteria to all Northrop employees, it is plainly obvious that Count III, if proven, would be typical of and common to the class.

Lastly, with respect to adequacy and superiority, the Court accepts Plaintiffs representation that there are no individual issues pertaining to their Section

502(a)(3) claim that would undermine their adequacy as class representatives or the superiority of a class action. As explained above, the legal and factual issues are virtually the same for all class members; namely, whether Northrop breached its fiduciary duty by failing to disclose or misrepresenting material changes in the Plan. Accordingly, the Court finds that Plaintiffs have sufficiently pleaded adequacy and superiority.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' Motion for Leave to File a First Amended Complaint [Doc. No. 39]. Plaintiffs must file their amended complaint no later than fourteen days from the date of this order.

**SO ORDERED.**

**DATE:  October 20, 2014**

HON. MARIA VALDEZ
**United States Magistrate Judge**