**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALAN CARLSON & PETER DeLUCA, individually and on behalf of all others similarly situated, | Case No. 13-2635 |
| | Magistrate Judge Maria Valdez |
| Plaintiffs, | |
| vs. | |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | |
| Defendants. | |

<u>**PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

Now come the Plaintiffs, ALAN CARLSON and PETER DeLUCA, by their undersigned attorneys, on behalf of themselves and all others similarly situated, allege the following pursuant to the investigation of their counsel and based on information and belief, except to allegations specifically pertaining to Carlson and DeLuca, which are made upon personal knowledge, as follows:

**NATURE OF THE ACTION**

1. This is a case about an employer purporting to provide severance benefits to employees through a written instrument, yet deciding to outright deny the cash payment portion of those benefits to the laid off employees simply because of how much severance the employees earned based on their years of service, meanwhile paying the continued medical and dental coverage benefits under the plan.

2. Alan Carlson and Peter DeLuca worked for Northrop Grumman Technical Services, Inc., a subsidiary of Northrop Grumman Corporation, for 35 and 38 years respectively.

Most recently, Alan Carlson worked as a Program Manager of Threat Simulation Systems in the Technical Services Sector. Peter DeLuca worked as an Engineering Manager in the Technical Services Sector.

3.     Northrop Grumman Corporation laid off Alan Carlson, Peter DeLuca, and two other people in their division of Northrop Grumman Technical Services sector at the same time as part of a Reduction in Force. All four individuals worked in the Rolling Meadows, Illinois location. The division also employed people in at least two other locations in the United States. The other two individuals had 32 years of service, and 25 years of service with the company.

4.     After terminating Alan Carlson's and Peter DeLuca's employment, and the employment of the others in their Sector, Northrop Grumman did not provide cash severance to any of them, though it did continue their medical, dental, and vision benefits coverage based on their years of service with Northrop Grumman. No other Northrop Grumman benefit plan other than the Severance Plan provides for such continuation of medical, dental, and vision benefits as Plaintiffs received them. Northrop Grumman simply did not want to pay out the cash portion of the benefits, and prevented a condition from occurring, which it then blamed for why it would not pay the severance.

5.     The terms of the Severance Plan did not change with respect to eligibility from 2010 to 2012. In late 2011, Northrop Grumman decided to change how it interpreted and administered the Severance Plan's eligibility criteria, making a clause regarding delivering a memo to a participant who was laid off notifying him he met the eligibility criteria for severance benefits into a discretionary decision to pick and choose which laid off employees could be eligible for severance, independent of any rule or standard written in the plan. Prior to 2012, Northrop Grumman always treated this memo as a means of notifying a laid off employee he met

the eligibility rules clearly stated in the plan (i.e., that the person worked over 20 hours per week in the United States and was laid off). Without disclosing its decision to change the application of the plan language to participants in any document or disclosure required by ERISA, Northrop Grumman changed its policy to treat receipt of the memo as a discretionary decision, with no rule or standard guiding how the decision to give a participant the memo would be made.

6. Upon information and belief, Northrop Grumman targeted groups of laid off employees with higher years of service and compensation levels to deny delivery of this memo, because those groups would cost the most in severance benefits.

7. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiffs bring this action against both the Northrop Grumman Severance Plan, and Northrop Grumman Corporation, seeking (1) remedies under 29 U.S.C. § 1132(a)(1)(B) for benefits due pursuant to the terms of an employee benefit plan governed by ERISA, (2) remedies under 29 U.S.C. § 1132(a)(3) for Northrop Grumman Corporation's actions in interfering with Plaintiffs' protected rights in violation of ERISA, 29 U.S.C. § 1140, (3) remedies under 29 U.S.C. § 1132(a)(3) for Northrop Grumman's failure to disclose to participants any change in the terms of the plan or administration thereof in the summary plan description, and (4) costs and attorneys' fees.

## JURISDICTION AND VENUE

8. Jurisdiction of the Court is based upon federal question with respect to the ERISA based claims—in particular, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1140. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

9.     Venue is proper in the Northern District of Illinois.  29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391(b)(2).

## THE PARTIES

10.    Plaintiff, ALAN CARLSON (hereinafter "Carlson"), is a former employee of Northrop Grumman Technical Services, Inc., a subsidiary of Northrop Grumman Corporation. Within Technical Services, Carlson worked in a division called Integrated Logistics and Modernization Division.  By virtue of this employment, he is and at all relevant times was a participant in the Northrop Grumman Severance Plan.

11.    Plaintiff PETER DeLUCA (hereinafter "DeLuca") is a former employee of Northrup Grumman Technical Services, Inc., a subsidiary of Northrop Grumman Corporation. Within Technical Services, DeLuca worked in a division called Integrated Logistics and Modernization Division.  By virtue of this employment, he is and at all relevant times was a participant in the Northrop Grumman Severance Plan.

12.    The NORTHROP GRUMMAN SEVERANCE PLAN (hereinafter the "Plan") purports to be an employee benefit plan.  The terms of the purported employee benefit plan are contained in the document attached hereto and thereby incorporated herein by reference as Exhibit 1.

13.    Defendant NORTHROP GRUMMAN CORPORATION (hereinafter "Northrop Grumman") is the parent company of Plaintiffs' former employer.  In addition, Northrop Grumman purports to be the sponsor of the Plan and its administrator, delegating its responsibility to its own Chief of Human Resources.  Northrop Grumman is financially responsible for paying any benefits awarded under the Plan, and by virtue of its dual role as

administrator of claims for benefits under the plan and payor of benefits; Northrop Grumman suffers from a structural conflict of interest.

14.     Northrop Grumman is divided into no fewer than 4 "sectors," each of which are divided into numerous divisions, and each division is made up of numerous programs.  For example, the Technical Services Sector employs over 14,000 individuals, who are subdivided into divisions, and further subdivided into programs.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     The Plan is an employee welfare benefit plan providing severance benefits within the meaning of 29 U.S.C. § 1002(1) and (3).

16.     The Plan states an employee is eligible under the Plan if "you work in the United States, you are regularly scheduled to work at least 20 hours per week and you have been notified in writing by your management that you are covered by this Plan.  If you are represented by a union you are eligible only if your collective bargaining agreement provides for participation in this plan.  The fact that you received this document does not necessarily mean that you are eligible; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to you individually by name."

17.     The Plan specifically excludes certain classes of employees, none of which Plaintiffs were a member.

18.     On July 12, 2012, Northrop Grumman notified Plaintiffs that their employment would be terminated.  Plaintiffs' last day worked for Northrop Grumman was August 3, 2012.

19. Neither Carlson nor DeLuca received a memo from a Vice President of Human Resources advising he would receive severance benefits. The Plan states nothing about which employees will receive such a memo for a Vice President of Human Resources.

20. Because ERISA requires that any plan, fund, or program have a class of participants or beneficiaries that a reasonable person could ascertain, the Plan administrator cannot enforce the purported requirement that a Vice President deliver a memo to a terminated employee in order to render that former employee a participant. *See* 29 U.S.C. § 1104(a)(1)(D) (only allowing fiduciaries to administer the plan in accordance with the Plan documents to the extent the terms are consistent with ERISA).

21. A plan provision that purports to allow the Plan administrator to select who will be a participant in the Plan, after the eligibility conditions stated in the Plan have been met, is not consistent with ERISA.

22. Under the Plan, an employee eligible for severance benefits receives one week of pay per year of service, plus continued medical, dental, and vision benefits, for up to 26 weeks.

23. Carlson had 35 years of service, DeLuca had 38 years of service, and two other employees in Plaintiffs' same program and division of Technical Services who were employed in Rolling Meadows, Illinois and whose claims for severance Defendants denied—Sofia Barnas and Debra Montemayor—had 32 and 25 years of service. Plaintiffs are aware of at least two other individuals within the same program and division of Technical Services who were also denied severance for the same reason as Plaintiffs, and who upon information and belief had a large number of years of service with Northrop Grumman such that their claim for severance would be large.

24.     In 2011, three employees who worked in the same division and sector as Plaintiffs were laid off and each received all severance benefits under the Plan, the cash payment and continued medical, dental, and vision benefits.

25.     In particular, in March 2011, Northrop Grumman terminated the employment of James Bergstrand in connection with a Reduction in Force.  Mr. Bergstrand had 37 years of service, and Northrop Grumman paid him the cash severance under the Plan, plus continued medical, dental and vision coverage for 26 weeks.

26.     Prior to 2012, Northrop Grumman uniformly delivered the written notification to participants who were laid off advising them they were eligible for severance benefits.

27.     In October 2011, without telling any participants, Northrop Grumman decided to change its policy of how it administered the Plan, dubbing it plan "harmonization."  Prior to October 2011, Northrop Grumman had always treated the written notification from Human Resources as an act of administration, whereby the participant was notified he met the eligibility rules of being laid off and having been regularly scheduled to work 20 hours per week or more in the United States.

28.     The result of this "harmonization" in October 2011 was that beginning in 2012 Northrop Grumman would begin to treat the language in the Plan regarding receiving written notification of eligibility for severance benefits as creating a right of Northrop Grumman to pick, in its discretion, with no rule or standard guiding how the selection is made, who could receive severance after deciding to lay off employees that otherwise met the eligibility criteria in the Plan.

29.     In 2012 alone, Northrop Grumman shed over 5,000 participants from the Plan. Northrop Grumman disclosed that within the division in which Plaintiffs worked—Integrated Logistics and Modernization Division—which is a division of Technical Services, Northrop Grumman paid severance to only 17 individuals, which by and large had minimal years of service with Northrop Grumman and would have received minimal severance under the Plan.

30.     On the other hand, from only one program within Integrated Logistics and Modernization Division—QRC—at least 6 individuals including Plaintiffs were denied severance and who had such a large number of years of service with Northrop Grumman that their severance payment would have been at or near the maximum allowable within Technical Services.

31.     Defendants refused to identify all individuals denied severance within Technical Services due to not receiving the memo from a Vice President of Human Resources on the ground that identifying all such individuals would be too burdensome.

32.     Upon information and belief, at least 25% of all participants laid off by Northrop Grumman were denied severance for the same reason as Plaintiffs, and did not receive a memo advising them of severance eligibility for the same reason as Plaintiffs—because they would receive a lot of cash severance.

33.     Northrop Grumman did not amend any language in the Plan or Summary Plan Description regarding eligibility criteria, leaving the language unchanged from 2010 to the present.  A copy of the 2010 Plan is hereby attached as Exhibit 2.

34.     In early 2012, after Northrop made a decision to "harmonize" the Plan—i.e., change how it applied the same language regarding eligibility—Northrop delivered a

8

presentation to employees who were participants of the Plan describing the memo from a Vice President of Human resources as serving the function of notifying laid off participants they met the eligibility requirements stated in the Plan.

35. Northrop never disclosed to participants that it changed its application of the Plan language.

36. After Northrop Grumman terminated Plaintiffs' employment, on August 23, 2012, Carlson claimed the severance benefits. On August 27, 2012, DeLuca claimed his severance benefits as well.

37. After DeLuca was not provided severance, he contacted Human Resources regarding why he was not given severance, and was told it was because Northrop Grumman changed its application of the severance plan in October 2011. DeLuca asked if this change was ever communicated to participants, and the Human Resources representative confirmed it was not.

38. Northrop Grumman provided both Plaintiffs with the continued medical, dental, and vision coverage under the terms of the Plan.

39. Nothing in the Plan states it may provide some of the severance benefits under the Plan, but not all of them.

## CLASS ALLEGATIONS

40. Plaintiffs bring this action on behalf of themselves and those similarly situated and seek certification of the following Class:

(a)      All persons who worked for Northrop Grumman in the United States, were

regularly scheduled to work over 20 hours per week, were laid off from Northrop

Grumman from January 1, 2012 and after, and who did not receive written notification from management or from a Vice President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan and who did not receive.the "Cash Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under the terms of the Plan (regardless of whether they received Medical, Dental or Vision Benefits under the Plan).

(b)     The beneficiaries of such persons.

(c)     Excluded from the Class are participants who fall into one or more of the following categories: (1) Employees of the Electronic Systems Sector who work at BWI, Annapolis, Sykesville (including FE&S employees and FE&S offsite offices and facilities), Troy Hill, Sunnyvale or Kings Bay, (2) Employees of the Technical Services Sector who are classified by Northrop Grumman as being in the following employment categories (a) Service Contract Act (SCA) employees, (b) Union Represented employees, (c) Employees covered by a Memorandum of Understanding between the TS Sector and ES Sector providing for the temporary assignment of the employee to the TS Sector and retention of participation in the ES Sector employee benefit programs, (d) employees covered by the Electronic Systems Sector severance benefit program, and (e) employees represented by a union whose collective bargaining agreement does not provide for participation in the Plan; (3) any fiduciaries or other persons who had any decision-making or administrative authority with respect to the Plan and the members of the immediate family of any such person.

41.     Upon information and belief, the Class consists of no fewer than 100 individuals, and more likely over 1,000 individuals. In 2012 alone, at the beginning of the Plan year Northrop Grumman reported having 67,269 participants, and only 61,967 at the end of 2012.

42.     Within the division Plaintiffs worked, Defendants disclosed that at least 25% of participants were denied severance in a manner that would place them in the class. The sample of individuals Defendants disclosed, upon information and belief, is a representative sample of the composition of participants denied severance company-wide. When asked to disclose all individuals within Technical Services sector alone who were denied severance, Defendants refused to respond claiming compliance with the request would be too burdensome. Technical Services represents only a fraction of the overall participants in the Plan.

43.     The Class is sufficiently numerous for class treatment, and the joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefit to the parties and the Court.

44.     Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs have no interests adverse to the interests of other members of the Class.

45.     This dispute raises questions of law and fact that are common to all Class members. Those common questions predominate over questions that arise on an individual basis for Class members. The common questions of law and fact include, without limitation:

(a) Whether prior to 2012 Northrop Grumman administered the Plan to treat the written notification to a participant that he is eligible for severance benefits as an administrative act that merely notified a participant he met the eligibility criteria in

the Plan (i.e., that he was regularly schedule to work 20 hours per week or more in the United States and was laid off);

(b) Whether Northrop Grumman decided to change how it administered the Plan in 2012 to construe the Plan as allowing Northrop Grumman to make a discretionary decision, guided by no rule or standard, to select laid off employees to receive severance benefits;

(c) Whether Northrop Grumman had a uniform policy and practice in administering its Severance Plan in 2012 and after that departed from its established course of administration with respect to interpreting and applying the clause regarding receipt of written notification of eligibility for severance benefits;

(d) Whether Northrop Grumman disclosed to participants any material terms of the Plan that changed from 2011 to 2012 or any change in application of the language of the Plan;

(e) Whether Northrop Grumman targeted groups of laid off employees who would receive the greatest cash severance under the Plan to deny delivery of the written notification of eligibility for severance benefits;

(f) Whether the change in application of the same Plan language regarding receipt of the written notification of severance eligibility in 2012 and after entitles the Class members to relief of severance benefits due under the Plan;

(g) Whether Northrop Grumman's acts of targeting groups of employees with higher claims to severance benefits to deny delivery of the written notification of severance

eligibility constitutes unlawful interference with a right to attain benefits under 29 U.S.C. § 1140; and

(h) Whether Northrop Grumman's failure to disclose any changes to Plan terms or its administration in 2012 to participants entitles participants to equitably reform the terms of the Plan to be consistent with the terms and information disclosed to participants under 29 U.S.C. § 1132(a)(3).

46.     Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in handling ERISA class action litigation and other class action litigation. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

47.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied because the primary issues in this case involve questions concerning the interpretation of the terms of the Plan and the requirements of ERISA as it applies to all participants in the Plan. As a practical matter, resolution of the issues in this case would be dispositive of the interests of the other members of the Class.

48.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are also satisfied because the fiduciaries of a Plan have a legal obligation to interpret and apply the terms of the Plan consistently for all similarly situated participants. As one of the primary issues in this case involves the interpretation of the terms of the Plan, conflicting interpretations of the same Plan as to similarly situated participants creates the risk of establishing incompatible standards of conduct for the Plan and its administrator. Similarly, conflicting determinations about whether Defendants breached their fiduciary duties creates the risk of establishing incompatible standards of conduct for the Plan and its fiduciaries.

49. The requirements of Fed. R. Civ. P. 23(b)(2) are met in this action, at least as to certain claims because the Defendants treated Plaintiffs and all Class members in the same manner. Additionally, the relief sought by the Plaintiffs is a declaration of their rights under the terms of the Plan, making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

50. The requirements of Fed. R. Civ. P. 23(b)(3) are met in this action because (a) the questions of law and/or fact – whether Defendants have properly interpreted the Plan, whether Defendants violated ERISA's statutory requirements and whether Defendants breached their fiduciary duties -- are not only common, but will predominate over any individual questions and (b) a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy as a result of the following factors: (a) the members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1); (b) upon information and belief, the only litigation concerning this controversy by any members of the Classes are the ones that have been consolidated in this Action; (c) this District is a desirable location for concentrating the litigation because among the following reasons; and (d) there are no anticipated difficulties in managing this case as a class action.

## COUNT I—ERISA 29 U.S.C. § 1132(a)(1)(B) CLAIM FOR BENEFITS DUE AND CLARIFICATION AS TO RIGHTS UNDER THE PLAN (AGAINST ALL DEFENDANTS)

51. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of the preceding allegations.

52. Plaintiffs plead this count in the alternative to, and not in addition to, Count II.

14

53.     Despite providing Plaintiffs with some of the benefits under the terms of the Plan, on November 9, 2012, Northrop Grumman made an adverse benefit determination, as that term is defined in 29 C.F.R. § 2560.503-1, with respect to both Plaintiffs' claims insofar as those claims concerned the cash payment portion of the severance benefits.  Northrop Grumman's stated reason for denying the benefits was that a Vice President of Human Resources did not select Plaintiff to received benefits under the Plan.  (Ex. 3).

54.     On December 3, 2012, DeLuca timely appealed the adverse benefit determination. On January 3, 2013, Carlson timely appealed the same.  (Ex. 4).

55.     On February 1, 2013, Northrop Grumman upheld its original adverse benefit determinations of Carlson's and DeLuca's claims, resulting in a final administrative denial for all Plaintiffs.  (Ex. 5).

56.     Plaintiffs met all required conditions to receive benefits under the Pan.

57.     To the extent required to do so, Plaintiffs properly exhausted any required administrative claims procedure prior to filing suit in Court.

58.     This complaint is timely filed under any statute of limitations or limitations period found in the Plan.

59.     Northrop Grumman's denials of Plaintiffs' claims for benefits were contrary to the terms of the Plan and contrary to law.

60.     Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

61. As a direct and proximate result of Northrop Grumman's denial of Plaintiffs' claims for benefits, there has been created a case of actual controversy by and between the parties hereto entitling Plaintiffs to a declaration of rights clarifying the benefits to which they are entitled under the Plan.

WHEREFORE, Plaintiffs pray for the following relief as to this count of the complaint:

A. Declaring that Plaintiffs and the Class are entitled to benefits under the Plan and requiring Defendants to pay benefits under the terms of the Plan as determined by the Court plus pre-judgment interest;

B. Award Plaintiffs and the Class their attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

C. Award Plaintiffs and the Class any and all other relief to which they may be entitled, as well as costs of suit.

## <u>COUNT II—VIOLATION OF 29 U.S.C. § 1140</u>
## <u>(AGAINST NORTHROP GRUMMAN)</u>

62. Plaintiffs reallege and incorporate by reference herein paragraphs 1–50 of the preceding allegations.

63. Plaintiffs plead this count in the alternative to, and not in addition to, Count I.

64. Title 29 U.S.C. § 1140, provides in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pensions Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

16

65. Plaintiffs are members of the class protected by 29 U.S.C. § 1140 by reason of their participation in the Plan.

66. Participants are empowered to bring suit to redress 29 U.S.C. § 1140 violations via § 1132(a)(3).

67. Upon information and belief, the reason Northrop Grumman did not have a Vice President of Human Resources deliver a memo to Plaintiffs, or the other individuals similarly situated, was because each of them qualified for a high number of weeks of severance pay under the Plan.

68. Northrop Grumman discriminated against Plaintiffs in not delivering to them the memo from a Vice President in order to interfere with their attainment of severance benefits.

69. The Director of Human Resources, Demile Robinson Gilmore, explained in an email to Margaret Collins, Retirement Administrator, on September 21, 2012 that Carlson, and other employees in his sector, were not offered severance and not given the memo by a Vice President of Human Resources because the sector's new contract is funded at a lower level than the expiring contract. (Ex. 6).

70. Northrop Grumman stated in an initial draft of the adverse benefit determination on Carlson's claim—before being edited by the Plan's counsel—that the division in which Carlson worked did not perform well financially, which was why Carlson was not selected for severance. (Ex. 7). However, numerous other individuals in that same division who had smaller claims for severance did receive the memo from a Vice President of Human Resources and did receive severance.

71.     These reasons for not offering the severance, however, were the exact same reasons stated in Carlson's personnel records as the reason for his layoff.  (Ex. 8).

72.     DeLuca filed a charge with the EEOC alleging age discrimination.  In its response to the charge, Northrop Grumman specifically stated Plaintiffs were not picked to receive severance because of affordability reasons.  However, Northrop Grumman did pick 17 individuals in the same division as Plaintiffs laid off in 2012 to receive severance where those individuals had significantly fewer years of service.

73.     Northrop Grumman, however, did not assert the non-delivery of a memo from a Vice President of Human Resources in order to deny the continued medical, dental, and vision coverage to Plaintiffs.  Northrop Grumman provided Plaintiffs with that portion of the Plan benefits.

74.     The foregoing conduct constitutes unlawful interference with Plaintiffs' rights to attain benefits protected by 29 U.S.C. § 1140.

75.     Because employers may not simply deny claims for benefits out of hand, they also may not prevent conditions for receiving benefits from occurring merely to avoid paying the benefits.  *See Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir. 1995).

76.     As a direct and proximate result of Northrop Grumman's unlawful and discriminatory acts, Plaintiffs suffered a loss of income, including past-due severance benefits under the Plan.

77.     Because Northrop Grumman unlawfully interfered with Plaintiffs' right to attain benefits under the Plan, Northrop Grumman is liable to Plaintiffs for all past-due severance benefits under the Plan.

WHEREFORE, Plaintiffs, and all others similarly situated, pray for the following relief as to this count of the complaint:

A.      Declare Northrop Grumman liable for the interference with the rights of Plaintiffs' and the Class under the Plan;

B.      Order that Plaintiffs and the Class be reinstated into the Plan and/or be declared to be participants in the Plan, and declare that Plaintiffs and the Class are entitled to all benefits that should have been paid but were not paid under the terms of the Plan, plus prejudgment interest on any such withheld benefits;

D.      Award Plaintiffs and the Class reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

F.      Award Plaintiffs and the Class any and all other relief to which they may be entitled, as well as the costs of suit.

## COUNT III—EQUITABLE REFORMATION
## 29 U.S.C. § 1132(A)(3)
## (AGAINST NORTHROP GRUMMAN)

78.     Plaintiffs reallege and incorporate by reference herein paragraphs 1–50 of the preceding allegations.

79.     Northrop Grumman made changes to the administration, interpretation, or terms of the Plan that it did not disclose to any participants.

80.     The 2012 summary plan description contained the exact same language regarding eligibility as the 2010 plan document and summary plan description.

81.     Even after Northrop Grumman decided to change how it administered the Plan and applied the language regarding eligibility, it continued to tell participants in presentations

regarding the severance plan that the memorandum from a Vice President of Human Resources served as a notification that the participant met the eligibility rules stated in the Plan.

82.    Northrop Gruman did not disclose to participants that it adopted a new policy in its "harmonization" of October 2011, whereby the new function of the memorandum from a Vice President of Human Resources was to be a discretionary selection of which employees would be chosen for severance after Northrop Gruman decided to lay them off, with no rule or standard in the Plan governing how that decision would be made.

83.    Northrop Gruman breached its fiduciary duty of disclosure to participants by not amending the language of the summary plan description to explain the change in how Northrop Gruman would apply the eligibility rules, and by continuing to tell participants the memorandum served the same function it did in 2010 and 2011—an administrative act of notification that the participant satisfied the clearly stated eligibility rules in the Plan (i.e., that he was scheduled to work over 20 hours per week in the United States and was laid off).

84.    As a result of this breach of fiduciary duty, the Court is empowered to equitably reform the Plan to reflect the material terms as disclosed to participants and as participants reasonably understood those terms based on Northrop Gruman's disclosures.

WHEREFORE, Plaintiffs and all others similarly situated pray for the following relief as to this count of the complaint:

A.    Declare that Northrop Gruman breached its fiduciary duty of disclosure to Plan participants by not disclosing any changes in terms of the Plan or its application of those terms that altered the function of the receipt of a memorandum from a Vice President of Human Resources;

B.      Order that the Plan be equitably reformed to reflect only those terms of the Plan and application thereof as Northrop Grumman disclosed to participants, including that the memorandum from a Vice President of Human Resources constituted a means of notifying Participants they were regularly schedule to work at least 20 hours per week in the United States and were laid off, thereby entitling them to benefits under the Plan;

C.      Award Plaintiffs and their costs of maintaining this action, including reasonable attorneys' fees and all costs and expenses of suit;

D.      Award, declare or otherwise provide Plaintiffs and all others similarly situated with such other and further relief as this Court deems appropriate, including, but not limited to removal of Northrop Grumman as a fiduciary of the Plan.

Dated: October 22, 2014                          Respectfully submitted,


By: ___/s/ Michael Bartolic_____            /s/ R. Joseph Barton

Michael Bartolic                                R. Joseph Barton
The Law Offices of Michael Bartolic, LLC        Cohen Milstein Sellers & Toll PLLC
29 S. LaSalle Street                            1100 New York Avenue
Suite 1120                                      Suite 500
Chicago, Illinois 60603                         Washington, D.C. 20005
Tel: 312-635-1600                               Tel: 202-408-4600
Fax: 312-635-1601                               Fax: 202-408-4699

Attorneys for the Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on October 22, 2014, a copy of the foregoing was served by operation of the Court's electronic filing systems upon the following counsel of record:

Nancy G. Ross
Sam P. Myler
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL  60606
T: 312-782-0600
F: 312-701-7711

/s/ Michael Bartolic_____