**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALAN CARLSON & PETER DELUCA**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,**<br><br>**Defendants.** | **Case No. 13-cv-2635**<br><br>**District Court Judge Andrea R. Wood** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Abigail M. Bartine (No. 6312317)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
LHammargren@mayerbrown.com

*Attorneys for Northrop Grumman*
*Corporation and Northrop Grumman*
*Severance Plan*

## I.    INTRODUCTION[1]

Under the Employee Retirement Income Security Act of 1973 ("ERISA"), employers may adopt welfare benefit plans "at any time" (*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)), including whatever terms and conditions "they see fit" (*Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833 (2003)). The responsibility of the courts is to "focus on the written terms of the plan" so that the plan will be "enforced as written." *Heimeshoff v. Hartford Life & Accident Ins.*, 134 S. Ct. 604, 611-12 (2013).

Against that backdrop, Plaintiffs' case should not exist. As was its right, Northrop Grumman created a severance plan through which it could offer severance benefits to employees of its choosing. *See* Ex. A, Severance Plan, at 2 ("This is a Severance Plan that is being offered to *selected* employees of Northrop Grumman Corporation . . . ) (emphasis added). Employees could become participants in the severance plan only if they were "designated as eligible for this plan by a Vice President of Human Resources," who would issue a memorandum notifying the participant of eligibility. *Id.* at 3.

Plaintiffs were never designated as eligible for the severance plan by a vice president of human resources, and they never received a memorandum notifying them that they were eligible for severance plan benefits. They nevertheless filed suit for the benefits to which only participants are entitled. But because ERISA entitles Northrop Grumman to offer a severance

---

[1]    Despite the Magistrate Judge's rulings on Defendants' motion to dismiss the original complaint (Dkt. 29) and Plaintiffs' motion to amend their complaint (Dkt. 60), this motion is properly before the Court as a motion to dismiss for three reasons.  First, it is the first opportunity that Defendants have had to respond to Plaintiffs' First Amended Complaint under the proper Rule 12(b)(6) standard with all Plan documents. As will be discussed below, the Magistrate Judge ruled on Defendants' first motion to dismiss without the benefit of the Wrap Plan, a critical Plan document. *See* Dkt. 29. Second, when the Magistrate Judge allowed Plaintiffs to amend their complaint over Defendants' objections, she was reviewing the proposed pleading under Fed. R. Civ. P. 15's liberal amendment standards.  Even then, the Magistrate Judge noted there was "significant doubt on whether Plaintiffs can succeed on Counts I and II" of their amended claims.  *See* Dkt. 60, at 11. Third, Count III of the First Amended Complaint is a new claim that has never been addressed by a motion to dismiss.

plan for all, some, or none of its employees—and grants to Northrop Grumman sole discretion in crafting the terms of eligibility—Plaintiffs' grievance lacks a legal basis. As such, the First Amended Complaint ("FAC") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.      BACKGROUND

The Northrop Grumman Severance Plan ("the Plan") provides certain benefits to eligible employees. Effective January 1, 2012, the Plan is governed by an overarching "Wrap Plan" that defines the terms, and a "Component Plan," which specifies the specific severance benefits available for plan participants. *See* Ex. B, § 1.02 & App'x B (incorporating the Severance Plan as a Component Plan); § 2.05 (stating that the Component Plan, together with the Wrap Plan, "make up the Plan").[2]

The Wrap Plan defines a "Participant" as "[a]n Employee who has fulfilled the eligibility requirements with respect to a Component Plan." *Id.*, § 2.10; *see also id.*, § 3.01 ("An Employee who has fulfilled the eligibility requirements with respect to any Component Plan shall become a Participant in the Plan . . . A person shall be a Participant under the Plan only with respect to the Component Plan for which the person has fulfilled and continues to fulfill the eligibility requirements."). Under the relevant Component Plan, an employee becomes eligible to participate only if Northrop Grumman management decides to offer an employee severance, and then that employee's respective vice president of human resources executes a memo notifying the employee that he or she is eligible (the "Eligibility Memo"). Ex. A, at 3 (to be eligible, an

---

[2]      When assessing a motion to dismiss, courts may consider attachments to the complaint as well as documents not attached to the complaint if they are referred to in the complaint, concededly authentic, and central to the plaintiffs' claims. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The Severance Plan was attached to the FAC, and the Wrap Plan and its component Severance Plan "make up the Plan." Therefore, both documents may be properly considered on this motion.

employee must "have received a cover memo, signed by a Vice President of Human Resources . . . with this document addressed to you individually by name"); *see also id.* (defining an "Eligible Employee" as an individual who, among other requirements, "ha[s] been notified in writing by your management that you are covered by this Plan").

If there is any doubt as to how an individual qualifies to participate in the Plan or whether a particular individual has satisfied the qualification requirements, the Wrap Plan delegates interpretive authority to the Plan Administrator.[3] Ex. B, § 3.04; *see also id.*, § 4.08 ("The Plan Administrator and Administrative Committee, in the exercise of their responsibilities, shall have the full discretionary power to administer the plan in all of its details . . . . Such powers include, but are not limited to, full discretionary authority to . . . construe and interpret the terms of the Plan.").

On August 3, 2012, Northrop terminated the employment of Plaintiffs, two management-level employees, as part of a reduction in force in their division. FAC, ¶ 18. Neither was selected to participate in the Plan, and neither received an Eligibility Memo. Accordingly, when Plaintiffs submitted claims for severance benefits, the Plan Administrator denied their claims. *Id.*, ¶ 55.

Plaintiffs initiated suit on April 9, 2013, alleging (on behalf of themselves alone) that Defendants had violated ERISA §§ 502(a)(1)(B) and 510 by not giving them the Eligibility Memo. Dkt 1. To expedite the resolution of the case, the parties consented for the case to be reassigned to a U.S. Magistrate Judge. The Magistrate Judge denied Defendants' motion to dismiss—without considering the Wrap Plan, which was not yet in the record—after concluding that the Component Plan did not "unequivocally leave interpretations of Plan terms in the

---

[3]     The Plan Administrator is defined as the Chief Human Resources and Administrative Officer. In addition, the Administrative Committee is a "named fiduciary" of the Plan under ERISA for purposes of deciding claim appeals. Ex. B, § 4.01.

Administrator's hands." Dkt. 29, at 6. The Magistrate Judge therefore reserved ruling on the appropriate standard of review "pending later briefing." *Id.* at 7.

On June 16, 2014, Plaintiffs moved to amend their complaint to convert it into a putative class action. Over Defendants' objections, recognizing that "[l]eave to amend should be freely given" except in certain circumstances, the Magistrate Judge granted leave to Plaintiffs. *See* Dkt. 60, at 4. This Court, recognizing that the case had morphed into a different one entirely, then permitted Defendants to withdraw their consent to proceed before a Magistrate Judge and to conduct further proceedings before an Article III jurist. Dkt. 87.

### III.  ARGUMENT

Only participants in an ERISA plan are entitled to benefits.  Plaintiffs are not participants in the Northrop Grumman Severance Plan. As such, they are not entitled to benefits.

That simple chain of reasoning resolves this case. ERISA permits plan sponsors to decide who will be eligible to participate in welfare benefit plans. Northrop Grumman did not select Plaintiffs to participate, and in turn, the Plan Administrator determined that Plaintiffs were not eligible to participate. Plaintiffs seek judicial recourse under three provisions of ERISA— §§ 502(a)(1)(B), 510, and 502(a)(3)—but each of those claims fails because Northrop Grumman had discretion to choose who could participate in the Plan and chose not to select Plaintiffs. Accordingly, Plaintiffs' First Amended Complaint should be dismissed.

### A.  Plaintiffs' First Amended Complaint Fails to State a Claim for Benefits Under § 502(a)(1)(B).

In Count One of their First Amended Complaint, Plaintiffs claim that they are entitled to severance benefits under § 502(a)(1)(B) of ERISA. Under that provision, a civil action may be brought "*by a participant or beneficiary*" "to recover benefits due to him under the terms of the plan . . . " § 502(a)(1)(B).

The problem, of course, is that Plaintiffs are not (and never were) participants in the Plan. The Plan states unequivocally that the Severance Plan is being offered only to "*selected* employees of Northrop Grumman Corporation." Ex. A, at 2 (emphasis added). The Plan further states that "[a]n employee who has fulfilled the eligibility requirements with respect to any Component Plan shall become a Participant in the Plan . . . " Ex. B, § 3.01. To be eligible to participate in the Plan, an employee must be "regularly scheduled to work at least 20 hours per week" and must "have been notified in writing by . . . management" that he or she is eligible. Ex. A, at 3. To receive benefits, an employee must, *inter alia*, (1) be laid-off, (2) sign a Confidential Separation Agreement and General Release of claims against the Company, and most importantly, (3) "be designated as eligible for [the Plan] by a Vice-President of Human Resources (or his/her designee)." *Id*. The Plan further provides that employees are designated if they receive an Eligibility Memo notifying them of their eligibility for severance benefits. *Id.*

Plaintiffs acknowledge, as they must, that they were not selected to receive an Eligibility Memo. FAC, ¶ 19. Under ERISA, that concession proves dispositive of Plaintiffs' claim under § 502(a)(1)(B). Here, the Plan Administrator has determined that designation by a Vice-President for Human Resources is a condition precedent to eligibility. Ex. A, at 3. The Plan further provides that the Plan Administrator has discretion to interpret the Plan and to determine eligibility for benefits. Ex. A, at 8; Ex. B, § 3.04. Accordingly, a court must defer to the Administrator's interpretation unless the Administrator's interpretation is arbitrary or capricious. *See Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011).

"Under the [arbitrary and capricious standard], an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053,

1057 (7th Cir. 2009). "Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement." *Id.* (quoting *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 766 (7th Cir. 1993)). Here, the Component Plan provides: "You are an eligible employee if you work in the United States, you are regularly scheduled to work at least 20 hours per week *and you have been notified in writing by your management that you are covered by this Plan.*" Ex. A, at 3 (emphasis added). The Plan further provides:

> In order to receive the benefits of this Plan, you must meet all of the following conditions:
>
> *You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit.*

*Id.* (emphasis added). The Plan Administrator concluded that, based on those provisions, an employee who has not been designated by management to participate in the Plan cannot participate in the Plan. That interpretation appears to be the *only* possible interpretation of the Plan. It is surely a *permissible* interpretation. And it is surely *not* an arbitrary or capricious interpretation.

In ruling on Plaintiffs' motion for leave to amend their complaint, the Magistrate Judge acknowledged that the Plan Administrator's interpretation was entitled to highly deferential review.[4] The Magistrate Judge nevertheless opined that the "[t]he focal point for arbitrary and capricious review in this case is *why* Plaintiffs did not receive the Memo, not simply *whether* they received it." Dkt. 60, at 15. The Magistrate Judge therefore concluded that Plaintiffs should

---

[4] As discussed above at note 1, the Magistrate Judge stated that "Defendants' arguments cast significant doubt on whether Plaintiffs can succeed on Counts I and II," but erroneously declined to dismiss the claims because "the record is insufficiently developed to provide for a meaningful analysis." Dkt. 60, at 11. Under a proper "arbitrary and capricious" analysis, discussed below, it is clear that the claims must be dismissed.

be given "the opportunity to discover information" regarding the Plan Administrator's determination. *Id.* at 16.

Two problems exist with that reasoning. First, it is well established that discovery is not permitted for claims under ERISA § 502(a)(1)(B) in the absence of extraordinary circumstances, such as proof of the plan administrator's possible conflict of interest. *See Perlman v. Swiss Bank Corp.*, 195 F.3d 975, 981-82 (7th Cir. 1999). Plaintiffs do not plead a conflict of interest here. Second, the question "why" Plaintiffs were not selected to participate in the Plan is irrelevant. Northrop Grumman is entitled to choose which employees to whom it will offer severance, and who will then receive a memo. That choice is not subject to review by the courts. Under ERISA, severance benefits plans, such as the one at issue, are considered "employee welfare benefit plans." 29 U.S.C. § 1002.[5] It is a basic tenet of ERISA law—consistently recognized by the courts—that "ERISA 'does not regulate the substantive content of welfare benefit plans.'" *Milwaukee Area Joint Apprenticeship Training Comm. for Elec. Indus. v. Howell*, 67 F.3d 1333, 1338 (7th Cir. 1995) (quoting *Metropolitan Life Ins. v. Mass.*, 471 U.S. 724 (1985)). As the Supreme Court recently reiterated, "[E]mployers have large leeway to design . . . welfare plans as they see fit," *M & G Polymers v. Tackett*, 135 S. Ct. 926, 933 (2015) (internal quotation omitted), which is in contrast to the highly regulated content of ERISA pension plans.

The Seventh Circuit explicitly confirmed the ability of employers to design welfare plans, including those that delegate eligibility decisions to management, in *McNab v. Gen. Motors Corp.*, 162 F.3d 959 (7th Cir. 1998). In *McNab*, a group of former employees brought § 502(a)(1)(B) claims challenging GM's decision to deny them early retirement benefits under a

---

[5] The Magistrate Judge implicitly recognized this principle in the Order granting Plaintiffs' motion for leave to amend, wherein the Magistrate Judge acknowledged that "welfare benefits do not accrue or vest under ERISA . . . [and] employers may freely alter the terms of a welfare benefit plan without violating the statute." Dkt. 60, at 12.

plan that allowed GM to grant or deny benefits based solely on whether doing so was in "GM's best interest." *Id.* at 960. The Seventh Circuit upheld the denial of benefits, explaining that "[t]here's nothing wrong under ERISA with a system that gives plan administrators discretion. Subject to a few explicit rules in the statute, an employer may design a pension or welfare plan with features of its choosing." *Id.* at 961. And because "it is lawful to adopt a plan that gives discretion to senior managers, it must be lawful to *use* that discretion to evaluate what the 'best interests' of a firm are." *Id.* at 962. Northrop Grumman was therefore never required to spell out in the Plan which employees would receive a memo and which would not.

Plaintiffs have no basis for relief under ERISA. Nor may they rely upon the Magistrate Judge's misunderstanding of the role of arbitrary-and-capricious review in this context  The Magistrate Judge's earlier rulings do not bind this Court. Indeed, if the Magistrate Judge retained jurisdiction over this case, she would be free to reconsider at any point prior to judgment. *See, e.g.*, *Brown v. WMC Mortg.*, 2010 WL 2731060, at *1 (N.D. Ill. Jul. 8, 2010); *Brand v. Comcast Corp.*, 2013 WL 1499008, at *4 (N.D. Ill. Apr. 11, 2013) (recognizing the "general liberty" that district courts have to reconsider interlocutory orders, such as motions to dismiss). Moreover, the Magistrate Judge's erroneous rejection of the "arbitrary and capricious" standard in denying Defendants' motion to dismiss Plaintiffs' initial complaint, and her erroneous application of the "arbitrary and capricious" standard in granting Plaintiffs' motion for leave to file an amended complaint, cannot be the law of the case, as a court always has a duty to correct a plain error. *See Pickett v. Prince*, 207 F.3d 402, 408 (7th Cir. 2000) ("[A] judge's refusal to correct a plain error

that he had committed weeks before is not justified by the doctrine of the law of the case, or anything else we can think of."). Plaintiffs' claim for benefits must therefore be dismissed.[6]

### B. Plaintiffs' First Amended Complaint Fails to State a Claim for Improper Interference with the Attainment of Benefits under § 510.

Plaintiffs' claim under Section 510 of ERISA fails for similar reasons. Section 510 provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against *a participant or beneficiary* for exercising any right to which he is entitled under the provisions of an employee benefit plan." (Emphasis added.)

As explained above, however, Plaintiffs are not "participant[s]" in the Plan. (And they do not claim to be "beneficiar[ies]."") Thus, they cannot plead the elements of a § 510 violation. *See Sallee v. Rexnord Corp.*, 985 F.2d 927, 929 (7th Cir. 1993) (dismissing claims by former employees who never became participants under a severance plan because § 510 "protects only plan participants and beneficiaries, statuses never achieved by appellants"). The Plan documents clearly state that only participants are entitled to severance benefits. *See* Ex. A, at 2.[7]

For this same reason, Plaintiffs cannot show that they had a "right" to benefits under the Plan, as they must to state a § 510 claim. *See Ameritech Ben. Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 824 (7th Cir. 2000); *Pendleton v. QuikTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009) (former employee was not entitled to benefits under the terms of the severance plan and therefore could not state § 510 claim). It is utterly nonsensical for Plaintiffs to argue that

---

[6]     Separately, Plaintiffs' § 502(a)(1)(B) claim against Northrop Grumman must be dismissed because it is not a proper defendant on a claim for the denial of benefits. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) ("ERISA permits suits to recover benefits only against the Plan as an entity"). Northrop Grumman is not the Plan and the § 502(a)(1)(B) claim should be dismissed as to it. *See Frank v. Ameritech Corp.*, 1999 WL 1011107, at *3 (N.D. Ill. Oct. 12, 1999) (dismissing employer as defendant to § 502(a)(1)(B) claim).

[7]     As the Magistrate Judge pointed out in the ruling on the motion for leave to amend, a finding that the Plan Administrator did not arbitrarily and capriciously deny Plaintiffs severance benefits further supports a conclusion that they are not "participants" in the Plan because they did not receive the eligibility memo and, therefore, § 510 cannot apply. *See* Dkt. 60, at 17.

they would have a right to severance benefits but for management's exercise of its afforded discretion to decide whether to select them as eligible for benefits.

Moreover, as a matter of law, neither the denial of Plaintiffs' benefits claim nor management's exercise of its discretion to determine whether Plaintiffs were eligible for severance benefits constitutes "interfere[nce] with the attainment of any right" under the Plan. "For their interference claim to survive, plaintiffs must allege an interference with the *employment relationship*, not just an interference with their *benefits*." *Flanagan v. Allstate Ins. Co.*, 213 F. Supp. 2d 862, 868 (N.D. Ill. 2001) (citing *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 668 (7th Cir. 1993). Plaintiffs were laid off as part of a reduction in force. FAC, ¶ 3. They do not allege that they were terminated for the purpose of denying them severance benefits. Rather, Plaintiffs allege that not receiving the Eligibility Memo constituted a § 510 violation. *Id.*, ¶ 68. That does not constitute "interference with the employment relationship" under Seventh Circuit law. Indeed, the Magistrate Judge's suggestion to the contrary (Dkt. 29, at 9-10) ignores the large body of law rejecting that very conclusion. *See, e.g.*, *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994) (holding that the alleged interference or discrimination must affect the plaintiff's "employment status"); *Krok v. Univ. of Chicago*, 2012 WL 1117733, at *3 (N.D. Ill. Apr. 3, 2012) (dismissing § 510 claim for employee misclassification because the plaintiff did not allege the requisite change in the employment relationship); *Nauman v. Abbott Labs.*, 669 F.3d 854, 858 (7th Cir. 2012) (referring to a "claim of discriminatory failure to hire" as "unusual in the § 510 context").[8]

---

[8]     In allowing Plaintiffs' § 510 claim to proceed, the Magistrate Judge relied heavily on *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671 (7th Cir. 2011), for the proposition that inference may result from "a range of employer actions" and a change in the employer-employee relationship is not essential to state a claim under § 510. *See* Dkt. 29, at 9-10. While it is true that a violation of § 510 may arise from actions that interfere with benefits without altering the employee relationship (for instance, interfering with benefits to which a deceased employee's beneficiaries are entitled), *see Feinberg*, 629 F.3d at 675, it is

### C. Plaintiffs' First Amended Complaint Fails to State a Claim for Equitable Reformation under § 502(a)(3).

Under Section 502(a)(3) of ERISA, a civil action may be brought "by a participant, beneficiary, or fiduciary" to obtain appropriate equitable relief. 29 U.S.C. § 1132(a)(3). But, as discussed above, Plaintiffs are not "participant[s]" or "beneficiar[ies]" of the Plan—and they certainly are not "fiduciar[ies]." In short, ERISA fiduciaries owe duties to plan participants. They owe no duties to non-participants. So non-participants may not sue for supposed breaches of fiduciary duty.

In any event, Plaintiffs' § 502(a)(3) claim fails because neither of the Defendants was acting as a "fiduciary" as to the challenged conduct. "In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Larson v. United Healthcare*, 723 F.3d 905, 916 (7th Cir. 2013). A fiduciary may be named in the benefits plan or may be "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." *Id.* Here, the named fiduciary of the Plan is the Administrative Committee. Ex. B, § 4.01. And the supposed fiduciary act—the breach of a fiduciary duty to make certain disclosures—were not issues over which either Defendant had "control or authority." *See Klosterman v. Western Gen. Management*, 32 F.3d 1119, 1122 (7th Cir. 1994) (holding that the plan administrator is the only party responsible for required

---

widely accepted that interference with the employment relationship "is prototypical of the kind [of employer act] Congress intended to cover under § 510." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 43 (1990). *See also Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503, 512 (S.D.N.Y. 2006) (citing, with approval, the interpretation that "ERISA § 510 'is designed to protect the employment relationship that gives rise to an individual's benefit rights, not to create an action for wrongfully withheld benefits, which is covered by [ERISA § 502(a)(1)]'") (internal quotation marks omitted). Because Plaintiffs' allegation that they were denied severance benefits or not selected for eligibility does not constitute the requisite effect on their employment relationship, the Magistrate Judge's ruling was in error.

disclosures); *Steinman v. Hicks*, 252 F. Supp. 2d 746, 756-57 (C.D. Ill. 2003) (holding that the plan was not a fiduciary). *See also*, Ex. A, at 8 ("The administrator is vested with all power and authority necessary or appropriate to administer the Plan . . ."). Thus, this count should be dismissed for the single reason that neither Defendant was acting as a fiduciary.

It would appear that Plaintiffs feel aggrieved by the alleged failure to amend plan documents. FAC ¶, 8. But the Supreme Court has clearly held that amendment of a plan is a settlor function, *not* a fiduciary act. S*ee Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999) (holding that employers are not acting in a fiduciary capacity when they "adopt, modify, or terminate welfare plans"). Moreover, Plaintiffs premise their alleged fiduciary breach on a fictional "new function" of the Eligibility Memo that the plan documents do not support. FAC, ¶ 80. The governing Plan documents unequivocally state that an employee must be "selected" to receive benefits. It is a basic tenet of ERISA that benefits must be administered "in accordance with the documents and instruments governing the plan . . . " 29 U.S.C. § 1104(a)(1)(D); *Jackman Fin. Corp. v. Prudential Ins.*, 2010 WL 3800892, at *4 (N.D. Ill. Sept. 22, 2010). The Plan's fiduciaries did not—and could not—adopt a "new policy" not provided for by Plan terms.

Further, Plaintiffs' claim of breach of fiduciary duty under § 502(a)(3) fails to meet the demands of *Twombly* and *Iqbal*. Plaintiffs' allegation that "Northrop Grumman made changes to the administration, interpretation, or terms of the Plan that it did not disclose to any participants" fails these tests. Plaintiffs allege no further facts to support their claim that the terms, administration, or interpretation of the Plan changed. Without more, it is impossible to conclude that the allegation is plausible. Plaintiffs' claims of fraud, including ERISA claims, in Count III face the additional barrier of Federal Rule of Civil Procedure 9(b), requiring that allegations sounding in fraud be pleaded with particularity. FAC, ¶¶ 79-83; FED. R. CIV. PRO. 9(b) ("In all

13

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity . . . "); *Rogers v. Baxter Int'l*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006) ("While claims for breach of fiduciary duty under ERISA generally are not subject to heightened pleading standards, Rule 9(b) does apply where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act."). *CIGNA* and its progeny have consistently found that reformation is a device that is only available by a showing of fraud. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1879 (2011).

Plaintiffs' First Amended Complaint, however, makes nothing more than conclusory allegations of non-disclosure without the particulars of the Defendants' alleged misleading representations to Plaintiffs, such as who made the misleading statements or omissions, when they were made, and to whom. FAC, ¶¶ 79-83; *Rogers*, 417 F. Supp. 2d at 985 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("a plaintiff must allege 'the who, what, when, where and how' of the fraud")). Its vague references to non-disclosures and misrepresentations, including the one allegation of "tell[ing] participants in presentations" about eligibility, simply do not allege "the circumstances constituting fraud . . . with particularity," and therefore fails to meet the Rule 9(b) standard. *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). *See also Powers v. Corn Prods. Int'l*, 557 F. Supp. 2d 921, 927-28 (N.D. Ill. 2008). For this same reason, Plaintiffs' barebone allegations of breaches of fiduciary duties fail to meet the thresholds of *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell v. Twombly*, 550 U.S. 544, 555-57 (2007) (alleged facts must "nudge[] their claims across the line from conceivable to plausible"). The Magistrate Judge erred

14

in finding that these barebones allegations were sufficient for pleading the alleged fiduciary breach (Dkt. 60, at 20), and the claim should be dismissed.

Finally, if the court accepts that mere supposition will suffice to state a claim under 502(a)(3), this will open the flood gates for equitable reformation claims. Recognizing this inevitable result, the Supreme Court cautioned that § 502(a)(3) claims should only be permitted when there is no other available relief under ERISA. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Mondry v. Amer. Family Mut. Ins.*, 557 F.3d 781, 805 (7th Cir. 2009) (explaining that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)").[9] Plaintiffs' attempt to recover under § 502(a)(3) is nothing more than a repackaged claim for benefits. The same injury and relief is alleged across claims— the denied severance benefits—and, thus, the § 502(a)(3) claim must be dismissed.[10]

## III.   CONCLUSION

For the above stated reasons, Defendants Northrop Grumman Corporation and the Northrop Grumman Severance Plan respectfully request that Plaintiffs' First Amended Complaint be dismissed with prejudice.

---

[9]     Plaintiffs' inability to succeed on a § 502(a)(1)(B) claim does not give them a right to assert a § 502(a)(3) claim. *See Roque v. Roffers' Unions Welfare Trust Fund*, 2013 WL 2242455, at *7 (N.D. Ill. May 21, 2013) ("[W]hether [plaintiff] can actually recover under § 502(a)(1)(B) is not the relevant question. Rather, the issue is simply whether an adequate remedy is available.").

[10]     For all of the claims, Plaintiffs now allege that class treatment is warranted. On the face of the First Amended Complaint, however, it is already apparent that Plaintiffs cannot satisfy the requirements of Rule 23. As the First Amended Complaint acknowledges (FAC, ¶ 5), Northrop Grumman employees are divided among four sectors and further divided among divisions and programs. Plaintiffs allege (FAC, ¶ 69) that their denial of severance benefits stemmed from a sector-specific reason, which means that Plaintiffs' efforts to certify a company-wide class will fail on the grounds of typicality and commonality. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) (casting significant doubt that Plaintiff could meet class certification requirements in light of employee-by-employee discretionary determinations); *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269-73 (W.D. Wisc. 2013) (dismissing class allegations before discovery on grounds that plaintiffs could not satisfy requirements of Rule 23).

Date:  November 20, 2014

Respectfully submitted,

/s/ Nancy G. Ross
Nancy G. Ross (No. 6190243)
NRoss@mayerbrown.com
Laura Hammargren (No. 6310920)
LHammargren@mayerbrown.com
Abigail M. Bartine (No. 6312317)
abartine@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711

*Attorneys for Northrop Grumman*
*Corporation and Northrop Grumman*
*Severance Plan*