**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALAN CARLSON & PETER DeLUCA, individually and on behalf of a class of similarly situated individuals, | ) Case No. 13-cv-2635 ) ) Judge Andrea Wood ) |
| Plaintiffs, | ) Magistrate Judge Maria Valdez ) |
| vs. | ) ) |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) |
| Defendants. | ) ) |

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT**</u>

Michael Bartolic
Rebecca K. Bryant
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street
Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Fax: 312-635-1601

R. Joseph Barton
Kira L. Hettinger
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue
Suite 500
Washington, D.C. 20005
Tel: 202-408-4600
Fax: 202-408-4699

*Attorneys for Plaintiffs*

## INTRODUCTION

Plaintiffs submit this response in opposition to Defendants' motion to dismiss the First Amended Complaint (ECF #99), which is really a motion to reconsider the Court's (1) denial of their motion to dismiss Counts I–II (ECF #29 at 5–10) and (2) grant of leave to amend the complaint, rejecting Defendants' futility argument. (ECF #60 at 11–24).

Plaintiffs' initial complaint raised claims under 29 U.S.C. § 1132(a)(1)(B) for benefits under the Northrop Grumman Severance Plan, and under § 1140 for unlawful interference with Plaintiffs' right to attain those severance benefits. (ECF #1). Defendants moved to dismiss both of those counts under Rule 12(b)(6), raising identical arguments that they raise on this one. (ECF #12). Judge Valdez denied Defendants' motion with respect to Counts I and II. (ECF #29 at 5–10). Plaintiffs moved to amend the complaint to assert Counts I and II on behalf of a class, and to add an additional class-wide count for breach of fiduciary duty, and attached the proposed amended complaint. (ECF #39). Defendants opposed, arguing amendment is futile because none of the proposed amended claims would withstand a Rule 12(b)(6) motion to dismiss. (ECF #44 at 11–15). In rejecting this futility argument, Judge Valdez thoroughly addressed the sufficiency of the each of counts in the amended complaint, and held each of the claims in the amended complaint would satisfy the Rule 12(b)(6) standard. (ECF #60 at 11–24). Hoping for a different result because of a change of judge, Defendants now raise the identical arguments with respect to Counts I and II for the <u>third</u> time, and with respect to Count III for the <u>second</u> time.

## ARGUMENT

In ruling upon a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, construe the allegations in a light most favorable to plaintiffs, and draw all inferences in their favor. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.,*

*Inc.*, 657 F.3d 496, 502 (7ᵗʰ Cir. 2011).  The Court should not dismiss any claim that includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In additional to Plaintiffs' claims meeting these standards, the Court should not indulge Defendants' previously rejected arguments under the law of the case doctrine.

I. **The Law of the Case Doctrine Discourages Revisiting Two Prior Holdings Considering the Same Allegations and the Same Rule 12(b)(6) Arguments.**

The Court should not reconsider Judge Valdez's earlier rulings holding Plaintiffs' claims satisfy the Rule 12(b)(6) standard because law of the case doctrine discourages doing so.  "[A] successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary when a case is transferred." *Brengettcy v. Horton*, 423 F.3d 674, 680 (7ᵗʰ Cir. 2005).  "The law of the case doctrine in these circumstances reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7ᵗʰ Cir. 1997).  The successor judge should only reconsider the prior judge's ruling for "a compelling reason, such as change in, or clarification of, the law that makes clear the earlier ruling was erroneous." *Santamarina v. Sears*, 466 F.3d 570, 572 (7ᵗʰ Cir. 2006).  Absent some change in or clarification of the law, courts routinely deny second motions to dismiss after either (1) an earlier denied motion to dismiss raising the same arguments, or (2) a failed opposition to amend the complaint raising arguments of futility— governed by the Rule 12(b)(6) standard.  *See, e.g.*, *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 722 F. Supp. 2d 948, 961 (N.D. Ill. 2010) (denying second motion to dismiss where amended complaint raised identical claims that already survived Rule 12(b)(6)); *Beary Landscaping Inc. v. Shannon*, No. 05 C 5697, 2008 U.S. Dist. LEXIS 94258, at *10–11 (N.D. Ill. Nov. 18, 2008) (declining to revisit predecessor judge's ruling denying motion to dismiss); *Firestone v. Berrios*, 42 F. Supp. 3d 403, 413 (E.D.N.Y. 2013) (holding where prior judge

2

thoroughly analyzed the legal sufficiency of a proposed amended complaint under Rule 12(b)(6), the transferor judge should deny a motion to dismiss following that same amended complaint).

Here, the substance of Plaintiffs' allegations in Counts I and II has not changed from the original complaint to the Amended Complaint. (*Compare* ECF #1 *with* ECF #62). Except for only a few new arguments regarding Counts I and II, Defendants completely repackaged the same arguments they advanced in their earlier memorandum in support of their motion to dismiss (ECF #12) and opposition to the motion for leave to amend the complaint (ECF #44). The Court addressed these arguments and rejected them, as detailed in the attached Table. (Ex. 1). [1]

Defendants offer no purported change in or clarification of the law to warrant revisiting decisions the Court made in either of its prior orders. Instead, they disguise their desire to get a different result from a different judge with a clear error argument. The only basis on which Defendants contend Judge Valdez committed clear error is their introduction of a different purported plan document, which Defendants failed to introduce in the first motion to dismiss, supposedly grants them the discretion to interpret Judge Valdez held the Plan document does not confer. (ECF #100 Ex. B, "wrap plan"; ECF #29, Order, at 6). That document cannot create "clear error" because (a) it does not meet the standard to be considered as materials outside the complaint, [2] and (b) Judge Valdez nevertheless thoroughly considered that document and Defendants' argument. (ECF #60 at12–16). Notwithstanding the document's questionable authenticity, Judge Valdez addressed it and thoroughly explained why Plaintiffs still adequately alleged a claim under Count I. (ECF #60 at 12–16). Without any rule or standard governing

---

[1] Exhibit 1 identifies each argument raised by Defendants here, whether it is new, and if not, where Defendants made the argument previously and where the Court already addressed that argument. (Ex. 1).

[2] *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) requires extrinsic documents supporting a Rule 12(b)(6) motion be referenced in the complaint and concededly authentic. As detailed in Plaintiffs' Motion to Reject Judicial Notice of the Wrap Plan (ECF #108), the document meets neither requirement.

how Northrop Grumman exercises its purported discretion to withhold an eligibility memo after layoff, Northrop Grumman cannot use its prevention of the occurrence of a condition as a defense to paying benefits. *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 542 (7th Cir. 1996). There is thus no change in or clarification of law, and no clear error.

## II. Plaintiffs Properly Alleged Standing as Participants Defined in ERISA.

Plaintiffs have standing to raise ERISA claims, just as the Court held twice already, because they are "participants" as defined in 29 U.S.C. § 1002(7). Defendants contend Plaintiffs cannot maintain any of the three counts because "Plaintiffs are not (and never were) participants in the Plan." (ECF #100 at 6, 10, 12). Defendants mistakenly rely on their own proposed interpretation of the word "participant" in the plan to confer standing, rather than the statutory definition. All three counts of the complaint may be brought by a "participant," as defined in ERISA. *See* 29 U.S.C. § 1132(a)(1) & (a)(3); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). A participant is "any employee or former employee . . . who is *or may become* eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7) (emphasis added). A participant then includes any person who has "a colorable claim that (1) he or she will prevail in a suit for benefits . . . ." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007) (holding whether plaintiff is a participants is a question for the merits, not one of a right to bring suit, because "participant" is someone who will recover plan benefits if he wins the suit).

Plaintiffs have such a colorable claim that they will prevail and recover severance benefits. Plaintiffs allege the eligibility memo merely notifies laid off employees they meet the eligibility criteria, and Northrop Grumman cannot evade paying severance benefits by withholding the memo. *Swaback*, 103 F.3d at 542 (applying to ERISA § 1132(a)(1)(B) claims the contract principle "that a party who prevents the occurrence of a condition precedent may not

4

stand on that condition's non-occurrence to refuse to perform his part of the contract").  Plaintiffs have a colorable claim to benefits and therefore standing as participants.

### III.     Count I Adequately Alleges Benefits Due Under 29 U.S.C. § 1132(a)(1)(B).

Count I adequately alleges benefits due under § 1132(a)(1)(B) because the dispute is solely one of interpreting a plan term, properly resolved at summary judgment after considering evidence of the ambiguous term's meaning.  "The interpretation of language in a plan governed by ERISA is controlled by federal common law, which draws on principles of contract interpretation . . . ."  *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012).  "It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract."  *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d at 542 (applying principle to § 1132(a)(1)(b) claim).  When a contract is ambiguous, either patently or latently, the court may consider objective extrinsic evidence to determine the ambiguous term's intended meaning.  *See Rosetto v. Pabst Brewing Co.*, 217 F.3d 539, 543, 547 (7th Cir. 2000) (explaining extrinsic evidence should be considered to determine what the patently or latently ambiguous terms mean); *Matthews v. Sears Pension Plan*, 144 F.3d 461, 466–67 (7th Cir. 1998) (same).

Plaintiffs claim they are entitled to the severance benefits notwithstanding Northrop Grumman withholding the eligibility memo from them because Northrop Grumman cannot evade performing its obligations under the Plan by causing a condition precedent to not occur. *See Swaback*, 103 F.3d at 542.  Whether delivering the eligibility memo is a discretionary decision, or just a means of notifying laid off employees they met the eligibility criteria and disclosing their severance amount, is a matter of interpreting an ambiguous contract term appropriate for summary judgment as the Court previously held.  (ECF #29 at 7–8). Accordingly, this issue is inappropriate for disposition via Rule 12(b)(6).

Discovery in this case has already yielded objective extrinsic documents, and more is necessary, showing the memo is just a ministerial act of notifying employees they meet the eligibility criteria, and Northrop Grumman cannot use its own act of withholding the memo as a basis to evade paying the benefits.  As described in the memorandum in support of Plaintiffs' motion to compel (ECF #102 at 11–13 & Ex. 5), the Guide to Administration,[3] and the Plan's publicly-filed Form 5500 listing of number of "participants," clarifies that every employee working in a sector that adopted a severance schedule, like Technical Services, was "offered" severance, and entitled to receive the eligibility memo if they meet the criteria Plaintiffs met. (Ex. 3, NGC01027).  Plaintiffs alleged the Plan shed over 5000 participants in 2012.  (ECF #62 ¶ 29).  The 2012 Form 5500 reflects that reduction.  (ECF #102 Ex. 6; Ex. 4).  The memorandum in support of motion to compel thoroughly explains how that document supports the meaning and purpose of the eligibility memo Plaintiffs allege.  (ECF #102 at 11–13).  Neither the Guide nor the Plan gives any hint Northrop Grumman has discretion to withhold the severance eligibility memo to a laid off employee who otherwise satisfied the criteria, despite the Guide referencing many things management does have discretion to do.  In addition, Plaintiffs alleged the existence of a presentation in which Northrop Grumman described the eligibility memo as just a means of notifying laid off employees they meet the eligibility criteria.  (ECF #62 ¶ 34). That the Court must review extrinsic documents to decipher the meaning of Plan terms makes dismissal at this stage inappropriate.

Even if discovery authenticates the "wrap plans" conferral of discretion to interpret, Judge Valdez properly determined Plaintiffs still adequately alleged a § 1132(a)(1)(B) claim because there is no evidence yet revealing *why* Northrop Grumman withheld the eligibility

---

[3] The Guide to Administration meets the *Hecker* standard to be considered because it is referred to in the Plan document attached to the complaint (ECF #62 Ex. 1 at 9), it is concededly authentic, and it helps interpret the meaning of the eligibility memo, making it central to Plaintiff's claims.  556 F.3d at 582.

memo, or the purported rule or standard upon which it based the decision. (ECF #60 at 15). A discretionary decision requires a rule or standard to guide how the discretion is exercised. *See Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 619 (7th Cir. 2008) (describing discretion as "mak[ing] a judgment within the confines of pre-set standards"); *McNab v. Gen. Motors Corp.*, 162 F.3d 959, 961–62 (7th Cir. 1998) (explaining a discretionary decision can be based upon either a rule or a standard). Without any rule or standard governing how to exercise discretion, there could never be judicial review this "discretionary" decision. *See Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) ("Deferential review is not no review."); *Swaback*, 103 F.3d at 540 (courts cannot "rubber stamp" decisions). With no rule or standard explaining how Northrop Grumman decided to withhold the eligibility memo, Northrop Grumman impermissibly withheld the memo to evade performing its obligation. *Id.* at 542 ("It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract."). The Court thus wisely stated "[t]he focal point for arbitrary and capricious review in this case is why Plaintiffs did not receive the Memo, not simply whether they received it." (ECF #60 at 15).

Even if the "wrap plan" equips Northrop Grumman with discretion to interpret, inconsistently applying the eligibility criteria will render its decision arbitrary and capricious. Applying the same defined term one way for one purpose but another way for another purpose is arbitrary and capricious. *Schane v. Int'l B'hood of Teamsters Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 591–92 (7th Cir. 2014) (applying the same term differently for different purposes is "paradigmatically arbitrary and capricious"); *Reich v. Ladish Co.*, 306 F.3d 519, 525 (7th Cir. 2002) (same). The amended complaint alleges that Plaintiffs received continued subsidized health insurance benefits under the Plan, which the Plan says are only

available to those who "qualify for benefits under this Plan." (ECF #62 ¶¶ 1, 38, 73; Ex. 2 at 5). The Plan lays out the same eligibility criteria and conditions to receive benefits under the Plan without regard to whether the benefit is continued health benefits or cash. Northrop Grumman's inconsistent application of those criteria for different purposes is thus "paradigmatically arbitrary and capricious." *Schane*, 760 F.3d at 591–92.

Defendants' argument discovery in ERISA benefit claims necessitates dismissal misses the mark. (ECF #100 at 8). Regardless of the standard of review, Plaintiffs are entitled to discover all information available to the administrator regarding the meaning of Plan terms. *Hess*, 274 F.3d at 462 (holding a court can consider all evidence known to the administrator when making the decision); *Matthews*, 144 F.3d at 466–67; *Young v. Verizon's Bell Atl. Cash Balance Plan,* 498 F. Supp. 2d 1101, 1107 (N.D. Ill. 2007); *Vallone v. CNA Fin. Corp.*, No. 98 C 7108, 2000 U.S. Dist. LEXIS 6763, at *7 (N.D. Ill. May 16, 2000). The Plan designates Northrop Grumman as the Administrator (Ex. 2 at 8), so all information in its possession regarding the meaning of the ambiguous plan terms is discoverable.

Finally, Defendants tersely argue Northrop Grumman is not a proper defendant for a benefit claim. (ECF #100 at 10 n.6). "[A] cause of action for 'benefits due' must be brought against the party having the obligation to pay." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013). The Plan expressly states severance benefits are paid from Northrop Grumman's general assets. (Ex. 2 at 9). Northrop Grumman is a proper defendant.

## IV. Count II Adequately Alleges Unlawful Interference under 29 U.S.C. § 1140.

Plaintiffs adequately alleged Northrop Grumman unlawfully interfered with Plaintiffs' attainment of benefits by withholding the eligibility memos to prevent Plaintiffs from receiving severance benefits, where Plaintiffs satisfied every other requirement in the Plan. Defendants challenge Plaintiffs' claim by arguing (1) the unlawful conduct must constitute interference with

the employment relationship, and (2) Plaintiffs must demonstrate an actual entitlement to the benefits.  (ECF #100 at 10–11).  Neither argument has support in the statutory text or case law.

### A.    Section 1140 Requires No Interference with the Employment Relationship.

Section 1140 requires no interference with the employment relationship because protected participants and beneficiaries are categories broader than whose employment relationship can be altered.  "It shall be unlawful for *any person* to discharge, fine, suspend, expel, discipline, or discriminate *against a participant or beneficiary* . . . for the purpose of interfering with the attainment of any right to which such participant *may become entitled* under the plan."  29 U.S.C. § 1140 (emphasis added).  In construing any statute, a court should begin with its clear language.  *Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 515 (1997); *George v. Junior Achievement of C. Ind., Inc.*, 694 F.3d 812, 814 (7th Cir. 2012) ("The district court was right to rely on the text.").

ERISA separately defines "participant" (§ 1002(7)) from "employee" (§ 1002(6)), and "person" (§ 1002(9)) from "employer" (§ 1002(5)), so they would not be used interchangeably.  *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744–45 (7th Cir. 1996) ("[W]e assume that the same words . . . have the same meaning in a given act and that the choice of substantially different words to address analogous issues signifies a different approach.").  29 U.S.C. § 1140 protects "participants" and "beneficiaries," which is broader than "employees" as "participants" can include former employees and as "beneficiaries" (e.g., employees' spouses) are often not employees.  By its plain language § 1140 protects more than interference with employment.

Responding to the same arguments and authority raised by Defendants here, the Seventh Circuit concluded that § 1140 is not limited to interference with the employment relationship.

> RM argues that this provision kicks in only when an employer fires an employee or takes some other action deliberately to alter the employment relation in a way that impairs the employee's rights under the ERISA plan.  Language in some

cases supports this narrow interpretation, which limits the provision to alterations in the employment relationship. But that language is dictum. All that the cases *hold* is that terminating a plan or modifying its terms does not, in and of itself, violate section 510. The cases use alteration of the employment relationship to illustrate what section 510 *does* forbid, and point out that words like "discharge," "fine," and "discipline" refer to what an employer does to an employee rather than to what a plan administrator does to a plan. There is more to the statute. Not only do the words "suspend," "expel," and "discriminate" denote actions that can be taken against a participant or beneficiary who is not an employee, but many participants and beneficiaries are not employees; for example, many participants are retired or former employees—Feinberg is a former employee—and a plan beneficiary is normally a member of a participant's family rather than one of the participant's fellow employees.

*Feinberg v. RM Acquisitions, LLC*, 629 F.3d 671, 675 (7th Cir. 2011). (emphasis added, citations omitted). Defendants' argument disregards the plain statutory text and scorns the *Feinberg* precedent. The Court should determine Plaintiffs adequately alleged violation of § 1140.

### B.    Section 1140 Requires No Present Entitlement to Benefits.

Defendants erroneously argue that Plaintiffs must show present entitlement to benefits. (ECF #100 at 10). Defendants discount the statutory text protecting "participants" (which includes those who "may become entitled to benefits" under § 1002(7)) and misunderstand their own authority. Their cases merely hold that plaintiffs must allege *but for the alleged interference*, they would have become entitled to benefits. *See, e.g.*, *Pendleton v. QuickTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009) ("[E]ven if Pendleton had separated from QuikTrip without cause, he still would not have been entitled to benefits."); *Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 824 (7th Cir. 2000) (holding plan amendment did not violate § 1140); *Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir. 1995) (employer cannot evade paying benefits by preventing condition from occurring); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) (holding § 1140 prevents persons from interfering with participants' ability to collect present or future benefits). Plaintiffs met this standard by alleging if Northrop Grumman had not withheld the eligibility memos from Plaintiffs, they met all other requirements

10

and would have received severance, and Northrop Grumman withheld the memos just to avoid paying severance (ECF #62 ¶¶ 69, 70, 72).  Plaintiffs thus adequately alleged a § 1140 violation.

## V.    Count III Adequately Alleges Breach of Fiduciary Duty Under § 1132(a)(3).

Defendants advance a number of arguments as to why Count III fails to state a claim, but each fails to show that Plaintiff's allegations are insufficient.  First, Defendants argue that Northrop is not a fiduciary, but their documents refute that argument because Northrop Grumman is the Plan Administrator.  (ECF #100 at 12).  By "the very nature of [its] position," the "plan administrator" is a fiduciary.  29 C.F.R. § 2509.75-8, D-3; *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 990 (7th Cir. 2005) ("[N]o "magic words" are necessary" but "the language in the [Plan] is surely sufficient."); *Osberg v. Foot Locker, Inc.*, No. 07 Civ. 1358, 2015 U.S. Dist. LEXIS 132054, at *84 (S.D.N.Y. Oct. 5, 2015) (concluding employer "was a fiduciary by virtue of being plan administrator . . . as set forth in the SPD").  "[N]ot only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets is an ERISA 'fiduciary.'" *Larson v. United Healthcare Ins. Co.,* 723 F.3d 905, 916 (7th Cir. 2013) (citations omitted).

ERISA requires that the summary plan description ("SPD") identify the Plan Administrator.  29 U.S.C. § 1102(b).  The document entitled "Northrop Grumman Severance Plan January 1, 2012" provides: "This summary plan description also constitutes the official 'Plan' document governing benefits" and "*there are no other Plan documents* that govern your benefits." (Ex. 2 at 10 (emphasis added)).  This combined SPD/Plan document identifies Northrop Grumman as both the Plan Sponsor and Plan Administrator and explicitly states that "[t]he Plan Sponsor administers the Plan and is the Plan Administrator."  (*Id.* at 8).  Thus, the Amended Complaint adequately alleges Northop Grumman was a fiduciary.

Second, Defendants attempt to mischaracterize Count III as challenging a plan amendment. (ECF #100 at 13). But Count III alleges that Northrop Grumman breached its fiduciary duty by *misinforming* Plan participants about the function of the memo from Human Resources and by *failing to disclose* its changed interpretation and application of the Plan. (ECF #62 ¶¶ 34, 37, 81, 82). Such allegations support a breach of fiduciary duty claim. *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996) (misleading plan participants about their benefits is a breach of ERISA's fiduciary duty obligations); *CIGNA Corp. v. Amara*, 563 U.S. 421, 505 (2011) (defendant breached its fiduciary duties by failing to give participants proper notice of changes to their benefits); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466–68, 480 (7th Cir. 2010) (explaining that ERISA fiduciaries have an affirmative obligation to communicate truthful material facts about benefits that "exists when a beneficiary asks fiduciaries for information, and even when he or she does not"); *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) (same). Thus, the Court properly held that Count III adequately alleges that Northrop Grumman breached its fiduciary duty by failing to provide accurate information about a new interpretation of the plan. (ECF #60 at 20–21).

Third, Defendants' argument that Rule 9(b) applies to Count III is not supported by its own authority. (ECF #100 at 14 (citing *Rogers v. Baxter, Int'l*, 417 F. Supp. 2d 974 (N.D. Ill. 2006)). The *Rogers* court recognized that claims alleging "communication of inaccurate information and the failure to disclose" material information in "breach of fiduciary duty" under ERISA were not subject to Rule 9(b). *Rogers*, 417 F. Supp. 2d at 984 (citing *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 909 (E.D. Mich. 2004) (finding Rule 9(b) did not apply to ERISA claim allegations of communicating "inaccurate information[] and the failure to disclose" certain information)). Other courts in this District and others within the Circuit reached similar

conclusions. *Smith v. Aon Corp.*, No. 04 C 6875, 2006 U.S. Dist. LEXIS 27297, at \*16 (N.D. Ill. Apr. 12, 2006) (finding Rule 9(b) did not apply to ERISA claims alleging a "failing to communicate material information"); *Howell v. Motorola*, *Inc.*, 337 F. Supp. 2d 1079, 1088–89 (N.D. Ill. 2004) (holding ERISA claims that fiduciaries failed to disclose material information are not subject to Rule 9(b)); *Spano v. Boeing Co.*, No. 06-CV-743, 2007 U.S. Dist. LEXIS 28774, at \*5 (S.D. Ill. Apr. 17, 2007) ("[C]laims of breach of fiduciary duty under ERISA are subject to no pleading standard more stringent than Rule 8 . . . .").[4]

The Complaint alleges that in October 2011 Northrop Grumman changed its interpretation of the Plan with respect to the purpose of a memo from a VP of Human Resources, but failed to inform participants of this change in violation of its fiduciary duties under 29 U.S.C. §§ 1022 and 1104. (ECF #62 ¶¶ 27–28, 34, 37). Northrop Grumman changed the purpose of the memo from serving a mere notification function to a requirement of eligibility. (*Id. ¶¶* 28, 82). Thus, Rule 9(b) does not apply to this breach of fiduciary duty claim.

Defendants do not identify any particular deficiency in the allegations of Count III. Even under Rule 9(b), a complaint that "provides a general outline of the alleged fraud scheme [is] sufficient to reasonably notify the defendants of their purported role in the scheme." *Laborers' Pension Fund v. Glendale Assoc., Ltd.*, No. 10 C 7371, 2011 U.S. Dist. LEXIS 79207, at \*17 (N.D. Ill. July 14, 2011) (denying motion to dismiss ERISA claims because an allegation about "the precise time at which an alleged misrepresentation was made" is unnecessary); *Smith*, 2006 U.S. Dist. LEXIS 27297, at \*21 (finding ERISA allegations satisfied Rule 9(b)). The Amended

---

[4] By relying on securities fraud and common law fraud cases (ECF #100 at 14), Defendants fail to appreciate the difference between those *legal* claims and equitable fraud. *See SEC v. Capital Gains*, 375 U.S. 180, 193 (1963) ("Fraud has a broader meaning in equity (than at law) and intention to defraud or to misrepresent is not a necessary element."). Equitable fraud "generally consists of obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith." *Amara v. CIGNA Corp.*, 775 F.3d 510, 524–25 & n. 11 (2d Cir. 2014); *accord Osberg* 2015 U.S. Dist. LEXIS, at \*100–102.

Complaint meets the requirements of Rule 9(b): Northrop Grumman made representations in early 2012, via a presentation, that described the notification function that the memo from a VP of Human Resource served. (ECF #62 ¶¶ 34, 81). Prior to that time, Northrop Grumman changed its interpretation—as admitted by one of its HR representatives—but *never* informed participants of this changed interpretation *until after plaintiffs had been terminated*. (*Id*. ¶¶ 26–27, 37). Not only does the Amended Complaint identify the presentation in early 2012, but it cites the failure to modify the SPD to inform participants of this change. (*Id.* ¶¶ 34-35, 79–80). The Court was right to find these allegations sufficient because they meet the requirements of Rule 9(b) and Rule 8 to allege equitable fraud or inequitable conduct. (ECF #60 at 21).

Finally, Defendants rely on *dicta* in *Varity* to argue that Plaintiffs are precluded from asserting both a fiduciary breach claim under § 1132(a)(3) and a benefits claim under § 1132(a)(1)(B). (ECF #100 at 15). The *Varity* court held that § 1132(a)(3) permitted "relief for individual beneficiaries" in addition to plan-wide relief for claims based on a fiduciary's misrepresentations. *Varity*, 516 U.S. at 492, 515. In *dicta* (expressing "that is not the case here"), *Varity* explained that if plaintiffs filed "'denial of benefits' claims as [i.e. instead of] a claim for 'breach fiduciary duty,'" the outcome would be the same if ERISA "elsewhere provided adequate relief." *Id.* at 514–15. But "*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available. Instead, 'if a plaintiff 'succeed[s] on both claims . . . the district court's *remedy* is limited to such equitable relief as is considered appropriate.'" *New York State Psych. Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015). Defendants' cases are in accord. *Mondry v. Am. Family Mut. Ins.*, 557 F.3d 781, 806 (7th Cir. 2009) (reversing summary judgment of a claim under § 502(a)(3) claim where plaintiff "could not have sought th[e] form of relief under

14

[§ 502(a)(1)(B)]."); *Roque v. Roofers' Unions Welfare Trust Fund*, No. 12 C 3788, 2013 U.S. Dist. LEXIS 71409, at *19 (N.D. Ill. May 21, 2013) ("[P]recedent does not foreclose simultaneous claims under § 502(a)(1)(B) and § 502(a) (3).").[5]

As illustrated by Defendants' reliance on summary judgment decisions, a plaintiff is not required to "choose between § 1132(a)(1)(b) or § 1132(a)(3) at the pleading stage" because "*Varity* does not limit the number of ways a party can initially seek relief at the motion to dismiss stage." *Silva v. Metro. Life Ins. Co*, 762 F.3d 711, 726, 728 (8th Cir. 2014) (reversing dismissal and rejecting the argument that similarity of relief was a consideration); *accord Killian v. Concert Health Plan*, 651 F. Supp. 2d 770, 780 (N.D. Ill. 2009) (allowing a § 1132(a)(1)(B) benefit claim to proceed along with breach of fiduciary duty claim under § 1132(a)(3) for failing to make certain disclosures).[6] Here, Count III permissibly alleges a distinct, alternative claim as permitted by Rule 8: Count I seeks benefits while Count III seeks equitable relief for Defendants' fiduciary breaches.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss the amended complaint.[7]

---

[5] Defendants inappropriately rely on *Roque* (ECF #100 at 15 n.9) as the Court reconsidered its prior order and reinstated all dismissed claims. *Roque v. Roofers' Unions Welfare Trust Fund*, No. 12 C 3788, 2014 U.S. Dist. LEXIS 185052, at *1 (N.D. Ill. Sep. 3, 2014).

[6] Defendants suggest that Plaintiffs cannot obtain the remedy of reformation. (ECF #100 at 14). But that is not an appropriate basis to seek dismissal. *Bontkowski v. Smith,* 305 F.3d 757, 762 (7th Cir. 2002) ("Even if [plaintiff] is seeking relief to which he's not entitled, this would not justify dismissal of the suit" because Rule 54(c) permits any relief to which a plaintiff is entitled even if it is not demanded in the pleadings). So long as the complaint *pleads* a claim for breach of fiduciary duty, that is sufficient. *Id.; see also Amara*, 563 U.S. 421 ("Equity suffers not a right to be without a remedy."). The Supreme Court would not preclude reformation in circumstances beyond fraud, and on remand, the Second Circuit affirmed a reformation remedy based on *contract,* not trust law principles. *Amara,* 775 F.3d at 525–30.

[7] Defendants also suggest that a motion for class certification "will fail." (ECF #100 at 15 n.10). The Court already held the Amended Complaint makes sufficient class allegations. (ECF #60 at 22–24).

December 18, 2015                                      Respectfully submitted,


By:      /s/ Michael Bartolic                         /s/ R. Joseph Barton

Attorneys for the Plaintiffs

Michael Bartolic                                      R. Joseph Barton
Rebecca K. Bryant                                     Kira L. Hettinger
The Law Offices of Michael Bartolic, LLC              Cohen Milstein Sellers & Toll PLLC
208 S. LaSalle Street                                 1100 New York Avenue
Suite 1420                                            Suite 500
Chicago, Illinois  60603                              Washington, D.C.  20005
Tel: 312-635-1600                                     Tel: 202-408-4600
Fax: 312-635-1601                                     Fax: 202-408-4699


### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 18, 2015, a copy of the foregoing was served by operation of the Court's electronic filing systems upon the following counsel of record:

Nancy G. Ross
Laura R. Hammargren
Abigail M. Bartine
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL  60606
T: 312-782-0600
F: 312-701-7711


                                                      /s/ Michael Bartolic_____


16