IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON & PETER DELUCA<br><br>Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,<br><br>Defendants. | Case No. 13-cv-2635<br><br>District Court Judge Andrea R. Wood |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Abigail M. Bartine (No. 6312317)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
LHammargren@mayerbrown.com
ABartine@mayerbrown.com

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

## I.     INTRODUCTION

An employer has unfettered discretion to decide whether to offer severance benefits to particular employees. If an employee is not eligible for such benefits under the benefit plan terms, ERISA provides no judicial recourse *See Estate of Suskovich v. Anthem Health Plans of Va. Inc.*, 553 F.3d 559, 571 (7th Cir. 2009); *Trombetta v. Craigin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1440 (7th Cir. 1996). That straightforward principle requires the dismissal of Plaintiffs' First Amended Complaint ("FAC"). As was its right, Northrop Grumman chose not to extend severance benefits to Plaintiffs under the Northrop Grumman Severance Plan (the "Plan").[1]

In an attempt to avoid the inevitable outcome of this litigation, Plaintiffs make procedural and substantive objections. On the procedural front, they say that the "law of the case" requires that Northrop Grumman's motion be denied. Plaintiffs are wrong. Northrop Grumman has a constitutional right to *de novo* review of Plaintiffs' amended claims by an Article III court. Moreover, the law of the case doctrine "does not limit the district court's power to reopen what already has been decided." *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). It does not require this Court to use its resources to entertain further proceedings as to a hopeless claim that should be dismissed at the outset. In addition, Plaintiffs ask the Court not to consider the Wrap Plan. But documents incorporated by reference into the complaint are fair game on a motion to dismiss, and the Wrap Plan is part of the Plan, which is incorporated by reference.

On the merits, Plaintiffs' position is based on the false premise that *every* Northrop Grumman employee who is terminated is entitled to severance benefits. That argument is belied by the Plan itself, which provides that benefits are "offered to *selected* employees of Northrop

---

[1]     The Plan documents are the Severance Plan and the Wrap Plan. The Severance Plan and the Wrap Plan were attached as Exhibits A and B, respectively, to the Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 100).

2

Grumman Corporation . . . who receive a notice of layoff." Severance Plan, at 2. Even if Plaintiff's interpretation were permissible—and it is not—it cannot possibly overcome the Plan Administrator's contrary interpretation, which is entitled to deference.

Plaintiffs' defense of their § 510 claim is equally unavailing. In essence, Plaintiffs argue that Defendants illegally interfered with Plaintiffs' attainment of Plan benefits by failing to designate them as eligible. But that was Defendants' right under the express terms of the Plan. Such authorized benefits decisions are not what Congress intended in enacting § 510. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990) ("Congress viewed [§ 510] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits."). Similar claims have been rejected by the courts, and this one should too.

Finally, Plaintiffs cannot excuse the pleading deficiencies in their § 502(a)(3) claim. In addition to failing to meet the standards for stating a claim under Federal Rules of Civil Procedure 8 and 9, the claim is also improper because it duplicates the relief sought under § 502(a)(1)(B).

For all of these reasons, the motion to dismiss should be granted.

## II. ARGUMENT

### A. Defendants' Motion to Dismiss the FAC is Entitled to De Novo Review.

Defendants are well within their rights to move to dismiss Plaintiffs' FAC. The legal insufficiencies in that complaint require dismissal, irrespective of any earlier proceedings in this case.

Plaintiffs argue strenuously that earlier rulings by the Magistrate Judge—dating to when this case was an *individual* action—bind this Court. But there is a serious constitutional problem with that argument. Unless the parties agree otherwise, a case cannot constitutionally be

3

delegated to a Magistrate Judge unless a supervising Article III judge exercises de novo review. *See generally* 28 U.S.C. § 636(b); 28 U.S.C. § 636(b)(1)(A) (a district judge may not designate a magistrate judge to "dismiss or to permit maintenance of a class action"). Although this case was referred to a Magistrate Judge when it was a single-plaintiff case, this Court determined that Defendants had *not* consented to have a class-action lawsuit resolved by a Magistrate Judge. *See* Dkt. 87. *Ipso facto*, they have a constitutional right to a *de novo* interpretation by this Court.

But even if the motion to dismiss were treated as a motion for reconsideration of the Magistrate Judge's prior rulings, this Court has the authority to revisit a prior interlocutory order.[2] *See United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) ("[T]he law of the case doctrine is a discretionary doctrine that does not limit the district court's power to reopen what already has been decided."); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006). This is no less so because a case is transferred to a new judge. *See, e.g.*, *In re Ford Motor Co.*, 591 F.3d 406, 411-14. (5th Cir. 2009) (explaining that " a successor judge has the same discretion to reconsider an order as would the first judge" and finding that the district court erred in denying motion to reconsider MDL court's erroneous denial of motion to dismiss); *Griffith v. City of New Orleans*, 2013 WL 2555787, at *1, n. 3 (E.D. La. June 10, 2013) (granting in part a motion for reconsideration of prior dismissals by transferor judge). As the Supreme Court has explained, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," where there are "extraordinary circumstances . . . where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted). In this case, to the

---

[2] In fact, the Federal Rules of Civil Procedure do not provide procedural grounds for a motion for reconsideration. *See Annecca Inc. v. Lexent, Inc.*, 2004 WL 1470150, at *1 (N.D. Ill. June 29, 2004) (noting that "[m]otions for reconsideration cannot be located in any search of the Federal Rules of Civil Procedure"). And Defendants' motion cannot be deemed a request for reconsideration for the simple fact that no court has entertained a responsive motion to Plaintiffs' FAC.

extent this Court sees Defendants' motion to dismiss as a motion for reconsideration of the Magistrate Judge's prior orders, such review is necessary to correct clear error that arose from (1) not having the Wrap Plan document available on the original motion to dismiss, and, even after the Wrap Plan was available to the Magistrate, (2) clear legal error in granting Plaintiffs' motion for leave to amend. Both of the parties and the Court have already expended significant resources litigating Plaintiffs' groundless claims. For all of the reasons discussed below, Plaintiffs' amended complaint should be dismissed.

### B. Plaintiffs Do Not Have Standing as ERISA Participants.

As Defendants pointed out claim-by-claim in their opening brief, all three counts of Plaintiffs' FAC must be dismissed because they do not have standing under ERISA as "participants" of the Plan. Plaintiffs respond that ERISA includes within the definition of participants those who "may become eligible to receive a benefit." 29 U.S.C. § 1002(7).

From there, Plaintiffs' argument becomes circular. The thrust of their claim is that, *because they will receive benefits through this lawsuit*, they are participants. But that, of course, requires them to show that they will receive benefits through this lawsuit—or, at a minimum, that they have a colorable claim to those benefits.

Our position, by contrast, is that Plaintiffs' ineligibility for benefits can be determined as a matter of law, on the face of the FAC. If the Court accepts our arguments that Plaintiffs are *not* eligible for benefits, then they plainly are *not* "participants" under ERISA, and the FAC must be dismissed.

Stated differently, "a former employee who never participated in her former employer's plan which was governed by ERISA, 'cannot retroactively become eligible for a plan under which they do not qualify.'" *Wahl v. Carissima of Italy III, Ltd.*, 2000 WL 1100434, at *2 (N.D.

5

Ill. Aug. 4, 2000) (quoting *Loechl v. Illinois Telephone Co.*, 648 F. Supp. 1178, 1180-81 (N.D. Ill. 1986)). Northrop Grumman did not promise severance benefits to Plaintiffs—in fact, the Plan terms clearly state that Plaintiffs' eligibility for severance benefits was always subject to the conditions of participation outlined in the Severance Plan. They never received the Eligibility Memo (one of the conditions for receiving benefits) and the severance benefits never became "vested benefits." ERISA does not create a right to employer-provided welfare benefits, such as severance, and such benefits only vest if the welfare benefits plan contracts to do so. *See Barnett v. Ameren Corp.*, 436 F.3d 830, 832 (7th Cir. 2006). Therefore, Plaintiffs have no standing to bring any of these claims because they are not now, and never were, participants with a colorable claim to benefits under the Plan. *See Sallee v. Rexnord Corp.*, 985 F.2d 927, 929 (7th Cir. 1993) (affirming dismissal of ERISA claims for lack of standing because plaintiffs did not fulfill requirements for severance benefits where they voluntarily left employment); *Plummer v. Consolidated City of Indianapolis, Dep't of Waterworks*, 2004 WL 2278740, at *8-9 (S.D. Ind. Aug. 17, 2004) (following the Second and Sixth Circuits to hold that potential participants have no standing to sue for breach of fiduciary duty).

      **C.**      **Plaintiffs' Claim for Benefits under Sec. 502(a)(1)(B) Must be Dismissed.**

Plaintiffs advance numerous arguments in opposition to Defendants' motion to dismiss their § 502(a)(1)(B) claim for benefits under the terms of the Plan, none of which save their claim. Plaintiffs' principal argument is that disposition of the claim is inappropriate at the motion to dismiss stage because additional evidence is necessary to resolve an alleged ambiguity in a term of the Plan. This argument is mistaken for two reasons. First, the Plan terms vest the Plan Administrator with the discretion to interpret and resolve ambiguities in the Plan. *See* Wrap Plan, § 4.08(f) ("Such powers include, but are not limited to, full discretionary authority to . . .

Construe and interpret the terms of the Plan, including the power to remedy possibly ambiguities, inconsistencies or omissions."). Because the Plan gives this discretion to the Plan Administrator, the Court may only overturn the Plan Administrator's interpretation of Plan terms, including the resolution of any ambiguities, under the highly deferential arbitrary and capricious standard. *See See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 662 (7th Cir. 2005) ("The requirement that we give deference to the plan administrator's interpretation is especially applicable when plan language is ambiguous, for that is precisely when the administrator exercises his grant of discretion."); *Frye v. Thompson Steel Co., Inc.*, 657 F.3d 488, 495-96 (7th Cir. 2011); *Wetlzer v. Illinois CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009). As explained in detail in the Defendants' opening brief, the Plan Administrator's interpretation of Plan terms was reasonable and, therefore, cannot be disturbed.

Second, on a Rule 12(b)(6) motion to dismiss, extrinsic evidence is not permitted. Although governing Plan documents are properly considered, other documents that fall outside of the Plan documents—such as the Guide to Administration and the Form 5500 that were improperly put forward by Plaintiffs[3]—may not be considered when addressing a § 502(a)(1)(B) claim at this stage in the litigation. Furthermore, in the course of determining whether the Plan Administrator's interpretation of the Plan terms was arbitrary and capricious, discovery concerning the Plan Administrator's decision-making process is not permitted. *See Perlman v. Swiss Bank Corp.*, 195 F.3d 975, 981-82 (7th Cir. 1999).[4] Plaintiffs' additional claim that they have a right to discover all information available to Northrop Grumman because it was the Plan Administrator is disproved by the express terms of the Plan, which designates the Chief Human

---

[3] Defendants have separately moved to strike Plaintiffs' extrinsic evidence from consideration on this motion to dismiss.

[4] Limited discovery may be permissible where, unlike here, the plaintiffs have raised a genuine issue of a conflict of interest by the decisionmaker. *See Perlman*, 195 F.3d at 981-82.

Resources and Administrative Officer as administrator. *See* Severance Plan, at 8; Wrap Plan, § 4.01. Under well-established ERISA law, the actions of the Chief Human Resources and Administrative Officer with respect to Plan administration are not imputed to Northrop Grumman. *See Patten v. Northern Trust Co.*, 703 F. Supp. 2d 799, 814 (N.D. Ill. 2010) (citing *Pegram v. Herdrich*, 530 U.S. 211, 225) (2000) ("although ERISA allows fiduciaries to also be company employees or officers . . . ERISA requires 'that the fiduciary with two hats wear only one at a time'"). Even if Plaintiffs were entitled to present the administrative record on this claim, documents available to Northrop Grumman but not considered by the Plan Administrator would not be permitted for review.

Plaintiffs also attach great importance to the Magistrate Judge's conclusion that the § 502(a)(1)(B) claim cannot be determined on a motion to dismiss because "there is no evidence yet revealing *why* Northrop Grumman withheld the eligibility memo, or the purported rule or standard upon which it based the decision." Pl. Opp., at 7. The Magistrate Judge's conclusion, however, was erroneous because the reason *why* the Vice President of Human Resources did not provide plaintiffs with the necessary Eligibility Memo is irrelevant to the question presented here, that is, whether the Plan Administrator's interpretation and application of the Plan's terms in finding that Plaintiffs were not eligible for benefits was reasonable. Plaintiffs are correct that arbitrary and capricious review is "not no review" (*Hess*, 274 F.3d at 461), but they focus on the wrong act. The Court's duty is to ensure that the Plan Administrator's interpretation of Plan terms was not arbitrary and capricious, not to decide whether management's decision to not select Plaintiffs to receive an eligibility memo was arbitrary and capricious.

This situation is no different than if the Severance Plan had stated that only managers were eligible for severance benefits and a non-manager brought a suit seeking severance

8

benefits. In that situation, it would be legally irrelevant as to why the Company had not promoted the individual to a manager or what standard the Company used in determining that individual should not be a manager. The Court's duty would be only to determine whether the Plan Administrator's interpretation of the Plan to deny the non-manager severance benefits was arbitrary and capricious.

To support their mistaken position, Plaintiffs cite *McNab* and *Gutta* for the proposition that a "discretionary decision requires a rule or standard to guide how the discretion is exercised." Pl. Opp., at 7. However, the relevant decision that is at issue is the discretionary decision of the Plan Administrator and whether there are rules or standards for the Plan Administrator to use. The decision by Company management on whether to select an employee to be eligible to receive benefits is not subject to a judicial review or a determination of whether there are rules or standards in making that determination. Both *McNab* and *Gutta* explain that an ERISA plan may either grant discretion to a plan administrator or, in the absence of discretion, set forth clear guidelines governing a plan administrator's construction of the plan terms. Here, the Plan granted discretion to the Plan Administrator to interpret the Plan. The Plan Administrator exercised that discretion in determining whether Plaintiffs satisfied the Plan's eligibility standards. To the extent the law requires a "standard" or "rule," the standard here was a determination that a claimant received the necessary Eligibility Memo. In relying on *McNab* and *Gutta*, Plaintiffs are trying to fit the proverbial square peg in a round hole. Simply put, the proposition which Plaintiffs cite from these cases does not support their argument that the Plan Administrator had a duty to investigate why Plaintiffs did not receive the Eligibility Memo.

Plaintiffs also argue that even if the Plan Administrator had discretion, its interpretation should be disregarded because "inconsistently applying the eligibility criteria will render its

9

decision arbitrary and capricious." Pl. Opp., at 7. But there is nothing "inconsistent" about the Plan Administrator's interpretation of the eligibility criteria. The Plan Administrator reasonably determined that receipt of the Eligibility Memo is a precondition to eligibility. Upon making that determination, the Plan Administrator applied the requirement consistently by determining that former employees who had not received an Eligibility Memo were not eligible.

What renders a plan administrator's interpretation arbitrary or capricious when deciding a claim is its failure to "offer[] a reasoned explanation, based on the evidence, for a particular outcome." *Krawczyk v. Hanischfeger Corp.*, 41 F.3d 276, 279 (7th Cir. 1994). Here, there can be no dispute that by its clear terms—stated in three different sections of the Plan—eligibility for severance turned on receipt of the Eligibility Memo by a Vice-President of Human Resources. *See* Severance Plan, at 2-3. This was clearly explained to Plaintiffs in the Plan documents. Northrop Grumman's generous provision of health benefits it was not required to give does not make the Plan Administrator's decision that Plaintiffs were not eligible for severance benefits arbitrary and capricious.

Finally, Plaintiffs have named an improper defendant for benefits under § 502(a)(1)(B). The general rule in Seventh Circuit is that the proper defendant in an ERISA benefits claim is the plan. Plaintiffs' case is easily distinguishable. In *Larson v. United Healthcare Ins. Co.*, the court held that a third party insurer could be a proper defendant when the plan "is implemented by insurance and the insurance company decides contractual eligibility and benefits questions and pays the claims." 723 F.3d 905, 913 (7th Cir. 2013). The Seventh Circuit has routinely held that employers are not proper defendants under this provision unless they retain control over the administration of the plan and as such are "closely intertwined" with the plan. *See Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (further noting that "the issue before us involves a

matter of plan interpretation, and plan interpretation is a matter for the plan administrator, making the plan a proper party"). Plaintiffs have not alleged that Northrop Grumman controls the administration and decision-making of the Plan and they do not argue that is the case in their opposition. Without such allegations, Northrop Grumman is not a proper defendant for Plaintiffs' benefits claim.

### D.     Plaintiffs' Claim of Improper Interference with the Attainment of Benefits under § 510 Must be Dismissed.

As the basis of their § 510 claim, Plaintiffs merely allege that Defendants violated § 510 by refusing to provide them with benefits. *See* Am. Compl., ¶ 68 ("Northrop Grumman discriminated against Plaintiffs in not delivering to them the memo from a Vice President in order to interfere with their attainment of severance benefits."). Management's proper exercise of its discretion to grant or deny severance benefits is not the type of interference that § 510 concerns. *See Bailey v. U.S. Enrichment Corp.*, 2012 WL 4848877 at *7 (S.D. Ohio 2012) (granting defendant's motion to dismiss § 510 claim because "[m]ere determination that Plaintiffs were not eligible for severance benefits does not equate to an intent to violate ERISA.").

Plaintiffs offer no explanation as to how Defendants discriminated against them or interfered with their attainment of benefits in violation of § 510, except to cite to *Feinberg v. RM Acquisitions, LLC*, 629 F.3d 671 (7th Cir. 2011) for the proposition that § 510 discrimination can include more than interference with the employment relationship. As the *Feinberg* opinion noted, it is uncontroversial that unlawful interference may occur outside of the context of change to the employment relationship, such as when an employer acts to interfere with the beneficiary of a deceased employee. *Id.* at 675. But Plaintiffs allege only that Defendants violated § 510 by refusing to provide them with benefits when they were laid off as part of a reduction-in-force.

11

They do not allege that they were laid off *to prevent them* from receiving benefits, nor do they allege any other conduct that implicated the employment relationship. Furthermore, the *Feinberg* case is distinguishable for the additional fact that Plaintiffs in this case were not participants in the Plan, unlike the plaintiffs in *Feinberg*. As the court in *Feinberg* pointed out, it may be possible to interfere with "a *participant's* rights" without altering the employment relationship, but that teaching does not extend to non-participants like the Plaintiffs here. *Id*.

Moreover, a proper finding under the arbitrary and capricious standard that Plaintiffs were not eligible for benefits further undermines their § 510 claim because it confirms that they were never entitled to benefits in the first place. Without a right to severance benefits under the Plan, Plaintiffs cannot state a § 510 claim. As the Seventh Circuit has explained, "[S]ection 510 only applies if the employee can show (among other things) that they were qualified under the plan for the denied benefits. If the plan itself provides for discriminatory practices, such that they do not qualify for benefits under its terms, they cannot prevail on an ERISA claim." *Ameritech Ben. Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 824 (7th Cir. 2000). Here, Plaintiffs did not meet the prerequisites to obtain benefits because they were not selected for severance benefits and did not receive an Eligibility Memo as required by the Plan. Thus, they had no right to benefits and cannot state a claim for violation of § 510.

E. **Plaintiffs' Claim for Equitable Reformation under § 502(a)(3) Must be Dismissed.**

Plaintiffs' claim of breach of a fiduciary duty must fail because Plaintiffs have not named a proper defendant. Plaintiffs contend that Northrop Grumman is a proper defendant for their § 502(a)(3) claim because as Plan Administrator it is a fiduciary. Pl. Opp., at 11. Their argument is belied by the express terms of the Plan. As noted earlier, the Plan designates the Chief Human Resources and Administrative Officer as administrator. *See* Severance Plan, at 8. A company

employee may serve as an ERISA fiduciary without conferring fiduciary status on his or her employer. *See Patten*, 703 F. Supp. 2d at 814. Moreover, Plaintiffs make no attempt to argue that the Plan is a proper defendant and thereby concede the point. Thus, the claim for breach of fiduciary duty cannot be advanced against either Defendant.

Plaintiffs largely ignore Defendants' argument that their FAC does not adequately allege a § 502(a)(3) claim under the standards of *Twombly* and *Iqbal*. As discussed previously, Plaintiffs' vague assertion that "Northrop Grumman made changes to the administration, interpretation, or terms of the Plan," (Am. Compl., ¶ 79), does not pass the specific pleading requirements. Plaintiffs allege no facts showing that Northrop Grumman changed the plan terms, nor can they, as the documents included with the FAC show that since the inception of the Plan, the Plan terms did not change. *Compare* Dkt. 62-1, 2012 Plan, at 3 *with* Dkt. 62-2, 2010 Plan, at 3. Plaintiffs further allege nothing to support their contention that plan administration, application, and interpretation changed, and they cannot because nothing has changed. Instead, management exercised the discretion Plan terms always provided to not provide Plaintiffs with the Eligibility Memo necessary to make them eligible for severance benefits.

With respect to Defendants' argument that Plaintiffs' claims are inadequately pled under the particularity standard of Rule 9(b), Plaintiffs misconstrue case law cited in Defendants' opening brief. Courts have held that § 502(a)(3) claims are subject to heightened pleading standard under Rule 9 where the allegations of an employer's misrepresentations sound in fraud. For instance, in *Rogers v. Baxter, Int'l,* 417 F. Supp. 2d 974 (N.D. Ill. 2006)—a case which Plaintiffs take liberty with to argue that it does not support the application of Rule 9(b)—expressly held that Plaintiffs' claims of misrepresentation under § 502(a)(3) were not pleaded with the requisite particularity where they alleged fraud. *Id.* at 984-85. The court noted that

"[a]lthough [the complaint] does not use the term 'fraud' or 'fraudulent,' it alleges conduct that is classically associated with fraud: a 'scheme' and 'course of conduct' engaged in by the defendants to disseminate inaccurate and misleading information." *Id.* at 984. Here, Plaintiffs allege that Defendants engaged in a systematic effort to hide from employees a change in eligibility standards for severance benefits across the entire company. *See, e.g.*, Am. Compl., ¶¶ 79, 81, 82; Pl. Opp., at 10-11 ("Plaintiffs met this standard by alleging if Northrop Grumman had not withheld the eligibility memos from Plaintiffs, they met all other requirements and would have received severance, and Northrop Grumman withheld the memos just to avoid paying severance (ECF # 69, 70, 72)."). According to the FAC, Northrop Grumman engaged in this course of misrepresentation because it "did not want to pay out the cash portion of the benefits." Am. Compl., ¶ 4. But in doing so, the FAC makes only vague references to omissions and a presentation in which a change in administration was not disclosed to employees, but does not allege in any detail how this scheme was carried out. Such cursory allegations fail to meet the heightened pleading standards of Rule 9(b).[5]

Furthermore, although a claim for equitable reformation under § 502(a)(3) may not always be foreclosed when a claim is made simultaneously for benefits under § 502(a)(1)(B), such a claim is not permitted when the same relief is sought under both counts. *See Hakim v.*

---

[5] The cases Plaintiffs cite do not turn on a holding that allegations of breach of fiduciary duty through misrepresentations may never be subject to Rule 9(b). *See Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1089 (N.D. Ill. 2004) (determining that Rule 9(b) did not apply only where plaintiff alleged "negligent misrepresentation, but not fraud or mistake"); *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 909 (E.D. Mich. 2004) (declining to apply Rule 9(b) where it was "not persuaded that plaintiffs have made any claims sounding in fraud"). In the Plaintiffs' remaining cases, the courts did not decide the pleading issue on these grounds. *See Smith v. Aon Corp.*, 2006 WL 1006052, at *7 (N.D. Ill. Apr. 12, 2006) (noting in dicta that Rule 9(b) did not apply but finding that the allegations were sufficient under either Rule 9(b) or Rule 8(a)); *Spano v. Boeing Co.*, 2007 WL 1149192, at *2, n. 2 (S.D. Ill. Apr. 18, 2007) (declining to decide the issue of whether heightened pleading standards applied because the relevant allegations related to an affirmative defense). Other district courts within the Seventh Circuit have held that Rule 9(b) applies to ERISA allegations similarly alleging fraud. *See Lively v. Dynegy, Inc.*, 420 F. Supp. 2d 949, 955 (S.D. Ill. 2006); *In re Sears Roebuck & Co. ERISA Litig.*, 2004 WL 407007, at *6 (N.D. Ill. Mar. 3, 2004); *Beauchem v. Rockford Prods. Corp.*, 2003 WL 1562561, at *3 (N.D. Ill. Mar. 24, 2003); *Cook v. Exelon Corp.*, 2002 WL 31133274, at *4-5 (N.D. Ill. Sept. 26, 2002).

*Accenture United States Pension Plan*, 656 F. Supp. 2d 801, 813 (N.D. Ill. 2009) (dismissing plaintiff's § 502(a)(3) claim because "*Varity* and its progeny bar plaintiffs from getting two bites at the apple by asserting identical claims under §§ 502(a)(3) and 502(a)(1)(B)"). The Seventh Circuit joined the majority of other Circuits in *Mondry v. Am. Family Mut. Ins.* when it held that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." 557 F.3d 781, 805 (7th Cir. 2009) (emphasis in original). As in *Hakim*, other courts in this district have similarly found that dismissal of a § 502(a)(3) claim is proper at the motion to dismiss stage on these grounds. *See, e.g.*, *Rice ex rel. Rice v. Humana Ins. Co.*, 2007 WL 1655285, at *3-4 (N.D. Ill. June 4, 2007); *Moffat v. Unicare Midwest Plan Grp. 314541*, 2005 WL 1766372, at *5 (N.D. Ill. July 25, 2005); *Erikson v. Ungaretti & Harris–Exclusive Provider Plan*, 2003 WL 22836462, at *3-4 (N.D. Ill. Nov. 24, 2003).[6] Plaintiffs' claim for equitable reformation is nothing more than a claim for benefits by another name and must be dismissed.

### III. CONCLUSION

For the above stated reasons and all of the reasons set forth in Defendants' opening brief, Plaintiffs' First Amended Complaint must be dismissed with prejudice.

---

[6] Plaintiffs note in their opposition brief that Defendants cite to a case that was later reversed on a motion for reconsideration. *See* Pl. Opp., at 15 n. 5 (referencing *Roque v. Roofers' Unions Welfare Trust Fund*, 2013 WL 2242455 (N.D. Ill. May 21, 2013). Although there was no indication that the court's order was reversed in the Westlaw database relied upon by Defendants, Plaintiffs cite to a minute order indicating that the court issued an oral ruling granting a motion to reconsider its orders on the motion to dismiss and reinstating the § 502(a)(3) claim. *See* 2014 U.S. Dist. LEXIS 185052 (N.D. Ill. Sept. 3, 2014). Nevertheless, the court did not disavow its legal analysis that claims for the same relief for the same injury under both §§ 502(a)(1)(b) and 502(a)(3) are not allowed. *See* Tr. at 6, *Roque v. Roofers' Unions Welfare Trust Fund*, Case No. 12-cv-03788, Dkt. No. 66. Instead, the court granted the motion because it determined that "plaintiff is at least legally capable of bringing both types of claims simultaneously as they can allege different injuries occurring at different times and seek different relief." *Id.* That is not the case here, and, as discussed above, courts in the Seventh Circuit routinely dismiss identical claims.

Date: January 15, 2016                                   Respectfully submitted,


                                                     /s/ Nancy G. Ross
Nancy G. Ross (No. 6190243)
NRoss@mayerbrown.com
Laura Hammargren (No. 6310920)
LHammargren@mayerbrown.com
Abigail M. Bartine (No. 6312317)
ABartine@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on January 15, 2016.

      /s/ Nancy G. Ross

      Nancy G. Ross