**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN CARLSON & PETER DeLUCA, individually and on behalf of a class of similarly situated individuals, | ) ) ) | Civil Action No.: 13-cv-2635 |
| | ) | Judge Andrea Wood |
| Plaintiffs, | ) ) | |
| | ) | Magistrate Judge Maria Valdez |
| v. | ) ) | |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

I.  BACKGROUND AND PROCEDURAL HISTORY ................................................ 1
    A.  Plan Provisions and Benefits ........................................................................ 2
    B.  Northrop's Interpretation and Administration of the Plan Prior to 2011 .............. 2
    C.  Northrop's Harmonization of Its Severance Benefits ................................... 4
    D.  Effect of Northrop's Harmonization .............................................................. 5
    E.  Plaintiffs Exhaust Their Administrative Remedies and File Suit ...................... 5

ARGUMENT .................................................................................................................... 6

II.  THE CLASS IS PROPERLY DEFINED ................................................................ 7

III. THE REQUIREMENTS OF RULE 23(**a**) ARE SATISFIED ................................. 8
    A.  Joinder of the Class is Impracticable .......................................................... 8
    B.  Plaintiffs' Claims are Necessarily Common to those of the Class .................. 9
    C.  Plaintiffs' Claims are Typical of the Class ................................................... 12
        1.  Plaintiffs' Claims Are Typical of the Class ..................................... 12
        2.  There are no Defenses Unique to the Proposed Class Representatives ....... 15
    D.  The Proposed Class Will be Fairly and Adequately Represented ................. 17
        1.  The Proposed Class Representatives Are Qualified ......................... 17
        2.  Counsel Meets the Requirements of Rule 23(a)(4) & 23(g) ................... 18

IV. THE CLAMS MEET THE REQUIREMENTS OF RULE 23(**b**) ...................................... 20
    A.  The Claims Meet the Requirements of Rule 23(b)(1) ................................. 20
        1.  Certification Under 23(b)(1)(A) is Proper ..................................... 20
        2.  Certification Under 23(b)(1)(B) is also Proper .............................. 22
    B.  The Requirements of Rule 23(b)(2) are Satisfied ....................................... 24
        1.  Defendants Have Acted or Refused to Act On Grounds Generally
            Applicable to the Class ................................................................ 24
        2.  The Complaint Seeks Declaratory and Injunctive Relief ................. 25
    C.  The Requirements of Rule 23(b)(3) are Satisfied ....................................... 26
        1.  Common Issues Predominate ......................................................... 27
        2.  A Class Action is a Superior Method of Resolving These Claims ............ 28

CONCLUSION ................................................................................................................. 29

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Anheuser-Busch Cos, Inc.*,
   No. 2:10-CV-826, 2012 WL 1058961 (S.D. Ohio Mar. 28, 2012)......................16, 21

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)...............................................................................................14

*Alday v. Raytheon Co.*,
   619 F. Supp. 2d 726 (D. Ariz. 2008) ....................................................................21

*Amara v. CIGNA Corp.*,
   775 F. 3d 510 (2d. Cir. 2014)...............................................................11, 26, 28

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................7, 17, 21, 27

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
   133 S. Ct. 1184 (2013)..................................................................7, 11

*Arreola v. Godinez*,
   546 F. 3d 788 (7th Cir. 2008) .................................................................12

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
   270 F.R.D. 488 (N.D. Cal. 2010)................................................... *passim*

*Bell v. PNC Bank, Nat'l Ass'n.*,
   800 F.3d 360 (7th Cir. 2015) ..........................................................7, 9, 27

*Berger v. AXA Network, LLC*,
   220 F.R.D. 316 (N.D. Ill. 2004).................................................11, 14, 25

*Boos v. AT&T, Inc.*,
   252 F.R.D. 319 (W.D. Tex. 2008) ..........................................................27

*Boyd v. Meriter Health Servs. Emp. Ret. Plan*,
   No. 3:10-cv-426, slip op. (W.D. Wis. Feb. 17, 2012), *affirmed*, *Johnson v.
   Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d. 364 (7th Cir. 2012) .....................11

*Breedlove v. Tele-Trip Co.*,
   No. 91 C 5702, 1993 WL 284327 (N.D. Ill. July 27, 1993).....................................10

*Brieger v. Tellabs, Inc.*,
   245 F.R.D. 345 (N.D. Ill. 2007)..............................................12, 14, 23

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

*Brosted v. Unum Life Ins. Co. of Am.*,
    421 F.3d 459 (7th Cir. 2005) ................................................................................14

*Carlson v. Northrop Grumman Corp.*,
    No. 13 C 2635, 2014 WL 5334038 (N.D. Ill. Oct. 20, 2014)...................................22

*Carlson v. Northrop Grumman Corp.*,
    No. 13-CV-02635, 2016 WL 3671361 (N.D. Ill. July 11, 2016).....................................*passim*

*Cavin v. Home Loan Ctr., Inc.*,
    236 F.R.D. 387 (N.D. Ill. 2006)..............................................................................18

*Chesemore v. Alliance Holdings, Inc.*,
    276 F.R.D. 506 (W.D. Wis. 2011) ..........................................................................19

*Chesemore v. Fenkell*,
    829 F.3d 803 (7th Cir. 2016) .................................................................................19

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*,
    797 F.3d 426 (7th Cir. 2015) ..............................................................................8, 9

*Cooper v. IBM Pers. Pension Plan*,
    No. CIV. 99-829-GPM, 2001 WL 36412295 (S.D. Ill. Sept. 17, 2001)....................22

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) ...............................................................................27

*Employee Benefits Security Administration Form 5500 Series*,
    United States Department of Labor,
    https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-
    administration-and-compliance/reporting-and-filing/form-5500 (last visited
    January 1, 2017).......................................................................................................3

*In re Fedex Ground Package Sys., Inc., Emp't Practices Litig.*,
    2007 WL 3027405 (N.D. Ind. Oct. 15, 2007)...........................................................9

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)................................................................................................27

*Flanagan v. Allstate Ins. Co.*,
    242 F.R.D. 421 (N.D. Ill. 2007), *vacated on other grounds*, *In re Allstate Ins.*
    *Co.*, 400 F.3d 505 (7th Cir. 2005).............................................................11, 14, 28

## TABLE OF AUTHORITIES

**Page(s)**

*Gavalik v. Continental Can Co.*,
   812 F.2d 834 (3rd Cir.1987) ...................................................................13

*George v. Kraft Foods Glob., Inc.*,
   251 F.R.D. 338 (N.D. Ill. 2008) ......................................................12, 17

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) ..................................................................17

*Harris v. Koenig*,
   271 F.R.D. 383 (D.D.C. 2010) ...............................................................22

*In re Household Int'l Tax Reduction Plan*,
   441 F.3d 500 (7th Cir. 2006) ..................................................................16

*Howard v. Pollard*,
   814 F.3d 476 (7th Cir. 2015) ..................................................................18

*In re J.P. Morgan Chase Cash Balance Litig.*,
   242 F.R.D. 265 (S.D.N.Y. 2007) .....................................................22, 23

*James v. Nat'l Bus. Sys., Inc.*,
   924 F.2d 718 (7th Cir. 1991) ....................................................................8

*John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit
   Sharing Plan*,
   26 F.3d 360 (2nd Cir. 1994) ...................................................................21

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ..................................................................17

*Koos v. First Nat'l Bank of Peoria*,
   496 F. 2d 1162 (7th Cir. 1974) ...............................................................15

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014) ............................................................22

*La Fata v. Raytheon Co.*,
   207 F.R.D. 35 (E.D. Pa. 2002) ...............................................................27

*La. Firefighters' Ret. Sys. v. N. Tr. Inv., N.A.*,
   312 F.R.D. 501 ........................................................................................16

*Larson v. United Healthcare Ins. Co.*,
   723 F.3d 905 (7th Cir. 2013) ............................................................12, 27

## TABLE OF AUTHORITIES

**Page(s)**

*Lemke v. Suntec Indus., Inc.*,
    No. 94 C 50006, 1997 WL 760507 (N.D. Ill. Dec. 1, 1997) ....................................13

*Lindemann v. Mobil Oil Corp.*,
    141 F.3d 290 (7th Cir. 1998) .........................................................................13

*Lively v. Dynegy, Inc.*,
    No. 05-cv-63, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ...........................................15

*Mezyk v. U.S. Bank Pension Plan*,
    No. 3:09-CV-384-JPG, 2011 WL 601653 (S.D. Ill. Feb. 11, 2011)................................. *passim*

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...............................................................7, 28, 29

*Nauman v. Abbott Labs.*,
    No. 04 C 7199, 2007 WL 1052478 (N.D. Ill. Apr. 3, 2007)................................14, 26

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011)...........................................................9, 17, 26

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).........................................................................22

*Osberg v. Foot Locker, Inc.*,
    No. 07-CV-1358 KBF, 2014 WL 5796686 (S.D.N.Y. Sept. 24, 2014)...............................15, 28

*Osberg v. Foot Locker, Inc.*,
    No. 07-CV-1358 (KBF), 2014 WL 5800501 (S.D.N.Y. Nov. 7, 2014) ..................................11

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).........................................................................25

*Ringswald v. Cty. of DuPage*,
    196 F.R.D. 509 (N.D. Ill. 2000).................................................................9

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    255 F.R.D. 628 (W.D. Wis. 2009) ............................................................17, 26

*Ruttenberg v. U.S. Life Ins. Co. in City of N.Y.*,
    413 F.3d 652 (7th Cir. 2005) ...................................................................16

*Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*,
    760 F.3d 585 (7th Cir. 2014) ...............................................................19, 21

# TABLE OF AUTHORITIES

**Page(s)**

*Sessions v. Owens-Illinois, Inc.*,
  267 F.R.D. 171 (M.D. Pa. 2010) ................................................................................. 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ................................................................................................... 7

*Sheinberg v. Sorensen*,
  606 F.3d 130 (3d Cir. 2010) and 2003 ..................................................................... 18

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015) ....................................................................................... 7

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) ...................................................................... *passim*

*Smith v. Aon Corp.*,
  238 F.R.D. 609 (N.D. Ill. 2006) ..................................................................... 9, 23, 24

*Stoffels v. SBC Commc'ns, Inc.*,
  238 F.R.D. 446 (W.D. Tex. 2006) ............................................................................ 19

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) .................................................................................... 28

*Swaback v. Am. Info. Techs. Corp.*,
  103 F.3d 535 (7th Cir. 1996) .................................................................................... 12

*Tuten v. United Airlines, Inc.*,
  No. 12-CV-1561-WJM-MEH, 2013 WL 8480458 (D. Colo. Oct. 31, 2013) ........... 19

*Van Gemert v. Boeing Co.*,
  259 F. Supp. 125 (S.D.N.Y. 1966) ........................................................................... 26

*Wagner v. Nutrasweet Co.*,
  95 F.3d 527 (7th Cir. 1996) ................................................................................ 12, 15

*Wahl v. Midland Credit Mgmt., Inc.*,
  243 F.R.D. 291 (N.D. Ill. 2007) ............................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................... 7, 9, 25

*Walker v. Monsanto Co. Pension Plan*,
  252 F.R.D. 450 (S.D. Ill. 2008) ............................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Wilkins v. Just Energy Grp., Inc.*,
    308 F.R.D. 170 (N.D. Ill. 2015)..................................................................................18

*Williams v. Rohm & Haas Pension Plan*,
    No. 404CV0078-SEB-WGH, 2009 WL 382628 (S.D. Ind. Feb. 11, 2009) .............................16

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016).................................................................................23

STATUTES

ERISA § 102(a)...............................................................................................................12

ERISA § 102 and § 404 ...........................................................................................11, 15

ERISA § 502(a)(1)(B).............................................................................................*passim*

ERISA § 510 ...........................................................................................................*passim*

OTHER AUTHORITIES

5 James W. Moore, *et al., Moore's Fed. Prac.* § 23.41[5] (3d ed. 2010).........................20

5 *Moore's supra* § 23.42[3][c]........................................................................................23

## INTRODUCTION

This case concerns Northrop Grumman's failure to pay cash severance benefits to terminated employees pursuant to its ERISA-covered severance plan (the "Plan"). The Class consists of persons whom Northrop identified as Plan participants in filings, under penalty of perjury, on the Form 5500s filed with the Department of Labor ("DOL"), but who did not receive cash severance payments under the Plan even though the Class received continued health benefits under the Plan (and the eligibility criteria was the same). The central dispute in this case concerns a provision in the Plan providing for a memo to be delivered to the employee notifying him or her of his eligibility for benefits under the Severance Plan (the "Memo"). Prior to 2011, the Memo served as a ministerial act of notification, and severance benefits were regularly provided to employees who met the other requirements of the Plan. In 2011 Northrop changed its interpretation of the Plan making receipt of a Memo a condition of eligibility, to enable Northrop to reduce its severance costs by only offering severance to those who received a "tap on the shoulder." Despite this change, Northrop failed to disclose this new interpretation to its employees. The Complaint challenges this changed interpretation of the terms of the Plan, Northrop's improper interference with class members' benefits, and its failure to disclose this new interpretation. Because the Plan's terms must be interpreted in the same manner for all similarly situated participants, and Northrop's challenged acts were uniform across the Class, the claims in the Complaint necessarily are common and turn on questions of fact and law that must be applied in the same manner to each class member. Thus, the requirements of Rule 23 are met.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Alan Carlson and Peter DeLuca worked for Northrop Grumman for 35 and 38 years, respectively, until they were laid off in 2012. Each received medical benefits from Northrop's severance plan, but was not offered and did not receive cash severance benefits,

although the requirements for receiving cash and medical benefits were the same. Ex. A(2012 Severance Plan) at NGC06972; Ex. B (Rule 30(b)(6) Deposition of Northrup Grumman Severance Plan) at 86:5-16 (confirming that eligibility for both cash and medical benefits are the same under the Plan).

### A.  <u>Plan Provisions and Benefits</u>

The Severance Plan provides that Northrop employees are eligible for severance benefits if they "work in the United States, [] are regularly scheduled to work at least 20 hours per week, [] and have been notified in writing by [] management that [they] are covered by this Plan." Ex. A (2012 Sev. Plan) at NGC06972. The Plan provides "[y]ou must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." *Id.*

The Plan has two benefits: a cash benefit and a medical benefit. Ex. B (Rule 30(b)(6) Dep.) at 85:4-6 ("The severance plan has two parts. There's a cash payment and a continuation of the medical benefits."). The Plan's cash benefit consists of one week of pay for each year worked, up to 26 weeks. Ex. A (2012 Sev. Plan) at NGC06973; Ex. C (cash benefit example) at NGC06622. The Plan's medical benefit consists of "an extension of a participant's medical, dental, and vision benefits." Ex. A (2012 Sev. Plan) at NGC06974, Ex. D at NGC06592. The Plan explicitly provides that participants will receive these benefits "[i]f [they] qualify for benefits under this Plan." Ex. A (2012 Sev. Plan) at NGC06974.  In other words, a participant who is eligible for medical benefits under the Plan must also be eligible for cash benefits.

### B.  <u>Northrop's Interpretation and Administration of the Plan Prior to 2011</u>

Prior to 2011, the Severance Plan offered two levels of cash benefits, "regular" and "enhanced." Ex. E (2002 Guide to Administration) at NGC3477. At that time, Northrop treated the Plan's language regarding receipt of a Memo to be merely an act of notifying the participant that

2

they would receive severance benefits – not a condition of eligibility. *Id.* ("Human Resources should provide a general notification to employees informing them of their severance benefits."). In essence, the Memo served a recordkeeping function. *Id.* (requiring each sector to submit the amount of severance "to Corporate Compensation for record keeping").

Northrop repeatedly reported, under penalty of perjury, on the Form 5500s filed with the DOL that employees were participants in the severance plan even though they had not received a Memo.[1] Ex. B (Rule 30(b)(6) Dep.) at 72:8-24 (employees would not receive a Memo until the decision was made to terminate their position and offer severance); 182:22-25, 183:1-10 (detailing information used to complete the Form 5500); Ex. BB (Form 5500s filed by the Northrop Severance Plan during 2010 - 2015). Northrop reported employees as participants based on the employee having a designation within Northrop's human resources database of "SEV" – which indicated they were eligible for severance because they "worked 20 hours or more per week, were not Service Contract Act employees or Union employees at the time of termination." Ex. B (Rule 30(b)(6) Dep.) at 182:22-25, 183:1-10 (employees assigned a "SEV" designation were eligible for severance); Ex. F at No. 16 (employees reported as participants on the Form 5500 "worked 20 hours or more per week, were not Service Contract Act employees or Union employees"). As ERISA requires the persons eligible for benefits to be ascertainable using objective tests, employees were identified as participants prior to any termination and regardless of whether they had received a Memo. Ex. B (Rule 30(b)(6) Dep.) at 176:15-18 (employees designated as eligible for the severance plan when they join the company).

---

[1] A Form 5500 is a report that Plans are required to submit to the DOL and IRS that reports the Plan's participants, beneficiaries, and benefits paid, among other disclosures. *See Employee Benefits Security Administration Form 5500 Series,* United States Department of Labor, https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500 (last visited January 1, 2017).

### C.    <u>Northrop's Harmonization of Its Severance Benefits</u>

In 2011, Northrop began a process of "communization," later referred to as a "harmonization," of its severance benefits to offer only "high cash" severance benefits. Ex. G (referencing "communization" of severance benefits.) at NGC02861, Ex. H (explaining that communization meant all Sectors "agree[d to] use the high schedule" for cash severance) at NGC02758, Ex. B (Rule 30(b)(6) Dep.) at 54:20-25 (Technical Services made the decision to offer high severance). Offering only high severance was agreed to "so long as [Northrop was] able to choose which programs get it." Ex. H at NGC02758.

Not only did Northrop want to choose eligible employees by program, but they wanted the discretion to cherry pick which employees received severance by tapping certain employees on the shoulder. Ex. I at NGC07002 (explaining that severance eligibility was now determined based on an employee being "tapped on the shoulder"). This "tap on the shoulder" method allowed Northrop to mitigate the cost of providing severance. Ex. J (expressing concerns of offering high severance and that "Severance Eligibility Requirements provide a mitigation to [the] cost concern") at NGC08723. If Northrop determined that severance would not be affordable, an employee would not get a tap on the shoulder or a Memo. Ex. H at NGC02758; Ex. J at NGC08723; Ex. K (decision made to not offer severance "due to . . . affordability") at NGC14059 and L ("severance is determined by contract based on affordability and government reimbursable") at NGC14311. Even after harmonization, the Memo served, at most, three purposes: (1) notification to employees that they were eligible for benefits; (2) ensuring the employee received a copy of the severance plan; and (3) triggering HR to pay cash benefits, by notifying payroll to pay benefits. Ex. B (Rule 30(b)(6) Dep.) at 125:7-9, 126:8-25, 127:1-8.

According to Northrop's 30(b)(6) witness, harmonization only affected Technical Service employees because all other sectors provided severance to all employees. Ex. B (Rule 30(b)(6)

Dep.) at 50: 8-10, 51:1-4, 52:6-21, 53:5-10.  Employees in other sectors automatically received a Memo. *Id.* at 69:17-25, 70:1-5. Because Technical Services had very low margins, whether severance would be provided was determined by the Sector's "senior leadership" based on financial implications. *Id.* at 49:15-22, 71:15-23.[2]

    **D.**    **Effect of Northrop's Harmonization**

Despite "harmonization," the Plan's language regarding who was eligible for severance remained the same. *Compare* Ex. M (2010 Sev. Plan) at NGC03491, *with* Ex. A (2012 Sev. Plan) at NGC06972.  Even though similarly situated participants must be treated similarly under ERISA, the harmonization resulted in "employees working side by side [who] may receive different severance benefits." Ex. J at NGC08723. Northrop recognized, however, that the Plan required similarly situated employees to be treated the same. Ex. J at NGC08723 (recognizing need for consistency in a program for employee severance); Ex. N at NGC13454 ("all employees laid-off on a program should receive severance or none should"); Ex. O at NGC14043; Ex. P at NGC13511 ("the plan document is all or none"); Ex. B (Rule 30(b)(6) Dep.) at 154:19-25. There was not, however, a "policy on who gets [severance] and who does not." Ex. Q at NGC03052. Despite previously identifying employees as participants, there was no list of criteria to determine whether any person would be "tapped on the shoulder" to receive a Memo and therefore cash benefits.  Ex. B (Rule 30(b)(6) Dep.) at 80:18-22.  Participants were never informed of the changed interpretation and administration of the Plan regarding the Memo. *Id.* at 198:18-22.

    **E.**    **Plaintiffs Exhaust Their Administrative Remedies and File Suit**

Plaintiffs Carlson and DeLuca submitted written claims for benefits on August 23, 2012

---

[2] Northrop identified certain individuals in other sectors who were reported as participants in the severance Plan in the Form 5500– and thus eligible for benefits – but not receiving cash severance. Ex. F at No. 16.

and August 27, 2012, respectively, seeking to receive cash severance benefits in addition to their medical benefits. Exs. R & S. Northrop denied Plaintiffs' claims by separate letters dated November 9, 2012. Exs. T & U. Plaintiffs appealed the denials. Exs. V & W. Northrop denied the appeals on February 1, 2013. Exs. X & Y. After exhausting their administrative remedies, Plaintiffs brought this suit on April 9, 2013, and filed an Amended Complaint that included class allegations on October 22, 2014. Dkt. Nos. 60 & 62.

Plaintiffs' Amended Complaint asserts three claims. Count I alleges a claim under ERISA § 502(a)(1)(B) that Plaintiffs and the Class are entitled to receive cash severance benefits (as well as medical benefits) under the Plan. Am. Compl. ¶¶ 53-61. Count II alleges that Northrop violated ERISA § 510 by withholding a Memo as a means of preventing employees from receiving severance benefits. *Id*. ¶¶ 64-77. Count III alleges that Northrop breached its fiduciary duties by failing to disclose to participants the changed use of the notice provision from a purely administrative step to a qualification method. *Id.* ¶¶ 79-84; *Carlson v. Northrop Grumman Corp*., No. 13-CV-02635, 2016 WL 3671361, at *2 (N.D. Ill. July 11, 2016). The Amended Complaint primarily seeks the following relief: (1) a declaration that the Class is entitled to benefits (cash and continued medical) under the Plan, (2) a declaration that Northrop unlawfully interfered with the Class's benefits under the Plan, (3) a declaration that Northrop breached its fiduciary duties by failing to disclose its changed interpretation of the Plan, and (4) an order reforming the Plan to reflect the terms of the Plan that were disclosed to participants. Am. Compl. at 16, 19, 21.

## ARGUMENT

Certification of a class is required where the party seeking certification demonstrates that the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied. Fed. R. Civ. P. 23(a)-(b); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). A district court does not have discretion to deny certification of the class if the elements of Rule 23 are

satisfied. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)

("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the

specified criteria to pursue his claim as a class action."). The class certification analysis may

"entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 351 (2011). But "a court may not resolve merits questions at the class

certification stage." *Bell v. PNC Bank, Nat'l Ass'n.*, 800 F.3d 360, 376 (7th Cir. 2015) ("Rule 23

grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

"Merits questions may be considered to the extent—but only to the extent—that they are relevant

to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v.*

*Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184, 1194–95 (2013).

## II.    THE CLASS IS PROPERLY DEFINED

A class is properly and sufficiently defined when the definition is clear and based on

objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).[3]   A class

definition meets these requirements so long as it is: (1) not vague, (2) defined by objective criteria,

and (3) not "defined in terms of success on the merits." *Id.* at 659-660; *Mezyk v. U.S. Bank Pension*

*Plan*, No. 3:09-CV-384-JPG, 2011 WL 601653, at *5 (S.D. Ill. Feb. 11, 2011) (concluding class of

ERISA plan participants was ascertainable where members were identified in defendants'

employment records).

Plaintiffs seek to certify the following Class, with exclusions as listed in Plaintiffs' Motion:

> All persons who worked for Northrop Grumman in the United States, were
> regularly scheduled to work over 20 hours per week, were laid off from Northrop
> Grumman from January 1, 2012 and after, and who did not receive written
> notification from management or from a Vice President of Human Resources (or

---

[3] While the Seventh Circuit has not addressed the issue, the First, Third and Tenth Circuits
have concluded that ascertainability only applies to Rule 23(b)(3) classes.  *See Shelton v. Bledsoe*,
775 F.3d 554, 562 (3d Cir. 2015)

> his/her designee) notifying them of their eligibility for severance benefits under the Plan and who did not receive the "Cash Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under the terms of the Plan (regardless of whether they received Medical, Dental or Vision Benefits under the Plan); and the Beneficiaries of those Participants.

Am. Compl. ¶ 40. Class members can be identified by objective, administratively feasible criteria: (1) employment of over 20 hours per work at Northrop in the United States, (2) that ended on or after January 1, 2012, (3) failure to receive a Memo and (4) failure to receive the Cash Portion of the severance benefits. *Id.* Simply stated, the class consists of employees who otherwise met the requirements to be participants, but "who were not given written notification of their eligibility for severance benefits." *Carlson*, 2016 WL 3671361, at *2. As one of the requirements for an ERISA plan is that "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits," use of the Plan's own terms means the class is ascertainable. *James v. Nat'l Bus. Sys., Inc.*, 924 F.2d 718, 720 (7th Cir. 1991). Further, Defendants have already identified employees whom Northrop itself identified as participants in the Severance Plan in its Form5500 filings, were terminated but did not receive cash severance between January 1, 2012 and July 31, 2016. Ex. F at No. 16.

## III.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

Rule 23(a) sets forth four requirements for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015) (reversing denial of class certification). All four criteria are met here.

### A.     Joinder of the Class is Impracticable

While "there is no 'bright line' test for numerosity, a class of forty is generally sufficient to

satisfy Rule 23(a)(1)." *Neil v. Zell*, 275 F.R.D. 256, 260 (N.D. Ill. 2011); *Smith v. Aon Corp.*, 238 F.R.D. 609, 614 (N.D. Ill. 2006) ("Classes of twenty-five to fifty persons are sufficiently numerous to warrant certification."). "Plaintiffs need not 'state with certainty the exact number of class members, [but] they are required to base their estimate on more than mere speculation.'" *Id.*; *Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 511-512 (N.D. Ill. 2000) (finding Rule 23(a) met where relying on an approximate the size of the class and "common sense"). Here, Defendants provided information showing that the class is composed of up to 751 persons. Ex. F at No. 16 (identifying 751 employees reported by Northrop to the DOL as participants, between January 2012 to July 2016, who were involuntarily terminated but did not receive cash severance benefits).[4] As courts routinely find that "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes," here Rule 23(a)(1) is met. *Ringswald*, 196 F.R.D. at 511-512.

### B.    <u>Plaintiffs' Claims are Necessarily Common to those of the Class</u>

"[A] court need only find a single common question of law or fact . . . a common contention that is capable of class-wide resolution." *Chi. Teachers Union*, 797 F.3d at 434. "[C]ommonality is satisfied when determination of [the] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Bell*, 800 F.3d at 374. Existence of "a general policy" or a "uniform employment practice … would provide the commonality needed." *Dukes*, 564 U.S. at 355; *In re Fedex Ground Package Sys., Inc., Emp't Practices Litig.*, 2007 WL 3027405 (N.D. Ind. Oct. 15, 2007) ("Claims arising from a defendant's standardized conduct

---

[4] While some of the 751 may include those who did not sign a separation agreement or individuals who were rehired shortly after being laid off, Plaintiffs' inability to specify the precise number of the class is the result of the Plan's witness being unable to identify how many of the 751 fell into one of those categories. Ex. A (Rule 30(b)(6) Dep.) at 208:4-21. Plaintiffs are unable to determine the exact size of the class but numerosity is still easily met because those individuals were only a minority of the 751 listed. *See id.*

towards members of the proposed class or from the interpretation of a standard contract often present a case for treatment as a class action.").

All of Plaintiffs' claims stem from Defendants' failure to provide severance benefits based on the uniform practice that employees who failed to receive a Memo were ineligible for severance (even if they were participants). Am. Compl. ¶¶ 53-61, 64-77, 79-84. The members of the Class are persons whom Northrop itself identified – and reported under penalty of perjury to the DOL and IRS – as participants in the Plan. Ex. B (Rule 30(b)(6) Dep.) at 182:22-25, 183:1-10 (explaining that Northrop reported as participants those employees whom the company had designated as eligible for severance in its human resources database); Ex. F at No. 16 (identifying employees who were listed as participants in the Form 5500s but did not receive benefits). These common facts satisfy commonality and an examination of the claims confirms commonality is met here.

Count I challenges Defendants' interpretation of the Plan's terms regarding receipt of a "cover memo, signed by a VP of Human Resources." Am. Compl. ¶ 53. As interpretation of this term can only mean one thing, "whether the Plan was [properly] []interpreted . . . [is] common to all potential class members." *Breedlove v. Tele-Trip Co.*, No. 91 C 5702, 1993 WL 284327, at *4 (N.D. Ill. July 27, 1993) (finding commonality met for ERISA 502(a)(1)(B) claim because it "requires an analysis of the Plan"); *Mezyk*, 2011 WL 601653, at *6 (certifying ERISA § 502(a)(1)(B) claim).

Count II alleges that Northrop's decision to withhold a Memo from Plaintiffs and the Class interfered with their rights to obtain cash severance, in violation of ERISA § 510. Am. Compl. ¶¶ 67-68, 76-77. As the class consists of participants who were all eligible for severance but did not receive a Memo, Defendants acted uniformly, satisfying commonality. *See Flanagan v. Allstate*

10

*Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) (certifying ERISA §510 claim alleging defendants engaged in common conduct to avoid paying benefits), *vacated on other grounds*, *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005); *Berger v. AXA Network, LLC*, 220 F.R.D. 316, 318 (N.D. Ill. 2004) (concluding whether defendants enacted a policy "for the purpose of interfering with the attainment of [plaintiff's] benefits" warranted certification of §510 claim); *Simpson v. Fireman's Fund Ins. Co.,* 231 F.R.D. 391, 395 (N.D. Cal. 2005) (certifying ERISA § 510 claims challenging policy adopted on a company-wide basis and applied to all employees).

Count III alleges a breach of a fiduciary duty arising out of Northrop's failure to disclose information about its changed interpretation and administration of the Plan. Compl. ¶ 83; *Carlson.,* 2016 WL 3671361, at *4. Such omissions implicate both ERISA § 404 and § 102. *See Osberg v. Foot Locker, Inc.,* No. 07-CV-1358 (KBF), 2014 WL 5800501, at *8 (S.D.N.Y. Nov. 7, 2014). "Because materiality is judged according to an objective standard, the materiality of [defendants'] alleged misrepresentations and omissions is a question common to all members of the class." *Amgen*, 133 S. Ct. at 1191. Not only does the materiality of these omissions alone suffice to provide the requisite commonality, but whether Northrop breached its fiduciary duty by failing to disclose its changed interpretation regarding the Memo is a common issue capable of class wide determination.[5] *See Amara v. CIGNA Corp.*, 775 F. 3d 510 (2d. Cir. 2014) (upholding class certification seeking reformation of Plan to remedy defendants' failure to properly disclose the plan's terms); *Boyd v. Meriter Health Servs. Emp. Ret. Plan*, No. 3:10-cv-426, slip op. at 14 (W.D. Wis. Feb. 17, 2012) (finding commonality met based on issues as to "whether defendants violated ERISA by failing to provide certain disclosures"), *affirmed*, *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d. 364, 370 (7th Cir. 2012); *Mezyk*, 2011 WL 601653, at *6 (finding

---

[5] Here, Defendants claim that the Plan and the SPD are the same document. Ex. Q ("There isn't a documented severance policy. There is a summary plan description . . . .") at NGC03052.

commonality met for ERISA § 102(a) claim based on "whether the notice and SPD issued by the Plan complied with ERISA.").  In short, each of Plaintiffs' claims have multiple common issues meeting the requirements of Rule 23(a)(2).

      **C.**    **Plaintiffs' Claims are Typical of the Class**

      **1.**    **Plaintiffs' Claims Are Typical of the Class**

Rule 23(a)(3) requires that "the claims **or** defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Arreola v. Godinez*, 546 F. 3d 788, 798 (7th Cir. 2008). "Courts have cautioned, however, that typical does not mean identical, and the typicality requirement is liberally construed." *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N. D. Ill. 2007) (finding typicality satisfied in ERISA case alleging defendants breached their fiduciary duties). The focus of the typicality inquiry is on defendants' conduct. *Id.* at 350 ("courts focus on the conduct of the defendant"); *George v. Kraft Foods Glob., Inc.*, 251 F.R.D. 338, 348 (N.D. Ill. 2008); *see also Wagner v. Nutrasweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996) (vacating denial of class certification and advising that on remand "[t]ypicality under Rule 23(a) should be determined with reference to the [defendant's] actions").

Count I challenges Defendants' interpretation of the Plan under ERISA § 502(a)(1)(B). "An ERISA § 502(a)(1)(B) claim is essentially a contract remedy under the terms of the plan. . . . [that is] governed by a federal common law of contract." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013).  Each class member's proof of this claim rests, in part, on whether Defendants violated the law of contract, which applies to ERISA plans, by preventing a condition precedent from occurring by withholding memos from a VP of HR. *See Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 542 (7th Cir. 1996) (applying contract law principle "that a party

who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract" to § [502](a)(1)(B) claim). Courts inside and outside this Circuit have certified claims challenging interpretations of an ERISA plan. *Mezyk,* 2011 WL 601653, at *7 (S.D. Ill. Feb. 11, 2011) (finding claims that challenged "implementation of uniform Plan provisions" satisfied typicality requirements); *Lemke v. Suntec Indus., Inc.*, No. 94 C 50006, 1997 WL 760507, at *3 (N.D. Ill. Dec. 1, 1997) (finding that claims focusing on defendant's obligation to provide benefits satisfied typicality); *see also Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010) (finding typicality met for ERISA § 502(a)(1)(B) claim seeking recalculation of benefits). "The Northrop Grumman Severance Plan is an enterprise-wide plan." Ex. AA at NGC01747. Defendants themselves recognize that under such an ERISA plan, "[s]imilarly situated employees cannot be treated differently. Therefore, all employees laid-off on a program should receive severance or none should." Ex. N at NGC13454. As Count I challenges Defendants failure to abide by this basic principle, Plaintiffs' claims are typical of those of the Class.

Count II challenges Northrop's practice of withholding an eligibility memo as a means of preventing employees from receiving severance benefits. Am. Compl. ¶¶ 64-77. ERISA § 510 protects employees' rights from "employers who seek to limit costs of [their] benefit plans by preventing the use of such benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). Under ERISA § 510, it is "the employer's adoption of the policy" that matters for purposes of "whether ERISA § 510 ha[s] been violated." *Simpson,* 231 F.R.D. at 396 (citing *Gavalik v. Continental Can Co.,* 812 F.2d 834, 856 (3rd Cir.1987)). When a plaintiff challenges a policy or conduct by employers to make a group of employees ineligible for benefits under the plan, such claims under ERISA § 510 satisfy the typicality requirement of Rule 23(a)(3). *E.g.*, *Flanagan*, 242

13

F.R.D. at 429 (finding typicality satisfied for ERISA § 510 claim stemming from defendants' "uniform change in work rules" that were instituted to compel employees to quit so they would stop accruing ERISA-protected benefits); *Berger*, 220 F.R.D. at 317 (finding Rule 23(a)(3) met on ERISA § 510 claim that challenged employer's adoption of "a new policy that had the effect of making some agents ineligible for [the] benefit programs"). Such claims challenging the legality of the [new] policy arise from the same legal theory as the claims of Plaintiff[s]." *Simpson*, 231 F.R.D. at 396. Here, the Complaint specifically alleges that Northrop changed its interpretation of the Plan in October 2011 as a result of a "harmonization" project. Am. Compl. ¶ 28.

Count III alleges that Northrop breached its fiduciary duty in failing to inform employees of the change in plan administration. *Carlson,* 2016 WL 3671361, at *4. The Seventh Circuit has held that the elements of an ERISA breach of fiduciary duty claim are as follows: (1) defendants are plan fiduciaries; (2) defendants breached their fiduciary duty; and (3) the breach caused harm to the plaintiff. *Brieger*, 245 F.R.D. at 353 (citing *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005)). When the breach involves a misrepresentation, courts in this Circuit have generally concluded in ERISA cases "that if alleged misrepresentations were made to class members in general, on a plan-wide basis (rather than individually or personally), then typicality is present and class certification is appropriate." *Id.* (citing cases). Additionally, in cases that involve omissions, rather than misrepresentations, typicality is even more clearly satisfied as the Supreme Court has held that any requirement of reliance is presumed. *Nauman v. Abbott Labs*., No. 04 C 7199, 2007 WL 1052478, at *2 (N.D. Ill. Apr. 3, 2007) (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) and finding typicality satisfied in an ERISA breach of fiduciary claim based on certain class-wide announcements that allegedly omitted material facts"); *see Osberg,* 2014 WL 5796686, at *4 ("Given this undifferentiated set of class-wide

14

communications," in an ERISA breach of fiduciary duty case, "reliance may be presumed"). As Count III is based on Northrop's failure to disclose the changed interpretation of the Plan as required under ERISA § 102 and § 404, Plaintiffs' claims are typical of the Class.

### 2.    There are no Defenses Unique to the Proposed Class Representatives

"Typicality is defeated only when 'a major focus of the litigation will be on an arguable defense unique to the named plaintiff.'" *Lively v. Dynegy, Inc.*, No. 05-cv-63, 2007 WL 685861 *11 (S.D. Ill. Mar. 2, 2007) (*quoting Koos v. First Nat'l Bank of Peoria*, 496 F. 2d 1162, 1164 (7th Cir. 1974)). Typicality is determined based on defendants' conduct, "not with respect to particularized defenses [defendants] might have against certain class members." *Wagner*, 95 F.3d at 534. Here, Defendants have not identified any facts that suggest that they have any affirmative defense unique to Plaintiffs Carlson or DeLuca.

Several of Defendants' purported "Affirmative Defenses" are not defenses at all. *E.g.* Defs.' Answ. at Sixth Defense ("Impermissible Form of Relief"), Seventh Defense ("Failure to Satisfy Requirements for Certifying Class Action"). This Court has previously rejected three other of Defendants' Affirmative Defenses: First Defense ("Failure to State a Claim"); Second Defense ("Lack of Subject Matter Jurisdiction"); and Third Defense ("Lack of Standing"). *See Carlson*, 2016 WL 3671361, at *2; *see also* Dkt. No. 29; Dkt. No. 60. As this Court's order on the motion to dismiss suggests, if Plaintiffs succeed, the resolution of the Fifth Defense ("Plan Administrator's Determination was not Arbitrary and Capricious") would result in a common determination that the benefit denials on behalf of the Class were arbitrary and capricious and subject to reversal. *See Carlson*, 2016 WL 3671361, at *3

Defendants' Eighth Defense simply asserts without explanation that Plaintiffs' class claims are barred by the statute of limitations. Defs.' Answ. at Eighth Defense. Defendants have so far refused to explain the basis of this defense. Ex. Z at No. 24. Defenses that can be resolved on a

class-wide basis do not defeat typicality. *Johnson*, 702 F.3d at 370 (affirming district court that "statute of limitations defense could be resolved on a classwide basis"); *La. Firefighters' Ret. Sys. v. N. Tr. Inv., N.A.*, 312 F.R.D. 501, 508 (concluding typicality was not defeated by defenses that were common to the class). As this defense applies to all class members, it does not defeat typicality. Finally, Defendants' Fourth Affirmative Defense simply asserts that Plaintiffs failed to exhaust administrative procedures. Defs.' Answ. at Fourth Defense. Not only did Plaintiffs exhaust their administrative remedies by making claims for benefits, which were denied, and appealing those denials, but they attached these letters to their Complaint. Exs. R, S, T, & U (claim for benefit letters and denials). And the denials of their appeals explicitly advised that it was the final decision on the appeal and they had "the right to bring an action under" ERISA. Exs. Y & Z. Even so, "only the named plaintiffs must exhaust in ERISA class actions." *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 501 (7th Cir. 2006) (holding only named plaintiffs in an ERISA class action must exhaust their plan remedies).[6] Thus, no defenses unique to Carlson and DeLuca prevent certification.

---

[6] Even if Defendants assert that there is some additional obligation for Plaintiffs or some other members of the Class to exhaust further, the Court has the power to waive exhaustion. *Ruttenberg v. U.S. Life Ins. Co. in City of N.Y.*, 413 F.3d 652, 662 (7th Cir. 2005). One such reason is futility, when "it is 'certain' a plaintiff's claim will be denied by the plan administrator." *Id.* (affirming determination of futility). Futility can be demonstrated by evidence that the Plan intends to deny the claim, such as based on its litigation position. *E.g.*, *id.*; *Barnes*, 270 F.R.D. at 494 (finding futility where defendant maintains that it has and will continue to interpret the plan as it did for plaintiff). Futility can also be demonstrated by showing the administrator's decision interpreting the plan was one of general applicability to all persons affected such as through denials for similar reasons. *E.g. Adams v. Anheuser-Busch Cos, Inc.*, No. 2:10-CV-826, 2012 WL 1058961, at *6 (S.D. Ohio Mar. 28, 2012) (finding futility where there was uniform interpretation); *Williams v. Rohm & Haas Pension Plan*, No. 404CV0078-SEB-WGH, 2009 WL 382628, at *6 (S.D. Ind. Feb. 11, 2009) ("It would obviously be fruitless to require internal claim exhaustion by each person" where the Plan had made a decision about the challenged issue). The similarity of the claim denials for both Plaintiffs illustrate futility here as does the testimony of the Plan's Rule 30(b)(6) witness.

### D.    The Proposed Class Will be Fairly and Adequately Represented

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

### 1.    The Proposed Class Representatives Are Qualified

The adequacy of representation requirement is met so long as the class representatives (1) do not have claims antagonistic to or in conflict with those of the proposed class; (2) the class representatives will vigorously prosecute the interest of the class through qualified counsel. *Amchen Prods.*, 521 U.S. at 625; *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 636 (W.D. Wis. 2009) (rejecting defendants assertion that to satisfy the adequacy requirement plaintiffs "must have a threshold level of knowledge," particularly in complex matters involving ERISA claims). Plaintiffs' "burden of establishing they are adequate class representatives is not difficult." *George*, 251 F.R.D. at 350.

The Seventh Circuit has emphasized that any conflicts must not be hypothetical. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) (finding purported conflict that was only hypothetical did not create conflict).  Additionally, in order for a conflict to exist, the issue must "require[e] the class representative to choose between competing class members." *Johnson*, 702 F.3d at 372.  "[T]he conflicting economic interest necessary to render a representative inadequate must be of the type that, if that plaintiff succeeds, would result in identifiable harm to some member of the class. *Neil*, 275 F.R.D. at 265.  No such conflict exists here. Rather, Plaintiffs Carlson and DeLuca's share the same claims and have the same interest in seeking to establish that they are entitled to severance benefits despite not receiving a Memo. The primary relief sought is a

declaration that the Class is entitled to receive cash severance benefits (in addition to their health severance benefits). Am. Compl. at Prayer for Relief ¶ A. Not only would all class members receive the same relief, but the Class can only benefit from a successful outcome here.

A class representative "must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (concluding class representative was adequate because she had a "basic understanding of the claims"); *see Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015) (finding named plaintiff had sufficient interest in outcome of case where plaintiff sat for her deposition and responded to written discovery). Mr. Carlson and Mr. DeLuca have been actively engaged in the litigation, have a sufficient understanding of the claims and their duties and are well suited to prosecute this Action on behalf of the Class. Carlson Decl. ¶¶ 11-14; DeLuca Decl. ¶¶ 11-14.

### 2. Counsel Meets the Requirements of Rule 23(a)(4) & 23(g)

Counsel are deemed adequate upon a showing that they are "experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006). "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4)…, those questions have, since 2003, been governed by Rule 23(g)." *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) and 2003 Committee Notes to Rule 23(g)); *Howard v. Pollard*, 814 F.3d 476, 478-479 (7th Cir. 2015) (quoting *Sheinberg* and the Committee Note with approval). Rule 23(g), instructs the court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and other complex litigation; (3) claims of the type asserted in the action; (4) counsel's knowledge of the applicable law; and (5) the resources counsel will commit to representing the class, as well

as any other matter pertaining to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g). Here, each of these considerations weighs in favor of proposed Co-Lead Class Counsel's adequacy.

*R. Joseph Barton & Michael Bartolic*

R. Joseph Barton has more than 15 years' experience litigating and trying ERISA class actions. Barton Decl. ¶¶ 2-4. Courts have recognized that experience and expertise. *E.g. Tuten v. United Airlines, Inc.*, No. 12-CV-1561-WJM-MEH, 2013 WL 8480458, at *2 (D. Colo. Oct. 31, 2013) (recognizing that Mr. Barton "has significant experience in class actions [in] employee benefits cases"); C*hesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 516 (W.D. Wis. 2011) (recognizing Mr. Barton's experience handling ERISA class action cases); *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 456 (W.D. Tex. 2006) (recognizing Mr. Barton's experience with ERISA class actions). Mr. Barton has tried several ERISA class actions to judgment, including the *Chesemore* case, a highly complex fiduciary breach case where the Seventh Circuit recently affirmed the judgment for the Class. *See Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). Mr. Barton has litigated a cases involving claims brought under ERISA § 502(a)(1)(B) on behalf of the class (including the *Barnes* case cited in this brief), and claims brought under ERISA § 510 (including the *Simpson* case cited in this brief). Barton Decl. ¶ 3. Thus, Mr. Barton has sufficient experience and expertise to litigate these claims on behalf of the Class.

Michael Bartolic has over 10 years litigating ERISA cases. Bartolic Decl. ¶¶ 3, 10. His practice is devoted exclusively to employee benefits matters, with nearly all of those cases arising under ERISA. *Id.* ¶ 4. He has received many favorable decisions in ERISA matters in this Circuit and this District. *E.g. Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585 (7th Cir. 2014) (successfully arguing plan language must be

interpreted to construe the word "or" as "and" to be consistent other plan provisions); *see also* Bartolic Decl. ¶ 8. In addition, Mr. Bartolic is actively involved in bar association leadership, speaking engagements, and contributions to publications regarding ERISA litigation. Bartolic Decl. ¶¶ 12-14. Mr. Bartolic thus has sufficient experience and expertise to litigate these claims.

As such, the requirements of Rule 23(a)(4) and 23(g) are satisfied.

## IV.  THE CLAMS MEET THE REQUIREMENTS OF RULE 23(b)

In addition to satisfying the requirements of Rule 23(a), a proposed class action must also satisfy one of the subsections of Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs move the Court to certify the Class under Rule 23(b)(1) and/or (b)(2). Alternatively, in the event the Court declines to certify the Class under 23(b)(1) or (b)(2), the Class may be certified under Rule 23(b)(3).

### A.  The Claims Meet the Requirements of Rule 23(b)(1)

A class may be certified under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1); 5 James W. Moore, *et al., Moore's Fed. Prac*. § 23.41[5] (3d ed. 2010) (citing an ERISA case as *the example* of a "labor relations" case suitable for Rule 23(b)(1) certification). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Barnes*, 270 F.R.D. at 496 (certifying ERISA claim for benefits under Rule 23(b)(1)).

### 1.  Certification Under 23(b)(1)(A) is Proper

Rule 23(b)(1)(A) applies where a party "is *obliged by law* to treat the members of the class alike" or must do so by practical necessity. *Amchem Prods.,* 521 U.S. at 614; *see* 1966 Advisory

Committee Notes (explaining that this Clause should be used to achieve a "unitary adjudication" when an individual seeks a determination concerning particular rights or duties which affect other individuals). "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Barnes*, 270 F.R.D. at 496 (quoting *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008)); *see John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan*, 26 F.3d 360, 370 (2nd Cir. 1994) (finding fiduciary who treated plan members inconsistently breached fiduciary duties). In cases addressing participants' rights under the plan, "there is an obvious risk that if putative class members were required to litigate their claims individually, different adjudicative bodies could reach different conclusions regarding" the meaning of the disputed provisions. *Barnes,* 270 F.R.D. at 496; *Adams*, 2012 WL 1058961, at *11 (certifying ERISA benefit claims under Rule 23(b)(1)(A) because "inconsistent adjudications concerning the meaning of [a plan provision] could result in incompatible standards of conduct for the Plan administrator"). Defendants' own internal emails recognize that the Plan must treat all similarly situated participants the same. Ex. N at NGC13454 ("Similarly situated employees cannot be treated differently.").

Count I seeks benefits under the Plan pursuant to ERISA § 502(a)(1)(B) and challenges Defendants' current interpretation of the Plan. Am. Compl. ¶ 53. The same plan provision cannot be interpreted to have two different meanings. *Schane*, 760 F.3d at 591-92 (applying the same term different for different purposes if "paradigmatically arbitrary and capricious").

Count II alleges that Northrop unlawfully interfered with Plaintiffs' and the Class' right to obtain benefits under the Plan by failing to deliver the Memo, in violation of ERISA § 510. *Carlson v. Northrop Grumman Corp.*, No. 13 C 2635, 2014 WL 5334038, at *2 (N.D. Ill. Oct. 20, 2014); Am. Compl. ¶ 64-77. Courts have concluded that claims seeking to establish the illegality

21

of uniform conduct meet the requirements of Rule 23(b)(1)(A) because "if the Court declares that certain Plan provisions violate ERISA" but another court disagrees, it would create the impossible task of administering the Plan and distributing benefits under the Plan using multiple, inconsistent standards. *Mezyk,* 2011 WL 601653, at *9; *Cooper v. IBM Pers. Pension Plan*, No. CIV. 99-829-GPM, 2001 WL 36412295, at *6 (S.D. Ill. Sept. 17, 2001) (certifying claims about whether the plan violated ERISA under Rule 23(b)(1)(A) because separate lawsuits would likely result in "inconsistent and varying adjudications of the legality of the Plan").

Count III alleges a breach of fiduciary duty claim against Northrop seeking to reform the terms of the Plan as a remedy for those breaches. *Carlson*, 2016 WL 3671361, at *4.   Not only does this Claim allege that Northrop failed to make disclosures, but courts recognize that reformation of the Plan for fiduciary breaches satisfies the requirements of Rule 23(a)(1)(A). *Krueger v. Ameriprise Fin., Inc.,* 304 F.R.D. 559, 577 (D. Minn. 2014) (citing *Harris v. Koenig*, 271 F.R.D. 383, 395 (D.D.C. 2010)); *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 275 (S.D.N.Y. 2007) (certifying claims under Rule 23(b)(1) because managing plans under two different standards would be unworkable).   Thus, certification of these claims is  consistent with Rule 23(b)(1)(A).

### 2.    Certification Under 23(b)(1)(B) is also Proper

Certification under Rule 23(b)(1)(B) is appropriate for any lawsuit, which, if litigated individually, rather than as a class, "would have the practical if not technical effect of" concluding or impairing the interests of persons who are not parties to the lawsuit. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999). One "classic example" cited by the *Ortiz* court is "the adjudication of the rights of all participants in a fund in which the participants had common rights." *Id*. at 834 n.14. In fact, Rule 23(b)(1)(B) applies where "*any* individual adjudication by a class member

disposes of, or substantially affects, the interests of absent class members." *Id*. at 834 (emphasis added); 5 *Moore's supra* § 23.42[3][c].

Courts often find that Rule 23(b)(1)(B) is met in cases involving ERISA claims for benefits because the resolution of issues related to interpreting plan provisions that govern benefits will often necessarily affect the interests of other participants. *Walker v. Monsanto Co. Pension Plan*, 252 F.R.D. 450, 453 (S.D. Ill. 2008); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 133 (N.D. Cal. 2016) (certifying ERISA case that challenged Defendants interpretation of Plain condition because inconsistent interpretations of this condition would affect interest of absent class members). Here then resolution of whether Defendants improperly denied benefits to individuals who worked 20 hours in the United States who were laid off without a Memo – and thus denied severance benefits – will be dispositive of the interests of other participants.

Courts certify ERISA § 510 claims under Rule 23(b)(1)(B) where defendants' conduct was "uniform" as to employees as that creates "a very real danger that an adjudication in which one plaintiff participated would affect other plaintiffs' ability to protect their own interests." *Sessions v. Owens-Illinois, Inc.*, 267 F.R.D. 171, 179 (M.D. Pa. 2010) (certifying ERISA § 510 claim under 23(b)(1)(B)); *Simpson*, 231 F.R.D. at 395 (certifying ERISA §510 claim under Rule 23(b)(1)).

Finally, numerous courts in this Circuit have certified ERISA fiduciary breach claims involving representation and omissions under Rule 23(b)(1) where the disclosures "were made to class members in general, on a plan-wide basis" *Brieger,* 245 F.R.D. at 353; *Smith*, 238 F.R.D. at 616 (certifying misrepresentation and omissions claim under Rule 23(b)(1) where defendants failed "to provide complete and accurate information"). Further, the remedy of "reformation of the Plan may affect the interest of other plan members." *J.P. Morgan Chase*, 242 F.R.D. at 276. (certification under Rule 23(b)(1)(B)). Thus, certification under Rule 23(b)(1)(B) is appropriate.

**B.**    **The Requirements of Rule 23(b)(2) are Satisfied**

Rule 23(b)(2) applies where [1] "the party opposing the class has acted or refused to act on grounds that apply generally to the class, [2] so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

**1.**    **Defendants Have Acted or Refused to Act On Grounds Generally Applicable to the Class**

Defendants "acted or refused to act in a manner generally applicable to the class whe[re] they made certain uniform decisions about … the Plan as it applies to the putative class members." *Mezyk*, 2011 WL 601653 at * 9 (certifying ERISA claims); *Smith*, 238 F.R.D. at 617-618 (certifying ERISA breach of fiduciary duty claim under (b)(2)). Here, Defendants made a uniform decision about how to interpret its Severance Plan that affected all class members in the same way: Determining employees already identified as participants must receive a Memo (not merely as a notification but to qualify as a participant) to receive cash severance benefits even if they received health severance benefits. *Compare* Ex. B (Rule 30(b)(6) Dep.) at 71:4-25, 72:1-24 (testifying that after the harmonization a memo would only be provided to individuals to whom the division manager decided to offer severance), *with id.* at 207:25, 208:1-9 (testifying that on its Form 5500 the Plan identified as participants all employees who met the Plan's other conditions for receiving benefits regardless of whether the person received a Memo). The identical responses by Northrop to Carlson's and DeLuca's claim for benefits illustrates the uniformity of Defendants actions and determinations. *Compare* Ex. X at NGC00228, *with* Ex. Y at NGC00362.  Northrop's interpretation of the Plan was motivated by an intent to deprive employees of benefits for financial reasons and the Class  did not receive cash severance benefits  (despite receiving health severance) for that reason.  Am. Compl. ¶¶ 6, 17; Ex. B (Rule 30(b)(6) Dep.) at 71:15-23 (explaining decision to offer severance was made "around financials"); Ex. K at NGC14059 (decision not to offer

severance "due to . . . affordability"); Ex. L at NGC14311 ("severance is determined by contract based on affordability and government reimbursable").

### 2. The Complaint Seeks Declaratory and Injunctive Relief

Rule 23(b)(2) applies to cases that seek "injunctive or declaratory relief" for the class. *Dukes*, 564 U.S. at 360-361 ("The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted" such as "conduct that was remedied by a single classwide order"). Following *Dukes*, the Seventh Circuit confirmed that an ERISA case was properly certified under 23(b)(2) because declaratory and injunctive relief is appropriate where monetary relief will flow from the declaratory relief.

> [A] declaration of the rights that the plan confers and an injunction ordering [defendant] to conform the text of the plan to the declaration. If once that is done the award of monetary relief will just be a matter of laying each class member's [plan] records alongside the text of the reformed plan and computing the employee's entitlement by subtracting the benefit already credited it to him from the benefit to which the reformed plan document entitles him, the monetary relief will truly be merely "incidental" to the declaratory and (if necessary) injunctive relief (necessary only if [defendant] ignores the declaration).

*Johnson*, 702 F.3d at 371. This is precisely the situation here.

On a claim for benefits under ERISA § 502(a)(1)(B), "[r]elief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987) (emphasis added). Count I seeks a declaration that Plaintiffs and the Class are entitled to benefits under the Plan. Am. Compl. at Count I Prayer for Relief.

As to Count II, another Court in this District certified an ERISA § 510 claim under 23(b)(2) challenging the adoption of a "a new policy that had the effect of making some [employees] ineligible for [the employer's] benefit programs." *Berger*, 220 F.R.D. at 317 & 318. Similarly, here, the Complaint seek a declaration that Northrop's practice of withholding a Memo for the

purpose of preventing them from attaining severance benefits violated ERISA § 510 and the Class is thus entitled to benefits. Am. Compl. at Count II Prayer for Relief.

Finally, as to Count III, the Seventh Circuit has found certification under (b)(2) is appropriate in ERISA cases where plaintiffs seek "reformation of the . . . plan – a declaration of the rights that the plan confers and an injunction ordering [defendants] to conform the text of the plan to the declaration." *Johnson*, 702 F.3d at 371; *see Amara*, 775 F.3d at 523 (affirming Rule 23(b)(2) certification because "[w]hen the plan is reformed…the monetary benefits flow as a necessary consequence of that injunction"); *Nauman,* 2007 WL 1052478, at *3 (certifying ERISA breach of fiduciary duty claims based on omissions under Rule 23(b)(2)). Count III seeks seek to have the Plan reformed by a declaration of the rights conferred by the Plan – the exact approach approved in *Johnson.* Am. Compl. at Count III Prayer for Relief. As such, this case is appropriate for certification under 23(b)(2).

### C.      The Requirements of Rule 23(b)(3) are Satisfied

A case should be certified under Rule 23(b)(3) only if the requirements of Rule 23(b)(1) or (2) are not met. *Neil*, 275 F.R.D. at 269 (declining to certify ERISA class under (b)(3) because the case met the requirements of (b)(1) and (b)(2)); *Ruppert*, 255 F.R.D. at 637. Certification under Rule 23(b)(3) is appropriate when (1) "common questions predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[V]irtually every class action that meets the requirements of 23(b)(1) or 23(b)(2) will also meet the less severe requirements of 23(b)(3)." *Van Gemert v. Boeing Co*., 259 F. Supp. 125, 130 (S.D.N.Y. 1966); see 2 Newberg, supra § 4:20 at 147-48 (explaining *Van Gemert* "has been uniformly endorsed").  The same reasons that support certification under Rule 23(b)(1) and (b)(2) apply for Rule 23(b)(3).

26

### 1.    Common Issues Predominate

Predominance tests whether the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. Predominance is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). "A proposed class of plaintiffs must prove the *existence* of a common question, and one that predominates over individual questions, but it need not prove that the answer to that question will be resolved in its favor." *Bell*, 800 F.3d at 376 (certifying (b)(3) class alleging defendant had an unofficial policy that prohibited or discouraged class members from seeking overtime pay).

Courts frequently have found "that common issues predominate over individual ones in the context of ERISA [benefit] claims." *La Fata v. Raytheon Co.*, 207 F.R.D. 35, 44 (E.D. Pa. 2002) (listing cases); *Boos v. AT&T, Inc.*, 252 F.R.D. 319, 325-26 (W.D. Tex. 2008) (ruling common issues predominate for ERISA § 502(a)(1)(B) benefit claim because plaintiff "seek[s] the same relief under the same theories on behalf of the entire class"). Proof of this claim "turn[s] on the interpretation of terms in the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Larson*, 723 F.3d at 911 ("An ERISA § 502(a)(1)(B) claim is essentially a contract remedy under the terms of the plan. . . . [that is] governed by a federal common law of contract."). Here, the claim will turn on whether Defendants properly interpreted the Plan and prevented a condition precedent from occurring, which are common issues.

The Seventh Circuit suggested certification under Rule 23(b)(3) to address whether defendant had a policy that violated ERISA § 510 even if subsequent individual hearings would be required. *Allstate Ins.* 400 F.3d at 508. Subsequently the district court concluded that common issues predominated for the ERISA § 510 claim where defendant had taken action allegedly designed to deprive its employees of benefits. *Flanagan*, 242 F.R.D. at 430 (certifying ERISA §

27

510 claim under (b)(3)). Here, the issues as to Count II will address whether Northrop interfered with the attainment of severance by withholding a Memo as a means of preventing Plaintiffs and the Class from receiving severance.

With respect to Count III, the Seventh Circuit has made clear that claims involving misrepresentations – including when they involve individual elements of reliance or causation – may be certified under Rule 23(b)(3). *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (reversing denial of certification in consumer fraud case). As a result of the Supreme Court's decision in *Amara*, plaintiffs and class members do not need to "show individual reliance on misrepresentations or omissions to establish a § 404(a) violation or entitlement to the remedy of reformation or surcharge." *Osberg v. Foot Locker, Inc.,* No. 07-CV-1358 KBF, 2014 WL 5796686, at *4 (S.D.N.Y. Sept. 24, 2014); *Amara*, 563 U.S. at 443–44. Where a breach of fiduciary duty claim is "based on a factfinder's assessment of these common, class-wide communications," common issues predominate. *Id.* (certifying claims under Rule 23(b)(3). As in *Footlocker*, Count III is based on a uniform failure to disclose and there is no evidence of individualized communications.

### 2.    A Class Action is a Superior Method of Resolving These Claims

Rule 23(b)(3)'s superiority requirement . . . is comparative: the court must assess efficiency with an eye toward "other available methods." *Mullins*, 795 F.3d at 664 (affirming class was superior method of adjudicating case whether defendants made false disclosures regarding the reliability of their product); *Allstate Ins.*, 400 F.3d at 508 (explaining that a class action would be superior even if a portion of liability was resolved followed by individual hearings). The relevant factors include: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)

All of these factors are met: First, due to the required unitary resolution of the questions in this litigation, class members do not have an individual interest in controlling the action Second, neither Plaintiffs nor Northrop have identified any other litigation involving these claims. Am. Compl. ¶ 50. Third, Defendants have admitted that venue is proper in this district. Answ. ¶ 9. Finally, as all of the issues are common and the Complaint seeks injunctive and declaratory relief, there are no manageability issues, but even so, it is "well-settled" that courts should not refuse to certify a class merely based on manageability concerns. *Mullins,* 795 F.3d at 663. As such, the requirements of Rule 23(b)(3) are also met.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.


Dated: January 4, 2017                      Respectfully submitted,

                                            /s/ R. Joseph Barton_____
                                            R. Joseph Barton
                                            Block & Leviton LLP
                                            1735 20th Street, NW
                                            Washington, DC 20009
                                            Tel: 202-734-7046
                                            Email: jbarton@blockesq.com

                                            /s/ Michael Bartolic___
                                            Michael Bartolic
                                            Alexis E. Pool
                                            Roberts Bartolic LLP
                                            208 S. LaSalle Street, Suite 1420
                                            Chicago, Illinois 60603
                                            Tel: 312-635-1600
                                            Fax: 312-635-1601

                                            *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 4, 2017, a copy of the foregoing was served by operation of the Court's electronic filing systems upon all counsel of record.

/s/ R. Joseph Barton
R. Joseph Barton