# Exhibit A



# Northrop Grumman Severance Plan

January 1, 2012

01/01/12

1

CONFIDENTIAL

NGC06970

NGC06970

This is a Severance Plan that is being offered to selected employees of Northrop Grumman Corporation and its affiliates (the "Company") who receive a notice of layoff. The fact that you have received this document does not necessarily mean that you are eligible for severance benefits; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document, addressed to you individually by name.

In general, this Plan provides you with benefits if you are laid off by the Company due to lack of work. This document describes who is eligible for the Plan, the conditions that you must meet in order to receive these benefits, and general information about the Plan.

Note: An Appendix to the plan contains specific information about the cash portion of the benefit that you are eligible to receive. Your Human Resources department upon request will provide you with a copy of the Appendix.

01/01/12

2

CONFIDENTIAL

NGC06970

NGC06971

## ELIGIBLE EMPLOYEES

You are an eligible employee if you work in the United States, you are regularly scheduled to work at least 20 hours per week and you have been notified in writing by your management that you are covered by this Plan. If you are represented by a union, you are eligible only if your collective bargaining agreement provides for participation in this plan. The fact that you received this document does not necessarily mean that you are eligible; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to you individually by name.

In addition to the above rules regarding eligibility, the following employees are specifically <u>excluded</u> from participating in this Plan:

- Employees of the Electronic Systems Sector who work at BWI, Annapolis, Sykesville (including FE&S employees and FE&S offsite offices and facilities), Troy Hill, Sunnyvale or Kings Bay.
- Employees of the Technical Services Sector who are classified by the Company as being in the following employment categories:
    - Service Contract Act (SCA) employees
    - Union Represented employees
    - Employees covered by a Memorandum of Understanding between the TS Sector and ES Sector providing for the temporary assignment of the employee to the TS Sector and retention of participation in the ES Sector employee benefit programs

## CONDITIONS FOR RECEIVING BENEFITS

In order to receive the benefits of this Plan, you must meet all of the following conditions:

- You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit.
- You must remain employed in your current position until you are laid off by your management. You must actually be laid off by the Company. If, before your layoff date, you voluntarily quit, retire, are terminated for cause, or transfer to another position within the Company, you will not receive benefits under this Plan.
- You must sign and timely return a Confidential Separation Agreement and General Release that will include, among other things, a release of any and all claims that you may have against the Company.

The following conditions also apply if your job moves, or your business unit is sold:

- If your current job moves more than 50 miles from your current work location, and you elect to terminate your employment instead of relocating, your termination will be treated as a layoff.
- If your business unit is sold and you are not offered similar employment with the buyer at the time of the closing of the sale, you may terminate employment as a layoff within 30 days of the closing date. For purposes of this Plan, "similar employment" means any job that pays at a base salary of at least 85% of your pre-

3

01/01/12

sale base salary; it does not include overtime or bonus opportunities, fringe benefits, or other aspects of employment.

## DEFINITIONS

- **Week of Pay**

    A "Week of Pay" means your weekly rate, or your hourly base rate times 40 hours, at the time of your layoff. It does not include any overtime, bonuses, extended workweek, shift differential or other types of premium pay. If you work less than a fulltime schedule, you are eligible to receive a severance benefit based on your regular weekly pay (or hourly base rate times your regularly-scheduled number of hours) in effect at the time of your layoff. An employee who works less than 40 hours but is paid at a full-time rate (such as third shift employees) will be treated as full-time.

    Example:
    You work 30 hours a week and your hourly rate is $25 per hour. Your Weekly Pay for the purposes of this Plan is $750, even though someone working full-time in your position would earn $1000/week.

- **Years of Service**

    Your Years of Service are equal to full years starting with your most recent hire (or re-hire) date and ending on your last day of work. A full year of service is 12 complete months of service. If you have less than a full year from your last anniversary date to your last day of work, that time does not count toward your Years of Service.

    Example:
    You began work on January 15, 1982, were laid off in 1987, and rehired again on February 1, 1999. You are laid off August 30, 2010. You have 10 Years of Service for purposes of this Plan (February 1, 1999 through January 31, 2010).

## BENEFITS

Benefits under the Plan consist of two parts: a cash payment, and an extension of your existing medical, dental and vision coverages.

- **Cash portion**

    You will receive a lump sum payment of a specific number of Weeks of Pay, as determined by your Years of Service. There is also a minimum and maximum number of Weeks of Pay that you can receive.

    - **Minimum Benefit and WARN Notice Period.**

        If your layoff is subject to the requirements of the Worker Adjustment and Retraining Notification Act (WARN), you will receive pay for a period of at

4

01/01/12

least 60 calendar days from the date that you are first notified of your layoff. If your last date of work is before the end of this 60 calendar day period, you will receive your severance benefits in the form of salary continuation until the end of the WARN period. If you are still owed severance after this time, you will receive any remaining payment in a lump sum. Layoffs subject to notice requirements under state laws similar to WARN are subject to similar treatment.

Example:
Joe is being laid off in a circumstance subject to WARN. He was given notice of layoff on March 1, and his last day of work was March 15. His severance will become payable on March 16, after his last day of work. This severance will be paid in the form of salary continuation until April 30 (60 calendar days from date of notice). This means he will receive severance in the form of salary continuation for 6 weeks. After his salary continuation stops on April 30, he will be paid any remaining severance in a lump sum.

- **Extension of Medical Dental and Vision Benefits and Cost-Sharing**

  If you qualify for benefits under this Plan, you will receive an extension of your medical, dental, and vision benefits at active rates, for a period equal to one week for each Year of Service, up to a maximum of 26 weeks. At a minimum, you will receive coverage through the end of the month of your date of termination plus one additional month at no additional premium charge to you. The rest of your COBRA continuation period is at 100% of the full premium plus a 2% administrative fee for the coverage you elect. If you are not covered by medical, dental, and/or vision benefits at the time of your layoff, this feature does not apply to you.

  - **Cost-Sharing for Benefit Continuation**

    The period of coverage from your termination date through the end of the following month is at no additional premium charge to you. After that, cost sharing at active employees' rates will apply for any period of benefit continuation extended under this Plan. After that, coverage for the balance of your COBRA period continues at 100% of the full premium plus a 2% administrative fee for the coverage you elect.

  - **COBRA Coverage**

    Your 18-month COBRA period starts the first day of the month following your termination date and includes periods during which the Company pays some or all of your premiums. Your cost for COBRA coverage, after the company subsidized period, is equal to 100% of the full premium plus a 2% administrative fee for the coverage you elect.

Example 1:
You have 20 Years of Service, so you are eligible for 20 weeks of subsidized continued coverage. Your last day of work was June 18. Your COBRA period begins on July 1. Your medical, dental and vision benefits continue through July 31 at no additional premium charge to you. The benefits continue through

November 5 at active cost-sharing rates. The benefits continue after November 5, for the rest of your COBRA period, at 100% of the full premium plus a 2% administrative fee for the coverage you elect.

Example 2:
You have three Years of Service. Your last day of work was June 18. Your COBRA period begins on July 1. Your medical, dental, and vision benefits continue through July 31 at no additional premium charge to you. After July 31 the benefits continue for the rest of your COBRA continuation period at 100% of the full premium plus a 2% administrative fee for the coverage you elect.

### Benefit Coverage during Salary Continuation

If some or all of your severance benefit is paid as salary continuation (because the WARN Act applies to your layoff), then all of the welfare benefit coverages that you had as an active employee remain in force through your termination date, at the applicable cost-sharing rates.

Example:

The WARN Act applies to you and you are given a layoff notice on December 1. Your last day at work is December 15, but your salary continuation is paid through January 29 (60 days from the date you were given a layoff notice). During the period from December 15 to January 29, your normal payroll deductions will continue. Then, you have coverage at no additional premium charge to you for the rest of January and for all of February, but your 18-month COBRA period starts on February 1. Full COBRA rates will then apply from March 1 through the end of your COBRA eligibility period.

## RETIREMENT IN LIEU OF LAYOFF

If you elect to retire rather than be placed on layoff, talk to a retirement counselor about how this affects your health benefits.

**IMPORTANT NOTE ABOUT MEDICARE: Even if you have COBRA coverage, you or your covered dependents should apply for Medicare as soon as you are allowed to do so, in order to avoid the possibility of having to pay a higher Medicare premium because of a delay in applying. While you are on COBRA, Medicare is primary to the Northrop Grumman medical plans.**

## NOTICE PERIOD

Generally you will receive no less than 2 weeks working notice, although management has the authority to vary the amount of notice dependent upon business circumstances

## TIME AND FORM OF PAYMENT

The cash portion of your severance benefit will normally be paid to you in a lump sum shortly after you are laid off, provided you sign and timely return the release. This amount will be paid after all regular taxes and withholdings have been deducted.

If your layoff is subject to the WARN Act or a similar state law, then a portion of your severance may be paid as salary continuation, with any remaining amount paid in a

CONFIDENTIAL

NGC06975

NGC06970

lump sum at the end of the WARN or other state law period. Regular salary paid to you once you receive your WARN or other state law notice and while you are still working count towards the WARN or state law pay period requirements. Salary continuation payments required pursuant to WARN or similar state law made under this Plan after your last day of work also count towards the legally required pay period requirements. Such payments also count as severance under this Plan. In other words, WARN or other state law required payments are paid as part of, and not in addition to, severance benefits under the Plan.

If you participate in a Company-sponsored pension or savings plan, only amounts paid under this Plan as legally required salary continuation payments during a WARN or similar state law period are pension-eligible, and will count towards savings plan contributions. Amounts paid beyond the legally required salary continuation payments or where WARN does not apply are not pension or savings-plan eligible.

In any event, all severance benefits shall be paid no later than March 15th of the year following the year you are laid off.

## CLAIMS AND APPEALS PROCEDURES

- **Claims Procedure**

    If you believe that you are entitled to benefits under this Plan and have not received them, you or your authorized representative may file a claim for benefits by writing to the Plan Administrator. Your letter must state the reason why you believe that you are entitled to benefits, and your letter must be received no later than 90 days after your termination of employment, or 90 days after a payment was due, whichever comes first.

    If your claim is denied, in whole or in part, you will receive a written response within 90 days. This response will include (i) the reason(s) for the denial, (ii) reference(s) to the specific plan provisions on which denial is based, (iii) a description of any additional information necessary to perfect the claim and an explanation of why it is needed, (iv) a description of the Plan's claims and appeals procedures and the time limits that apply, and (v) a statement of your right to bring suit under Section 502(a) of ERISA following the denial of an appeal. In some cases more than 90 days may be needed to make a decision, in which case you will be notified prior to the expiration of the 90 days that more time is needed to review the claim and the date by which the Plan expects to render the decision. In no event will the extension be for more than an additional 90 days.

- **Appeal of Denied Claim**

    You or your authorized representative may appeal a denied claim by filing an appeal with the Corporate Severance Plan Review Committee ("Committee") within 60 days after your claim is denied. Your appeal should be sent to the Committee at the following address: One Hornet Way, M/S 162/D3, El Segundo, CA 90245. As part of the appeal process you will be given the opportunity to submit written comments and information and be provided, upon request and free of charge, with copies of documents and other information relevant to your claim. The review on appeal will take into account all information submitted on

CONFIDENTIAL     NGC06976

NGC06970

appeal, whether or not it was provided for in the initial benefit determination. A decision will be made on your appeal within 60 days, unless additional time is needed. If more time is needed, you will be notified prior to the expiration of the 60 days that up to an additional 60 days is needed and the date by which the Plan expects to render the decision. If your appeal is denied, in whole or in part, you will receive a written response which will include (i) the reason(s) for the denial, (ii) references to the specific plan provisions on which the denial is based, (iii) a statement that you are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents and other information relevant to your claim on appeal, and (iv) a statement of your right to bring an action under the Section 502(a) of ERISA

If your claim is denied on appeal, you have a right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. You must pursue all claims and appeals procedures described in the Plan document before you seek any other legal recourse with respect to Plan benefits. In addition, any lawsuit must be filed within six months from the date of your denied appeal, or two years from your termination date, whichever occurs first.

The Plan Administrator, the administrator, and Corporate Severance Plan Review Committee shall have sole absolute discretion over claims and appeals issue and determinations regardless of the timing of such determination or exercise of such discretion.

## PLAN ADMINISTRATION

### Plan Sponsor

Northrop Grumman Corporation (the "Corporation") is the principal employer that maintains the Plan. The Plan Sponsor's Employer Identification Number is 80-0640649. The address of the Plan Sponsor is: 2980 Fairview Park Drive, Falls Church, VA 22042.

### Plan Administrator

The Plan Sponsor administers the Plan and is the Plan Administrator. The Plan Administrator has designated the Chief Human Resources and Administrative Officer of Northrop Grumman Corporation as the administrator. The administrator is vested with all power and authority necessary or appropriate to administer the Plan on behalf of the Plan Administrator, and he has full discretionary authority in this capacity. The address and telephone number of the Plan Administrator is:

Northrop Grumman Corporation
Attn: Chief Human Resources and Administrative Officer
2980 Fairview Park Drive
Falls Church, VA 22042
(703) 280-2900

The Plan Administrator or its designated administrator may delegate any of its administrative or fiduciary authority, including the authority to hear claims and

appeals, to other Company officers or employees. Authority to hear appeals has been delegated to the Corporate Severance Plan Review Committee.

### Plan Identifying Information

The Plan is a welfare benefit plan that provides severance benefits. The Plan year is the calendar year. The Plan is considered a component plan under a plan also named the Northrop Grumman Severance Plan, ERISA plan number 673.

### Funding of Benefits

The entire cost of the Plan is paid from Company assets. There is no trust fund associated with the Plan.

### Service of Process, Limitation Period

Legal service of process can be made upon the Secretary of the Corporation by directing service to that officer c/o Northrop Grumman Corporation, 2980 Fairview Park Drive, Falls Church, VA 22042. You must pursue all claims procedures described in this document before you seek any other legal recourse with respect to Plan benefits. In addition, any lawsuit must be filed within six months from the date of your denied appeal, or two years from your termination date, whichever occurs first.

### Plan Document, Amendment and Termination

This document serves as part of the official Plan document and is the summary plan description for the Plan. The terms of the Plan control over the Guide to Administration or any other supporting documents. The Corporation reserves the right to amend or terminate the Plan, in its sole discretion, at any time. However, this Plan may not be terminated or amended in any way adverse to employees whose employment terminates within one year after the date of a "Change in Control," as that term is defined in the Change-in-Control Special Agreements (or any successor agreements) described in the Company's Annual 10-K Report.

### Non-duplication of Benefits

Benefits paid under this Plan are in lieu of, and not in addition to, any other severance or similar type of benefit payable under any Company plan, policy or arrangement. If, despite any release signed in connection with this Plan, an employee is later awarded and receives benefits under any other severance plan (including, without limitation, a change in control agreement); benefits paid under this Plan will offset any other benefits payable.

Amounts paid under this Plan beyond the payment required pursuant to the WARN Act (or similar state law), or where such law does not apply, are not pension or savings-plan eligible, regardless of whether paid as salary continuation or in a lump sum.

### No Contract of Employment

Nothing in this Plan creates a vested right to benefits in any employee or any right to be retained in the employ of the Company.

CONFIDENTIAL

NGC06970

NGC06978

### Governing Law

This Plan shall be interpreted according to the laws of the State of Delaware, without reference to its choice of laws provisions, to the extent not preempted by federal law.

### Effective Date

This Plan became effective July 1, 2002 and has been amended and restated since that date.

## STATEMENT OF ERISA RIGHTS

As a participant in this Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). ERISA provides that all Plan participants shall be entitled to: (1) Examine, without charge, at the Plan Administrator's office and at other specified locations, Plan documents, and a copy of the latest annual report (Form 5500 series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration, and (2) obtain copies of the combined Plan document and summary plan description, and the latest annual report (Form 5500) series upon written request to the Plan Administrator. There may be a reasonable charge for such copies.

This summary plan description also constitutes the official "Plan" document governing benefits; therefore, there are no other Plan documents that govern your benefits.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operations of employee benefit plans. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants. No one, including your employer or any person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA. If your claim for a Plan benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of the Plan document or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied after final review, or is ignored in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about the Plan, you should contact the plan administrator. If you have any questions about this statement, or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration (formerly known as

CONFIDENTIAL

NGC06979

NGC06970

the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

1313063v1

01/01/12

11

CONFIDENTIAL

NGC06980

NGC06970