**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALAN CARLSON & PETER DELUCA**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,**<br><br>**Defendants.** | **Case No. 13-cv-2635**<br><br>**District Court Judge Andrea R. Wood** |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL
FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants Northrop Grumman Corporation ("Northrop") and Northrop Grumman Severance Plan ("the Plan"), respectfully submit the following Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment on the Standard of Review.

1. Defendant Northrop sponsors a number of employee benefit plans designed to provide its employees various retirement, health, and welfare benefits. Prior to 2012, these plans included two separate severance benefit plans: (1) the Northrop Grumman Electronic Systems Sector Employee Security & Protection Plan ("the ES&PP Plan"); and (2) the Northrop Grumman Severance Plan. (Declaration of Jim Kemp ("Kemp Decl.") ¶ 3.)

2. The respective terms of the ES&PP Plan and the Northrop Grumman Severance Plan were set forth in separate "summary plan documents" that served as both the official plan documents and the summary plan descriptions. (*Id.*)

1

3.      In 2012, Northrop consolidated the two separate severance plans into a single severance plan.  Northrop accomplished this by creating a single "wrap" plan document (the "Wrap Plan") that incorporated the two plans as "components" or "programs."[1]  (Kemp. Decl. ¶ 4.)  This consolidated severance plan, which is referred to as the Northrop Grumman Severance Plan (ERISA Plan Number 673) ("the Plan"), was formally adopted on December 15, 2011 and has been in effect since January 1, 2012. (Kemp Decl., Exhibit A, at NGC00338.)

4.      In connection with the consolidation of the two severance plans and the creation of the Wrap Plan, the "summary plan documents" were amended and restated to reflect the new structure of the Plan.  (Kemp. Decl. ¶ 6.)

5.      The Wrap Plan document generally describes the Plan's purpose, identifies the Plan's participants, delegates and describes administrative responsibilities, and establishes the procedure by which the Plan may be terminated or amended. (Kemp Decl. ¶ 4; Kemp. Decl., Wrap Plan Document, Exhibit A, NGC00338-61.)  It does not, however, describe "the specific severance benefits provided under the Plan." (Kemp Decl. ¶ 4; Kemp. Decl., Exhibit A, at NGC00341.)  As the Wrap Plan explains, the specific benefits under the Plan are described in the incorporated component plan documents. (*Id.*)

6.      The terms of the Plan related to its administration and the plan administrator's authority are set forth primarily in the Wrap Plan, which designates Northrop's Chief Human Resources and Administrative Officer as the "Plan Administrator." (Kemp. Decl., Exhibit A, at NGC00346-50.)

7.      The Plan Administrator is responsible for performing all necessary administrative duties except for reviewing appeals from the Plan Administrator's denial of benefits, which is a

---

[1] Although the Wrap Plan document incorporates both the ES&PP Plan and the Northrop Grumman Severance Plan as component programs, only the latter (referred to herein as the "Component Plan") is at issue in this case.

duty delegated to the Northrop Grumman Corporate Severance Plan Review Committee ("the Administrative Committee"). (*Id*. at NGC00346 (Section 4.01).) The Administrative Committee is comprised of three members appointed by either the Plan Administrator or Northrop's Chief Executive Officer. (*Id*.)

8.      The authority and discretion of the Plan Administrator and the Administrative Committee is described in Article 4 of the Wrap Plan. (*See* Kemp. Decl., Exhibit A, at NGC00346-50.) As set forth in Article 4, the Plan Administrator and the Administrative Committee have "the full discretionary power to administer the Plan in all of its details" and "[a]ll interpretations, findings, and decisions of the Plan Administrator and Administrative Committee, as applicable, shall be final and conclusive." (*Id.* at NGC00347.)

9.      Article 4 of the Wrap Plan also identifies the Plan Administrator's and the Administrative Committee's specific powers. (Kemp. Decl., Exhibit A, at NGC00347.) These specific powers include, but are not limited to, the "full discretionary authority" to:

> (b) Determine eligibility of Employees to participate in the Plan.
>
> (f)  Construe and interpret the terms of the Plan, including the power to remedy possible ambiguities, inconsistencies or omissions.
>
> (g) Determine the amount of benefits and eligibility for benefits.
>
> (n) Decide all questions concerning the Plan, including making findings of fact.

(*Id*. at NGC00347-49.)

10.      The Plan Administrator's and the Administrative Committee's discretionary authority is also described in the Component Plan, which provides that the Plan Administrator is "vested with all power and authority necessary or appropriate to administer the Plan on behalf of [Northrop]" and has "full discretionary authority in th[at] capacity." (Kemp. Decl., 2012 Component Plan Document, Exhibit C, at NGC00334.) It also provides that "[t]he Plan

3

Administrator, the administrator, and Corporate Severance Plan Review Committee shall have sole absolute discretion over claims and appeals issue and determinations regardless of the timing of such determination or exercise of such discretion." (*Id.*)

11.     The two-tiered administrative claims procedure required by ERISA is described in the Component Plan. (Kemp Decl., Exhibit A, at NGC00357 ("If a Claimant believes he or she is entitled to benefits under a Component Plan that are not being paid, he or she may file a written claim in accordance with the procedure established under the Component Plan, which shall control for benefits under the Component Plan."); Kemp. Decl. Exhibit C, at NGC00333-34.)

12.     The administrative claims procedure requires employees to submit their claims within 90 days of being terminated or within 90 days after a payment was due.  (Kemp Decl. Exhibit C, at NGC00333.)  If the claim is denied, the employee is informed in writing of the reasons for the denial. (*Id.*)  The employee then has 60 days to file an appeal with the Administrative Committee. (*Id.* at NGC00334.)  The Administrative Committee will then meet and render a decision a writing. (*Id.*)

13.     Plaintiffs Alan Carlson and Peter DeLuca were laid off in 2012 as part of a reduction-in-force in Northrop's Technical Services sector. (Dkt. #62, Am. Compl. ¶ 3.)

14.     On August 20, 2017 and August 27, 2017, Carlson and DeLuca submitted their claims for severance benefits to the Plan Administrator. (Declaration of Margaret Collins ("Collins Decl.") ¶ 2.)  In both letters, Plaintiffs claimed that Northrop's decision not to provide severance in connection with the reduction-in-force to which they were subject was improper because severance had been offered to other employees in connection with prior lay-offs. (Collins Decl., Claims Letters, Exhibit D,  at NGC00003, NGC00245.)

4

15. Plaintiffs' claims were reviewed and denied by Margaret Collins, Corporate Director for Retirement Administration, Compliance and Services, on behalf of the Plan Administrator. (Collins Decl. ¶ 3.) On November 9, 2012, Collins wrote to Plaintiffs and explained that as stated in the Component Plan, a laid-off employee is only eligible for severance benefits if he receives a memorandum from the Vice-President of Human Resources (or his or her designee) designating the employee as eligible.[2] (Collins Decl. ¶ 3; Collins Decl., Claim Denial Letters, Exhibit E, at NGC00249, NGC00022.) Collins contacted both Carlson's and DeLuca's managers and confirmed that neither had received an eligibility memorandum. (Collins Decl., Exhibit E, at NGC00249, NGC00022.)

16. DeLuca and Carlson appealed the denial of their claims to the Administrative Committee on December 2, 2012 and January 3, 2013, respectively. (Collins Decl. ¶ 4.) Both argued on appeal that the denial of their claims was erroneous because the Plan did not set forth a uniform standard or policy for determining which employees would receive a severance eligibility memorandum. (Collins Decl., Appeals Letters, Exhibit F, at NGC00035, NGC00263.)

17. The Administrative Committee met on January 31, 2013 to consider Carlson's and DeLuca's claims. (Collins Decl. ¶ 5; Collins Decl., Exhibit G, Committee Meeting Minutes.) At this meeting, the Administrative Committee considered the materials Plaintiffs submitted, as well as two memorandums prepared by Collins. (Collins Decl. ¶ 5.)

18. Collins's memorandums summarized Plaintiffs' claims, explained the reasons why the claims were initially denied, and recommended that the Administrative Committee deny Plaintiffs' appeals. (Collins Decl., Appeals Memorandums, Exhibit H.) Collins explained that

---

[2] The Plan explicitly provides that "[i]n order to receive the benefits of this Plan, you must . . . be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (Kemp Decl., Exhibit C, at NGC00329.)

the Plan was designed so that the company, through its Vice-President of Human Resources (or that individual's designee), had discretion to award severance on a "case by case basis." (Collins Decl., Exhibit H, NGC00097, NGC00290.)

19.     The Administrative Committee agreed with Collins that a severance memorandum was required and that Northrop had the discretion to determine which employees would receive such a memorandum. (Collins Decl., Exhibit I, Appeals Denial Letters, NGC00228, NGC00362.)  The Administrative Committee also determined that ERISA did not prohibit Northrop from designing the plan so as to require a discretionary eligibility memorandum from management.  (*Id.* at NGC00228.)  Accordingly, the Administrative Committee voted unanimously to deny Plaintiffs' appeals.  (Collins Decl., Exhibit G, at NGC00363.)

Date:  January 4, 2017                                    Respectfully submitted,


                                                          /s/ *Nancy G. Ross*
                                                          Nancy G. Ross (6190243)
                                                          NRoss@mayerbrown.com
                                                          Laura Hammargren (6310920)
                                                          LHammargren@mayerbrown.com
                                                          Abigail M. Bartine (No. 6312317)
                                                          abartine@mayerbrown.com
                                                          MAYER BROWN LLP
                                                          71 South Wacker Drive
                                                          Chicago, IL 60606
                                                          Telephone:     312.782.0600
                                                          Facsimile:     312.701.7711

                                                          *Attorneys for Northrop Grumman
                                                          Corporation and Northrop Grumman
                                                          Severance Plan*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

was served upon all parties of record via the Electronic Filing System of the U.S. District Court

for the Northern District of Illinois on January 4, 2017.

/s/  Nancy G. Ross
Nancy G. Ross

7