IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON & PETER DeLUCA, individually and on behalf of a class of similarly situated individuals, | ) ) Case No. 13-cv-2635 ) ) Judge Andrea R. Wood |
| Plaintiffs, | ) ) Magistrate Judge Maria Valdez |
| vs. | ) ) |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGEMENT ON STANDARD OF REVIEW**

The precise issue for the Court to answer is: Does a conferral of discretionary authority only present in the Wrap Plan document apply to underlying Component Plan document where both documents state that the Component Plan document contains all plan terms and the Component Plan document was adopted after the Wrap Plan? The answer is "no" when considering (a) a Seventh Circuit presumption against finding conferrals of discretionary authority and (b) required resolutions of any ambiguity in Plaintiffs' favor.

In order to resolve this motion, the Court needs to consider only two pieces of evidence. First is the document Defendants refer to as the "wrap plan" (ECF #171). Second, there is the subsequently adopted "Restated Northrop Grumman Severance Plan" which purports to be both a plan document and summary plan description, which Defendants refer to as the "component plan" document. (Ex. 1 at CAR0604, 0607; ECF #166-5 at NGC00336). Both documents state the terms of the component plan are all in the component plan document. Though the

component plan document was adopted more recently, it omits discretionary authority to interpret its terms. Defendants nevertheless contend such discretion should be inferred.

When viewing all facts in a light most favorable to Plaintiffs, applying the Seventh Circuit's presumption against conferrals of discretion, and construing ambiguous provisions against Defendants, the Court must rule against finding discretionary authority either as the only reasonable interpretation, or because there is more than one reasonable interpretation.

## FACTS

Northrop Grumman adopted what it refers to as the "wrap plan" instrument on December 15, 2011, and effective January 1, 2012. (ECF #171 at NGC00338). This document states it provides benefits under one or more benefit structures, referred to as "Component Plans." (*Id*. at NGC00341). The "Component Plans are not considered separate plans for purposes of the reporting requirements under ERISA, but are instead separate benefit structures under the Plan maintained for different groups of eligible employees." (*Id.*). It states those component plan documents, together with this document, comprise "the Plan." (*Id.* at NGC0342). However, "[t]he specific terms . . . are as specified in the summary plan description for that Component Plan." (*Id.*).

After adopting the "wrap plan" instrument, on January 27, 2012, Northrop Grumman adopted another document purporting to be the Northrop Grumman Severance Plan. (Ex. 1 at CAR0607; Ex. 2, Defs. RFA Response Authenticating Exhibit 1).[1] This time it executed an "Adoption of Restated Northrop Grumman Severance Plan." (Ex. 1, CAR 607).

The document executed in January, which Defendants refer to as the "component plan" document (Ex. 1, CAR0596–606; ECF #166-5) states it is considered a component plan under a

---

[1] With the exception of the adoption page at page CAR0607, Exhibit 1 to this brief is substantively identical to ECF #166-5, Exhibit C to Defendants Rule 56.1 Statement.

plan also named the Northrop Grumman Severance Plan, ERISA plan number 673. (Ex. 1, CAR0604; ECF #166-5 at NGC00335). It states it is part of the official Plan document and is the summary plan description. (*Id.*). Yet in the section advising participants how to obtain all instruments with terms of the plan, it states the employee may "obtain copies of the combined Plan document and summary plan description," and that "This summary plan description also constitutes the official 'Plan' document governing benefits; therefore there are no other Plan documents that govern your benefits." (Ex. 1, CAR0605; ECF #166-5 at NGC00336).

Both documents describe discretionary authority to administer the plan. The "wrap plan" document provides for various forms of discretionary authority relating to general plan administration, including authority to make rules, comply with reporting and disclosure requirements, prescribe necessary forms to operate the plan, secure government approvals, authorize payments, implement computer and telecommunication systems, litigate claims, prepare documents necessary for administration, and engage agents. (ECF #171 at NGC00347–49). The component plan document summarily provides the same thing by stating: "The administrator is vested with all power and authority necessary or appropriate to administer the Plan on behalf of the Plan Administrator, and he has full discretionary authority in this capacity." (Ex. 1 at CAR0603; ECF #166-5 at NGC00334).

The "wrap plan" document provides discretionary authority to determine eligibility for benefits, make factual findings, and interpret terms of the plan. (ECF #171 at NGC00347–49). The component plan document, however, only references having "discretion over claims and appeals issue . . . . (Ex. 1 at CAR0603; ECF #166-5 at NGC00334). Unlike the "wrap plan" document, the component plan omits any reference to discretionary authority to interpret terms. Judge Valdez highlighted this in her denial of Defendants' motion to dismiss. (ECF #29 at 6

(citing *Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000)).

Following Plaintiffs' claims, the administrator and severance plan review committee denied Plaintiffs' claims and appeals. The final administrative decision entirely hinged on an interpretation of "Conditions for Receiving Benefits" terms in the component plan document, interpreting the plan language as granting Northrop Grumman management discretion to decide whether or not to deliver an eligibility memo to employees. (ECF #166-11, NGC00228; ECF #166-5 at NGC00329; Ex. 1 at CAR0598). As Judge Valdez pointed out, whether or not Defendants are entitled to deferential review depends entirely on whether the instruments confer discretionary authority to interpret the terms in that component plan document. (ECF #29 at 6).

The purpose of Defendants' motion is to modify the plan without any amendment of its terms. Northrop Grumman acknowledges both continued medical and cash severance have the same eligibility criteria. (Ex. 3, Penkart Dep. at 86:9–20). To determine whether employees would receive continued medical benefits through the severance plan, Northrop Grumman used each employee's benefit program code ("BPC"). (*Id.* at 33:4–34:11, 36:6–9). Each BPC can designate employees in various divisions, representing what benefits the person is eligible for. (*Id.* at 182:3–7). Once given a BPC, the participant would actually receive the medical portion of severance upon entry of a particular separation code for layoff. (*Id.* at 36:20–37:8). "The BPC code . . . shows that participants . . . can potentially participate in the severance plan. The trigger to actually giving an employee – covering an employee for the severance plan, which would include the medical benefits, would be the separation code." (*Id.* at 39:13–18).

Northrop Grumman provided a snapshot of all its BPCs in 2012, along with a count of the number of employees that would be eligible for continued medical severance in the event of

4

layoff. (Ex. 4, exhibit 9 to Penkart deposition (Ex. 3 at 180:2–8). The BPCs that have the code "SEV" next to them are all the BPCs of active employees who are eligible for medical benefits through the severance plan in the event of layoff. (Ex. 3 at 182:22–183:2). Every one of the putative class members are individuals who Northrop Grumman determined met the eligibility criteria to receive the medical severance in the event of a layoff, but simply did not want to pay cash severance. For years, Northrop Grumman determined who would be eligible for severance in the even of layoff long before laying the employee off. Now, Northrop Grumman hopes it can use discretion to interpret eligibility criteria to persuade the court it had discretion to decide, upon laying an employee off, whether it would deliver the eligibility memorandum.

## ARGUMENT

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgment, the court must "consider the factual record in the light most favorable to the plaintiffs and give them the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence." *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 674 (7th Cir. 2014).

Courts review ERISA benefit determinations de novo unless the plan properly confers on the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

5

The party seeking deferential review bears the burden of establishing it has a valid conferral of discretion. *Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 870 (7th Cir. 2006) (citing *Gibbs v. CIGNA Corp.*, 440 F.3d 571, 575 (2d Cir. 2006). Determining whether the plan properly confers discretionary authority requires employing principles of contract interpretation in reviewing the documents. *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) ; *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005) (holding court interprets documents de novo to determine whether there is discretionary authority).

The Court must rely on the documents themselves, and in the case of any ambiguity, only objective extrinsic evidence. *See Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding the court should only consider objective extrinsic evidence to determine meaning of ambiguous plan terms, and it should not depend on testimony, oral or written, of an interested party). Allowing self-serving testimony, such as a party's own affidavit, to explain the structure, meaning, or purpose of the documents, would make it "far too easy for a party to a contract to rewrite it in his favor after the fact . . . ." *Id.*; *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 820 (7th Cir. 2010) (stating court cannot consider evidence that depends "on the credibility of testimony (oral or written) of an interested party.").

Defendants err by relying on affidavits to establish the structure and purpose of the various documents. (*See* ECF #166 *passim*, relying on declaration of Jim Kemp (ECF #166-2) to explain the structure of the documents). This testimony is only permissible at this stage under *Matthews* and *Young* to authenticate the documents, but the Court must disregard the self-serving statements about the documents' structure, purpose, and meaning. With these standards in mind, the two documents demonstrate either (1) there was an unambiguous refrain from conferring discretionary authority to interpret the terms in the component plan document, which was

adopted after the "wrap plan" document, or (2) the two documents are ambiguous as to whether terms in the "wrap plan" document can apply to the component plan document, such that the conflict in evidence dictates Defendants failed to carry their burden.

**I.      Northrop Grumman Unambiguously Did Not Reserve Discretion to Interpret the Terms of the Component Plan Document.**

Northrop Grumman did not reserve discretion to interpret the terms of the component plan document because that document expressly sates what elements of discretionary authority apply to the "component plan," and it omits discretion to interpret terms of the component plan. The Seventh Circuit employs a presumption against such conferrals of discretion. *Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). In order to properly reserve discretion to interpret the terms of the plan, the employer must convey that discretion to employees and do so very clearly. *Id.* at 333.

> An ERISA plan can stipulate for deferential review; it might be entirely rational for an employee to accede to and even prefer such a plan—it might be cheaper. But the stipulation must be clear, and cannot merely be assumed from language that in the closely related setting of insurance contracts has never been thought to entitle the insurer to exercise a discretionary judgment in determining whether to pay an insured's claim. An employer should not be allowed to get credit with its employees for having an ERISA plan that confers solid rights on them and later, when an employee seeks to enforce the right, pull a discretionary judicial review rabbit out of his hat. The employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly.

*Id.* at 332–33. Defendants contend *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) establishes a public policy in favor of deferential review. (ECF #169 at 7). But, as the Seventh Circuit has explained, *Conkright* does no such thing; it merely holds stripping an administrator of discretion following a single mistake in interpretation is not appropriate. *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 890 (7th Cir. 2015). De novo remains the default standard of review, *Bruch,* 489

7

U.S. at 115, and the Seventh Circuit's holding that if language is ambiguous there is a presumption against conferring discretion, *Wal-Mart Stores*, 213 F.3d at 403, remains the law.

"An ERISA plan 'must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement.'" *Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 592 (7th Cir. 2014) (quoting *Schultz*, 670 F.3d at 838)); *see Young,* 615 F.3d at 823; *Taracorp*, 73 F.3d at 744–45 (explaining interpretation of contracts and statutes follow the same principles). "Those principles require that Plan terms be interpreted in 'an ordinary and popular sense, as [they] would [be understood by] a person of average intelligence and experience.'" *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010) (alterations in original)). Interpretation should must be guided by the "structure of the plan" and "common sense." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). When a contract or statute lists specific items, items not listed are presumed excluded. *Mich. Citizens for an Independent Press v. Thornburgh*, 868 F.2d 1285, 1293 (D.C. Cir. 1989) (explaining that expressing one thing implies excluding another).

"All language of a plan should be given effect without rendering any term superfluous." *Schultz*, 670 F.3d at 838; *Young*, 615 F.3d at 823. However, the Court should not adopt any literal interpretation if it would lead to any absurd or unintended results. *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 329 (7th Cir. 2011) (holding a literal reading of a plan provision as insurer proposed was not reasonable because it would lead to unintended results); *BKCAP, LLC v. Captec Franchise Trust 2000-I*, 572 F.3d 353, (7th Cir. 2009) (rejecting an interpretation that would lead to absurd results). Applying these principles, the only reasonable interpretation of all the documents is that only conferrals of discretionary authority present tin

the component plan document apply to the component plan, resulting in no discretionary authority to interpret terms of the component plan.

### A. Discretion to Interpret Terms Does Not Apply to the Severance Plan Because the Plan Document Explicitly Provides that Contains All Its Terms and that Document Omitted Discretion to Interpret After Existence of the Wrap Plan.

Northrop Grumman intended to exclude discretion to interpret terms from the component plan because the component plan document states it contains all terms regarding that plan's benefits, includes all other forms of discretionary authority except discretion to interpret terms, and was adopted <u>after</u> the "wrap plan" document. When a contract or statute lists specific items, any item not listed is presumably excluded. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (interpreting a rule that allows action within 30 days as implicitly disallowing it beyond 30 days); *BPP Retail Props., LLC v. N. Am. Roofing Servs.*, No. 13-1259 (FAB), 2014 U.S. Dist. LEXIS 129603, at *10–11 (D.P.R. Mar. 31, 2014) ("[W]hen parties list specific items in a document, any item not so listed is typically thought to be excluded . . . ."); *U.S. v. Jennings*, 438 F. Supp. 2d 637, 645 n.22 (E.D. Va. July 11, 2006) (referencing AMJUR Statutes § 130, which states an explicit expression of particular matters implies exclusion of others). As with statutes, where there is a conflict, "an old rule generally yields to a new one." *Quinn v. Gates*, 575 F.3d 651, 655 (7th Cir. 2009); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 993 n.5 (7th Cir. 2001).

Also, ERISA plans may confer discretion to do certain things, but not others. *Wal-Mart Stores*, 213 F.3d at 403 (holding language conferring discretion in benefit determinations did not give discretion to interpret language); *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 539 (7th Cir. 2000) (holding a grant of discretion to waive a required element for proof of disability did not give discretion to interpret all plan terms, and grant of discretion to determine initial insurability did not give discretion to determine eligibility for benefits).

Here, the later document controls over the earlier one, and the later document provides a list and excludes discretion. The "wrap plan" document states "[t]he specific terms of a Component Plan, *including but not limited to* the eligibility, participation and benefits provisions, are as specified in the summary plan description for that Component Plan." (ECF #171 § 2.05 (emphasis added)). That component plan document reiterates that it is the *only* document containing terms applicable to that Component Plan. (ECF #166-5 at NGC00336 ("This summary plan description also constitutes the official 'Plan' document governing benefits; therefore, there are no other Plan documents that govern your benefits.")). When the component plan document referenced what type of discretionary authority the Plan Administrator possessed, it provided discretionary authority to administer the plan, and discretionary authority over claims and appeals. (*Id.* at NGC00334). Notably, unlike in the "wrap plan" document where Northrop Grumman provided a list and stated "including but not limited to," Northrop Grumman gave no indication in this component plan document the list of types of discretionary authority includes something not on the list.

Moreover, Northrop Grumman drafted the component plan document *after* it adopted the "wrap plan" document, so it knew how to overcome a presumption that an item not on a list is excluded, and it knew how to specify an intent to reserve discretion to interpret terms of a document, but deliberately chose not to do so. (*Compare* Ex. 1, CAR0607 (adopting component plan document 1/27/2012) *with* ECF #171 at NGC00338 (adopting the "wrap plan" on 12/15/2011)). Because both documents state the terms applicable to the component plan are all in the component plan document, and that document excludes discretion to interpret terms of the component plan document, there is no discretion to interpret the terms of the component plan document.

### B. Excluding Discretion to Interpret Terms of the Component Plan Is the Only Interpretation that Renders No Language Superfluous.

The only reasonable way to interpret these documents is that only those conferrals of discretionary authority stated in the component plan document (ECF #166-5) apply to the component plan because reading conferrals of discretion in the "wrap plan" (ECF #171) to apply to the component plan document would render the list of discretionary authority in the component plan document superfluous. "All language of a plan should be given effect without rendering any term superfluous." *Schultz*, 670 F.3d at 838; *Young*, 615 F.3d at 823; *see also Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 523 (7th Cir. 2016) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

The only interpretation that leaves no language in either of the two documents superfluous is one that only applies discretionary authority to the component plan only if it is stated in the component plan. The "wrap plan" document contains a number of conferrals of discretionary authority. (ECF #171 at NGC00347–49). But that document also contains many aspects of the plan not covered in the component plan, such as how the committee conducts business (e.g., §§ 4.03–4.07, 4.09–4.11, Articles 5–6). The component plan document, however, has fewer administrative terms, and more thoroughly describes benefits and eligibility. But it omits any discretion to interpret terms of the component plan, while referencing discretion to administer and decide claims and appeals, though Northrop Grumman adopted this component plan document more than a month after adopting the "wrap plan" document.

Defendants' proposed interpretation, which applies all the listed discretionary authority in the wrap plan document to the component plan document is flawed because that interpretation would make all the reference to discretionary authority in the component plan document

superfluous. Likewise, (a) the language in the wrap plan stating the terms of a component plan are as stated in the component plan document (ECF #171 § 2.05) and (b) the component plan document's assertion that there are no other documents governing benefits under the component plan (ECF #165-5 at NGC00336) would be left meaningless. If every provision of the wrap plan document simply applied to the component plan, none of the conferrals of discretion would need to be reiterated. Instead, the only reasonable interpretation is that the wrap plan document lists out the discretionary authority that applies with respect to the terms in that document, and the component plan lists the types of discretionary authority that apply to the component plan. As discussed below, the status of the component plan document as a summary plan description does not change this because if the document permissibly omits important plan terms, it would then become a deficient summary—a clearly unintended consequence.

### C. Reading Discretion to Interpret Terms to Apply to the Summary Plan Description Would Create the Unintended Consequence of Violating 29 U.S.C. § 1022.

Construing the documents to only apply discretionary authority to the component plan's terms as they are stated in the component plan documents is the only reasonable interpretation because it is the only one that prevents the absurd and unintended consequence of making the plan's summary plan description (i.e., the component plan document) deficient. An interpretation that leads to absurd or unintended results is not reasonable. *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 329 (7th Cir. 2011) (holding a literal reading of a plan provision as insurer proposed was not reasonable because it would lead to unintended results); *BKCAP, LLC v. Captec Franchise Trust 2000-I*, 572 F.3d 353, 360 (7th Cir. 2009) (rejecting an interpretation that would lead to absurd results). ERISA requires the summary plan description "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan" and describe "circumstances which

may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(a)–(b); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 587 (7th Cir. 2000).

The Seventh Circuit unequivocally stated that a conferral of any discretionary authority on an administrator that would lead to arbitrary-and-capricious judicial review is an important term regarding a participant's rights under the plan that must be clearly disclosed to the participant. *Herzberger v. Standard Ins. Co.*, 205 F.3d 205 F.3d 327, 332–33 (7th Cir. 2000). The component plan document is also the summary plan description for the component plan. (ECF #165-5 at NGC00336; ECF #171 § 2.05). The deliberate omission of discretionary authority to interpret the terms of the plan in the summary plan description—adopted after the "wrap plan" document—would violate § 1022 and creates a breach of fiduciary duty. This is an absurd and unintended result. The only reasonable interpretation, thus, is that the component plan document and summary plan description accurately state all the conferrals of discretionary authority that apply to the terms in the component plan document. And if it is not the only reasonable interpretation, then the evidence is in conflict, which requires denying Defendants' motion.

II.  **To the Extent that the Documents Are Ambiguous Regarding Whether the "Wrap Plan" Confers Discretionary Authority to Interpret Terms in the Component Plan, this Constitutes a Genuine Issue of Material Fact.**

To the extent that the evidence creates more than one reasonable interpretation, this requires denial of Defendants' motion. When interpreting ERISA plan language that is susceptible to more than one interpretation, the Seventh Circuit employs two canons, both of which dictate denying Defendants' motion. First, where the administrator does not have discretion to interpret terms (e.g., such as in determining whether the administrator has discretion to interpret terms), the court must resolve any ambiguities in the participants' favor under *contra proferentem*. *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 665 (7th Cir. 2005);

*Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311–13 (7th Cir. 1992). Similarly, if there is any conflict in evidence, summary judgment is not proper. *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Second, if there is any ambiguity the Court may only consider objective extrinsic evidence to determine the intent, purpose, or meaning of the documents, which would only include the combined component plan document and summary plan description (which does not grant such discretion to interpret terms in the component plan). *See Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding the court should only consider objective extrinsic evidence to determine meaning of plan terms, disregard self-serving testimony of either party); *Young*, 615 F.3d at 820 (explaining the court cannot consider oral or written testimony of either party). While summary plan descriptions do not constitute plan terms that can be enforced under 29 U.S.C. § 1132(a)(1)(B), they are the most objective evidence of what the ambiguous plan terms mean. *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011);[2] *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (holding "ambiguous plan language be given a meaning as close as possible to what is said in the plan summary"). Thus, statements in Defendants' affidavits about how the documents are structured or interact must be disregarded.

The "wrap plan" document was adopted in December 2011. (ECF #171 at NGC00338). Northrop Grumman subsequently adopted the component plan document. (CAR0607). The "wrap plan" states the "wrap plan" document and the component plan document together make up the plan. (ECF #171 § 2.05). But it also states the component plan document contains the "specific terms" of that component plan. (*Id.*). The component plan document, however,

---

[2] As the Supreme Court held in *Amara*, this does not make the statements in the SPD unenforceable; they are simply enforceable through another ERISA section, namely ERISA § 502(a)(3). *Id.*

incorporates none of the terms of the "wrap plan" document. Instead, it provides: "This document serves as part of the official Plan document" (ECF #166-5 at NGC00335) and "This summary plan description also constitutes the official 'Plan' document governing benefits; therefore, there are no other Plan documents that govern your benefits." (*Id.* at NGC00336). The "wrap plan" document purport to provide for discretionary authority, including discretion to interpret plan terms. (ECF #171 at NGC00347–49). The component plan document, however, explicitly states that it contains all the terms of that component plan and was adopted after the "wrap plan," plainly omits discretion to interpret (though referencing other types of discretion). (ECF #166-5 at NGC00334).

Northrop Grumman executed the component plan <u>after</u> the "wrap plan" document, purported to make it the document containing <u>all the terms</u> of the component plan, and <u>specifically omitted</u> discretion to interpret terms. To the extent the Component Plan simply does not control, at the least, there is conflicting evidence, and the documents are susceptible to more than one reasonable interpretation regarding whether there is discretion to interpret terms in the component plan document. When there is such a conflict, or more than one reasonable interpretation, summary judgment is not proper, and the Court hold there is no discretion to interpret terms of the component plan. *Ruttenberg*, 413 F.3d at 665; *Young*, 615 F.3d at 820.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for partial summary judgment should be denied.

15

Respectfully submitted,

By:   /s/ Michael Bartolic                    /s/ R. Joseph Barton

Attorneys for the Plaintiffs

| | |
|---|---|
| Michael Bartolic | R. Joseph Barton |
| Roberts Bartolic LLP | Cohen Milstein Sellers & Toll PLLC |
| 208 S. LaSalle Street | 1100 New York Avenue |
| Suite 1420 | Suite 500 |
| Chicago, Illinois  60603 | Washington, D.C.  20005 |
| Tel: 312-635-1600 | Tel: 202-408-4600 |
| Fax: 312-635-1601 | Fax: 202-408-4699 |

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on **February 10, 2016**, a copy of the foregoing was served by operation of the Court's electronic filing systems upon the following counsel of record:

Nancy G. Ross
Laura R. Hammargren
Abigail M. Bartine
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL  60606
T: 312-782-0600
F: 312-701-7711

                                        /s/ Michael Bartolic_____

16