IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ALAN CARLSON & PETER DeLUCA, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, <br><br> Defendants. | Case No. 13-2635 <br><br> District Court Judge Andrea R. Wood <br><br> Magistrate Judge Maria Valdez |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs respectfully submit the following response to Defendants' statement of facts in support of their motion for partial summary judgment on the standard of review.

1. Defendant Northrop sponsors a number of employee benefit plans designed to provide its employees various retirement, health, and welfare benefits. Prior to 2012, these plans included two separate severance benefit plans: (1) the Northrop Grumman Electronic Systems Sector Employee Security & Protection Plan ("the ES&PP Plan"); and (2) the Northrop Grumman Severance Plan. (Declaration of Jim Kemp ("Kemp Decl.") ¶ 3.)

**ANSWER:** Plaintiffs deny the allegations in paragraph 1 as inadmissible for purposes of determining the meaning of any terms in any of the documents under consideration pursuant to *Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding the court

1

should only consider objective extrinsic evidence to determine meaning of ambiguous plan terms, and it should not depend on testimony, oral or written, of an interested party). Allowing self-serving testimony, such as a party's own affidavit, to explain the structure, meaning, or purpose of the documents, would make it "far too easy for a party to a contract to rewrite it in his favor after the fact . . . ." *Id.*; *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 820 (7th Cir. 2010) (stating court cannot consider evidence that depends "on the credibility of testimony (oral or written) of an interested party.").

   2. The respective terms of the ES&PP Plan and the Northrop Grumman Severance Plan was set forth in separate "summary plan documents" that served as both the official plan documents and the summary plan descriptions. (*Id.*)

  **ANSWER:** Plaintiffs admit to the authentication of the Northrop Grumman Severance Plan document, but deny any authentication of an ES&PP plan document, as that document has not been produced in litigation and has not been offered as part of any affidavit or Defendants' statement of facts.

   3. In 2012, Northrop consolidated the two separate severance plans into a single severance plan. Northrop accomplished this by creating a single "wrap" plan document (the "Wrap Plan") that incorporated the two plans as "components" or "programs."[1] (Kemp. Decl. ¶ 4.). This consolidated severance plan, which is referred to as the Northrop Grumman Severance Plan (ERISA Plan Number 673) ("the Plan"), was formally adopted on December 15, 2011 and has been in effect since January 1, 2012. (Kemp Decl., Exhibit A, at NGC00338.)

  **ANSWER:** Plaintiffs admit that Mr. Kemp can authenticate the document found at NGC00338, but deny all other statements of fact regarding what the document does, means, its structure, or purpose. The Court must determine the meaning of any document by looking at the

language of the document itself, and in the event of any ambiguity, may consider only objective extrinsic evidence. *Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding the court should only consider objective extrinsic evidence to determine meaning of ambiguous plan terms, and it should not depend on testimony, oral or written, of an interested party). Allowing self-serving testimony, such as a party's own affidavit, to explain the structure, meaning, or purpose of the documents, would make it "far too easy for a party to a contract to rewrite it in his favor after the fact . . . ." *Id.*; *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 820 (7th Cir. 2010) (stating court cannot consider evidence that depends "on the credibility of testimony (oral or written) of an interested party.").

4. In connection with the consolidation of the two severance plans and the creation of the Wrap Plan, the "summary plan documents" were amended and restated to reflect the new structure of the Plan. (Kemp. Decl. ¶ 6.)

**ANSWER:** Plaintiffs deny that any other documents were issued or adopted in connection with any consolidation of another document or plan. None of the documents state as much, and this "fact" is based on the testimony of Mr. Kemp, which is inadmissible to determine the meaning, structure, or terms of any document or plan. The Court must determine the meaning of any document by looking at the language of the document itself, and in the event of any ambiguity, may consider only objective extrinsic evidence. *Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding the court should only consider objective extrinsic evidence to determine meaning of ambiguous plan terms, and it should not depend on testimony, oral or written, of an interested party). Allowing self-serving testimony, such as a party's own affidavit, to explain the structure, meaning, or purpose of the documents, would make it "far too easy for a party to a contract to rewrite it in his favor after the fact . . . ." *Id.*;

*see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 820 (7th Cir. 2010) (stating court cannot consider evidence that depends "on the credibility of testimony (oral or written) of an interested party.").

    5.     The Wrap Plan document generally describes the Plan's purpose, identifies the Plan's participants, delegates and describes administrative responsibilities, and establishes the procedure by which the Plan may be terminated or amended. (Kemp Decl. ¶ 4; Kemp. Decl., Wrap Plan Document, Exhibit A, NGC00338-61.)  It does not, however, describe "the specific severance benefits provided under the Plan." (Kemp Decl. ¶ 4; Kemp. Decl., Exhibit A, at NGC00341.)  As the Wrap Plan explains, the specific benefits under the Plan are described in the incorporated component plan documents. (*Id.*)

    **ANSWER:**  Plaintiff admits the statements in paragraph 5.

    6.     The terms of the Plan related to its administration and the plan administrator's authority are set forth primarily in the Wrap Plan, which designates Northrop's Chief Human Resources and Administrative Officer as the "Plan Administrator." (Kemp. Decl., Exhibit A, at NGC00346-50.)

    **ANSWER:**  Plaintiffs admit Exhibit A to Mr. Kemp's declaration provides language regarding administration and administrator's authority, but deny any characterization of that authority as "primarily" appearing in one document over another.  The Court must determine the content and meaning of terms in documents by examining those documents, and in the event of any ambiguity, only examining objective extrinsic evidence.  Considering the characterization of Defendants' witness in an affidavit is improper.  *Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding the court should only consider objective extrinsic evidence to determine meaning of ambiguous plan terms, and it should not depend on testimony, oral or

written, of an interested party). Allowing self-serving testimony, such as a party's own affidavit, to explain the structure, meaning, or purpose of the documents, would make it "far too easy for a party to a contract to rewrite it in his favor after the fact . . . ." *Id.*; *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 820 (7th Cir. 2010) (stating court cannot consider evidence that depends "on the credibility of testimony (oral or written) of an interested party.").

    7.    The Plan Administrator is responsible for performing all necessary administrative duties except for reviewing appeals from the Plan Administrator's denial of benefits, which is a duty delegated to the Northrop Grumman Corporate Severance Plan Review Committee ("the Administrative Committee"). (*Id.* at NGC00346 (Section 4.01).) The Administrative Committee is comprised of three members appointed by either the Plan Administrator or Northrop's Chief Executive Officer. (*Id.*)

    **ANSWER:**  Plaintiff admits Exhibit A to Mr. Kemp's declaration provides these terms.

    8.    The authority and discretion of the Plan Administrator and the Administrative Committee is described in Article 4 of the Wrap Plan. (*See* Kemp. Decl., <u>Exhibit A</u>, at NGC00346-50.) As set forth in Article 4, the Plan Administrator and the Administrative Committee have "the full discretionary power to administer the Plan in all of its details" and "[a]ll interpretations, findings, and decisions of the Plan Administrator and Administrative Committee, as applicable, shall be final and conclusive." (*Id.* at NGC00347.)

    **ANSWER:**  Plaintiff admits that Exhibit A to Mr. Kemp's declaration provides the cited terms.

    9.    Article 4 of the Wrap Plan also identifies the Plan Administrator's and the Administrative Committee's specific powers. (Kemp. Decl., <u>Exhibit A</u>, at NGC00347.)

These specific powers include, but are not limited to, the "full discretionary authority" to:

(b) Determine eligibility of Employees to participate in the Plan.

(f) Construe and interpret the terms of the Plan, including the power to remedy possible ambiguities, inconsistencies or omissions.

(g) Determine the amount of benefits and eligibility for benefits.

(n) Decide all questions concerning the Plan, including making findings of fact. (*Id*. at NGC00347-49.)

      **ANSWER:** Plaintiffs admit the cited provisions appear in Article 4 of Exhibit A to Mr. Kemp's Declaration.

      10.    The Plan Administrator's and the Administrative Committee's discretionary authority is also described in the Component Plan, which provides that the Plan Administrator is "vested with all power and authority necessary or appropriate to administer the Plan on behalf of [Northrop]" and has "full discretionary authority in th[at] capacity." (Kemp. Decl., 2012 Component Plan Document, Exhibit C, at NGC00334.) It also provides that "[t]he Plan Administrator, the administrator, and Corporate Severance Plan Review Committee shall have sole absolute discretion over claims and appeals issue and determinations regardless of the timing of such determination or exercise of such discretion." (*Id.*)

      **ANSWER:** Plaintiff admits that Exhibit C to Mr. Kemp's Declaration at the cited page describes some forms of discretionary authority as quoted above.

      11.    The two-tiered administrative claims procedure required by ERISA is described in the Component Plan. (Kemp Decl., Exhibit A, at NGC00357 ("If a Claimant believes he or she is entitled to benefits under a Component Plan that are not being paid, he or she may file a

6

written claim in accordance with the procedure established under the Component Plan, which shall control for benefits under the Component Plan."); Kemp. Decl. Exhibit C, at NGC00333-34.)

**ANSWER:** Plaintiff admits that Exhibit A to Mr. Kemp's declaration states claims procedures regarding Exhibit C appear in Exhibit C, and that Exhibit C to Mr. Kemp's declaration provides claims procedures.

12. The administrative claims procedure requires employees to submit their claims within 90 days of being terminated or within 90 days after a payment was due. (Kemp Decl. Exhibit C, at NGC00333.). If the claim is denied, the employee is informed in writing of the reasons for the denial. (*Id.*) The employee then has 60 days to file an appeal with the Administrative Committee. (*Id.* at NGC00334.) The Administrative Committee will then meet and render a decision a writing. (*Id.*)

**ANSWER:** Admit.

13. Plaintiffs Alan Carlson and Peter DeLuca were laid off in 2012 as part of a reduction-in-force in Northrop's Technical Services sector. (Dkt. #62, Am. Compl. ¶ 3.)

**ANSWER:** Admit.

14. On August 20, 2017 and August 27, 2017, Carlson and DeLuca submitted their claims for severance benefits to the Plan Administrator. (Declaration of Margaret Collins ("Collins Decl.") ¶ 2.) In both letters, Plaintiffs claimed that Northrop's decision not to provide severance in connection with the reduction-in-force to which they were subject was improper because severance had been offered to other employees in connection with prior lay-offs. (Collins Decl., Claims Letters, Exhibit D, at NGC00003, NGC00245.)

**ANSWER:** Plaintiffs admit that on August 20, 2017 and August 27, 2012, Plaintiffs

7

submitted claims for benefits under the Northrop Grumman Severance Plan. Plaintiffs admit their claim letters cited Northrop Grumman's payment of severance to other employees in the event of layoff. Plaintiffs deny the statement to the extent it states or implies the only reason Northrop Grumman's denial of the severance was improper was because of paying it to other employees. Other than that Plaintiffs submitted a claim on the given dates, none of the remaining statements in paragraph 14 is a "material" fact, because ERISA only requires claim exhaustion rather than issue exhaustion.

15. Plaintiffs' claims were reviewed and denied by Margaret Collins, Corporate Director for Retirement Administration, Compliance and Services, on behalf of the Plan Administrator. (Collins Decl. ¶ 3.) On November 9, 2012, Collins wrote to Plaintiffs and explained that as stated in the Component Plan, a laid-off employee is only eligible for severance benefits if he receives a memorandum from the Vice-President of Human Resources (or his or her designee) designating the employee as eligible.[2] (Collins Decl. ¶ 3; Collins Decl., Claim Denial Letters, Exhibit E, at NGC00249, NGC00022.) Collins contacted both Carlson's and DeLuca's managers and confirmed that neither had received an eligibility memorandum. (Collins Decl., Exhibit E, at NGC00249, NGC00022.)

**ANSWER:** Admit.

16. DeLuca and Carlson appealed the denial of their claims to the Administrative Committee on December 2, 2012 and January 3, 2013, respectively. (Collins Decl. ¶ 4.) Both argued on appeal that the denial of their claims was erroneous because the Plan did not set forth a uniform standard or policy for determining which employees would receive a severance eligibility memorandum. (Collins Decl., Appeals Letters, Exhibit F, at NGC00035, NGC00263.)

**ANSWER:** Plaintiffs admit they timely appealed Northrop Grumman's denials of their

claims. Plaintiffs admit they identified in their appeals that Northrop Grumman used no rule or standard to determine who it gave an eligibility memo after October 2011. Plaintiffs deny that was their only basis for the appeal. Further, Plaintiffs state the reasons given in Plaintiffs' appeals is not a material fact, as ERISA only requires claim exhaustion, not issue exhaustion.

17. The Administrative Committee met on January 31, 2013 to consider Carlson's and DeLuca's claims. (Collins Decl. ¶ 5; Collins Decl., <u>Exhibit G</u>, Committee Meeting Minutes.) At this meeting, the Administrative Committee considered the materials Plaintiffs submitted, as well as two memorandums prepared by Collins. (Collins Decl. ¶ 5.)

**ANSWER:** Admit.

18. Collins's memorandums summarized Plaintiffs' claims, explained the reasons why the claims were initially denied, and recommended that the Administrative Committee deny Plaintiffs' appeals. (Collins Decl., Appeals Memorandums, <u>Exhibit H</u>.) Collins explained that the Plan was designed so that the company, through its Vice-President of Human Resources (or that individual's designee), had discretion to award severance on a "case by case basis." (Collins Decl., <u>Exhibit H</u>, NGC00097, NGC00290.)

**ANSWER:** Plaintiffs admit that Collins' memos offered her summary of Plaintiffs' claims, but deny any characterization of those claims, the documents of which speak for themselves. Plaintiffs admit Margaret Collins recommended the Administrative Committee deny the appeals. Plaintiffs admit that Collins stated the plan was designed to give discretion to award severance on a case-by-case basis, but deny this statement's truth, as exhibits to the Complaint reveal that procedure did not begin until October 2011, despite no amendment to plan language regarding eligibility. (See Ex. 7 to First Amended Complaint, where Margaret Collins wrote that eligibility under the plan changed in October 2011, which was subsequently edited

9

and deleted by plan counsel).

19. The Administrative Committee agreed with Collins that a severance memorandum was required and that Northrop had the discretion to determine which employees would receive such a memorandum. (Collins Decl., Exhibit I, Appeals Denial Letters, NGC00228, NGC00362.) The Administrative Committee also determined that ERISA did not prohibit Northrop from designing the plan so as to require a discretionary eligibility memorandum from management. (*Id.* at NGC00228.) Accordingly, the Administrative Committee voted unanimously to deny Plaintiffs' appeals. (Collins Decl., Exhibit G, at NGC00363.)

**ANSWER:** Plaintiffs admit that the Administrative Committee denied Plaintiffs' appeals for the reasons as stated in NGC00228 and 00362. Plaintiffs deny any characterization of reasons or process not stated in those letters.


By:  /s/ Michael Bartolic  /s/ R. Joseph Barton

Attorneys for the Plaintiffs

Michael Bartolic  R. Joseph Barton
Roberts Bartolic LLP  Cohen Milstein Sellers & Toll PLLC
208 S. LaSalle Street  1100 New York Avenue
Suite 1420  Suite 500
Chicago, Illinois  60603  Washington, D.C.  20005
Tel: 312-635-1600  Tel: 202-408-4600
Fax: 312-635-1601  Fax: 202-408-4699

**CERTIFICATE OF SERVICE**

       The undersigned, an attorney, hereby certifies that on **February 10, 2016**, a copy of the foregoing was served by operation of the Court's electronic filing systems upon the following counsel of record:

Nancy G. Ross
Laura R. Hammargren
Abigail M. Bartine
Samuel M. Myler
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL  60606
T: 312-782-0600
F: 312-701-7711

                                                /s/ Michael Bartolic_____