**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALAN CARLSON and PETER DELUCA**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,**<br><br>**Defendants.** | **Case No. 13-cv-2635**<br><br>**District Court Judge Andrea R. Wood** |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Abigail M. Bartine (No. 6312317)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
LHammargren@mayerbrown.com

*Attorneys for Northrop Grumman
Corporation and Northrop Grumman
Severance Plan*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.      BACKGROUND ................................................................................................... 2

        A.      Plaintiffs' Putative Class Claims ............................................................... 3

        B.      The Northrop Grumman Severance Plan .................................................... 3

        C.      Plaintiffs Have Not Adduced Any Evidence To Support Their Class
                Theory ....................................................................................................... 7

II.     PLAINTIFFS HAVE NOT SATISFIED RULE 23(A) ..................................... 12

        A.      Numerosity ............................................................................................. 12

        B.      Commonality ........................................................................................... 13

        C.      Typicality ............................................................................................... 16

        D.      Adequacy ................................................................................................ 19

III.    CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Am. Nat'l Can Co.*,
170 F.3d 751 (7th Cir. 1999) ...................................................4

*Bell v. PNC Bank, N.A.*,
800 F.3d 360 (7th Cir. 2015) ...................................................2

*Berger v. AXA Network*,
220 F.R.D. 316 (N.D. Ill. 2004)...............................................19

*Buonomo v. Optimum Outcomes, Inc.*,
301 F.R.D. 292 (N.D. Ill. 2014)...............................................17

*Burke v. Local 710 Pension Fund*,
2000 WL 336518 (N.D. Ill. Mar. 28, 2000)............................12

*Gen. Tele. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...................................................................16

*In re Household Int'l Tax Reduction Plan*,
441 F.3d 500 (7th Cir. 2006) ............................................16, 17

*Isbell v. Allstate Ins. Co.*,
418 F.3d 788 (7th Cir. 2005) ...................................................18

*McNab v. Gen. Motors Corp.*,
162 F.3d 959 (7th Cir. 1998) ......................................4, 14, 18

*Noorily v. Thomas & Betts Corp.*,
188 F.3d 153 (3d. Cir. 1999)................................................4, 18

*Parko v. Shell Oil Co.*,
739 F.3d 1083 (7th Cir. 2014) ...........................................15, 18

*Perez v. Personnel Bd. of the City of Chicago*,
690 F. Supp. 670 (N.D.Ill.1988) .............................................12

*Perry v. Sheet Metal Workers Local No. 73 Pension Fund*,
585 F.3d 358 (7th Cir. 2009) ...................................................11

*Robinson v. Sheriff of Cook Cnty.*,
167 F.3d 1155 (7th Cir. 1999) .................................................19

*Roe v. Town of Highland*,
909 F.2d 1097 (7th Cir. 1990) ................................................................13

*Rosen Family Chiropractic, SC v. Chi-Town Pizza on Division Street, Inc.*,
2015 WL 638522 (N.D. Ill. Feb. 13, 2015) ............................................19

*Ruiz v. Stewart Assocs.*,
167 F.R.D. 402 (N.D. Ill. 1996) .............................................................16

*Rupper v. Alliant Energy Cash Balance Pension Plan*,
255 F.R.D. 628 (W.D. Wis. 2009) ..........................................................20

*Spano v. Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ...................................................................8

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ..................................................................16

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ............................................................13, 17

*Swaback v. Am. Info. Tech. Corp.*,
103 F.3d 535 (7th Cir. 1996) ..................................................................17

*Szabo v. Bridgeport Mach., Inc.*,
249 F.3d 672 (7th Cir. 2001) ...............................................................7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).......................................................................... *passim*

**Statutes**

29 U.S.C. § 1002(1) ......................................................................................3

29 U.S.C. § 1132(a)(1)(B) ................................................................3, 17, 19

29 U.S.C. § 1132(a)(3)............................................................................3, 15

29 U.S.C. § 1140................................................................................3, 15, 18, 19

**Other Authorities**

Fed. R. Civ. P. 23(a)(1)..........................................................................12, 13

Fed. R. Civ. P. 23(a)(2)...............................................................................13

Fed. R. Civ. P. 23(a)(3)...............................................................................16

Fed. R. Civ. P. 23(a)(4)...............................................................................19

## INTRODUCTION

Plaintiffs Alan Carlson and Peter DeLuca—former employees of Northrop Grumman ("Northrop") who worked in the same division of Northrop's Technical Services sector in Rolling Meadows, Illinois—allege that Northrop denied them cash severance benefits to which they were entitled under the terms of the Northrop Grumman Severance Plan ("Plan") or, alternatively, discriminated against them by not delivering a memorandum necessary to trigger Plan benefits. They also seek equitable reformation of the Plan to reflect their own view of its eligibility requirements. Plaintiffs have moved to certify a class consisting in relevant part of:

> All persons [1] who worked for Northrop Grumman in the United States, [2] were regularly scheduled to work over 20 hours per week, [3] were laid off from Northrop Grumman from January 1, 2012 and after, . . . [4] did not receive written notification from management or from a Vice President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan and [5] who did not receive the 'Cash Portion' of the severance benefits . . . under the terms of the Plan.

Mem. in Support of Pls.' Mot. (Dkt. 161) ("Mem.") at 7-8.

Plaintiffs' original claims did not include any class allegations. Instead, they were focused squarely on Northrop's specific decision to deny Plaintiffs severance benefits—and in particular on the fact that "a Vice President of Human Resources did not select Plaintiff[s] to receive[] benefits under the Plan." Dkt. 1 ¶ 28. The sweeping class Plaintiffs seek to represent, by contrast, is made up of employees from all over the country, who worked for the company in all manner of sectors, programs, and positions, and who were laid off by different supervisors and at different times. Resolving the putative class members' claims would require the Court to examine scores or even hundreds of severance determinations by managers throughout Northrop, which makes class certification unmanageable and inappropriate.

Hoping to avoid these problems, Plaintiffs try to hypothesize common questions and answers that would justify certifying a class in this case. But they have no evidence to support

these contentions. Indeed, the evidence they do provide actually undercuts their position. Plaintiffs cannot allege their way into a class action. They must establish that this case presents genuinely classable issues in fact. Because they do not do so, the motion for class certification should be denied.

## **ARGUMENT**

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions or law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,' that the prerequisites" of Rule 23 "have been satisfied." *Id*. (citation omitted).

Plaintiffs "bear[] the burden of demonstrating that certification is proper by a preponderance of the evidence." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015). But they do not come close to meeting it. Plaintiffs' claims rest on mere assertions about the way Northrop administered the Plan, which they do not substantiate with evidence. As the following analysis shows, Northrop's Plan entrusted low-level management with significant discretion over whether to designate employees as eligible for severance, particularly in the Technical Services sector during the time of Plaintiffs' employment. The Supreme Court has noted that this scenario—many different decisionmakers exercising localized discretion—is "just the opposite" of what is needed to satisfy Rule 23. *Dukes*, 564 U.S. at 355. Unsurprisingly, Plaintiffs fail to satisfy the prerequisites for class certification under Rule 23(a).

# I.     BACKGROUND

## A.     Plaintiffs' Putative Class Claims

Plaintiffs bring three counts against Northrop on behalf of the putative class. First, Plaintiffs claim that Northrop violated 29 U.S.C. § 1132(a)(1)(B) by denying each member of the class benefits due under the Plan. Dkt. 62 ¶¶ 51-61 (Count I). In the alternative, Plaintiffs claim that Northrop violated 29 U.S.C. § 1140 by not delivering an eligibility memo to class members, thereby interfering with their attainment of a right to severance benefits. *Id*. ¶¶ 62-77 (Count II). Finally, pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs argue for equitable reformation of the Plan to reflect their own view of its terms. *Id*. ¶¶ 78-84 (Count III).

## B.     The Northrop Grumman Severance Plan

Northrop employs tens of thousands of individuals at numerous sites across the United States. From 2012–2016, Northrop divided itself into four different business segments, or "sectors": the Technical Services sector, the Aerospace Systems sector, the Electronic Systems sector, and the Information Systems sector.[1] Sectors are further divided into divisions, and divisions into programs. [2]

Northrop established the Plan, which is an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), to govern the payment of severance benefits throughout the company. The Plan expressly provides that an employee is considered "eligible" for severance benefits only if they

---

[1] Effective as of January 1, 2016, the Company restructured itself from four sectors into three: Aerospace Systems, Mission Systems, and Technology Services.

[2] Plaintiffs were laid off from Northrop in August 2012 as part of a reduction-in-force affecting the program they worked on in the Integrated Logistics and Modernization Division ("ILMD"), a division in the Technical Services sector. Dkt. 62 ¶¶ 2-3.

work in the United States, work over 20 hours a week, and "meet *all* of the following conditions"

(emphasis added):

> You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit.
>
> You must remain employed in your current position until you are laid off by management. You must actually be laid off by the Company. If, before your layoff date, you voluntarily quit, retire, are terminated for cause, or transfer to another position within the Company, you will not receive benefits under this Plan.
>
> You must sign and timely return a Confidential Separation Agreement and General Release that will include, among other things, a release of any and all claims that you may have against the Company.

Ex. A at 3 (2012 Plan); *see also id.* ("The fact that you received this document does not

necessarily mean that you are eligible; you must also have received a cover memo, signed by a

Vice President of Human Resources (or his/her designee), with this document addressed to you

individually by name."); Ex. M at 2 (same for 2010 Plan).[3]

The Plan's memo requirement gives business managers discretion to decide whether to

award severance to employees, allowing managers to designate the employee as eligible at the

time of layoffs or not. This is perfectly permissible under ERISA. Under the rules governing

employee welfare benefit plans, an employer is entitled to design a plan any way it likes,

"provided it is willing to pay the cost." *McNab v. Gen. Motors Corp.*, 162 F.3d 959, 962 (7th Cir.

1998); *see also Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 757 (7th Cir. 1999). Put another way,

ERISA "[u]nquestionably . . . permits corporations to create welfare plans that give their

managers wide discretion." *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 160 (3d. Cir. 1999).

---

[3] Citations to lettered exhibits refer to the corresponding pages in the exhibits to the Declaration of R. Joseph Barton in Support of Plaintiffs' Motion for Class Certification (Dkt. 162).

The terms of the Plan repeatedly make clear that only employees who receive a memo are eligible for severance.

Exercising the discretion conferred by the Plan, certain sectors within Northrop have historically offered severance to their employees effectively as a matter of course. The Aerospace Systems sector, for example, determined that any employees that were laid off from the sector should receive severance. Deposition of Michael Penkert, Hammargren Decl. Ex. 1 ("Penkert Dep."), at 49:5-14, 50:8-12. In accordance with that determination and the terms of the Plan, whenever the Aerospace Systems sector announced layoffs, Human Resources (HR) would deliver a memo to employees, satisfying the Plan's eligibility requirement. *Id.* at 67:13-70:8.

Other sectors took a more case-by-case approach. For instance, the Technical Services sector, in which Plaintiffs worked, was comprised of groups that previously had been located in other Northrop sectors or acquired companies. Penkert Dep. at 54:16-19. These groups had relatively low profit margins, and as a result managers tended to be more cognizant of the financial implications of severance. *Id.* at 200:8-201:5. Initially, the divisions and programs in Technical Services followed each group's "legacy" approach to severance—i.e., the practice that the group followed before it joined Technical Services—so that some groups gave severance, others did not, and those that did awarded it at varying levels. *Id.* at 82:6-83:10, 84:5-20, 85:24-86:4. In late 2011, Technical Services leadership formalized this program-by-program approach and established a consistent schedule for severance pay when awarded. Sector leadership also asked business managers to "opt-in" to awarding severance—if management deemed it appropriate to give severance to employees in a particular instance, management was to submit an authorization form reflecting that determination. *Id.* at 54:11-55:17, 71:12-75:21. Technical Services stopped requiring management to opt-in in 2014. *Id.* at 53:18-54:6.

Notwithstanding the evolution of this process, at no time did the Technical Services sector treat employees as eligible for severance if an employee had not received a memo designating them as eligible. Whenever a decision was made to initiate layoffs in the Technical Services sector, the appropriate manager would inform HR whether the laid-off employees should be designated as eligible for severance. If the manager indicated that employees should be designated, HR would provide the employees with the memo, thereby satisfying one of the eligibility requirements under the Plan. Penkert Dep. at 72:8-73:3. If the manager decided not to provide severance, HR would simply provide the employees with a reduction-in-force letter. *Id*. at 72:25-73:3.

Regardless of what practices a specific sector, division, or program adopted for awarding severance, then, Northrop's interpretation of the Plan remained exactly the same. The Plan's express eligibility requirements—including the requirement that an employee receive an individual memo from a vice president of HR—governed whether a particular employee was entitled to receive benefits. Some employees received a memo based on their sector's determination that all employees (assuming they satisfied the Plan's other eligibility criteria) should get severance benefits; others received a memo only if management first determined that severance benefits were appropriate for employees in that particular division or program under the circumstances; and still others did not receive a memo because management concluded that severance should not be paid in that instance. But only employees who *did* receive a memo were eligible for benefits under the Plan. *See* Penkert Dep. at 50:8-12 (all Aerospace Systems employees are entitled to receive severance "[a]s long as employees meet . . . the eligibility requirement[s] under the plan"), 58:18-59:15 (regarding Technical Services, "[t]he severance plan document has always determined the eligibility for the severance plan").

In sum, Northrop always has treated the memo as the Plan specifically provides: as a condition of eligibility for severance benefits. Different sectors took different approaches concerning whether to give the memo to terminated employees. And even within the same sector, these approaches could change over time. But the notion that Northrop ignored the memo requirement, treated it as a mere "notification," or automatically gave a memo to all employees potentially eligible for severance is incorrect.

### C.   Plaintiffs Have Not Adduced Any Evidence To Support Their Class Theory

Plaintiffs' motion for class certification is based on a very different view of the way Northrop administered the Plan. Prior to 2011, Plaintiffs assert, Northrop "treated the language regarding receipt of a Memo to be merely an act of notifying the participant that they would receive severance benefits—not a condition of eligibility." Mem. at 2-3. They further assert that in 2011, Northrop secretly changed its "interpretation" of the Plan so as to deny benefits to employees who did not receive a memo. *Id.* at 1, 4-5. Plaintiffs admit that the meaning and interpretation of the Plan's memo requirement is "[t]he central dispute in this case." *Id.* at 1. And for that reason, "[r]esolution of this dispute is vital to any sensible decision about class certification." *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001). Yet as we demonstrate below, none of the evidence supposedly substantiating Plaintiffs' theory—a theory that is contrary to the express terms of the Plan and to Northrop's consistent practice—in fact supports their position. That dooms their motion for class certification.

This Court previously determined that allegations that "Defendants changed their interpretation of the severance plan" in order to deny Plaintiffs benefits, taken as true, raised a "colorable claim for recovery." Dkt. 127 at 6-7. But now this case is past the pleading stage, and the Court can no longer simply assume the truth of the complaint's allegations. Rule 23 demands a "rigorous analysis" to ensure that the prerequisites for class certification are met, and

"[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. Thus, "[i]f some of the determinations required by Rule 23 cannot be made without a look at the facts, then the judge *must* undertake that investigation." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011) (emphasis added); *see also Szabo*, 249 F.3d at 675-76 ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it.").

Here, as even a cursory look at the evidence cited by the Plaintiffs reveals, Plaintiffs do not come close to substantiating the allegations that underlie their motion for class certification. To show that Northrop changed its interpretation of the Plan's requirements in 2011, Plaintiffs principally rely on a 2002 "Guide to Administration" (Ex. E), which they claim proves that previously "Northrop treated the Plan's language regarding receipt of a Memo to be merely an act of notifying the participant that they would receive severance benefits." Mem. at 2-3. But the 15-year-old Guide says no such thing. To begin with, the Guide states that it is "to be used where deemed necessary or appropriate by Sector management when implementing the Plan for an entire sector or business unit." Ex. E at 1. Yet Plaintiffs have not pointed to any evidence that anyone in the Technical Services sector, let alone anyone at Northrop, actually followed the Guide, or that it was indicative of company practice in 2002 or thereafter. And the Guide is clear that "[i]n case of any discrepancy between the terms of this Guide and the Plan document, the terms of the Plan document control." *Id.*

In any event, the passages of the Guide cited by Plaintiffs do not help them. Plaintiffs first note (Mem. at 3) that the Guide states that "Human Resources should provide a general notification to employees informing them of their severance benefits." Ex. E at 1. But this

8

sentence does not even reference, much less purport to override, the clear requirement in the Plan that an employee be designated by a VP to be eligible for benefits. Indeed, just below the sentence cited by Plaintiffs, the Guide states that "[t]hose receiving severance *must* be individually notified," which "will require HR to prepare a memo address to each employee with a copy of the Plan's summary plan description attached to it." *Id.* (emphasis added). At most, this document shows that Northrop used the memo both to notify employees of their eligibility *and* to satisfy the Plan's designation requirements—precisely what the Plan itself contemplates. Ex. A at 3 ("You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit.").

In addition, Plaintiffs quote the Guide's requirement that each sector determine "the cash based formula for their business . . . , obtain Sector President approval and submit to Corporate Compensation for record keeping." Ex. E at 2. But this passage merely instructs management to document their decisions about *how much* severance to offer to eligible employees. It does not refer to the memo or designation requirement, and it has nothing to do with how Northrop purportedly interpreted the eligibility requirements of the Plan.

Plaintiffs also rely on Form 5500s filed with the Department of Labor (Ex. F) in support of their "changed interpretation" theory. Mem. at 3. They assert that these Forms, which disclosed to the Department of Labor the number of employees "participating" in the Plan, somehow indicate that Northrop treated employees as entitled to severance even though they had not received a memo. Plaintiffs seem to think that the disclosure in the Form 5500 is an admission that all employees—some 60,000-plus of them—listed as Plan participants on the Forms were eligible for Plan benefits even if they did not meet the Plan's express eligibility criteria. But that is neither what the Form 5500 says nor what the terms of the Plan provide.

9

Instead, as Northrop explained in its interrogatory response (quoted out of context by Plaintiffs), the employees listed on the Form 5500 were "included as *potentially* eligible for benefits." Ex. F at 3 (emphasis added). And regardless, the Form 5500 says nothing about Northrop's changing "interpretation" of the Plan's eligibility requirements before or after 2011.[4]

Finally, Plaintiffs cite a slew of documents related to Northrop's "harmonization" efforts in the Technical Services sector. Mem. at 4-5. They are of no help either. The documents show only that, as discussed above, in late 2011 the Technical Services sector decided to formalize its program-by-program approach and consolidate what were varied payment schedules for severance benefits in that sector into one unified schedule. *See* Penkert Dep. at 148:15-149:3. These efforts do not reflect a company-wide change in policy. Nor, more importantly, do they have anything to do with a changed "interpretation" of the Plan. The harmonization process only concerned what level of benefits Technical Services employees would receive *if* they were eligible under the Plan. Harmonization did not alter the criteria an employee had to satisfy to be eligible for severance benefits in the first place. *See id*. at 58:18-59:15 ("[t]he severance plan document has always determined the eligibility for the severance plan").

Not only do the sources Plaintiffs cite fail to support their "changed interpretation" theory, but many affirmatively *undermine* the contention that employees were automatically

---

[4] Plaintiffs similarly misrepresent deposition testimony about the meaning of the codes in Northrop's HR database. Mem. at 3. That database contained a code for each employee, known as a "BPC Code," that was assigned when the employee joined the company. One of those designations—"SEV"—likewise indicated that the employee was *potentially* eligible to participate in the severance plan if her or she was laid off and met all of the eligibility criteria set forth in the Plan. *See* Penkert Dep. 39:2-18 ("The BPC code, as it connects to the 5500, shows that participants are potentially—can potentially participate in the severance plan."); 182:22-183:4 (SEV code means the employee "would be eligible for medical continuation under the severance plan . . . [a]nd, of course, eligibility also is defined back in the severance plan document"); 207:19-208:9 (similar). Northrop generated its Form 5500 numbers by tallying the number of active employees with a "SEV" designation in the database. *Id*. at 172:3-173:7.

entitled to severance benefits even if they did not receive a memo. For instance, Exhibit N, quoted by Plaintiffs for the proposition that "all employees laid-off on a program should receive severance or none should" (Mem. at 5) also states that "[s]everance *does not have to be provided on a program*" and that "[e]mployees are *only eligible* to receive severance *if they receive a memo* . . . at the time of layoff." Ex. N at 1 (emphasis added). Likewise, although Plaintiffs paraphrase testimony from Northrop's 30(b)(6) deponent to assert that during this period the memo "served, at most, three purposes" (Mem. at 4), they ignore the portion of the transcript that immediately follows, in which the deponent stresses that he "just want[ed] to make sure it was clear that it's *not just an administrative way of communicating it* and for us—HR—to take care of the payment" and that the memo "*effectively makes* the employee eligible." Penkert Dep. at 126:23-127:20 (emphasis added).

Northrop's 30(b)(6) deponent testified that to the best of his knowledge Northrop has *never* paid severance to someone who did not receive a memo, and "[i]f it was paid and they did not receive the severance eligibility letter, then it would have been a mistake and outside the plan." Penkert Dep. at 219:2-19. Even assuming that Plaintiffs had evidence that some employees received cash severance without first receiving a memo, moreover, their argument would still founder. As the Seventh Circuit has held, "[i]t is possible . . . that a fund might erroneously award benefits to a participant, but that would not mean that it was bound to repeat its error with others who came along." *Perry v. Sheet Metal Workers Local No. 73 Pension Fund*, 585 F.3d 358, 364 (7th Cir. 2009) (citing *McNab*, 162 F.3d at 961). Plaintiffs' argument that their purported receipt of Plan medical benefits "must" mean that they are "also . . . eligible for cash benefits" should be rejected for similar reasons. Mem. at 2. Even if Plaintiffs did receive

medical benefits despite not being eligible for them under the Plan, that windfall does not somehow mean that Plaintiffs must be treated as eligible for cash benefits too.

In short, Plaintiffs offer nothing to support the notion that in 2011, or at any other time, Northrop stopped treating the memo requirement as "administrative" and started treating it as a condition of eligibility for cash severance benefits. The supposed policy change upon which Plaintiffs' base much of their class certification motion simply did not exist.

## II.      **PLAINTIFFS HAVE NOT SATISFIED RULE 23(A)**

Plaintiffs ask to certify a class on three different claims. They throw out a barrage of arguments and cases in support of certification, and the result is something of a jumble. But especially after Plaintiffs' misconception about the eligibility memo is stripped away, it is apparent that there is no basis for class proceedings in this case. Indeed, Plaintiffs do not satisfy any of the Rule 23(a) prerequisites for certification.

### A.      **Numerosity**

As an initial matter, Rule 23(a)(1) requires Plaintiffs to show that the class is so numerous that joinder of all members is impracticable. Plaintiffs claim to have satisfied the numerosity requirement because information provided by Northrop in response to an interrogatory shows that 751 Northrop employees (across all sectors) were involuntarily terminated between January 2012 and July 2016 and did not receive cash severance benefits. Mem. at 8-9. But a plaintiff "cannot satisfy the numerosity requirement without showing that some other person besides himself is similarly situated." *Burke v. Local 710 Pension Fund*, 2000 WL 336518, at *2 (N.D. Ill. Mar. 28, 2000) (citing *Perez v. Personnel Bd. of the City of Chicago*, 690 F. Supp. 670, 673 (N.D.Ill.1988)). And Plaintiffs were not similarly situated to the other 751 employees. Under the Plan, whether a given employee received severance depended on multiple factors that differ from employee to employee: the employee's sector, division, and

program; whether and how the employee's manager exercised their discretion to designate the employee; whether the employee signed a release form; and so forth.

At bottom, Plaintiffs merely speculate that because 751 employees did not receive severance from 2012 to 2016, and because Plaintiffs did not receive severance either, all of the employees must not have received severance benefits for the same reason as the Plaintiffs. But "mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)" *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990).

### B.   Commonality

Even if Plaintiffs could show numerosity, they could not satisfy the other Rule 23(a) factors. Rule 23(a)(2) requires Plaintiffs to show there are questions of law or fact common to the class. Yet their putative class has nothing meaningful in common besides the mere fact that they did not receive severance. "Commonality demands more than a showing that the class members 'have all suffered a violation of the same provision of law' at the hands of the same defendant." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350). "The critical point is the need for *conduct* common to members of the class. Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . , no common answers are likely to be found." *Id.* at 756 (citation omitted).

Here, Plaintiffs have not even established how many of the putative class members did not receive severance solely because they did not receive a memo. There are many other reasons under the Plan why a U.S. employee who worked 20 hours or more per week might not get severance benefits. For example, the Plan did not entitle an employee to severance if they did not "return a separation agreement" or had been "laid off and then rehired fairly quickly." Penkert Dep. at 208:4-209:5.

13

There is not commonality even for those employees for whom the memo was determinative. Northrop has chosen to delegate discretion to sectors, divisions, and programs concerning whether and when to designate employees as eligible for severance. *See, e.g.*, Ex. A at 2 ("This is a Severance Plan that is being offered to selected employees"); Ex. E at 1 (describing "severance benefits . . . for use in the discretion of Sector management"); Ex. N at 1 (stating that "[s]everance does not have to be provided on a program."). The whole point of such a system, as the Seventh Circuit has remarked, is to foster "flexible administration": in a "large corporation" like Northrop, "different managers at different plants (even different managers as the same plant) are *bound* to" reach different decisions about whether to award severance to employees. *McNab*, 162 F.3d at 962 (emphasis added). Such flexible administration is fatal to commonality, because it is impossible to make classwide judgments covering employees laid off in different sectors at different times and by different managers.

Indeed, there are not common questions even within the particular sector or division where Plaintiffs worked. 200 of the 751 individuals in the putative class were employed in the Technical Services sector and were terminated or involuntarily laid off in 2012. Ex. F at 4. The need for an individualized inquiry is particularly apparent for these employees, because for much of the class period, business managers in Technical Servicers had to make "case-by-case" determinations as to whether to award severance every time a layoff was announced. Penkert Dep. at 72:4-16. Yet Plaintiffs do not suggest how many of these employees were laid off from the same division or program or at the same time as Plaintiffs. And they offer no reason to think that the questions underlying their own "case-by-case" determination would be common for the other 200 putative class members.

14

As the Supreme Court has noted in the context of employment discrimination claims, a policy of "*allowing discretion* by local supervisors . . . is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Dukes*, 564 U.S. at 355. Given the discretion vested in individual managers and the number of reasons why class members might not have received severance, Plaintiffs cannot possibly show that every member of the putative class was denied benefits for the same reason. And if they cannot make that very basic showing, their motion for certification must fail.

Against this, Plaintiffs argue that Northrop's supposed failure to disclose its interpretation of the Plan's eligibility terms in 2011 is common to both their claims for wrongful denial under benefits under § 502(a)(1)(B) and their claims for equitable reformation under § 1132(a)(3). Mem. at 10-11. As the Seventh Circuit has held, however, a court should not certify a class based on "[m]ere *assertion*" about "issues vital to certification," for in that case "[c]ertification would be virtually automatic." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Northrop has already shown that Plaintiffs' allegations are a fiction. Plaintiffs have *no evidence* of any changed interpretation; Northrop has at all times followed the unambiguous criteria in the Plan.

As to Plaintiffs' wrongful interference claim under § 1140, Plaintiffs argue that there is a common question based on "Northrop's decision to withhold a Memo from Plaintiffs and the Class." Mem. at 10. This decision, they say, was a "uniform" action that "interfered with [the Class's] rights to obtain cash severance." *Id*. at 10. That is doubly wrong. First, the premise of the argument is false. Although Plaintiffs' assert that "the class consists of participants who were all eligible for severance but did not receive a Memo" (*id*.), the record is clear that employees who did not receive a memo were *not eligible*, consistent with the express terms of the Plan.

Even setting that aside, Northrop's decision to withhold a Memo was anything but "uniform," for the reasons explained above.

### C. Typicality

Rule 23(a)(3) requires Plaintiffs to show that their claims or defenses are typical of the claims or defenses of the class. As the Supreme Court has noted, typicality and commonality "tend to merge" in practice. *Dukes*, 564 U.S. at 349 n.5 (citing *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). It is therefore expected that Plaintiffs fail to show typicality as well.

Plaintiffs' claims that Northrop wrongfully denied them a memo are inextricably bound up with facts particular only to Plaintiffs: what sector and program they worked in, when they were laid off, why they did not receive a memo, and so forth. Indeed, many members of the class were denied benefits for reasons that had nothing to do with the memo in the first place. *See* Penkert Dep. at 208:4-209:5. "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Ruiz v. Stewart Assocs.*, 167 F.R.D. 402, 405 (N.D. Ill. 1996). Here, because each putative class members' claim necessarily depends on decisions that "varied from person to person," it cannot be said that "as goes the claim of [Plaintiffs], so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).[5]

---

[5] Typicality is not satisfied here for another reason, as well. Although Plaintiffs claim that they exhausted their remedies under the Plan, a named plaintiff's satisfaction of the duty to exhaust does not automatically satisfy putative class members' duty to exhaust. The Seventh Circuit has held that class members' duty to exhaust is excused only where "the complaint or subsequent filings adequately identify the class members' claims and demonstrate that they are indeed *very similar* to those of the named plaintiff." *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 501-02 (7th Cir. 2006) (emphasis added). Plaintiffs' claims are far from "similar" for the reasons we have explained. And Plaintiffs' assertion that exhaustion would be "futile," Mem. at 16 n.6, should be rejected. Given the many reasons why severance might be denied to an employee, exhaustion plainly would serve the purposes of the doctrine here. *See Household Int'l*, 441 F.3d

16

Plaintiffs' specific contentions fair no better. As to Count I, the § 1132(a)(1)(B) claim, Plaintiffs argue that their claims are typical because all of the class members' claims "rest[], in part, on whether Defendants violated the law of contract . . . by preventing a condition precedent from occurring by withholding memos from a VP of HR." Mem. at 12. But again, certification requires more than a showing that the class "'have all suffered a violation of the same provision of law' at the hands of the same defendant." *Suchanek*, 764 F.3d at 755. A claim is typical only if it "'arises from the same event or practice or course of conduct that that gives rise to the claims of other class members and . . . [is] based on the same legal theory.'" *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 296-97 (N.D. Ill. 2014). And Plaintiffs have not shown a uniform "practice" or "course of conduct" because, as explained above, different sectors, divisions, and programs applied different standards at different times in deciding whether to give employees a memo.

Not only that, but the supposedly typical "legal theory" (*id*.) on which Plaintiffs rely is itself deficient. Plaintiffs' condition-precedent theory is based on *Swaback v. American Information Technologies Corp.*, 103 F.3d 535 (7th Cir. 1996), which is totally inapposite. *See* Mem. at 12-13. *Swaback* states that an employee can maintain an ERISA action under § 1132(a)(1)(B) if an employer makes a misrepresentation to deter the employee "from *electing* retirement benefits *to which they were entitled*." *Swaback*, 103 F.3d at 542 (emphasis added). But Plaintiffs here were not entitled to cash severance benefits. Nor did Northrop make any misrepresentations to deter Plaintiffs—or any other putative class members—from electing benefits. Plaintiffs seem to believe that *Swaback* means that whenever an employer has

---

at 501 (exhaustion "furthers the goals of minimizing the number of frivolous law suits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for claim settlement . . .  and enables the compilation of a complete record").

discretion to award or not award a welfare benefit, ERISA *requires* the employer to award the benefit or else be liable for "preventing a condition precedent from occurring." Mem. at 12. Nothing in *Swaback* suggests that where, as here, a Plan gives discretion to an employer to select which employees will receive severance pay, the employer must award severance in every case. That proposition is squarely contradicted by cases like *McNab* and *Noorily*. *See McNab*, 162 F.3d at 962; *Noorily*, 188 F.3d at 160. As *McNab* holds, "[t]here's nothing wrong under ERISA with a system that gives plan administrators discretion." *McNab*, 162 F.3d at 962.

As to both the § 1140 claim and the equitable reformation claim, Plaintiffs argue that their claims are typical of the putative class because "the Complaint specifically alleges that Northrop changed its interpretation of the Plan in October 2011" "to make a group of employees ineligible for benefits." Mem. at 13-14; *see also id.* at 15 (reformation claims are "based on Northrop's failure to disclose the changed interpretation of the Plan as required under ERISA"). Those are just different ways of restating the same unsupported—and unsupportable—allegation about how Northrop treated the memo requirement in the Plan. As we have shown, Northrop did not change its "interpretation" in 2011. Once more, Plaintiffs' "mere *assertion*[*s*]" are not enough to satisfy Rule 23. *Parko*, 739 F.3d at 1085.

Furthermore, a § 1140 claim requires the plaintiff to prove, among other things, that the defendant acted with a "prohibited intent to retaliate or to prevent the use of benefits." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (internal quotation marks omitted). But because the Plan expressly leaves discretion to decentralized managers to decide which employees will be eligible for severance, Plaintiffs have not—and cannot—show that the class of employees they seek to represent were even denied severance for the same reasons—let alone that those denials uniformly reflect the "prohibited intent" required by § 1140. *Id.*

### D. **Adequacy**

Finally, Rule 23(a)(4) requires Plaintiffs to show that they will fairly and adequately protect the interests of the class. Just as the commonality and typicality analyses "tend to merge" with each other, so too do both of these analyses "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349 n.5; *see also Rosen Family Chiropractic, SC v. Chi-Town Pizza on Division Street, Inc.*, 2015 WL 638522, at *3 (N.D. Ill. Feb. 13, 2015) ("the atypicality of a representative's claim impairs his ability to represent the class"). Once again, therefore, the fact that Plaintiffs' claims are highly particularized and dependent on individual factors undermines the necessary showing.

What is more, as one of the cases that Plaintiffs use to try to show commonality recognizes, "[t]he strength or weakness of a plaintiff's claims weighs in the Rule 23(a)(4) analysis of adequacy of representation." *Berger v. AXA Network*, 220 F.R.D. 316, 317-18 (N.D. Ill. 2004) (cited by Mem. at 11). "[I]f when class certification is sought it is already apparent . . . that the class representative's claim is extremely weak, that is an independent reason to doubt the adequacy of his representation." *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999). Plaintiffs have utterly failed to substantiate what they themselves call "[t]he central dispute in this case." Mem. at 1. And their § 1132(a)(1)(B) claim apparently rests on a misinterpretation of *Swaback*. As a result, there is good reason to think that they are not well-suited to protect the interests of absent class members in the unlikely event that the other Rule 23(a) prerequisites were met.

Not only that, but Plaintiffs admit they know almost nothing about employees outside their program or division, and certainly outside their sector. Mr. DeLuca testified that the Technical Services sector was "pretty isolated" and he had "very little communication" with

other programs and did not know what they were told with respect to benefits. Deposition of Peter DeLuca, Hammargren Decl. Ex 2 ("DeLuca Dep."), at 12:16-13:7. Indeed, the "only facility" that Mr. DeLuca had "any knowledge of" was Rolling Meadows. *Id.* at 71:6-20; *see also id.* at 21:22-22:1 (no idea how other programs or divisions handled terminations). Likewise, Mr. Carlson testified that he was "not sure" what benefits were offered to sectors outside his own. Deposition of Alan Carlson, Hammargren Decl. Ex. 3 ("Carlson Dep."), at 20:11-19.

Plaintiffs' knowledge as to HR's decision whether to provide the memo to putative class members—the "central dispute" in the case (Mem. at 1)—is similarly deficient. Mr. DeLuca testified that he had "no knowledge" whether the employees in his program that received severance had also received a memo, and he said his understanding was that "everybody got" the memo simply because he "didn't know anybody who didn't get it." DeLuca Dep. at 24:19-25:1, 43:6-14. Likewise, Mr. Carlson testified that he had "no knowledge" of "anyone that was laid off who received severance but did not also receive a memorandum." Carlson Dep. at 31:17-32:22. Indeed, Mr. Carlson's knowledge of how the Technical Services sector approached severance decisions appears to be based solely on his own termination and that of *three* other people laid off over a five-year period. *Id.*

It may be true that in disputes concerning the "complex computation requirements" for calculating pension benefits, a class representative need not show extensive "familiarity with the case" or "exercise much independent judgment". *Rupper v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 636 (W.D. Wis. 2009) (cited by Mem. at 17). But there is nothing "complex" about most of the facts in this case. If Plaintiffs by their own admission do not know anything about how severance benefits were administered for the vast majority of the putative

class, or whether or why putative class members did not receive a memo, they cannot be considered adequate representatives for the absent members' claims.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny the motion for class certification.

Date:  February 10, 2017                    Respectfully submitted,

                                            /s/ Nancy G. Ross
                                            Nancy G. Ross (No. 6190243)
                                            NRoss@mayerbrown.com
                                            Laura Hammargren (No. 6310920)
                                            LHammargren@mayerbrown.com
                                            Abigail M. Bartine (No. 6312317)
                                            ABartine@mayerbrown.com
                                            MAYER BROWN LLP
                                            71 South Wacker Drive
                                            Chicago, IL 60606
                                            Telephone: 312.782.0600
                                            Facsimile: 312.701.7711

                                            *Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on February 10, 2017.

/s/  Nancy G. Ross
Nancy G. Ross

22