IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON & PETER DELUCA<br><br>                Plaintiffs,<br><br>     v.<br><br>NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,<br><br>                Defendants. | Case No. 13-cv-2635<br><br>District Court Judge Andrea R. Wood |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON STANDARD OF REVIEW**

As Defendants' opening brief demonstrated, the Wrap Plan[1] unambiguously gives the Plan Administrator "full discretionary power" to administer the Plan, which includes, among other things, the power to "determine eligibility of Employees to participate in the Plan"; "construe and interpret the terms of the Plan, including the power to remedy possible ambiguities, inconsistencies or omissions"; and "determine the amount of benefits and eligibility for benefits." Dkt. 171 § 4.08. This sort of language, the Seventh Circuit has repeatedly held, is "surely sufficient" to trigger arbitrary-and-capricious review of the Administrator's decisions. *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 990 (7th Cir. 2005) (plan provided "discretionary authority to determine . . . eligibility for benefits and to interpret the terms and provisions of the policy"); *see also, e.g.*, *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 448 (7th Cir. 2009); *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005).

---

[1] Terms not defined in the text have the meaning given to them in Defendants' opening brief in support of their motion for summary judgment on the standard of review, Dkt. 169 ("Br.").

1

The Wrap Plan expressly incorporates the Component Plan "as [it] may be modified from time to time." Dkt. 171 § 1.02. The Component Plan in turn states that it "serves as *part of* the official Plan document" and is "considered a component plan *under*" the Wrap Plan. Dkt. 166-5 at 9 (emphases added). Further, as Plaintiffs themselves concede, "[t]he component plan document summarily provides ***the same thing***" as § 4.08 of the Wrap Plan "by stating: 'The administrator is vested with all power and authority necessary or appropriate to administer the Plan on behalf of the Plan Administrator, and he has full discretionary authority in this capacity.'" Opp. at 3 (citing Dkt. 166-5 at 8) (emphasis added).

Hoping to overcome this straightforward conclusion, Plaintiffs turn cartwheels arguing that the Component Plan's grant of discretion is somehow less expansive than the grant of discretion in the Wrap Plan. Plaintiffs further argue that to the extent the Component Plan does not speak to the question, the clear grant of authority in the Wrap Plan does not apply. Each of these premises is wrong. The Wrap Plan and the Component Plan easily can—and should—be read in harmony to grant the Administrator discretionary authority to determine eligibility for benefits and construe the terms of the Plan. Even assuming that the Component Plan were silent on the question, moreover, the clear grant of authority in the Wrap Plan still must be given effect. Summary judgment on the standard of review is therefore warranted.

I. **The Plan Documents Unambiguously Provide Discretionary Authority.**

Plaintiffs do not deny that "often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999). In particular, courts routinely read "wrap" and "component" plans together because wrap plans "provide[] the governing structure of the overall Plan and describe[] the general procedures for determining participation, funding, administration, and claims under each individual welfare program to be established by the employer." *Admin.*

2

*Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007).[2] In holding that a wrap plan formed part of the operative plan documents, *Gamboa* cited the Seventh Circuit's decision in *Health Cost Controls*. *Id*. Yet tellingly, Plaintiffs fail even to mention either case in their response.

Plaintiffs instead argue that the clear grant of discretion in the Wrap Plan does not apply to the Component Plan for three reasons. First, the Component Plan supposedly fails to give the Plan Administrator interpretive authority over its terms. Opp. at 9-10. Second, reading the Wrap Plan to grant such authority would make parts of the Component Plan superfluous. *Id*. at 11-12. Third, construing the Wrap Plan to provide interpretive authority over the Component Plan would somehow violate 29 U.S.C. § 1022. *Id*. at 12-13. None of these arguments have any merit.

### A. There is no inconsistency between the Component Plan and the Wrap Plan.

Plaintiffs first contrast § 4.08(f) of the Wrap Plan, which specifies that the Plan Administrator's authority extends to interpreting Plan terms, with the Component Plan, which supposedly "omits" this power. Opp. at 11. But this purported contrast is completely illusory. When interpreting an ERISA plan, "related documents must be read together." *Bland v. Fiatallis North America, Inc.*, 401 F. 3d 779, 784 (7th Cir. 2005). The Wrap Plan gives the Administrator or her designee "the *full discretionary power* to administer the Plan." Dkt. 171 § 4.08 (emphasis added). Equivalently, the Component Plan refers to "*full discretionary authority*" "necessary or appropriate to administer the Plan." Dkt. 166-5 at 8 (emphasis added).

Plaintiffs' attempts to show that the Component Plan deliberately omits interpretive authority twist both the Plan's language and the law. Plaintiffs argue that the Component Plan

---

[2] See also, e.g., *Shaw v. Prudential Ins. Co. of Am.*, 566 F. App'x 536, 539 (8th Cir. 2014) (applying wrap plan's "unambiguous[]" "discretion-granting language"); *Admin. Comm. of the Wal-Mart Assocs.' Health and Welfare Plan v. Willard*, 393 F.3d 1119, 1120, 1122 (10th Cir. 2004) (court properly applied abuse-of-discretion standard where the wrap plan "vest[ed] complete discretion in the Plan Administrators to interpret the provisions of the plan").

"provides a list and excludes discretion." Opp. at 10. But the Component Plan does not provide any "list" at all. To the contrary, "[w]hen the component plan document referenced what type of discretionary authority the Plan Administrator possessed," it simply "provided discretionary authority to administer the plan." *Id*.; *see also* Dkt. 166-5 at 8. Section 4.08 of the Wrap Plan in turn makes it clear that this "full discretionary authority" includes, among other things, the authority to interpret the Plan's terms. Dkt. 171 § 4.08(f).[3]

Thus, this case is nothing like the cases Plaintiffs cite in support of their tangled interpretation. For example, *Michigan Citizens for an Independent Press v. Thornburgh*, 868 F.2d 1285 (D.C. Cir. 1989) (cited by Opp. at 8), suggests as an example of the so-called "*expressio unius*" canon that where "Congress ban[s] the importation of apples, oranges, and bananas from a particular country," the choice to list three specific fruits "might well indicate that Congress did not intend to ban the importation of grapefruits." *Id*. at 1293 (emphasis omitted). That does not remotely support the proposition that when one document offers a non-exclusive list to illustrate a concept ("full discretionary power"), and another document referred to and incorporated by the first uses nearly identical language ("full discretionary authority") to refer to the same concept, a court should construe the two documents differently.

Even if the *expressio unius* canon somehow did apply here, moreover, it would not control. As the Seventh Circuit often has warned, "[n]ot every silence is pregnant; *expressio unius* . . . is therefore an uncertain guide." *Illinois Dep't of Public Aid v. Schweiker*, 707 F.2d

---

[3] Plaintiffs also stress that the Component Plan provides that "[t]he Plan Administrator, the administrator, and Corporate Severance Plan Review Committee shall have sole absolute discretion over claims and appeals issue[s]." Dkt. 166-5 at 9. They think it significant that the Component Plan singles out discretion "over claims and appeals issues" but not over interpretive questions. But the provision in question appears under the heading "Claims and Appeals Procedures." *Id*. at 8. It is not surprising that the Component Plan would single out discretion over the claims and appeals process in a section focused on that particular subject.

273, 277 (7th Cir. 1983); *see also Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 308 (7th Cir. 1996) ("Though its Latin phrasing lends it an authoritative ring, the maxim *expressio unius* . . . is at best an aid in interpretation, not a hard-and-fast rule"). Because the Wrap Plan "provides the governing structure of the overall Plan," *Gamboa*, 479 F.3d at 542, and because the Wrap Plan and Component Plan expressly reference and incorporate each other, woodenly applying the *expressio unius* canon here would run directly counter to the command that "related documents must be read together." *Bland*, 401 F. 3d at 784.[4]

Plaintiffs additionally emphasize that the Component Plan "states [that] it contains all terms regarding that plan's benefits . . . and was adopted *after* the 'wrap plan' document." Opp. at 9. As Defendants have already explained, however, "the Component Plan's statement 'there are no other Plan documents that govern [participants'] benefits'" is both fully consistent with the Wrap Plan's provision that "[t]he specific severance benefits provided under the Plan are described in the Component Plans" and irrelevant to whether the Plan Administrator has authority to *interpret* those documents. Br. at 13. Plaintiffs do not address either point.

Plaintiffs' observation about the timing of the Component Plan's adoption also suffers from two fundamental flaws. First, the Wrap Plan expressly provides that "all of the terms and provisions of each of the Component Plans, *as the same may be modified from time to time*," shall be incorporated into the Wrap Plan "as if they were fully set forth herein." Dkt. 171 § 1.02

---

[4] Plaintiffs' argument suffers from another defect as well. The drafters of the Wrap Plan very clearly knew how to indicate when the Component Plan would set forth specific terms and when those terms could be inferred from the Wrap Plan. The Wrap Plan provides that "[*e*]*xcept as specified in the Component Plan*, the Company shall have plenary authority at any time and in any manner to amend this document and any other documents adopted pursuant to the Plan." Dkt. 171 § 6.01 (emphasis added). It also provides that "the procedure established under the Component Plan . . . *shall control claims* for benefits under the Component Plan." *Id*. § 7.01 (emphasis added). It would have been easy for the Wrap Plan to have specified that only the Component Plan's language on Plan Administrator discretion should control. But the Wrap Plan pointedly makes no such statement.

5

(emphasis added). Second, and in any event, the operative version of the Component Plan uses identical discretion-granting language as the version in effect at the time the Wrap Plan was adopted.[5] Accordingly, there is no basis for concluding that the later-enacted Component Plan "controls" over the grant of authority in the Wrap Plan. Opp. at 10.

To be sure, there are slight differences between the two documents. For example, under the heading "Plan Identifying Information," the operative version of the Component Plan states that it "is considered a component plan *under*" the Wrap Plan and "serves as *part of* the official Plan document and is the summary plan description for the Plan." Dkt. 166-5 at 9 (emphases added). By contrast, the prior version does not mention the Wrap Plan and does not state that it is "part of" any other document. Dkt. 172 at 8. Yet these differences only reinforce the basic point: the Component Plan incorporates and must be read together with the Wrap Plan.

### B. Supposedly superfluous language is not a reason to prefer Plaintiffs' reading.

Next, Plaintiffs argue that Defendants' reading "would render the list of discretionary authority in the component plan document superfluous." Opp. at 11. But as the Seventh Circuit has recognized, "superfluity . . . is common" "in legal discourse generally." *Union Cnty. v. MERSCORP, Inc.*, 735 F.3d 730, 733 (7th Cir. 2013). Here especially, there is a very good reason why the Component Plan should contain some superfluous provisions: it functions as a summary plan description ("SPD"). Dkt. 171 § 2.05; Dkt. 166-5 at 9. As the name indicates, the purpose of an SPD is to *summarize* the underlying plan documents—"to communicate to beneficiaries the essential information about the plan." *Curtiss-Wright Corp. v. Schoonenjongen*, 514 U.S. 73, 83 (1995); *see also* Dkt. 166-5 at 2 ("This document describes . . . general

---

[5] Both versions state that "[t]he Plan Administrator, the administrator, and Corporate Severance Plan Review Committee shall have sole absolute discretion over claims and appeals issue[s] and determinations," and that "[t]he administrator is vested with all power and authority necessary or appropriate to administer the Plan on behalf of the Plan Administrator, and he has full discretionary authority in this capacity." Dkt. 177-2 at 8; Dkt. 172 at 8.

information about the Plan."). So it is completely expected that the SPD would reiterate certain aspects enumerated elsewhere in more detail.

In any event, "the canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute" and has no application where "no interpretation . . . avoids excess language." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011). A court may disregard the canon where the proponent's own preferred interpretation "produces an overlap not unlike the one it purports to avoid." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253-54 (1994). And Plaintiffs' desired reading—under which "all the listed discretionary authority in the wrap plan document" applies only to the Wrap Plan and not to the Component Plan (Opp. at 11)—would itself nullify large swathes of the Wrap Plan. For example, although the Wrap Plan gives the Plan Administrator authority to "[d]etermine eligibility of Employees to participate in the Plan" and "[d]etermine the amount of benefits and eligibility for benefits," Dkt. 171 § 4.08(b), (g), the Wrap Plan does not itself address Plan eligibility or benefits. Instead, consistent with the clause incorporating the terms of the Component Plan, the Wrap Plan provides that "[t]he specific terms of a Component Plan, including, but not limited to the eligibility, participation, and benefits provisions, are as specified in the summary plan description for that Component Plan." Dkt. 171 § 2.05. The only way to give meaning to § 4.08(b) and (g) is to construe the grant of authority in the Wrap Plan to apply to terms set forth in the Component Plan as well. But what is true of § 4.08(b) and (g) is equally true of § 4.08(f), the clause granting interpretive discretion.

### C. Defendants' reading does not violate 29 U.S.C. § 1022.

Finally, Plaintiffs argue (Opp. at 12-13) that giving effect to the plain language of the Wrap Plan would in some way violate ERISA's command that an SPD be "sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and

7

obligations under the plan." 29 U.S.C. § 1022(a). Their assertion (Opp. at 13) that "[t]he deliberate omission of discretionary authority to interpret the terms of the plan in the summary plan description . . . would violate § 1022" fails for multiple reasons.

First, it is not true that the Wrap Plans or Component Plans have "deliberately omitted" anything. Far from it. The Component Plan describes the Plan Administrator's full discretionary power to administer the Plan and sole absolute discretion over claims and appeals, and it points to the Wrap Plan and vice versa. *Cf. Raybourne*, 576 F.3d at 449 ("the discretion described in [the] SPD does not exist in a vacuum"). Even setting that aside, 29 U.S.C. § 1022(b) specifies what an SPD must contain, and conferral of discretionary authority is not on that list. *See Orlando v. United of Omaha Life Ins. Co.*, 2008 WL 4874731, at *4 (N.D. Ill. July 29, 2008) ("notice of discretionary authority is not currently demanded in the SPD"); *Lewitzke v. Milwaukee Carpenters' Dist. Council Health Fund*, 2005 WL 1962997, at *26 (E.D. Wis. Aug. 12, 2005) (same).

The cases Plaintiffs cite in support of their position, meanwhile, are all inapposite. *Weitzenkamp v. Unum Life Insurance Co. of America*, 661 F.3d 323 (7th Cir. 2011), holds only that an "administrator's decision under an arbitrary and capricious standard" can be set aside if it is based on an unreasonable interpretation of the plan. *Id.* at 329. It says nothing about how to decide *what* standard of review applies in the first place. *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 572 F.3d 353 (7th Cir. 2009), is not an ERISA case. And *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000), cuts against Plaintiffs, not in favor; it merely cites § 1022(b), which as discussed does not require an SPD to include discretion-granting language.

Finally, *Herzberger v. Standard Insurance Co.*, 205 F.3d 327 (7th Cir. 2000), does not even use the words "summary plan description," much less discuss the SPD requirements in

8

§ 1022. *Herzberger* holds only that a plan can "specify that the administrator has discretion in interpreting or applying it . . . , but the conferral of discretion is not to be assumed." *Id*. at 331. As Defendants have already explained, the Plan documents here clearly meet that test.

## II.     The Wrap Plan Controls In Any Event.

Even assuming that the Component Plan's supposed silence as to interpretive discretion created an inconsistency—it does not—Plaintiffs argument still would fail. "[I]nformation *about* the plan provided by [SPD] disclosures is not itself *part of* the plan." *Cigna Corp. v. Amara*, 563 U.S. 421, 436 (2011). Thus, even where an SPD "contain[s] unambiguous discretion-granting language, that language is not determinative because 'the language of the plan is what controls.'" *Hopkins v. Prudential Ins. Co. of Am.*, 432 F. Supp. 2d 745, 757 (N.D. Ill. 2006) (citing *Health Cost Controls*, 187 F.3d at 711).[6] Multiple courts of appeals have held that a court should apply arbitrary-and-capricious review where the plan contains discretion-granting language but the SPD does not. *See*, e.g., *Tocker v. Philip Morris Co.*, 470 F.3d 481, 489 (2d Cir. 2006) ("The arbitrary and capricious standard of review is warranted where the plan documents provide for discretionary authority, the summary plan description does not contain any conflicting language, and the applicable statutes and regulations do not require that the SPD contain provisions addressing the issue"); *Martin v. Blue Cross & Blue Shield of Virginia, Inc.*, 115 F.3d 1201, 1205 (4th Cir. 1997) (similar); *Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) (similar).

In *Shaw v. Prudential Insurance Co.*, the Eighth Circuit expressly held that the abuse-of-discretion standard applied where (as here) a wrap-plan document "unambiguously" contained "discretion-granting language," notwithstanding the absence of such language in the individual

---

[6] In fact, although here there is no conflict between the plan documents, even where "the plan and the summary plan description" do conflict, "the former governs . . . unless the plan participant . . . has reasonably relied on the summary plan description to his detriment." *Health Cost Controls*, 187 F.3d at 711. Plaintiffs nowhere claim that they relied on the Component Plan's description of Administrator authority to their detriment.

9

policy document at issue. *Shaw*, 566 F. App'x at 539. This case calls for the same result. Indeed, the Seventh Circuit has held in a very similar context that "[i]t is unimportant that one document is captioned 'certificate' and another bears the legend 'policy;' if the discretion-granting language can be on any page of a multi-page plan (and it can), then the fact that this page bears its own caption is irrelevant." *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005).

**III.** **No Genuine Issue of Material Fact Prevents Summary Judgment.**

In the alternative, Plaintiffs argue that they have at least adduced evidence sufficient to create a genuine issue of material fact as to whether the Wrap Plan confers discretion to interpret terms in the Component Plan. Opp. at 13-15. But the meaning of the Plan documents is plain as a matter of law. All of Plaintiffs' arguments fail in the face of the Plan's clear structure and language. Plaintiffs cannot, merely by grouping their deficient arguments together and reiterating them, fashion a genuine issue of material fact out of thin air.

*Ruttenberg v. U.S. Life Insurance Co.*, 413 F.3d 652 (7th Cir. 2005)—on which Plaintiffs rely to support their "conflicting evidence" argument (Opp. at 15)—proves the point. There, "[b]oth the SPD and the plan's terms" were "silent as to U.S. Life's interpretive authority," and all the company could point to was negotiating "boilerplate" that was not even part of "the substance of the contract." *Ruttenberg*, 413 F.3d at 559-60. Here, both the Wrap Plan and the Component Plan/SPD expressly address the Plan Administrator's discretion.

In sum, the Wrap Plan and Component Plan's provision of interpretive authority to the Plan Administrator is unambiguous. For the foregoing reasons, the court should grant summary judgment to Defendants on the applicable standard of review.

Date: March 10, 2017	Respectfully submitted,

*/s/ Nancy G. Ross*
Nancy G. Ross (6190243)
NRoss@mayerbrown.com
Laura Hammargren (6310920)
LHammargren@mayerbrown.com
Abigail M. Bartine (No. 6312317)
abartine@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on March 10, 2017.

*/s/ Nancy G. Ross*
Nancy G. Ross
