**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ALAN CARLSON & PETER DELUCA, individually and on behalf of a class of similarly situated individuals., | ) ) ) ) | **Civil Action No. 13-cv-2635** |

ALAN CARLSON & PETER DELUCA,
individually and on behalf of a class of
similarly situated individuals.,                    )     **Civil Action No. 13-cv-2635**

               Plaintiffs,                    )     **Judge Andrea Wood**

**v.**                    )     **Magistrate Judge Maria Valdez**

NORTHROP GRUMMAN CORPORATION
and the NORTHROP GRUMMAN
SEVERANCE PLAN,

               Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.   THE CLASS ............................................................................................................. 2

II.  THE PLAN ............................................................................................................... 3

III. THE CLAIMS ALLEGED IN THE COMPLAINT ......................................... 6

ARGUMENT ...................................................................................................................... 7

I.   DEFENDANTS IMPROPERLY INVITE A DETERMINATION OF THE MERITS ...... 7

II.  PLAINTIFFS' CLAIMS MEET THE REQUIREMENTS OF RULE 23(a) ................. 8

   A.   Rule 23(a)(1) Is Satisfied .......................................................................... 8

   B.   Each of Plaintiffs' Claims Involve Common Questions ........................... 111

      1.   The ERISA § 502(a)(1)(B) Claim in Count I ...................................... 11

      2.   The ERISA § 510 Claim In Count II Raises Common Questions ............ 14

      3.   The ERISA § 502(a)(3) Claim in Count III Poses Common Questions ........ 15

   C.   Plaintiffs' Claims Are Typical of the Claims of the Class .......................... 16

      1.   Plaintiffs' ERISA § 502(a)(1)(B) Claim Is Typical of the Class Claims ......... 17

      2.   Plaintiffs' ERISA § 510 Claim Is Typical of those of the Class .............. 17

      3.   Plaintiffs' Claim in Count III Is Typical of Other Class Members ............ 18

      4.   Defendants' Purported Affirmative Defense Against Absentee Class Members For Failure to Exhaust Does Not Defeat Typicality .............................. 19

   D.   Plaintiffs Are Adequate Representatives of the Class ................................ 21

III. DEFENDANTS HAVE WAIVED ANY ARGUMENT ABOUT RULE 23(b) .......... 25

CONCLUSION .................................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alioto v. Town of Lisbon*,
    651 F.3d 715 (7th Cir. 2011) .................................................................25

*Ames v. Am. Nat'l Can Co.*,
    170 F.3d 751 (7th Cir. 1999) ...................................................................7

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
    133 S. Ct. 1184 (2013).........................................................................8, 22

*Bell v. PNC Bank*,
    800 F.3d 360 (7th Cir. 2015) ...........................................8, 13, 15, 16

*Berger v. AXA Network, LLC*,
    220 F.R.D. 316 (N.D. Ill. 2004).......................................10, 18, 22

*Buonomo v. Opticum Outcomes, Inc.*,
    301 F.R.D. 292 (N.D. Ill. 2014).......................................11, 16, 17

*Burke v. Local 710 Pension Fund*,
    98C3723, 2000 WL 336518 (N.D. Ill. Mar. 28, 2000) ........................10

*Carlson v. Northrop Grumman Corp.*,
    196 F. Supp. 3d 830 (N.D. Ill. 2016) .......................................12, 13, 23

*Carlson v. Northrop Grumman Corp.*,
    2014 WL 1299000 (N.D. Ill. Mar. 31, 2014).........................6, 13, 14, 23

*Cavin v. Home Loan Ctr., Inc.*,
    236 F.R.D. 387 (N.D. Ill. 2006).......................................................22

*Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*,
    797 F.3d 426 (7th Cir. 2015) .................................................................13

*Chi. Truck Drivers v. El Paso Co.*,
    525 F.3d 591 (7th Cir. 2008) .................................................................23

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011)...............................................................................19

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*,
    657 F.2d 890 (7th Cir. 1981) .................................................................24

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989).............................................................................................12

*G & S Holdings LLC v. Cont'l Cas. Co.*,
    697 F.3d 534 (7th Cir. 2012) .............................................................................25

*In re Household Int'l Tax Reduction Plan*,
    441 F.3d 500 (7th Cir. 2006) .............................................................................20

*Hubbard v. M.R.S. Associates, Inc.*,
    1:05-CV-0218-DFH-TAB, 2008 WL 5384294 (S.D. Ind. Dec. 19, 2008)...........24

*Isbell v. Allstate Ins. Co.*,
    418 F.3d 788 (7th Cir. 2005) ................................................................7, 17, 18

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    702 F.3d 364 (7th Cir. 2012) .............................................................................11

*Kleen Prods. LLC v. Int'l Paper Co.*,
    831 F.3d 919 (7th Cir. 2016) ........................................................................8, 25

*Lacy v. Dart*,
    14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) ....................................20

*Lessard v. Applied Risk Mgt.*,
    307 F.3d 1020 (9th Cir. 2002) ...........................................................................18

*Lewis v. Washington*,
    197 F.R.D. 611 (N.D. Ill. 2000)...........................................................................25

*Mansfield v. Air Line Pilots Ass'n Int'l*,
    06 C 6869, 2007 WL 2048664 (N.D. Ill. July 9, 2007)......................................25

*McFadden ex rel. McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*,
    05 C 0760, 2008 WL 4877150 (N.D. Ill. Aug. 8, 2008).....................................10

*McNab v. Gen. Motors Corp.*,
    162 F.3d 959 (7th Cir. 1998) ...............................................................................7

*Mezyk v. U.S. Bank Pension Plan*,
    3:09-CV-384-JPG, 2011 WL 601653 (S.D. Ill. Feb. 11, 2011)............................12

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011)...........................................................................24

*Noorily v. Thomas & Betts Corp.*,
    188 F.3d 153 (3d Cir. 1999).................................................................................7

iii

*Osberg v. Foot Locker, Inc.*,
    07-CV-1358 (KBF), 2014 WL 5800501 (S.D.N.Y. Nov. 7, 2014) ........................................19

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) .........................................................................................10, 15

*Perez v. Personnel Bd. of City of Chicago*,
    690 F. Supp. 670 (N.D. Ill. 1988) ..........................................................................................10

*Perry v. Sheet Metal Workers' Loc. No. 73 Pension Fund*,
    585 F.3d 358 (7th Cir. 2009) ....................................................................................................7

*RLJCS Enters., Inc. v. Prof. Ben. Trust Multiple Employer Welfare Ben. Plan & Trust*,
    487 F.3d 494 (7th Cir. 2007) ..................................................................................................23

*Robinson v. Sheriff of Cook Cnty.*,
    167 F.3d 1155 (7th Cir. 1999) ................................................................................................22

*Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Division Street*,
    No. 11 C 6753, 2015 WL 638522 (N.D. Ill. Feb. 13, 2015)...................................................22

*Ruiz v. Stewart Assocs., Inc.*,
    167 F.R.D. 402 (N.D. Ill. 1996)..............................................................................................17

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    255 F.R.D. 628 (W.D. Wis. 2009) ..........................................................................................23

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    572 F. Supp. 2d 1063 (W.D. Wis. 2008) ...............................................................................20

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    726 F.3d 936 (7th Cir. 2013) ..................................................................................................23

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
    12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ........................................................10

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ....................................................................................................7

*Scott v. Fam. Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ..................................................................................................13

*Simpson v. Safeguard Props., LLC*,
    13 CV 2453, 2015 WL 2193135 (N.D. Ill. May 7, 2015) ......................................................10

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ............................................................................................11, 16

iv

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ...........................................................................16, 19

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ...........................................................................11, 16

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966)...............................................................................................24

*Swaback v. Am. Info. Tech. Corp.*,
103 F.3d 535 (7th Cir. 1996) ................................................................................17

*Szabo v. Bridgeport Machs., Inc.*,
249 F.3d 672 (7th Cir. 2001) ..................................................................................7

*Thomas v. SmithKline Beecham Corp.*,
201 F.R.D. 386 (E.D. Pa. 2001)............................................................................21

*Tolle v. Carroll Touch, Inc.*,
977 F.2d 1129 (7th Cir. 1992) ..............................................................................14

*Tolleson v. Kraft Foods Glob., Inc.*,
16-CV-2055, 2016 WL 4439951 (N.D. Ill. Aug. 23, 2016) ................................20

*Vallone v. CNA Fin. Corp.*,
76 F. Supp. 2d 864 (N.D. Ill. 1999) ......................................................................21

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...........................................................................................11, 13

*Williams v. Rohm & Haas Pension Plan*,
4:04CV0078-SEB-WGH, 2009 WL 382628 (S.D. Ind. Feb. 11, 2009) ................21

*Young v. Verizon's Bell A. Cash Balance Plan*,
615 F.3d 808 (7th Cir. 2010) ................................................................................23

**Statutes**

ERISA § 102, 29 U.S.C. § 1022 ....................................................................................3

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ..................................................................3

ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) ..........................................6, 11, 12, 17

ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3) .......................................................15, 18, 19

ERISA § 510, 29 U.S.C. §1140 ........................................................................... *passim*

Fed. R. Civ. P. Rule 23 ......................................................................................... *passim*

<u>Index of Exhibits</u>

Exhibit CC:     Excerpts from the Rule 30(b)(6) Deposition of the Northrop Grumman Severance
                Plan

Exhibit DD:     Excerpts from the Deposition of Alan Carlson

Exhibit EE:     Excerpts from the Deposition of Peter DeLuca

Exhibit FF:     December 30, 2016 Letter from Laura Hammargren to Michael Bartolic Re:
                Carlson v. Northrop Grumman Corp., No. 13-cv-2635 (N.D. Ill.) – Data
                Production

Exhibit GG:     Chart of Technical Services and Information Systems

## INTRODUCTION

Plaintiffs' motion for class certification seeks to certify three ERISA claims. In support of their motion, Plaintiffs cited numerous ERISA cases predominately from this Circuit and explained why their claims were suitable for class certification in light of that caselaw. To support those arguments, Plaintiffs set forth more than sufficient evidence in the case to date that established that the elements of Rule 23 were met.

In their opposition, Defendants ignore nearly all of Plaintiffs' cases as well as most of Plaintiffs' evidence addressing Rule 23. Instead, Defendants improperly invite this Court to deny class certification based on Defendants' arguments about the ultimate merits of the claims. Not only is this improper and contrary to both the law in this Circuit and the Supreme Court, but this Court (by two different judges) has already determined on two separate motions to dismiss that Plaintiffs' Complaint (which attached the terms of the Plan and other relevant documents) sufficiently alleged valid claims under ERISA. Defendants' arguments on the merits here merely regurgitate the same twice-rejected arguments and recycle the same twice-distinguished cases.

Unlike Plaintiffs' motion which thoroughly analyzed the case law and explained why each of the claims and the evidence relevant to each of the elements under Rule 23 supported class certification, Defendants only purport to address the requirements of Rule 23(a). Once their improper arguments about their merits are removed, Defendants' arguments do not address and cannot refute that the class is more than sufficiently numerous, each of the claims present common issues, Plaintiffs' claims are typical of the class and Plaintiffs are more than adequate representatives. Any arguments about Rule 23(b) are not only waived, but these claims are ideally suited for class certification. As such, Plaintiffs' motion should be granted.

# BACKGROUND

## I.     THE CLASS

Defendants attempt to characterize the class as "sweeping" and invoke the fact that Northrop employs "tens of thousands" across the United States. Def. Mem. at 1, 3. At the same time, Defendant contests that the class is sufficiently numerous that joinder would be impracticable. *Id.* at 12-13. In response to Interrogatory No. 16, Defendants identified just 751 employees who (1) "worked 20 hours or more per week," and (2) "were part of an involuntary layoff or reduction in force," and (3) for whom "the Company's databases do not reflect that they received an offer of cash severance or a cash severance payment from the time period of January 1, 2012 through July 31, 2016" and also (4) were identified on the Plan's Form 5500. Barton Decl. Ex. F at No 16.[*] This is a near perfect match for the Class, which is similarly defined to include employees who (1) were working over 20 hours per week at Northrop in the United States, (2) were laid off on or after January 1, 2012, (3) failed to receive a "memo", and (4) failed to receive the Cash Portion of the severance benefits. Dkt. No. 160 ⁋ 1; Dkt No. 161 ("Pl. Mem.") at 7-8.[†] The Class is defined to include those laid-off employees who met all of the requirements for severance – other than receipt of a memo – and exclude persons who were specifically exempted from coverage under the terms of the Plan. *Compare id. with* Barton Decl. A at NGC6972. In other words, the Class consists of Northrop employees who met all of the other eligibility requirements for severance except that they did not receive a memo. *See id.*

---

[*]     In the HR database, "the BPC code would show that person as being a participant [in the severance plan] as defined in the Form 5500. Rule 30(b)(6) Dep. (Ex. CC) at 38:24-39:3; 39:19-40:1. There is a BPC code and a Severance code in the HR database. *Id.* at 98:1-8. The BPC Code and severance code indicates for which health benefits an employee is eligible and whether the person will receive continued health benefits under the severance plan. *Id.* at 98:9-99-13.

[†]     The Class also includes these employees' beneficiaries. *Id.*

## II.   THE PLAN

Even though the central issues concern whether Defendants could permissibly withhold a memo and severance from persons otherwise eligible – and not why they did so – Defendants attempt to portray the individual decisions not to provide a memo as relevant to Count I. Def. Mem. at 7. Defendants claim that the Plan provides discretion for individual managers to decide whether to provide severance, but they point to no such provision in the Plan. Def. Mem. at 6. No such provision in the Plan exists. *See* Barton Decl. Ex. A. The eligibility provisions of the Plan have been identical since at least 2010. Rule 30(b)(6) Dep. at 60:16-18, 93:18-93:3.

To the extent that Northrop administered the plan based on some unwritten practice, Defendants provide no explanation as to how that would be consistent with ERISA § 402(a)(1) (requiring the terms of the plan to be in writing) or ERISA § 102 (setting forth requirements about contained in and disclosed to participants in the summary plan description). Even if that decision-making was relevant, decisions about which groups would receive severance was made by the senior leadership team for each sector. Rule 30(b)(6) Dep. at 47:6-17. The senior leadership team is the group of people who report to the president of each sector. *Id.*; *see also id.* at 48:10-16, 49:3-22.

Even though the eligibility requirements in the Plan were the same across the company, according to the Plan's witness, "all sectors would follow the severance plan document for [health] benefits continuation," but whether cash would be received is decided at the sector level. *Id.* at 110:16-23. There is no available documentation about the decision was made as to which employees in which sectors or divisions would receive severance. *Id.* at 94:1-12, 111:23-112:20, 114:1-116:24. According to the Plan's witness, prior to 2008, the senior leadership teams for all sectors but Technical Services had decided that all employees in those sectors who met the

3

eligibility requirements for severance would receive severance. *Id.* at 50:8-17, 52:9-22.[‡] In those sectors – i.e. where there has already been a decision to provide severance to all employees otherwise eligible -- there is no further decision-making about whether someone should receive a memo. *Id.* at 69:17-70: 7. Nonetheless, Defendants identified persons in those sectors among the 751 who were otherwise eligible, but did not receive a memo. Barton Decl. Ex. F at No. 16. According to the Plan's witness, beginning in October 2011 and until February 2014, "a decision was made that TS [Technical Services], which has very low margins in their business" would offer a "high-level" of benefits, but not everyone would receive severance. Rule 30(b)(6) Dep. at 54:10-17; *see also id.* 50:18-25, 53:18-23. But the Plan did not maintain records whereby one could definitively discern whether a particular division within TS would receive severance. *Id.* at 75-77. 94:1-4; 94:8-12. For employees whose sector (or division) had decided to pay cash severance, they would still be eligible for severance without receipt of a memo. *Id.* at 129:2-22.

Defendants criticize Plaintiffs Carlson and DeLuca for having little information about the administration of the Plan. Def. Mem. at 19-20. But no cover letter informing employees of their eligibility to be participants in the severance plan was ever delivered at the beginning of employees' employment (as provided in the plan). Only once they had been identified as someone who was going to be terminated. Rule 30(b)(6) Dep. at 65:25-66:6; 66:22-67:12, 122:16-22. There was no set of criteria by which an employee could know whether he or she would be entitled to severance if he or she was laid off. *Id.* at 80:18-22. And the SPD itself did not inform an individual employee whether he was a participant in the Plan. *Id.* at 78:16-25. Nor was anything provided to an employee advising him/her that *not eligible* for severance. *Id.* at

---

[‡]    Northrop is currently divided into three sectors: Aerospace Systems (AS), Mission Systems (MS) and Technology Services (TS), plus two support organizations. Rule 30(b)(6) Dep. at 17:20-18:3.

203:13-17. No documents were provided to participants that receipt of a memo was a necessary pre-condition to receive severance benefits. *Id.* at 191:12-24, 193:25-199:1; 201:6-10. Nor were employees told that financial considerations played a role in whether a program within Technical Services was going to provide severance benefits. *Id.* at 200:8-15.

Despite the purported important role that Defendants now claim that the memo serves, neither Northrop nor the Plan had any systematic method of keeping track of whether memos were actually provided to employees eligible for severance. *Id.* at 125:7-126:7. As a result of Defendants' lack of record-keeping, there is no way to verify whether benefits were paid based on a memo or an eligibility memo was sent to or received by the employee who received severance. *Id.* at 221:18-222:3. The Plan's witness testified that the memo served three purposes: (1) to notify employees that they are eligible for severance; (2) to make sure that employees have a copy of the severance plan document; and (3) to trigger payment by the payroll department. *Id.* at 126:23-127:8. Consistent with Plaintiffs' claims, the memo served an administrative function.

In filings with the Department of Labor that the Plan was required to make every year (known as the Form 5500), Defendants did disclose the number of participants in the Severance Plan. Barton Decl. Ex. BB.[§] The data used for the Form 5500 came from Northrop's HR database and "the BPC code would show that person as being a participant [in the severance plan] as defined in the Form 5500." Rule 30(b)(6) Dep. at 38:24-39:3; 39:19-40:1; *see also id.* at 173:13-17; 174:16-19. Anyone with a BPC Code listed with a SEV or PJS code was identified as a participant on the Form 5500. *Id.* at 186:1-5. Consistent with the disclosures made by the Form 5500, since at least 2011, all employees with that benefit program code who have been laid off

---

[§] Oddly, no participants were identified on the Form 5500 as receiving benefits. *E.g.* Ex. 8 at line 6-B; The Plan's witness could not explain why. 186:24-187:3.

have received continued health benefits. *Id.* at 100:20-101:4.[**] Despite Defendants' attempt to characterize the provision of these benefits as merely a mistake, the length of time for which health benefits continued for laid-off employees varied, but were provided consistent with the length of time rules set forth in the plan document – i.e. the length of time for which health benefits continued was based on the amount of time at the company. *Id.* at 110:8-15; 111:6-12. In other words, all sectors of Northrop "follow[ed] the severance plan document for [health] benefits continuation," but simply did not do so for cash benefits even though the eligibility requirements were the same. *Id.* at 110:16-23.

## III.    THE CLAIMS ALLEGED IN THE COMPLAINT

Count I is an ERISA § 502(a)(1)(B) claim, which is essentially a contract claim, that seeks a determination of Plaintiffs' rights to benefits under the terms of the Plan. Dkt. No. 62 ("Compl.") ¶¶ 51-61. While Defendants have repeatedly taken the position in this litigation that receipt of a memo is a basic qualification, Plaintiffs have contended that the proper interpretation of the Plan is the memo's "distribution is actually an administrative action and is not an essential element of eligibility." *Carlson v. Northrop Grumman Corp.*, 2014 WL 1299000, *3 (N.D. Ill. Mar. 31, 2014). Resolving that question "depends on the interpretation of the Plan's terms a contract." *Id.* Count II alleges that Nothrop violated ERISA § 510 by interfering with the right of Plaintiffs and the Class to receive severance benefits by failing to deliver the memo. Compl. ¶¶ 62-77. Plaintiffs have adduced evidence both documentary and testimony that these decisions were motivated by financial concerns and the costs to pay benefits to employees in less lucrative sectors. *Supra* Background II; *infra* Argument II.C.2. Finally, Count III alleges that Northrop

---

[**]    Despite Defendants characterizing that as a mistake, Northrop has had a method since at least 2013 to stop the payments, but they have continued to pay continued health benefits for those otherwise eligible for severance. *Id.* at 101:5-16.

failed to make material disclosures in breach of its fiduciary obligations concerning the eligibility requirements and its changed interpretation and administration and accordingly the Plan should be reformed. Compl. ¶¶ 78-84. These claims of material non-disclosures are plan-wide and Northrop has identified no evidence that there were any contrary, individual disclosures to any member of the Class. As a result, these claims are ideally suited for class certification and Plaintiffs have more than sufficiently demonstrated that the requirements of Rule 23 are met.

**ARGUMENT**

**I.      DEFENDANTS IMPROPERLY INVITE A DETERMINATION OF THE MERITS**

Defendants explicitly invite this Court to evaluate the evidence that underlies Plaintiffs' claims. Def. Mem. at 7-12. In addition to expending 5 pages of their opposition addressing the merits of Plaintiffs' claims, Defendants' primary arguments on commonality and typicality attack either the legal or factual basis of Plaintiffs' claims instead of whether those claims meet the requirements of Rule 23. *Id.* at 15, 17-18. That their arguments seek improper resolution of the merit is illustrated by their citation to decisions on the merits, not class certification. *See id.*[††]

Defendants suggest that *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001) permits a court to consider the merits and base its determination on whether to certify the class on the strength of the merits of the case. Def. Mem. at 7. This is simply wrong:

> Although we concluded in *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir. 2001), that a court may take a peek at the merits before certifying a class,

---

[††]      *E.g.*, *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751 (7th Cir. 1999) (affirming *Ames v. Am. Nat'l Can Co.*, 96 C 8276, 1997 WL 733893, at *1 (N.D. Ill. Nov. 7, 1997) (summary judgment)); *Isbell v. Allstate Ins. Co.,* 418 F.3d 788 (7th Cir. 2005) (summary judgment); *McNab v. Gen. Motors Corp.*, 162 F.3d 959 (7th Cir. 1998) (affirming *McNab v. Gen. Motors Corp.*, 987 F. Supp. 1115 (S.D. Ind. 1997) (summary judgment)); *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153 (3d Cir. 1999) (decision after bench trial); *Perry v. Sheet Metal Workers' Loc. No. 73 Pension Fund*, 585 F.3d 358 (7th Cir. 2009) (summary judgment).

> *Szabo* insisted that this peek be limited to those aspects of the merits that affect the decisions essential under Rule 23.

*Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). The Seventh Circuit has emphasized numerous times that the "rule is that a court may not resolve merits questions at the class certification stage." *Bell v. PNC Bank*, 800 F.3d 360, 376 (7th Cir. 2015); *see Kleen Prods. LLC v. Int'l Paper Co*., 831 F.3d 919, 931 (7th Cir. 2016) ("[T]he fact that class certification decisions must be supported by evidence does not mean that certification is possible only for a party who can demonstrate that it will win on the merits."). And the Supreme Court expressly rejected arguments to the contrary: "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013). Thus, Defendants 5-page diatribe presenting their view of the facts on the merits, most of their arguments purportedly addressed on commonality and nearly all of their arguments on typicality should be ignored as requesting an improper assessment of the merits (as they are not addressed to whether the requirements of Rule 23 are met).

## II.     PLAINTIFFS' CLAIMS MEET THE REQUIREMENTS OF RULE 23(a)

### A.     Rule 23(a)(1) Is Satisfied

Defendants do not contest that a class of at least 25 and certainly more than 40 persons satisfy Rule 23(a)(1) based on numbers alone. *See* Pl. Mem. at 8-9. Nor do Defendants dispute that Plaintiffs do not need to state "the exact number" and may rely on an approximate size and "common sense." *Id.* at 9. Based on Defendants' own interrogatory response, Plaintiffs' provided an estimate of 751 persons, which more than sufficed to satisfy Rule 23(a)(1) based on numbers alone. *Id.* at 9 (citing Barton Decl. Ex. F at No. 16).  Defendants seem to acknowledge that the

class as defined comprises "hundreds" of terminated employees. Def. Mem. at 1. But, Defendants vaguely suggest that not all of the 751 may have a valid claim. *Id.* at 12-13. [‡‡]

Unquestionably, the numbers provided in response to Interrogatory No. 16 match the class definition. The Class, defined using the following objective criteria, include employees who (1) were working over 20 hours per week at Northrop in the United States, (2) were laid off on or after January 1, 2012, (3) failed to receive a "memo," and (4) failed to receive the Cash Portion of the severance benefits. ECF No. 160 ⁋ 1; Pl. Mem. at 7-8. Defendants' response to Interrogatory No. 16 explicitly represents that the 751 employees are those (1) who "worked 20 hours or more per week," (2) who "were part of an involuntary layoff or reduction in force," (3) for whom "the Company's databases do not reflect that they received an offer of cash severance or a cash severance payment from the time period of January 1, 2012 through July 31, 2016" and also (4) were identified on the Plan's Form 5500. Barton Decl. Ex. F at No 16. In other words, this is a near perfect match to the Class definition.[§§]

Defendants suggest that there could be many reasons that a particular employee was not provided severance. Def. Mem. at 12-13. But the factors that they identify are not relevant to this lawsuit. *See id.* The Class is composed of employees who did not receive a memo, but met all

---

[‡‡] The Plan's Rule 30(b)(6) Representative suggested that the 751 may include persons who did not return a release agreement. Rule 30(b)(6) Dep. at 208-209. But that explanation makes no sense as a proposed release was only provided to the employee if and when he or she received the memo. Rule 30(b)(6) Dep. at 42:21-43:11; 65:10-18.

[§§] The only persons who may be included in the 751 without a valid claim are those employees who were transferred to another position in the company and are therefore ineligible for severance. Barton Decl. Ex. A at NGC06972. As Defendants did not produce the underlying class data for the 751 until Friday, January 30, 2016 – just two business days before Plaintiffs' class certification was due – Plaintiffs' counsel did not have a chance to analyze the data prior to filing their motion. *See* Siegel Decl. at 2. Even if *all rehires* -- not just ones who may be hired to a new position prior to their layoff date – were excluded, that would only exclude 8 people. Siegel Decl. ⁋ 2.

other conditions for severance. *Supra* Bkgd. To the extent that Defendants suggest that some evaluation of the merits of the claims is necessary, Defendants' own Seventh Circuit case holds that this position is simply incorrect:

> To require the district judge to determine whether each of the 150 members of the class has sustained an injury … would make the class certification process unworkable; the process would require, in this case, 150 trials before the class could be certified. The defendants are thus asking us to put the cart before the horse. How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.

*Parko v. Shell Oil Co.,* 739 F.3d 1083, 1084–85 (7th Cir. 2014) (finding Rule 23(a)(1) met).[***] In a case where defendant's data identified 100 potential members, another court concluded Rule 23(a)(1) was satisfied "[e]ven if it eventually proves true that some persons … do not fit the class member definition, or that [no class member has a claim]." *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, 12 C 3671, 2012 WL 6106714, at *3 (N.D. Ill. Dec. 6, 2012). In an ERISA case cited by Defendants, the court concluded that an estimate of "hundreds" of "affected agents" based solely on "more than 3,000 agent contracts" was sufficient to meet Rule 23(a)(1). *Berger v. AXA Network, LLC*, 220 F.R.D. 316, 317 (N.D. Ill. 2004); *see Simpson v. Safeguard Props., LLC*, 13 CV 2453, 2015 WL 2193135, at *2 (N.D. Ill. May 7, 2015) (engaging in similar analysis); *McFadden ex rel. McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 05 C 0760, 2008 WL 4877150, at *4 (N.D. Ill. Aug. 8, 2008) (same). Here then, Plaintiff's estimate of 751 (which nearly if not exactly matches the class definition) satisfies Rule 23(a)(1).

---

[***] Defendants' other cases involve situations where plaintiffs failed to provide *any evidence* of the size of the class. *Burke v. Local 710 Pension Fund*, 98C3723, 2000 WL 336518, at *2-3 (N.D. Ill. Mar. 28, 2000) (finding requirement of Rule 23(a) was not met where plaintiffs "have failed to adduce evidence as to size of [proposed class]"); *Perez v. Personnel Bd. of City of Chicago*, 690 F. Supp. 670, 673 (N.D. Ill. 1988) (finding requirement of Rule 23(a) was not met where plaintiff failed to "identify any class members").

### B. Each of Plaintiffs' Claims Involve Common Questions

Defendants argue that commonality under Rule 23(a)(2) is not met. Def. Mem. at 13-15.

But to satisfy Rule 23(a)(2) "'[e]ven a single [common] question' will do." *Wal–Mart Stores,*

*Inc. v. Dukes,* 564 U.S. 338, 358 (2011). Defendants' own authority explains that "Rule 23(a)(2)

does not demand that every member of the class have an identical claim.  It is enough that there

be one or more common questions or fact." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir.

2011) (finding commonality met); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759-760 (7th

Cir. 2014) (explaining that 100% commonality is not required). As Defendants' own authority

explains, if "the same evidence will suffice for each member to make a prima facie showing,

then it becomes a common question." *Buonomo v. Opticum Outcomes, Inc.*, 301 F.R.D. 292, 298

(N.D. Ill. 2014). That requirement is readily met here as to each claim.

### 1. The ERISA § 502(a)(1)(B) Claim in Count I

Defendants argue that commonality is lacking for the ERISA § 502(a)(1)(B) claim

because "Northrop has chosen to delegate discretion" as to whether employees are eligible for

severance. Def. Mem. at 14.  In making this argument, Defendants rely on and claim that *Wal-*

*Mart Stores v. Dukes* is factually analogous. *Id.* at 15.  But this misapplies *Dukes*, fails to

understand the standard under ERISA § 502(a)(1)(B) and ignores the facts of this case.

As the Seventh Circuit explained in distinguishing *Dukes* in an ERISA action, "[t]he

objection to certification [in *Walmart*] was that no company-wide policy was being challenged.

The only relevant corporate policies were a policy *forbidding* sex discrimination and the policy

of delegating employment decisions to local managers." *Johnson v. Meriter Health Servs. Emp.*

*Ret. Plan*, 702 F.3d 364, 369 (7th Cir. 2012) (explaining that the *Dukes* claims would have "be

proved case by case"). As in *Johnson*, "[t]hose are not problems in this case." *Id.*

Defendants do not dispute that "[a]n ERISA § 502(a)(1)(B) claim is 'essentially a contract remedy under the terms of the plan.'" Pl. Mem. at 12 (quoting *Larson v. United Healthcare Ins. Co.,* 723 F.3d 905, 911 (7th Cir. 2013)). Nor do they dispute that an ERISA § 502(a)(B) claim is "governed by principles of contract law" which requires "looking to the terms of the plan and other manifestations of the parties' intent." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13 (1989). And "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." Pl. Mem. at 21 (quoting and citing numerous cases), 13 (quoting Northrop email document recognizing the same). This Court explained: "Uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious." *Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 835-36 (N.D. Ill. 2016) (quoting *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 766 (7th Cir.1993) (citing cases). As explained in Plaintiffs' opening brief (which Defendants ignore), precisely because fiduciaries of ERISA plans are required to treat similarly situated participants similarly, courts frequently conclude not merely that such claims are suitable for class certification, but that those claims require *mandatory* certification under Rule 23(b)(1). Pl. Mem. at 20-21 (citing cases); *see Mezyk v. U.S. Bank Pension Plan*, 3:09-CV-384-JPG, 2011 WL 601653, at *9 (S.D. Ill. Feb. 11, 2011) (certifying all counts including an ERISA § 502(a)(1)(B) claim "under Rule 23(b)(1)(A)"). The same is true here.

Defendants suggest that managers might have had different reasons not to provide an employee a memo. Def. Mem. at 14. But, as explained by an internal Northrop email regarding Carlon's claim, the reason why a particular employee – who met the other conditions to receive severance -- did not receive a memo is irrelevant for Count I. *See* Dkt. No. 62-7 ("The

underlying rationale at the sector level for giving or not giving someone a memo doesn't come into play under the terms of the Plan"); *see Carlson*, 196 F. Supp. 3d at 835 ("Defendants argue that employees were not eligible for Plan benefits if they did not receive written notice of inclusion and Plaintiffs admittedly received no such notice."). Plaintiffs' argument is that the memo's "distribution is actually an administrative action and is not an essential element of eligibility." *Carlson*, 2014 WL 1299000, at *3. Plaintiffs and Defendants differ on this basis question. *Id.* ("Defendants counter that receipt of the memo is itself a basic qualification."). Resolving that question "depends on the interpretation of the Plan's terms a contract." *Id.* As the class only includes persons who met the other conditions for severance, but did not receive a memo, resolving that question is common to the class because the answer to that question will resolve an issue central to the claims of all class members.

Even when the decision-making by managers was somehow somewhat relevant, "if a general policy that is enforced at the corporate level rather than by individual supervisors is claimed to be discriminatory, even if some discretion exists, commonality may be found." *Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 440 (7th Cir. 2015) (reversing denial of class certification for lack of commonality). The commonality requirement is satisfied where there is evidence that the denial "came from a broader company policy and not from the discretionary decisions of individual managers." *Bell*, 800 F.3d at 375 (affirming certification and distinguishing situations like *Wal-Mart* where low-level managers used discretion without guidance from an overarching company policy); *Scott v. Fam. Dollar Stores, Inc.,* 733 F.3d 105, 114 (4th Cir. 2013) ("[E]ven cases where the complaint alleges discretion, if there is also an allegation of a company-wide policy of discrimination, the putative class may still satisfy the commonality requirement"). Northrop's own argument about the merits of Count

I is not based on decisions made by any individual manager about an individual employee, but on the "express terms of the Plan." *E.g.*, Def. Mem. at 15 ("[E]mployees who did not receive a memo were *not eligible*" under the "express terms of the Plan."); Dkt. No. 12 at 3 ("Only if the employee received such a memorandum [from a Vice-President of Human Resources] … would they be entitled to benefits of the type and in the amount provided for by the Plan."); Dkt No. 17 at 1 (same); Dkt. No. 100 at 2, 3 (same). The Plan's own witness explained as follows:

> The severance plan document has always determined the eligibility for the severance plan. The decision that was being made locally within each sector was around the severance pay schedule. … Eligibility has always been at the severance plan only.

Rule 30(b)(6) Dep. at 59:2-9; *see id*. ("The eligibility requirements [] are spelled out in the severance plan document."). Here, the central question in Count I is whether Defendants' insistence of a receipt of a memo as a requirement to receive benefits is a proper interpretation of the terms of the Plan. Answering that question – whether affirmatively or negatively – will be determinative of Count I for all members of the Class.

### 2. The ERISA § 510 Claim In Count II Raises Common Questions

Northrop argues that there is no common question for the ERISA § 510 claim in Count II solely because Northrop contends that that "employees who did not receive a memo were *not eligible*" under the "terms of the Plan." Def. Mem. at 15. This ignores that "Section 510 is not aimed at assuring that both sides abide by the written terms of the contract. Rather, this Section is aimed at preventing persons and entities from taking various actions for the purpose of interfering with the participant's ability to collect benefits to which the participant would otherwise be entitled or from taking actions to prevent such a participant from collecting benefits to which he or she may become entitled." *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1139 (7th Cir. 1992). "[F]ailure to deliver the memo could be construed as such an action." *Carlson*, 2014

14

WL 1299000, * 5 (N.D. Ill. Mar. 31, 2014) (denying motion to dismiss). Even though Northrop attempts to portray all decisions as being discretionary, the question whether defendant had a policy or practice that plaintiffs allege violate the law is "a common one capable of class-wide resolution." *Bell*, 800 F.3d at 375. Here, the Plan's Rule 30(b)(6) witness expressly testified that the reason that Technical Services did not provide severance benefits to all employees was for financial reasons. Rule 30(b)(6) Dep. at 54:10017, 200:8-13. Even if testimony about the reasons for at the sector-level is necessary, those decisions were made by senior leadership and not "thousands of managers" as in *Dukes*. *Id.* at 47:6-17. Here, Northrop consistently argues that failure to receive a memo meant denial of severance. *Supra* II.B.1. Thus, the question of whether Northrop's withholding of the memo to employees otherwise eligible for severance in order to save money by not paying cash severance benefits violated ERISA § 510 is a common question.

### 3.    The ERISA § 502(a)(3) Claim in Count III Poses Common Questions

Northrop argues that Count III does involve a single common question solely because it asserts that "Plaintiffs have *no evidence* of any changed interpretation." Def. Mem. at 15.[†††] To support this argument, Northrop selectively cites *Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014), to suggest that the court needs to resolve factual issues related to the merits. *Id.* What the *Parko* court actually explained was that class counsel had to do more than merely assert that there were common issues. *Parko*, 739 F.3d at 1085. Consistent with prior Seventh Circuit decisions, the *Parko* court explained that resolving that question did not require determining the validity of the merits of the claims. *Id.* at 1084-85. Seventh Circuit "case law is clear that such

---

[†††]    Defendants argue that "Northrop has already shown that Plaintiffs' allegations are a fiction" but do not cite to any evidence in support of that assertion. Def. Mem. at 15. By contrast, attached to the original complaint, Plaintiffs attached an internal Northrop email that explained that as a result of "harmonization" in October 2011, now severance was not provided "unless specific approval was granted by the VP/CM and Division Business Manager." Dkt. No. 1-5.

proof [about the merits] is not required, only that it 'is *capable of proof at trial* through evidence that is common to the class rather than individual to its members.'" *Bell*, 800 F.3d at 375.

Defendants' own case found that commonality was met for an ERISA disclosure claim by explaining that "[t]he plan-wide communications about which the [] plaintiffs complain either were or were not misleading." *Spano*, 633 F.3d at 587. The question about whether this disclosure was proper "in light of ERISA's standards is a common one." *Id.* at 589; *see also Suchanek*, 764 F.3d at 758 (finding that whether "packaging was likely to mislead" was a common question). Similarly here, at least the following are common questions on Count III: (1) Did Northrop change its interpretation of the Plan?; (2) Did Northrop adequately disclose that interpretation?; and if not (3) What is the remedy for its failure to adequately disclose? Thus, all of the elements of proof for Count III raise common questions. [‡‡‡]

### C. Plaintiffs' Claims Are Typical of the Claims of the Class

Defendants agree that a claim is typical if "arises from the same event or practice or course of conduct that gives rise to claims of other class members and … are based on the same legal theory." *Compare* Def. Mem. at 17 (quoting *Buonomo*, 301 F.R.D. at 296-297 (finding typicality met for part of class)) *with* Pl. Mem. at 12. Defendants correctly observe that typicality and commonality tend to merge. Def. Mem. at 16. None of Defendants arguments address whether proof of Plaintiffs' claims would not prove the class members' claims, and Defendants instead argue about the merits of Plaintiffs' claims. *Id.* at 16-18.[§§§] For the same reasons that the

---

[‡‡‡]    The Seventh Circuit has recognized that "some misrepresentations might be so central to the operation of a plan that injury … might be inferred." *Spano*, 633 F.3d at 589. As a result, harm may not necessarily be an element of such a claim. *Id.* Even so, the Seventh Circuit has held that not all class members need to be harmed and individual relief does not undermine class certification. *Suchanek*, 764 F.3d at 757-758; *Bell*, 800 F.3d at 379.

[§§§]    Other than *Sprague* (discussed below) only two of Defendants' cases even address typicality. *In Buonomo*, the court denied a motion to strike class allegations, although it

merits cannot be adjudicated in deciding whether common questions exist, Defendants' arguments about the merits of Plaintiffs' claims do not defeat typicality. *Supra* II.B.

### 1. Plaintiffs' ERISA § 502(a)(1)(B) Claim Is Typical of the Class Claims

As to Count I, Defendants again argue that there were "different sectors, divisions and programs," but do not explain how this undermines typicality. Def. Mem. at 17. Defendants appear to recognize that the class consists of employees who met other conditions to receive severance, but did not receive a memo. *Id.* at 1. And they recognize that Count I challenges Defendants' ability to withhold a memo and deny severance. *Id.* at 17. Defendants insist that such a memo is a requirement. *Id.* at 4-6; *supra* II.B.1. They do not contend that any class member would have been otherwise ineligible. *See id.* Instead, they only argue about whether the merits of Plaintiffs' legal theory of this claim is correct. Def. Mem. at 17-18 (discussing *Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535 (7th Cir. 1996)). Not only has this argument been rejected previously, but this is not a valid basis on which to oppose certification.

### 2. Plaintiffs' ERISA § 510 Claim Is Typical of those of the Class

Northrop argues that typicality is not met for Count II because they disagree that it changed its interpretation of the Plan to make receipt a memo a condition precedent to receipt of severance benefits. Def. Mem. at 18. Ignoring all of Plaintiffs' cases, Northrop cites a decision on summary judgment that an ERISA § 510 claim requires a defendant to act with intent to "prevent the use of benefits." Def. Mem. at 18 (citing *Isbell*, 418 F.3d at 796). Defendants, however, do not dispute that a policy – even an unofficial one – to make employees ineligible for

---

narrowed the class to persons who had claims similar to plaintiff. *Buonomo*, 301 F.R.D. at 297. In *Ruiz v. Stewart Assocs., Inc.*, 167 F.R.D. 402 (N.D. Ill. 1996), the court found typicality lacking because the class persons against other credit unions that were not defendants, but not against the current defendant. *Id.* at 405. Defendants do not make any similar argument here.

benefits in order to limit the employer's costs is a violation of ERISA § 510. Pl. Mem. at 13-14 (citing cases); *Lessard v. Applied Risk Mgt.,* 307 F.3d 1020, 1027 (9th Cir. 2002) (finding companies violated ERISA § 510 by taking action to prevent employees from being able to continue to receive benefits). Nor do Defendants refute that a claim challenging the adoption or existence of a policy itself satisfies typicality for an ERISA § 510 claim. Pl. Mem. at 14 (citing cases finding typicality met for ERISA § 510 claim). Even if it was proper to consider the merits, the *Allstate* defendant offered evidence supporting a legitimate nondiscriminatory reason. *Isbell*, 418 F.3d at 796. In this case, Plaintiff has set forth evidence that Northrop in 2011 enacted or began implementing a policy regarding the memo that denied benefits to employees of the Technical Services Sector for financial reasons. Pl. Mem. at 4 (citing internal documents). The Plan's witness conceded that decisions about severance in Technical Services were for financial reasons. Rule 30(b)(6) Dep. at 200:14-15. Nothrop has offered no argument, let alone evidence, of a legitimate non-discriminatory reason. *See* Def. Mem. at 7-11, 16-18. Defendants' authority recognizes that employees who "may become entitled" to benefits as a result of a policy and lost their eligibility as a result of that policy "are typical of the claim of [other employees] who may lose benefits because of th[e] policy." *Berger*, 220 F.R.D. at 318. Here, Northrop's admitted practice of refusing to provide a memo to employees otherwise eligible for benefits for financial reasons is the policy and satisfies typicality under Rule 23(a)(3).

### 3. Plaintiffs' Claim in Count III Is Typical of Other Class Members

Defendants do not address the typicality of Plaintiffs' ERISA § 502(a)(3) claim in Count III – except to impermissibly argue about the merits of the claim. Def. Mem. at 18. They do not refute the elements of an ERISA breach of fiduciary duty claim or even suggest that there some problem certifying this failure to disclose claims. *See* Pl. Mem. at 14-15. While Defendants cite

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), typically was found lacking for an estoppel claim based on misrepresentations that "varied from person to person." *Id.* at 399. By contrast, Count III involves a uniform failure to disclose and seeks reformation, not estoppel, to remedy those breaches. Compl. ¶¶ 78-84. Thus, the problems of *Sprague* do not exist here.

Defendants do not suggest, let alone identify, any disclosure that was made to some class members, but not others such that the representations would vary. Def. Mem. at 16-18. In fact, the Plan's Rule 30(b)(6) representative conceded that as to the disclosures provided to the class (as identified in Defendants' interrogatory responses), there were no disclosures that a memo was a necessary pre-condition of benefits. Rule 30(b)(6) Dep. at 191:12-24; 193:25-199:1; 201:6-10. Nor was there any disclosure that the decision about whether to provide severance to employees in Technical Services was based on financial considerations. *Id.* at 200:14-15. Unlike an estoppel claim (such as in *Sprague*), the Supreme Court "indisputably" held that a claim for reformation (as sought in Count III), does not require reliance which may be individualized inquiry. *Osberg v. Foot Locker, Inc.*, 07-CV-1358 (KBF), 2014 WL 5800501, at *8 (S.D.N.Y. Nov. 7, 2014) (certifying ERISA claims for misrepresentations and omissions); *CIGNA Corp. v. Amara,* 563 U.S. 421, 443 (2011). Finally, claims of omission (like the ones here) unlike claim about an affirmative misrepresentation (i.e. those in *Sprague*) do not require reliance. Pl. Mem. at 14, 28. Thus, Plaintiffs' ERISA § 502(a)(3) are typical of other members of the Class.

### 4. Defendants' Purported Affirmative Defense Against Absentee Class Members For Failure to Exhaust Does Not Defeat Typicality

In a footnote, Defendants suggest that Plaintiffs' claims are not typical because absentee class members have not exhausted their claims. Def. Mem. at 16 n.5. Defendants do not cite a single case finding that Plaintiffs' claims were atypical because absent class members had not

19

exhausted their claims. *Id.*\*\*\*\* "In ERISA cases, failure to exhaust administrative remedies is an affirmative defense." *Tolleson v. Kraft Foods Glob., Inc.,* 16-CV-2055, 2016 WL 4439951, at \*2 (N.D. Ill. Aug. 23, 2016). Defendants do not dispute that in this Circuit "typicality is determined based on defendant's actions, 'not with respect to particularized defenses it might have against certain class members.'" Pl. Mem. at 15 (quoting *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996) (reversing denial of class certification based on affirmative defense)). And typicality is defeated by a defense only when that defense is unique to the *plaintiff* and will become a major focus of the litigation. *Id.* (citing cases from this Circuit).

As there is no statutory exhaustion requirement under ERISA, the Seventh Circuit has held that "the district court has discretion to require no exhaustion by anyone [including the named plaintiff]." *In re Household Int'l Tax Reduction Plan,* 441 F.3d 500, 502 (7th Cir. 2006). As a result, courts in this Circuit "have repeatedly held that each plaintiff to a class need not have exhausted administrative remedies for the case to proceed as a class action." *Lacy v. Dart,* 14 C 6259, 2015 WL 1995576, at \*6 (N.D. Ill. Apr. 30, 2015) (citing cases finding exhaustion of absentee class members not required); *Ruppert v. Alliant Energy Cash Balance Pension Plan,* 572 F. Supp. 2d 1063, 1070 (W.D. Wis. 2008) (citing various ERISA cases for the same principle). Where one or more named plaintiffs have exhausted the plan's appeal procedures, courts conclude that requiring every class member to file a claim, any attempt by other plaintiffs or class member would be futile "since they would receive the same response given to the other identically-situated early retirees." *Vallone v. CNA Fin. Corp.,* 76 F. Supp. 2d 864, 868 (N.D. Ill.

---

\*\*\*\*    "[I]n those few cases where a[n ERISA] class action has been dismissed for lack of exhaustion, the deciding factor seems to have been lack of exhaustion by the named plaintiff(s), not by the members of the class." Frank Cummings, *ERISA Litigation: An Overview of Major Claims and Defenses,* SF76 ALI–ABA 353, 521 (Jan. 18, 2001).

1999); *see Williams v. Rohm & Haas Pension Plan*, 4:04CV0078-SEB-WGH, 2009 WL 382628, at *6 (S.D. Ind. Feb. 11, 2009) (concluding exhaustion by class members "would obviously be fruitless" where the plan had already made a decision on the issue); *see Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D. Pa. 2001) (concluding "[g]iven the defendants' apparent uniform interpretation of the plan documents, requiring each of the proposed class members to exhaust his or her administrative remedies would be futile" in an ERISA case).

Here, both Carlson and DeLuca have unquestionably exhausted their claims. Dkt. No. 12 at 3 (conceding that Plaintiffs "exhaust[ed] their administrative remedies"). In that process, Defendants' decisions about Plaintiffs' claims were virtually identical. Dkt. Nos. 62-3, 62-5**.** Moreover, Defendants have repeatedly contended that no employee is entitled to benefits under the Severance Plan unless he or she has received a memo. *Supra* II.B.1. As neither Plaintiffs nor any other Class member received a memo, of course, any other class member who similarly appealed would be denied for the same reason. Not only would exhaustion be a useless formality, but does not serve as a basis for defeating typicality.

### D.     Plaintiffs Are Adequate Representatives of the Class

Defendants argue that Plaintiffs Carlson and DeLuca are inadequate class representatives for two reasons: (1) based on Defendants arguments about the merits of the class claims; and (2) Defendants assert that DeLuca and Carlson do not have sufficient knowledge of facts. Def. Mem. at 19-20. Both of these arguments contradict well-established Seventh Circuit law.

First, Defendants suggest that the Seventh Circuit has endorsed evaluating the strength of the class claims in evaluating whether Plaintiffs are adequate representatives. Def. Mem. at 19

(citing *Robinson v. Sherriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999)).[††††] This distorts

the holding in that case: "*Robinson* stands for the proposition that where the representative's

claims are weak, *as compared with those of the class as a whole,* adequacy of representation is in

doubt. … [and w]hen the claims of the class as a whole are weak, the appropriate remedy is

dismissal, not a denial of certification." *Cavin v. Home Loan Ctr., Inc.,* 236 F.R.D. 387, 395 n.4

(N.D. Ill. 2006). To the extent that Defendants suggest that *Robinson* holds something more, that

conflicts with the Supreme Court's holding in *Amgen* and this Circuit's post-*Amgen* decisions.

*Supra* I. Defendant's argument ignores the repeated limiting language in *Robinson* itself. *See

Robinson*, 167 F.3d at 1156, 1157 & 1158. In *Robinson*, a failure to hire discrimination case, the

undisputed facts demonstrated that plaintiff was not hired due to his "very poor employment

record." *Id.* at 1156. The Seventh Circuit carefully explained that a plaintiff is not "disqualified

as class representative if he *may* fail to prove his case or if the defendant *may* have good

defenses." *Robinson*, 167 F.3d at 1158. Only when the individual plaintiff's "claim is a *clear*

loser" from the start, unlike the rest of the class, he has "little incentive" and is not an adequate

representative because he "can only hurt the class" if his claim is weak, and the rest of the class

claims are stronger. *Id.* at 1157 & 1158. On the other hand, "if the case as a whole is as weak as

the representative's individual claim – then the case should be dismissed." *Id.* at 1157.

Defendants do not argue that there is some infirmity with Carlson's or DeLuca's individual

---

[††††]     Defendants' only other two cases addressing Rule 23(a)(4) are also distinguishable. The *Berger* court merely evaluated whether the plaintiffs qualified as ERISA participants to assert the claim – concluding that "plaintiffs do not need to show that they *would* have been eligible for the benefits, just that they 'may become entitled' to the benefits – and ultimately concluded that they were adequate class representatives. *Berger*, 220 F.R.D. at 318. In *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Division Street*, No. 11 C 6753, 2015 WL 638522 (N.D. Ill. Feb. 13, 2015), plaintiff was inadequate because "[t]he basis for [the] individual claim … was unavailable to the putative class and indeed works against [the class]." *Id.* at *4. Defendants make no claim that Plaintiffs' claims here are inapposite of the class claims.

claims that make them inadequate or atypical; instead, Defendants make arguments about the claims for the entire class. Def. Mem. at 19-20. But Defendants' prior attempts to dismiss these claims based on the same arguments have been rejected twice. *See Carlson,* 2014 WL 1299000 at \*3-4; *Carlson*, 196 F. Supp. 3d at 835-839. Neither Plaintiffs' individual claims nor the class claims are a "clear loser" that suggest Plaintiffs are inadequate class representatives.

Second, Defendants argue that Plaintiffs Carlson's and DeLuca's lack of knowledge about the administration of the Severance Plan and the decision-making with respect to the issuance of memos somehow makes them inadequate class representatives. Def. Mem. at 20. Defendants cite no case that supports their argument. *Id.* A class representative only needs to have a "basic understanding of the claims" and the facts and "a willingness to participate in discovery" Pl. Mem. at 18 (citing cases). Defendants do not suggest that Carlson or DeLuca fail to meet those standards. Def. Mem. at 20. Instead, Defendants argue that standard does not apply this case, which they contend is not complex. Def. Mem. at 20 (attempting to distinguish *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 636 (W.D. Wis. 2009) (rejecting similar argument and finding plaintiffs were adequate class representatives).‡‡‡‡ When faced a similar argument on appeal in that ERISA case, the Seventh Circuit has rejected it as "an absurd argument for a defendant to make." *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 726

---

‡‡‡‡    The Seventh Circuit has repeatedly recognized ERISA cases as complex. *Chi. Truck Drivers v. El Paso Co.,* 525 F.3d 591, 595 (7th Cir. 2008) ("ERISA is famously complicated and often tedious."); *RLJCS Enters., Inc. v. Prof. Ben. Trust Multiple Employer Welfare Ben. Plan and Trust,* 487 F.3d 494, 496 (7th Cir. 2007) ("ERISA and trust law can be complex."); *Young v. Verizon's Bell A. Cash Balance Plan*, 615 F.3d 808, 819 (7th Cir. 2010) (noting the complex design of ERISA). Even though this case does not involve complicated cash balance plan calculations or a complex ESOP transaction or complicated valuation principles, this ERISA case is complicated even for semi-sophisticated persons such as Carlson and DeLuca.

F.3d 936, 942 (7th Cir. 2013) (affirming certification). As another court in this District explained in rejecting a similar argument in an ERISA case:

> [I]t is a challenge for an experienced federal judge to make sense of the ERISA provisions and regulations—with their myriad cross-references and exceptions—relevant to the issues here. It would be disingenuous to suggest that any layperson, regardless of his affiliation… could wrap his mind around the intricate details of this litigation, and no authority suggests that this degree of sophistication is required for a class representative.

*Neil v. Zell*, 275 F.R.D. 256, 264 (N.D. Ill. 2011). The Seventh Circuit has long recognized that a "class representative need not possess detailed knowledge of the lawsuit." *Id.* (citing cases). The role of the class representative "is limited." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 896 (7th Cir. 1981). In *Eggleston,* the Seventh Circuit explained that a "named plaintiff [who] did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants" was a "Polish immigrant" and had to rely on her son-in-law because of her limited English was still a plaintiff who would be adequate. *Id.* at 896 (discussing *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366 (1966)). As illustrated by the cases cited in Plaintiffs' brief, this same standard applies to ERISA cases as well as consumer and simple employment cases. *E.g.* Pl. Mem. at 18 (citing FDCPA and employment cases). Instead, "the court's primary concern is whether there is any potential collusion between the representative and the lawyers and whether there is a potential conflict of interest." *Hubbard v. M.R.S. Associates, Inc.,* 1:05-CV-0218-DFH-TAB, 2008 WL 5384294, at *2 (S.D. Ind. Dec. 19, 2008). Each of the Plaintiffs here demonstrated more than sufficient understanding of the lawsuit and have fulfilled their responsibilities. Carlson Dep. (Ex. DD) at 56-57, 67-68, 71, 99-105; DeLuca Dep. (Ex. EE) at 18-21, 23-25, 27, 94-96. More importantly, there is no conflict nor do Defendants' challenge ability of Plaintiffs or Plaintiffs'

counsel to vigorously and capably prosecute this litigation. *See* Pl. Mem. at 17-19. Thus, Rule 23(a)(4) is satisfied.

## III.     DEFENDANTS HAVE WAIVED ANY ARGUMENT ABOUT RULE 23(b)

Defendants' opposition is limited to addressing the requirements of Rule 23(a) and does not address any arguments about the requirements of Rule 23(b)(1), (b)(2) or (b)(3) are met (if the requirements of Rule 23(a) are met). *See* Def. Mem. at 12. By failing to respond to Plaintiffs' arguments that the requirements of Rule 23(b)(1), (2), and (3) are met, Defendants waived any arguments about whether certification would be proper under any of these sections. *Mansfield v. Air Line Pilots Ass'n Int'l*, 06 C 6869, 2007 WL 2048664, at *6 (N.D. Ill. July 9, 2007) (granting class certification after finding defendants who only addressed commonality, typicality and adequacy but "raise[d] no other obstacles to class certification under Rule 23(a) or 23(b)" had "forfeited any other arguments"); *Lewis v. Washington,* 197 F.R.D. 611, 612–13 (N.D. Ill. 2000) (finding defendants whose opposition brief did not address class certification had waived their opposition); *accord Kleen Prods.,* 831 F.3d at 931 (accepting plaintiffs' expert opinions on class certification where defendants failed to object to them). This is consistent with the longstanding rule that a party waives an argument by failing to make it. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *see also G & S Holdings LLC v. Cont'l Cas. Co*., 697 F.3d 534, 538 (7th Cir. 2012) (same). Like *Mansfield*, this "case[ is] a paradigm of the type of case in which class certification is not merely appropriate, but virtually necessary to the appropriate management of a judicial system and complex civil litigation." *Mansfield*, 2007 WL 2048664, at *6. The ERISA claims brought here are the example of claims suitable for certification under the mandatory classes under Rule 23(b)(1) or (b)(2). Pl. Mem. at 20, 21-26.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.

Dated: March 10, 2017     Respectfully submitted,

          */s/* R. Joseph Barton
          R. Joseph Barton
          Block & Leviton LLP
          1735 20th Street, NW
          Washington, DC 20009
          Tel: 202-734-7046
          Email: jbarton@blockesq.com

          Michael Bartolic
          Roberts Bartolic LLP
          208 S. LaSalle Street, Suite 1420
          Chicago, Illinois 60603
          Tel: 312-635-1600
          Email: mbartolic@robertsbartolic.com

          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 10, 2017 a copy of the foregoing was served by operation of the Court's electronic filing systems upon all counsel of record.

Dated:        March 10, 2017

Ming Siegel