**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN CARLSON & PETER DELUCA, individually and on behalf of a class of similarly situated individuals., | ) ) ) | Civil Action No. 13-cv-2635 |
| | ) | Judge Andrea Wood |
| Plaintiffs, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**TO COMPEL PRODUCTION OF UNREDACTED VERSIONS**
**OF REDACTED DOCUMENTS PRODUCED BY DEFENDANTS**

**TABLE OF CONTENTS**

I. Relevant background and procedural history................................................................1

   A.  Nature of the Action .................................................................................................1

   B.  Procedural History And Plaintiffs' Attempts to Resolve ........................................2

   C.  Documents With Redactions Of Which Plaintiffs Move to Compel Production of
       Unredacted Versions................................................................................................3

II. Argument ....................................................................................................................4

   A.  Legal Standards .......................................................................................................4

       1.  Attorney-Client Privilege ................................................................................4

       2.  Fiduciary Exception..........................................................................................5

   B.  Defendants Have Overly Designated Documents And Communications As Privileged And
       Failed to Adequately Describe the Allegedly Protected Information Pursuant to the
       Requirements of Rule 26(b)(5)................................................................................7

   C.  Even If They Reflect Attorney-Client Communications, the Redacted Documents Concern
       Plan Administration And Fall Within the Fiduciary Exception .......................10

       1.  Document Bates-Numbered NGC06996-NGC06998 ................................11

       2.  Document Bates-Numbered NGC13928-NGC13932 ................................12

       3.  Document Bates-Numbered NGC07121-NGC07131 ................................13

       4.  Document Bates-Numbered NGC24959-NGC24962 ................................14

III. Conclusion ................................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Target Corp.*,
 281 F.R.D. 314 (N.D. Ill. 2012) ......................................................................4

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
 152 F.R.D. 132 (N.D. Ill. 1993) ...............................................................8, 10

*Baker v. Kingsley*,
 03 C 1750, 2007 WL 7302630 (N.D. Ill. Feb. 5, 2007) .......................6, 12

*Bland v. Fiatallis N.A., Inc.*,
 401 F.3d 779 (7th Cir. 2005) ..............................................6, 12, 13, 14

*Carlson v. Northrop Grumman Corp.*,
 196 F. Supp. 3d 830 (N.D. Ill. 2016) .............................................................2

*Charvat v. Valente*,
 12-CV-05746, 2016 WL 98570 (N.D. Ill. Jan. 8, 2016) (J. Wood) ...........5

*Comrie v. Ipsco, Inc.*,
 08 C 3060, 2009 WL 4403364 (N.D. Ill. Nov. 30, 2009) .........................7

*ConAgra, Inc. v. Arkwright Mut. Ins. Co.*,
 32 F. Supp. 2d 1015 (N.D. Ill. 1999) ............................................................4

*In re Grand Jury Proceedings*,
 220 F.3d 568 (7th Cir. 2000) .........................................................................5

*Krase v. Life Ins. Co. of N.A.*,
 962 F. Supp. 2d 1033 (N.D. Ill. 2013) ....................................................7, 12

*In re Long Island Lighting Co.*,
 129 F.3d 268 (2d Cir. 1997) ..........................................................................6

*RBS Citizens, N.A. v. Husain*,
 291 F.R.D. 209 (N.D. Ill. 2013) ....................................................................9

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
 600 F.3d 612 (7th Cir. 2010) .........................................................................4

*Schmidt v. Sheet Metal Workers' Nat. Pension Fund*,
 128 F.3d 541 (7th Cir. 1997) .......................................................................10

*Solis v. Food Employers Lab. Rel. Ass'n*,
     644 F.3d 221 (4th Cir. 2011) ..................................................................6

*Stephan v. Unum Life Ins. Co. of Am.*,
     697 F.3d 917 (9th Cir. 2012) ..................................................................6

*U.S. v. Evans*,
     113 F.3d 1457 (7th Cir. 1997) .............................................................4, 5

*U.S. v. Frederick*,
     182 F.3d 496 (7th Cir. 1999) ...............................................................4, 8

*U.S. v. White*,
     970 F.2d 328 (7th Cir. 1992) ..................................................................5

*Warner v. Unum Life Ins. Co. of Am.*,
     12 C 2782, 2013 WL 3874060 (N.D. Ill. July 26, 2013)...............7, 13, 14, 15

*Wildbur v. ARCO Chem. Co.*,
     974 F.2d 631 (5th Cir. 1992) ..................................................................6

**Statutes**

29 U.S.C. § 1002 (21)(A)(iii) ........................................................................10

29 U.S.C. § 1132(a)(1)(B) ..............................................................................2

29 C.F.R. § 2509.75-8, D-3 ..........................................................................10

ERISA § 502(a)(1)(B) ...............................................................................2, 7

ERISA § 510 ..................................................................................................2

Fed. R. Civ. P. 26(b)(5)(A)............................................................................5

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37.2, Plaintiffs respectfully submit this Memorandum to support their Motion to compel production of unredacted versions of certain produced documents that Defendants redacted under the attorney-client privilege. In the course of their document production to date, Defendants have redacted numerous documents by claiming that they contain information that they claim is privileged.[1] Defendants have asserted privilege about matters that are not privileged or otherwise protected from discovery and have failed to adequately describe the documents on a privilege log. Even if the redacted information were otherwise privileged, all of the communications that are the subject of this Motion fall within the fiduciary exception to the attorney-client privilege. Thus, these communications are not privileged and Defendants should be ordered to produce unredacted versions of the documents.

## I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.     Nature of the Action

This ERISA action challenges Northrop Grumman Corporation's failure to pay cash severance benefits to terminated employees pursuant to its ERISA-governed severance plan. One of the central disputes in this case concerns the interpretation of the Severance Plan. ECF No. 62 ("Am. Compl.") ¶ 45; ECF No. 161 at 1. Plaintiffs Alan Carlson and Peter DeLuca had worked for Northrop Grumman for 35 and 38 years, respectively, until they were laid off in 2012. Am. Compl. ¶¶ 2, 23. At the time of their layoff, they were employees in the Technical Services Sector of Northrop ("TS"). *Id*. ¶ 2. While both of them received continued medical coverage under the Plan, neither of them was provided cash severance benefits even though the eligibility

---

[1] Defendants also redacted numerous documents for "relevance" but not privilege. Redactions on grounds other than privilege such as relevance are addressed in the Court's November 16, 2016 Amended Discovery Confidentiality Order. ECF No. 148 ¶ 9.

requirements were the same. *Id.* ¶¶ 4, 36, 38. Northrop denied Plaintiffs' claims for cash

severance benefits under the Plan and their subsequent appeals because they had not received the

Memo from the company. ECF Nos. 62-3, 62-5.

Plaintiffs contend that, prior to 2011, Northrop treated the provision regarding receipt of

the Memo merely as an act of notifying participants of their eligibility for benefits, not a

condition of eligibility, but that, in 2011, in order to reduce its severance costs, Northrop

changed its interpretation of the Plan to make receipt of the Memo a condition of eligibility for at

least receipt of cash severance benefits. *Id.* ¶¶ 5, 27. The Amended Complaint asserts three

counts against Defendants: (a) a claim for "clarification of benefit rights and benefits due under

29 U.S.C. § 1132(a)(1)(B), [ERISA § 502(a)(1)(B)]" *Carlson v. Northrop Grumman Corp.*, 196

F. Supp. 3d 830, 834 (N.D. Ill. 2016); (b) a claim under ERISA § 510 for interfering with

Plaintiffs' and putative class members' rights to attain benefits by withholding the Memo, *id.*;

and (c) a claim for fiduciary breaches "by failing to advise them of the company's changed use of

the notice provision from a purely administrative step to a substantive disqualification method."

*Id.*

**B.      Procedural History And Plaintiffs' Attempts to Resolve**

In response to Plaintiffs' requests issued prior to March 2017,[2] Defendants redacted a

number of documents – some based on privilege and some based on "relevance." Defendants

provided privilege logs on October 12, 2016. *E.g. id.* Ex. P. As part of their review of documents

and preparation for depositions, Plaintiffs' counsel informed Defendants that the redaction to the

document was improper and requested that Defendants provide an unredacted version of the

---

[2] Defendants have not yet produced any documents in response to Plaintiffs' Fifth Request for Production, which was issued in March, despite numerous requests by Plaintiffs to do so and promises by Defendants that they would.  If Defendants do not produce responsive documents by Tuesday, Plaintiffs will file an additional motion to compel.

document. On May 8, 2017, Defendants declined Plaintiffs' counsel's request stating that the fiduciary exception did not apply. On May 9, 2017, in an attempt to avoid an unnecessary motion to compel, Plaintiffs' counsel suggested agreeing to a "quick peek" without waiving their privilege claim as contemplated by Rule 502 whereby Plaintiffs' counsel could conduct a quick in-person review of an unredacted version of the document. On May 17, 2017, Defendants advised that they contended that their redactions were proper, and refused to agree to a quick peek. Plaintiffs' counsel Michael Bartolic and Vincent Cheng and Defendants' counsel Sam Myler and Laura Hammargren met and conferred by telephone on June 2, 2017 regarding the redacted documents identified by Plaintiffs. Defendants maintained that the redacted contents were privileged communications and the fiduciary exception did not apply to them, but agreed to produce the unredacted versions of three of those documents.[3] Because the Parties were unable to resolve the matter with respect to the rest of the documents, this Motion follows.

**C.    Documents With Redactions Of Which Plaintiffs Move to Compel Production of Unredacted Versions**

Plaintiffs move to compel production of unredacted versions of the following documents:[4]

| Document Bates Number | Doc. No. in Privilege Log | Defendants' Claim of Privilege | Defendants' Description in Privilege Log |
|---|---|---|---|
| NGC06996-NGC06998 | 399 | Attorney-Client Communication | "Email reflecting attorney-client communication with in-house counsel regarding severance eligibility design and P. DeLuca's claim for severance benefits." |
| NGC13928-NGC13932 | 405 | Attorney-Client Communication | "Email reflecting attorney-client communication with C. Williams and |

---

[3] The unredacted versions of those documents are attached as Exhibits H (NGC06897-NGC06898), J (NGC13506-NGC13508), and L (NGC07086-NGC0788) to the Declaration of Vincent Cheng.

[4] These documents are submitted as Exhibits A-D to the Declaration of Vincent Cheng. The privilege log relevant to these documents is attached as Exhibit P to the declaration.

| | | | D. Coombs regarding Severance Plan design related to eligibility and benefits for specific populations of employees." |
|---|---|---|---|
| NGC07121-NGC07131 | 455 | Attorney-Client Communication | "Email reflecting attorney-client communication with in-house counsel regarding A. Carlson's claim for severance." |
| NGC24959-NGC24962 | | | Defendants did not provide a privilege log for this document. |

## II.     ARGUMENT

### A.     Legal Standards

#### 1.     Attorney-Client Privilege

An attorney-client privilege exists only if the following elements are met: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citing *Evans*). Communications that "neither reflect the lawyer's thinking nor are made for the purpose of eliciting the lawyer's professional advice or other legal assistance" are not privileged. *U.S. v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). The legal advice "must be the predominant element in the communication; the privilege will not apply where the legal advice is incidental to business advice." *ConAgra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F. Supp. 2d 1015, 1016 (N.D. Ill. 1999); *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) ("The purpose of the communication must be the obtaining or providing of legal advice, not a business discussion."). "[T]he presence of a third party who is not an agent of either the client or attorney" defeats the claim of privilege. *Evans*, 113 F.3d at 1462.

4

A party asserting the attorney-client privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). A claim of privilege must be established "on a document-by-document basis." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *Charvat v. Valente*, 12-CV-05746, 2016 WL 98570, at *4 (N.D. Ill. Jan. 8, 2016) (J. Wood) (citing *In re Grand Jury Proceedings*). "A blanket claim of privilege that does not specify what information is protected will not suffice." *U.S. v. White*, 970 F.2d 328, 334 (7th Cir. 1992). "[T]he burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met" falls on the party seeking to invoke the privilege. *In re Grand Jury Proceedings*, 220 F.3d at 571. A determination of whether documents are subject to a privilege is "a highly fact-specific one." *Id*. A court can make "a principled determination as to whether the attorney-client privilege in fact applies" only if it "has been exposed to the contested documents and the specific facts" that support a finding of privilege. *Id*. (quoting *Holifield v. U.S.*, 909 F.2d 201, 204 (7th Cir. 1990)). Because "the privilege is in derogation of the search for truth," it is not absolute and must be "strictly confined." *Id.*; *White*, 970 F.2d at 334 ("the scope of the privilege is narrow").

### 2. Fiduciary Exception

The Seventh Circuit has recognized the fiduciary exception to the attorney-client privilege in ERISA cases: "Under that exception, a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" *Bland v. Fiatallis N.A., Inc.*, 401 F.3d 779, 787 (7th

Cir. 2005) (quoting *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)).[5] The rationales behind the fiduciary exception are twofold. First, "[a]n ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan." *In re Long Island Lighting Co.*, 129 F.3d at 271; *Stephan*, 697 F.3d at 931 ("the attorney-client privilege is subordinated to the fiduciary's disclosure obligation."). Second, "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Wildbur*, 974 F.2d at 645; *Stephan* ("because the ERISA fiduciary is 'a representative for the beneficiaries of the trust which he is administering,' it is not the fiduciary, but rather the plan beneficiary that is the real client").[6]

Communications with attorneys concerning plan administration are subject to the fiduciary exception. *Baker v. Kingsley*, 03 C 1750, 2007 WL 7302630, at *5 (N.D. Ill. Feb. 5, 2007) (finding communications with outside counsel about changes to retiree medical plan subject to fiduciary exception); *Solis*, 644 F.3d at 231 (finding no error by district court in applying fiduciary exception); *Stephan*, 697 F.3d at 933 (finding fiduciary exception applicable). Courts within this District have regularly applied the fiduciary exception to communications with an attorney concerning interpretation of the terms of the plan and eligibility for benefits. *Comrie v. Ipsco, Inc.*, 08 C 3060, 2009 WL 4403364, at *3 (N.D. Ill. Nov. 30, 2009) (applying fiduciary

---

[5] Other courts of appeal have as well. *E.g. Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 931 (9th Cir. 2012) ("the fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration"); *Solis v. Food Employers Lab. Rel. Ass'n*, 644 F.3d 221, 227 (4th Cir. 2011) (recognizing fiduciary exception); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) (same); *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997) (same).

[6] The fiduciary exception does not apply where the communications at issue concern "[d]ecisions relating to the plan's amendment or termination." *Bland*, 401 F.3d at 788. But such activities are not at issue in this case or on this motion.

6

exception where "[t]he e-mail in this case related to Plaintiff's claims for benefits under his plan and other severance benefits that he was denied"); *Krase v. Life Ins. Co. of N.A.*, 962 F. Supp. 2d 1033, 1036 (N.D. Ill. 2013) (applying fiduciary exception in ERISA § 502(a)(1)(B) case where communications concerned plan interpretation and entitlement to coverage); *Warner v. Unum Life Ins. Co. of Am.*, 12 C 2782, 2013 WL 3874060, at *7 (N.D. Ill. July 26, 2013) (finding communications between insurer and its legal department concerning plaintiff's benefits claim subject to fiduciary exception).

### B. Defendants Have Overly Designated Documents And Communications As Privileged And Failed to Adequately Describe the Allegedly Protected Information Pursuant to the Requirements of Rule 26(b)(5)

In response to Plaintiffs' document requests, Defendants have adopted an overly broad view of what constitutes an attorney-client communication, redacted information that should not have been redacted, and failed to provide sufficient descriptions to allow Plaintiffs to access Defendants' claims of privilege. An example of Defendants' over-redaction is the redacted document NGC06897-NGC06898. That document is an e-mail chain that includes (a) Plaintiff Carlson's July 26, 2012 e-mail to Chris Jones, President of TS at the time, concerning Northrop's denial of severance benefits under the Plan to Carlson and three other employees, (b) Jones' subsequent forwarding of that e-mail to Demille Gilmore, a Director of Human Resources of TS in the Integrated Logistics and Modernization Division ("ILMD"), and Larry Wingate, a TS employee, asking them to "[l]et me know what the response plan is," and (c) Gilmore's redacted response to Jones and Wingate on July 26, 2012. Cheng Decl. Ex. G. As revealed by the unredacted version of the document produced by Defendants, Gilmore's redacted response merely states "Will do. I met with Louise and legal today on the entire severance issue. Dianne is going to go to Corporate legal for some guidance. I will let you know the outcome." *Id*. Ex. H at

7

NGC06897. This communication, which merely reports the fact that Gilmore consulted "legal" and Northrop's in-house counsel Dianne Coombs planned to consult "Corporate legal," is not privileged as it neither "reflect[s] the lawyer's thinking" nor was "made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *Frederick*, 182 F.3d at 500; *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 138 (N.D. Ill. 1993) ("[I]nformation does not become privileged simply because it came from counsel . . . Rather, the key test is whether the communications reflect legal advice given by a legal advisor acting in that capacity."). A comparison of the redacted and the unredacted version of document NGC13506-NGC13508 shows similar over-redaction by Defendants. That document is a continuation of the above-referenced e-mail chain where one of the redacted communications was Wingate's response to Gilmore: "Is that today? These folks are now on the 3rd day waiting for a response and their last day is next Tuesday. I read H117, but that is Corporate, does NGTS have anything that further defines Severance procedure/guidance?" Cheng Decl. Exs. I at NGC13506, J at NGC13506. This communication, which is between two non-attorneys and does not reflect any legal advice, is not privileged for the same reason that Gilmore's prior communication is not.[7]

Defendants' descriptions of the nature of the redacted documents and communications are inaccurate and insufficient pursuant to the requirements of Rule 26(b)(B). For example, Defendants' privilege log describes the redacted portion of document NGC06897-NGC06898 as an "[e]mail reflecting attorney-client communication with in-house counsel regarding plaintiffs'

---

[7] Gilmore's subsequent response to Wingate is also not privileged for the same reason: "She is currently working it as we speak. The immediate response plan for Keith to talk to the employee(s). I think we have to proceed with that course of action." Cheng Decl. Exs. I at NGC13506, J at NGC13506. A third example of Defendants' over-redaction is document NGC07086-NGC07088 where the redacted portion of a communication between two non-attorneys merely states: "Let's discuss Monday, maybe some possibilities, need Dianne's input." Cheng Decl. Exs. K at NGC07086, L at NGC07086.

claims for severance." Cheng Ex. P at 21. As discussed above, the redacted content does not

"reflect" any privileged communication. Further, Defendants' description fails to provide

specifics about the nature of the alleged privileged communication (as there was none) and the

identity of the attorney to enable Plaintiffs to assess Defendants' claim of privilege, and is at best

"vague and generic." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (finding

description "Document containing non-responsive and privileged analysis re loan facilities

including NBB based in part on and reflecting advice of counsel" insufficient to allow court to

assess claim of privilege).[8]

Defendants' descriptions of the nature of several of the redacted documents at issue in

this Motion are similarly deficient. Defendants' description for document NGC06996-

NGC06998, which states "[e]mail reflecting attorney-client communication with in-house

counsel regarding severance eligibility design and P. DeLuca's claim for severance benefits,"

does not state who was eliciting legal advice and who in Defendants' legal department was

providing it, or explain what the term "severance eligibility design" means. Cheng Ex. P at 26.

Defendants' description identifies Louise Ussery and Cindy Fonseca in TS – neither of whom

was an attorney – under "Author/From" and "To," respectively, but the redacted content in the

document is an e-mail from Ussery to Denise Peppard. Similarly, with respect to document

NGC07121-NGC07131, without identifying who elicited legal advice and who provided it,

Defendants' log merely provides the vague and generic description: "Email reflecting attorney-

---

[8] Similarly, the vague and generic description of the redacted portions of the above-discussed document NGC13506-NGC13508 as an "[e]mail reflecting attorney-client communication with in-house counsel regarding A. Carlson's claim for severance" is inaccurate and deficient for the same reasons. Cheng Decl. Ex. P at 22; Exs. I, J. A further example is the document NGC14310-NGC14315 (Cheng Decl. Ex. M), a document titled "TS Severance," where Defendants' log describes the redacted portion of the attachment at NGC14313 as a "PowerPoint presentation reflecting attorney-client communication with in-house counsel regarding WARN notices." *Id.* Ex. P at 34.

client communication with in-house counsel regarding A. Carlson's claim for severance." *Id*. at 29; *Allendale Mut. Ins. Co.*, 152 F.R.D. at 139 ("conclusory assertions that the material reflects the advice of counsel or other confidential facts" will not suffice).

For the reasons stated above, Defendants have adopted an overly broad view of what constitutes attorney-client privilege, and improperly asserted privilege about matters that are not privileged and withheld non-privileged discoverable information. Defendants have also failed to adequately describe the nature of the withheld documents and communications on a privilege log pursuant to the requirements of Rule 26(b)(5).

### C. Even If They Reflect Attorney-Client Communications, the Redacted Documents Concern Plan Administration And Fall Within the Fiduciary Exception

Under ERISA, a person is a fiduciary of an employee benefit plan to the extent that "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002 (21)(A)(iii). A plan administrator, by the very nature of its position, is necessarily a plan fiduciary within the meaning of ERISA. 29 C.F.R. § 2509.75-8, D-3; *Schmidt v. Sheet Metal Workers' Nat. Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997) (citing 29 C.F.R. § 2509.75–8, D–3). Pursuant to the Plan, Northrop is the "Plan Sponsor," and "the Plan Sponsor administers the Plan and is the Plan Administrator." Cheng Decl. Ex. N at NGC06977. Northrop has delegated some of its administrative responsibilities with respect to the Plan to the Chief Human Resources and Administrative Officer of Northrop Grumman Corporation ("HR&A") *Id*. Pursuant to the Plan, Northrop and its delegated administrator "may delegate any of its administrative or fiduciary authority, including the authority to hear claims and appeals, to other Company officers or employees." *Id*. at NCG06977-78. The Corporate Severance Plan Review Committee ("the Committee"), as a designee, has the authority to review appeals of claims for

10

benefits. *Id*. at NCG06978. As such, Northrop, HR&A, and their designees, as well as the Committee are fiduciaries of the Plan.

### 1. Document Bates-Numbered NGC06996-NGC06998

The document NGC06996-NGC06998 is an e-mail chain that includes communications among Northrop employees in response to Plaintiff DeLuca's July 23, 2012 e-mail concerning denial of severance benefits under Northrop's "New Severance Policy." Cheng Decl. Ex. A. Defendants redacted a portion of an e-mail by Louise Ussery to Denise Peppard. Ussery's e-mail discusses "the lack of severance issue" raised by DeLuca and Carlson. *Id*. at NGC06997. The sentence preceding the redaction states that "[d]ue to prior harmonization of schedules, several years back, we had a choice of the 2 weeks' notice (no severance) or the 'Corporate Schedule' (which was an affordability issue)." *Id*. at NGC06996. Defendants' log describes the redacted content as a communication "regarding severance eligibility design and P. DeLuca's claim for severance benefits." Cheng Decl. Ex. P at 26.

Ussery was Vice President HR&A for TS, *id*.; *id*. Ex. F ("Ussery Dep.") at 20:17-25, and was responsible for "the administration [of the Plan] as the plan document states" and for issuing the Memo to employees informing them of their eligibility for severance benefits. *Id*. at 23:17-25, 188:14-24. Denise Peppard was Corporate Vice President of Human Resources and Chief Human Resources Officer. Ussery Dep. at 26:10-13; Cheng Decl. Ex. O. Both Ussery and Peppard were on the three-member Severance Plan Review Committee that reviewed and decided to "uphold the Plan Administrator's denial" of Plaintiffs' claims for severance benefits in January 2013. *Id*.; Ussery Dep. at 109:23-110:3, 115:22-118:25. Thus, pursuant to the Plan, Ussery was a designee with respect to plan administration, and Peppard was a designated Plan Administrator. Further, as members of the Committee, they were fiduciaries of the Plan with

respect to their authority to review administrative appeals. *Krase*, 962 F. Supp. at 1036 ("A party with discretion to grant or deny benefits is a fiduciary under ERISA."); *Baker,* 2007 WL 7302630, at *4 (individuals were fiduciaries "due to their membership in Administrative Committee"). Because the communication here was between two fiduciaries concerning denial of benefits to two participants and made "in the administration of the plan," it falls under the fiduciary exception and should be disclosed. *Bland*, 401 F.3d at 787; *Krase*, 962 F. Supp. 2d at 1036 ("is [plaintiff] entitled to coverage, and who decides?" are "questions of plan administration").

### 2. Document Bates-Numbered NGC13928-NGC13932

The document NGC13928-NGC13932 is an e-mail chain that begins with three unredacted e-mail exchanges between Lucy Mineghino, a TS employee, and Kasle Donna, a Northrop employee, on March 21 and 22, 2011. Cheng Decl. Ex. B. These communications concerned interpretation of the terms of the Plan and eligibility for benefits with respect to employees in TS. The first exchange, which was by Kasle, inquired, "Are the BOON group in the NGC CORP Severance Plan or another severance plan?" *Id.* at NGC13929. Kasle forwarded to Mineghino a series of e-mails that were prior communications between in-house counsel Christine Williams and Dianne Coombs and non-attorney employees. Cheng Decl. Ex. B. Defendants redacted all of those forwarded e-mails under the attorney-client privilege, describing the redacted contents as communications "regarding Severance Plan design related to eligibility and benefits for specific populations of employees." *Id.* Ex. P at 26. Mineghino responded to Kasle stating "TS did not offer severance, but was allowed to provide severance to its headquarters staff," "[p]rograms administered under the Boon Group did not have severance," and "[t]here is no separate severance plan for TS. Employees that have a severance benefit

12

follow the NG plan." Cheng Decl. Ex. B at NGC13928. Ussery was copied on Mineghino's response in her role as Vice President HR&A for TS, and received all of the unredacted correspondence with in-house counsel. *Id.*; Ussery Dep. at 176:3-13. A minute after responding to Kasle, Mineghino e-mailed Ussery alone, included all of the previous exchanges she copied Ussery on, and asked an eligibility-related question, "I think the question is going to come up – severance for everyone on Boon or selected programs?" Cheng Decl. Ex. B at NGC13928. Given the context of this e-mail chain,[9] Mineghino's communications to Ussery, including all of the forwarded correspondence with in-house counsel, were "intended to assist in the administration of the plan." *Bland*, 401 F.3d at 787; *Warner*, 2013 WL 3874060, at *7 (finding the fiduciary exception applied to "communications with an attorney to assist in the administration of the plan"). The fiduciary exception applies and Defendants should produce the document in its unredacted form.

### 3.    Document Bates-Numbered NGC07121-NGC07131

The document NGC0721-NGC07131 is an e-mail chain that begins with Plaintiff Carlson's July 26, 2012 e-mail to Jones, on which Ussery was copied, concerning Northrop's denial of severance benefits to Carlson and three other employees. Cheng Decl. Ex. C at NGC07130-31. In response to Carlson's e-mail, Ussery responded that "[she] had initiated a review of the concerns you have raised in your e-mail." *Id.* at NGC07129. In a subsequent August 9, 2012 e-mail in the chain, apparently in reference to Carlson's original July 26 e-mail regarding Northrop's past practice of providing severance to all employees, Peppard asked Ussery the question "Is the statement about severance being offered previously on the same program accurate?" *Id.* at NGC07123. Ussery forwarded to Gilmore and another TS employee

---

[9] Ussery testified that the e-mails concerned the question of "how did we select employees that receive severance." Ussery Dep. at 176:22-177:4.

Peppard's question, to which Gilmore answered, "Yes, it is accurate. Prior to October 2011, we were still following the legacy severance plan for the programs. When we harmonized and went to the high severance plan in October all programs eligibility was reconsidered for participation." *Id*. at NGC07122. Ussery replied to Gilmore with "I cannot get to the laptop can u or kim respond to Denise [Peppard] in my absence and cc me, today." *Id*. Defendants redacted the rest of Ussery's reply. *Id*. As discussed above, Ussery and Peppard were fiduciaries of the Plan with plan administration-related responsibilities. *Supra* II.C.1. As she testified in her deposition, Gilmore was a designee of the Plan by HR&A for ILMD and was authorized to "sign or issue the memo to someone telling them that they were eligible for severance." Cheng Decl. Ex. E ("Gilmore Dep.") at 103:19-104:18. The redacted content is clearly part of a series of communications by one fiduciary to another fiduciary concerning the changed interpretation of the Plan after October 2011 and eligibility for benefits. *Id*.; Ussery Dep. at 94:16-95:21. Defendants' own log describes the redacted information as "regarding A. Carlson's claim for severance." Cheng Decl. Ex. P at 29. As the redacted communication was generated "to assist in the administration of the plan" concerning eligibility and benefits claims, it falls within the fiduciary exception and should be disclosed. *Bland*, 401 F.3d at 787; *Warner,* 2013 WL 3874060, at *7.

### 4. Document Bates-Numbered NGC24959-NGC24962

The document NGC24959-NGC24962 is an e-mail chain that includes (a) a December 12, 2012 e-mail to Gilmore and TS's Manager of Staffing by an employee named Robert Stolte, and (b) subsequent communications between Ussery and Gilmore regarding preparing a response to Stolte. Cheng Decl. Ex. D. Stolte, who would be laid off effective December 21, 2012, requested that a Memo "be issued in conformance with the terms" of the Plan so that he could

receive severance benefits. The redacted portion of the e-mail chain is part of a December 20, 2012 e-mail from Gilmore to Ussery seeking input on the draft of "a response regarding why [Stolte] did not receive severance." *Id*. at NGC24959-60. The communication concerned interpretation of the Plan and denial of a participant's request for severance benefits and was generated between two fiduciaries in their administration of the Plan. *Supra* II.C.1 & 3; Ussery Dep. at 108:5-17. As such, the redacted communication falls under the fiduciary exception and should be disclosed.[10]

In sum, all of the redacted documents at issue in this Motion constitute communications to or by fiduciaries generated in the administration of the Plan and fall within the fiduciary exception. Defendants should be ordered to produce these documents without redactions.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.


Dated: June 5, 2017                                Respectfully submitted,


                                                   /s/
                                                   _____
                                                   Vincent Cheng
                                                   Block & Leviton LLP
                                                   610 16th Street, Suite 214
                                                   Oakland, CA 94612
                                                   Tel: 510-543-0489
                                                   Email: vincent@blockesq.com

                                                   R. Joseph Barton
                                                   Block & Leviton LLP
                                                   1735 20th Street, NW
                                                   Washington, DC 20009
                                                   Tel: 202-734-7046
                                                   Email: jbarton@blockesq.com

---

[10] As stated above, none of the privilege logs provided by Defendants to date provides a description of the nature of the redacted communication in this document.

Michael Bartolic
Roberts Bartolic LLP
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Email: mbartolic@robertsbartolic.com

*Attorneys for Plaintiffs*