# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **ALAN CARLSON and PETER DELUCA**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,**<br><br>**Defendants.** | **Case No. 13-cv-2635**<br><br>**District Court Judge Andrea R. Wood** |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF UNREDACTED VERSIONS OF REDACTED DOCUMENTS PRODUCED BY DEFENDANTS

Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Samuel Myler (No. 6309477)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
LHammargren@mayerbrown.com
SMyler@mayerbrown.com

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

Through their Motion to Compel (Dkt. 195), Plaintiffs seek to force Defendants Northrop Grumman Corp. ("NGC") and the Northrop Grumman Severance Plan (the "Plan," and collectively with NGC, "Northrop") to divulge the details of confidential communications with legal counsel relating to the design of the Plan and business decisions bearing on Plan eligibility. Northrop opposes Plaintiffs' motion because the documents Plaintiffs seek are protected by attorney-client privilege and are not subject to the so-called "fiduciary exception" to the privilege, which applies only where a lawyer provides legal advice to a party acting in their fiduciary capacity. As requested by the Court (Dkt. 198), we have attached unredacted copies of the contested documents to the courtesy copy of this filing for the Court to review *in camera*.

## **INTRODUCTION**

This case involves claims by Plaintiffs Alan Carlson and Peter DeLuca that Northrop wrongfully denied them cash severance benefits to which they were allegedly entitled under the terms of the Plan. The dispute began as a relatively simple challenge to the Plan Administrator's determination that Plaintiffs did not qualify for severance benefits. As the case has unfolded, however, Plaintiffs have sought to challenge (baselessly) the way the Plan is designed—that is, its giving company management discretion to decide whether to provide severance in the event of a termination of employment—under the guise of a challenge to Plan "interpretation."

Specifically, Plaintiffs' amended complaint challenges the denial of severance benefits to Plaintiffs because they did not receive a memo that is required under the Plan to be eligible for benefits. Plaintiffs contend that

> prior to 2011, Northrop treated the provision regarding receipt of [a] Memo merely as an act of notifying participants of their eligibility for benefits, not a condition of eligibility, but that, in 2011, in order to reduce its severance costs, Northrop changed its interpretation of the Plan to make receipt of the Memo a condition of eligibility for at least receipt of cash severance benefits.

1

Pls. Br. (Dkt. 196) at 2. Yet as Northrop has consistently maintained—in its Motion to Dismiss (Dkt. 100), its Motion for Summary Judgment on the Standard of Review (Dkt. 169), and its Opposition to Plaintiffs' Motion for Class Certification (Dkt. 179), among other filings—Plaintiffs have misconstrued the terms of the governing Plan documents, which unequivocally state that an employee is *not* eligible for severance unless, among other things, he or she is first "designated as eligible . . . by a Vice President of Human Resources" by "receiv[ing] a memo addressed to you, notifying you of your eligibility for this benefit." Dkt. 196-15 (Cheng Decl., Ex. N) at 4 (2012 Plan). The current motion, which challenges Northrop's redaction of four documents on the basis of attorney-client privilege, reflects Plaintiffs' continuing confusion over the role of management in determining eligibility for severance, and accordingly, the issuance of the memo, under the express terms of the Plan.

Plaintiffs principally argue that Northrop must produce the documents at issue under the "fiduciary exception" to the attorney-client privilege. As the Seventh Circuit explained in *Bland v. Fiatallis North America*, that exception provides that "a fiduciary of an ERISA plan must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." 401 F.3d 779, 787 (7th Cir. 2005) (quotation marks omitted). But *Bland* also explained that where, as here, "[a]n employer acts in a dual capacity as both the manager of its business and as a fiduciary," the fiduciary exception does not apply to all legal advice that the employer receives with respect to an ERISA plan. *Id*. at 787-88. As the Second Circuit put it, in a case on which *Bland* expressly relied, a "lawyer's consultation on fiduciary matters" does not "expand[] the fiduciary exception to justify discovery as to *all* the consultations about the plan, fiduciary and non-fiduciary alike." *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997) (emphasis added). Instead, "[t]he employer's ability to invoke

the attorney-client privilege . . . turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries." *Id.* at 271.

None of the communications at issue in this motion concerned a matter as to which Northrop owed Plaintiffs fiduciary obligations. As we explain below, Plaintiffs repeatedly conflate the type of "fiduciary" acts subject to the fiduciary exception with business decisions and the operation of Northrop's human resources departments more generally. Pursuant to the terms of the Plan, Northrop delegated responsibility for general plan administration to its Chief Human Resources and Administrative Officer.[1] *See* Hammargren Decl., Ex. 1 (Wrap Plan Document), Section 4.01. However, the discretionary decision as to *whether* to give an employee a memo entitling them to severance is not a part of plan administration: "to the degree that the plan gives an employer discretion, the employer *is not a fiduciary* when it makes determinations according to the plan's terms that affect employees' eligibility for benefits."[2] *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir. 1999) (emphasis added); *accord Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139-40 & n.4 (7th Cir. 1991). Nor are "[d]ecisions relating to the plan's amendment" fiduciary decisions. *Bland*, 401 F.3d at 788. For these reasons and others, the motion should be denied in full with respect to the documents still in dispute.

## ARGUMENT

Plaintiffs begin by laying out supposed shortcomings in Northrop's redacting and logging generally. *See* Pls. Br. at 7-10 (discussing Fed. R. Civ. P. 26(b)(5)). A majority of the documents

---

[1] Although the Chief Human Resources and Administrative Officer is responsible for general plan administration, the Plan vests the Northrop Grumman Corporate Severance Plan Review Committee ("the Administrative Committee") with the responsibility to decide claim appeals and designates it as a "named fiduciary" of the Plan. *See* Hammargren Decl., Ex. 1 (Wrap Plan Document), Section 4.01.

[2] As explained further below, no evidence shows that the memo's function is limited to simply notifying an employee that they are eligible for severance. The Plan unambiguously states that receipt of a signed memo is a precondition for the employee to be eligible for Plan benefits. Dkt. 196-15 (Cheng Decl., Ex. N) at 3-4.

offered to illustrate these so-called "deficiencies"—NGC6897, NGC7086, and NGC13506—are not the subject of the present motion and are irrelevant for present purposes. Plaintiffs claim that "several of the redacted documents at issue" are "similarly deficient," *id*. at 9, but only mention two: NGC6996 and NGC7121. Northrop's privilege log adequately describes the nature of the redactions and the basis for the claim of privilege. *See* Dkt. 196-17 at 27. Indeed, it is apparent that Plaintiffs are able to assess the claim for privilege with respect to these documents, since they argue at length about the assertions of privilege in their motion.[3]

For clarity, we discuss the documents in the order they are addressed in Plaintiffs' memorandum.

## I.      NGC6996 (Cheng Decl., Ex. A)

Document NGC6996 contains email messages from then-Vice President of Human Resources for the TS Sector Louise Ussery and Chief Human Resource Officer Denise Peppard about an inquiry from Plaintiff Peter DeLuca concerning his supposed entitlement to severance benefits. Northrop has redacted a single sentence of an email Ms. Ussery sent to Ms. Peppard providing background on the decision not to give Mr. DeLuca severance.

Plaintiffs argue that this email concerned fiduciary matters because Ms. Ussery and Ms. Peppard both "were on the three-member Severance Plan Review Committee that ultimately

---

[3] Plaintiffs contend that Northrop's log entry for NGC6996 is insufficient because it does not state what in-house lawyer was providing legal advice and does not define "severance eligibility design" (a term which, the context of this litigation makes clear, refers to discussions concerning how to design eligibility requirements for Northrop's severance plan). Pls. Br. at 9-10. As an initial matter, as discussed throughout, designing a benefit plan is not a fiduciary act. *See, e.g.*, *Bland*, 401 F.3d at 788; *infra* at pp. 6-8. In addition, Plaintiffs do not offer any authority to show that the Federal Rules require more detail than this to put the opposing party on notice of the basis for the claim of privilege. The only case they cite in support, *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132 (N.D. Ill. 1993), does not help them. It simply states that a party cannot rely on "conclusory assertions" in the briefs and privilege log to substantiate a claim of privilege. *Id*. at 139. Here, the log and Northrop's briefing give ample basis to substantiate the privilege claim. The same is true of NGC7121, which in any event Northrop has agreed to produce in unredacted form. *See infra* Part III.

upheld the Plan Administrator's denial of benefits in January 2013." Pls. Br. at 11-12. Further, Plaintiffs contend, questions like "is [plaintiff] entitled to coverage, and who decides?" are "questions of plan administration." *Id.* at 12 (quoting *Krase v. Life Ins. Co. of N. Am.*, 962 F. Supp. 2d 1033, 1036 (N.D. Ill. 2013)). That is a non sequitur. In NGC6996, Ms. Ussery and Ms. Peppard were not engaged in discussions in their capacity as members of the Severance Plan Review Committee. Indeed, the Review Committee did not meet in regards to Plaintiffs' claims until six months *after* the communications at issue. Nor were Ms. Ussery and Ms. Peppard addressing whether Plaintiffs were "entitled to coverage" or "who" would "decide[]" that question. *Krase*, 962 F. Supp. 2d at 1036. Rather, Ms. Ussery was explaining to Ms. Peppard the background to the decision not to give Plaintiffs a memo designating them as eligible for severance. Dkt. 196-2 at 2-3.[4]

      The decision to provide an employee an eligibility memorandum, and thereby designate them as eligible for benefits, is a business decision, not an act related to the administration of the Plan. *See Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir. 1999); *Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139-40 & n.4 (7th Cir. 1991). The manner in which the business units exercise this discretion has legal implications unrelated to the interpretation or administration of the Plan, ██████████████████████████████████████████████████████ ███████. Ms. Ussery and Ms. Peppard accordingly were not "acting in the capacity of ERISA fiduciary" and are not "disabled from asserting the attorney-client privilege." *Long Island Lighting*, 129 F.3d at 272; *see also King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000) ("It is clear that a person can be a fiduciary for some purposes but not others.");

---

[4] Defendants have not asserted the privilege with respect to communications to and from the Administrative Committee and counsel related to its evaluation of Plaintiffs' appeal because these communications relate to the Administrative Committee's fiduciary responsibilities.

*Klosterman v. Western Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994) ("a person deemed to be a fiduciary is not a fiduciary for every purpose but only to the extent that he performs one of the described functions").

Plaintiffs cite *Baker v. Kingsley* to support their argument that Ms. Ussery and Ms. Peppard were acting in a fiduciary capacity, but that case just proves Northrop's point. In *Baker*, the individuals in question were members of the plans' "Administrative Committee" with authority "[t]o prepare and distribute . . . information explaining the Plan." 2007 WL 7302630, at *4 (N.D. Ill. Feb. 5, 2007). The plaintiffs in *Baker* sought the production of communications between Administrative Committee members and counsel regarding a benefits update to be distributed to the employees regarding amendments to the plans. *Id*. at *3. The court held that under these circumstances, where the individuals specifically "were authorized by the plans to perform this function," the defendant had to produce the communications. *Id*. at *4. But Ms. Ussery and Ms. Peppard were not acting pursuant to any specific—or even general—Plan authorization here. They were acting as HR representatives for Northrop's business, discussing a business decision related to Northrop's sponsorship of the Plan and legal advice they received related to that decision.

Even if Ms. Ussery or Ms. Peppard were acting in a fiduciary capacity in the July 2012 email, moreover, the fiduciary exception still would not apply. ██████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. As the Seventh Circuit has held, "[d]ecisions relating to the plan's amendment or termination are not fiduciary decisions." *Bland*, 401 F.3d at 788; *see also Fletcher*, 942 F.2d at 1139-40 ("ERISA permits

employers to wear two hats"); *Beesley v. Int'l Paper Co.*, 2008 WL 2323849, at *3 (S.D. Ill. June 3, 2008) ("the decision to create the 401(k) Committee constitutes plan amendment rather than plan management," so "communications with corporate counsel regarding same are privileged"). Consequently, the redaction is entirely proper.

## II.     NGC13928 (Cheng Decl., Ex. B)

Document NGC13928 concerns the development of the TS severance policy in 2011. Northrop redacted the contents of a discussion between several Northrop attorneys, including Senior Counsel Christine Williams, but did not redact the portion of the chain in which HR personnel discussed the existing severance policy. As with NGC6996, Plaintiffs are wrong that the individuals on the NGC13928 email chain were acting in a fiduciary capacity at the time of the communications. Plaintiffs do not claim that either of the HR employees besides Ms. Ussery on the chain—Lucy Mineghino and Donna Kasle—had a role in the administration (as opposed to the design) of benefits. Nor do Plaintiffs suggest that Ms. Ussery received these communications in her fiduciary role as a member of the Administrative Committee. To the contrary, Plaintiffs say that Ms. Ussery was copied "in her role as Vice President HR&A for TS." Pls. Br. at 13.

Plaintiffs argue, based on an inference from the supposed "context" of the email chain, that because the communications were sent to Ms. Ussery, the redacted communications must have been "intended to assist in the administration of the plan." Pls. Br. at 13. That is incorrect. The unredacted "context" shows that the HR personnel were discussing the terms of the current plan and whether there was a "need to *revise* the [Summary Plan Description]" for Northrop employees whose health benefits were administered by the Boon Group. Dkt. 196-3 at 2-3

7

(emphasis added).[5] ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████.

As previously mentioned, discussions about instituting or amending a plan "are not fiduciary decisions." *Bland*, 401 F.3d at 788; *see also King*, 218 F.3d at 723 ("It is . . . clear that the defined functions of a fiduciary do not include plan design, the amendment of a plan, or the termination of a plan."); *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 757 (7th Cir. 1999) ("when employers make design changes in plans, they are not wearing their fiduciary hats"); *Beesley*, 2008 WL 2323849, at *3 (same). Therefore, these communications do not fall within the scope of the fiduciary exception. *Bland*, 401 F.3d at 787 (upholding district court "determin[ation] that the fiduciary exception was not available since the amendment or termination of plan benefits is not a fiduciary action").

## III. NGC7121 (Cheng Decl., Ex. C)

To avoid unnecessary litigation, Northrop has agreed to provide Plaintiffs with an unredacted version of NGC7121, without waiving its rights to assert privilege over other documents in the production. Any disagreement with respect to this document is therefore moot.

## IV. NGC24959 (Cheng Decl., Ex. D)[6]

The last document Plaintiffs seek is NGC2495, reflecting internal Northrop emails in response to an inquiry from Robert Stolte, a Northrop employee laid off in December 2012. Mr. Stolte began his email by noting that he has "gone over the contents of th[e] Severance Plan with legal counsel." Dkt. 196-5 at 4. He further stated that he had discussed his purported eligibility

---

[5] The Plan at issue includes a health benefits component as well as a cash benefits component. Dkt. 196-15 (Cheng Decl., Ex. N) at 6-7.
[6] Northrop had not yet provided a privilege log that included this document at the filing of Plaintiffs' motion. However, Northrop provided a privilege log entry for NGC24959 prior to the filing of this memorandum. See Hammargren Declaration, Ex. 3.

for severance "at length with legal counsel, and we are in full accord that I am entitled to this severance pay from [Northrop]." *Id*. Finally, Mr. Stolte stated that while "we are confident that organization intends to fulfill its [purported] obligations regarding severance, we would like to see confirmation in writing as soon as possible." *Id*. The email spurred a discussion among HR director Demile Gilmore and Louise Ussery. Northrop redacted a portion of Ms. Gilmore's email to Ms. Ussery asking for her advice on a proposed response to Mr. Stolte for which "Dianne [Coombs]," one of Northrop's in-house counsel, "provided . . . draft input." *Id*. at 2-3.

According to Plaintiffs, the redacted portion of the communication "concerned interpretation of the Plan and denial of a participant's request for severance benefits and was generated between two fiduciaries in their administration of the Plan." Pls. Br. at 15. Once again, Plaintiffs are wrong. Mr. Stolte had yet to file a claim for benefits under the Plan with the Plan Administrator. Accordingly, Ms. Ussery's communications on NGC24959 were not made in her fiduciary capacity as a member of the Severance Plan Review Committee. *See supra* Part I. Instead, Ms. Ussery was speaking as a Northrop Human Resources administrator tasked with addressing the myriad HR issues of employees within her division.

Plaintiffs argue that Ms. Gilmore was a fiduciary because she "was authorized to 'sign or issue the memo to someone telling them that they were eligible for severance.'" Pls. Br. at 14 (quoting Dkt. 196-6 (Cheng Decl., Ex. E) at 5). However, the mere fact that Ms. Gilmore had authority to sign or issue a memo designating an employee as eligible does not make her a fiduciary with respect to the communication at issue. Under the explicit terms of the Plan, delivery of a memo is a *prerequisite* to both Plan eligibility and becoming a "participant" in the Plan. *See* Hammargren Decl., Ex. 1 (Wrap Plan Document), Sections 2.10 & 3.01; Dkt. 196-15 (Cheng Decl., Ex. N) at 3-4. It is therefore not an aspect of Plan administration because "to the

degree that the plan gives an employer discretion, the employer *is not* a fiduciary when it makes determinations according to the plan's terms that affect employees' eligibility for benefits." *Noorily*, 188 F.3d at 158 (emphasis added).[7]

Separately, the fact that Mr. Stolte repeatedly referenced his retention of a lawyer in his email—and indeed may have copied his lawyer on the communication (Dkt. 196-5 at 5)— indicates that the draft language that Ms. Coombs prepared in NGC 24959 was prepared in anticipation of litigation. This is further supported by the fact that by the date of this communication, Ms. Coombs had also received correspondence from a lawyer retained by Peter DeLuca (one of Plaintiffs here) that raised issues similar to those raised by Mr. Stolte. *See* Hammargren Decl., Ex. 2 (August 29, 2012 correspondence from attorney Kathryn Korn).

As many courts have held, "[b]ecause the attorney work product doctrine fosters interests different from the attorney-client privilege, it may be successfully invoked against a pension plan beneficiary even though the attorney-client privilege is unavailable" due to the fiduciary exception. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 646 (5th Cir. 1992).[8] These courts recognize that the primary justification for the fiduciary exception—mutuality of interest between the fiduciary and the beneficiary—falls away once the threat of litigation looms on the horizon. Furthermore, unlike the attorney-client privilege, which "belongs to the client alone," the "work product doctrine may be asserted by either the client or the attorney." *In re Special*

---

[7] To be clear, no evidence, including deposition testimony by Ms. Gilmore, shows that the memo's function is limited to "telling" an employee "that they [are] eligible for severance." Dkt. 196-6 (Cheng Decl., Ex. E) at 5. That was Plaintiffs' counsel's (mis)characterization of the memo's role in questioning Ms. Gilmore during her deposition. *Id*. As stated, the Plan unambiguously states that receipt of a signed memo is a precondition for the employee to be eligible for Plan benefits. Dkt. 196-15 (Cheng Decl., Ex. N) at 3, 4.

[8] *See also, e.g.*, *Murphy v. Gorman*, 271 F.R.D. 296, 321 (D.N.M. 2010); *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 497 (M.D.N.C. 2008); *Lugosch v. Congel*, 219 F.R.D. 220, 243 (N.D.N.Y. 2003); *Koch v. Exide Corp.*, 1989 WL 49515, at *2-3 (E.D. Pa. May 10, 1989); *Helt v. Metropolitan Dist. Comm'n*, 113 F.R.D. 7, 11-12 (D. Conn. 1986).

*Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1980). Because "the attorney-client privilege and the work-product immunity serve somewhat different concerns," the fiduciary exception to attorney-client privilege "cannot be readily applied to defeat the work-product rule." *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 587-88 (N.D. Ill. 1981). Thus, even if the Court were to assume that Ms. Gilmore, Ms. Ussery or both were acting as fiduciaries, their counsel's draft response to Mr. Stolte would still be protected from discovery as work product.

<u>**CONCLUSION**</u>

To avoid unnecessary litigation and the burden on the Court, and without waiving its rights, Northrop has agreed to give Plaintiffs a copy of NGC7121. Northrop's arguments for compelling the production of unredacted versions of the remaining three documents are meritless. The Court accordingly should deny the motion.

Date: June 22, 2017                        Respectfully submitted,

/s/ Nancy G. Ross
Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Samuel Myler (No. 6309477)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711

*Attorneys for Northrop Grumman*
*Corporation and Northrop Grumman*
*Severance Plan*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on June 22, 2017.

/s/ Nancy G. Ross
Nancy G. Ross