# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON & PETER DELUCA, individually and on behalf of a class of similarly situated individuals., | ) ) ) ) Civil Action No. 13-cv-2635 |
| Plaintiffs, | ) Judge Andrea Wood ) ) Magistrate Judge Maria Valdez |
| v. | ) ) |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF THEIR MOTION
TO COMPEL PRODUCTION OF UNREDACTED VERSIONS
OF REDACTED DOCUMENTS PRODUCED BY DEFENDANTS**

## TABLE OF CONTENTS

I.   DEFENDANTS HAVE OVERLY DESIGNATED DOCUMENTS AND
     COMMUNICATIONS AS PRIVILEGED ........................................................................ 1

II.  THE FIDUCIARY EXCEPTION APPLIES TO THE REDACTED DOCUMENTS ...... 2

     A.  Northrop Changed Its Interpretation of the Plan in 2011 to Make Receipt of a
         Memo as a Condition of Eligibility for Cash Severance Benefits ................................. 2

     B.  To the Extent That Northrop Has Discretion Under the Plan, the Decision as to
         Whether to Issue a Memo Constitutes Plan Administration ......................................... 5

     C.  The Redacted Documents Fall Within the Fiduciary Exception ................................ 10

         1.  Document Bates-Numbered NGC06996-NGC06998 ............................................. 10

         2.  Document Bates-Numbered NGC13928-NGC13932 ............................................. 11

         3.  Document Bates-Numbered NGC24959-NGC24962 ............................................. 11

III. CONCLUSION .................................................................................................................. 15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Freedom Forge Corp*.,
204 F.3d 475 (3d Cir.2000)..............................................................................9

*Allen v. Chi. Transit Auth*.,
198 F.R.D. 495 (N.D. Ill. 2001).................................................................13, 14

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc*.,
145 F.R.D. 84 (N.D. Ill. 1992)....................................................................13, 14

*Ames v. Am. Nat. Can Co*.,
170 F.3d 751 (7th Cir. 1999) ...........................................................................9

*Beesley v. Intl. Paper Co*.,
CIV 06-703-DRH, 2008 WL 2323849 (S.D. Ill. June 3, 2008)..........................9

*Binks Mfg. Co. v. Nat'l Presto Indus., Inc*.,
709 F.2d 1109 (7th Cir. 1983) .........................................................................14

*Bland v. Fiatallis N.A., Inc*.,
401 F.3d 779 (7th Cir. 2005) ...............................................................9, 10, 11

*Bowerman v. Wal-Mart Stores, Inc*.,
226 F.3d 574 (7th Cir. 2000) ...........................................................................9

*Carlson v. Northrop Grumman Corp*.,
196 F. Supp. 3d 830 (N.D. Ill. 2016) .............................................................6, 8

*Comrie v. Ipsco, Inc.*,
08 C 3060, 2009 WL 4403364 (N.D. Ill. Nov. 30, 2009)..................................7, 9

*Donovan v. Fitzsimmons*,
90 F.R.D. 583 (N.D. Ill. 1981)..........................................................................14

*Fletcher v. Kroger Co*.,
942 F.2d 1137 (7th Cir. 1991) .......................................................................5, 6

*Helt v. Metro. Dist. Comm'n*,
113 F.R.D. 7 (D. Conn. 1986)...........................................................................14

*King v. Natl. Human Resource Comm., Inc*.,
218 F.3d 719 (7th Cir. 2000) ...........................................................................9

*Klein v. N.W. Mut. Life Ins. Co.*,
   806 F. Supp. 2d 1120 (S.D. Cal. 2011)................................................................12

*Krase v. Life Ins. Co. of N.A.*,
   962 F. Supp. 2d 1033 (N.D. Ill. 2013) ........................................................... *passim*

*Larson v. United Healthcare Ins. Co.*,
   723 F.3d 905 (7th Cir. 2013) ......................................................................7

*Logan v. Com. Union Ins. Co.*,
   96 F.3d 971 (7th Cir. 1996) ......................................................................13

*Lugosch v. Congel*,
   219 F.R.D. 220 (N.D.N.Y. 2003) ..............................................................14

*Murphy v. Gorman*,
   271 F.R.D. 296 (D.N.M. 2010) .................................................................14

*Noorily v. Thomas & Betts Corp.*,
   188 F.3d 153 (3d Cir. 1999).................................................................5, 7, 8

*Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*,
   128 F.3d 541 (7th Cir. 1997) ....................................................................10

*Stephan v. Unum Life Ins. Co. of Am.*,
   697 F.3d 917 (9th Cir. 2012) ................................................................12, 13

*Tatum v. R.J. Reynolds Tobacco Co.*,
   247 F.R.D. 488 (M.D.N.C. 2008) .............................................................14

*U.S. v. Frederick*,
   182 F.3d 496 (7th Cir. 1999) ......................................................................2

*Warner v. Unum Life Ins. Co. of Am.*,
   12 C 2782, 2013 WL 3874060 (N.D. Ill. July 26, 2013) .........................................13

*Wildbur v. ARCO Chem. Co.*,
   974 F.2d 631 (5th Cir. 1992) ....................................................................14

**Statutes**

29 U.S.C § 1022(a) ....................................................................................9

29 U.S.C. §1024(b) ....................................................................................9

29 U.S.C. § 1102(b) ....................................................................................6

29 C.F.R. § 2509.75-8, D-3 ....................................................................7, 10

ERISA § 502(a)(1)(B) ................................................................................................................8

Fed. R. Civ. P. 26(b)(3)(A) ......................................................................................................13

Defendants are wrong that, to the extent that Northrop has discretion under the Plan, the decision as to whether to give a Memo to an employee is not part of plan administration. As the discovery conducted to date shows, prior to 2011, Northrop had always interpreted the provision in the Plan regarding receipt of the Memo as a notice provision with the Memo serving purely administrative functions, but in 2011, Northrop changed its interpretation of that plan provision to make receipt of the Memo as a condition of eligibility for severance benefits even though the terms of the Plan governing benefits eligibility had remained unchanged. One of the central disputes in this case concerns the legality of Northrop's changed interpretation of the Plan; this case does not involve any amendment to the terms of the Plan governing eligibility for benefits (as there was no such amendment). Because Northrop and its designees acted in their fiduciary capacity in administering the Plan and interpreting its terms, the fiduciary exception applies to the redacted documents at issue, and Plaintiff's Motion should be granted.

## I. DEFENDANTS HAVE OVERLY DESIGNATED DOCUMENTS AND COMMUNICATIONS AS PRIVILEGED

As discussed in detail in Plaintiff's opening brief, Defendants have adopted an overly broad view of what constitutes attorney-client privilege, and improperly asserted privilege about matters that are not privileged. ECF No. 196 ("Pls. Mem.") at 7-10. Defendants' redaction to NGC07121-NGC07131, of which Defendants did not provide the unredacted version until after Plaintiffs had filed this Motion, is another example of Defendants' over-designation. The redacted portion of the communication states "Please let her know, if u think appropriate, that this has been reviewed by legal." *Compare* Cheng Decl. (ECF No. 196-1) Ex. C at NGC07122 and Supplemental Declaration of Vincent Cheng ("Supp. Cheng Decl.") Ex. U at NGC07122. This communication, which neither "reflect[s] the lawyer's thinking" nor was "made for the purpose of eliciting the lawyer's professional advice or other legal assistance," is not privileged.

1

*U.S. v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). The description provided in Defendants'

privilege log of the redacted content as an "email reflecting attorney-client communication with

in-house counsel regarding A. Carlson's claim for severance" is false. Cheng Decl. Ex. P at 29.

## II.    THE FIDUCIARY EXCEPTION APPLIES TO THE REDACTED DOCUMENTS

### A.    Northrop Changed Its Interpretation of the Plan in 2011 to Make Receipt of a Memo as a Condition of Eligibility for Cash Severance Benefits

This case does not involve, nor does the Amended Complaint allege, any amendment to

or termination of the Plan. *See* ECF No. 62 ("Am. Compl."). Instead, it concerns Northrop's

changed interpretation of the Severance Plan regarding employees' eligibility for cash severance

benefits. ECF No. 161 at 1; Am. Compl. ¶¶ 5, 27. Both the 2010 and 2012 versions of the Plan

provide that employees are eligible for severance benefits if they "work in the United States, []

are regularly scheduled to work at least 20 hours per week, [] and have been notified in writing

by [] management that [they] are covered by this Plan." *Compare* Cheng Decl. Ex. N (2012 Plan)

at NGC06972 and Supp. Cheng Decl. Ex. V (2010 Plan) at NGC03491. Both versions provide

that "[y]ou must be designated as eligible for this plan by a Vice President of Human Resources

(or his/her designee). You are designated if you received a memo addressed to you, notifying

you of your eligibility for this benefit." *Compare id.* and Cheng Decl. Ex. N at NGC06972. The

same eligibility criteria set forth in the Plan apply to both cash and medical severance benefits.

*Id*; Supp. Cheng Decl. Ex. R ("Penkert Dep.") at 86:5-20 (confirming that eligibility for both

cash and medical benefits are the same under the Plan). Although the terms of the Plan

governing benefits eligibility remained the same, in 2011, Northrop changed its interpretation of

the Plan to make receipt of a Memo as a condition of eligibility for at least receipt of cash

severance benefits.

Prior to October 2011, for each business unit or program within Northrop that participated in the Plan, Northrop treated the Plan's language regarding receipt of the Memo merely as an act of notifying employees of their eligibility for benefits, not as a condition of eligibility. Supp. Cheng Decl. Ex. W (2002 Guide to Administration) at NGC03477 ("Once severance benefit has been approved by a business or business sector, Human Resources should provide a general notification to employees informing them of their severance benefits."); Supp. Cheng Decl. Ex. Q ("Gilmore Dep. II") at 55:14-18 (testifying that prior to October 2011, "the decision . . . to provide severance was generally made on a program-by-program basis"). As Defendants' 30(b)(6) witness testified, the Memo served three administrative functions: (1) to notify employees that they were eligible for severance; (2) to make sure that employees had a copy of the severance plan document; and (3) to trigger payment by the payroll department. Penkert Dep. at 126:23-127:8.

Consistent with this interpretation of the plan provision regarding the Memo, for its HR database, Northrop used what is called "the Benefit Program Codes" or "the BPCs" to keep track of employees who were eligible to participate in the Plan, regardless whether they received a Memo. Penkert Dep. at 38:24-39:3; *id*. at 39:19- 40:1. Consistent with the objective criteria set forth in the Plan, the BPC codes assigned to an employee took into account the program and the location in which the employee worked, the standard hours worked per week, and whether the group was unionized or covered by the Service Contract Act. Supp. Cheng Decl. Ex. X at NGC25117; *id*. Ex. Y at NGC25120. Employees who were assigned a "SEV" code along with a BPC code "would be eligible for medical continuation under the severance plan." Penkert Dep. at 182:22-183:2; *id*. at 180:2-8; Supp. Cheng Decl. Ex. Z (exhibit 9 to Penkert Dep.) (snapshot of BPCs used in 2012, along with numbers of employees that would be eligible for continued

3

medical severance in the event of layoff). Northrop reported these individuals as "participants" on its Form 5500s filed with the Department of Labor. Penkert Dep. at 38:24-39:3 ("the BPC code would show that person as being a participant as defined under the 5500"); *id*. at 39:19-40:1. In August 2011, the Corporate Manager of Health and Welfare Administration confirmed that "Eligibility for Severance is governed by the BPC." Supp. Cheng Decl. Ex. AA at NGC25095; *see* Penkert Dep. at 39:15–18) ("The trigger to actually giving an employee – covering an employee for the severance plan, which would include the medical benefits, would be the separation code.").

In 2011, Northrop began a process of "harmonization" of its severance benefits, in which "TS [i.e., the Technical Services Sector] will standardize the Severance Schedule across the sector effective October 1, 2011," with TS "mov[ing] to the high severance schedule sector-wide." Supp. Cheng Decl. Ex. BB at NGC13454. Around this same time, Northrop faced uncertainty of continued government contracts and a potentially large number of layoffs, causing it to fear having to pay cash severance benefits. Gilmore Dep. II at 55:7-13, 58:13-60:18; Supp. Cheng Decl. Ex. S ("Fonseca Dep.") at 137:19-25, 164:23-165:2. "Affordability" became a core factor in Northrop's determination as to whether to pay severance benefits under the Plan. Gilmore Dep II at 302:22–23, 318:7–18; Fonseca Dep. at 166:24-167:9; Supp. Cheng Decl. Ex. T ("Collins Dep.") at 186:24-187:1.

Disregarding whether a business unit or program already participated in the Plan and despite Northrop's practice of assigning BPC codes to employees in participating units and programs to indicate their eligibility for severance and including them as participants on Form 5500s, Northrop changed its interpretation of the Plan with a "tap on the shoulder" approach to cherry pick which employees would receive severance. Supp. Cheng Decl. at NGC07002

4

(opining on legality of "[t]he 'tap on the shoulder' severance eligibility"). Beginning in October 2011 and until February 2014, "a decision was made that TS, which has very low margins in their business" would offer a "high-level" of benefits, but not everyone would receive severance. Penkert Dep. at 54:10-17; *id*. at 50:18-25, 53:18-23. The eligibility provisions of the Plan did not change during that time period and have been the same since at least 2010. *Id*. at 60:16-18, 92:18-93:3; *compare* Cheng Decl. Ex. N at NGC06972 and Supp. Cheng Decl. Ex. V at NGC03491. Northrop never informed employees of its changed interpretation and administration of the Plan regarding the Memo. Penkert Dep. at 198:18-22, 201:6-10. To date, Northrop Grumman has identified no process, rule, or standard by which management would exercise this purported discretion. Supp. Cheng Decl. Ex. DD at NGC03052 (acknowledging that there was no "policy on who gets [severance] and who does not").

## B. To the Extent That Northrop Has Discretion Under the Plan, the Decision as to Whether to Issue a Memo Constitutes Plan Administration

Defendants contend that "the discretionary decision as to whether to give an employee a memo entitling them to severance is not a part of plan administration." ECF No. 199 ("Defs. Resp.") at 3. Neither of the two court of appeals decisions relied upon by Defendants, *Fletcher v. Kroger Co*., 942 F.2d 1137 (7th Cir. 1991) and *Noorily v. Thomas & Betts Corp*., 188 F.3d 153 (3d Cir. 1999), supports Defendants' contention. *Fletcher* involved an amendment by the employer to its retirement benefit plan "to provide early retirement incentive benefits" called "Special Retirement Benefits," which were limited to participants at "specified locations." 942 F.2d at 1138. The plaintiffs in that case, who did not work at the specified locations and did not receive the Special Retirement Benefits, challenged the employer's "establishment of the terms [of the amendment] themselves." *Id*. at 1139. The Seventh Circuit held that the employer was not acting as a fiduciary with respect to its decision to "establish, amend, or terminate a benefits

plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms." *Id*. In so ruling, the court noted that "[t]he plaintiffs do not argue that they were entitled to the Special Retirement Benefits under the terms established by [the employer]" and that they did not raises issues of "plan interpretation," which would be within the province of plan administration. *Id*.

Here, Plaintiffs do not challenge any amendment to the Plan or to its design regarding severance eligibility as Northrop adopted no such amendment; instead, Plaintiffs allege that "Defendants changed their interpretation of the severance plan in October 2011 without changing its terms or notifying employees of the change." *Carlson v. Northrop Grumman Corp*., 196 F. Supp. 3d 830, 836 (N.D. Ill. 2016). Interpreting the terms of a plan to determine eligibility questions is paradigmatically part of plan administration. *Krase v. Life Ins. Co. of N.A*., 962 F. Supp. 2d 1033, 1036 (N.D. Ill. 2013) ("These are questions of plan administration – is [plaintiff] entitled to coverage, and who decides? – not plan adoption, modification, or termination.") (quoting *Bland v. Fiatallis N.A., Inc*., 401 F.3d 779, 788 (7th Cir. 2005)); *accord Fletcher*, 942 F.2d at 1139 (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989)). Pursuant to the Plan, Northrop is the Plan Administrator and has delegated some of its administrative responsibilities to the Chief Human Resources and Administrative Officer of Northrop Grumman Corporation ("HR&A") and other designees including the Corporate Severance Plan Review Committee ("the Committee").[1] Pls. Mem. at 10-11. Defendants claim

---

[1] ERISA requires that the summary plan description ("SPD") identify the Plan Administrator. 29 U.S.C. § 1102(b). Both the document entitled "Northrop Grumman Severance Plan June 1, 2010" and the document entitled "Northrop Grumman Severance Plan January 1, 2012" provide: "This summary plan description also constitutes the official 'Plan' document governing benefits" and "*there are no other Plan documents* that govern your benefits." Supp. Cheng Decl. Ex. V at NGC03498; Cheng Decl. Ex. N at NGC06979 (emphasis added). Both documents identify Northrop as the Plan Sponsor and Plan Administrator and explicitly states

that "receipt of a signed memo is a precondition for the employee to be eligible for Plan benefits." Defs. Resp. at 3 n.2. As the discovery conducted to date shows, Northrop, including its HR database, treated the Memo as serving purely administrative functions before changing the use of it to a condition of eligibility in 2011 to deny claims for severance benefits. *Supra* II.A. To the extent that the Plan confers discretion on Northrop and/or its designees, the act of changing the interpretation of the Plan's eligibility provisions to now require receipt of the Memo as a condition of eligibility constitutes plan administration. *Krase*, 962 F. Supp. 2d at 1036; *Comrie v. Ipsco, Inc.*, 08 C 3060, 2009 WL 4403364, at *3 (N.D. Ill. Nov. 30, 2009) (finding e-mail subject to fiduciary exception where plaintiff's claim was "based on the plan administrator's decision to deny Plaintiff's claimed benefits – not any large-scale decisions about design, amendments, or termination"). Accordingly, the decision as to whether to provide or withhold the Memo pursuant to the terms of the Plan as Northrop interprets them is part of plan administration.

The Third Circuit decision in *Noorily v. Thomas & Betts Corp.* also does not support Defendants' contention. That case involved the defendant's "decision to relocate particular business operations and employees" and "its related determination that certain employees who refused to relocate would not receive benefits under its severance plan." 188 F.3d 153, 156 (3d Cir. 1999). The plan at issue "provided for benefits to employees who were 'involuntarily terminated' when 'the terminating manager believes the granting of such pay is appropriate.'" *Id*. The defendant decided that it would consider an employee's refusal to relocate as "a voluntary

---

that "[t]he Plan Sponsor administers the Plan and is the Plan Administrator." Supp. Cheng Decl. Ex. V at NGC03496; Cheng Decl. Ex. N at NGC06977. By "the very nature of [its] position," the "plan administrator" is a fiduciary. 29 C.F.R. § 2509.75-8, D-3. In addition to those "named as fiduciaries by a benefit plan," "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets is an ERISA 'fiduciary.'" *Larson v. United Healthcare Ins. Co.,* 723 F.3d 905, 916 (7th Cir. 2013).

resignation." *Id*. The plaintiffs in *Noorily*, who declined the defendant's offer to relocate plus "substantial financial incentives to do so" and did not receive severance benefits, filed suit under ERISA § 502(a)(1)(B). The Third Circuit held that the establishment of the plan provision that "the terminating manager believes the granting of such pay is appropriate" was a decision "about the design of a welfare plan." *Id.* at 158. The court also held that the defendant was not acting in a fiduciary capacity when it denied severance benefits to the plaintiffs because the plan provided the discretion of determining benefits claims to the defendant "as an employer through its terminating manager," not "as an administrator through its Corporate Benefits Committee." *Id*. at 159.

The holdings in *Noorily* do not apply here for at least two reasons. First, Plaintiffs do not challenge Northrop's establishment of the existing eligibility provisions of the Plan but rather its changed interpretation of them and failure to provide proper notice of its changed interpretation as Plan Administrator. *Carlson*, 196 F. Supp. 3d at 834, 836. Second, pursuant to the Plan, Northrop is the Plan Administrator and the Committee, as a designee, is charged with the responsibility of reviewing appeals of claim denials. Pls. Mem. at 10-11. The Plan does not provide that the authority to decide whether to grant severance benefits lies with a "terminating manager" in his or her role as an agent of the "employer." *See* Cheng Decl. Ex. N at NGC06972.

Without identifying any amendment to the terms of the Plan or its design, Defendants also claim that Northrop and/or certain employees of the company did not act in a fiduciary capacity because the redacted portions of the communications at issue in this Motion relate to plan amendment or termination. Defs. Resp. at 3, 6-7, 8. As discussed above, Northrop did not amend the eligibility provisions of the Plan, and this case does not involve any alleged

amendment to the Plan or challenge to the establishment of the existing Plan.[2] *Supra* II.A.

Interpretation and implementation of an existing plan including its eligibility provisions is among

the functions of plan administration. *Krase*, 962 F. Supp. 2d at 1036; *Comrie*, 2009 WL

4403364, at *3 ("Decisions about investment of plan money or the disposition of plan assets . . .

constitute 'administration of the plan.'"). Communications with participants about benefits and

eligibility requirements under an existing plan constitutes plan administration and serves an

important fiduciary function. 29 U.S.C § 1024(b) & 29 U.S.C. § 1022(a) (requiring plan

administrators to give participants and beneficiaries a "sufficiently accurate" summary plan

description and notice of "any material modification in the terms of the plan"); *Bowerman v.

Wal-Mart Stores, Inc*., 226 F.3d 574, 590 (7th Cir. 2000) ("fiduciaries must communicate

material facts affecting the interests of plan participants or beneficiaries"); *Adams v. Freedom

Forge Corp*., 204 F.3d 475, 492 (3d Cir.2000) (finding that plan administrator "acts as a

fiduciary when explaining plan benefits and business decisions about plan benefits to its

employees"). As discussed in Plaintiff's opening brief and based on the descriptions provided in

Defendants' privilege logs, the redacted documents at issue in this Motion concern plan

administration, benefits eligibility, claims for benefits, and participant communications, not any

amendment to the existing terms of the Plan. Pls. Mem. at 11-13, 14-15.

---

[2] Defendants cite *Beesley v. Intl. Paper Co*., CIV 06-703-DRH, 2008 WL 2323849 (S.D. Ill. June 3, 2008), *Ames v. Am. Nat. Can Co*., 170 F.3d 751, 757 (7th Cir. 1999), and *King v. Natl. Human Resource Comm., Inc*., 218 F.3d 719, 723 (7th Cir. 2000). Defs. Resp. at 8. The fiduciary exception does not apply where the communications at issue concern "[d]ecisions relating to the plan's amendment or termination." *Bland*, 401 F.3d at 788. Because decisions about plan amendment or termination are not at issue in this case or on this Motion, none of those cases cited by Defendants supports that the fiduciary exception does not apply to the redacted documents at issue here.

**C.     The Redacted Documents Fall Within the Fiduciary Exception**

**1.     Document Bates-Numbered NGC06996-NGC06998**

Defendants are wrong that, with respect to the redacted communication, Louise Ussery and Denise Peppard were not acting in their fiduciary capacity in July 2012, several months before they denied Plaintiffs' administrative appeals, but instead as "HR Representatives for Northrop's business." Defs. Resp. at 5-6; Cheng Decl. Ex. A at NGC06996. First, Ussery and Peppard's roles with respect to administering the Plan were not limited to those in the Committee. Pls. Mem. at 11-12. At the time of the communication, Ussery, as Vice President of HR&A for TS and as a designee of the Plan, was responsible for administering the Plan including issuing the Memo to employees. *Id*. at 11. Peppard, as Corporate Vice President of HR and Chief Human Resources Officer, was the Plan's designated Plan Administrator. *Id*.; Supp. Collins Dep. at 68:25-69:16 (testifying that Peppared was designated Plan Administrator pursuant to governing instrument for Plan). Thus both Ussery and Peppard were fiduciaries of the Plan. 29 C.F.R. § 2509.75-8, D-3 (a plan administrator, by the very nature of its position, is necessarily a plan fiduciary within the meaning of ERISA); *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997) (citing 29 C.F.R. § 2509.75–8, D–3). Second, discussing "the lack of severance" in TS in connection with "harmonization of schedules," the communication concerned plan administration and severance benefits under the Plan. Cheng Decl. Ex. A at NGC06996. Third, the fiduciary exception only exempts from disclosure communications concerning "[d]ecisions relating to the plan's amendment or termination." *Bland*, 401 F.3d at 788. Here, regardless of whether the communication was also related to "Northrop's business," there is no amendment to the Plan at issue in this case or on this Motion. Because the communication here was between two fiduciaries made "in the

10

administration of the plan," it falls under the fiduciary exception and should be disclosed. *Bland*, 401 F.3d at 787; *Krase*, 962 F. Supp. 2d at 1035.

### 2. Document Bates-Numbered NGC13928-NGC13932

Defendants unpersuasively argue that Ussery was not acting in a fiduciary capacity when she received the redacted communications from Northrop employee Donna Kasle or when she subsequently received them again from TS employee Lucy Mineghino in the same e-mail chain. As discussed in Plaintiffs' opening brief and above, given her role as Vice President of HR&A for TS, Ussery was a designee and fiduciary of the Plan charged with the responsibility of administering the Plan. Pls. Mem. at 11-12; *supra* II.C.1. Defendants are also wrong that the document does not concern plan administration. The e-mail chain discussed eligibility for benefits with respect to employees in TS. Pls. Mem. at 12-13. Ussery testified that she received the communications in that role as Vice President of HR&A for TS. Cheng Decl. Ex. F at 176:3-13. Defendants themselves describe the "unredacted context" of the e-mail chain as relating to "the existing severance policy" in connection with "the terms of the current plan and whether there was a need to revise the Summary Plan Description for Northrop employees." Defs. Resp. at 7. Defendants' own privilege log describes the redacted communications as "related to eligibility and benefits for specific populations of employees." Cheng Decl. Ex. P at 26. Because Ussery received the communications, including all of the forwarded correspondence, in connection with the administration of the Plan, the fiduciary exception applies, and Defendants should be ordered to produce the unredacted version of the document.

### 3. Document Bates-Numbered NGC24959-NGC24962

This document is an e-mail chain concerning an inquiry from the employee Robert Stolte concerning his eligibility for severance under the Plan. Cheng Decl. D; Pls. Mem. at 14-15.

11

Defendants claim that neither Ussery nor Demile Gilmore acted in a fiduciary capacity in the redacted communication discussing preparing a response to Stolte. As discussed in Plaintiffs' opening brief and above, Ussery was a designee and fiduciary of the Plan charged with the responsibility of administering the Plan. Pls. Mem. at 11-12; *supra* II.C.1. Gilmore, as a Director of Human Resources of TS in the Integrated Logistics and Modernization Division ("ILMD"), was a designee of the Plan with respect to ILMD and was authorized to sign or issue the Memo. Pls. Mem. at 14. As such, she was a fiduciary of the Plan responsible for administering the Plan.[3]

Defendants also claim that the purported "draft language" by in-house counsel Dianne Coombs, which is purportedly the redacted content of the e-mail chain, was prepared in anticipation of litigation because Stolte mentioned his lawyer in his December 20, 2012 e-mail and because Coombs received, almost four months before, an August 27, 2012 correspondence from Plaintiff DeLuca's lawyer. Defs. Resp. at 10; ECF No. 200-1 at NGC00243-245. Defendants are wrong. The fiduciary exception remains applicable up to the point when "the interests of the Plan fiduciary and the beneficiary diverge," which is "not until after the final determination - that is, after the final administrative appeal." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 933 (9th Cir. 2012) (finding that fiduciary exception applied to communications in advance of appeal denial); *Krase*, 962 F. Supp. 2d at 1036 n.3 (noting that "the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege"); *Klein v. N.W. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1133 (S.D. Cal. 2011) (finding no divergence of interests prior to claim denial

---

[3] Defendants argue with respect to Gilmore that the decision as to whether to issue a Memo to an employee does not constitute plan administration. Defs. Mem. at 9-10. As discussed above, even if Northrop has discretion to interpret the Plan, the decision as to whether to provide the Memo pursuant to the terms of the Plan as Northrop or a designee interprets them constitutes plan administration. *Supra* II.B.

because "while the claim was still being adjudicated, Defendants were acting as ERISA fiduciaries, preparing a response to the claim, and acting in the ordinary administration of the plan"). Correspondence from a participant's lawyer to the plan fiduciary before exhaustion of administrative remedies is "not enough to create or trigger an imminent threat of litigation or to categorize these communications as anything other than communications with an attorney to assist in the administration of the plan." *Warner v. Unum Life Ins. Co. of Am.*, 12 C 2782, 2013 WL 3874060, at *8 (N.D. Ill. July 26, 2013) (finding that communications were subject to fiduciary exception). Here, as of December 20, 2012, Stolte had yet to submit an administrative claim or appeal or exhaust his administrative remedies. His mention of his lawyer is not enough to create an imminent threat of litigation and destroy the mutuality of "interests of the Plan fiduciary and the beneficiary." *Stephan*, 697 F.3d at 933. Nor is the fact that Plaintiff DeLuca's previous lawyer had also contacted Northrop about its denial of severance to DeLuca, not about Stolte.

Defendants' argument that the redacted communication is protected under the work-product doctrine also fails. The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A); *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996) (quoting Rule 26(b)(3)). The elements of the work product doctrine consist of "causation" and "reasonable anticipation" of litigation. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992). As for the first element, "production of the material must be caused by the anticipation of litigation" and cannot be "produced in the ordinary and regular course of a discovery opponent's business." *Id.*; *Allen v. Chi. Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001). As for the second element, in order for a party's anticipation of litigation to be reasonable, there must be "a substantial and significant

13

threat of litigation." *Allendale Mut. Ins. Co*., 145 F.R.D. at 87; *Allen*, 198 F.R.D. at 500. "The

mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an

attorney." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc*., 709 F.2d 1109, 1118 (7th Cir. 1983). Nor

does the fact "that a party has retained an attorney, initiated investigations, or engaged in

negotiations over a claim." *Allendale Mut. Ins. Co*., 145 F.R.D. at 87. Proof of reasonable

anticipation requires a showing of "objective facts establishing an identifiable resolve to

litigate." *Id*.; *Allen*, 198 F.R.D. at 500. The party seeking to invoke the work product doctrine has

the burden of establishing all of its elements. *Allendale Mut. Ins. Co*., 145 F.R.D. at 86. Here,

Defendants have not shown that the "draft language" that they claim to be protected was not

produced in the ordinary and regular course of Northrop's business or plan administration. They

also have not shown why the mere fact that Stolte inquired about his eligibility for severance or

mentioned his lawyer constitutes a substantial and significant threat of litigation. As such,

Defendants have failed to carry the burden of establishing that the work product doctrine

applies.[4]

---

[4] In support of their claim that the fiduciary exception may not extend to the work product privilege, Defendants cite cases in which the court recognized that where "there is a sufficient anticipation of litigation," "the mutuality between a trustee and a beneficiary is destroyed." *Murphy v. Gorman*, 271 F.R.D. 296, 321 (D.N.M. 2010); *Tatum v. R.J. Reynolds Tobacco Co*., 247 F.R.D. 488, 501 (M.D.N.C. 2008) ("mutuality of interests" is destroyed "once there is a real anticipation of litigation"); *Lugosch v. Congel*, 219 F.R.D. 220, 243 (N.D.N.Y. 2003) (same); *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 586-87 (N.D. Ill. 1981) (recognizing that fiduciary exception involves "identity of interests"); *Helt v. Metro. Dist. Comm'n*, 113 F.R.D. 7, 12 (D. Conn. 1986) (doctrine "comports with our notion of fair play within an adversarial system of justice"); *Wildbur v. ARCO Chem. Co*., 974 F.2d 631, 645 (5th Cir. 1992) (affirming decision finding fiduciary exception not applicable where discovery sought communications with plan administrator after suit was filed and "mutuality of interests . . . ceased to exist"). These cases do not apply here because, as discussed above, there was no final determination on any administrative appeal by Stolte and no reasonable anticipation of litigation.

14

## III. CONCLUSION

For the forgoing reasons, Plaintiffs' Motion should be granted.

Dated: June 29, 2017

Respectfully submitted,

/s/ Vincent Cheng

Vincent Cheng
Block & Leviton LLP
610 16th Street, Suite 214
Oakland, CA 94612
Tel: 510-543-0489
Email: vincent@blockesq.com

R. Joseph Barton
Block & Leviton LLP
1735 20th Street, NW
Washington, DC 20009
Tel: 202-734-7046
Email: jbarton@blockesq.com

Michael Bartolic
Roberts Bartolic LLP
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Email: mbartolic@robertsbartolic.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on June 29, 2017, a copy of the foregoing was served by operation of the Court's electronic filing systems upon all counsel of record.

*/s/* Vincent Cheng
Vincent Cheng