**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN CARLSON & PETER DELUCA, individually and on behalf of a class of similarly situated individuals., | ) ) ) ) | Civil Action No. 13-cv-2635 |
| Plaintiffs, | ) ) ) | Judge Andrea Wood |
| v. | ) ) ) | Magistrate Judge Maria Valdez |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL RESPONSES TO INTERROGATORY NO. 16
AND REQUEST FOR PRODUCTION NOS. 40, 53, 55, 56, 58, AND 60</u>**

## TABLE OF CONTENTS

I. Relevant background and procedural history ................................................................. 1

  A.  Summary of Plaintiffs' Class Claims ................................................................. 1

  B.  The Relevant Procedural History ...................................................................... 2

    1.  Plaintiffs' Requests for Information and Data Relating to the Class ................... 2

    2.  Plaintiffs' Sixth Set of Requests for Production of Documents ................................. 4

II. Argument ...................................................................................................................... 7

  A.  Legal Standard ................................................................................................... 7

  B.  The Discovery Requests At Issue Seek Relevant Information ............................ 8

    1.  Names And Contact Information of Class Members Are Relevant and
Discoverable ..................................................................................................................... 8

    2.  Documents Responsive to Request Nos. 53, 55, 56, And 58 Are Relevant to
Defendants' Defenses ...................................................................................................... 10

    3.  Documents Responsive to Request No. 60 Are Relevant to Assessing Defendants'
Claimed Interpretation of the Plan .................................................................................. 11

  C.  The Discovery Requests Are Proportional to the Needs of the Case ........................ 13

III. Conclusion ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. Ace Coffee Bar, Inc*.,
  248 F.R.D. 550 (N.D. Ill. 2008)...........................................................................7

*Carlson v. Northrop Grumman Corp*.,
  196 F. Supp. 3d 830 (N.D. Ill. 2016) ...................................................1, 2, 10, 14

*Clark v. Ruck*,
  13-CV-03747, 2014 WL 1477925 (N.D. Ill. Apr. 15, 2014)...................................7

*Cox v. Sherman Capital LLC*,
  1:12-CV-01654-TWP, 2014 WL 712659 (S.D. Ind. Feb. 24, 2014) ...............10, 11

*Davis v. City of Springfield, IL*,
  04-3168, 2009 WL 268893 (C.D. Ill. Jan. 30, 2009) .............................................3

*Donnelly v. NCO Fin. Sys., Inc*.,
  263 F.R.D. 500 (N.D. Ill. 2009), *objections overruled*, 09 C 2264, 2010 WL
  308975 (N.D. Ill. Jan. 13, 2010) .....................................................................7, 10

*Elliott v. Super. Pool Products, LLC*,
  15-CV-1126, 2016 WL 29243 (C.D. Ill. Jan. 4, 2016) ........................................13

*Fudali v. Napolitano*,
  283 F.R.D. 400 (N.D. Ill. 2012)..........................................................................15

*Goodman v. Shalimar Invs., LLC*,
  414CV00079SEBTAB, 2016 WL 3936048 (S.D. Ind. July 21, 2016)...................13

*Green v. Monarch Recovery Mgt., Inc*.,
  1:13-CV-00418-SEB, 2014 WL 1631825 (S.D. Ind. Apr. 24, 2014) ......................9

*Heath v. Varity Corp*.,
  71 F.3d 256 (7th Cir. 1995) ................................................................................10

*Jones v. Nat'l Council of Young Men's Christian Associations of U.S*.,
  09 C 6437, 2011 WL 1312162 (N.D. Ill. Mar. 31, 2011) ................................7, 8, 9

*Kelley v. Bd. of Educ. of City of Chi*.,
  10 C 7875, 2012 WL 1108135 (N.D. Ill. Apr. 2, 2012) ...................................8, 15

*Kodish v. Oakbrook Terrace Fire Protec. Dist*.,
  235 F.R.D. 447 (N.D. Ill. 2006).........................................................................7, 8

*Pope v. Mendenhall*,
  19 F.3d 22 (7th Cir. 1994) ........................................................................14, 15

*Precision Dose, Inc. v. U.S.*,
  12 CV 50180, 2012 WL 6172177 (N.D. Ill. Dec. 11, 2012) ....................................7

*Russo v. Health, Welfare & Pension Fund, Loc. 705, Intern. Bhd. of Teamsters*,
  984 F.2d 762 (7th Cir. 1993) .............................................................................11

*Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension
  Plan*,
  760 F.3d 585 (7th Cir. 2014) ........................................................................10, 11

*In re Thomas Consol. Industries, Inc.*,
  04 CV 6185, 2005 WL 3776322 (N.D. Ill. May 19, 2005), *aff'd*, 456 F.3d 719
  (7th Cir. 2006) ...................................................................................................3

*Village of Rosemont v. Priceline.com Inc.*,
  09 C 04438, 2010 WL 4876217 (N.D. Ill. Nov. 22, 2010) ......................................8

*W. Loop Chiropractic & Sports Injury Ctr., Ltd. v. N. Am. Bancard, LLC*,
  16-CV-5856, 2017 WL 404896 (N.D. Ill. Jan. 30, 2017) ......................................13

*Wiginton v. Ellis*,
  02 C 6832, 2003 WL 22232907 (N.D. Ill. Sept. 16, 2003) .....................................8

*Yessenow v. Hudson*,
  270 F.R.D. 422 (N.D. Ind. 2010) ......................................................................7, 8

**Statutes**

29 U.S.C. § 1132(a)(1)(B) .................................................................................1, 10, 11

29 U.S.C. § 1132(a)(3)(B) .......................................................................................14

29 U.S.C. § 1140 ..................................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 26(b) ...........................................................................................7, 13

Fed. R. Civ. P. 26(b)(1) ....................................................................................7, 13, 15

Fed. R. Civ. P. 30(b)(6) ...........................................................................................6

Fed. R. Civ. P. 33(b)(4) ...........................................................................................3

Fed. R. Civ. P. 34(b)(2)(A) .......................................................................................3

Fed. R. Civ. P. 34(b)(2)(B) ........................................................................................8

Fed. R. Civ. P. 34(b)(2)(C) ........................................................................................6

Fed. R. Civ. P. 37(a) ..................................................................................................1

Fed. R. Civ. P. 37(a)(1), (3), (4) ...............................................................................8

N.D. Ill. Local Rule 37.2............................................................................................1

iv

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37.2, Plaintiffs respectfully submit this Memorandum to support their Motion to compel (a) disclosure of the names and contact information of the former employees included in Defendants' responses to Interrogatory No. 16 and Request for Production No. 40 and (b) production of documents in response to Request for Production Nos. 53, 55, 56, 58, and 60. These discovery requests seek information relevant to all three counts of the Complaint, including information relating to Northrop Grumman's administration of the Plan, its reasons for denying cash severance benefits, and disclosures made by it about its changed interpretation of the Plan, as the documents that serve to explain why Defendants now claim that certain persons, initially identified by Defendants as members of the Class, should be excluded. Because the discovery seeks information that is relevant and proportional to the needs of the case, Defendants should be ordered to produce the requested information.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    Summary of Plaintiffs' Class Claims

A central issue of this putative ERISA class action concerns Northrop Grumman's October 2011 changed interpretation of a notice provision of its severance plan regarding the Memo by making the receipt of it a condition of eligibility in order to avoid paying cash severance benefits, ECF No. 62 ("Am. Compl.") ¶¶ 5, 27, and "without changing [the Plan's] terms or notifying employees of the change." *Carlson v. Northrop Grumman Corp*., 196 F. Supp. 3d 830, 836 (N.D. Ill. 2016). Count I of the Amended Complaint asserts a claim for benefits seeking enforcement and "clarification of benefit rights and benefits due under 29 U.S.C. § 1132(a)(1)(B), [ERISA § 502(a)(1)(B)]." *Id.* at 834. Count II asserts a claim against Northrop under ERISA § 510 for "interfering with the attainment of any right to which [a] participant may

1

become entitled under the plan." 29 U.S.C. § 1140; Compl. ¶¶ 64-77. Count III asserts that "Northrop violated its fiduciary obligations to prospective plan participants by failing to advise them of the company's changed use of the notice provision from a purely administrative step to a substantive disqualification method." *Carlson*, 196 F. Supp. 3d at 834. The Amended Complaint seeks relief on behalf of a class of individuals who met certain objective criteria for benefits under the Plan and "who did not receive written notification from management or from a Vice President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan and who did not receive the 'Cash Portion' of the severance benefits" ("the Proposed Class" or "the Class"). Am. Compl. ¶ 40.

### B.    The Relevant Procedural History

After Plaintiffs filed their Amended Complaint alleging all three claims on behalf of the Class on October 22, 2014, Defendants filed a motion to dismiss the Amended Complaint, which this Court denied entirely on July 11, 2016. *Carlson*, 196 F. Supp. 3d at 838. Discovery is not bifurcated. ECF No. 135. Plaintiffs filed their motion for class certification on January 4, 2017, which is fully briefed and remains pending. ECF No. 160. Fact discovery ends July 31, 2017.

### 1.    Plaintiffs' Requests for Information and Data Relating to the Class

Plaintiffs served their Third Set of Interrogatories and Fourth Set of Requests for Production of Documents on October 12 and 21, 2016, respectively. Cheng Decl. Exs. A, B. This discovery included Interrogatory No. 16 and Request for Production No. 40. *Id*. Ex. A at 6; *id*. Ex. B at 6-7. Interrogatory No. 16 required Defendants to identify "any person who was included in the number of active participants on the Plan's Form 5500 who were eventually Involuntarily Terminated but did not receive both Health Severance and Cash Severance" (*i.e*., the Class Members) including the name and address of those individuals. *Id*. Ex. A at 6. Request for

Production No. 40 required Defendants to produce electronic "data for every Employee who between January 1, 2010 to the present, were Involuntarily Terminated and received no Cash Severance under the Plan but did receive continued Health Severance" including by name and address. *Id.* Ex. B at 7-8. On December 15, 2016, Defendants amended their response to Interrogatory No. 16 to identify the *number* of employees by sector and year who were involuntarily terminated and had been identified as participants in the Plan, but, despite meeting all of the objective requirements of the Plan, were not offered cash severance when they were laid off between January 1, 2012 and July 31, 2016. *Id.* Ex. D at 3-4. On December 30, 2016, Defendants provided the electronic data about the Class Members.[1] *Id.* Ex. K. In their responses to Interrogatory No. 16 and Request for Production No. 40, Defendants did *not* specifically object to provide names and contact information of class members (*id.* Ex. D at 2-3; *id.* Ex. E at 9-10),[2] but Defendants have refused to provide this information by belatedly arguing during meet-and-confer that such production was premature until there was an order on class certification. While this position is wrong, Plaintiffs waited to raise this issue until the end of discovery as Defendants' argument would be moot once the Court issues a ruling on class certification. But Defendants' continued refusal to provide this information prevents the completion of discovery.

---

[1] The Class Data included the following information: "(1) MYID number; (2) termination date; (3) sector and program; (4) BPC code; (5) hourly rate; and (6) original hire date and most recent hire date." *Id.* Ex. K.

[2] "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2)(A); *Davis v. City of Springfield, IL*, 04-3168, 2009 WL 268893, at *4 (C.D. Ill. Jan. 30, 2009) ("[C]ourts in this circuit have interpreted Rule 34 as containing an implicit waiver provision to parallel Rule 33(b)(4)"); *In re Thomas Consol. Industries, Inc.*, 04 CV 6185, 2005 WL 3776322, at *7 n. 2 (N.D. Ill. May 19, 2005), *aff'd*, 456 F.3d 719 (7th Cir. 2006) (finding "the objection is waived" where party failed to include it in interrogatory responses).

## 2. Plaintiffs' Sixth Set of Requests for Production of Documents

Defendants have identified the persons who fall within the Class as participants in the Severance Plan under *penalty of perjury* on the Forms 5500 filed with the Department of Labor and the Department of Treasury and have identified *under oath* 751 former employees who met the Class definition in response to Interrogatory No. 16. However, during discovery it became apparent that Defendants intended to challenge whether some of those 751 persons were members of the Class. As a result, on March 15, 2017, Plaintiffs issued Interrogatory No. 25, which requested Defendants to set forth the reason that, with respect to any persons included in the Class Data, Defendants now contend that they did not receive severance for a reason other than lack of receipt of a Memo or that the reason for their non-receipt of a memo was relevant. *Id.* Ex. G at 3, 4. Defendants' response on April 24, 2017identified (by employee id number only) more than 330 individuals included in the Class Data "for which [Northrop] has identified reasons for the nonpayment of severance that are unrelated to the receipt of an eligibility memo." *Id.* Ex. H at 6-7. While Defendants' response groups those 330 individuals by category (sometimes putting multiple categories together), these categories only provided the most general information about Defendants' argument for exclusion. *Id.* The largest category, which contains 172 potential class members whom Defendants seek to exclude for the vague reason that "Employees terminated *in a time period* from TS Sector programs that *makes it likely* they were excluded from severance on the basis of the 10% incumbent transfer clause under the Plan." *Id.* (emphases added).[3] Defendants do not explain what they mean by "in a time period" or explain how they determined that "it is likely" that they fell within the 10% incumbent transfer clause.

---

[3] There is no such clause in the Summary Plan Description itself. The language on which Defendants rely appears only in an Appendix added in 2014 that was *never* disclosed to *or even made available to employees*.

*See id.* In order to understand Defendants' response to Interrogatory No. 25, on May 26, 2017, Plaintiffs served their Sixth Set of Requests for Production of Documents. The Requests in the Sixth Set that are at issue in this Motion are:

### Document Request No. 53

For the persons who are identified in Your response to Interrogatory No. 25 as "Employee initiated legal action at the time of termination," produce documents initiating any such legal action, any orders in that action and documents reflecting the resolution of such action.

### Document Request No. 55

For the persons who are identified in Your response to Interrogatory No. 25 as "Terminated for Cause," produce documents sufficient to demonstrate that person was terminated for cause.

### Document Request No. 56

For the persons who are identified in Your response to Interrogatory No. 25 as "Terminated for lack of security access," produce documents sufficient to demonstrate that person was terminated for lack of security access.

### Document Request No. 58

For the persons who are identified in Your response to Interrogatory No. 25 as "Employees terminated in a time period from TS Sector Programs that makes it likely they were excluded from severance on the basis of the 10% incumbent transfer clause under the Plan," produce documents sufficient to demonstrate whether such employees were in fact terminated as part of an incumbent transfer and the time at which the termination occurred.

*Id*. Ex. C at 5-7. Additionally, Plaintiffs requested information about the contracts for which Defendants claim serves as the basis of whether they paid severance (at least in the Technical Services Sector) and whether they in fact paid consistent with their purported interpretation:

### Document Request No. 60

Produce copies of all contracts for which Northrop Grumman was a party for which the programs provided that severance was recoverable or reimbursable in whole or in part and for which either Northrop did not provide severance to terminated employees working on that program through the Northrop Grumman

5

> Severance Plan at any time from January 1, 2010 forward or the employees
> working on that program were determined to be ineligible for benefits from the
> Northrop Grumman Severance Plan at any time from January 1, 2010 forward.

Defendants' June 26, 2017 response to these requests primarily raises relevance objections. *E.g.*, *id*. Ex. F at Nos. 53, 55, 56, and 58 & 60. On July 18, 2017, Defendants produced only a handful of documents – which consist entirely of unsigned separation agreements for 9 employees – but no documents responsive to Request No. 53, 55, 56, 58, or 60. As to Request Nos. 56 and 58, without stating whether they will or will not produce documents (in violation of Rule 34),[4] Defendants' response merely refers Plaintiffs to the data to be produced on June 7, 2017 and the Class Data produced on December 30, 2016. *Id*. Ex. F at 10, 12. Defendants' response contends that Request No. 60 "seeks duplicative information of the government disclosures that Northrop previously produced." *Id*. Ex. F at 14.[5]

On July 19, 2017, at 3:30 p.m. CDT, Plaintiffs' counsel Joseph Barton and Vincent Cheng and Defendants' counsel Laura Hammargren met and conferred by telephone regarding the Sixth Set, as well as the requested class identities. Defendants maintained that there was no class in this case and Plaintiffs were not entitled to the requested documents and information. With respect to Request No. 60, Defendants provided Plaintiffs with the bates range NGC15545-NGC23475 for the "government disclosures" referenced in their response to the Sixth Set.[6] On July 26, 2017, Defendants produced a copy of the contract purportedly applicable to Plaintiffs Carlson and DeLuca, but no other responsive contracts. Because the parties were unable to

---

[4] An objection to a request for production "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Defendants' objection fails to do so.

[5] At the Rule 30(b)(6) deposition of Northrop Grumman on Friday, July 28, 2017, Plaintiffs also learned for the first time that there may be documents responsive to Request Nos. 52 and 61 that Defendants failed to produce.

[6] These "government disclosures" do not contain the information concerning the contract provisions or the recoverability of severance that Request No. 60 seeks.

resolve the matters with respect to Request Nos. 53, 55, 56, 58, or 60 and the names and contact information requested by Request No. 40 and Interrogatory No. 16, this Motion follows.

## II.     ARGUMENT

### A.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id*. Relevancy for discovery is broadly construed to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Acevedo v. Ace Coffee Bar, Inc*., 248 F.R.D. 550, 553 (N.D. Ill. 2008) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978)); *Precision Dose, Inc. v. U.S.*, 12 CV 50180, 2012 WL 6172177, at *2 (N.D. Ill. Dec. 11, 2012) ("relevant" is a "broadly defined" term); *Yessenow v. Hudson*, 270 F.R.D. 422, 426 (N.D. Ind. 2010) (relevancy is "broadly construed" for discovery purposes). Discovery requests are relevant "if there is *any possibility* that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Protec. Dist*., 235 F.R.D. 447, 450 (N.D. Ill. 2006) (emphasis added); *Clark v. Ruck*, 13-CV-03747, 2014 WL 1477925, at *2 (N.D. Ill. Apr. 15, 2014). Where discovery in a putative class action is not bifurcated, "the broad scope of discovery afforded by Rule 26" applies. *Jones v. Nat'l Council of Young Men's Christian Associations of U.S.*, 09 C 6437, 2011 WL 1312162, at *3 (N.D. Ill. Mar. 31, 2011); *Donnelly v. NCO Fin. Sys., Inc*., 263 F.R.D. 500, 504 (N.D. Ill. 2009) (granting motion to compel production of "class-wide documents and information" where "discovery in the case had not been bifurcated"), *objections overruled*, 09 C 2264, 2010 WL 308975 (N.D. Ill. Jan. 13, 2010).

Pursuant to Rule 37, a party may move to compel discovery where another party fails to respond to discovery requests or has provided "evasive or incomplete" responses. Fed. R. Civ. P. 37(a)(1), (3), (4). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Village of Rosemont v. Priceline.com Inc.*, 09 C 04438, 2010 WL 4876217, at *1 (N.D. Ill. Nov. 22, 2010) (citing *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009)). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Id.*; *Kodish*, 235 F.R.D. at 450. The party opposing discovery bears the burden to show with specificity why a discovery request is improper. *Kelley v. Bd. of Educ. of City of Chi.*, 10 C 7875, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012); Fed. R. Civ. P. 34(b)(2)(B) (the party refusing to produce documents must "state with specificity the grounds for objecting to the request, including the reasons"). The party cannot meet that burden simply "by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, [or] unduly burdensome." *Kelley*, 2012 WL 1108135, at *2; *Yessenow*, 270 F.R.D. at 427.

### B. The Discovery Requests At Issue Seek Relevant Information

#### 1. Names And Contact Information of Class Members Are Relevant and Discoverable

Where the putative class members likely have information that is relevant to the plaintiff's class claims, information such as the members' names and contact information falls within the scope of discovery. *Wiginton v. Ellis*, 02 C 6832, 2003 WL 22232907, at *4 (N.D. Ill. Sept. 16, 2003) (ordering defendant to produce "an address list of all current and former female employees" in employment class action as "[t]he identities of these women are clearly relevant"); *Jones*, 2011 WL 1312162, at *4 (finding in employment class action "the employees' names, addresses, telephone numbers and e-mail addresses" to be "discoverable information

relevant to Plaintiffs' claims"); *Green v. Monarch Recovery Mgt., Inc.*, 1:13-CV-00418-SEB, 2014 WL 1631825, at *4 (S.D. Ind. Apr. 24, 2014) (ordering production of account histories of putative class members). Where there is no bifurcated discovery, courts have consistently allowed discovery of such information before a class is certified. *Jones*, 2011 WL 1312162, at *2 (allowing pre-certification discovery of class contact information as "[m]erit and class fact discovery are not bifurcated in this case and thus, there is only one stage of discovery"); *Green*, 2014 WL 1631825, at *4 (overruling defendants' objection to production until class action had been certified).

Here, the names and contact information of the individuals included in Defendants' amended response to Interrogatory No. 16 and the Class Data produced in response to Request for Production No. 40 are necessary to discover information pertaining to Plaintiffs' claims and Defendants' defenses. Both discovery requests seek information relating to involuntarily terminated employees whom Northrop did not pay cash severance benefits. *Supra* I.B.1. As Defendants themselves represented, the information provided in their amended interrogatory response and the Class Data pertains to laid-off employees "for which the Company's databases do not reflect that they received an offer of cash severance or a cash severance payment from the time period of January 1, 2012 through July 31, 2016." Cheng Decl. Ex. D at 3; Ex. K. These individuals likely have relevant information about Northrop's administration of their claims for cash severance benefits or the Plan, Northrop's purported reasons for denying cash severance to them, or the lack of communications by Northrop concerning its changed interpretation of the provision in the Plan regarding receipt of the Memo.

For example, if Northrop administered the individuals' claims for benefits by interpreting identical terms of the Plan differently starting October 2011 and applying them inconsistently

between granting cash severance and continued medical coverage under the Plan, that information would support Plaintiffs' ERISA § 502(a)(1)(B) claim. ECF No. 129 at 10 (asserting defense that "Plaintiffs' claims fail to establish that the plan administrator's decision to deny their claims for severance benefits were arbitrary and capricious"); *Carlson*, 196 F. Supp. 3d at 836 ("Interpretation of the same plan term in different ways is 'paradigmatically arbitrary and capricious.'") (quoting *Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 591-92 (7th Cir. 2014)). Also, information about whether the reason offered by Northrop for denying cash severance to these individuals was that they did not receive the Memo would support Plaintiffs' ERISA § 510 claim that Northrop withheld the Memo from them to interfere with their attainment of severance benefits. *Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir. 1995) ("If the employer may not deny a claim out of hand, but must evaluate claims and pay according to the terms of the existing plan, then the employer also may not prevent the terms of the plan from being satisfied."). Discovery in this case is not bifurcated. ECF No. 135. As such, Plaintiffs' request for the disclosure of these individuals' names and contact information as known to Defendants seeks relevant information.

### 2. Documents Responsive to Request Nos. 53, 55, 56, And 58 Are Relevant to Defendants' Defenses

Request Nos. 53, 55, 56, and 58 seek production of documents that serve as the basis for Defendants' response to Interrogatory No. 25. As Defendants' response to Interrogatory No. 25 now identifies more than 330 persons whom Defendants *previously identified as class members*, information and documents establishing whether these persons are members of the Class is relevant to the claims in this case. *Donnelly*, 263 F.R.D. at 503-04 (ordering defendant to produce requested class-wide documents and information "aimed at learning the basis" for defendant's defense in class action where discovery was not bifurcated); *Cox v. Sherman Capital*

10

*LLC*, 1:12-CV-01654-TWP, 2014 WL 712659, at *2, 4 (S.D. Ind. Feb. 24, 2014) (rejecting defendants' argument that requested information was not relevant as "the Court has not yet certified the matter as a class action" and ordering defendants to produce class-wide documents). The information is also relevant to whether, pursuant to ERISA § 502(a)(1)(B), Northrop's denial of cash severance benefits was arbitrary and capricious. *Russo v. Health, Welfare & Pension Fund, Loc. 705, Intern. Bhd. of Teamsters*, 984 F.2d 762, 766 (7th Cir. 1993) ("Uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious."); *Schane*, 760 F.3d at 591-92. Responsive documents may also reveal information relating to whether (a) Defendants denied cash severance to those individuals for the reasons that Defendants allege to be unrelated to the receipt of a Memo, or (b) whether Northrop interpreted and applied the eligibility provisions of the Plan consistently. As such, Request for Production Nos. 53, 55, 56, and 58 seek relevant information.[7]

### 3. Documents Responsive to Request No. 60 Are Relevant to Assessing Defendants' Claimed Interpretation of the Plan

Request No. 60 seeks copies of contracts between Northrop and its clients where severance was recoverable or reimbursable from the client *but* Northrop did not pay severance to laid-off employees under the program covered by the contract.[8] Cheng Ex. F at 7. One of Defendants' arguments in this case is that the Plan permissibly afforded discretion as to which employees to pay severance. Def. Opp. To Class Certification (D.E. # 179) at 4-5. According to

---

[7] After Plaintiffs' counsel were able to identify two absentee class members – despite Defendants' refusal to provide any contact information – Defendants issued subpoenas for documents and for depositions to those individuals, recognizing the relevance of such persons.

[8] The Technical Services Sector had only 128 contracts (aka programs) for which severance was recoverable or reimbursable in whole or in part, of which there were only 26 contracts for which employees were deemed ineligible for severance. Cheng Ex. M at NGC14312. The number of contracts responsive to Request No. 60 would be even smaller if some of those contracts had no layoffs during the period when severance eligibility was still assigned within Northrop on a program-by-program basis.

Defendants' Vice President of Human Resources and Administration for the Technical Services Sector, Northrop administered the Plan such that employees who worked on a contract where severance was recoverable or reimbursable from the client were supposed to be paid cash severance if they were laid off under that program. Cheng Decl. Ex. L at NGC06996; *id*. Ex. I ("Ussery Dep.") at 20:17-25, 41:24-42:21 (severance eligibility for Technical Services depends on "[f]unding from the reimbursement by the customer for separation, severance") & at 73:20-74:11 (explaining affordability meant "that the sector couldn't afford to give the severance because it wasn't reimbursed"); *id*. at 88:2-89:3. Despite that testimony and the ability of Northrop to charge their client for severance, Defendants' documents suggest that Northrop did not even pay severance to all employees on a contract where severance was recoverable from the client. *E.g*., Cheng Ex. M at NGC14312 (revealing that 26 ILMD programs within Technical Services that were under a contract where severance was recoverable were not severance-eligible under the Plan); *id*. Ex. J ("Fonseca Dep.") at 212:24-213:25 (confirming certain severable-recoverable programs were not severance-eligible under the Plan) & 221:9-22 (conceding that Northrop did not necessarily pay severance to employees "even though it could be recovered"); *id.* Ex. N at NGC14316; Fonseca Dep. at 235:8-15 (collected information based on programs by division concerned "whether or not their severance is recoverable and how"); *id*. at 236:21-236:22 & 238:5-239:12.. The contracts sought by Request No. 60 likely have information relating to which program was severance-recoverable, *but severance was nonetheless **not paid***.[9]

---

[9] Plaintiffs would have simply requested a list, but apparently Northrop either did not keep such a list or did not preserve such a list even though its managers were explicitly and formally advised to maintain such a list. Ex. O at NGC13454 ("The division HR director is responsible for maintaining a list of programs on which laid-off employees have received severance and a list of programs on which laid-off employee[s] have not received severance."). In order to alleviate Defendants' concerns about the production of the actual documents, Plaintiffs' counsel offered on July 31, 2017 to accept, in lieu of copies of the contracts, a list of programs and contracts for

This information is at least relevant to the issue of whether Defendants' representation regarding Northrop's administration of the Plan is consistent with its actual practice or whether Northrop administered the terms of the Plan inconsistently and its denial of benefits was arbitrary and capricious. As Defendants were obviously able to compile information as to which programs had recoverable severance when they needed to compile charts in 2012 for their own internal purposes, they cannot claim that such information is too burdensome now.

### C. The Discovery Requests Are Proportional to the Needs of the Case

Rule 26(b) sets forth the following factors for considering whether a discovery request is proportional to the needs of the case: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts have recognized that proportionality often depends on the relevance of the discovery request. *W. Loop Chiropractic & Sports Injury Ctr., Ltd. v. N. Am. Bancard*, LLC, 16-CV-5856, 2017 WL 404896, at *2 (N.D. Ill. Jan. 30, 2017) (finding proportionality "considering the potential relevance of the information requested"); *Elliott v. Super. Pool Products, LLC*, 15-CV-1126, 2016 WL 29243, at *2 (C.D. Ill. Jan. 4, 2016) ("the concept of proportionality often turns on how 'central' (or relevant) the proposed discovery may be); *Goodman v. Shalimar Invs., LLC*, 414CV00079SEBTAB, 2016 WL 3936048, at *2 (S.D. Ind. July 21, 2016) (finding deposition topic proportional as it was "important for resolving Plaintiffs' negligence claim"). All of the discovery requests at issue seek information that is directly relevant to Defendants' defenses and arguments relating to administration of the Plan, and purported reasons for denying cash

---

which severance was recoverable or reimbursable but where Northrop did not provide severance to employees working on the contract. Defendants did not respond to this offer.

severance, as well as potential exclusion of certain putative members of the Class from relief. *Supra* II.B. As such, factors 1 and 5 concerning the importance of the issues at stake and of the discovery in resolving the issues favor the proportionality of the discovery requests.

The remaining factors also support the proportionality of the discovery requests. First, since both Plaintiffs would have received the maximum 26 weeks of pay in cash severance, Northrop owes Alan Carlson and Peter DeLuca over $68,000 and $77,000, respectively (based on multiplying their weekly salaries by 26 weeks). Based on the Class Data, the unpaid cash severance benefits owed to the hundreds of putative class members in this case is estimated to be at least $7.4 million without interest. Plaintiffs also seek under Count III "reformation of the Plan's terms to reflect the pre-October 2011 understanding of the notice provision under 29 U.S.C. § 1132(a)(3)(B)," the outcome of which would protect current employees at the time of layoff from the same practices giving rise to this litigation. *Carlson*, 196 F. Supp. 3d at 834. The amount in controversy, together with the "employment practices" at issue, favors the proportionality of the discovery requests. *See* Fed. R. Civ. P. 26 Advisory Committee Notes, 2015 Amendment ("the rule recognizes that many cases in public policy spheres, such as employment practices . . . may have importance far beyond the monetary amount involved).

Second, unlike the two former Northrop employees, Northrop is a multi-billion dollar corporation with over $24.5 billions in sales, $3.1 billion in operating income, and $25.6 billion in assets in 2016.[10] Third, the information sought is solely in the possession of Defendants, so Plaintiffs have no means to access the information other than requesting Defendants to provide it. Fed. R. Civ. P. 26 Advisory Committee Notes, 2015 Amendment ("the burden of responding to discovery lies heavier on the party who has more information, and properly so"); *Pope v.*

---

[10] Northrop Grumman Corporation 2016 Annual Report at 40-41, available at http://www.northropgrumman.com/AboutUs/AnnualReports/Documents/pdfs/2016_noc_ar.pdf.

*Mendenhall*, 19 F.3d 22, at *3 (7th Cir. 1994) ("mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Finally, the burden and expense of the discovery requests at issue do not outweigh the benefit of disclosure explained above. For example, Defendants' response to Request Nos. 53, 55, 56, and 58 raises the same boilerplate objection stating without specificity:

> the unduly burdensome nature of requesting information and documents on individuals in other programs and sectors, in other time periods, or who did not receive severance under different circumstances, all of whom Plaintiffs have not yet provided any cognizable theory that they can adequately represent.

Cheng Decl. Ex. F at 7, 9, 10, and 12. Defendants' boilerplate objections fail to meet the burden of showing why disclosure is improper. *Kelley*, 2012 WL 1108135, at *2; *Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (finding that "boilerplate" objections are "an insufficient basis to refuse to comply with discovery" and "tantamount to not making any objection at all" and ordering compliance with discovery requests). Also, discovery here is not bifurcated. Further, despite raising the same boilerplate objection to Interrogatory Nos. 16 and 25 (Cheng Decl. Ex. D at 3; *id*. Ex. H at 6), Defendants compiled and provided the Class Data and their amended response to Interrogatory No. 16 with respect to each Northrop sector, and responded to Interrogatory No. 25 by stating with respect to each of more than 330 former employees a reason for severance nonpayment that is purportedly unrelated to the receipt of a Memo. *Supra* I.B. Defendants' objection to Request Nos. 53, 55, 56, and 58 fails to explain why production in response to these follow-up requests is too burdensome now. Thus factors 2, 3, 4, and 6 under Rule 26(b)(1) favor the proportionality of the requests.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.

15

Dated: August 2, 2017                 Respectfully submitted,

*/s/ Vincent Cheng*
Vincent Cheng
Block & Leviton LLP
610 16th Street, Suite 214
Oakland, CA 94612
Tel: 510-543-0489
Email: vincent@blockesq.com

R. Joseph Barton
Block & Leviton LLP
1735 20th Street, NW
Washington, DC 20009
Tel: 202-734-7046
Email: jbarton@blockesq.com

Michael Bartolic
Roberts Bartolic LLP
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Email: mbartolic@robertsbartolic.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that, on August 2, 2017, a copy of the foregoing was served by operation of the Court's electronic filing systems upon all counsel of record.

*/s/* Vincent Cheng
Vincent Cheng