IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON and PETER DELUCA<br><br>Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,<br><br>Defendants. | Case No. 13-cv-2635<br><br>District Court Judge Andrea R. Wood |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORY NO. 16 AND REQUEST FOR PRODUCTION NOS. 40, 53, 55, 56, 58 AND 60**

Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Samuel Myler (No. 6309477)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
LHammargren@mayerbrown.com
SMyler@mayerbrown.com

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

**INTRODUCTION**

This case began as a fairly straightforward claim for cash severance benefits by two individuals formerly employed in the Technical Services sector of Northrop Grumman Corp. ("Northrop") in Rolling Meadows, Illinois. At all relevant times, the Northrop Grumman Severance Plan ("Plan") provided that employees were eligible for cash severance only if they satisfied several criteria. For example, employees must have signed a separation agreement and released any and all claims against Northrop. In addition, employees must have "receive[d] a memo" from Human Resources "addressed" to the employee and "notifying" him or her of "eligibility for this benefit." Dkt 162-1 at 4; Dkt. 162-4 at 6. It is undisputed that neither Mr. Carlson nor Mr. DeLuca received any such memo prior to their termination. Pursuant to the Plan's express terms, Northrop deemed them ineligible for severance.

The function of the Plan's memo requirement is to give management discretion over when to award severance in light of business needs and circumstances. That is commonplace. As the Seventh Circuit has held, "[t]here's nothing wrong under ERISA with a system that gives plan administrators discretion" to award employee benefits like severance. *McNab v. General Motors Corp.*, 162 F.3d 959, 961 (7th Cir. 1998). Indeed, in *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153 (3d Cir. 1999), the Third Circuit, citing *McNab*, explained that it is "[o]bvious[]" that "an employer may make a determination as to the appropriateness of granting severance pay based on the circumstances of each case" and further that "past practice cannot control [the employer's] exercise of discretion in other circumstances." *Id*. at 162; *see also Nevill v. Shell Oil Co.*, 835 F.2d 209, 211-12 (9th Cir. 1987) (upholding decision not to offer severance under plan that "allows Shell management to offer severance benefits deemed necessary to make workforce adjustments"). That well-established principle all but resolves this case.

Undaunted, Plaintiffs have sought to transform a lawsuit based on their program's particular decision not to award them severance into a sprawling class action that challenges hundreds of individualized severance decisions across any number of different sectors, programs, and locations over a four-year period. Plaintiffs' amended complaint purports to sue on behalf of a putative class consisting, in relevant part, of "[a]ll persons who worked for Northrop Grumman in the United States" and were laid off after 2012, and who "did not receive written notification from management . . . notifying them of their eligibility for severance benefits under the Plan," and accordingly "did not receive the 'Cash Portion' of the severance benefits." Dkt. 62 ¶ 40(a).

Plaintiffs moved to certify this class on January 4, 2017. Dkt. 160. In their briefs, they explained that the class would consist of "employees who otherwise met the requirements to be participants, but 'who were not given written notification of their eligibility for severance benefits.'" Dkt. 161 at 8. "In other words," Plaintiffs said, the putative class "consists of Northrop employees who met *all of the other eligibility requirements for severance except that they did not receive a memo*." Dkt. 182 at 2 (emphasis added); *see also id*. at 9-10. Defendants vigorously opposed the motion. Dkt. 179. The motion for class certification is still pending, and no class has yet been certified by this Court.

Remarkably, Plaintiffs now wish to go even further. They have moved to compel Defendants to provide names, addresses, and documents not only for former employees who were denied severance because they did not receive a memo, but also for persons who did not receive cash severance for reasons *unrelated* to the memo requirement. Plaintiffs apparently believe that their lawsuit implicates every instance in which an employee was deemed ineligible for severance under the Plan, regardless of whether, pursuant to the class definition, the employee "met all of the other eligibility requirements for severance except that they did not

2

receive a memo." Dkt. 182 at 2. Plaintiffs' requests are irrelevant, overbroad, and clearly disproportionate. The motion to compel should therefore be denied.

## BACKGROUND

Plaintiffs have moved to compel responses to their Interrogatory No. 16, Request for Production ("RFP") No. 40, and to several requests contained in their Sixth Set of Requests for Production. Dkt. 203 ("Mem.") at 8-11. Plaintiffs also sought to compel responses to RFP No. 60, which seeks certain Northrop contracts. Mem. at 11-13. The parties have conferred and made certain stipulations that have resolved the disputes related to RFP No. 60, *see* Dkt. 207, and this portion of the Motion is accordingly moot. Declaration of Laura Hammargren ("Hammargren Decl."), ¶ 2. The requests that are still in dispute are outlined below.

**I.     INTERROGATORY NO. 16 AND RFP NO. 40.**

Plaintiffs' Interrogatory No. 16 asks:

> For any person who was included in the number of active participants on the Plan's Form 5500 who were eventually Involuntarily Terminated but did not receive both Health Severance and Cash Severance, identify that person by (a) name, (b) address, (c) title at time of termination, (d) sector and division where employed at time of termination, (d) the contract on which he or she worked, (e) the amount of Cash Severance to which the person would have been entitled under the Plan, (f) Week of Pay (as defined in the Plan), and (g) Years of Service (as defined in the Plan).

Dkt. 203-2 at 7. In plain English, Interrogatory No. 16 asks Defendants to identify by name, address, and other information every person listed as potentially eligible for severance in the Form 5500 who did not receive cash severance for any reason.[1]

---

[1] Plaintiffs' single-minded focus on the Form 5500 appears to stem from a basic confusion about what the Form indicates. As Defendants explained in their opposition to the motion to class certification, "Plaintiffs seem to think that the disclosure in the Form 5500 is an admission that all employees . . . listed as Plan participants on the Forms were eligible for Plan benefits even if they did not meet the Plan's express eligibility criteria. But . . . as Northrop explained in its interrogatory response . . . , the employees listed on the Form 5500 were 'included as *potentially* eligible for benefits.'" Dkt. 179 at 9-10.

3

Defendants objected to this Interrogatory on several grounds, including that Plaintiffs failed to limit their request to the *sine qua non* of the putative class—individuals who did not receive severance based on the non-receipt of a memo. *See* Hammargren Decl., Ex. 1 (Defendants' original interrogatory response) at 9-10. Defendants' response also included an objection to requests for "personal, private, sensitive employee information." *Id*. at 4. However, in good faith, Defendants agreed to identify, in the aggregate and based on information that had been reasonably available to Defendants at the time:

> individuals included as potentially eligible for benefits in the Plan's Form 5500, who worked 20 hours or more per week, were not Service Contract Act employees or Union employees at the time of termination, were part of an involuntary layoff or reduction in force, and for which the Company's databases do not reflect that they received an offer of cash severance or a cash severance payment from the time period of January 1, 2012 through July 31, 2016.

Dkt. 203-5 at 4-5. Defendants identified approximately 750 total persons who met these criteria across six different sectors. *Id*. Following several meet-and-confers about Defendants' response to Interrogatory No. 16, Defendants agreed in good faith to produce additional information about these individuals. *See* Hammargren Decl., Ex. 2 (December 23, 2016 Letter) at 3; *id*., Ex. 3 (December 30, 2016 Letter). The parties agreed that Defendants did not need to produce the contact names and addresses of the individuals previously identified in aggregate.

Plaintiffs' RFP No. 40 requested extremely similar information as Interrogatory No. 16, except for the fact that RFP No. 40 sought "data in electronic form sufficient to identify" such individuals. Dkt. 203-3 at 7-8. Defendants objected on the grounds that the request was duplicative to Interrogatory No. 16 and because such documents would not be created in the regular course of business. Defendants understood that the parties' conferences and agreements regarding Interrogatory No. 16 also addressed RFP No. 40. *See* Hammargren Decl., Ex. 2 and 3.

4

**II.    INTERROGATORY NO. 25 AND RFP NOS. 53, 55, 56 AND 58.**

Plaintiffs subsequently served an additional Interrogatory request seeking further information about the response to Interrogatory No. 16. Plaintiffs' Interrogatory No. 25 asked:

> To the extent that You contend that the reason why any Class Member or any person included in the Class Data did not receive a memo or did not receive severance (other than for lack of receipt of an Eligibility Memo) is relevant, for each person set forth the reason that you contend that person did not receive severance (along with sufficient information to allow Plaintiff's [*sic*] counsel to identify the person in the Class Data connected to the reason that You identify).

Dkt. 203-9 at 5. Again in plain English, Interrogatory No. 25 asks Defendants to detail which of the 750 persons identified in aggregate in response to Interrogatory No. 16 were denied severance for reasons other than the memo requirement.

Defendants objected to Interrogatory No. 25 on several grounds. Most importantly, Defendants objected to the implication that the information produced in response to Interrogatory No. 16 represented information related to the putative class. Dkt. 203-9 at 6-7. Defendants have never characterized, and strongly objected to the characterization of, this data as "Class Data," particularly as a class has not been certified and the information requested and produced in response to Interrogatory No. 16 was substantially broader than the proposed class definition. *Id*.

Without waiving their objections, Defendants agreed to perform a preliminary investigation into the reasons why the individuals they had identified in aggregate in response to Interrogatory No. 16 did not receive severance. Dkt. 203-9 at 6-7. For example, pursuant to the terms of the Plan, employees would not receive severance if they had initiated legal action at the time of termination; Northrop preliminarily identified seven such employees out of the group of 750 employees identified in response to Interrogatory No. 16. *Id*. at 6. Under Plaintiffs' own definition, these seven employees would not be part of the putative class, because they likely did not "meet all of the other eligibility requirements for severance except that they did not receive a

5

memo." Dkt. 182 at 2. Nevertheless, Defendants used the results of their investigation to categorize by employee ID number approximately 330 individuals who, on the basis of the preliminary investigation, were likely denied severance for reasons other than the memo requirement. Mem. at 4; Dkt. 203-9 at 6-7.

Plaintiffs then served their Sixth Set of Requests for Production. *See* Dkt. 203-4. Among other things, these requests, numbered 52 to 60, asked for information and documents *proving* that Defendants' categorical, verified response to Interrogatory No. 25 provided the true reasons that the 330 categorized individuals did not receive severance. Defendants objected to providing such documents on several grounds, including the burden of pulling human resource files for hundreds of employees when a class has not been certified, particularly when Plaintiffs' original discovery requests exceeded the scope of the putative class definition. Dkt. 203-7. In a final attempt to reach a compromise on these issues, Defendants provided Catherine Turner, a Rule 30(b)(6) witness, to testify as to how the persons identified in Interrogatory No. 25 were categorized and what the categories mean. Plaintiffs took Ms. Turner's deposition on that topic on July 28, 2017. Hammargren Decl., Ex. 4. This Motion followed.

## ARGUMENT

Plaintiffs' Motion to Compel exemplifies their continued distortions of the claims and issues in this case. Plaintiffs previously told the Court that "[t]he central dispute in this case concerns a provision in the Plan providing for a memo to be delivered to the employee notifying him or her of his eligibility for benefits" and, in particular, Northrop's alleged decision in 2011 to "change[] its interpretation of the Plan making receipt of a Memo a condition of eligibility." Dkt. 161 at 1. The notion that Northrop changed the way in which it "interpreted" the memo

6

requirement is Plaintiffs' own invention. No evidence has emerged during discovery to validate it. Nevertheless, Plaintiffs' demands now go far beyond even this unsubstantiated theory.

First, Plaintiffs seek names and contact information for all 750 persons identified in aggregate in response to Interrogatory No. 16. As Defendants' response to Interrogatory No. 25 illustrates, however, hundreds of the persons so identified did not get severance for reasons that have nothing to do with the memo requirement. Plaintiffs cannot possibly need *those* names and contact information, since such employees are not putative class members under Plaintiffs' own definition. As for employees who (like Plaintiffs) were denied severance because they did not receive a memo, Plaintiffs have not shown how the names and contact information they seek will lead to relevant information for their own claims, and no class has been certified in any event.

Second, Plaintiffs seek documents related to the 330 or so employees that Defendants preliminarily determined did not receive severance for a reason other than the memo requirement. But just as with Plaintiffs' request for these employees' names and contact information, the documents Plaintiffs request are irrelevant to this case. Employees who were denied severance on a *different* basis than Plaintiffs are not similarly situated to Plaintiffs or in any way relevant to Plaintiffs' (or the putative class's) claims. Plaintiffs cannot possibly need documents related to those denials to support Plaintiffs' own, memo-based claims.

I.  **PLAINTIFFS SEEK IRRELEVANT NAMES AND CONTACT INFORMATION.**

Plaintiffs argue that the names and contact information of the individuals included in Defendants' amended response to Interrogatory No. 16 are discoverable because these "putative class members likely have information that is relevant to plaintiff's [sic] class claims." Mem. at 8. Plaintiffs are wrong on several counts.

*First*, no class has been certified (or should be certified) in this case. The Supreme Court has held that a request for "class members' names and addresses" ordinarily does not fall within

7

the scope of discovery defined by Civil Rule 26. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-56 (1978). Generally speaking, therefore, the Federal Rules do not obligate defendants "to produce contact information to facilitate plaintiff's pre-certification contact with putative class members." *Johnson v. Bankers Life & Cas. Co.*, 2013 WL 5442374, at *1 (W.D. Wis. Sept. 30, 2013).[2] To be sure, *Oppenheimer* acknowledged that "[t]here may be instances where this information could be relevant to issues that arise under Rule 23." 437 U.S. at 364 n.20. But that exception clearly does not apply here. Plaintiffs' motion for class certification is fully briefed and Plaintiffs do not suggest they need further discovery with regard to Rule 23's requirements.

*Second*, and in any event, many of the persons whose names and contact information Plaintiffs seek are not members of the putative class. As Defendants have explained to Plaintiffs on several occasions, the aggregate numbers that Defendants provided include hundreds of former employees who did not receive severance for reasons *unrelated* to the memo requirement. These employees did not meet "all of the other eligibility requirements for severance" besides the memo requirement (Dkt. 182 at 2), so they would not be part of the putative class.

Plaintiffs cannot show how names and contact information for non-class members will lead to any relevant information in this case. Suppose that Plaintiffs obtain the contact information for a former employee that did not receive severance because he or she did not sign and return a separation agreement. What questions could they ask that person that would

---

[2] *See, e.g.*, *Turner v. Allstate Ins. Co.*, 2016 WL 7155751, at *2 (M.D. Ala. Dec. 7, 2016) (denying motion to obtain information about putative class members); *Gazzara v. Pulte Home Corp.*, 2016 WL 4529526, at *3 (M.D. Fla. Aug. 30, 2016) ("names and addresses of class members are ordinarily not discoverable at the precertification stage"); *In re Jimmy John's Overtime Litig.*, 2016 WL 8950085, at *1-2 (N.D. Ill. Apr. 12, 2016) (denying request for contact information for putative class members); *Swelnis v. Universal Fid. L.P.*, 2014 WL 1571323, at *2 (N.D. Ind. Apr. 17, 2014) ("it is usually inappropriate for a Court to order a defendant to hand over name and address information for *all* the potential class members"); *Robbins v. NCO Fin. Sys., Inc.*, 2006 WL 3833352, at *5 (N.D. Ind. Dec. 12, 2006) (denying request for names and addresses of putative class members where "[t]he balance of [plaintiff's] arguments for expanding pre-certification discovery admittedly regard the post-certification merits of the case").

conceivably be relevant to Plaintiffs' own claims that they should have received severance despite the lack of a memo? How does the fact that Northrop enforced a separate requirement for severance eligibility in that person's case show that Northrop improperly enforced the memo requirement when it came to Plaintiffs?

One example Plaintiffs give about why such information may be relevant is that "if Northrop administered the individuals' claims for benefits by interpreting identical terms of the Plan differently starting October 2011 and applying them inconsistently . . . that information would support Plaintiffs' ERISA § 502(a)(1)(B) claim." Mem. at 9-10. However, the information produced in response to Interrogatory No. 16 is limited to individuals laid off after January 1, 2012 (per the alleged class definition). The names and contact information for these individuals would not lead to evidence of Northrop's practices before October 2011. Nor would evidence of inconsistent interpretation with respect to *other* employees show inconsistent interpretation with respect to Plaintiffs. Another example is that "information about whether the reason offered by Northrop for denying cash severance to these individuals was that they did not receive the Memo would support Plaintiffs' ERISA § 510 claim that Northrop withheld the Memo from them to interfere with their attainment of severance benefits." Mem. at 10. But these individuals were denied severance on a basis *other* than the memo requirement, so that purported justification does not wash, either.

***Finally***, Plaintiffs have failed to show the relevance of their request even for those persons who are potentially putative class members. Plaintiffs claim to need names and contact information in order to learn about "Northrop's administration of [individual's] claims for cash severance benefits," "Northrop's purported reasons for denying cash severance," and "the lack of communications by Northrop concerning its changed interpretation . . . regarding receipt of the

9

Memo." Mem. at 9. Plaintiffs have not pointed to any evidence that there *was* a "changed interpretation" regarding the memo at all. But even assuming such evidence existed—it does not—Plaintiffs would not find it by looking at persons denied severance. By definition, Northrop treated persons denied severance because they did not receive a memo *the same* as Plaintiffs. Plus, as noted above, Interrogatory No. 16 only asks about persons laid off after January 2012. Such persons would not be able to give evidence of a changed practice before that point.

Plaintiffs' other reasons for relevance also do not suffice. *See* Mem. at 9-10. Plaintiffs already know Northrop's "reasons" for denying them severance and what Northrop's communications were to them regarding the memo requirement. They do not need to speak to other persons denied severance to get that information. And Plaintiffs' theory that by not awarding a memo to these employees Northrop engaged in unlawful interference with the employees' attainment of severance benefits under § 510 of ERISA is both legally deficient and currently irrelevant. *Id*. It is legally flawed because, among other things, it would nullify *McNab*'s holding that there is "nothing wrong under ERISA with a system that gives plan administrators discretion." 162 F.3d at 961. And it is irrelevant because the Court has not certified (and may never certify) a class in this case, so there is no reason to do discovery now on possible § 510 claims held by persons who may or may not be putative class members.[3]

In short, Plaintiffs have not provided any reason why Defendants should be forced to provide, before a class has been certified, the names and contact information of putative class members and others denied severance. And the cases cited by Plaintiffs offer no more support. They stand principally for the unremarkable proposition that a plaintiff can conduct pre-

---

[3] Plaintiffs have noted that discovery is not bifurcated. Mem. at 2. As mentioned, Defendants vigorously oppose class certification. Dkt. 179. But *if* the Court certifies a class, information sought by Interrogatory No. 16 might become relevant and Defendants would be willing to revisit producing documents related to this request. Nevertheless, this merely underscores why, especially with a class certification motion pending, Defendants should not have to bear the time and expense of producing this information now.

10

certification class discovery if the information sought is relevant to the named plaintiff's individual claims. In *Wiginton v. Ellis*, 2003 WL 22232907 (N.D. Ill. Sept. 16, 2003), the plaintiffs brought a lawsuit alleging a "nationwide pattern and practice of sexual harassment at the offices of" the defendant. *Id*. at *1. The *Wiginton* plaintiffs asked the court to order the defendant to produce "an address list of all current and former female employees since January 1, 1997." *Id*. at *4. The court observed that "statistical evidence may potentially be used by Plaintiffs at the class certification and trial stage." *Id*. Plaintiffs here have not made any such showing with respect to any of the persons covered by Defendants' aggregate response.[4]

*Jones v. National Council of Young Men's Christian Associations of U.S.*, 2011 WL 1312162 (N.D. Ill. Mar. 31, 2011), is similarly inapposite. There, in another pattern or practice case, the court found that the plaintiffs' requests for contact information for other employees was "relevant, and thus, discoverable" because it was potentially relevant to "*their* claims and defenses." *Id*. at *3 (emphasis added). And in *Green v. Monarch Recovery Management, Inc.*, 2014 WL 1631825 (S.D. Ind. Apr. 24, 2014), the plaintiff sought discovery from a debt collector on the account histories of putative class members. The plaintiff argued that she was entitled to this discovery "in order to evaluate the merits of the class action claims and to contact potential witnesses to the matter before the Court." *Id*. at *4. Plaintiffs have not suggested that they seek information on the merits of class claims and none of the persons they seek are "potential witnesses" to Plaintiffs' claims.

In sum, Plaintiffs have not made the most basic showing of relevance for the information they seek, much less that "the names and contact information of the individuals included in

---

[4] Furthermore, as the court in *Wiginton* observed, the plaintiff's request for contact at least matched their class theory: the "putative class includes all current and former female employees so the request is not overbroad." 2003 WL 22232907, at *4. Here, by contrast, Plaintiffs' request is clearly overbroad, because it pertains to hundreds of employees who fall outside the class definition.

11

Defendants' amended response to Interrogatory No. 16 . . . are necessary to discover information pertaining to Plaintiffs' claims and Defendants' defenses." Mem. at 9. For that reason, their request to compel production of this information should be denied.

## II.     PLAINTIFFS SEEK IRRELEVANT DOCUMENTS.

Plaintiffs' Requests for Production No. 53, 55, 56, and 58 seek to force Defendants to produce documents showing that the persons identified by employee ID in response to Interrogatory No. 25 were in fact appropriately denied severance under the terms of the Plan.[5] For example, with respect to employees denied severance because they had initiated a legal action at the time of termination, Plaintiffs seek all documents "initiating any such legal action, any orders in that action and documents reflecting the resolution of such action." Dkt. 203-4 at 6 (RFP No. 53). Suffice it to say, this is not a case about whether Northrop properly denied severance to persons who initiated legal action at the time of termination. Pleadings, court orders, and judgments or settlements reached in any such lawsuit would shed no light on the claims or defenses at issue here.

Plaintiffs grasp at straws to show relevance. They cite *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500, 503 (N.D. Ill. 2009), a TCPA case where the court permitted discovery requests "aimed at learning the basis for [the defendant's] prior express consent defense." Mem. at 10. There, the defendant had "stress[ed] that it intend[ed] to oppose class certification based solely on the fact that Plaintiff himself gave prior express consent" and argued that consent of putative class members was relevant to certification as well. *Id.* The court concluded that discovery related to consent by putative class members was appropriate. Here, by

---

[5] Plaintiffs assert that Defendants "previously identified" these individuals as "class members." Mem. at 10. As described above, that is incorrect. Defendants have never characterized aggregate data provided in response to Interrogatory No. 16 as class data, because no class has been certified and because the information requested and produced is substantially broader than the class definition. *See supra* p. 5.

contrast, Defendants have not raised the existence of a prior legal action (or any other non-memo eligibility requirement) as a defense to Plaintiffs' claims. Discovery on these issues will do nothing to help Plaintiffs "learn the basis" for Defendants' position in this case.

Plaintiffs also argue that the documents they seek will show "whether . . . Northrop's denial of cash severance benefits was arbitrary and capricious." Mem. at 11. But, unsurprisingly, they do not explain why. There is nothing arbitrary in denying severance to an individual because of a lawsuit against the company at the time of termination on the one hand, and denying it to the Plaintiffs on the other because their managers, in the exercise of Plan-conferred discretion, decided not to provide a memo required for eligibility. Similarly, Plaintiffs assert that responsive documents will reveal information relating to whether Defendants denied cash severance for reasons besides the receipt of a memo. *Id*. That is true, but has nothing to do with Plaintiffs' claims in this case. Finally, Plaintiffs contend that the requested documents will show whether Northrop applied Plan eligibility provisions consistently. *Id*. That ignores that Plaintiffs' core claim is that Northrop did not interpret and apply the memo requirement consistently. That does not mean Plaintiffs are entitled to do discovery on how Northrop interpreted and applied every *other* eligibility requirement for severance as well.

### III. EVEN IF MARGINALLY RELEVANT, PLAINTIFFS' REQUESTS ARE UNDULY BURDENSOME AND NOT PROPORTIONAL.

Even if Plaintiffs' requests did have some tenuous relevance, the Court should still deny the Motion because the requests are disproportionately burdensome. As Plaintiffs' concede, proportionality must be evaluated in the context of "the relevance of the discovery request." Mem. at 13. Plaintiffs' requests have little or nothing to do with their claims or Defendants' defenses. And complying with these requests would require Defendants to review individual personnel, court, and legal files, and redact sensitive personal or privileged information.

13

As an example of the undue burden associated with Plaintiffs' requests, RFP No. 58 seeks documents sufficient to demonstrate whether employees were in fact terminated as part of an incumbent transfer and the time at which the termination occurred. Dkt. 203-4 at 7. Catherine Turner testified on behalf of Northrop Grumman that there was no records repository that could be used to determine conclusively whether a particular employee was offered a position with comparable responsibilities and therefore ineligible for severance. Instead, Defendants would need to make individualized inquiries with different HR and management departments across the entire company to see if relevant records existed and were available. Hammargren Decl., Ex. 4 at 121-23 ("it would take going to the individual HR people and to the extent that they still have records that would give that kind of indication"). Turner further explained that "[t]here is no systematic collection" of the types of data sought by this request. *Id*. at 137.

Plaintiffs state generically that Northrop is a large company with large sales. But the mere fact that Northrop enjoys significant revenue does not justify expensive and largely irrelevant discovery on issues tangentially relevant to the case. Further, to the extent Plaintiffs' allege they need this information to verify Defendants' (already verified) response to Interrogatory No. 25, Defendants have already provided a 30(b)(6) witness on the topic.

Finally, Plaintiffs try to play up the importance of their case, noting that "the unpaid cash severance benefits owed to the hundreds of putative class members . . . is estimated to be at least $7.4 million without interest." Mem. at 14. Such speculation is premature. No class has been certified. To the contrary, the fact that Plaintiffs now apparently wish to do individualized discovery on each of the many reasons Northrop might have denied severance to hundreds of employees under the Plan is just one more reason why this case is inappropriate for class treatment. Plaintiffs told the Court that their claims "stem from Defendants' failure to provide

14

severance benefits based on the uniform practice that employees who failed to receive a Memo were ineligible for severance." Dkt. 161 at 18. Now that Plaintiffs apparently believe that information about persons denied severance for other, unrelated reasons is somehow relevant to the class claims, it is hard to see how they can think themselves typical or adequate representatives when their own claims are firmly rooted in the memo requirement.

## CONCLUSION

At bottom, this case concerns a discrete exercise of Northrop's Plan-conferred discretion. It does not call for an open-ended inquiry into all of the criteria for severance eligibility throughout the company. It has long been held that "the purpose of the pre-trial discovery rules . . . is to enable the parties to prepare for trial with respect to their own bona fide existing claims, not to determine whether third parties may have similar claims." *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 283 (S.D.N.Y. 1967). Yet even though no class has been (or should be) certified, Plaintiffs have demanded vast amounts of irrelevant information about third-parties that will burden Defendants but will do little or nothing to help resolve Plaintiffs' individual claims. Under these circumstances, authorizing a fishing expedition with respect to putative class members—let alone with respect to hundreds of *non*-class members—would be contrary to the Federal Rules' purpose of "secur[ing] the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Plaintiffs' motion to compel further responses to Interrogatory No. 16 and Request for Production No. 40, 53, 55, 56, and 58 should be denied.[6]

---

[6] As stated above (*see supra* p. 3), the parties have resolved the disputes related to Request for Production No. 60, and that portion of Plaintiffs' Motion is accordingly moot. Hammargren Decl., ¶ 2; Dkt. 207.

Date: August 24, 2017                              Respectfully submitted,


                              /s/ Nancy G. Ross
Nancy G. Ross (No. 6190243)
Laura Hammargren (No. 6310920)
Samuel Myler (No. 6309477)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Severance Plan*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on August 24, 2017.

/s/ Nancy G. Ross
Nancy G. Ross
