IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON and PETER DELUCA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 13-cv-02635 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| NORTHROP GRUMMAN CORPORATION | ) |
| and the NORTHROP GRUMMAN | ) |
| SEVERANCE PLAN, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff's motion to compel production of unredacted versions of redacted documents produced by Defendants [195] is granted in part and denied in part. Defendants must produce an unredacted version of the document Bates-stamped NGC24959–NGC24962. Defendants also must either produce an unredacted version of the document Bates-stamped NGC06996–NGC06998 or provide the Court with additional information in a supplemental filing to support withholding the document. Defendants shall produce the documents and/or file supplemental information consistent with this Order by no later than 2/12/2019. Status hearing set for 2/6/2018 is stricken and reset for 3/1/2018 at 9:00 AM.

**STATEMENT**

### I. Background

Plaintiffs Alan Carlson and Peter DeLuca have sued Defendants Northrop Grumman Corporation ("Northrop") and the Northrop Grumman Severance Plan ("Plan"), challenging Defendants' failure to pay cash severance benefits to terminated employees pursuant to the ERISA-governed Plan.[1]

The Plan's terms provided that an employee was eligible for benefits if he had received a memo notifying the employee of his eligibility. Plaintiffs did not receive the memo and did not receive cash severance benefits. They assert that prior to 2011, Northrop treated the memo as merely a notification of eligibility. But in 2011, Northrop changed its interpretation and began treating the memo as a condition of eligibility for the receipt of benefits. The Plan's terms also provided that Northrop was the Plan administrator, that the Plan designated its Chief Human Resources and Administrative Officer as the administrator, and that a designated administrator

---

[1] The Court previously detailed the allegations in the complaint in its prior opinion, *Carlson v. Northrop Grumman Corporation*, 196 F. Supp. 3d 830, 833–34 (N.D. Ill. 2016). Thus, the Court here provides only a brief summary of the allegations relevant to the parties' current dispute.

could delegate any of its administrative or fiduciary authority to other Northrop officers or employees. The authority to hear appeals was delegated to the Corporate Severance Plan Review Committee ("Committee").

Count I of Plaintiffs' complaint seeks clarification of benefit rights and benefits due under 29 U.S.C. § 1132(a)(1)(B), which allows civil actions to recover benefits due under ERISA plans, to enforce rights under such plans, or to clarify rights to future plan benefits. Count II alleges a violation of 29 U.S.C. §1140, which makes it unlawful for any person to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary" for exercising plan rights or to interfere with the exercise of any future rights. And Count III alleges that Northrop violated its fiduciary obligations to prospective Plan participants by failing to advise them of the company's changed use of the notice provision from a purely administrative step to a substantive disqualification method, and seeks reformation of the Plan's terms to reflect the pre-October 2011 understanding of the notice provision under 29 U.S.C. § 1132(a)(3)(B).

During discovery, Defendants produced redacted versions of the documents Bates–numbered NGC06996–NGC06998, NGC13928–NGC13932, NGC07121–NGC07131,[2] and NGC24959–NGC24962. Defendants assert that the redacted information is covered under the attorney-client privilege and work-product doctrine. Now before the Court is Plaintiffs' motion to compel production of unredacted versions of the documents. (Dkt. No. 195.)

**II.    Discussion**

When legal advice is sought from a professional legal adviser acting in such a capacity, communications relating to that purpose, made in confidence by the client, are protected by the attorney-client privilege. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). A party seeking to invoke the attorney-client privilege in order to avoid producing otherwise discoverable information has the burden of establishing all of its essential elements. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). That party also must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The inquiry into whether documents are subject to a privilege is highly fact-specific. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). Only "when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *Id.*

The Seventh Circuit recognizes a fiduciary exception to the attorney-client privilege in ERISA cases. Under ERISA, a person is a fiduciary with respect to an employee benefits plan when "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002 (21)(A)(iii). The fiduciary exception provides that "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an

---

[2] Northrop subsequently agreed to provide Plaintiffs with an unredacted version of NGC07121–NGC07131 document. (Defs. Resp. to Mot. to Compel at 8, Dkt. No. 199) As a result, the parties' dispute with respect to this document is moot.

attorney that are intended to assist in the administration of the plan.'" *Bland v. Fiatallis N.A., Inc.*, 401 F.3d 779, 787 (7th Cir. 2005). This exception is premised on the notion that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty. *Id.* However, the exception is limited: "[a]n employer [who] acts in a dual capacity as both the manager of its business and as a fiduciary with respect to unaccrued welfare benefits, is free to alter or eliminate such benefits without considering employees' interests and does not owe its employees a fiduciary duty when it amends or abolishes unaccrued benefits." *Id.* at 787–88. Hence, "[d]ecisions relating to the plan's amendment or termination are not fiduciary decisions." *Id.* at 788; *see also In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997) ("an employer acts as an ERISA fiduciary only in plan management or administration, not in the plan's design or amendment").

### A. Document Bates-Numbered NGC06996–NGC06998

Defendants have redacted one sentence in document NGC06996–NGC06998, explaining that it reflects "attorney-client communication with in-house counsel regarding severance eligibility design and P. DeLuca's claim for severance benefits." (Pl.'s Mem. in Support of Mot. to Compel at 3, Dkt. No. 196.) The redacted portion appears in an email from Louise Ussery (Vice President of Human Recourses and Administration for Technical Service Sector of Northrop) to Denise Peppard (Chief Human Resource Officer), in which Northrop's prior decision to harmonize benefits was discussed. Both Ussery and Peppard were members of the Committee that upheld the denial of Plaintiffs' benefits. Plaintiffs also contend that Northrop, as Plan administrator, delegated some of its administrative responsibilities to Ussery. As a result, Plaintiffs contend that a fiduciary exception applies to the redacted communications. Defendants, in turn, argue that the fiduciary exception does not apply because Ussery and Peppard were not engaged in a discussion in their capacities as Committee members, as the Committee did not meet with respect to Plaintiffs' claims until six months after the redacted email was sent and the redacted email was about a prior business decision, not administration of the Plan.

As explained above, the inquiry into whether documents are subject to a privilege is highly fact-specific. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). A court's *in camera* review, although important, often cannot determine definitively whether a document was transmitted in such a way as to destroy any privilege or was created for an unprivileged purpose. *Id.* at 572. "[T]the purpose of a document may not be apparent on its face, and it may be necessary to rely on the testimony of those involved in the production and handling of a document to determine the purpose for which it was produced." *Id.* With respect to the document bates-numbered NGC06996–NGC06998, neither Defendants' description of the redacted text nor the text itself allows the Court to determine whether the document meets the requirements of the attorney-client privilege. For example, it is unclear who exactly participated in the redacted communications referenced by the Ussery in her email and whether those communications were made in confidence. Hence, Defendants have not carried their burden of showing that the redacted text is privileged.

Rather than requiring immediate production of the unreacted version of the document to Plaintiffs, however, the Court will allow Defendants an opportunity to support their assertion of

the attorney-client privilege with a supplemental filing that addresses the deficiencies outlined in this Statement.

### B. Document Bates-Numbered NGC13928–NGC13932

The document stamped NGC13928-NGC13932 consists of an email chain of discussions between Northrop attorneys (including Senior Counsel Christine Williams) and Human Resources employees regarding the design of severance policies in 2011. (Dkt. No. 196-3.) Defendants assert that the redacted text is an "[e]mail reflecting attorney-client communication with C. Williams and D. Coombs regarding Severance Plan design related to eligibility and benefits for specific populations of employees." (Dkt. No. 196 at 3.) Plaintiffs argue that these communications fall within the fiduciary exception as they were intended to assist in the administration of the Plan.

Upon *in camera* review, the Court concludes that the redacted emails discuss exactly what Defendants describe—potential revisions to the benefits plan and associated issues. Hence, the fiduciary exception does not apply and the emails are protected from production. Because the parties disagree on the interpretation of the Plan's terms dealing with eligibility and whether Northrop changed its interpretation of those terms, the Court emphasizes that its ruling here is limited only to the issue in front of the Court—whether the attorney-client privilege applies to the redacted portions of the document. It does not extend to other issues disputed by the parties.

### C. Document Bates-Numbered NGC24959–NGC24962

The document stamped NGC24959–NGC24962 is an email chain, beginning with an inquiry from Robert Stolte (a laid-off Northrop employee) regarding severance benefits. (Dkt No 196-5.) The redacted text consists of a draft response from Diane Coombs (Northrop's in-house counsel) to Stolte's inquiry regarding why he did not receive a severance. The redacted text appears in Demile Gilmore's (Director of Human Resources of Technical Services in the Integrated Logistics and Modernization Division) email to Ussery. (*Id.* at 2, 3.) Plaintiffs argue that Ussery was a designee and fiduciary of the Plan charged with administering it and that Gilmore was a designee and a fiduciary of the Plan with respect to the Integrated Logistics and Modernization Division, so the fiduciary exception applies to the redacted text. Initially, Defendants did not provide a description of this redacted document on their privilege log. But they later supplemented the log to reflect that the redacted text consists of an "[e]mail prepared in anticipation of litigation reflecting attorney-client communication with D. Coombs providing legal advice regarding draft correspondence to employee regarding severance." (Dkt. No. 200-1 at 34.) Hence, Defendants assert attorney-client and work-product privileges.

The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *See* Fed. R. Civ. P. 26(b)(3); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The threshold inquiry when analyzing the work-product issue is whether documents were in fact prepared in anticipation of litigation. *See Sandra T.E.*, 600 F.3d at 622. Even if litigation is imminent, the work-product doctrine does not cover documents prepared in the ordinary course of business rather than for litigation purposes. *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001). Here, although Stolte had engaged a lawyer (judging by his email), there is no indication

that Coombs's response was prepared because litigation was anticipated. At that point in time, Stotle had not even filed a claim for benefits. (Dkt. No. 199 at 9; Dkt. No. 201 at 13.) Rather, it appears that Coombs was simply helping Human Resources to respond to "myriad HR issues of employees within [Gilmore's] division," as Defendants described it. (Dkt. No. 199 at 9.) Hence, the redacted email is not covered by the work-product doctrine, and the Court must analyze the attorney-client privilege and fiduciary exception issues.

Ussery, as Vice President of Human Recourses and Administration for Technical Service Sector, was a designee of the Plan charged with the Plan's administration. (Dkt. No. 196-15 at 9.) Gilmore, as a Human Resources Director for Technical Services in the Integrated Logistics and Modernization Division, was a designee of the Plan with respect to that division and was authorized to sign or issue the memo regarding the benefits. (*Id.*) Defendants do not dispute these designations. Instead, they argue that Gilmore was not acting as a fiduciary in this instance, as Stotle had not filed a claim for benefits under the Plan, but was acting in her capacity as a Human Resources person addressing Human Resources issues. Defendants also insist that to be eligible for benefits and become a participant in the Plan, an employee must get a memo entitling the employee to severance benefits—because Stotle had not received the memo, the communication itself was not about Plan's administration. (*See* Dkt. No. 196-5 at 4.) Instead, Defendants maintain that the communication was about the "determination according to the plan's terms that affect[ed] [Stotle's] eligibility for benefits," which, purportedly, is not a fiduciary function under *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir. 1999).

Based on the evidence before the Court, the redacted communication took place after the decision had been made not to issue the memo to Stotle. (*See* Dkt. No. 196-5 at 4 (Stotle stating that he did not receive the memo)). So the communication with in-house counsel was not about the decision not to issue the memo; it was about how to properly administer that decision by communicating it to Stotle. *Noorly* is of no help to Defendants as that case only held that an employer was not acting as fiduciary **when it decided** to deny severance benefits to employees, where the plan allowed discretion in determining whether to award severance benefits. *Noorily*, 188 F.3d at 158. Interestingly, *Noorily* also notes that once the management decision not to award severance benefits was made, the employer "as the ***administrator*** through its Corporate Benefits Committee was obliged to implement the decision and thus cannot be deemed to have violated its fiduciary duties by acting according to the 'employer's' determination." *Id.* at 159 (emphasis added). "Similarly, if [the defendant] as employer had determined to award severance benefits then its Corporate Benefits Committee would have been obliged to implement that decision." *Id.* Thus, when Gilmore was consulting with Northrop's in-house lawyers, she was not consulting regarding the decision to deny benefits; she was consulting about how to properly implement that decision as the Plan administrator. Therefore, the redacted email falls within fiduciary exception. Defendants must produce an unredacted version of the document stamped NGC24959–NGC24962.

Dated: February 5, 2018

_____
Andrea R. Wood
United States District Judge

5