# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALAN CARLSON and PETER DELUCA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 13-cv-02635 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| NORTHROP GRUMMAN CORPORATION ) | |
| and the NORTHROP GRUMMAN ) | |
| SEVERANCE PLAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiffs Alan Carlson and Peter DeLuca have sued Defendants Northrop Grumman Corporation and the Northrop Grumman Severance Plan, challenging Defendants' failure to pay cash severance benefits to which Plaintiffs allege they were entitled pursuant to Defendants' ERISA-governed[1] severance plan ("ERISA Plan"). Now before this Court is Defendants' motion for summary judgment on the standard of review for the denial of Plaintiffs' claims for benefits under the ERISA Plan. (Dkt. No. 167.) For the reasons discussed below, the Court concludes that the deferential, arbitrary and capricious standard of review applies.

## BACKGROUND

The circumstances surrounding Plaintiffs' layoffs are described in the Court's prior opinions for this case and thus will not be repeated here. *See Carlson v. Northrop Grumman Corporation, et al.*, 196 F. Supp. 3d 830, 833–34 (N.D. Ill. 2016); *Carlson v. Northrop Grumman Corp.*, No. 13 C 2635, 2014 WL 5334038, at *1 (N.D. Ill. Oct. 20, 2014); *Carlson v. Northrop Grumman Corp.*, No. 13 C 2635, 2014 WL 1299000, at *1 (N.D. Ill. Mar. 31, 2014). The crux of

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

the dispute between the parties at this stage of the case is whether the ERISA Plan documents confer discretionary authority on the Plan Administrator and the Corporate Severance Plan Review Committee ("Committee') so as to warrant an arbitrary and capricious standard of review here. In particular, the interpretation of the Northrop Grumman Service Plan adopted on December 15, 2011 ("Wrap Document") (Dkt. No. 171) and the Northrop Grumman Service Plan adopted on January 27, 2012 ("Component Document") (Dkt. Nos. 166-5, 177-2) is at issue.[2]

The Wrap Document generally outlines the ERISA Plan's purpose, identifies its participants, delegates and describes administrative responsibilities, and establishes the procedure by which the ERISA Plan may be terminated or amended. (Pls.' Resp. to Defs.' Local Rule 56.1 Statement of Facts ¶ 5, Dkt. No. 178.) It does not, however, describe the specific severance benefits provided under the ERISA Plan. (*Id.*) That responsibility is carried out by the "Component Plan" documents. (Wrap Document at 1, Dkt. No. 171.) The Wrap Document further states that "[t]he specific terms of a Component Plan, including, but not limited to the eligibility, participation and benefits provisions, are as specified in the summary plan description for the Component Plan." (*Id.* at 2.) The Wrap Document also provides that:

> [A]ll of the terms and provisions of each of the Component Plans, as the same may be modified from time to time as provided for each of the Component Plans, are incorporated herein by reference and shall be of the same force and effect under this document as if they were fully set forth herein.

(*Id*. at 1.) Among the Component Plans referenced in the Wrap Document is the "Northrop Grumman Severance Plan." (*Id.* at 21.)

The Component Document (titled "Northrop Grumman Severance Plan") sets out the specifics of what benefits the Component Plan offers (a cash payment and an extension of existing

---

[2] Defendants attached a copy of the Component Document as an exhibit to their statement of undisputed material facts. (Dkt. No. 166-5.) Plaintiffs then submitted another copy of the Component Document with their response to the motion for summary judgment. (Dkt. No. 177-2.) Plaintiffs' copy differs only in that it contains the last page that describes when the Component Document was adopted. (*Id.* at 12.)

medical, dental, and vision coverages) and describes eligibility criteria and conditions for receiving benefits, among other things. (Component Document at 3–6, Dkt. No. 166-5.) The Component Document also outlines procedures for making claims for benefits and for appealing such claims: claims should be submitted to the Plan Administrator and, if denied, should be appealed to the Committee. (*Id.* at 7–8.) Both the Wrap and the Component Documents also contain provisions conferring discretionary authority on the Plan Administrator and the Committee. (Wrap Document at 5, 7–9, Dkt. No. 171; Component Document at 8, Dkt. No. 166-5.)

Following the outlined procedures, Plaintiffs submitted their severance benefits claims to the Plan Administrator. (Pls.' Resp. to Defs.' Local Rule 56.1 Statement of Facts ¶ 14, Dkt. No. 178.) Plaintiffs' claims were denied. The letter accompanying the denial explained that under the Component Plan, laid-off employees were only eligible for severance benefits if they received a memorandum from the Vice-President of Human Resources (or his or her designee) designating the employees as eligible and that Plaintiffs had not received such memoranda. (*Id.* ¶ 15.) Plaintiffs appealed the denial of their claims to the Committee. (*Id.* ¶ 16.) But the Committee also denied Plaintiffs' claims as it determined that a severance memorandum was required to receive the benefits and that Northrop had the discretion to determine which employees would receive such memoranda. (*Id.* ¶ 19.)

## DISCUSSION

Defendants argue that the Court should grant their motion for summary judgment and find that the Committee's interpretation of the ERISA Plan and its denial of Plaintiffs' claim are

3

entitled to deference[3]—in other words, that the "arbitrary and capricious" standard of review applies.

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists if a reasonable jury could find in favor of the nonmoving party. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In deciding a summary judgment motion, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

Benefit determinations under ERISA are reviewed by federal courts *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 870 (7th Cir. 2006) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If such discretionary authority is given, an arbitrary and capricious standard of review applies. *Id.* The party asserting that the arbitrary and capricious standard applies bears the burden of establishing that the plan confers discretionary authority. *Id.* The default standard of review is *de novo* and in order to alter this default standard, the stipulation for deferential review must be clear. *Id.*

---

[3] In the context of a claim under 29 U.S.C. § 1132(a)(1)(B), courts review the final, post-appeal decision rendered by the plan administrator or fiduciary tasked with deciding appeals because "[t]o focus elsewhere would be inconsistent with ERISA's exhaustion requirement." *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 191 n. 11 (3d Cir. 2011), *abrogated on other grounds by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016); *see also Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999) (reviewing the decision of a committee tasked with appeals rather than the decision of a medical director who initially denied plaintiff's benefits).

The interpretation of an ERISA-governed plan is controlled by federal common law, which draws on general principles of contract interpretation, at least to the extent those principles are consistent with ERISA. *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). Plan language is given its plain and ordinary meaning. *Id.* Courts must read the plan as a whole, considering separate provisions in light of one another and in the context of the entire agreement. *Id.* All language of a plan should be given effect without rendering any term superfluous. *Id.*

Often, as a threshold matter, courts have to identify the documents that constitute the plan. *Sperandeo*, 460 F.3d at 870. Commonly, the terms of a plan must be inferred from a series of documents none clearly labeled as "the plan." *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999). ERISA itself is not particularly helpful in delineating the documents that constitute the plan. *Sperandeo*, 460 F.3d at 870. So courts may look into whether a particular document is incorporated by reference into the policy or plan. *Id.* at 871.

Here, the Wrap Document section titled "Component Plans" explains that the ERISA Plan consists of the Wrap Document together with the employee benefit structures listed in Appendix B. (Wrap Document at 2, Dkt. No. 171.) Appendix B to the Wrap Document lists "Northrop Grumman Service Plan" among the Component Plans. (*Id.* at 21.) This title appears on both the Wrap Document and the Component Document, however. But while Appendix B does not specify to which it refers, it is clear that it refers to something other than the Wrap Document. (*Id.* at 2 ("The-employee benefit structures listed in Appendix B that ***together with this document*** make up the Plan.") (emphasis added).) The Wrap Document also describes how documents constituting

5

the ERISA Plan relate to each other and that the Wrap Document incorporates the Component Plans:

> The Plan provides severance benefits under one or more benefit structures referred to and defined herein as "Component Plans." ***Component Plans are not considered separate plans*** for purposes of reporting requirements under ERISA ***but are instead separate benefit structures under the Plan*** maintained for different groups of eligible employees. The specific severance benefits provided under the Plan are described in the Component Plans. Accordingly, ***all of the terms and provisions of each of the Component Plans***, as the same may be modified from time to time as provided for each of the Component Plans, ***are incorporated*** herein by reference and shall be of the same force and effect under this document as if they were fully set forth herein.

(*Id.* at 1 (emphasis added).)

The Component Document also outlines its relationship to other documents constituting the ERISA Plan. In particular, the section titled "Plan Identifying Information" states that "[t]he Plan is a welfare benefit plan that provides severance benefits" and that ***"[t]he Plan is considered a component plan*** under a plan also named the Northrop Grumman Severance Plan, ERISA plan number 673."[4] (Component Document at 9, Dkt. No. 166-5 (emphasis added).) The section titled "Plan Document, Amendment and Termination" of the Component Document further states that "[t]his document ***serves as part of the official Plan document*** and is the summary plan description for the Plan" and that "[t]he terms of the Plan control over the Guide to Administration or any other supporting documents." (*Id.* 9 (emphasis added).)

---

[4] Defendants attached the declaration of the Health and Welfare Director supporting Northrop Grumman Corporation to their statement of undisputed material facts, which states that the Northrop Grumman Severance Plan, ERISA plan number 673 is the Northrop Grumman Service Plan adopted in December 15, 2011 (Wrap Document, Dkt. No. 171). (Declaration of Jim Kemp ¶ 5, Dkt. No. 166-2.) While Plaintiffs object to all statements of fact regarding what the Wrap Document does, means, its structure, or purpose as "self-serving testimony," they admit that the Health and Welfare Director can authenticate the Wrap Document and do not appear to dispute that the Northrop Grumman Severance Plan, ERISA plan number 673 is the Northrop Grumman Service Plan adopted in December 15, 2011. (Pls.' Resp. to Defs.' Rule 56.1 Statement of Facts ¶ 3, Dkt. No. 178.)

Thus, it is apparent from a review of the relevant documents that the Component Document (as well as the documents for other Component Plans) and the Wrap Document constitute the ERISA Plan, with the Wrap Document incorporating the Component Documents by reference. The parties do not dispute that the Wrap Document provides for discretionary authority to determine eligibility for benefits and to interpret the terms of the ERISA Plan. (*See, e.g.*, Pls.' Resp. at 3, Dkt. No. 177.) And indeed, the Wrap Document's section titled "Powers of the Plan Administrator and Administrative Committee" states:

> The Plan Administrator and Administrative Committee will have all powers necessary or incident to their offices as plan administrator and appeal adjudicator, respectively. The Plan Administrator and Administrative Committee, in the exercise of their responsibilities, ***shall have the full discretionary power to administer the Plan in all of its details*** subject, however, to the requirements of ERISA or other applicable law. All interpretations, findings, and decisions of the Plan Administrator and Administrative Committee, as applicable, shall be final and conclusive. ***Such powers include***, but are not limited to, ***full discretionary authority to***:
> . . .
> (b) ***Determine eligibility*** of Employees to participate in the Plan.
> . . .
> (f) ***Construe and interpret the terms of the Plan***, including the power to remedy possible ambiguities, inconsistencies or omissions.
> (g) ***Determine*** the amount of benefits and ***eligibility for benefits***.
> . . .
> (n) Decide all questions concerning the Plan, including making findings of fact.

(Wrap Document at 7–9 (emphasis added), Dkt. No. 171.) Furthermore, the section titled "Administrative Discretion" states that "[t]he Plan Administrator is expressly empowered with the full and final discretion to determine . . . (a) [w]hether and to what extent Employees are eligible to become Participants under the Plan [and] (b) [t]he amount and types of benefits Participants will receive under the Plan." (*Id.* at 5.) Hence, the Wrap Document confers discretionary authority to determine eligibility for benefits and to interpret the ERISA Plan terms. *See Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 988–90 (7th Cir. 2005) (holding that the language "[w]hen making a benefit determination under the policy, [the insurance company] ha[s] the discretionary authority to

7

determine [employee's] eligibility for benefits and to interpret the terms and provisions of the policy" is sufficient to grant discretionary authority).

Whether Defendants are entitled to deferential review here depends on whether the ERISA Plan documents confer discretionary authority regarding determinations for benefits under the Component Document. It would seem that the discretionary authority provisions outlined in the Wrap Document apply to the benefits of the Component Document. *See Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 871 & n. 4 (7th Cir. 2006) (discussing the difference between the cases where the language granting discretion appeared in a document incorporated into the policy (and, thus, where arbitrary and capricious standard applied) and the cases where the plan did not bestow such discretion but extra-plan documents did). However, Plaintiffs insist that these provisions do not apply to the Component Plan for two reasons. First, Plaintiffs contend that the Component Document itself contains all ERISA Plan terms. Plaintiffs point out that the Wrap Document states that "[t]he specific terms of a Component Plan, including, but not limited to the eligibility, participation and benefits provisions, are as specified in the summary plan description for that Component Plan." (Wrap Document at 2, Dkt. No. 171.) Moreover, the Component Document's section titled "Statement of ERISA Rights" states that "ERISA provides that all Plan participants shall be entitled to . . . obtain copies of the combined Plan document and summary plan description" and that "[t]his summary plan description also constitutes the official 'Plan' document governing benefits; therefore, ***there are no other Plan documents that govern your benefits***." (Component Document at 10, Dkt. No. 166-5 (emphasis added).) Plaintiffs also point out that the Component Document was adopted after the Wrap Document.

The Court does not find this argument persuasive. To begin, the statement in the Wrap Document that "[t]he ***specific terms*** of a Component Plan, including, but not limited to the

8

eligibility, participation and benefits provisions, are as specified in the summary plan description for that Component Plan" does not mean that the general terms of the Wrap Document (applicable to all Component Plans) are somehow not applicable to the Component Plan at issue. The Wrap Document incorporates the Component Document (Wrap Document at 1, Dkt. No. 171), the Component Document says that it "serves ***as part of the official Plan document*** and is the summary plan description for the Plan" (Component Document at 9 (emphasis added), Dkt. No. 166-5), and neither the Wrap Document nor the Component Document contains any language indicating that the omission of the terms from the Component Document overrides their presence in the Wrap Document.

Next, the language that "[t]his summary plan description also constitutes the official 'Plan' document governing benefits; therefore, there are no other Plan documents that govern your benefits" also does not indicate that when interpreting the Component Document, the Wrap Document should be completely ignored. This statement simply acknowledges the same idea as the language in the Wrap Document—*i.e.*, that to find out the specific terms of a particular Component Plan, one must look at the document for that Component Plan, not other Component Plan documents. (Wrap Document at 2, Dkt. No. 171.) Plaintiffs' preferred interpretation of the language as indicating that the Component Document contains all the terms is inconsistent with the language in the Component Document itself that "[t]he Plan is considered a component plan under a plan also named the Northrop Grumman Severance Plan" and that "[t]his document serves ***as part of the official Plan document***." (Component Document at 9 (emphasis added), Dkt. No. 166-5.) Finally, the fact that the Component Document was adopted later than the Wrap Document does not help Plaintiffs. The Wrap Document clearly states that "all of the terms and provisions of each of the Component Plans, ***as the same may be modified time to time*** as

9

provided for in each of the Component Plans, are incorporated herein by reference and shall be of the same force and effect under this document as if they were fully set forth herein." (Wrap Document at 1 (emphasis added), Dkt. No. 171.) And the Wrap Document simply adds more details to the Component Document language.

Second, Plaintiffs argue that the omission of language regarding discretionary authority from the Component Document indicates that no such authority is given. Plaintiffs purport that while both the Wrap and the Component Documents describe discretionary authority to administer the plan, it is only the Wrap Document that also reserves the discretionary authority to "[d]etermine eligibility" for the benefits, "make[] findings of fact," and to "[c]onstrue and interpret the terms" of the plan while the Component Document only references the "discretion over claim and appeals issue." (*See* Wrap Document at 7–9, Dkt. No. 171; Component Document at 8, Dkt. No. 166-5.)

It is certainly true that plan documents may confer discretion to do certain things but not others. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 539 (7th Cir. 2000) (holding that the discretion to waive an element of disability does not grant the administrator discretion to determine eligibility for benefits in general). However, a plan "should be read as a whole with all its parts given effect, and related documents must be read together." *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 783 (7th Cir. 2005). Here, the Wrap Document grants discretionary authority to determine employee eligibility and to interpret the terms of the ERISA Plan under the umbrella of "full discretionary power to administer the Plan." (Wrap Document at 7, Dkt. No. 171.) The Wrap Document states that the "Plan Administrator and Administrative Committee, in the exercise of their responsibilities, shall have ***the full discretionary power to administer the Plan***" and that "[s]uch powers include, but are not limited to, full discretionary authority" to

"[d]etermine eligibility" and "[c]onstrue and interpret the terms of the Plan." (*Id.* at 7–8.) The Component Document uses similar language, but omits what these powers entail—it states that the Administrator is vested with "all power and authority ***necessary or appropriate to administer the Plan*** . . . and he has full ***discretionary authority*** in this capacity." (Component Document at 8 (emphasis added), Dkt. No. 166-5.) The Component Document then further specifies that the Plan Administrator may delegate any of its authorities, and that the authority to hear appeals is delegated to the Committee. (*Id.* at 9.) Thus, the Component Document does not purposefully omit certain discretionary authority listed in the Wrap Document. Rather, the Wrap Document and the Component Document are actually in agreement with respect to conferring discretionary authority to administer the ERISA Plan—and the Wrap Document simply provides an extensive list of what such discretionary authority entails. This interpretation is further supported by the fact that the Component Document serves as a summary plan document and, thus, inclusion of a shorter version of the discretionary authority conferral is not out of the ordinary. *See Mers v. Marriott Int'l Grp. Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1024 (7th Cir. 1998) ("If silence in the [summary plan documents] were enough to trump the underlying plan, then [summary plan documents] would mushroom in size and complexity until they mirrored the plans.").

Plaintiffs also argue that the Wrap Document contains a number of conferrals of discretionary authority, but the document also contains many aspects of the ERISA Plan not covered in the Component Document, such as how the Committee conducts business. On the other hand, the Component Document has fewer administrative terms and more thoroughly describes benefits and eligibility, but omits any discretion to interpret terms of the Component Plan (while referencing discretion to administer and decide claims and appeals). Plaintiffs argue

11

that an interpretation of the documents under which all the listed discretionary authority in the Wrap Document applies to the Component Plan is flawed because it would make the reference to discretionary authority in the Component Document superfluous.

It is true that plan "interpretations should, to the extent possible, give effect to all language without rendering any term superfluous." *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010). However, Plaintiffs' argument overlooks the fact that the Component Document is not only a part of the ERISA Plan but also a summary plan document. (Component Document at 9, Dkt. No. 166-5.) A summary plan document must be "sufficiently accurate and comprehensive to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan" in a manner "calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). In addition to this purpose, the Component Document, as part of the ERISA Plan, aims to describe "specific severance benefits" provided under the ERISA Plan "for different groups of eligible employees." (Wrap Document at 1, Dkt. No. 171.) Hence, it is reasonable to expect that apart from providing terms specific to the particular Component Plan, the Component Document would also reiterate, in a shorter form, certain provisions of the Wrap Document.

Plaintiffs' interpretation suffers from another defect: if the Wrap Document's discretionary authority provisions do not apply to the Component Document, it would nullify certain portions of the Wrap Document altogether. For example, the Wrap Document gives the "Plan Administrator and Administrative Committee . . . full discretionary authority to . . . [d]etermine eligibility of Employees to participate in the Plan." (*Id*. at 7.) But the Wrap Document itself does not address eligibility or benefits, leaving "[t]he specific terms of a Component Plan . . . [for example,] the eligibility, participation, and benefits provisions" to be specified in the

Component Document. (*Id.* at 2.) Thus, the discretionary authority established in the Wrap Document would be ineffective if not applied to the benefits under the Component Plans.

Finally, Plaintiffs argue that reading the discretionary authority provisions of the Wrap Document as applying to the Component Plan would lead to the unintended consequence of violating the requirement that the summary plan description "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan" and describe "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022. In Plaintiffs' view, the conferral of any discretionary authority to an administrator that would lead to arbitrary and capricious judicial review is an important term of a participant's rights that must be clearly disclosed.

Discretionary authority is an umbrella power—the very existence of rights under a plan depends on the degree of discretion given to plan administrators. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). Despite the importance of such power, 29 U.S.C. § 1022(b), which contains an extensive list of categories of information that a summary plan description must contain,[5] does not specifically list notice of discretionary authority. Of course, that leads to

---

[5] 29 U.S.C. § 1022 (b) states that the summary plan description must contain the following information:
> The name and type of administration of the plan; in the case of a group health plan . . . , whether a health insurance issuer . . . is responsible for the financing or administration (including payment of claims) of the plan and (if so) the name and address of such issuer; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability

13

the question of whether the categories of information specifically listed in § 1022(b) encompass notice of discretionary authority—or, more generally, whether § 1022(b) prohibits the application of the arbitrary and capricious standard of review if a summary plan description lacks notice of discretionary authority. Courts in this and other circuits answer the question negatively. *See Orlando v. United of Omaha Life Ins. Co.*, No. 06 C 3758, 2008 WL 4874731, at *3–4 (N.D. Ill. July 29, 2008) (reviewing decisions from various courts and holding that notice of discretionary authority is not currently required in the summary plan description and that an arbitrary and capricious standard of review applied where the discretion-granting language was part of the policy but not the summary plan description); *see also Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 489 (2d Cir. 2006) (citing decisions from other circuits and holding that courts "need not rely on the [summary plan description] in determining [the] standard of review" and that "[t]he arbitrary and capricious standard of review is warranted where the plan documents provide for discretionary authority, the summary plan description does not contain any conflicting language, and the applicable statutes and regulations do not require that the [summary plan description] contain provisions addressing the issue").

In support of their position to the contrary, Plaintiffs cite *Herzberger*. But the issue in front of the Seventh Circuit in *Herzberger* was whether language in plan documents "that benefits shall be paid when the plan administrator upon proof (or satisfactory proof) determines that the applicant is entitled to them" confers a power of discretionary judgment upon the administrator such that the arbitrary and capricious standard of review would apply. *Herzberger*, 205 F.3d at

---

and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title), and if the employer so elects for purposes of complying with section 1181(f)(3)(B)(i) of this title, the model notice applicable to the State in which the participants and beneficiaries reside.

329. The Seventh Circuit concluded that such language does not give the employee adequate notice that the plan administrator's judgment is largely insulated from judicial review by reason of being discretionary. In so doing, the Seventh Circuit emphasized the impact of the discretionary power as "[t]he very existence of 'rights' under [the] plans depends on the degree of discretion lodged in the administrator." *Id.* at 331. Yet ultimately the issue in *Herzberger* was not whether (or to what extent) the summary plan description must describe the administrator's discretionary authority to satisfy the requirements of 29 U.S.C. § 1022, or whether, if such description is missing, a reviewing court must forego the arbitrary and capricious standard of review. Moreover, in *Schwartz v. Prudential Insurance Co. of America*, 450 F.3d 697, 699 (7th Cir. 2006), the Seventh Circuit noted that when a summary plan description and the plan itself conflict, the terms of the plan control, as it is more complete, unless employees reasonably relied on the summary to their detriment. This ruling suggests a reluctance to overlook the terms of the plan documents in the absence of detrimental reliance on an imperfect summary document.[6]

In sum, a logical reading of the ERISA Plan documents as a whole demonstrates that the Committee was granted discretionary authority and therefore this Court will apply an arbitrary and capricious standard of review to its denial of Plaintiffs' claims.[7]

---

[6] Plaintiffs here do not assert that they detrimentally relied on the Component Document's conferral language.

[7] Plaintiffs also raise several arguments premised on the purported ambiguity of the ERISA Plan documents regarding conferral of discretionary authority to interpret the terms of the Component Plan. As the Court does not find that the ERISA Plan documents are ambiguous, there is no need to address these arguments.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Dkt. No. 167) is granted. The Court finds that a deferential, arbitrary and capricious standard of review applies in the present case.

ENTERED:

Dated: March 31, 2018

Andrea R. Wood
United States District Judge