IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALAN CARLSON and PETER DELUCA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 13-cv-02635 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| NORTHROP GRUMMAN CORPORATION | ) | |
| and NORTHROP GRUMMAN SEVERANCE | ) | |
| PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alan Carlson and Peter DeLuca have sued Defendants Northrop Grumman

Corporation ("Northrop Grumman") and Northrop Grumman Severance Plan, challenging

Defendants' failure to pay cash severance benefits to Plaintiffs and a putative class of similarly-

situated former employees pursuant to Defendants' ERISA-governed[1] severance plan ("Plan").

Before this Court is Plaintiffs' motion for class certification. (Dkt. No. 160.) For the reasons

discussed below, the motion is granted in part and denied in part.

## BACKGROUND

This action arises out of the denial of severance benefits under the Plan after Plaintiffs'

layoffs from Northrop Grumman Technical Services, Inc., a Northrop Grumman subsidiary. The

circumstances surrounding Plaintiffs' layoffs and details of the Plan's structure have been

described in the Court's prior opinions and thus will not be repeated here. *See Carlson v.*

*Northrop Grumman Corp.*, No. 13 C 02635, 2018 WL 1586241, at *1–2 (N.D. Ill. Apr. 2, 2018);

*Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 833–34 (N.D. Ill. 2016); *Carlson v.*

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

*Northrop Grumman Corp.*, No. 13 C 02635, 2014 WL 5334038, at *1 (N.D. Ill. Oct. 20, 2014);

*Carlson v. Northrop Grumman Corp.*, No. 13 C 02635, 2014 WL 1299000, at *1 (N.D. Ill. Mar.

31, 2014).

The crux of the dispute between the parties at this stage of the proceedings is whether the

case should proceed as a class action. Plaintiffs seek to certify the following class ("Proposed

Class"):

> All persons who worked for Northrop Grumman in the United States, were
> regularly scheduled to work over 20 hours per week, were laid off from Northrop
> Grumman from January 1, 2012 and after, and who did not receive written
> notification from management or from a Vice President of Human Resources (or
> his/her designee) notifying them of their eligibility for severance benefits under the
> Plan and who did not receive the "Cash Portion" of the severance benefits (a.k.a.
> the Salary Continuation Benefits) under the terms of the Plan (regardless of
> whether they received Medical, Dental or Vision Benefits under the Plan), as well
> as the beneficiaries of such persons.

(Pls.' Mot. for Class Certification at 1, Dkt. No. 160.) Excluded from the Proposed Class are:

(1)     employees specifically excluded from participation in the Plan as follows:

(a)     Employees of the Electronic Systems Sector who work at BWI,
Annapolis, Sykesville (including FE&S employees and FE&S
offsite offices and facilities), Troy Hill, Sunnyvale or Kings Bay,

(b)     Employees of the Technical Services Sector who are classified by
Northrop Grumman as being in the following employment
categories: (i) Service Contract Act (SCA) employees, (ii) Union
Represented employees, (iii) Employees covered by a
Memorandum of Understanding between the Technical Services
Sector and Electronic Services Sector providing for the temporary
assignment of the employee to the Technical Services Sector and
retention of participation in the Electronic Services Sector employee
benefit programs,

(c)     employees excluded from coverage as a result of participation in
another Northrop Grumman severance benefit program, and

(d)     employees represented by a union whose collective bargaining
agreement does not provide for participation in the Plan; and

(2)      any fiduciaries or other persons who had any decision making or administrative authority with respect to the Plan and the members of the immediate family of any such person.

(*Id.* at 1–2.) On behalf of the Proposed Class, Plaintiffs seek to litigate claims for benefits due and clarification of rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) (Count I), for violation of 29 U.S.C. § 1140 due to interference with the Plan participants' rights (Count II), and for equitable reformation of the Plan under 29 U.S.C. § 1132(a)(3) as a remedy for Northrop Grumman's breach of fiduciary duties (Count III). Plaintiffs also seek to be appointed as class representatives and to have appointed as co-lead class counsel Michael Bartolic of Roberts Bartolic, LLP and R. Joseph Barton of Block and Leviton LLP.

## DISCUSSION

To be certified, a proposed class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): (1) "the class is so numerous that joinder of all members is impracticable" ("numerosity"); (2) "there are questions of law or fact common to the class" ("commonality"); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality"); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy of representative"). If Rule 23(a) is satisfied, the proposed class must then fall within one of the three categories of Rule 23(b): "a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or . . . that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests)," "an action seeking final injunctive or declaratory relief," or "a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, plaintiffs seeking class certification must affirmatively demonstrate

their compliance with the rule—they must be prepared to prove that there are in fact sufficiently numerous plaintiffs and common questions of law or fact, for example. *See id.* Class certification is proper only if a court, after a "rigorous analysis," determines that the Rule 23 requirements have been satisfied. *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Thus, "[p]laintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, but they need not make that showing to a degree of absolute certainty." *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015).

At the class certification stage, a court generally may not resolve merits questions. *See id.* at 376. But this does not mean that "on issues affecting class certification, a court must simply assume the truth of the matters as asserted by the plaintiff." *Id.* at 377. To the contrary, if there is a material factual dispute that bears on the requirements for class certification, the court must "receive evidence if only by affidavit and resolve the disputes before deciding whether to certify the class." *Id.* (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). For example, a court might need to determine if a class really has the large number of members as alleged by the plaintiff or a much smaller number as asserted by defendants. *Id.*

## I.    Count I

In Count I, Plaintiffs assert a claim for benefits due and clarification of rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

### A.    Commonality and Typicality

In considering whether Plaintiffs may pursue Count I on behalf of a class, the Court turns first to the commonality and typicality requirements as, for reasons discussed below, resolution of those issues determines the class definition. Moreover, the commonality and typicality requirements of Rule 23(a) tend to merge. *Wal-Mart*, 564 U.S. at 349 n.5. "Both serve as

guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Rule 23(a)(2) does not demand that every class member have an identical claim. *Spano*, 633 F.3d at 585. To satisfy the commonality requirement, a court need only find a single common question of law or fact. *Id.* If necessary, "supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Id*. But plaintiffs nonetheless must do more than show that they were subjected to a violation of the same provision of law. *See Lacy v. Cook Cty., Ill.*, 897 F.3d 847, 865 (7th Cir. 2018). "Instead, they must assert a common injury that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 350 (2011)). The key to establishing the commonality element is not that plaintiffs raise common questions but rather that a class-wide proceeding can generate common answers that would drive the resolution of the litigation. *See id.* In other words, there needs to be conduct common to class members. *Id.*

The named plaintiff's claims must also be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514

(7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). While the existence of some factual variations might not defeat typicality, the requirement's purpose is to ensure that the named plaintiff's claims and the class claims have the same essential characteristics. *See id.* If the named plaintiff's claims are atypical of the class claims, then the class is disserved—atypical claims may fail even when the class claims are valid, leaving class members scrambling to find a new class representative, or may "prevail on grounds unavailable to the other class members, leaving them in the lurch." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

In the present case, Plaintiffs seek to litigate a claim under § 1132(a)(1)(B). A claim under this section is "essentially a contract remedy under the terms of the plan." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013) (quoting *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 695 (7th Cir. 2010)). The provision protects contractually-defined benefits and the cause of action offers typical contract forms of relief, including recovery of benefits accrued and declaratory judgments to clarify plan benefits. *Id.* "The claim is governed by a federal common law of contract keyed to the policies codified in ERISA." *Id.*

When a plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, judicial review of the denial of benefits is limited to determining whether the administrator's decision was arbitrary and capricious.[2] *See Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 870 (7th Cir. 2006). The decision will not be disturbed so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," "the decision is based on a reasonable explanation of relevant plan documents," or the decision is based "on a consideration of the relevant factors that encompass the important aspects

---

[2] In a prior decision, this Court determined that the arbitrary and capricious standard of review applies to the denial of Plaintiffs' claims for benefits under the Plan. *See Carlson v. Northrop Grumman Corp.*, No. 13 C 02635, 2018 WL 1586241, at *1 (N.D. Ill. Apr. 2, 2018).

of the problem." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008). In deciding whether a decision was arbitrary and capricious, "[u]niform interpretation and application of plan rules are important factors." *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters*, 984 F.2d 762, 766 (7th Cir. 1993). Interpretation of the same plan term in different ways is "paradigmatically arbitrary and capricious." *Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 591–92 (7th Cir. 2014).

Plaintiffs in this case challenge Defendants' interpretation of the Plan as conditioning entitlement to cash benefits on the receipt of a memo from a Vice President of Human Resources or his or her designee ("Memo"). Plaintiffs claim Defendants interpreted the Plan inconsistently: they denied cash benefits but paid medical, dental, and vision benefits to individuals who did not receive the Memo, and prior to 2012, Defendants viewed the Memo as simply an administrative tool to notify individuals of their eligibility for benefits, not as a condition to receiving the benefits. Thus, Plaintiffs allege conduct common to all class members: denial of the benefits based on an incorrect interpretation of the Plan and inconsistent application of Plan terms. *Compare Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 440 (7th Cir. 2015) (plaintiffs demonstrated commonality "by asserting that a uniform employment practice . . . used by the same decision-making body to evaluate schools was discriminatory"), *with Wal-Mart*, 564 U.S. at 355 (employees failed to establish commonality because the employer had a policy against uniform employment practices, which is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action"). A class-wide proceeding would generate common answers to common questions that would drive resolution of this lawsuit, such as how the Plan's provision concerning the Memo

should be interpreted and whether the denial of benefits was arbitrary and capricious because

Defendants did not uniformly interpret and apply such provision. Furthermore, Plaintiffs' claims

arise out of the same practice by Defendants—namely, the refusal to provide cash benefits due to

the failure to receive the Memo—and are based on the same legal theory.

Defendants argue that the commonality requirement is not met because the Proposed Class

definition encompasses persons who did not receive cash benefits for reasons other than not

receiving the Memo—such as not returning a separation agreement or being laid off and then

rehired quickly. This concern may be addressed by amending the class definition to read, in

pertinent part:[3]

> All persons who worked for Northrop Gruman in the United States, were
> regularly scheduled to work over 20 hours per week, were laid off from Northrop
> Gruman from January 1, 2012 and after, and who did not receive the "Cash
> Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under
> the terms of the Plan (regardless of whether they received Medical, Dental or
> Vision Benefits under the Plan), because they did not receive written notification
> from management or from a Vice President of Human Resources (or his/her
> designee) notifying them of their eligibility for severance benefits under the Plan,
> as well as the beneficiaries of such persons.[4]

*See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a

class . . . is more of an art than a science. [Class scope] problem[s] can and often should be solved

by refining the class definition rather than by flatly denying class certification on that basis.")

---

[3] The definition of the Proposed Class as amended by the Court ("Amended Class") also encompasses the
exclusions contained in the Proposed Class. Because the exclusions are described above in detail, the Court
does not repeat them here.

[4] Rule 23 incorporates an implicit requirement of ascertainability—a class must be defined clearly and
based on objective criteria. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). In other
words, the class definition must not be vague (it "generally need[s] to identify a particular group, harmed
during a particular time frame, in a particular location, in a particular way"), the class must not be defined
by subjective criteria, and the class must not be defined in terms of success on the merits. *Id.* at 660. In the
present case, Defendants do not dispute that the Proposed Class satisfies these requirements. The Amended
Class also meets the ascertainability requirement: it identifies a particular group of Northrop's employees
harmed during a particular period of time in a particular way (*i.e.*, by not receiving their benefits due to not
receiving the Memo).

Defendants further contend that commonality or typicality is lacking even among those employees for whom the Memo was determinative, as Northrop delegated discretion to sectors, divisions, and programs to designate employees as eligible for severance. Thus, according to Defendants, there is a need for individualized inquiry even within each particular sector or division. But as explained above, Plaintiffs' claims are based on Defendants' conduct common to the entire class. Even if case-by-case determinations were made for each employee who did not receive the Memo, the benefits were ultimately denied because Defendants interpreted the Plan as conditioning receipt of the benefits on receipt of the Memo. Unlike *Wal-Mart*, 564 U.S. at 349, 355, on which Defendants rely and where the employer had a policy against uniform employment practices, Defendants here allegedly had a uniform policy—*i.e.*, not awarding cash benefits due to the absence of the Memo.

Defendants also cannot defeat class certification by arguing that typicality is lacking because other class members might have failed to exhaust their remedies under the Plan. Typicality under Rule 23(a)(3) generally should be determined by reference to the defendant's actions, not with respect to particularized defenses the defendant might have as to certain class members. *See CE Design Ltd.*, 637 F.3d at 725. Yet where "it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974). There is no statutory requirement of exhaustion in ERISA cases and district courts have discretion not to require exhaustion. *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006). Furthermore, the unnamed class members in an ERISA class action do not always have to exhaust their plan remedies as a condition to membership in the class; if the class members' claims are very similar to those of the named plaintiffs, as in the

present case, exhaustion is not required. *See id.* at 501–02. Hence, it is not expected that the exhaustion requirement will be a major focus of the litigation in the present case.

For these reasons, the commonality and typicality requirements for class certification are met with respect to Count I for the Amended Class.

### B. Numerosity

To satisfy the numerosity requirement of Rule 23(a), the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *See, e.g.*, *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Plaintiffs assert that the Proposed Class is composed of up to 751 persons.[5] This estimate is based on Defendants' response to Plaintiffs' interrogatory identifying a total of 751 employees who were potentially eligible for the Plan's benefits, "worked 20 hours or more per week, were not Service Contract Act employees or Union employees at the time of termination, were part of an involuntary layoff or reduction in force," and, based on the available databases, were not offered or received a cash severance payment from January 1, 2012 through July 31, 2016. (Barton Decl. Ex. F at 4–5, Dkt. No. 162-6.) Defendants nonetheless argue that Plaintiffs were not similarly situated to those 751 employees, as under the Plan whether severance was given depended on multiple factors, including the employee's sector, division, and program, whether and how the employee's manager exercised his or her discretion to designate the employee, and whether the employee signed a release form.

---

[5] Plaintiffs argue that while some of the 751 persons might be individuals who were rehired shortly after being laid off (and thus would not qualify for the cash benefits under the Plan), that number is not significant. (*See* Ming Siegel Decl. ¶ 2, Dkt. No. 184 (stating that there were only 8 people in total who were terminated but subsequently rehired).)

Like other members of the Amended Class, however, Plaintiffs have not received their cash severance because they did not receive the Memo. Regarding the individuals who did not sign a release form, Plaintiffs argue that the release agreement would only have been offered to those who received the Memo. That is in line with the testimony given by Defendants' representative. (*See* Barton Suppl. Decl., Ex. CC at 65:10-18, Dkt. No. 183-1 (stating that terminated employees would typically receive a written notification letter regarding termination, "then followed either immediately or very quickly . . . with the separation agreement and the severance eligibility letter").) But to decrease the class size to less than 40 persons (and therefore call into question whether the numerosity requirement is met), more than 90 percent of the 751 individuals would have to be individuals who did not get cash benefits because they did not sign release agreements. Such a scenario is very unlikely if the signing of the release agreement was the only thing that stood between them and getting cash benefits.

Therefore, the Court finds that the numerosity requirement has been met with respect to Count I.

### C. Adequacy of Representatives and Counsel

Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

To be adequate representatives, the named plaintiffs must be part of the class, have the same interest as the other class members, and suffer the same injury as the other class members. *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017). And "the court must be satisfied that

the plaintiff will keep the interests of the entire class at the forefront." *Id.* So the adequacy

analysis includes evaluation of conflicts of interest between the named plaintiffs and the class

they seek to represent. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714–15 (7th Cir.

2015). In the present case, Plaintiffs are part of the Amended Class.[6] While Defendants' argue

that Plaintiffs are not adequate representatives due to the highly-particularized nature of their

claims, Plaintiffs have the same interests and suffered the same injury as the Amended Class

members by being denied their benefits due to nonreceipt of the Memo.

Defendants further argue, relying on *Robinson v. Sheriff of Cook County*, 167 F.3d 1155

(7th Cir. 1999), that the adequacy requirement is not satisfied here because Plaintiffs' claims are

weak. In *Robinson*, the Seventh Circuit explained that "if when class certification is sought it is

already apparent . . . that the class representative's claim is extremely weak, this is an independent

reason to doubt the adequacy of his representation." *Id.* at 1157. This is because "[o]ne whose

own claim is a loser from the start knows that he has nothing to gain from the victory of the class,

and so he has little incentive to assist or cooperate in the litigation; the case is then a pure class

action lawyer's suit." *Id.* But the language in *Robinson* on which Defendants rely addresses the

situation in which the class representative's claims are weak as compared to the rest of the class.

*See Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395 n.4 (N.D. Ill. 2006) ("*Robinson* stands

for the proposition that where the representative's claims are weak, ***as compared with those of the***

***class as a whole***, adequacy of representation is in doubt.") (emphasis in original). In fact,

*Robinson* advises that "if the class representative's claim is both weak ***and*** typical—if the case as

a whole is as weak as the representative's individual claim"—then the appropriate remedy is

dismissal, with or without class certification. *Robinson*, 167 F.3d at 1157 (emphasis in the

---

[6] Defendants do not dispute that Plaintiffs are part of the Proposed Class, which encompasses and is
facially broader than the Amended Class.

original). Although the Court may look beyond the pleadings to determine whether the Rule 23 requirements have been satisfied, Defendants' arguments regarding the weakness of Plaintiffs' claims are more appropriately addressed by means of a summary judgment motion. *Cf. Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 498 (N.D. Ill. 2008) (explaining that "the 'weakness' arguments raised by Defendants are more appropriately addressed on a motion to dismiss or for judgment on the merits").

Defendants further contend that Plaintiffs are not adequate representatives because they know almost nothing about employees outside their program, division, and sector. But an adequate class representative must understand only the basic facts underlying the claims and have some general knowledge, willingness, and ability to participate in discovery. *See Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 636 (W.D. Wis. 2009); *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). In other words, "[a] class representative need not possess detailed knowledge of the lawsuit." *Neil v. Zell*, 275 F.R.D. 256, 264 (N.D. Ill. 2011) (collecting caselaw). And Plaintiffs have demonstrated that they have sufficient knowledge to represent the Amended Class. (*See, e.g.*, Ex. 2 at 21–25, Dkt. No. 180-2 (DeLuca testifying); Ex. DD at 56, 57, 67, 68, 99–105, Dkt. No. 183-2 (Carlson testifying).) Furthermore, the adequacy of the class representatives may be reexamined throughout the litigation. *In re Sw. Airlines Voucher Litig.*, 799 F.3d at 715. Hence, if there is any indication in the future that Plaintiffs are inadequate representatives, the issue may be revisited.

As Plaintiffs have met the adequacy requirement, the Court now turns to the evaluation of the proposed class counsel. Rule 23(g) guides courts' evaluation of proposed class counsel. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015). Under Rule 23(g), a court must consider:

> (i)     the work counsel has done in identifying or investigating potential claims in
>         the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

In the present case, Michael Bartolic and R. Joseph Barton seek appointment as co-lead class counsel. Defendants do not object to their appointment and the materials submitted in support of their appointment show they are well-qualified to represent the class in this case. (*See* Barton Decl., Dkt. No. 162; Bartolic Decl., Dkt. No. 165.) Therefore, the Court concludes that the proposed counsel can adequately represent the Class.

### D.     Rule 23(b) Requirements

Plaintiffs contend that the present case may proceed as a class action under any of the three categories of Rule 23(b).[7] The Court begins with Rule 23(b)(2). An action may be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Even if the requested relief entails damages, the suit may be maintained under Rule 23(b)(2) if the monetary relief is merely incidental to the declaratory and injunctive relief sought—meaning the computation of damages is mechanical, without the need for individual evaluation. *See Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012); *see also In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005).

---

[7] Defendants do not offer any arguments concerning Rule 23(b) requirements.

In the present case, Defendants allegedly refused to act on grounds that apply to the entire

Amended Class: they denied benefits on the basis of failure to receive the Memo while

inconsistently interpreting the Plan provisions concerning the Memo. What the Amended Class

members seek, at least initially, is a declaration of their rights under the Plan. Specifically, they

seek a declaration that the Memo is not a prerequisite to receiving cash benefits and so the

benefits were wrongly denied. Accordingly, Rule 23(b)(2) certification is appropriate here.[8]

## II.  Count II

In Count II, Plaintiffs seek to proceed as a class on claims for violations of 29 U.S.C.

§ 1140, which makes it unlawful for any person "to discharge, fine, suspend, expel, discipline, or

discriminate against a participant or beneficiary for exercising any right to which he is entitled

under . . . an employee benefit plan . . . or for the purpose of interfering with the attainment of any

right to which such participant may become entitled under the plan." The loss of benefits as a

result of an employer's action is not, by itself, sufficient to prove a violation of § 1140—the

employer must have the specific intent to deprive an employee of his plan rights. *Isbell v. Allstate

Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005).

In the present case, Plaintiffs claim that Northrop interfered with their rights as Plan

participants. In briefing the class certification motion, Plaintiffs attempt to frame their claim

broadly as challenging Northrop's unofficial policy of making employees ineligible for benefits

by not providing the Memo in order to limit costs. (*See* Mem. in Supp. of Pls.' Mot. for Class

Certification at 13, Dkt. No. 161; Pls.' Reply at 17–18, Dkt. No. 182.) But a closer look at

Plaintiffs' claim reveals that it does not arise from the same practice as for all other members of

the Proposed Class. Plaintiffs allege that Northrop discriminated against them and interfered with

---

[8] Because certification under Rule 23(b)(2) is appropriate in the present case, the Court need not address
Plaintiffs' arguments related to other class types. *See Boyd v. Meriter Health Servs. Employee Ret. Plan*,
No. 10-CV-426-WMC, 2012 WL 12995302, at *12 (W.D. Wis. Feb. 17, 2012).

their rights by not delivering the Memo because they qualified for a high number of weeks of severance pay under the Plan. (*See, e.g.,* First Am. Compl. ¶¶ 67–70, Dkt. No. 62.) But the Proposed Class is not limited only to individuals with potentially high severance pay—some Proposed Class members may have been denied the Memo for other reasons. Thus, Plaintiffs' have not established that their claims are typical of the Proposed Class.

One way to address the typicality issue may be to modify the Proposed Class definition, as the Court has done with respect to Count I. That potential solution, however, runs into difficulty with the numerosity requirement, as the Court does not currently have sufficient information from which to determine how many members of the Proposed Class qualified for a high number of weeks of severance pay under the Plan. Accordingly, Plaintiffs' motion to certify a class for Count II must be denied. But Plaintiffs may file a renewed motion for class certification with respect to Count II if they are able to address the Court's concerns.

## III.    Count III

With Count III, Plaintiffs seek class-wide equitable reformation of the Plan pursuant to 29 U.S.C. § 1132(a)(3) as a remedy for the alleged breach of fiduciary duties by Northrop. To state a claim for breach of fiduciary duty under ERISA, a plaintiff must establish that the defendants are plan fiduciaries who breached their fiduciary duties, and that the breach caused the plaintiff harm. *See Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). One of the duties that plan fiduciaries have is to communicate material facts affecting the interests of beneficiaries. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 468 (7th Cir. 2010). This duty exists regardless of whether a beneficiary asks fiduciaries for information. *Id.*

In the present case, Plaintiffs allege that the Plan language regarding benefits eligibility remained the same in 2012 as in 2010—that is, "[i]n order to receive the benefits under [the] Plan,

16

[an employee] must meet [several conditions, including that the employee] . . . must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). [The employee is] designated if [the employee] received a memo addressed to [the employee], notifying [the employee of the] eligibility for this benefit." (Barton Decl. Ex. A at 4, Dkt. No. 162-1; *see also* Barton Decl. Ex. M at 5, Dkt. No. 162-13). But in late 2011, Northrop changed how it administered the Plan—previously, receipt of the Memo was a purely administrative step; later, the Memo became a requirement for receiving benefits. Plaintiffs allege that Northrop breached its duty by failing to notify Plan participants of the change and failing to amend the Plan's language to explain how it would apply the eligibility rules, and thus continuing to tell participants that the Memo served the same function as it did in 2010.

While the parties do not address the issue in their briefs, it is apparent that Plaintiffs' claims would likely differ from those of Proposed Class members who did not work for Northrop at the time of the alleged change in the administration of the Plan. Plaintiffs were working at Northrop during the time of the alleged change in Plan administration. They therefore received the version of the Plan that purportedly stated that the Memo was required even though the provision was not enforced and the Memo was treated as a notification tool. Once the change in Plan administration was made, Plaintiffs still had the same document describing their eligibility but, unbeknownst to them, the Memo provision was strictly enforced. Proposed Class members who started to work for Northrop *after* the change in Plan administration was implemented may very well have received the Plan stating that the Memo was required, and that was in fact how the Plan was administered. As a result, Plaintiffs have not met their burden of satisfying the typicality requirement for Count III, as Northrop's conduct with respect to Plaintiffs might have been different than its conduct towards other Proposed Class members.

Perhaps this problem too could be solved by adjusting the Proposed Class definition. But again, the Court would still not have sufficient information from which to determine how many members of the Proposed Class started to work for Northrop after the alleged change in Plan administration. As a result, Plaintiffs' motion for class certification is denied as to Count III. However, Plaintiffs may renew their motion for class certification with respect to that count if they can address the deficiencies discussed herein.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification (Dkt. No. 160) is granted in part and denied in part. Count I shall proceed as a class action but with the Amended Class definition proposed by the Court. Plaintiffs may proceed as class representatives; Michael Bartolic of Roberts Bartolic, LLP and R. Joseph Barton of Block and Leviton LLP are appointed as co-lead class counsel. The motion is denied as to Counts II and III. However, the denial is without prejudice to Plaintiffs filing a renewed motion for class certification to address the concerns regarding class treatment of Counts II and III discussed in this Memorandum Opinion and Order.

ENTERED:

Dated: October 11, 2019

_____
Andrea R. Wood
United States District Judge