**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALAN CARLSON and PETER DELUCA**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,**<br><br>**Defendants.** | **Case No. 13-cv-2635**<br><br>**District Court Judge Andrea R. Wood** |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION OF COUNTS II AND III

Nancy G. Ross (No. 6190243)
Samuel Myler (No. 6309477)
Abigail M. Bartine (No. 6312317)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
ABartine@mayerbrown.com
SMyler@mayerbrown.com

*Attorneys for Northrop Grumman*
*Corporation and Northrop Grumman*
*Severance Plan*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III.  ARGUMENT ...................................................................................................... 5

A.  Plaintiffs Cannot Certify a Class Based on New Claims or Legal Theories They Did Not Plead ............................................................................. 6

B.  Plaintiffs Have Failed to Satisfy Rule 23(a)'s Commonality or Typicality Requirements With Respect to Count II ................................................. 8

C.  Plaintiffs Have Failed to Satisfy Rule 23(a)'s Commonality and Typicality Requirements With Respect to Count III ........................................... 12

D.  Plaintiffs Have Failed to Establish that Any of the Rule 23(b) Categories is Appropriate with Respect to Either Count II or Count III .................................. 17

IV.  CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allstate Ins. Co.*,
　400 F.3d 505 (7th Cir. 2005) ...............................................18

*Am. Honda Motor Co. v. Allen*,
　600 F.3d 813 (7th Cir. 2010) .................................................6

*Anderson v. U.S. Dept. of Hous. & Urban Dev.*,
　554 F.3d 525 (5th Cir. 2008) .................................................7

*Beaton v. Speedy PC Software*,
　907 F.3d 1018 (7th Cir. 2018) ..............................................14

*Bell v. Bimbo Food Bakeries Distribution, Inc.*,
　No. 11-cv-3343, 2013 WL 6253450 (N.D. Ill. Dec. 3, 2013)..................7

*Berger v. AXA Network LLC*,
　220 F.R.D. 316 (N.D. Ill. 2004)........................................10, 11

*Brown v. American Airlines, Inc.*,
　285 F.R.D. 546 (C.D. Cal. 2011) ............................................7

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
　662 F.3d 913 (7th Cir. 2011) .................................................6

*Flanagan v. Allstate Ins. Co.*,
　242 F.R.D. 421 (N.D. Ill. 2007).........................................10, 11

*Fletcher v. ZLB Behring LLC*,
　245 F.R.D. 328 (N.D. Ill. 2006).........................................11, 19

*Frahm v. Equitable Life Assurance Soc'y*,
　137 F.3d 955 (7th Cir. 1998) ................................................13

*Gesell v. Commonwealth Edison Co.*,
　216 F.R.D. 616 (C.D. Ill. 2003)..............................................13

*Glazer v. Abercrombie & Kent, Inc.*,
　No. 07-C-2284, 2008 WL 4853641 (N.D. Ill Nov. 10, 2008) .................15

*Harper v. Sheriff of Cook Cnty.*,
　581 F.3d 511 (7th Cir. 2009) .................................................5

*Isbell v Allstate*,
   418 F.3d 788 (7th Cir. 2005) ...................................................................19

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) ...................................................................14

*Kannapien v. Quaker Oats Co.*,
   507 F.3d 629 (7th Cir. 2010) ...................................................................14

*Kasalo v. Harris & Harris, Ltd.*,
   656 F.3d 557 (7th Cir. 2011) .....................................................................6

*Lemon v. I.U.O.E. Local 139*,
   216 F.3d 577 (7th Cir. 2000) ........................................................... *passim*

*Messner v. Northshore Univ. Health System*,
   669 F.3d 802 (7th Cir. 2012) .....................................................................5

*Moyle v. Liberty Mut. Ret Benefit Plan*,
   823 F.3d 948 (9th Cir. 2016) ...................................................................14

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ...................................................................15

*Ormond v. Anthem, Inc.*,
   No. 05-cv-1908, 2009 WL 3163117 (S.D. Ind. Sept. 29, 2009)...........................20

*Osberg v. Foot Locker, Inc.*,
   2014 WL 5800501 (S.D.N.Y. 2014).........................................................14

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) .............................................................11, 16

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ...................................................................5, 13

*In re Sears Retiree Group Life Ins. Litig.*,
   198 F.R.D. 487 (N.D. Ill. 2000).............................................................13

*Sessions v. Owens-Illinois, Inc.*,
   267 F.R.D. 171 (M.D. Pa. 2010).............................................................18

*Simington v. Lease Finance Group, LLC*,
   No. 10-cv-6052, 2012 WL 6681735 (S.D.N.Y. Dec. 14, 2012) ...........................7

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D. Cal. 2005).............................................................18

*Spano v. Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ...............................................11

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ...............................................14

*Thorogood v. Sears, Roebuck and Co.*,
    547 F.3d 742 (7th Cir. 2008) ...............................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................8, 10, 13

**Statutes**

ERISA § 502(a)(1)(B)................................................................2

ERISA § 510 ............................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................... *passim*

2 Newberg on Class Actions § 4:24 (5th ed.) ...........................18

## I.     __INTRODUCTION__

In attempting to cure the problems with Plaintiffs' request for class certification regarding Counts II and III, Plaintiffs have backed away from the allegations in their Amended Complaint and are seeking to fit a square peg in a round hole.[1] Plaintiffs' contortions do not work.

With respect to Count II, which claims that Defendants interfered with Plaintiffs' attainment of benefits because they would have received a "high number of weeks" of severance, the motion is deficient in at least two respects.  First, rather than amend the class definition to address the typicality concerns the Court previously identified, Plaintiffs impermissibly advance an entirely new theory of liability, which they contend is better suited to class certification and unencumbered by a contradictory discovery record.  Second, even if the Court could consider Plaintiffs' new theory at this stage of the case, class certification would be inappropriate because their theory and the proposed subclass suffer from the same commonality and typicality problems that prevented the Court from certifying the version of their claim pleaded in the complaint.

Plaintiffs' motion to certify a class with respect to Count III, which claims that Defendants misrepresented the purpose of the eligibility memorandum required by the Plan, suffers from similarly fatal deficiencies.  In particular, the necessary inquiries into each class member's subjective understanding of the Plan's terms precludes Plaintiffs from establishing that there are questions of law or fact common to the proposed class under Rule 23(a)(2) and that their claims satisfy Rule 23(a)(3)'s typicality requirement.

Finally, Plaintiffs have failed to demonstrate that either Count II or Count III fit within any of the class categories provided by Rule 23(b).  The decentralized, discretionary decision-making process at issue in Count II and the inquiry into each class member's subjective understanding

---

[1] This Court certified a class with respect to Count I on October 11, 2019. (Dkt. # 248, Class Cert. Order).

1

required by Count III raise myriad individualized issues that are impossible to either try or remedy on a classwide basis.

## II.     BACKGROUND

Plaintiffs' First Amended Complaint ("the Amended Complaint") sets forth three separate counts related to Northrop Grumman Corporation's ("Northrop") administration of the Northrop Grumman Severance Plan ("the Plan"). In Count I, which Plaintiffs brought pursuant to ERISA § 502(a)(1)(B), Plaintiffs claim that Northrop's refusal to provide them severance benefits on the basis that they did not receive a memorandum designating them as eligible for such benefits violated the terms of the Plan. (Dkt. #62, Am. Compl. ¶¶ 59-60). Count II alleges that Northrop discriminated against Plaintiffs in violation of ERISA § 510 when Plaintiffs' managers failed to provide them the eligibility memoranda required under the Plan because they qualified for a "high number of weeks of severance pay." (*Id.* ¶¶ 67, 70, 72). And Count III claims that Northrop breached its fiduciary duties by misrepresenting the Plan's terms governing employees' eligibility for severance, or alternatively, failing to inform Plaintiffs of an alleged change in the manner in which it interpreted and applied those terms. (*Id.* ¶¶ 81-83).

On January 4, 2017, Plaintiffs filed a motion for class certification of each of the above three counts. With respect to each count, Plaintiffs asked the Court to certify a single class comprised of the following individuals:

> All persons who worked for Northrop Grumman in the United States, were regularly scheduled to work over 20 hours per week, were laid off from Northrop Grumman from January 1, 2012 and after, and who did not receive written notification from management or from a Vice-President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan and who did not receive the "Cash Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under the terms of the Plan (regardless of whether they received Medical, Dental or Vision Benefits under the Plan); and the Beneficiaries of those Participants ("the Proposed Class").

2

(Dkt. #161, Class Cert. Mem., at 7-8). Plaintiffs further argued that each of the Amended Complaint's three counts could be certified under any one of the three types of class actions provided for in Rule 23(b) (*i.e.* Rule 23(b)(1), (b)(2), or (b)(3)). (*Id.*, at 20-29).

On October 11, 2019, the Court entered an order granting in part and denying in part Plaintiffs' motion for class certification. With respect to Count I, the Court held that class certification was generally appropriate because "Plaintiffs' claims arise out of the same practice—namely, the refusal to provide cash benefits due to the failure to receive the Memo—and are based on the same legal theory." (Dkt. #248, Class Cert. Order, at 8). The Court further held that Count I could be certified as a "declaratory relief" class under Rule 23(b)(2) because the alleged misconduct forming the basis for Count I applied generally to the class and could be remedied, at least initially, with a declaration regarding the class members' rights under the Plan. (*Id.*, at 15). However, the Court noted that the class definition proposed by Plaintiffs was overbroad because it "encompasse[d] persons who did not receive cash benefits for reasons other than not receiving the memo—such as not returning a separation agreement or being laid off and then rehired quickly." (*Id.*, at 8). The Court attempted to address this issue by amending the proposed class definition as follows:

> All persons who worked for Northrop Grumman in the United States, were regularly scheduled to work over 20 hours per week, were laid off from Northrop Grumman from January 1, 2012 and after, and who did not receive the "Cash Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under the terms of the Plan (regardless of whether they received Medical, Dental or Vision Benefits under the Plan), because they did not receive written notification from management or from a Vice President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan, as well as beneficiaries of such persons ("the Amended Class").[2]

(*Id.*).

---

[2] The Court also noted that any employees the Plan terms specifically identified as ineligible for Plan benefits would be excluded from the Amended Class. (Dkt. #248, Class Cert. Order, at 8 n.3).

Although the Court certified the aforementioned Amended Class for purposes of Count I, it refused to do the same with respect to either Count II or Count III. With respect to Count II, the Court began by noting that the claim Plaintiffs sought to certify was materially different from the claim pleaded in the Amended Complaint. Specifically, for class certification purposes, Plaintiffs attempted to frame Count II as broadly challenging Northrop's alleged policy of not designating employees as eligible for severance in order to save money, whereas the claim Plaintiffs pleaded in the Amended Complaint was that Northrop discriminated against them by not designating them as eligible for severance because they qualified for a "high number of weeks of severance pay." (*Id.*, at 15-16 (citing Am. Compl. ¶¶ 67-70)). Because the Proposed Class was not limited to similarly-situated employees—*i.e.* employees that qualified for "a high number of weeks" of severance—the Court held that Plaintiffs failed to satisfy Rule 23(a)(3)'s typicality requirement. (*Id.*, at 16).

Rule 23(a)(3)'s typicality requirement similarly prevented the Court from certifying a class with respect to Count III. As the Court noted, Plaintiffs claim in Count III that Northrop breached its fiduciary duty by misrepresenting the function of the Plan's eligibility memorandum, either through affirmative misrepresentations or omissions. (*Id.*, at 17). However, whether Northrop's conduct in this regard amounted to a breach of fiduciary duty is dependent upon, *inter alia*, the various class members' subjective understandings of the eligibility memorandum's purpose and function. (*Id.*). The Court noted, for example, that members of the Proposed Class that began working for Northrop ***after*** the purported change in the eligibility memorandum's function may have received different communications and had a different understanding of the Plan and its eligibility requirements. (*Id.* ("Plaintiffs have not met their burden of satisfying the typicality

requirement for Count III, as Northrop's conduct with respect to Plaintiffs might have been different than its conduct towards other Proposed Class members.").

On December 20, 2019, Plaintiffs filed the instant renewed motion for class certification of Counts II and III. With respect to Count II, Plaintiffs attempt to address the typicality issues the Court identified by (impermissibly) advancing a new theory—that Northrop discriminated against them in violation of ERISA § 510 by making "program-wide" or "contract-wide" severance eligibility decisions based on "affordability"—on behalf of a proposed subclass comprised of "all members of the Amended Class who worked in the Technical Services Sector at the time of their layoff from Northrop Grumman Corporation" (the "Technical Services Subclass"). (*See* Dkt. #257, Renewed Class Cert. Mem., at 1 (defining class), 6 (describing new theory)). With respect to Count III, Plaintiffs' motion attempts to address the Court's concerns by proposing a subclass comprised of "[a]ll members of the Amended Class whose original date of hire with Northrop Grumman Corporation was before October 2011" (the "Pre-October 2011 Hires Subclass"). (*Id.*, at 1).

## III.    ARGUMENT

Before a plaintiff is authorized to litigate claims on behalf of a class, they must demonstrate that each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the subsections of Rule 23(b) are satisfied. *Messner v. Northshore Univ. Health System,* 669 F.3d 802, 811 (7th Cir. 2012). "Failure to meet any of [these] requirements precludes class certification." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). Although the movant bears the burden of proof on a motion for class certification, *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993), the Court is also required to independently

conduct its own "rigorous analysis" before certifying a class. *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). *See also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (holding that "a court has an independent obligation to decide whether an action brought on a class basis is to be so maintained") (internal quotations omitted). This "rigorous analysis" includes "whatever factual and legal inquiries are necessary to ensure that the requirements for class certification are satisfied[.]" *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

### A.   <u>Plaintiffs Cannot Certify a Class Based on New Claims or Legal Theories They Did Not Plead.</u>

Plaintiffs' motion to proceed on behalf of the proposed Technical Services Subclass with respect to Count II should be denied for the simple reason that it is premised on a newly crafted theory irreconcilable with the allegations they pleaded in their complaint. In its order on Plaintiffs' previous motion, the Court carefully parsed the Amended Complaint's allegations and correctly construed Count II as "alleg[ing] that Northrop discriminated against them and interfered with their rights by not delivering the [eligibility memorandum] *because they qualified for a high number of weeks of severance pay* under the Plan." (Dkt. #248, Class Cert. Order, at 16 (emphasis added)). As Plaintiffs allege in the Amended Complaint, Northrop treated Plaintiffs different compared to former employees that "had significantly fewer years of service," all of whom they claim received severance. (Dkt. #62, Am. Compl. ¶¶ 70, 72). Plaintiffs' renewed motion abandons this theory, alleging instead that Northrop discriminated against them and other Technical Services Sector employees when their respective managers and supervisors decided that the "programs" or "contracts" that employed them were not eligible for severance because of "financial considerations" or "affordability" concerns. (Dkt. 257, Renewed Class Cert. Mem., at 6). In

essence, whereas Plaintiffs originally alleged that they were "singled-out" and treated inequitably compared to junior colleagues, (*see* Dkt. #62, Am. Compl. ¶¶ 70, 72), they now allege that Northrop discriminated against them by making eligibility decisions on a "program-wide" or "contract-wide" basis—even though this policy effectively prohibited managers from "singling-out" individual employees in the manner alleged in the complaint. (*See* Dkt. #257, Renewed Class Cert. Mem., at 6 ("Northrop withheld the Memo . . . based on the 'affordability of the group and ***did not make an individual-by-individual determination*** as to the amount of severance pay that each employee would receive.") (emphasis added)).

Given the seismic shift in the theory underlying Plaintiffs' ERISA § 510 claim, the Court should simply deny Plaintiffs' motion with respect to Count II rather than consider its merits.[3]   As courts have repeatedly recognized, litigants' ability to proceed on behalf of a class pursuant to Rule 23 extends only as far as their pleadings. *Anderson v. U.S. Dept. of Hous. & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("A district court's authority to certify a class under Rule 23 does not permit it to structure a class around claims not pled."); *Bell v. Bimbo Food Bakeries Distribution, Inc.*, No. 11-cv-3343, 2013 WL 6253450, at *9 n.8 (N.D. Ill. Dec. 3, 2013) ("[Plaintiff's] failure to timely plead these claims also provides an alternative basis for denying his certification motion."); *Simington v. Lease Finance Group, LLC*, No. 10-cv-6052, 2012 WL 6681735, at *8 (S.D.N.Y. Dec. 14, 2012) ("This Court cannot certify a class to litigate a claim not pled."); *Brown v. American Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011) ("Class certification is not a time for asserting new legal theories that were not pleaded in the complaint.").

---

[3] In addition to challenging the procedural impropriety of Plaintiffs' attempt to shift the theory of their claim via their motion for class certification, Defendants maintain that Plaintiffs' ERISA § 510 claim, regardless of how Plaintiffs frame it, lacks both legal and factual merit. However, Northrop will address these merits issues at summary judgment rather than in response to Plaintiffs' renewed motion for class certification.

Because Plaintiffs' new "program-wide" discrimination theory impermissibly expands the claim set forth in the Amended Complaint and the deadline for amending the pleadings has long since passed, Plaintiffs' renewed motion for class certification should be denied with respect to Count II.

**B.** **Plaintiffs Have Failed to Satisfy Rule 23(a)'s Commonality or Typicality Requirements With Respect to Count II.**

In addition to its procedural impropriety, the proposed Technical Services Subclass cannot be certified because it suffers from the same commonality and typicality problems that previously prevented the Court from certifying a class with respect to Count II. Under Rule 23(a)(2), class certification is only appropriate if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the moving party must demonstrate that all of the putative class members "have suffered the same injury" and that their claims "depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor." *Wal-Mart*, 564 U.S. at 350. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, commonality is lacking with respect to the proposed Technical Services Subclass because of the individualized nature of each severance eligibility decision. As Plaintiffs themselves note, Northrop's various sectors adopted different approaches with respect to whether laid-off employees would be designated as eligible for severance. (Dkt. #257, Renewed Class Cert. Mem., at 6). Plaintiffs allege that although certain sectors had "across-the-board" policies of designating all employees as eligible for severance in the event of a lay-off, the Technical Services Sector made severance eligibility decisions on a "program-by-program" or "contract-by-contract"

basis.[4] (*Id.* (citing Dkt. #183-1, Rule 30(b)(6) Dep. at 54:4-55:17)). Northrop delegated discretion over these decisions to the various division managers, each of whom exercised discretion based on the particular considerations they deemed relevant. (Ex. A, Penkert 30(b)(6) Dep. at 71:1-74:21).[5] As a result, each division within the Technical Services Sector relied on a different decision-making process and focused on different considerations when evaluating whether to designate a particular program or contract as eligible for severance. For instance, Plaintiffs' particular division, the Integrated Logistics and Modernization Division (ILMD), relied on an "opt-in" process whereby program managers were required to submit severance authorization requests to the ILMD leadership, who evaluated the requests based on various financial, business, and equitable factors (*e.g.* "fairness" and "consistency"). (Ex. D, Doshi Dep. at 70:6-73:7).

Given the highly decentralized decision-making process the Technical Services Sector employed, Plaintiffs' attempt to identify a legally relevant "common contention" shared by all members of the proposed Technical Services Subclass flounders. Although Plaintiffs assert that the members of the Technical Services Subclass were all harmed by the same discriminatory policy or practice, the only uniform "policy" they actually identify is Northrop's policy of leaving severance eligibility decisions to the discretion of the various division and program managers.[6] As the Supreme Court has noted, delegating discretion over employment decisions to individual

---

[4] Over the time period at issue, the vast majority of Northrop's approximately 100,000 employees worked for one of four operating sectors—Technical Services, Aerospace Systems, Electronic Systems, or Information Systems. These sectors were further divided into divisions. Each division worked on multiple programs, and frequently programs were comprised of multiple contracts.

[5] All citations to exhibits in the instant memorandum refer to the exhibits attached to the Declaration of Samuel P. Myler filed contemporaneously herewith.

[6] Although Plaintiffs contend that severance eligibility decisions were made on a program- or contract-wide basis, further narrowing the proposed class so as to include only those individuals subject to the severance eligibility decision that affected Plaintiffs would raise insoluble numerosity issues. As the Amended Complaint demonstrates, only six individuals were laid-off from Plaintiffs' program and affected by the severance eligibility decision that gave rise to Plaintiffs' claims. (Dkt. #62, Am. Compl. ¶¶ 30, 69).

supervisors or managers "is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Wal-Mart*, 564 U.S. at 355.

Plaintiffs' attempt to identify common contentions or theories capable of binding the proposed subclass by focusing on the relevant decision-makers' motivations and the manner in which they exercised the discretion they were afforded—specifically, their allegedly common motivation to "save money" for Northrop—similarly fails to establish the requisite degree of commonality. Plaintiffs fail to present sufficient evidence that the entire class was in fact subject to a "common mode of exercising discretion," *Id.* at 345-55, so as to overcome the presumption that the members of the subclass were disparately impacted by their managers' eligibility decisions. In fact, the only evidence Plaintiffs cite to support their contention that the proposed subclass was affected by a "common mode of exercising discretion" is the testimony of Northrop's corporate designee, Mike Penkert, who testified that financial considerations "play[ed] a role" in deciding whether or not a particular program was going to receive severance. (Dkt. #257, Renewed Class Cert. Mem., at 6 (citing Penkert 30(b)(6) Dep. at 200:8-13)). But contrary to what Plaintiffs allege, Penkert did not testify that "affordability" played a "key" role in severance eligibility decisions, nor did he profess to know which "financial factors" were considered. (Ex. A., Penkert 30(b)(6) Dep. at 200:8-201:5). The mere fact that "financial considerations" or "affordability" played some unquantifiable role in severance eligibility decisions as a general matter is not sufficient to establish that they formed the basis for all (or even most) of the eligibility decisions that affected the members of the proposed Technical Services Subclass.

Finally, the lack of centralized decision-making and the delegation of discretion to individual division and program managers at issue in this case distinguishes it from the two cases upon which Plaintiffs rely—*Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 429 (N.D. Ill. 2007)

10

and *Berger v. AXA Network LLC*, 220 F.R.D. 316, 317 (N.D. Ill. 2004). In both *Flanagan* and *Berger*, the plaintiffs challenged uniform, company-wide policies or work requirements that they alleged the defendants adopted with the specific intent to interfere with their attainment of benefits, either by forcing them to quit before their benefits vested, *Flanagan*, 228 F.R.D. at 619, or hindering their ability to satisfy their benefit plans' eligibility requirements, *Berger*, 220 F.R.D. at 317. The challenged conduct at issue here, by contrast, does not involve similar uniform corporate practices or policies, but rather myriad discrete and discretionary decisions made by different managers for different reasons at different times. Where ERISA § 510 claims are based on a variety of discrete, discretionary decisions by multiple individual managers or supervisors, as is the case here, courts have recognized that class certification is inappropriate. *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 332-33 (N.D. Ill. 2006) (concluding that inquiry into nineteen different managers' decision-making processes involved "individual and fact intensive determinations" that precluded certification of ERISA § 510 claim under Rule 23(b)(3)).

Plaintiffs also fail to establish that their "program-wide" discrimination theory is "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2). Under Rule 23(a)(3), a claim is "typical" of those of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the class representatives'] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Thus, the typicality inquiry assesses the degree of "congruence between the named representative's claim and that of the unnamed members of the class." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

Here, there is a clear lack of congruence between the theory Plaintiffs advance in their renewed motion and the scope of the proposed class. Specifically, Plaintiffs now allege that

11

Northrop discriminated against them and interfered with their attainment of benefits in violation of ERISA § 510 by failing to designate their program or contract as eligible for severance on the ground that severance was unaffordable. On its face, there is little that connects this theory to the claims of the proposed Technical Services Subclass. Although all members of the proposed subclass would have been laid-off without severance, and according to Plaintiffs, the severance eligibility decisions that affected them were made on a program- or contract-wide basis, Plaintiffs have not established that "affordability" motivated all or even some of those decisions. This disconnect between Plaintiffs' new program-wide discrimination theory and the scope of the proposed Technical Services Subclass is no different from that which prevented the Court from certifying Plaintiffs' theory that they were discriminated against because they would have received a high number of weeks of severance. Accordingly, Plaintiffs have failed to demonstrate that Rule 23(a)(3) is satisfied.

C.    **Plaintiffs Have Failed to Satisfy Rule 23(a)'s Commonality and Typicality Requirements With Respect to Count III.**

The requisite degree of commonality and typicality is also lacking with respect to Plaintiffs' motion to certify Count III, which alleges that Northrop breached its fiduciary duty of disclosure. Specifically, Plaintiffs allege both that Northrop affirmatively told participants the Plan's eligibility memorandum was a mere "administrative act of notification" that was not required in order to obtain benefits, (Dkt. #62, Am. Compl. ¶¶ 81, 83), and that Northrop failed to disclose the fact that their entitlement to benefits was expressly conditioned upon receiving such a memorandum, (*Id.* ¶¶ 82-83). Neither of these two theories can support a class.

As the Court recognized when it denied Plaintiffs' motion with respect to Count III, Plaintiffs' claim necessarily hinges on Northrop's conduct *vis-à-vis* each individual employee and the specific communications they received. (Dkt. 248, Class Cert. Order, at 17 ("Northrop's

12

conduct with respect to Plaintiffs might have been different than its conduct towards other Proposed Class members")). Therefore, in order to proceed on behalf of the proposed subclass with respect to a misrepresentation claim, Plaintiffs must show that all of the employees that make up the class were exposed to or received the same allegedly misleading communications regarding the eligibility memorandum's function. *See Frahm v. Equitable Life Assurance Soc'y*, 137 F.3d 955, 957 (7th Cir. 1998) (affirming the district court's denial of class certification because "everything depends on what was said or sent to each agent personally, and different benefits advisers said or wrote different things to different agents"). Plaintiffs' renewed motion falls woefully short in this regard. Nowhere in either their original motion for class certification or their renewed motion do Plaintiffs identify any classwide communications stating, or even suggesting, that the Plan's eligibility memorandum was a mere ministerial document. Although Plaintiffs allege in their complaint that Northrop "continued to tell participants in presentations . . . that the memorandum . . . served as a notification that the participant met the eligibility rules stated in the Plan," Rule 23 requires more than allegations, it requires actual proof. *Wal-Mart*, 564 U.S. at 350. Absent evidence of any such affirmative misrepresentations, Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement.[7] *See Frahm,* 137 F.3d at 957; *Retired Chicago Police Assn. v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993); *In re Sears Retiree Group Life Ins. Litig.*, 198 F.R.D. 487, 491 (N.D. Ill. 2000) (refusing to certify class on commonality and typicality grounds where plaintiffs failed to identify uniform, classwide misrepresentations); *Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 622-25 (C.D. Ill. 2003) (surveying cases addressing class certification

---

[7] In its order denying class certification, the Court appeared to be under the impression that multiple versions of the Plan document existed, some of which may have described the eligibility memorandum differently. (Dkt. #248, Class Cert. Order, at 17). However, as Plaintiffs concede, the Plan documents' description of the eligibility memorandum did not change. (Dkt. #62, Am. Compl. ¶ 80 ("The 2012 summary plan description contained the exact same language regarding eligibility as the 2010 plan document and summary plan description.").

of ERISA misrepresentation claims and concluding that commonality and typicality requirements were not satisfied because alleged misrepresentations varied and individual inquiries into reliance, harm, and causation were required).

Plaintiffs' failure to identify any uniform or standardized communications disseminated on a classwide basis distinguishes this case from those upon which they rely. In each of the cases Plaintiffs cite, the courts certified a class only after finding that all class members received the same or substantially similar communications. *See Beaton v. Speedy PC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (finding that class members were "exposed to the same message and promises"); *Moyle v. Liberty Mut. Ret Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir. 2016) (affirming class certification where district court found that alleged misrepresentations were "made on a uniform and classwide basis*"); Osberg v. Foot Locker, Inc.,* 2014 WL 5800501, at *3 (S.D.N.Y. 2014) (certifying class after finding that "plaintiffs have proffered extensive evidence that all class members were exposed to the uniform misrepresentations in a similar manner"). Here, by contrast, any "allegedly injurious conduct differs from plaintiff to plaintiff," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014), so there are no common questions apt to drive the litigation.

Unable to identify any classwide misrepresentations, Plaintiffs attempt to frame the alleged breach as a "failure to disclose the October 2011 changed application of the Plan." (Dkt #257, Renewed Class Cert. Mem., at 8).  However, characterizing the breach as an alleged omission, rather than an affirmative misrepresentation, does not solve Plaintiffs' commonality problem.  In order to establish liability, the proposed class must prove that the alleged breach—*i.e.* Northrop's failure to disclose the purported change in its interpretation of the Plan—caused them actual harm. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2010); *Jenkins v. Yager*, 444 F.3d 916,

14

924 (7th Cir. 2006). Plaintiffs cannot prove harm on a classwide basis because, *inter alia*, there is no evidence that the proposed class had a common understanding regarding the function of the eligibility memorandum in the first place.[8] For example, class members that reviewed the Plan document and correctly surmised that receiving an eligibility memorandum—which the Plan identifies in multiple places as a "rule[] regarding eligibility" and a "condition for receiving benefits," (*see* Dkt. #62-1, Plan Document, at 2-3)—was in fact required in order to obtain benefits, cannot claim that they were harmed by Northrop's failure to tell them that which they already knew. The same goes for class members that had no particular understanding one way or another regarding how the eligibility memorandum functioned, or that did not even know that the Plan existed. Because determining how many class members, if any, shared Plaintiffs' idiosyncratic interpretation of the Plan cannot be established on a classwide basis and individual hearings would be necessary, Plaintiffs cannot demonstrate that there are common questions of law or fact capable of supporting a class. *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 747 (7th Cir. 2008) (holding that class certification was inappropriate because individual hearings regarding each class member's interpretation and understanding of advertisement terms were necessary to determine whether they were actually deceived); *Glazer v. Abercrombie & Kent, Inc.*, No. 07-C-2284, 2008 WL 4853641, *3 (N.D. Ill Nov. 10, 2008) (holding that plaintiffs failed to satisfy commonality and typicality requirements where individual inquiries into each class member's understanding of alleged misrepresentations were necessary).[9]

---

[8] Plaintiffs' contend in passing that individualized issues do not preclude class certification in breach of fiduciary duty cases involving alleged omissions because "any requirement of reliance is presumed." (Dkt. #257, Renewed Class Cert. Mem., at 14). Even if Plaintiffs were entitled to such a presumption, which they are not, *see, e.g.*, *Moyle*, 823 F.3d at 963-64 n.6 (discussing reliance requirement), this presumption would not obviate the need for individualized inquiries into whether the alleged omission actually constituted a fiduciary breach and whether that breach caused harm. An alleged omission does not constitute a fiduciary breach if the non-disclosure was not misleading, immaterial, or did not cause harm.

[9] This need for individualized inquiries also renders the proposed class unascertainable. In order to certify a class, it "must be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir.

Not only is the highly individualized nature of Count III incompatible with Rule 23(a)(2)'s commonality requirement, it also prevents Plaintiffs from establishing that their claims are typical of those of the proposed subclass. Fed. R. Civ. P. 23(a)(3). Under Rule 23(a)(3), a claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *See Oshana*, *infra* at 11. Here, the discovery record clearly demonstrates that Plaintiffs' particular breach of fiduciary claims are based on their unique, individualized experiences.

As an initial matter, neither Carlson nor DeLuca claims that Northrop told them, either in writing or orally, that the memorandum was not required to obtain benefits or that it was merely a ministerial document. (Ex. B, Carlson Dep. at 21:3-22:23, 26:2-13; Ex. C, DeLuca Dep. at 37:6-12, 96:19-97:6). In fact, plaintiff Carlson expressly stated at his deposition that Northrop never affirmatively misrepresented the terms of the Plan, (Ex. B, Carlson Dep. at 90:5-24), and plaintiff DeLuca testified that he "was not sure" if he was affirmatively misled "or just not informed," (Ex. C, DeLuca Dep. at 27:16-21). Thus, Plaintiffs' claims are atypical insofar as the proposed class claims, as Plaintiffs allege in the Amended Complaint, that Northrop affirmatively misrepresented the purpose or function of the eligibility memo.

To the extent Plaintiffs' claims are based on alleged omissions or failures to disclose, Plaintiffs have not and cannot establish that their claims resemble those of the proposed class. As discovery established, both DeLuca and Carlson freely acknowledged that their understanding of the Plan and the manner in which it was administered was based on their unique, personal work

---

2015). A vague, overbroad, or subjective definition fails this standard. *Id.* Here, it is impossible to objectively determine which employees are included in Plaintiffs' subclass because doing so requires individualized inquiries into, *inter alia*, each employee's personal contacts with Northrop related to their eligibility for severance benefits, whether those contacts were misleading, and the respective employees' understandings regarding the purpose and function of the Plan's eligibility criteria. This problem is compounded by Plaintiffs' failure to identify the specific misrepresentations—that is, by whom, when and what.

history. DeLuca, for example, testified that his understanding of how the plan functioned was based on his "38 years of experience" and the fact that he knew other Northrop employees that received severance when they were laid off. (Ex. C, DeLuca Dep. at 23:16-24:17, 33:19-34:20, 51:13-24). Moreover, as a former manager, DeLuca had personally laid off a small number of employees and delivered them their termination paperwork, including their severance eligibility memoranda. (*Id.* at 18:20-22:13). Carlson's understanding was similarly based on his thirty-plus years of experience and the fact that over the course of his career he knew other employees that had been laid off and received severance. (Ex. B, Carlson Dep. at 21:9-22:23).

It goes without saying that not every employee who was potentially eligible to receive benefits under the Plan had 35 or 38 years of experience to draw upon in analyzing Northrop's conduct with respect to the eligibility memo. In fact, when asked whether employees without the same experience as DeLuca were "in the same position" as him, he testified "No," because "[his] is a position of knowledge, and theirs would be a position of ignorance." (Ex. C, DeLuca Dep. at 52:8-20). Because the proposed subclass cannot base their claim that Northrop breached its fiduciary duties on Carlson's and DeLuca's unique, personal experiences, Plaintiffs cannot satisfy Rule 23(a)(3)'s typicality requirement.

### D. Plaintiffs Have Failed to Establish that Any of the Rule 23(b) Categories is Appropriate with Respect to Either Count II or Count III.

Even if Plaintiffs could meet the requirements of Rule 23(a) with respect to either of the subclasses they propose, they have failed to demonstrate, as they must, that class treatment is justified for any of the reasons set forth in Rule 23(b). With respect to Rule 23(b)(1)(A), Plaintiffs do not explain how resolving Plaintiffs' claims on an individual basis would "establish incompatible standards of conduct." Fed. R. Civ. P. 23(b)(1)(A). The ERISA § 510 claims advanced by Plaintiffs challenge individual employees' eligibility for severance. Because

17

individual adjudications would turn on the discrete eligibility decisions that affected each individual litigant, there is little risk that the outcome in one case would interfere with the resolution of another. The same is true for Plaintiffs' fiduciary breach claim, which turns on the communications each individual class member received and their respective understanding of the Plan terms governing eligibility.

Nor do Plaintiffs offer convincing evidence that individual actions would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications. *See* Fed. R. Civ. P. 23(b)(1)(B). Plaintiffs have not alleged, for example, that the resolution of either Count II or Count III would have a *res judicata* effect with respect to any other class member's claims. Nor have they identified any specific circumstances that would have the "practical" effect of limiting the absent class members' ability to obtain relief, such as a limited fund from which to recover damages.[10] *See* 2 NEWBERG ON CLASS ACTIONS § 4:24 (5th ed.) (referring to limited fund class actions as "(b)(1)(B)'s paradigmatic case").

Plaintiffs' claims also do not fall within the contours of Rule 23(b)(2), which only applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and "final injunctive relief or corresponding declaratory relief is appropriate [with respect to] the class as a whole." Fed. R. Civ. P. 23(b)(2). With respect to Count II, the challenged conduct forming the basis for Plaintiffs' new theory—*i.e.* that Northrop interfered with Plaintiffs' attainment of benefits because it determined it could not afford to provide them for Plaintiffs' programs, divisions, or contracts—does not apply generally to the class because both the decision-

---

[10] Although Plaintiffs' original motion for class certification identified two cases involving ERISA § 510 claims in which the Court certified classes pursuant to Rule 23(b)(1)(B), notably the plaintiffs in one of those cases expressly excluded their ERISA § 510 claim from their request for class certification, *see Sessions v. Owens-Illinois, Inc.*, 267 F.R.D. 171, 174 (M.D. Pa. 2010), and in the other case the court certified a Rule 23(b)(1)(B) class at the ***defendant's*** request without any consideration of Rule 23's requirements, *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("Defendants do not dispute that the class . . . should be certified under Rule 23(b)(1) and in fact urge the Court to do so."). Thus, these cases lend Plaintiffs little support.

makers and the bases for those decisions varied from program-to-program and contract-to-contract. For instance, Plaintiffs' complaint concerns decisions by just their specific division, ILMD, related to their specific contract. *See In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) (overturning district court decision certifying an ERISA § 510 claim under Rule 23(b)(2)). *See also Lemon v. I.U.O.E. Local 139*, 216 F.3d 577, 580 (7th Cir. 2000) ("Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class[.]"). As for Count III, the challenged conduct forming the basis for Plaintiffs' claims does not apply generally to the class because its legal effect varies from one class member to the next depending upon their respective experiences, the communications they received, and their understanding of the Plan's terms.

Finally, neither of Plaintiffs' claims is suited to be certified under Rule 23(b)(3). Because a claim alleging unlawful interference under ERISA § 510 requires proof that the defendant acted with the "specific intent" of preventing the attainment of benefits, the circumstances surrounding each separate layoff and the motivations of each program, division, or contract manager with respect to severance involve individualized issues that predominate over any common questions of law or fact. *Isbell v Allstate*, 418 F.3d 788, 796 (7th Cir. 2005) ("The loss of benefits to an employee as a result of an employer's action is not, by itself, sufficient to prove a violation of § 510. The employer must [also] have the specific intent to deprive the employee of his plan rights."). Accordingly, courts in this district have refused to certify ERISA § 510 claims under Rule 23(b)(3) where the claims challenge the decisions and subjective motivations of numerous individuals each vested with discretion. *Fletcher*, 245 F.R.D. at 333 (finding that inquiry into nineteen different

managers' evaluation of employees for lay-offs involved "individual and fact intensive determinations" that precluded certification of ERISA § 510 claim under Rule 23(b)(3)).

As for Count III, courts have held that certification is improper under Rule 23(b)(3) "where a central issue in a case," such as whether Northrop engaged in misleading conduct with respect to an employee, "requires individual proof*." Ormond v. Anthem, Inc.*, No. 05-cv-1908, 2009 WL 3163117, at *9 (S.D. Ind. Sept. 29, 2009) (citing *Clark v. Experian Info. Solutions, Inc.*, 256 Fed. Appx. 818, 821 (7th Cir. 2007) (affirming denial of class certification and holding that Rule 23(b)(3) class action was not appropriate when the claim required the class members to show "that he or she was, in some manner, deceived by the misrepresentation")). In such a case, by definition, questions affecting only individual members will predominate over questions of law and fact that are common to the class. Here, individual questions are central to determining liability. In light of the widely varying experiences encountered by employees with respect to the Plan, the Court will be required to resolve for each individual member of the proposed subclass, *inter alia*, whether Northrop made misrepresentations, whether those misrepresentations were material, whether that individual was misled, and whether that individual was harmed. These variables destroy any cohesion among the proposed subclass that might otherwise warrant Rule 23(b)(3) certification.

## IV.  **CONCLUSION**

For the reasons set forth above, Plaintiffs' renewed motion for class certification should be denied.

Date: January 24, 2020                          Respectfully submitted,


                                                /s/ *Samuel P. Myler*
                                                Nancy G. Ross (No. 6190243)
                                                Samuel Myler (No. 6309477)
                                                Abigail M. Bartine (No. 6312317)
                                                MAYER BROWN LLP
                                                71 South Wacker Drive
                                                Chicago, IL 60606
                                                Telephone: 312.782.0600
                                                Facsimile: 312.701.7711

                                                *Attorneys for Northrop Grumman*
                                                *Corporation and Northrop Grumman*
                                                *Severance Plan*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on January 24, 2020.

/s/ *Samuel P. Myler*
Samuel P. Myler