# **EXHIBIT B**

Page 1

1   IN THE UNITED STATES DISTRICT COURT
2   FOR THE NORTHERN DISTRICT OF ILLINOIS
3   EASTERN DIVISION
4
5   ALAN CARLSON and PETER DeLUCA,    )
6        Plaintiffs,                  )
7            vs.                      ) Case No. 13-2635
8   NORTHRUP GRUMMAN CORPORATION;     )
9   and the NORTHROP GRUMMAN          )
10  SEVERANCE PLAN,                   )
11       Defendants.                  )
12
13
14       DEPOSITION OF ALAN KEITH CARLSON
15           Thursday, January 26, 2017
16               Chicago, Illinois

1
2
3
4
5
6         Deposition of ALAN KEITH CARLSON, taken
7   before GREG S. WEILAND, CSR, RMR, CRR, pursuant to
8   the Federal Rules of Civil Procedure for the United
9   States District Court pertaining to the taking of
10  depositions, at Suite 3200, 71 South Wacker Drive,
11  in the City of Chicago, Cook County, Illinois,
12  commencing at 10:09 o'clock a.m., on the 26th day of
13  January, 2017.
14
15
16
17
18
19
20
21
22
23
24

Page 21

1  and what were they after you left?
2       A.    Can you be specific?
3       Q.    So let's start with the severance plan.
4             So can you explain to me what the
5  severance plan was in ES and what the severance plan
6  was in TS?
7       A.    It's my understanding at the time of the
8  transition that they were the same.
9       Q.    And were you ever provided any severance
10 plan materials while you were at ES?
11      A.    I might have, but I never paid attention
12 to it.  I was just interested in doing my job and
13 being a good employee.
14      Q.    Do you recall ever attending any
15 presentations while you were at ES related to your
16 severance benefits?
17      A.    No.
18      Q.    And I take it you do not know if you have
19 any copies of any ES materials related to your
20 severance benefits?
21      A.    I might have, but I don't recall.
22      Q.    What was your understanding of the
23 severance benefits you had at ES?
24      A.    Well, my understanding was that if I was

Page 22

1  laid off for business reasons, not for cause, that I
2  would receive compensation in the form of one week
3  salary for every year that I worked at Northrop
4  Grumman up to a max of 26 weeks.
5      Q.  And that understanding was based on what
6  exactly?
7      A.  It was based on periodic layoffs that were
8  experienced at ES, and that's what employees
9  received.
10     Q.  But there was no -- correct me if I'm
11 wrong.  There was no document you received or that
12 you're unaware of any document in which it explained
13 to you that that was what would happen if you were
14 laid off?
15         MR. BARTOLIC:  Objection, leading.
16         THE WITNESS:  What time frame are you
17 talking about?
18 BY MR. MYLER:
19     Q.  Any time frame.
20     A.  When I was at ES?
21     Q.  Yes, yes.
22     A.  I never paid attention, so I can't answer
23 the question.
24     Q.  And your belief -- so you said people were

Page 89

1  Mr. Bergstrand?
2       A.   I don't think there's any difference.
3       Q.   Between you and him?
4       A.   Between me and him, correct.  We're both
5  older white males.  We might both have blue eyes, I
6  don't know.  We're both married.
7       Q.   Okay.  You also state that they interfered
8  with your attainment of severance benefits.
9            How did they interfere?
10      A.   By not giving us the memo.
11      Q.   So you're defining interfere as just not
12 giving you what you want?
13      A.   No.
14      Q.   Did someone interfere with your right by
15 not providing you something?
16           MR. BARTOLIC:  Objection, argumentative,
17 leading, mischaracterizing the evidence.
18           THE WITNESS:  So my understanding was --
19 my understanding about this memo is that it was a
20 vehicle to indicate how many weeks of severance you
21 would get.  And also in order to get it you needed
22 to release the company.
23           So that's what my understanding of the
24 purpose of the memo was.  I didn't -- I had no

Page 90

1  understanding that the memo -- so by not giving me
2  the memo, they interfered with what I felt was my
3  right.
4  BY MR. MYLER:
5      Q.   Okay.  And you thought you had a right to
6  benefits based on what?
7           MR. BARTOLIC:  Objection, asked and
8  answered.
9  BY MR. MYLER:
10     Q.   You have to answer even though he objects.
11     A.   Because it was my understanding that
12  everybody who was involuntarily laid off through no
13  cause of their own, in other words just because
14  Northrop as an at-will employee decided they didn't
15  want you to work there anymore, that they would
16  fairly compensate us with severance.
17     Q.   Do you believe Northrop made any
18  misrepresentations to you regarding your purported
19  right to severance?
20     A.   The misrepresentation was implied.
21     Q.   By what?
22     A.   By the fact that everybody else, whoever
23  got laid off, received severance and that -- it's
24  hard to explain.

Page 91

1      It was in this document, Carlson 10,
2  Answer Number 5, where it talks about human resource
3  notifying the laid off employee satisfied the
4  eligibility criteria in the plan rather than
5  indicating the memo is in itself an eligibility
6  criteria.  That was never adequately defined by the
7  company.
8      Q.   So this PowerPoint presentation was the
9  misrepresentation you're claiming?
10     A.   The answer references the PowerPoint
11 presentation.
12     Q.   But you didn't attend that presentation?
13     A.   No, but, I mean, but the implications were
14 from the summary plan description.  Even though it
15 said what it said, the understanding was that
16 everybody was going to get a memo --
17     Q.   Okay.
18     A.   -- that the memo was for record keeping.
19 It wasn't for eligibility.
20     Q.   And when did Northrop tell you that?
21     A.   No, they never did.
22     Q.   Okay.
23     A.   That's what I'm saying was implied by the
24 way -- by the way they acted.

Page 92

1  Q. What actions are you referring to?
2  A. Everybody that got laid off got a memo.
3  That was their actions. And then all of the sudden
4  without telling anybody they changed their mind, and
5  that's -- that's the key.
6  Q. Do you know how they decided that those
7  individuals who got the memo --
8  A. No.
9  Q. -- would be getting the memo --
10 A. No.
11 Q. -- would be getting severance?
12     So you don't know whether they simply
13 decided to give those people severance based on some
14 criteria you're unaware of but decided you didn't
15 meet those criteria?
16 A. Correct.
17 Q. If I understand you correctly, it's not
18 that the memo was simply a way of notifying the
19 person. It's you saw that everyone you knew had
20 gotten it, so you assumed everyone gets it into the
21 future?
22 A. I think "assume" is a bad word. I had an
23 understanding.
24 Q. Okay. We might be wrapping up. Let me