# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| **ALAN CARLSON and PETER DELUCA**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN,**<br><br>**Defendants.** | **Case No. 13-cv-2635**<br><br>**District Court Judge Andrea R. Wood** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Nancy G. Ross (No. 6190243)
Samuel Myler (No. 6309477)
Abigail M. Bartine (No. 6312317)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600
Facsimile: 312.701.7711
NRoss@mayerbrown.com
ABartine@mayerbrown.com
SMyler@mayerbrown.com

*Attorneys for Northrop Grumman
Corporation and Northrop Grumman
Severance Plan*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 2

    A.   The Northrop Grumman Severance Plan ................................................... 2

    B.   Northrop's Eligibility Determinations ....................................................... 3

    C.   Plaintiffs' Administrative Claims for Severance Benefits ......................... 5

III.  ARGUMENT ............................................................................................................. 7

    A.   Defendants are Entitled to Summary Judgment on Plaintiffs' Benefits
        Claim (Count I) ......................................................................................... 7

        1.   The Committee's Decision is Subject to Review Under the
              Deferential Arbitrary and Capricious Standard ........................... 7

        2.   The Committee's Decision was Reasonable and Must be Upheld ............ 8

              a.   The Plan Language is Unambiguous ............................... 8

              b.   The Committee's Interpretation Does Not Violate ERISA ......... 11

              c.   The Committee Did Not Administer or Interpret the Plan
                   Inconsistently ................................................................. 12

    B.   Northrop is Entitled to Summary Judgment on Plaintiffs' ERISA § 510
        Claim (Count II) ...................................................................................... 14

    C.   Northrop is Entitled to Summary Judgment on Plaintiffs' Breach of
        Fiduciary Duty Claim (Count III) ............................................................ 18

        1.   Plaintiffs Cannot Establish a Breach of Fiduciary Duty ......................... 18

              a.   Plaintiffs Cannot Establish the "Breach" Element of their
                   Claim ............................................................................... 19

              b.   Plaintiffs Cannot Establish the "Harm" Element of a
                   Breach of Fiduciary Duty Claim .................................... 22

        2.   Plaintiffs Cannot Establish That They Are Entitled to Equitable
              Reformation .............................................................................. 24

IV.  CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

*Ameritech Ben. Plan Committee v. Communication Workers of America*,
  220 F.3d 814 (7th Cir. 2000) ..................................................................18, 20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................7

*Bailey v. U.S. Enrichment Corp.*,
  530 Fed. Appx. 471 (6th Cir. 2013)...........................................................13

*Bair v. General Motors Corp.*,
  895 F.2d 1094 (6th Cir. 1990) ..................................................................13

*Becker v. Mack Trucks, Inc.*,
  281 F.3d 372 (3d Cir. 2002)......................................................................19

*Bodine v. Employers Cas. Co.*,
  352 F.3d 245 (5th Cir. 2003) ....................................................................19

*Bourke v. Dun & Bradstreet Corp.*,
  159 F.3d 1032 (7th Cir. 1998) ...................................................................9

*Campbell v. Whobrey*,
  No. 16-C-4631, 2019 WL 184056 (N.D. Ill. Jan. 14, 2019).......................17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................7

*Cigna v. Amara*,
  563 U.S. 421 (2011)................................................................................27

*Cross v. Bragg*,
  329 F. App'x 443 (4th Cir. 2009) ..............................................................27

*Dzinglski v. Weirton Steel Corp.*,
  875 F.2d 1075 (4th Cir. 1989) ..................................................................14

*Feinberg v. RM Acquisition, LLC*,
  629 F.3d 671 (7th Cir. 2011) ...............................................................17, 19

*Feldman v. American Memorial Life Ins. Co.*,
  196 F.3d 783 (7th Cir. 1999) ....................................................................19

*Frahm v. Equitable Life Assur. Soc. of US*,
  137 F.3d 955 (7th Cir. 1998) ................................................................22, 23

*Frye v. Thompson Steel Co., Inc.,*
    657 F.3d 488 (7th Cir. 2011) ....................................................................12

*Gallo v. Amoco Corp.,*
    102 F.3d 918 (7th Cir. 1996) ....................................................................12

*Gavalik v. Continental Can Co.,*
    812 F.2d 834 (3d Cir. 1987)......................................................................17

*Gondeck v. A Clear Title and Escrow Exchange, LLC,*
    47 F. Supp. 3d 729 (N.D. Ill. 2014) ........................................................25

*Hamilton v. Air Jamaica, Ltd.,*
    945 F.2d 74 (3d Cir. 1991)........................................................................13

*Hess v. Reg-Ellen Machine Tool Corp.,*
    423 F.3d 653 (7th Cir. 2005) ....................................................................12

*Hinkla v. Bethlehem Steel Corp.,*
    863 F.2d 279 (3d Cir. 1988)......................................................................14

*Howell v. Motorola, Inc.,*
    633 F.3d 552 (7th Cir. 2011) ..............................................................22, 24

*Johnson v. Cambridge Indus., Inc.,*
    325 F.3d 892 (7th Cir. 2003) ....................................................................21

*Johnson v. Meriter Health Servs. Employee Ret. Plan,*
    29 F. Supp. 3d 1175 (W.D. Wis. 2014) ....................................................26

*Kamler v. H/N Telecommunication Services, Inc.,*
    305 F.3d 672 (7th Cir. 2002) ..............................................................25, 26

*Kannapien v. Quaker Oats Co.,*
    507 F.3d 629 (7th Cir. 2007) ....................................................................25

*Kenseth v. Dean Health Plan, Inc.,*
    610 F.3d 452 (7th Cir. 2010) ..............................................................20, 23

*Killian v. Concert Health Plan,*
    742 F.3d 651 (7th Cir. 2013) ....................................................................23

*Laurent v. PwC,*
    935 F.3d 739 (2d Cir. 2019)......................................................................27

*Lockheed Corp. v. Spink,*
    517 U.S. 882 (1996)...................................................................................12

*McNab v. General Motors Corp.*,
   162 F.3d 959 (7th Cir. 1998) ...................................................................13, 14, 15, 18

*Mira v. Nuclear Measurements Corp.*,
   107 F.3d 466 (7th Cir. 1997) ...................................................................26

*Moloney v. Ford Motor Co.*,
   72 F.3d 130 (6th Cir. 1995) (unpublished) .................................................13

*Murphy v. International Business Machines Corp.*,
   23 F.3d 719 (2d Cir. 1994)......................................................................13

*Noorily v. Thomas & Betts Corp.*,
   188 F.3d 153 (3d Cir. 1999).....................................................................13

*Pearce v. Chrysler Grp. LLC Pension Plan*,
   893 F.3d 339 (6th Cir. 2018) ...................................................................27

*Perez v. PBI Bank, Inc.*,
   69 F. Supp. 3d 906 (N.D. Ind. 2014) .........................................................27

*Pinto v. Zenith Radio Corp.*,
   480 F. Supp. 361 (N.D. Ill. 1979), *aff'd mem.*, 618 F.2d 110 (7th Cir. 1980)............13

*Robin v. Espo Eng'g Corp.*,
   200 F.3d 1081 (7th Cir. 2000) ..................................................................7

*Schultz v. Aviall, Inc. Long Term Disability Plan*,
   670 F.3d 834 (7th Cir. 2012) ...................................................................11

*Scott v. Ford Motor Co.*,
   No. 19-cv-13141 (E.D. Mich. Mar. 23, 2020) ......................................10, 14

*Smith v. Ameritech*,
   129 F.3d 857 (6th Cir. 1997) ...................................................................17

*Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*,
   741 F.3d 819 (7th Cir. 2014) ...................................................................17

*Tobias v. PPL Elec. Utilities Corp.*,
   193 F. App'x 158 (3d Cir. 2006) ........................................................13, 14

*Tompkins v. Central Laborers' Pension Fund*,
   712 F.3d 995 (7th Cir. 2013) ...................................................................24

*Vallone v. CNA Financial Corp.*,
   375 F.3d 623 (7th Cir. 2004) ..............................................................23, 24

iv

*Wahl v. Carissima of Italy III, Ltd.*,
No. 99-C-6776, 2000 WL 1100434 (N.D. Ill. Aug. 4, 2000) .....................................16

*Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*,
2019 WL 142686 (N.D. Ill. Mar. 29, 2019)..................................................................17

*Wasserstein v. Univ. of Chicago*,
2018 WL 3474543 (N.D. Ill. July 19, 2018).........................................................25, 26

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
615 F.3d 808 (7th Cir. 2010) ......................................................................................26

## Statutes

29 U.S.C. § 1140..............................................................................................................16

ERISA § 102 ......................................................................................................................3

ERISA § 404(a)(1)............................................................................................................22

ERISA § 502(a)(1)(B).......................................................................................................12

ERISA § 502(a)(3)...........................................................................................2, 24, 26, 27

ERISA § 510 .......................................................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 56(a) ..........................................................................................................7

11 Williston on Contracts § 32:5 (4th ed.).......................................................................11

Defendants Northrop Grumman Corporation ("Northrop") and the Northrop Grumman Severance Plan ("the Plan") (together, "Defendants"), by and through their attorneys, hereby submit this memorandum of law in support of their motion for summary judgment.

## I.  **INTRODUCTION**

This seven year old case has taken a number of twists and turns, originally starting as a complaint by Plaintiffs over their apparent frustration that their management did not offer them severance benefits when they were laid off in 2012.  While over the years Plaintiffs have expanded their complaint to assert claims under multiple civil enforcement provision of ERISA, as well as to cover a class as broad as this Court would allow, the undisputed evidence has always shown that Northrop's conduct was entirely consistent with the express terms of the Plan, which for good reason provided Northrop's management the discretion to decide whether to provide Plaintiffs severance benefits at the time of their termination.  There was nothing nefarious about that decision and there was nothing illegal about how the Plan was designed. The decision to not designate Plaintiffs as eligible for severance was consistent with the express terms of the Plan, it was not part of an effort to retaliate or illegally deprive Plaintiffs of benefits to which they were entitled, and it did not conflict with any communications Northrop provided about how the Plan operates.

The following evidence will show that the time has come for Defendants to be granted summary judgment on each of the three counts in Plaintiffs' Amended Complaint. With respect to Count I, which seeks benefits allegedly owed under the terms of the Plan, the undisputed facts establish that Plaintiffs were not eligible for nor entitled to those benefits. The Plan's terms clearly (and repeatedly) provide that employees are entitled to severance only if they receive written notice (an "Eligibility Memorandum") from Northrop that they have been chosen to participate in the Plan. Given this unambiguous requirement and Plaintiffs' undisputed failure to receive an

Eligibility Memorandum, no reasonable trier of fact could find that Plaintiffs were wrongfully, much less arbitrarily or capriciously, denied benefits in violation of ERISA.

Plaintiffs' claim in Count II that Northrop "interfered" with their attainment of benefits in violation of ERISA § 510 when it decided not to designate them eligible for those same benefits also fails. In order for Plaintiffs to proceed on such a claim, this Court would need to construe ERISA § 510 to prohibit plan sponsors such as Northrop from offering employees severance or other welfare benefits pursuant to plans that afford plan sponsors the discretion to determine eligibility. Not only would such an interpretation expand the scope of ERISA § 510 far beyond the boundaries envisioned by Congress, it would run afoul of long-standing Seventh Circuit precedent authorizing employers to adopt plans materially indistinguishable from the one at issue here.

Plaintiffs' breach of fiduciary duty claim pleaded in Count III also fails on multiple fronts. As an initial matter, Plaintiffs cannot present any evidence, much less sufficient evidence to warrant trial, to support their fiction that there was a change to the "administration, interpretation, or terms of the Plan" related to eligibility. Nor can Plaintiffs establish that, even if there were such a change, Northrop had any preexisting fiduciary obligation to explain how it interpreted the Plan's already unambiguous eligibility requirements. The law is clear that a plan fiduciary only has an obligation to affirmatively disclose information beyond that which is statutorily required by ERISA in certain circumstances, none of which are present in this case. Finally, Plaintiffs' inability to establish that they have been harmed as a result of alleged nondisclosures by Defendants, or that the relief they are requesting is an "appropriate" remedy under ERISA § 502(a)(3), are yet additional reasons why Defendants are entitled to summary judgment.

## II.     BACKGROUND

### A.     The Northrop Grumman Severance Plan

Northrop is a large government contractor whose approximately 85,000 employees provide the defense industry with a wide array of products and services related to aerospace, electronics, information systems, and technical support. (SUF ¶ 1). For purposes relevant to this case, over the time period at issue (approximately 2010-2014), Northrop operated through four different sectors—Aerospace Systems, Electronics Systems, Technical Services, and Information Systems. (SUF ¶ 2). Each sector was divided into multiple divisions and each division often oversaw multiple programs. (*Id.*). Furthermore, each program focused on one or more contracts (typically between Northrop and the Federal government) and the terms of each contract varied significantly. (*Id.*). Some programs and contracts involved highly-skilled technical work, such as designing or engineering aerospace or weapons systems, while others involved support services, such as providing maintenance for Northrop's products. (*Id.*).

To meet the needs of its large and diverse workforce, Northrop sponsored numerous health, welfare, and retirement benefit plans, each of which covered different parts of the organization and different groups of Northrop employees. (SUF ¶ 3). One such plan offered during the time period at issue was the Northrop Grumman Severance Plan, an ERISA welfare benefit plan designed to provide selected employees severance benefits in the event of a lay-off or reduction-in-force. (*Id.*). The terms of the Plan were set forth in two main documents: a "wrap" plan document, which contained general information related to its administration, and a "component" plan document, which described, *inter alia*, who was eligible for the Plan, the type of benefits offered, and the conditions employees were required to satisfy in order to obtain benefits.[1] (SUF ¶

---

[1] The component plan documents also served as the "summary plan descriptions" required by ERISA § 102, 29 U.S.C. § 1022(a). (*See* SUF ¶ 4).

4). The Plan provided that Northrop's Chief Human Resources and Administrative Officer was the named plan administrator for ERISA purposes and the Northrop Grumman Corporate Severance Plan Review Committee ("the Committee") was the named fiduciary for purposes of deciding claim appeals. (SUF ¶ 5).

**B.      Northrop's Eligibility Determinations**

Not all Northrop employees were entitled to benefits under the Plan in the event that they were laid-off. Instead, benefits were offered only to "selected eligible employees," which the Plan defined as employees that satisfied three requirements: (1) they were based in the United States, (2) they were scheduled to work at least 20 hours per week, and (3) they received a memorandum from one of Northrop's Vice-Presidents of Human Resources (or his/her designee) notifying them that they were eligible.[2] (SUF ¶ 6). This last condition was included to afford Northrop discretion over whether, when, and to whom severance would be offered in the event of a lay-off. (SUF ¶¶ 12-14). This provision gave Northrop much needed flexibility in light of the fact that the business needs of each sector, division, and program were different and changed over time. (*Id.*).

Although the Plan afforded management discretion over eligibility determinations, Northrop did not maintain a single company-wide policy governing how eligibility would be determined in each or any particular case. (SUF ¶ 15). Rather, Northrop left eligibility decisions to the various business leaders and managers in charge of the different sectors, divisions, and programs. (*Id.*). As a result, the specific processes in place and factors considered when making eligibility determinations varied from one business unit to another. (*Id.*). In addition, the manner in which each business unit made eligibility decisions changed over time. (*Id.*).

---

[2] The Plan also identified certain categories of employees that were expressly excluded from participation in the Plan. However, these categories are not relevant to the claims at issue in this case. (Dkt. #248, Class Cert. Order, at 5 (defining class to cover only employees that, *inter alia*, did not fall within one or more of the Plan's exclusionary categories)).

With respect to the Technical Services Sector (a recently established sector which employed Plaintiffs at the time they were laid-off), prior to October 2011, its general practice had been to continue the "legacy" approach to severance previously followed by the sector's different programs—*i.e.* the practice that the program followed before it joined Technical Services. (SUF ¶ 17). This approach resulted in a patchwork of different severance practices, both with respect to eligibility decisions and the amount of severance employees received. (SUF ¶ 18). Beginning in October 2011, however, Technical Services "harmonized" its severance schedule, providing employees who were designated eligible for severance one week of severance pay for every year of service up to 26 weeks (the "high schedule"). Severance still had to be authorized by management. (SUF ¶ 19). This harmonization did not change how Northrop interpreted the Plan or management's longstanding discretion to determine eligibility. (*Id.*). Northrop and Technical Services always construed the Plan's Eligibility Memorandum requirement as a mechanism to implement its discretion over severance eligibility. (*Id.*).

In the Integrated Logistics and Modernization Division (ILMD), which employed Plaintiffs at the time they were laid-off, severance eligibility decisions were the responsibility of Nimish Doshi, the division's Vice-President of Business Management, and Chris Jones, the General Manager of ILMD. (SUF ¶ 22). Doshi and Jones considered severance eligibility decisions to require business judgment, and made those decisions based on a variety of factors, including fairness, consistency, affordability, and the particular program's "competitive posture." (SUF ¶ 24). With respect to the latter, the more ILMD spent on benefits, the more its costs rose, interfering with its ability to compete for government contracts. (SUF ¶¶ 24-26).

C.     **Plaintiffs' Administrative Claims for Severance Benefits**

Plaintiffs Alan Carlson and Peter DeLuca began working at Northrop in 1978 and 1980, respectively. (SUF ¶ 27). Between 2005 and 2012, Carlson and DeLuca worked on the ILMD's Quick Reaction Capabilities (QRC) program.  (*Id.*). However, on July 31, 2012, the contract that supported the QRC program expired and the new contract was funded at a much lower level. (SUF ¶ 28).  As a result, Plaintiffs and two of their fellow employees on the QRC program were laid-off.  (*Id.*).

Consistent with the approach employed by Technical Services at the time, severance eligibility decisions were made on a program-by-program basis and required approval by business management for both the affected program and the division of which it was a part. (SUF ¶ 28). Plaintiffs' managers on the QRC program submitted a request to ILMD management for Plaintiffs to receive severance , but at the time, Doshi and Jones deemed it too costly to approve severance, particularly in light of impending Federal budget cuts associated with government sequestration. (SUF ¶¶ 26, 29).  Doshi and Jones deemed it important to use ILMD's resources to protect and grow programs, and thereby avoid further lay-offs.  (*Id.*). Accordingly, Plaintiffs were not issued an Eligibility Memorandum designating them as eligible to participate in the Plan. (SUF ¶ 29).

Following their termination, Plaintiffs submitted administrative claims for severance benefits pursuant to the Plan's claims procedure. (SUF ¶ 30). In their initial claims letters, Plaintiffs argued that they should have received severance simply because severance was provided to other laid-off employees that worked on their program in the past. (*See* SJ Ex. 14, at NGC00001, NGC00243). Plaintiffs' claims were reviewed and denied by Margaret Collins, Northrop's Corporate Director of Retirement Administration, Compliance, and Services, on behalf of the Plan Administrator. (SUF ¶ 31).  In her claims denial letters, Collins explained that pursuant to the

terms of the Plan, employees subject to a reduction-in-force are only entitled to benefits if they received an Eligibility Memorandum designating them as eligible to participate in the Plan. (*Id.*). Because Plaintiffs had not receive such a memorandum, Collins enforced the Plan's terms and denied Plaintiffs' claims. (*Id.*).

Plaintiffs appealed the denial of their claims to the Committee, which voted to uphold the Plan Administrator's decision. (SUF ¶¶ 32-33). As the Committee reiterated in the appeals denial letters it sent to Plaintiffs, the Plan's terms provide that eligibility and entitlement to benefits is conditioned upon receipt of an Eligibility Memorandum. (SUF ¶ 35). Because Plaintiffs did not receive an Eligibility Memorandum, and the Plan Administrator's investigation indicated that their managers did not intend for them to receive one, Plaintiffs were not eligible for or entitled to benefits under the Plan. (*Id.*). The Committee further explained that the Plan did not restrict Northrop's discretion with respect to which employees should receive an Eligibility Memorandum and that the Plan's design in that regard did not violate ERISA. (*Id.*). After their claims were denied by the Committee, Plaintiffs filed this lawsuit.

## III.    ARGUMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In opposing summary judgment, "the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

A. **Defendants are Entitled to Summary Judgment on Plaintiffs' Benefits Claim (Count I)**

1. *As Ruled By This Court, The Committee's Decision is Subject to Review Under the Deferential Arbitrary and Capricious Standard*

Pursuant to *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), courts review claims alleging improper denial of ERISA benefits under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority," *id.* at 115, in which case the "arbitrary and capricious" standard applies. *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007). This Court has already determined that the deferential arbitrary and capricious standard of review applies to Plaintiffs' claims for benefits. (*See* Dkt. #230, Std. of Rev. Order, at 15.) Accordingly, to avoid summary judgment, Plaintiffs must do more than show that there is a "better" interpretation of the Plan than the one proffered by the Committee or that the Committee's interpretation was incorrect. *Rabinak v. United Brotherhood of Carpenters Pension Fund*, 832 F.3d 750, 754 (7th Cir. 2016); *Gingold v. Unum Life Ins. Co. of Am.*, 74 Fed. Appx. 660, 662 (7th Cir. 2003) ("When a plan is open to more than one interpretation, we will not find the administrator's decision arbitrary and capricious just because we would have reached a different conclusion or relied on different authority had we been in the administrator's shoes."). Instead, Plaintiffs must present sufficient evidence to enable the Court to conclude that the Committee's resolution of Plaintiffs' claims was "downright unreasonable" and its interpretation of the Plan "defied common sense." *Gingold*, 74 Fed. Appx. at 663. Plaintiffs cannot carry this heavy burden.

2. *The Committee's Interpretation and Decision was Reasonable and Must be Upheld*

The Committee's decision to deny Plaintiffs' claims was based on a commonsense interpretation of the Plan and a straightforward application of its terms. Although Plaintiffs concede that they never received an Eligibility Memorandum and that their management did not

intend to designate them as eligible, (Dkt. #62, Am. Compl. ¶ 20), they contend that the Committee nevertheless abused its discretion by interpreting the Plan as requiring such a memorandum in the first place. Specifically, Plaintiffs argue that the Committee should have construed the Eligibility Memorandum as nothing more than a mere "administrative act of notification" designed to provide employees notice that they were entitled to benefits. (Dkt. #62, Am. Compl. ¶¶ 27, 83). This untenable interpretation of the Plan, which flatly ignores and distorts its express terms, falls far short of creating a genuine dispute of fact with respect to the reasonableness of the Committee's decision. *See Stewart v. Bell Atlantic Long Term Disability Plan*, No. 12-C-6175, 2013 WL 6730186, at **8-9 (N.D. Ill. Dec. 19, 2013) (holding that plaintiff's "untenable interpretation" was not sufficient to defeat defendant's motion for summary judgment).

a.     The Plan Language is Unambiguous

In assessing the reasonableness of a plan administrator's interpretation, courts begin with the language of the Plan. *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). Here, the terms of the Plan pertaining to the purpose and function of the Eligibility Memorandum are set forth in three separate sections, each of which supports the Committee's interpretation. First, in a prefatory section set forth on the very first page of the Plan, the reader is warned:

> This is a Severance Plan that is being offered to *selected* employees of Northrop Grumman Corporation who receive a notice of layoff.  The fact that you have received this document *does not necessarily mean that you are eligible* for severance benefits*; you must also have received a cover memo, signed by a Vice-President of Human Resources (or his/her designee)*, with this document, addressed to you individually by name.

(SUF ¶ 7) (emphasis added). Then, in the section of the Plan identifying "eligible employees," it provides:

> *You are an eligible employee if* you work in the United States, you are regularly scheduled to work at least 20 hours per week *and you have been notified in writing by your management that you are covered by this Plan*. . . . The fact that you

9

received this document does not necessarily mean that you are eligible; *you must also have received a cover memo, signed by a Vice-President of Human Resources* (or his/her designee), with this document addressed to you individually by name.

(SUF ¶ 8) (emphasis added). Finally, on that same page, in a section entitled "Conditions for Receiving Benefits," the Plan states that "[i]n order to receive the benefits of this Plan" employees must meet all of the following conditions:

- *You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit*.

- You must remain employed in your current position until you are laid off by your management[.]

- You must sign a Confidential Separation Agreement and General Release that will include, among other things, a release of any and all claims that you may have against the Company.[3]

(SUF ¶ 9) (emphasis added).

The above terms of the Plan are clear: in order to qualify as an "eligible employee" or satisfy the Plan's "conditions for receiving benefits," employees had to receive written notice in the form of a memorandum designating them as eligible under the Plan. Plaintiffs' arguments to the contrary as to the role of the memo are irrelevant. The determining factor is simply that the Plan terms called for a memo, which Plaintiffs did not receive. The Committee's decision can hardly be characterized as unreasonable when it was directly in line with the Plan terms.

Nevertheless, Plaintiffs' contention that the Eligibility Memorandum is merely a means by which employees are notified that they satisfied the work location and hours requirements in the Plan ignores the context in which the memorandum is discussed. As noted above, the Eligibility

---

[3] Because Northrop's willingness to provide severance benefits was also conditioned upon receipt of a signed release and waiver of all claims, (SJ Ex. 12, 2012 Component Plan Document, at NGC01265), Plaintiffs' failure to provide such a release is additional grounds to deny Plaintiffs' claims. Plaintiffs offer no proof that had benefits been offered, they would have signed the required release.

Memorandum is referenced in three separate sections of the Plan, each of which is related to eligibility or the conditions that must be met to receive benefits. This context cannot be ignored, nor can it be squared with Plaintiffs' argument that the Eligibility Memorandum was merely an "administrative act of notification." (Dtk. #62, Am. Compl. ¶ 83). If the Eligibility Memorandum served that entirely ministerial function, there would be no need to include a reference to the Eligibility Memorandum at all, much less in the aforementioned sections of the Plan. *See Schultz*, 670 F.3d at 838 ("Plan language is given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement.").

In addition, Plaintiffs' contention that delivery of an eligibility memorandum was a mere ministerial act is inconsistent with the Plan terms setting forth the "conditions for receiving benefits." (*See* SUF ¶ 9). As noted above, these provisions include a requirement that employees "be ***designated*** as eligible" and that they "are ***designated*** if [they] received a memo addressed to [them], notifying [them] of [their] eligibility."). (*Id.*). This emphasis on the memorandum's role in "designating" employees as eligible, as opposed to merely "notifying" them of their eligibility, highlights the fact that the Eligibility Memorandum was far more than a ministerial document.[4] To construe the Eligibility Memorandum as a means of merely notifying employees of their eligibility would run afoul of the basic principle that contracts should be interpreted so as to avoid rendering any terms "superfluous, useless or inexplicable." 11 Williston on Contracts § 32:5 (4th ed.).

In any event, even if the Court were to determine that the Plan was ambiguous, which it is not, Defendants would still be entitled to summary judgment because the Committee's resolution of any such ambiguity is entitled to deference. As the Seventh Circuit has noted, "[t]he requirement

---

[4] Plaintiffs' interpretation also cannot be squared with the Plan's prefatory language that it is offered to "selected employees." (SUF ¶ 7).

that [courts] give deference to the plan administrator's interpretation is especially applicable when plan language is ambiguous, for that is precisely when the administrator exercises his grant of discretion." *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 662 (7th Cir. 2005). *See also Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 833 (7th Cir. 2004) ("[W]e cannot merely apply federal common law principles of contract interpretation, but rather must view the contractual ambiguity through a lens that gives broad discretion to the plan administrator to interpret the plan."). Because Plaintiffs cannot demonstrate that the Committee's interpretation of the Plan, including the manner in which it resolved any alleged ambiguity with respect to the purpose and function of the eligibility memorandum, was arbitrary or capricious, the Committee's interpretation must be upheld and Plaintiffs' ERISA § 502(a)(1)(B) claims must be dismissed.

### b. The Committee's Interpretation Does Not Violate ERISA

In addition to arguing that the Committee's interpretation of the Plan's terms was unreasonable, Plaintiffs contend that interpreting the Plan so as to afford Northrop discretion over eligibility determinations violates ERISA. (Dkt. #62, Am. Compl. ¶¶ 20-21). This argument not only lacks support, it is directly contrary to binding precedent permitting plan sponsors to design welfare plans with whatever features and eligibility conditions they deem appropriate, including features that vest employers with discretion to pick-and-chose which employees are eligible for plan benefits.

In considering the leeway afforded employers when designing benefit plans, the Supreme Court has consistently held that ERISA was not intended to dictate the substance or content of welfare benefit plans such as the one at issue in this case. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.") As the Supreme Court held in *Shaw v. Delta Air Lines, Inc.*, "ERISA does not mandate that

12

employers provide any particular benefits and does not itself proscribe discrimination in the provision of employee benefits." 463 U.S. 85, 91 (1983). Thus, employers are free to design plans in which eligibility turns on a rigid application of objective criteria, but they are also free to design plans that condition eligibility on the subjective decision-making of employees' managers and company personnel.

Employers' freedom to design plans in which they retain the discretion to make subjective, discretionary eligibility decisions was confirmed by the Seventh Circuit in *McNab v. General Motors Corp.*, 162 F.3d 959, 960 (7th Cir. 1998). In *McNab*, a group of former GM employees challenged GM's failure to designate them eligible to participate in an early retirement plan. That plan gave GM managers unfettered discretion to designate employees as eligible based solely on whether the employees' respective managers believed doing so was in GM's "best interest." *Id.* at 960. In denying the plaintiffs' claims, the Seventh Circuit held that ERISA permits employers to design plans in which they retain discretion over eligibility decisions and to delegate that discretion to the subjective business judgment of employees' managers. *Id.* at 962. The Court affirmed GM's right to exercise its discretion to determine an individual's eligibility at the time GM was seeking to terminate his or her employment, which is exactly what Northrop did here. The Seventh Circuit's decision in *McNab* is in line with that of every other circuit that has addressed the issue. *See also Bair v. General Motors Corp.*, 895 F.2d 1094, 1098 (6th Cir. 1990); *Bailey v. U.S. Enrichment Corp.*, 530 Fed. Appx. 471, 474 (6th Cir. 2013); *Moloney v. Ford Motor Co.*, 72 F.3d 130 (6th Cir. 1995) (unpublished); *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir. 1999); *Tobias v. PPL Elec. Utilities Corp.*, 193 F. App'x 158, 162 (3d Cir. 2006); *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 76 (3d Cir. 1991); *Murphy v. International Business*

13

*Machines Corp.*, 23 F.3d 719, 721 (2d Cir. 1994); *Pinto v. Zenith Radio Corp.*, 480 F. Supp. 361, 364 (N.D. Ill. 1979), *aff'd mem.*, 618 F.2d 110 (7th Cir. 1980).

In fact, in March of this year, a court in the Eastern District of Michigan dismissed a claim indistinguishable from Plaintiffs' here. In *Scott vs. Ford Motor Co.,* 19-cv-13141, dkt. #13 (E.D. Mich. Mar. 23, 2020), the plaintiff claimed her employer improperly refused to provide her severance benefits under a plan that, like the Plan at issue here, provided benefits only to those employees that were "selected by management." *Id.* at 5. In dismissing the plaintiffs' claims, the Court held that Ford was free to design a plan that afforded its managers unfettered discretion over which employees would be "selected" to receive benefits and that the fact that some received benefits but not others did not violate ERISA. *Id.* at 6-7.

Given the Seventh Circuit's holding in *McNab* and the decisions of its sister circuits in similar cases, Plaintiffs' argument that the Committee's interpretation of the Plan violates ERISA falls flat.

c.  The Committee Did Not Administer or Interpret the Plan Inconsistently

Plaintiffs' contention that Northrop inconsistently interpreted and administered the Plan in making severance eligibility decisions is also unavailing. As a threshold issue, Plaintiffs' allegations of inconsistency fail before they begin because they improperly conflate Northrop's role as employer with the Committee's role as claims adjudicator. Courts have consistently held that eligibility decisions, such as those at issue here, do not qualify as "plan administration" subject to judicial review. *See Hinkla v. Bethlehem Steel Corp.*, 863 F.2d 279, 285-86 (3d Cir. 1988) (holding that employer's determination regarding its "best interests" under the Plan was a business decision, not an act of plan administration subject to judicial review); *Tobias v. PPL Elec. Utilities Corp.*, 193 Fed. Appx. 158, 162 (3d Cir. 2006) ("When a plan gives an employer discretion to

14

make business decisions implementing the plan's terms, the employer is not acting as a fiduciary when it makes those business decisions."); *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1079 (4th Cir. 1989) (authority to determine whether employee was entitled to benefits under plan did not give claims administrator discretionary authority to review employer's decision-making with respect to whether plaintiff was selected to participate in plan in the first place). Because these decisions involve the plan sponsor's business judgment, as opposed to a plan fiduciary's discretionary administration of a plan, any alleged "inconsistency" is inapposite.

Even if Plaintiffs' allegations regarding Northrop's inconsistent interpretation and administration of the Plan were relevant, they still would not support a claim because they are not supported by any evidence in the record. As the discovery record demonstrates, the Eligibility Memorandum always served as an actual requirement that afforded Northrop control over which employees would be extended severance. (SUF ¶¶ 10-13). Plaintiffs cannot present any evidence that either the Plan Administrator or Northrop "changed its interpretation" of the Plan in this regard. (SUF ¶ 36). Nor can they present any evidence that Northrop "uniformly deliver[ed] the written notification to participants who were laid off advising them they were eligible for severance benefits" prior to the purported change. (Am. Compl. ¶ 66; SUF ¶¶ 12-13). In fact, contrary to what Plaintiffs allege, indisputable evidence establishes that throughout the relevant time period (*i.e.* both before and after Technical Service's "harmonization" of the Plan schedule in October 2011), Northrop exercised its discretion to designate certain employees or programs eligible for severance, while declining to do the same for others, based on its managers' business judgment. (SUF ¶¶ 12-13). There was nothing new about this practice, which both the terms of the Plan and the law of the Seventh Circuit permit. *See McNab*, 162 F.3d at 962 ("If it is lawful to adopt a plan

that gives discretion to senior managers, it must be lawful to use that discretion to evaluate what the 'best interests' of a firm are.").

### B.      Northrop is Entitled to Summary Judgment on Plaintiffs' ERISA § 510 Claim (Count II)

Seeking a way around the clear Plan terms, Plaintiffs fashioned an argument that Northrop discriminated against them in violation of ERISA § 510 by not designating them as eligible for benefits, allegedly because they would have been entitled to a "high number of weeks of severance." (SUF ¶ 67). After discovery yielded no evidence to support this theory, Plaintiffs abandoned it and replaced it at the class certification stage with a new theory that Northrop's eligibility decisions violated ERISA § 510 because they were based on "affordability" considerations. (Dkt. #257, Renewed Mot. Class Cert., at 7). Plaintiffs' tactic of altering their ERISA § 510 claim through class certification briefing does not help their case, as both their original and revised suppositions rely on the same circular reasoning and flawed logic.

Specifically, Plaintiffs' premise that Northrop "interfered" with their attainment of severance by not affirmatively designating them eligible for severance cannot support a claim under even the broadest interpretation of ERISA § 510.

ERISA § 510 provides in relevant part that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan or [ERISA] . . . , or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or ERISA].

29 U.S.C. § 1140. Courts have interpreted this provision as designed to prevent two types of employer misconduct: "retaliation" against employees for exercising their rights under ERISA or the terms of an ERISA plan; and "interference" with employees' attainment of benefits to which they may become entitled. *Wahl v. Carissima of Italy III, Ltd.*, No. 99-C-6776, 2000 WL 1100434,

at *1 (N.D. Ill. Aug. 4, 2000). Here, Plaintiffs are proceeding on an "interference" theory, (Dkt. #62, Am. Compl. ¶ 68), which requires that they establish that Northrop (1) engaged in "prohibited conduct" under the statute (2) for the purpose of interfering (3) with the attainment of any right to which Plaintiffs may become entitled. *Id*; *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987); *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). Because Plaintiffs cannot carry their burden of proof with respect to any, much less each, of these elements, Defendants are entitled to summary judgment on Plaintiffs' ERISA § 510 claim.

With respect to the "prohibited conduct" element of their interference claim, Plaintiffs must demonstrate that Defendants engaged in at least one of the six enumerated acts proscribed by ERISA § 510. *Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*, 741 F.3d 819, 826-27 (7th Cir. 2014) (holding ERISA § 510 requires a showing that the defendant discharged, fined, suspended, expelled, disciplined, or discriminated against the plaintiff to state a claim). Of these six acts, only one—conduct that "discriminate[s] against" participants or beneficiaries—is even remotely applicable to the conduct at issue here. Although the Seventh Circuit has not defined the precise scope of ERISA § 510's prohibition on conduct that "discriminate[s] against" participants, both it and its lower district courts have recognized that there are indeed definite limits on the types of conduct that falls within its ambit. *See Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*, 2019 WL 142686 (N.D. Ill. Mar. 29, 2019) ("*Teamsters* and *Feinberg* illustrate that there are limits on what can qualify as discrimination under § 510[.]"); *Campbell v. Whobrey*, No. 16-C-4631, 2019 WL 184056, at *4 (N.D. Ill. Jan. 14, 2019) ("[T]here are still limits to the types of acts that can plausibly be covered by § 510."). Regardless of where those precise limits lie, the alleged interference at issue here cannot reasonably qualify as a form of discrimination proscribed by ERISA § 510.

17

Notwithstanding the superficial breadth of ERISA § 510's prohibition on conduct that "discriminate[s] against" employees, courts have recognized various categories of ostensible "discrimination" that cannot support a claim. One such category includes alleged "discrimination" in the provision of benefits when the allegedly discriminatory conduct is permitted by the terms of the Plan. As the Seventh Circuit has held, "if the plan itself provides for discriminatory practices, such that [employees] do not qualify for benefits under its terms, they cannot prevail on an ERISA [§ 510] claim." *Ameritech Ben. Plan Committee v. Communication Workers of America*, 220 F.3d 814, 824 (7th Cir. 2000); *McNab*, 162 F.3d at 962 ("If it is lawful to adopt a plan that gives discretion to senior managers, it must be lawful to use that discretion to evaluate what the 'best interests' of a firm are."). Here, in accordance with both the terms of the Plan and the Committee's reasonable interpretation thereof, Northrop has discretion to determine which employees are eligible for severance by providing them (or not providing them) an Eligibility Memorandum. Because the Plan expressly permits Northrop to select and designate certain employees as eligible for benefits on a case-by-case basis, Northrop's refusal to provide Plaintiffs an Eligibility Memorandum in this instance does not qualify as prohibited discriminatory conduct for purposes of ERISA § 510.

Plaintiffs also cannot establish the second prong of their ERISA § 510 claim (*i.e.* that Northrop "interfered" with their attainment of benefits), because merely refusing to perform some act that one has no obligation to perform cannot reasonably be construed as a type of "interference." This limiting principle on the scope of ERISA § 510 is not only based on a common sense interpretation of what it means to "interfere" with an activity, it is also consistent with the holdings of multiple courts. For example, in *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 675 (7th Cir. 2011), the Seventh Circuit held that the employer-defendant did not interfere with the

Plaintiffs' attainment of benefits by refusing to provide them after it purchased the plaintiff's former employer because it had no obligation to assume responsibility for the benefits. Although the defendant's refusal to assume responsibility for the benefits did in some sense "interfere" with the plaintiffs' attainment of those benefits, the Court held that characterizing the defendant's inaction as a form of "interference" prohibited by ERISA § 510 was "ridiculous." *Feinberg*, 629 F.3d at 673. In *Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 379-81 (3d Cir. 2002), the Third Circuit rejected a similar claim of "passive interference" when it held that the defendant did not violate ERISA § 510 by refusing to rehire plaintiffs when it had no obligation to do so under either the terms of the employment agreement or the plan. *See also Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003) (rejecting claim of "passive" interference with benefits by retaining employee). Where, as is the case here, the challenged conduct was mere inaction or a refusal to perform an act the defendant was under no obligation to perform, that conduct cannot reasonably be construed as a form of "interference" proscribed by ERISA § 510.

Finally, Plaintiffs' ERISA § 510 claim founders on the ground that Plaintiffs were not entitled to benefits under the Plan. Under ERISA § 510, if an employee is not eligible for benefits, there is simply nothing for a putative defendant to interfere with for purposes of the statute. *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999) (affirming dismissal of ERISA § 510 claim on the ground that the plaintiff was not eligible for benefits under the Plan); *Bodine*, 352 F.3d at 251 ("[I[t appears that the Employees neither had nor would have become entitled to any right such that § 510 could come into play in the first place."); *Becker*, 281 F.3d at 382 ("[A] failure to hire does not amount to a circumvention of promised benefits because job applicants who have yet to be hired have not been promised any benefits."). Although ERISA § 510 also prohibits discriminatory interference with the attainment of benefits to which a

"participant *may* become entitled under a plan," there must be more than a speculative possibility that the participant will obtain those benefits. Because Plaintiffs' rights under the Plan are entirely contingent upon Northrop designating them as eligible under the Plan in the first place, their "rights" are too speculative to support a claim. *Ameritech Ben Plan. Comm*, 220 F.3d at 824 ("[S]ection 510 only applies if the employee can show (among other things) that they were qualified under the plan for the denied benefits. If the plan itself provides for discriminatory practices, such that they do not qualify for benefits under its terms, they cannot prevail on an ERISA claim.").

**C.  Northrop is Entitled to Summary Judgment on Plaintiffs' Breach of Fiduciary Duty Claim (Count III)**

Plaintiffs' continuing quest for some conceivable claim led them to amend their complaint to add a manufactured fiduciary breach claim. (Dkt. #62, Am. Compl. ¶ 83). But Plaintiffs can show neither a fiduciary breach nor entitlement to the narrow form of equitable relief sought as a remedy in Count III.  With respect to the former, Plaintiffs have not demonstrated, and cannot demonstrate, that there was any change to the "administration, interpretation, or terms of the Plan," let alone one that Northrop had a fiduciary duty to disclose.  Nor can Plaintiffs demonstrate that even if there had been a change, and Defendants had been required to disclose it, they were harmed by the alleged non-disclosure. Finally, as for Plaintiff's request for "equitable reformation," their claim fails because they cannot establish either that Northrop engaged in fraud or that there was a "mutual mistake" warranting the exceptional remedy of reformation.

*1.    Plaintiffs Cannot Establish a Breach of Fiduciary Duty*

To prevail on a breach of fiduciary duty claim under ERISA, a plaintiff must prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.  *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639

20

(7th Cir. 2007). No reasonable trier of fact could find in Plaintiffs' favor with respect to either the "breach" or "resulting harm" elements of Plaintiffs' claim.

a.      <u>Plaintiffs Cannot Establish the "Breach" Element of their Claim</u>

With respect to the breach element, Plaintiffs allege that Northrop "breached its fiduciary duty of disclosure" by failing to disclose a purported "change" in how Northrop interpreted and applied the Plan's eligibility requirements. (Dkt. #62, Am. Compl. ¶¶ 82-83). Specifically, Plaintiffs allege that Northrop "did not disclose to participants that it adopted a new policy . . . whereby the new function of the [Eligibility Memorandum] was to be a discretionary selection of which employees would be chosen for severance[.]" (*Id.* at ¶ 82).

As an initial matter, summary judgment is warranted because Plaintiffs' allegation that there was a change in how Northrop interpreted the Plan is not supported by the discovery record. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("Summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."). Simply put, there is no evidence that Northrop *ever* construed the Eligibility Memorandum as a mere "administrative act of notification" or interpreted the Plan's work location and hours requirements as the only two conditions for receiving benefits. (SUF ¶¶ 10-13). Nor is there any evidence that this purported interpretation of the Plan "changed" in October 2011 as a result of the Technical Services sector's efforts to reduce the different schedules of benefits provided to its employees. (SUF ¶¶ 18-19). As the discovery record makes clear, Northrop's business leaders, human resources personnel, and the Plan's administrators have always viewed the Eligibility Memorandum as an actual eligibility requirement and the means by which Northrop made case-by-case eligibility determinations. (SUF ¶¶ 10-13). The discovery record also demonstrates that Northrop has always (*i.e.* both before and

21

after October 2011) exercised the discretion it was afforded to decide which employees or programs were eligible for severance. (*Id.*). Although in 2012 Northrop's Technical Services sector ***considered*** adopting a policy whereby all employees that were scheduled to work 20 hours in the United States would be designated eligible, it determined that such an approach was unaffordable and risked putting Technical Services out of business. (SUF ¶ 18-19).

Even if there were evidence that Northrop changed its interpretation of the Plan, which Northrop's witnesses have denied, Plaintiffs' omissions theory founders for the additional reason that Northrop had no preexisting fiduciary obligation to disclose such a change. In addressing breach of fiduciary duty claims based on alleged omissions, the Federal courts, including the Seventh Circuit, have consistently held that fiduciaries' obligation to affirmatively provide participants information is generally limited to ERISA's specific disclosure provisions. *See Frahm v. Equitable Life Assur. Soc. of US*, 137 F.3d 955, 960 (7th Cir. 1998). Where a plan sponsor or fiduciary has complied with its disclosure obligations under ERISA, it cannot be held liable for a fiduciary breach simply because a participant purports to be confused by the terms, particularly where, as is the case here, that confusion is attributable to the participant's unilateral (and idiosyncratic) interpretation of the plan. *Id.* In the few cases in this Circuit in which courts have allowed plaintiffs to proceed on ERISA breach of fiduciary duty claims based solely on omissions or non-disclosures, they have required more than a mere allegation that the withheld information was "material." Instead, they have required the plaintiff to establish that there were special circumstances giving rise to a duty to affirmatively disclose the allegedly withheld information in the first place. *Howell v. Motorola, Inc.*, 633 F.3d 552, 571-72 (7th Cir. 2011) ("Contrary to the plaintiffs' position (and to the position of other circuits), this court has required some deliberate misstatement before it finds a violation of the ERISA duty to disclose material information.")

(internal citations omitted). As explained below, Plaintiffs cannot show that such circumstances exist here.

The Seventh Circuit has identified a number of minimum requirements which must exist before a fiduciary may have a duty to disclose material information. One such threshold requirement is proof that, at a minimum, the plaintiff had an incorrect or incomplete understanding of the plan and the defendant *knew* of the plaintiffs' purported misunderstanding. *Killian v. Concert Health Plan*, 742 F.3d 651, 668-69 (7th Cir. 2013) (holding that "the fiduciary's duty to provide complete and accurate information . . . is triggered when the beneficiary makes the ERISA fiduciary *aware of the beneficiary's status and situation*.") (emphasis added); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010) ("Th[e] duty to inform . . . entails not only a negative duty not to misinform but also an affirmative duty to inform *when the trustee knows that silence might be harmful*.") (emphasis added).  Here, Plaintiffs provide no evidence that *any* Northrop employee, much less a plan fiduciary, knew that Plaintiffs were laboring under their idiosyncratic interpretation of the Plan. In fact, there is no evidence that there were even communications between Plaintiffs and Northrop regarding the Plan prior to Plaintiffs' lay-off. (SUF ¶¶ 20-21). And given the clear language of the Plan, including its repeated reference to the need for an Eligibility Memorandum, there is no basis upon which to find that Northrop had any reason to suspect that Plaintiffs were confused as to their benefits and their eligibility. The fact that Plaintiffs incorrectly assumed they would receive severance simply because they believed other employees had received it in the past, is not an adequate basis to impose a fiduciary duty of affirmative disclosure on Northrop.

In addition to requiring proof that the employer knew the employee had an inaccurate or incomplete understanding of the plan, the Seventh Circuit has also required evidence that the

fiduciary's non-disclosure was attributable to a purposeful "intent to deceive." *Frahm*, 137 F.3d at 959; *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 642 (7th Cir. 2004) ("[W]hile there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable."). Here, there is no evidence that any fiduciary intended to deceive Plaintiffs. Simply providing an employee allegedly inaccurate or insufficient notice of the terms of their benefits (which is all Plaintiffs allege here) is not evidence of an intent to deceive. *Tompkins v. Central Laborers' Pension Fund*, 712 F.3d 995, 1003 (7th Cir. 2013). Because no reasonable trier of fact could find that Northrop's failure to ***further*** explain that eligibility for benefits was conditioned on receipt of an Eligibility Memorandum—a condition that is already unambiguously set forth in the plan—was designed to deceive Plaintiffs, their breach of fiduciary duty claim fails. *Kamler v. H/N Telecommunication Services, Inc.*, 305 F.3d 672, 683 (7th Cir. 2002) (holding that defendant "had no duty to emphasize something that had already been clearly communicated to [plaintiff]" in the plan documents).

b.  Plaintiffs Cannot Establish the "Resulting Harm" Element of a Breach of Fiduciary Duty Claim

As this Court has previously recognized, in order to establish liability for an alleged fiduciary breach, plaintiffs must prove that the breach resulted in actual harm.[5] (Dkt. #248, Class Cert. Order, at 16 ("To state a claim for breach of fiduciary duty under ERISA, a plaintiff must establish . . . that the breach caused the plaintiff harm." (citing *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005)). The Seventh Circuit has held on multiple occasions that proof of harm is required in fiduciary breach cases based on alleged misrepresentations or

---

[5] To the extent Plaintiffs argue that they are not required to prove harm, this argument fails. Although some courts have held that proof of harm is not essential in order to obtain the remedy of equitable reformation, proving that they are entitled to a particular remedy is only half the battle. Plaintiffs must first establish that there was a "violation" that warrants remedial action under ERISA § 502(a)(3). Here, the "violation" Plaintiffs' ERISA § 502(a)(3) is premised upon is an alleged fiduciary breach, which the Seventh Circuit has consistently held requires a showing of harm.

omissions. *See also Howell v. Motorola, Inc.*, 633 F.3d 552, 565 (7th Cir. 2011) (holding that proof of harm is an essential element of a claim that defendants breached their fiduciary duties by "fail[ing] to disclose material information"); *Kannapien*, 507 F.3d at 639 (holding that fiduciary duty claim based on alleged "misinformation" required proof that the breach caused the plaintiffs harm); *Kamler*, 305 F.3d at 683 (holding that in the context of a claim challenging fiduciary representations, the plaintiff "must allege that the breach of fiduciary duty caused some harm to him or her that can be remedied"). *See also Wasserstein v. Univ. of Chicago*, 2018 WL 3474543, at *8 (N.D. Ill. July 19, 2018).

Here, Plaintiffs' evidence with respect to their alleged harm is sparse and falls far short of creating a genuine dispute of fact warranting trial. *See Kamler*, 305 F.3d at 683 (7th Cir. 2002) (discussing fundamental requirement that plaintiff show that an alleged misrepresentation caused harm). Tellingly, Plaintiffs' complaint fails to include even a single allegation with respect to how they were harmed by Northrop's alleged omissions. Plaintiffs do not, and cannot, logically allege that they were deprived of severance because of Northrop's alleged nondisclosure. Plaintiffs also cannot present any evidence that they passed up valuable opportunities or were otherwise harmed because Northrop failed to disclose the alleged "change" in its interpretation of the Plan's eligibility requirements. Plaintiffs vaguely claimed at their depositions that they would have "planned their lives differently" or retired earlier, but that is not sufficient to avoid summary judgment. (Ex. 39, Carlson Dep. at 60:11-65:9; Ex. 40, DeLuca Dep. at 26:3-28:3). The purported harm they attribute to Northrop's non-disclosures amounts to little more than inconvenience, not actual harm of the type that would warrant the sweeping and extreme relief sought here.

### 2. *Plaintiffs Cannot Establish That They Are Entitled to Equitable Reformation*

25

Even if Plaintiffs were able to demonstrate that there is a genuine dispute warranting trial with respect to the fiduciary breach they allege, Defendants would still be entitled to summary judgment the claim set forth in Count III because no reasonable trier of fact could find that Plaintiffs are entitled to the specific relief they seek. Plaintiffs' request that the Court "equitably reform" the Plan—*i.e.* unilaterally redline the plan language so that it comports with Plaintiffs' idiosyncratic interpretation—ignores the limited circumstances under which Courts resort to this extreme remedy. Plaintiffs' inability to establish that those circumstances are present in this case and that equitable reformation is "appropriate" equitable relief is fatal to their claim.

In granting the extraordinary remedy of reformation, courts have consistently required proof of either fraud or mutual mistake. *Gabriel v. Alaska Electrical Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) ("The power to reform contracts is available only in the event of mistake or fraud."); *Cross v. Bragg*, 329 Fed. Appx. 443, 454 (4th Cir. 2009) (opining that "in limited circumstances, however, a court is entitled to reform an ERISA plan to correct a mutual mistake or to mitigate a fraud scheme").[6] Here, Plaintiffs can show neither.

Plaintiffs have not come forward with clear and convincing evidence of a mistake as to the role of the eligibility memorandum, let alone pointed to communications or a course of conduct between Northrop Grumman and plan participants that supports their theory that the eligibility memorandum played a mere ministerial role. To the contrary, the evidence shows that Northrop *always* required employees to obtain an Eligibility Memorandum. *See supra* at 21-22. Nor have

---

[6] Only one circuit has allowed plaintiffs to request equitable reformation of an ERISA plan without a showing of fraud or mutual mistake. *See Laurent v. PwC*, 935 F.3d 739 (2d Cir. 2019). Not only is *Laurent* an outlier, it is clearly at odds with the Supreme Court's holding in *Cigna v. Amara*, 563 U.S. 421 (2011), that any request for equitable relief under ERISA § 502(a)(3) must comport with the limitations and pleading requirements associated with the equitable remedy sought. *Cigna Corp. v. Amara*, 563 U.S. 421, 443 (2011). Furthermore, the Second Circuit's holding in *Laurent* expanding the reach of equitable reformation was limited to circumstances in which reformation is sought to correct plan terms at odds with ERISA. *Laurent*, 935 F.3d at 747-48. Because Plaintiffs' breach of fiduciary duty claim does not allege that the plan terms somehow violated ERISA, *Laurent* would be distinguishable in any event.

Plaintiffs alleged, much less shown, fraud by Northrop.  Instead, Plaintiffs seek reformation purely to ask the Court to rewrite the terms of the Plan as they would prefer.  This is not what the Supreme Court intended when it suggested that equitable reformation may be appropriate in certain limited circumstances. *Cigna Corp. v. Amara*, 563 U.S. 421 (2011).  Not only is there no fraud or mistake, but Plaintiffs have not even shown any mistreatment or failure to receive what the Plan promised.  As noted above, courts have steadfastly held that employers and plan sponsors are free to design plans with whatever features they choose, even if those features provide benefits for some but not others.  *See supra* at 13-14.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion and enter judgment in their favor.

Date: July 3, 2020                                          Respectfully submitted,


                                                            /s/ *Samuel P. Myler*
                                                            Nancy G. Ross (No. 6190243)
                                                            Samuel Myler (No. 6309477)
                                                            Abigail M. Bartine (No. 6312317)
                                                            MAYER BROWN LLP
                                                            71 South Wacker Drive
                                                            Chicago, IL 60606
                                                            Telephone: 312.782.0600
                                                            Facsimile: 312.701.7711

                                                            *Attorneys for Northrop Grumman*
                                                            *Corporation and Northrop Grumman*
                                                            *Severance Plan*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on July 3, 2020.

/s/ *Samuel P. Myler*
Samuel P. Myler