**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN CARLSON & PETER DELUCA, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | Civil Action No. 13-cv-2635 |
| | ) | Judge Andrea Wood |
| Plaintiffs, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE AMENDED COMPLAINT & DEFENDANTS' AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

STANDARD OF REVIEW ........................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

I.  The Court Must Weigh Northrop's Conflict of Interest in Reviewing Its Decision to Deny Severance Benefits ........................................................................................................ 2

II. Northrop's Interpretation It Can Deny Severance Due to Its Own Refusal to Deliver the Memo from the VP-HR to Laid off Employees for any Reason at All Is Arbitrary and Capricious. ............................................................................................................................ 3

   A.  Reading the Plan as a Whole Demonstrates the VP-HR Memo Is Not a Discretionary Eligibility Decision at Layoff Time Because Management Already Decides Which Employees Are "Eligible Employees." .............................................................................. 4

   B.  Course of Dealing Demonstrates the BPC Reveals Which Employees Are "Eligible Employees" and Required to Receive the VP-HR Memo. ................................................. 5

   C.  Northrop's Interpretation Adds an Eligibility Requirement Not Communicated in the Plan: that the Business Manager Gives a Second Approval at Layoff .............................. 9

   D.  The Plan Does Not Sufficiently Communicate to Employees the VP-HR Will Exercise Total Discretion Untethered to Any Eligibility Criteria in Deciding Whether to Deliver the Memo ...................................................................................................................... 10

   E.  Northrop's Interpretation Creates Different Applications of the Same Eligibility Criteria with Respect to Cash Severance and Non-Cash Severance ........................................... 11

   F.  Northrop's Interpretation Necessarily Results in the Party Who Prevented a Condition from Occurring Using the Non-Occurrence to Avoid Its Own Performance ................. 13

III. Summary Judgment Should Be Granted on All Affirmative Defenses ................................. 14

   A.  Defendants' First Four Affirmative Defenses Were Previously Rejected ........................ 15

   B.  Defendants' Fifth, Sixth & Seventh "Defenses" Are Not Affirmative Defenses ............. 16

   C.  Defendants Have No Evidence the Claims of Plaintiffs or the Class Are Barred by Any Statute of Limitations .................................................................................................... 16

      1.  Count I's § 1132(a)(1)(B) Claim Is Undisputedly Timely ........................................ 17

      2.  Count II's § 1140 Claim Is Undisputedly Timely ..................................................... 18

      3.  Count III's Breach of Fiduciary Duty Claim for Failure to Disclose Under § 1132(a)(3) Claim Is Undisputedly Timely ................................................................ 19

CONCLUSION ......................................................................................................................... 19

CERTIFICATE OF SERVICE .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Berger v. AXA Network LLC*, 459 F.3d 804 (7th Cir. 2006).......................................................... 18

*Carlson v. Northrop Grumman Corp*., No. 13-2635, 2014 WL 1299000 (N.D. Ill. Mar. 31, 2014) .................................................................................................................................................... 15

*Carlson v. Northrop Grumman Corp*., No. 13-2635, 2014 WL 5334038 (N.D. Ill. Oct. 20, 2014) .................................................................................................................................................... 15

*Carlson v. Northrop Grumman Corp*., 196 F. Supp. 3d 830 (N.D. Ill. 2016) ............................. 15

*Carlson v. Northrop Grumman Corp.*, 333 F.R.D. 415 (N.D. Ill. 2019)................................. 15, 17

*Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt of Mich.*, 674 F.3d 630 (7th Cir. 2012)................................................................................................................................................ 3

*Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 1998) ...................................................... 9

*Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 592 (7th Cir. 2004) ................................................ 9

*D&H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27 (1st Cir. 2011) ............... 12

*Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355 (7th Cir. 2011)........................................ 1

*Emp'rs Ins. of Wausau v. Titan Int'l, Inc*., 400 F.3d 486 (7th Cir. 2005)..................................... 14

*Eweka v. Hartford Life and Acc. Ins. Co*., 955 F. Supp. 2d 556 (E.D. Va. 2013) ........................ 18

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)......................................................... 2

*Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996) ..................................................................... 1

*Goss v. Receivables Performance Mgmt., LLC*, No. 19-0642, 2020 WL 2219048 (N.D. Ill. May 7, 2020)......................................................................................................................................... 14

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992)............................................... 14

*Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226 (N.D. Ill. 2002) .................................................. 17

*Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532 (7th Cir. 2018)................................................... 1, 2

*Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000) ............................................... 10, 11

*Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456 (7th Cir. 2001) ....................................... 3

*In re Rawson Food Serv., Inc.,* 846 F.2d 1343 (11th Cir.1988) ................................................... 16

*Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856 (7th Cir. 2011) ............... 2

*Johnson v. Providence Health & Servs.*, No. 17-1779, 2018 WL 2289331 (W.D. Wash. May 18,

    2018) ................................................................................................................. 16

*Jones v. Knox Cnty. Assn. for Retarded Citizens, Inc.,* No. 15-257, 2016 WL 1627628 (S.D. Ind.

    Apr. 19, 2016) ................................................................................................ 16

*Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009) ......................................................................... 1

*Matthews v. Sears Pension Plan*, 144 F.3d 461 (7th Cir. 1998) .................................................... 6

*McNab v. General Motors Corp.*, 162 F.3d 959 (7th Cir. 1998) .................................................. 11

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223 (7th Cir. 1993) .................... 3

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ..................................................................... 2

*Paskuly v. Marshall Field & Co.*, 646 F.2d 1210 (7th Cir. 1981) ................................................ 17

*Pugh v. City of Attica*, 259 F.3d 619 (7th Cir. 2001) .................................................................... 1

*Reich v. Ladish Co.*, 306 F.3d 519 (7th Cir. 2002) ....................................................... 11, 12, 13, 14

*Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer,* 886 F. Supp. 658 (N.D. Ind.

    1995) ................................................................................................................. 16

*Rosetto v. Pabst Brewing Co.*, 217 F.3d 539 (7th Cir. 2000) ........................................................ 6

*Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d

    585 (7th Cir. 2014) ......................................................................................... 12

*Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834 (7th Cir. 2012) .......................... 3

*Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627 (7th Cir. 2010) ...................................................... 3

*Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050 (7th Cir. 1991).................................. 3

*Simpson v. Safeguard Props., LLC*, No. 13-02453, 2017 WL 4310674 (N.D. Ill. Sept. 28, 2017)

.................................................................................................................................... 14

*Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535 (7th Cir. 1996)................................................ 9, 13

*Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738 (7th Cir. 1996)........................................................ 3

*Teumer v. Gen. Motors Corp.*, 34 F.3d 542 (7th Cir. 1994) ........................................................ 18

*Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808 (7th Cir. 2010)................. ..3, 6

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002)................................................... ..16

## Statutes

29 U.S.C. § 1113........................................................................................................................ 19

29 U.S.C. § 1132(a)(1)(B) .......................................................................................................... 1

29 U.S.C. § 1132(e) ................................................................................................................... 15

29 U.S.C. § 1132(f)..................................................................................................................... 15

29 U.S.C. § 1140....................................................................................................................... 18

Va. Code§ 8.01-243(B)............................................................................................................. 18

## Rules

Fed. R. Civ. P. 56(c) .................................................................................................................. 1

Plaintiffs Alan Carlson and Peter DeLuca, individually and on behalf of the certified Class, pursuant to Local Rule 56.1, hereby submit this Memorandum of Law in support of their Motion for Summary Judgment on Count I of the Amended Complaint and Defendants' Affirmative Defenses. Count I seeks wrongfully denied severance benefits under the Northrop Grumman Corporation Severance Plan ("the Plan") pursuant to 29 U.S.C. § 1132(a)(1)(B).

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001).

For purposes of this ERISA benefit dispute, the Court has already held that this Plan grants the plan administrator discretion to interpret plan terms and award benefits. (Dkt. #230). But "[d]eferential review is not no review," and "deference need not be abject." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996). A court does not "rubber stamp" an administrator's decision, or "uphold a decision when there is absence of reasoning in the record to support it." *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018). A court should overturn a decision where there is no "rational support in the record" or the administrator failed to consider "the relevant factors that encompass the important aspects of the problem." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011).

**ARGUMENT**

Northrop Grumman's ("Northrop") decision to deny cash severance benefits because Plaintiffs did not receive a memo from a Vice President of Human Resources (or his/her designee) ("VP-HR") is arbitrary and capricious. Northrop's interpretation of the Plan's "**Conditions for Receiving Benefits**" section wrongly assumes the Plan confers unrestricted discretion on the VP-HR at the time of layoff to pay or not pay severance for any possible reason, despite the plain language and structure of the plan, combined with decades of chosen interpretation and application requiring otherwise. In addition, several other principles of benefit plan interpretation render Northrop's interpretation arbitrary and capricious.

**I.   The Court Must Weigh Northrop's Conflict of Interest in Reviewing Its Decision to Deny Severance Benefits.**

The Court must weigh Northrop Grumman's structural conflict of interest in reviewing its decision. In reviewing the administrator's decision, the Court must "remain cognizant of the conflict of interest that exists when the administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Hennen*, 904 F.3d at 539 (quoting *Jenkins v. PriceWaterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009)). The Court must weigh that conflict of interest as a "factor in determining whether there is an abuse of discretion." *Hennen*, 904 F.3d at 539 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Here, benefits are paid from Northrop's general assets. (Pl. Stmt. of Facts, Dkt. #283 (hereinafter "PSOF") ¶ 8). After Northrop standardized the severance schedule across the Technical Services sector, it added a level of management approval, at the time of layoff, to issue the memo from the VP HR. (*Id.* ¶¶ 33–35). Northrop management was concerned about costs and affordability of severance payments, and based decisions about whether to give approval, on

2

how much it would cost to pay that exact group of laid off employees the cash severance at the time of layoff. (*Id.* ¶¶ 38–41, 44, 48–49). Since at least 2001, Northrop had sophisticated Human Resources and Benefits Administration systems that coordinated pre-programmed severance benefit eligibility based on business management's selections, activated by entry of a termination code indicating layoff. (*Id.* ¶¶ 16–29, 42). When Technical Services began withholding the VP-HR memo from laid off employees it already coded as severance eligible, there began a disconnect between cash severance and benefit continuation severance that was not a problem the previous decade. (*Id.* ¶¶ 42–62). Northrop then revised its separation codes to cure that disconnect. (*Id.* ¶ 61). But once Technical Services lowered the schedule of cash severance, Northrop has never once used that new separation code, and HR is really not even aware it exists. (*Id.* ¶¶ 61, 64–68). Accordingly, the Court should conclude the structural conflict of interest influenced, if not wholly drove, Northrop's interpretation of the Plan language.

## II.  Northrop's Interpretation It Can Deny Severance Due to Its Own Refusal to Deliver the Memo from the VP-HR to Laid off Employees for any Reason at All Is Arbitrary and Capricious.

Northrop's interpretation is arbitrary and capricious because it violates the plain language and structure of the Plan, in addition to multiple principles of benefit plan interpretation. "In interpreting the language of an ERISA-governed plan, [courts] apply the federal common law rules of contract interpretation." *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt of Mich.*, 674 F.3d 630, 634 (7th Cir. 2012). "Plan terms [must] be interpreted in an ordinary and popular sense, as they would be understood by a person of average intelligence and experience." *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010). The Court must construe the terms according to their "common understanding as revealed in common speech." *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1054 (7th Cir. 1991). Applying these principles, Northrop's interpretation was arbitrary and capricious.

3

### A. Reading the Plan as a Whole Demonstrates the VP-HR Memo Is Not a Discretionary Eligibility Decision at Layoff Time Because Management Already Decides Which Employees Are "Eligible Employees."

Northrop interprets the "**Conditions for Receiving Benefits**" to mean the VP-HR has unrestricted discretion to determine who is eligible, effectively denying severance to an employee who met the criteria under "**Eligible Employees**." But this interpretation contradicts the plain meaning and structure of the Plan, especially in light of objective evidence showing how that memo requirement had been applied the previous decade. "[T]he plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement. All language of a plan should be given effect without rendering any term superfluous." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012); *accord Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (citing *Taracorp Inc. v. NL Indus., Inc.*, 73 F.3d 738, 746 (7th Cir. 1996)). "[I]f both a general and a specific provision apply to the subject at hand, the specific provision controls." *Young*, 615 F.3d at 823 (citing *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 227 (7th Cir. 1993)). "[T]he choice of substantially different words to address analogous issues signifies a different approach." *Taracorp*, 73 F.3d at 744. "In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." *Hess v. Harford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

The Plan defines "**Eligible Employees**" separately from the immediately following "**Conditions for Receiving Benefits,**" indicating a difference between who is eligible, and which eligible employees satisfy subsequent conditions to receive the benefits. (PSOF ¶ 8). The more specific "**Eligible Employees**" section already includes a management decision on which employees are covered by the Plan and eligible for severance in the event of layoff. (*Id.* ("you

4

have been notified in writing by your management that you are covered by this Plan")). That is where sector management exercises discretion to determine the groups that are eligible, and then communicates it to Corporate Compensation for recordkeeping, as described in the Guide to Administration. (*Id.* ¶ 5). That occurred through the Benefit Program Coding process. (*Id.* ¶¶ 16–29). Management notified the groups participating in severance long ago. (*Id.* ¶¶ 12–13). There was no disclosure anybody's eligibility changed (*id.* ¶¶ 55–56), except for Northrop amending the Summary Plan Description to exclude certain additional groups in Technical Services (e.g., SCA employees). (PSOF ¶¶ 4, 8). Technical Services revised the BPCs for those newly ineligible groups listed in the SPD, which are not members of the Class. (*Id.* ¶¶ 20, 36–37, 43).

The "**Conditions for Receiving Benefits**" states "You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (*Id.* ¶ 8). Because those two provisions appear in separate, adjacent sections of the Plan, to give meaning to all Plan terms the memo from the VP-HR must serve a distinct function from the management decision of who is covered by the Plan referenced under "**Eligible Employees**." Treating the VP-HR as having unrestricted discretion to pick at the time of layoff who gets severance under "**Conditions for Receiving Benefits**" would render the management decision on who is eligible under "**Eligible Employees**" superfluous, and thus arbitrary and capricious. The course of dealing illuminates how Northrop interprets and applies the VP-HR memo.

### B. Course of Dealing Demonstrates the BPC Reveals Which Employees Are "Eligible Employees" and Required to Receive the VP-HR Memo.

The course of dealing in how Northrop applied the role of the VP-HR memo establishes its meaning is a notification that the laid off employee meets the criteria under "**Eligible Employees**." In determining whether there is an ambiguity in the meaning of any term, and

5

whether there is already an established meaning to an ambiguous term, courts look to objective extrinsic evidence to determine the meaning. *Young*, 615 F.3d at 818; *Rosetto v. Pabst Brewing Co.*, 217 F.3d 539, 543 (7th Cir. 2000); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998). Courts enforce plan terms according to the parties' reasonable expectations, as established by the course of dealing in how the terms historically applied. *Young*, 615 F.3d at 818; *Mathews*, 144 F.3d at 469.

The objective evidence of how Northrop applied the Plan reveals the VP-HR memo merely notifies the laid off employees they already satisfied the criteria under "**Eligible Employees**" and notifies the employees of the number of weeks of cash severance and benefits continuation, and the amount of money to be processed by payroll. Regarding "**Eligible Employees**," management decides which groups are covered or excluded, and then the sector VP-HR coordinates with Benefits Administration to assign the covered employees a Benefit Program Code ("BPC") indicating severance eligibility in the event of layoff, consistent with the process described in the Guide to Administration. (*Id.* ¶¶ 5–6, 16–22). The groups were notified by management of participating in severance long ago. (*Id.* ¶¶ 12–13). There was no disclosure they were no longer eligible (*Id.* ¶¶ 55–56), except through amendments to the Summary Plan Description to exclude certain employees.

As sectors changed groups of included or excluded employees to the section on eligibility of the Summary Plan Descriptions (*Id.* ¶¶ 4, 8, 10), Northrop programmed those people's BPCs to reflect severance ineligibility. (*Id.* ¶¶ 36–37). Eligibility had to be determined before there was any decision about layoff, as there is no other practical way to administer a plan that covers over 67,000 people and includes continuation of subsidized health insurance benefits. (*Id.* ¶¶ 23–29). The Guide to Administration directs HR to notify employees they are in this group after

6

management made that decision. (*Id.* ¶ 5). The business sectors should report to corporate human resources the number of individuals management "offered" to participate in the plan, not just those laid off who actually received payments. (*Id.* ¶ 6). Northrop accomplished this by tallying the totals in a severance eligible BPC and reporting that count, which was used to complete the Form 5500s. (*Id.* ¶¶ 28–29).

Upon entry of a layoff separation code, the employees in severance eligible BPCs would receive health insurance continuation via the severance Plan, unless the business unit specifically notified Benefits Administration an eligible employee did not satisfy the Conditions for Receiving Benefits. (*Id.* ¶¶ 21–24). The Guide to Administration conspicuously directs HR to notify Benefits Administration if an employee was mistakenly not excluded, or did not sign the release agreement. (*Id.* ¶¶ 5). The Plan was administered that way for at least a decade before November 2011. (*Id.* ¶¶ 5, 24). As several HR professionals testified, everybody who met the criteria under "**Eligible Employees**" at layoff received the memo from a VP-HR except in Technical Services sector from October 2011 until February 2014 (which is the period in dispute in this lawsuit). (*Id.* ¶¶ 14–15, 68).

Once Technical Services started treating the VP-HR memo as an eligibility criteria under "**Eligible Employees**," with an added level of required management approval at layoff time, instead of a "**Condition for Receiving Benefits**" (*Id.* ¶ 33), there arose a disconnect between qualification for the continued health portion of severance and the cash severance, despite having the same eligibility terms, and confusion within Technical Service as to who receives cash severance. (*Id.* ¶¶ 8, 42–62). Plaintiffs and the Class members received the continued health benefits portion of severance by being designated eligible through the BPC. (*Id.* ¶ 69). Northrop attempted to create a new separation code two years after Technical Services added an additional

level of management approval to issue the VP-HR memo (*Id.* ¶¶ 60–61), but since Technical Services lowered the cash severance schedule, has never used it. (*Id.* ¶¶ 61, 67–68). When Technical Services began denying employees severance, corporate leadership questioned that decision. (*Id.* ¶¶ 46, 53). The Technical Services VP-HR represented the denials were due to cost concerns over paying severance to Service Contract Act workers (*id.* ¶ 48), despite knowing the Plan already excluded those workers. (*Id.* ¶ 49).

The plain meaning and structure of the Plan, coupled with the parties' decade-long prior course of dealing, dictates the VP-HR memo listed under "**Conditions for Receiving Benefits**" is not an eligibility criteria within "**Eligible Employees**." (*See id.* ¶ 8). Consistent with the Plan structure and course of dealing, the VP-HR (or his/her designee) simply determines the employee being laid off is in a severance eligible BPC, and issues the memo communicating the amount of cash severance and number of weeks of continued benefits. (*See id.* ¶¶ 9, 14–15, 68). Northrop's interpretation—that the VP-HR memo under "**Conditions for Receiving Benefits**" acts as a discretionary determination on who is covered by the Plan in the "**Eligible Employees**" section—is incompatible with the Plan's structure and course of dealing, as well as the CEO-level desire to make benefits consistent, allowing free movement of talent across sectors. (*Id.* ¶ 30). Allowing the VP-HR to exercise total and unlimited discretion to withhold the memo from a laid off employee in a severance eligible BPC for any reason at all *(id.* ¶ 75–77), including a general reluctance to pay (*id.* ¶¶ 38, 40–41), that it is not a good time for severance (*id.* ¶ 39), or that is just how a roll of the dice fell that day (*id.* ¶ 76)—is arbitrary and capricious. Multiple additional principles of benefit plan interpretation, discussed below, reinforce that conclusion.

8

### C. Northrop's Interpretation Adds an Eligibility Requirement Not Communicated in the Plan: that the Business Manager Gives a Second Approval at Layoff.

Northrop's interpretation of the "**Conditions for Receiving Benefits**"—that the VP-HR has total discretion, untethered to anything, to withhold the memo at layoff—is arbitrary and capricious because it adds a requirement to "**Eligible Employees**" absent from the Plan's terms: that the VP-HR (or a business manager) feels like paying the severance at the time of the layoff for whatever reason. A plan administrator may not impose a requirement to receive benefits not communicated in the Plan. *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004) ("An ERISA benefit cannot be a moving target where the plan administrator continues to add conditions precedent to the award of benefits."); *see also Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535, 542 (7th Cir. 1996) (holding where administrator "imposed requirements that were not part of the AMPP and repeatedly informed Mr. Swaback that he could not elect the lump sum equivalent of his service pension unless he met those additional, unenumerated requirements . . . the committee acted arbitrarily and capriciously in interpreting the AMPP."); *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998) (explaining administrator with discretion can interpret terms, but not to add new conditions).

The Plan already allowed management to choose which *groups* were eligible for severance under "**Eligible Employees**," reflected in the BPC. (PSOF ¶¶ 4–5, 8, 10–15, 16–27) Technical Services, however, purported to add an additional level of management approval at the time of layoff through the Program Severance Authorization Form. (*Id.* ¶¶ 32, 35, 38, 40). This second level of management approval—or desire to pay the severance to the laid off employees at the time of layoff—is not communicated under "**Eligible Employees**" in the Plan. (*Id.* ¶¶ 4, 8, 10). The definition of "**Eligible Employees**" does not even mention the memo from the VP-HR, let alone whether delivery of that memo is a discretionary decision. Denying the memo to

individuals who satisfied every criteria under "**Eligible Employees**" thus adds an eligibility requirement not communicated in the Plan, which is arbitrary and capricious. Having established the memo is not an eligibility requirement, but an act of notifying the eligibility criteria were met, Northrop cannot read discretion into that act that is not described in the Plan.

### D. The Plan Does Not Sufficiently Communicate to Employees the VP-HR Will Exercise Total Discretion Untethered to Any Eligibility Criteria in Deciding Whether to Deliver the Memo.

Northrop's interpretation of the "**Conditions for Receiving Benefits**" as granting the VP-HR total and unrestricted discretion (PSOF ¶ 77) to decide on a case-by-case basis whether to deliver the memo is arbitrary and capricious because the Plan does not communicate that additional level of discretion, or upon what that discretion is based. A benefit plan may confer discretion unto a person that affects whether or not participants will receive benefits only if the plain language clearly discloses that discretion. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330–31 (7th Cir. 2000) (holding language that claimant receives benefits when the administrator determines upon satisfactory proof the claimant is entitled to them insufficiently communicates existence of any discretionary decision). The *Herzberger* court reasoned "the conferral of discretion is not to be assumed. Especially not when we consider the importance of fringe benefits covered by ERISA plans to modern employees . . . ." *Id.* at 331. The extent of participants' rights under a plan is inversely related to breadth of discretion conferred upon another to determine those rights. *Id.* "The employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly." *Id.* at 332–33.

In the Section entitled "**Conditions for Receiving Benefits,**" the Plan states "You must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying of your

eligibility for this benefit." (PSOF ¶¶ 4, 8, 10). That sentence does not suggest any discretion, or mention how the VP-HR is to use any discretion (except to determine whether the person met the criteria under "**Eligible Employees**," which is not in dispute). Northrop demonstrated the ability to clearly alert employees when the VP-HR will exercise discretion, and precisely what is determined in that person's discretion, when drafting the Technical Services Appendix. (*Id.* ¶ 10, Doshi Dep. Ex. 19 at NGC14563 ("as determined by the Technical Services Vice President of Human Resources (or his/her designee) in his/her discretion")). Northrop contends the VP-HR has broad discretion to withhold the memo for any reason at all, including a roll of dice. (PSOF ¶¶ 76–77). Under *Herzberger*, that level of discretion must be very clearly described, and the language about receiving the memo does not meet *Herzberger*'s demands.

Defendants have contended in earlier briefing (Dkt. #44 at 14) such broad discretion is acceptable under *McNab v. General Motors Corp.*, 162 F.3d 959, 961–62 (7th Cir. 1998) (evaluating whether eligibility decisions according to GM's "best interest" was arbitrary and capricious). But *McNab* did not address whether that language sufficiently conferred discretion, as plaintiff did not challenge that issue. *Id.* at 962. After *Herzberger*, the language in *McNab* would not sufficiently confer discretion, and the language in *McNab* was more clear than what Northrop contends gives the VP-HR unrestricted discretion here.

### E. Northrop's Interpretation Creates Different Applications of the Same Eligibility Criteria with Respect to Cash Severance and Non-Cash Severance.

Northrop's interpretation of "**Conditions for Receiving Benefits**" as granting the VP-HR total, unrestricted discretion to withhold the memo and deny cash severance is arbitrary and capricious because it created two ways of applying the same criteria for two different purposes. When a plan uses the same eligibility criteria for two different benefits under a plan, applying that same criteria inconsistently for each of those purposes is arbitrary and capricious. *Reich v.*

*Ladish Co.*, 306 F.3d 519, 525 (7th Cir. 2002) (holding plan administrator arbitrarily interpreted the term "Participant" in denying a disability pension where it applied the same term differently for purposes of an old age pension).

> Once a term has been defined by the Plan and interpreted by the administrator to have a particular meaning, the administrator may not change the meaning when the term is used in a different part of the Plan without any basis in the Plan or in ERISA to do so. This is the very definition of arbitrary and capricious. Ladish has not offered a single reason, either in its brief or at oral argument, to give two different meanings to the word "Participant" in two different parts of the Plan. Having conceded that Reich is a Participant for the purposes of the deferred vested retirement benefits, the Plan may not argue that he is not a Participant for the purposes of Disability retirement benefits. Such a decision is therefore clearly unreasonable, and cannot stand. Because Ladish's sole reason for the denial of benefits rests on an unreasonable interpretation of the Plan, Reich is entitled to summary judgment.

*Id.*; *see also Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 591–92 (7th Cir. 2014) (explaining applying the term "retire" one way for purposes of a pension, and another ways for purposes of suspending pension payments, is arbitrary and capricious); *D&H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 41 (1st Cir. 2011) (holding insurer abused its discretion by interpreting "earnings" to only include W2 wages when used to calculate disability benefits, but to include all non-W2 income when used to determine if benefits could be terminated).

The Plan has the same eligibility criteria for cash severance and non-cash (i.e., continued health) benefits. (PSOF ¶¶ 4, 8, 10 (stating benefits consist of two parts, and if you are eligible for benefits under the plan, you also get continued health benefits)). Northrop already interpreted and applied the "Eligible Employees" criteria to mean those designated by management reflected by the BPC, and the memo from a VP-HR under "Conditions for Receiving Benefits" as a non-discretionary means to notify the laid off employee he or she was designated severance eligible via BPC and the amount of severance and duration of continued health benefits. (*Id.* ¶¶ 14–29).

12

Kathleen Sholinsky explained it had been that way for at least a decade before November 2011. (*Id.* ¶¶ 24, 42). The 2002 Guide to Administration evidences that historical understanding. (*Id.* ¶ 5). Technical Services revamped its benefit offerings for 2012, revised BPC codings to reflect who was newly excluded in the Summary Plan Description, and communicated to Benefits Administration to program nearly all employees that were neither unionized nor Service Contract Act as severance eligible. (*Id.* ¶¶ 20, 36–37, 43). Even though the criteria were the same, Technical Services wanted to make cash severance eligibility hinge on unrestricted VP-HR discretion at the time of layoff (PSOF ¶¶ 30, 72, 74) "This is the very definition of arbitrary and capricious." *Reich*, 306 F.3d at 525.

### F. Northrop's Interpretation Necessarily Results in the Party Who Prevented a Condition from Occurring Using the Non-Occurrence to Avoid Its Own Performance.

Northrop's interpretation of "**Conditions for Receiving Benefits**" is arbitrary and capricious because it would result in the party who caused non-occurrence of a condition to use that condition's non-occurrence to evade its performance under the Plan. In ERISA benefit plans, a party cannot prevent the occurrence of a condition to receive benefits and then stand on that non-occurrence to evade paying benefits, especially when operating under a conflict of interest. *See Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 542–43 & n.18 (7th Cir. 1996) ("It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract . . . Ameritech should not be able to benefit from its inducement of the non-occurrence of the condition.").

Northrop is under a similar conflict of interest. *Supra* § I. The Plan states nothing upon which a VP-HR could base non-delivery of the memo except the eligibility criteria listed under "**Eligible Employees**" (PSOF ¶¶ 4, 8, 10). There is no dispute that Plaintiffs and the Class were "**Eligible Employees**." (*Id.* ¶¶ 73, 75, 77 (explaining the claims were denied for not meeting

13

"**Conditions for Receiving Benefits**," rather than based on not satisfying criteria under "**Eligible Employees**")).[1] The BPCs reflect eligibility is not in dispute. Plaintiffs were notified by management about eligibility long ago, and there was no disclosure they were no longer eligible. (*Id.* ¶¶ 12–13, 55–56). The categories of employees who were ineligible were specifically identified in the updated Summary Plan Description, and their BPCs reprogrammed accordingly. (*Id.* ¶¶ 4, 8, 36–37). What is in dispute is whether the VP-HR can make an entirely unrestricted discretionary decision at the time of layoff as part of the "**Conditions for Receiving Benefits**" to deny benefits to "**Eligible Employees**" who meet all other criteria. Because the Plan language does not communicate that kind of discretion, Northrop arbitrarily withheld the VP-HR memo from eligible employees and then used that non-delivery to deny severance, which *Swaback* prohibits.

## III.     Summary Judgment Should Be Granted on All Affirmative Defenses.

Defendants bear the burden of proof on their affirmative defenses. *Emp'rs Ins. of Wausau v. Titan Int'l, Inc*., 400 F.3d 486, 490 (7th Cir. 2005). "A plaintiff may use a motion for summary judgment to point out the nonmoving party's inability to come forward with evidence sufficient to support a verdict for it on an affirmative defense on which it will have the burden of proof at trial." *Simpson v. Safeguard Props., LLC*, No. 13-02453, 2017 WL 4310674, at *9 (N.D. Ill. Sept. 28, 2017); *see also Goss v. Receivables Performance Mgmt., LLC*, No. 19-0642, 2020 WL 2219048, at *5–6 (N.D. Ill. May 7, 2020) (granting summary judgment on defendants' affirmative defense).

---

[1] An administrator vested with discretionary authority may not advance a rationale for the benefit denial not given in its administrative decision, or argue a different interpretation of the plan terms inconsistent with those given during administrative review. *Reich*, 306 F.3d at 524 n.1; *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992).

### A. Defendants' First Four Affirmative Defenses Were Previously Rejected.

Defendants' First Defense alleges failure to state a claim for relief under Rules 12(b)(6) and 12(b)(1) and the Second Defense alleges lack of subject matter jurisdiction. (Dkt. #129, Answer, at 1st & 2nd Defenses). This Court previously denied Defendants' Rule 12(b)(6) motion. *Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 833, 838 (N.D. Ill. 2016). As this action is brought under ERISA, this Court has subject matter jurisdiction. 29 U.S.C. §§ 1132(e)(1) & 1132(f). (PSOF ¶ 1). Defendants also already successfully argued the Plan is governed by ERISA. *Carlson v. Northrop Grumman Corp.*, No. 13-2635, 2014 WL 1299000, at *4–5 (N.D. Ill. Mar. 31, 2014).

Defendants' Third Defense alleges that Plaintiffs lack standing because they are "neither participants nor beneficiaries" of the Plan. (Dkt. #129, Answer, at 3d Defense). The Court previously rejected this "defense" and held that where the plaintiff is a former employee, "the term 'participant' [in ERISA] has been interpreted to mean someone who has 'a colorable claim'" to benefits. *Carlson v. Northrop Grumman Corp.*, No. 13-2635, 2014 WL 5334038, at *5, *8 (N.D. Ill. Oct. 20, 2014).

Defendants' Fourth Defense alleges that Plaintiffs failed to "exhaust the administrative procedures." (Dkt. #129, Answer, at 4th Defense). There is no dispute Plaintiffs submitted administrative claims that were denied, and that Plaintiffs submitted timely appeals that were also denied. (Dkt. #62, Am. Compl., ¶¶ 53–55; Dkt. #129, Answer, ¶¶ 53–55). The Court concluded administrative exhaustion was not required for Class Members. *Carlson v. Northrop Grumman Corp.*, 333 F.R.D. 415, 422 (N.D. Ill. 2019) (rejecting Defendants' argument that typicality was lacking "because other class members might have failed to exhaust").

15

### B. Defendants' Fifth, Sixth & Seventh "Defenses" Are Not Affirmative Defenses.

Defendants' Fifth Defense asserts that the Plan Administration' decisions were arbitrary and capricious. (Dkt. #129, Answer, at 5th Defense). The Sixth and Seventh Defenses allege that the forms of relief requested are "not available under ERISA" or "duplicative" and Plaintiffs' claims do not satisfy Rule 23. (*Id.* at 6th & 7th Defenses). None of these is an affirmative defense. *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *In re Rawson Food Serv., Inc.,* 846 F.2d 1343, 1349 (11th Cir.1988) (recognizing that a defense which points out a defect in plaintiff's prima facie case is not an affirmative defense); *Jones v. Knox Cnty. Assn. for Retarded Citizens, Inc.,* No. 15-257, 2016 WL 1627628, at *2 (S.D. Ind. Apr. 19, 2016) (same). Likewise, a defendant's assertion that a plaintiff cannot meet the Rule 23 requirements is not an affirmative defense, but a rebuttal of the plaintiff's class allegations. *Johnson v. Providence Health & Servs.*, No. 17-1779, 2018 WL 2289331, at *3 (W.D. Wash. May 18, 2018) (striking such a defense). Summary judgment is proper on such "defenses." *Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer,* 886 F. Supp. 658, 672 (N.D. Ind. 1995) (granting summary judgment).

### C. Defendants Have No Evidence the Claims of Plaintiffs or the Class Are Barred by Any Statute of Limitations.

Defendants' Eighth Defense alleges that Plaintiffs' class claims are barred by the applicable statutes of limitations. (Dkt. #129, Answer, at 8th Defense). In response to interrogatories, Defendants averred that they had no "evidence suggesting that Plaintiffs' individual claims were untimely" and this defense applies only potentially to some absentee class members. (PSOF ¶ 79). Not only have Defendants failed to produce *any* evidence to support this assertion, but there is also no legal basis to support this affirmative defense.

### 1. Count I's § 1132(a)(1)(B) Claim Is Undisputedly Timely.

Class Members' claims are undisputedly timely because the class members' claims under Count I arise from the same conduct as alleged in the named plaintiffs' complaint. The Plan states that "any lawsuit must be filed within six months from the date of your denied appeal, or two years from your termination date, whichever occurs first." (PSOF ¶ 78, Ex. A-3 at NGC06978). Because the Court concluded administrative exhaustion was not required for Class Members, two years from the date of termination is the applicable deadline. *See Carlson*, 333 F.R.D. at 422 (rejecting Defendants' argument that typicality was lacking "because other class members might have failed to exhaust").

Plaintiffs filed their complaint on April 9, 2013, (Dkt. #1), a motion for leave to amend the complaint to assert the same claim on behalf of a class—with a filed copy of the proposed amended complaint on behalf of the class—on June 16, 2014 (Dkt. #39), and the amended complaint with leave of Court over Defendants' objection on October 22, 2014. (Dkt. #62). Rule 15(c) states an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading". Fed. R. Civ. P. 15(c)(1)(B). Both the Seventh Circuit and the Northern District of Illinois have held where an amended complaint makes the same claim in the original complaint but on behalf of a class, it relates back to the original filing date. *See Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir. 1981) (holding single plaintiff claim for gender discrimination amended to state same claim on behalf of a class related back); *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 231–32 (N.D. Ill. 2002) (holding additional of second class of Hispanic Americans also alleging discrimination related back). Because both the amended complaint challenged the exact same conduct, all Class Members are deemed to have filed suit on April 9, 2013.

### 2.    Count II's § 1140 Claim Is Undisputedly Timely.

ERISA does not provide for a statute of limitations for 29 U.S.C. § 1140 claims, so the applicable limitation is based on analogous state statute of limitations, recognizing that § 1140 protects "against several distinct abuses." *Teumer v. Gen. Motors Corp*., 34 F.3d 542, 549–50 (7th Cir. 1994). The forum state law applies "unless another state has more significant contacts with the dispute." *Berger v. AXA Network LLC*, 459 F.3d 804, 813 (7th Cir. 2006). Courts applying Illinois law to § 1140 claim apply the 5-year limit for retaliatory discharge. *Teumer*, 34 F.3d at 549–50 (applying limitations period to § 1140 claim). However, an argument could be made the decision to withhold the VP-HR memos was made at headquarters in Virginia. Virginia courts apply a 5-year statute of limitations to § 1140 claims where the "allegations are more akin to a state claim for tortious interference with a contract."*Eweka v. Hartford Life and Acc. Ins. Co*., 955 F. Supp. 2d 556, 563 (E.D. Va. 2013) (applying 5-year limitations period in Va. Code § 8.01-243(B). Here, Count II alleges that Northrop violated ERISA by withholding the VP-HR memo, not by terminating employees, to prevent them from receiving severance benefits, which is similar to a claim for tortious interference. (Dkt. #62, Am. Compl., ¶¶ 64–77).

A § 1140 claim accrues "when the putative plaintiff discovers the injury that results" from the unlawful action. *Teumer*, 34 F.3d at 550; *Berger*, 459 F.3d at 815 ("[A]ccrual of a § 510 claim turns on the discovery of the decision to interfere with benefits"). There is no evidence that any Class Members discovered before January 2012 that they would not receive cash severance for not receiving a Memo. (*See* PSOF ¶ 79). Plaintiffs filed a complaint including this claim April 9, 2013. (Dkt. #1). They moved for leave to amend, attaching a proposed amended complaint on June 16, 2014. (Dkt. #39). They formally filed the amended complaint with leave on October 24, 2014. (Dkt. #60). Regardless of the date used, Class Members' claims under Count II are timely under either Illinois's or Virginia's 5-year limitations period.

### 3. Count III's Breach of Fiduciary Duty Claim for Failure to Disclose Under § 1132(a)(3) Claim Is Undisputedly Timely.

A breach of fiduciary duty action under ERISA is timely so long as it is commenced by no later than the earlier of "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation" or "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. Count III alleges an omission claim that Northrop breached its fiduciary duties by failing to disclose to participants the changed use of the Plan's notice provision from a purely administrative step to a qualification method. (Dkt. #60, Am. Compl., ¶¶ 79–84). There is no evidence that before January 2012, Northrop cured their breach or made a disclosure or any Class Member actually knew that Northrop had changed its use of the Plan's notice provision. Thus, Count III is timely.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant their motion for partial summary judgment on Count I of the Amended Complaint and Defendants' affirmative defenses, and enter an Order awarding benefits to the members of the Class who immediately prior to layoff were in a severance eligible Benefit Program Code, were laid off, and were not given a memo from a Vice President of Human Resources (or his or her designee) advising them they were eligible.

Dated: July 3, 2020                        Respectfully submitted,

/s/ Michael Bartolic
Michael Bartolic
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Email: mbartolic@michaelbartolic.com

R. Joseph Barton
Block & Leviton LLP
1735 20th Street, NW
Washington, DC 20009
Tel: 202-734-7046
Email: jbarton@blockesq.com

Vincent Cheng
Block & Leviton LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: 510-543-0489
Email: vincent@blockesq.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served upon all parties of record via the Electronic Filing System of the U.S. District Court for the Northern District of Illinois on July 3, 2020.

/s/ Michael Bartolic
Michael Bartolic