**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALAN CARLSON & PETER DELUCA, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) Civil Action No. 13-cv-2635 |
| | ) Judge Andrea Wood |
| Plaintiffs, | ) ) Magistrate Judge Maria Valdez |
| v. | ) ) |
| NORTHROP GRUMMAN CORPORATION and the NORTHROP GRUMMAN SEVERANCE PLAN, | ) ) ) ) ) |
| Defendants. | ) ) |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE AMENDED COMPLAINT & DEFENDANTS' AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION AND ISSUE ..................................................................................... 1

I.     There Is No Basis to Disregard Northrop's Conflict of Interest. ........................................ 1

II.    Defendants Misunderstand Standard of Review and What the Court Considers. .............. 2

III.   Objective Extrinsic Evidence Is Properly Part of the Administrative Record................... 6

IV.   Whether Plaintiffs Received Written Notification from Management Under "Eligible Employees" Is Undisputed Because It Was Not a Basis for the Denial. ........................... 8

V.    The Course of Dealing Evidence Does Not Support Defendants' Interpretation. .............. 9

VI.   Adding Criteria, Communicating Discretion, & Preventing Condition's Occurrence. .... 11

VII.  Inconsistent Interpretations. ............................................................................... 12

VIII. Summary Judgment Should Be Granted on All Affirmative Defenses. .......................... 13

    A.  Defendants' First Four Affirmative Defenses Were Previously Rejected ...................... 13

    B.  The Fifth, Sixth & Seventh "Defenses" Are Not Affirmative Defenses ........................ 14

    C.  Defendants Have No Evidence or Legal Basis for Their Eighth Defense ...................... 14

CONCLUSION ......................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Allen v. HSBC Ret. Income Plan*, No. 09-5713, 2011 WL 3876585 (N.D. Ill. Sep. 1, 2011) ........ 7

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ................................................................. 14, 15

*Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726 (7th Cir. 2012) ........................................... 2

*Bailiff v. Vill. of Downers Grove*, No. 11 C 3335, 2011 WL 6318953 (N.D. Ill. Dec. 16, 2011)  14

*Carlson v. Northrop Grumman Corp.*, 333 F.R.D. 415 (N.D. Ill. 2019) ................................... 13

*Carr v. Gates Health Plan*, 195 F.3d 292 (7th Cir. 1999) ........................................................ 1

*Coker v. TWA, Inc.*, 165 F.3d 579 (7th Cir. 1999) ................................................................... 9

*Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 1998) ................................................ 6

*Daniels v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609 (N.D. Ill. 2000) ............................. 14

*Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741 (7th Cir. 2013) ............. 3

*Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355 (7th Cir. 2011) .................................... 6

*Farr v. Hartford Life & Accident Ins. Co.*, 322 F. App'x 622 (10th Cir. 2009) ........................... 7

*Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996) ............................................................... 6

*Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357 (7th Cir. 2017) .................................................... 2

*Grise v. Flair Interiors, Inc. Emp. Benefit Plan*, No. 12-cv-422, 2013 WL 1287328 (N.D. Ind. Mar. 27, 2013) ..................................................................................................................... 8

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685 (7th Cir. 1992) .................................................. 8

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99 (2013) ............................................ 15

*Helton v. AT&T Inc.*, 709 F.3d 343 (4th Cir. 2013) ................................................................. 3

*Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532 (7th Cir. 2018) .............................................. 1, 6

*Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456 (7th Cir. 2001) ............................... 3, 5

*In re Household Intl. Tax Reduction Plan*, 441 F.3d 500 (7th Cir. 2006) ................................. 14

*Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841 (7th Cir. 2009) ................................................. 3

*Kuehl v. Chrysler Pension Plan*, 895 F. Supp. 1147 (W.D. Wis. 1995).......................................... 1

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) ................................ 14

*Lait v. Genova*, No. 01-5125, 2001 WL 1249057 (N.D. Ill. Oct. 17, 2001)................................. 14

*Matthews v. Sears Pension Plan*, 144 F.3d 461 (7th Cir. 1998)........................................................ 4

*McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132 (E.D.N.Y. 2009).................................... 13

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)............................................................... 1, 3

*Mohammed v. Prudential Ins. Co. of Am.*, No. 19-cv-3258, 2020 WL 4569696 (N.D. Ill. Aug. 7, 2020)............................................................................................................................ 8

*Phillips v. Help at Home, LLC*, No. 15 C 8954, 2019 WL 266211 (N.D. Ill. Jan. 18, 2019)....... 15

*Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076 (7th Cir. 2012)...................................... 2

*Reich v. Ladish Co.*, 306 F.3d 519 (7th Cir. 2002) .................................................................... 8, 10

*Rosetto v. Pabst Brewing Co.*, 217 F.3d 539 (7th Cir. 2000) ........................................................ 4

*Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585 (7th Cir. 2014) .............................................................................................................. 10

*Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, No. 12-8757, 2013 WL 6185477 (N.D. Ill. Nov. 22, 2013)............................................................... 6

*Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535 (7th Cir. 1996)..................................................... 6

*Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008) .................. 6, 7

*Wallace v. Oakwood Healthcare, Inc.,* 954 F.3d 879 (6th Cir. 2020) ............................................6

*Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182 (3d Cir. 1984)...........................................7

*Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808 (7th Cir. 2010).....................4

*Zuckerman v. United of Omaha Life Ins. Co.*, No. 09-cv-4819, 2011 WL 2173629 (N.D. Ill. May 31, 2011).............................................................................................................................8

**Statutes**

29 U.S.C. § 1113.............................................................................................................. 15

29 U.S.C. § 1132(a)(1)(B) ............................................................................................... 15

29 U.S.C. § 1133(1) ........................................................................................................... 8

**Regulations**

29 C.F.R. § 2560.503-1(g)(1) ............................................................................................ 8

**Other Authorities**

Jeffrey Lewis, Myron Rumeld & Ivelisse Berio LeBeau, Employee Benefits Law (4th ed. BNA 2017) .................................................................................................................... 1, 3

## INTRODUCTION AND ISSUE

The Plan references a notice to employees twice: one by management that the employee is covered by the Plan under "**Eligible Employees**," and another "designation" of eligibility by a VP-HR under "**Conditions for Receiving Benefits**." (Dkt. No. 283 (hereafter "PSOF") ¶ 8). The only real issue for this Court to determine is whether those two notices are really one and the same, because the Plan only denied Plaintiffs' claims on the basis of not receiving the VP-HR memo and thus not satisfying the "**Conditions for Receiving Benefits**." Unless the two notices are the same, receipt of the first notice by management of being covered by the Plan is thus not in dispute because ERISA requires. The attached Appendix shows questions about facts treating them as the same notice cannot adequately answer, while acknowledging they are separate can.

## I.       There Is No Basis to Disregard Northrop's Conflict of Interest.

Defendants assert without support that the Court should only consider whether the committee members determining Plaintiffs' appeals were individually conflicted. (Dkt. No. 288 at 2–4). "Conflict of interest concerns also arise where the plan is self-funded and claims are determined by the employer/plan sponsor (through its employees or a committee appointed by the sponsor)." JEFFREY LEWIS, MYRON RUMELD & IVELISSE BERIO LEBEAU, EMPLOYEE BENEFITS LAW 13-91–92 (4th ed. BNA 2017); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (holding a conflict exists when the entity paying benefits also determines eligibility through one or more employees); *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018) (same). Neither *Carr v. Gates Health Plan*, 195 F.3d 292, 294–95 (7th Cir. 1999) nor *Kuehl v. Chrysler Pension Plan*, 895 F. Supp. 1147, 1153–55 (W.D. Wis. 1995) support Defendants' position (Dkt. No. 288 at 3), as both decisions merely explain a court reviews the decisions made by the persons authorized by the Plan to make the benefit determination.

The only evidence a claimant must show that a conflict of interest influenced a benefit denial is procedural unreasonableness of the denial. *Glenn*, 554 U.S. at 118 (explaining procedural unreasonableness justifies giving more weight to a structural conflict); *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1082–88 (7th Cir. 2012) (explaining procedural unreasonableness of a denial is the evidence of influence by a conflict of interest). Plaintiffs identified ample evidence of that procedural unreasonableness, particularly how Northrop handled eligibility for the previous decade (PSOF ¶¶ 11–29), that neither Margaret Collins nor the Committee investigated the BPC coding or the Guide to Administration, or explained how these individuals could get the non-cash severance by being in a severance eligible BPC, yet be ineligible for the cash severance. (*Id.* ¶¶ 69–77).

Defendants contend conflicts get very little weight because they exist in all ERISA cases. (Dkt. No. 288 at 2–3 (citing *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017)). But *Geiger* reviewed a district court's discovery order—not the merits—and explained that the conflict deserved less weight because the insurer hired outside independent professionals to review the claim who consulted with the claimant's doctor. *Geiger*, 845 F.3d at 865; *see also Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 729 (7th Cir. 2012) (explaining that a delegation of decision-making to a neutral third party administrator "reduced any potential for conflict."). Northrop did not outsource the decision to a neutral third party. The Court thus should assess the procedural unreasonableness to determine the weight the conflict of interest warrants.

## II. Defendants Misunderstand Standard of Review and What the Court Considers.

Defendants' response relies on declarations created in litigation, as if the Court were *de novo* determining whether there is a genuine issue of material fact about the merits, without any

deference, while they simultaneously seeking deferential review of their benefit denial. Defendants misunderstand deferential review of a benefit claim, and what a reviewing court can consider. Under deferential review, the Court reviews the administrative record to determine whether the administrator's decision, based on information available to the administrator at the time of making the decision, was arbitrary and capricious. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009) ("When review is deferential . . . *then* review is limited to the administrative record."); *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001) ("[I]n evaluating a plan administrator's decision . . . we should consider only the evidence that was before the administrator when it made its decision."); *Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741, 747 (7th Cir. 2013) (explaining that *Metropolitan Life Insurance Co. v. Glenn* implies a role for evidence that demonstrates the administrator's decision was influenced by a conflict of interest). Thus, the Court must consider what the administrator did consider, or had available to consider.

The record consists of the material available to the administrator at the time of making the administrative decision, "even if not included in the information assembled for the claim." JEFFREY LEWIS ET AL., EMPLOYEE BENEFITS LAW 13-68–69 (4th ed. BNA 2017); *Hess*, 274 F.3d at 463 (holding an employment contract in employer's custody establishing compensation level was part of the administrative record because it addressed a key issue and it was available to the administrator, regardless of whether administrator chose to access it); *Helton v. AT&T Inc.*, 709 F.3d 343, 352–53 (4th Cir. 2013) (summarizing circuit's past decisions as allowing admission of such evidence, in contrast to cases in which plaintiff sought to introduce evidence in court that was unknown to plan administrator). Therefore, information in Northrop's custody that could have been accessed at the time of the decision constitutes the administrative record.

In addition, when it comes to determining the meaning of plan terms, parties must point to objective extrinsic evidence to support their argument about meaning of plan terms; "objective" evidence cannot be self-serving testimony if there is any dispute as to the fact to which the interested party testified. *Rosetto v. Pabst Brewing Co.*, 217 F.3d 539, 546 (7th Cir. 2000) (explaining evidence of an interested party's testimony supporting what party argued term means is not "objective"); *Matthews v. Sears Pension Plan*, 144 F.3d 461, 467 (7th Cir. 1998) (explaining that a party cannot rely on testimony of an interested party to explain the meaning of any plan terms, and support must be "objective extrinsic evidence" if other than the plan's terms); *see also Young v. Verizon's Bell A. Cash Balance Plan*, 615 F.3d 808, 818–20 (7th Cir. 2010) (course of dealing must be based on "objective" extrinsic evidence of parties' dealings).

Defendants repeatedly point to testimony, created in litigation, that attempts to explain the VP-HR memo was always required to pay severance and is discretionary, without using any objective evidence to show these points, and that testimony conflicts with all the objective evidence, including those witnesses' own deposition testimony. Defendants contend each of the witnesses testified (after being in litigation and prepped by a lawyer) that one is only eligible if he or she received a memo. (Dkt. No. 288 at 9). But the Health & Welfare benefits manager explained in contemporaneous documents in November 2011 that eligibility was determined by BPC, and it had been that way for the prior decade. (PSOF ¶¶ 17, 24, 42). If nobody was eligible for severance until getting the VP-HR memo, Northrop would not program BPCs to automatically provide severance upon entry of a layoff code to the groups of employees management selected and uniquely coded as severance eligible, while management coded others who are not specifically excluded in the Plan as not severance eligible. (*See* Dkt. No. 286, PSOAF ¶ 6; Dkt. No. 280 Ex. 25, Ussery Dep., at 226:5–6; PSOF Ex. I-8 (showing one group

that is neither SCA nor Union that was not severance eligible for 2012 in TS). An employer would only make such specific programming if the people selected to be severance eligible by BPC are supposed to get the memo, and those programmed as ineligible should not get one. The "tap on the shoulder" phrase would not have just surfaced in November 2011. (*Id.* ¶¶ 42, 45). Cindy Fonseca would not have questioned how somebody could be ineligible for severance regardless of benefit code. (*Id.* ¶ 45). If this procedure were an error, the inconsistency between receiving cash and non-cash severance would have surfaced before October 2011, given its decade long usage. (*Id.* ¶ 42). It would have been corrected a decade earlier as it merely required creating a new separation code and only cost $12,600 to fix, likely less than the cost of erroneously extending non-cash severance to the two named Plaintiffs alone. (*Id.* ¶¶ 60–61 & Ex. B-14 at NGC25079).

Defendants' own objective evidence shows the self-serving testimony is disputed, and not properly before the Court. (*See* Dkt. No. 290 Ex. 12 at CAR0483 ("You are designated as eligible when you receive an individually addressed letter signed by an approved representative, **notifying you that you meet the eligibility requirements** . . . .") (emphasis added)[1]; Dkt. No. 280 Ex. 7 at NGC06706 (explaining HR prepares the memo for signature by a VP-HR if the employee is eligible, but under Defendants' interpretation eligibility could not be known until after the VP-HR signs the memo). Combined with all the objective evidence cited in Plaintiffs' statement of facts and prior briefs, these documents show Defendants' self-serving testimony is not properly before the Court.

Defendants contend deferential review operates differently when the issue is one of plan interpretation. (Dkt. No. 288 at 2 (citing *Hess*, 423 F.3d at 659). *Hess* explained that deferential

---

[1] This document appears to be a presentation to employees about various benefits in advance of a layoff in Spring 2011, before Technical Services standardized the severance schedule in October 2011. (*See id.* at CAR0496).

review only eliminates the doctrine of construing ambiguities against the drafter, but it does not eliminate any other principles of benefit plan interpretation upon which Plaintiffs rely (as Plaintiffs' cases demonstrate). (Dkt. No. 282 at 4–14). Because deferential review only eliminates the construction of ambiguities against the drafter, "[d]eferential review is not no review," and "deference need not be abject." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996). While deferential, "[i]t is not, however, without some teeth." *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 1998) (citing *Swaback v. Am. Info Techs. Corp.*, 103 F.3d 540 (7th Cir. 1996)). A court does not "rubber stamp" an administrator's decision, or "uphold a decision when there is absence of reasoning in the record to support it." *Hennen*, 904 F.3d at 539. A court should overturn a decision where there is no "rational support in the [administrative] record" or the administrator failed to consider "the relevant factors that encompass the important aspects of the problem." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). Thus, Defendants' contention they get enhanced deferential review of plan interpretation is baseless.

### III. Objective Extrinsic Evidence Is Properly Part of the Administrative Record.

Defendants contend extrinsic evidence of the meaning of the VP-HR "designating" an employee as eligible is not admissible because Plaintiffs did not raise this argument during administrative review. (Dkt. No. 288 at 7). But ERISA only requires claim exhaustion, but does not require issue exhaustion by participants. *See Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, No. 12-8757, 2013 WL 6185477, at *5 n.1 (N.D. Ill. Nov. 22, 2013) ("Although [plaintiff] did not make this argument to the Plan or the Special Committee, he has exhausted his ERISA claims because he appealed the Plan's decision and ERISA does not require 'issue exhaustion.'"). Every Circuit court to consider the issue concurs issue exhaustion is not required. *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 892 n.7 (6th Cir. 2020) (rejecting issue exhaustion requirement for ERISA claims); *Vaught v. Scottsdale*

*Healthcare Corp. Health Plan*, 546 F.3d 620, 629–32 (9th Cir. 2008) (same); *Farr v. Hartford Life & Accident Ins. Co.*, 322 F. App'x 622, 628 (10th Cir. 2009) (same); *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984) (same). Defendants' sole authority mistook issue exhaustion for claim exhaustion, and is an outlier relying on a flawed premise for its conclusion. *See Allen v. HSBC Ret. Income Plan*, 2011 WL 3876585, at *5–6 (N.D. Ill. Sep. 1, 2011).

Defendants next contend the Court cannot consider any other evidence of the meaning of plan terms because they assert that the language is unambiguous. (Dkt. No. 288 at 7). Defendants acknowledge such evidence can be considered if the language is ambiguous. (*Id.*). As explained in Plaintiffs response to Defendants' motion, "designate" has more than one meaning, and most of the meanings support Plaintiffs' interpretation. (Dkt. No. 287 at 4). The majority of the meanings are also consistent with Defendants' own pre-litigation usage. (Dkt. No. 290 Ex. 12 at CAR0483 "You are designated as eligible when you receive an individually addressed letter . . . *notifying you that you meet the eligibility requirements* . . ."). This presentation to employees shows "designate" as used in "**Conditions for Receiving Benefits,**" means an acknowledgment and notice to the laid off employee he met the eligibility requirements, consistent with Plaintiffs' argument. The presentation also advises active employees to contact HR if they have questions about their eligibility (*id.*)—questions HR could not possibly answer if nobody is eligible until being "tapped on the shoulder" by getting a VP-HR memo, but could be answered if the BPC indicates eligibility in the event of layoff. Defendants' interpretation is inconsistent with all the objective evidence, and violates numerous principles of contract interpretation, while Plaintiffs' interpretation reconciles all the facts and law.

**IV.  Whether Plaintiffs Received Written Notification from Management Under "Eligible Employees" Is Undisputed Because It Was Not a Basis for the Denial.**

Defendants argue Plaintiffs did not adequately prove being notified in writing by management they are covered by the severance plan, as listed requirement under "**Eligible Employees**." (Dkt. No. 288 at 10–11). Because the Plan did not raise this as a basis to deny the claim at the time of denial (PSOF ¶ 73), it is not in dispute. When a plan administrator denies a benefit claim, it must "set[] forth the specific reasons for such denial . . . ." 29 U.S.C. § 1133(1); *accord* 29 C.F.R. § 2560.503-1(g)(1)(i) (requiring administrator to provide the specific reason for the denial). The administrator must state "every reason for its denial of benefits at the time of the denial." *Reich v. Ladish Co.*, 306 F.3d 519, 524 n.1 (7th Cir. 2002). Plans may not advance reasons to deny a claim that were not communicated in the first benefit denial. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) (explaining such post hoc explanations defeat the purpose of meaningful administrative appeal and review); *Mohammed v. Prudential Ins. Co. of Am.*, No. 19-cv-3258, 2020 WL 4569696, at *3 (N.D. Ill. Aug. 7, 2020) (holding Plan could not argue basis for denial not communicated in first benefit denial correspondence); *Grise v. Flair Interiors, Inc. Emp. Benefit Plan*, No. 12-cv-422, 2013 WL 1287328, at *5 n.8 (N.D. Ind. Mar. 27, 2013) (same); *Zuckerman v. United of Omaha Life Ins. Co.*, No. 09-cv-4819, 2011 WL 2173629, at *4 (N.D. Ill. May 31, 2011) (same).

The only reason that the Plan Administrator provided for denying severance claims is that by not getting the VP-HR memo, one does not satisfy the "**Conditions for Receiving Benefits**" under the plan. (PSOF ¶ 73). The Plan Administrator did not contest Plaintiffs meeting the other criteria under "**Eligible Employees**," namely that anybody received written notice from management of being covered, working 20 hours per week, and working in the United States. (*Id.*). Defendants also did not argue that it was one of the bases for denial, or contest Plaintiffs'

8

previous argument and authority that Defendants cannot raise it now if it was not raised in the original denial. (*Compare* Dkt. #282 at 14 & n.1 *with* Dkt. #288 at 10–11). Defendants thus waived any rebuttal. The only thing the Court can thus consider under Count I is the meaning of being "designated" as eligible by a VP-HR under "**Conditions for Receiving Benefits**."

## V.      The Course of Dealing Evidence Does Not Support Defendants' Interpretation.

Defendants contend the course of dealing evidence does not show that the VP-HR memo merely notifies the laid off employee he met the eligibility requirements, focusing on the BPC system and the 2002 Guide to Administration. (Dkt. No. 288 at 8–12).[2] Both arguments rely almost exclusively on self-serving testimony about the meaning of the very Plan term whose meaning is in dispute. Eliminating the self-serving testimony, the objective evidence shows the VP-HR memo notifies laid off employees they met the eligibility criteria, as Northrop described in the pre-October 2011 presentation. (Dkt. No. 290 Ex. 12 at CAR0483 ("You are designated as eligible when you receive an individually addressed letter . . . **notifying you that you meet the eligibility requirements for participation in the Severance Plan**.") (emphasis added)).

Defendants' contend the BPC had to be programmed that way to effectively deliver the non-cash severance, and rely on *Coker v. TWA, Inc.*, 165 F.3d 579, 586–87 (7th Cir. 1999) to support its claim that paying the non-cash severance does not establish a right to the cash severance. (Dkt. No. 288 at 10). But *Coker* held a single plaintiff did not establish reasonable reliance for estoppel where the claim was based on mistaken coverage extended to one plaintiff well past the legal time period for COBRA continuation. Here, however, Northrop disparately treated cash and non-cash severance of 591 different people (Dkt. No. 286, PSOAF ¶ 5) after relying on the BPC system of eligibility for tens of thousands for a decade (PSOF ¶¶ 29, 42),

---

[2] They also contend there was no evidence of communication by management (*id.* at 10), which Plaintiffs explained was not properly raised as a basis to deny the claim in the preceding section. *Supra* § IV.

which is why this is course of dealing, and not estoppel. All the objective evidence indicates Northrop treated the VP-HR memo as a notification of meeting the eligibility criteria, as laid out in Plaintiff's memorandum. (Dkt. No. 282 at 5–8). Management selected who was in a severance eligible BPC, and which groups not specifically excluded by the Plan would nevertheless be ineligible. (Dkt. No. 286, PSOAF ¶ 6; Dkt. No. 280 Ex. 25 at 226:5–6; PSOF ¶ 43 & Ex. I-8 (showing one group not union or SCA that is not eligible in 2012)). Northrop explained to employees that the VP-HR memo "notif[ies] you that you meet the eligibility requirements for participation in the Severance Plan." (Dkt. No. 290 Ex. 12 at CAR0483). The HR procedure for layoff directs HR to prepare the memo for signature by a VP-HR if the employee is eligible, which could only be known prior to delivery of the memo if it is already determined by BPC. (Dkt. No. 280 Ex. 7 at NGC06706). If the BPC system was necessary, as Defendants contend, Northrop could have and would have created the new "LX" termination code to avoid extending non-cash severance to those who did not get the VP-HR memo long before 2013, given how little the cost to do so. *See supra* § II.

Defendants argue the BPC system labeling who is eligible related only to the non-cash severance. (Dkt. No. 288 at 9). Because both cash and non-cash severance had the same plan language on eligibility, Defendants cannot treat the meaning of the BPC system in relation to eligibility differently. *See Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 591–92 (7th Cir. 2014) (holding operative word used for two purposes could not be applied different ways for the different purposes); *Reich*, 306 F.3d at 525 (holding same eligibility criteria used for two different benefits could not be applied differently).

Defendants also contend the Guide to Administration is not evidence of the course of dealing because Northrop did not use it, and it had been superseded by sector specific guides.

(Dkt. No. 288 at 11). But the 2002 Guide was circulated to Margaret Collins while Plaintiffs' claims were pending. (PSOF ¶ 74). Technical Services did not have a sector-specific guide until July 2013. (Dkt. No. 280 Ex. 8). NGIS did not have its own sector Guide until 2010, years into using the BPC system. (*Id.* Ex. 4; PSOF ¶ 24). Neither of these sector-specific guides can modify plan terms, and neither suggests the VP-HR memo is a discretionary decision. But the 2002 Guide clarifies there are two separate notices to employees: one to a group of employees when management decides in its discretion to cover the employees (the management notice under "Eligible Employees"), and one individual notice of eligibility when the eligible employee is laid off (the VP-HR memo). (PSOF ¶ 5). This is the only part of any Guide addressing whether the VP-HR memo is the same notification as the one on behalf of management under "**Eligible Employees**", and it makes clear they are separate communications. Defendants do not explain how in light of the Guide's clear language those two communications can still be the same one.

Defendants' contention the language in the Guide—that the number of memos issued equals the number of people offered severance—supports their argument ignores key facts. (Dkt. No. 288 at 11–12). Defendants' argument cannot reconcile why Northrop reported everybody in a severance eligible BPC on the Form 5500 (PSOF ¶ 29), when the number of individuals "offered" severance is what the Guide directs to report. But if everybody in a severance eligible BPC is supposed to get a memo in the event of layoff, that reconciles the facts.

**VI.    Adding Criteria, Communicating Discretion, & Preventing Condition's Occurrence**

Several of Defendants' rebuttals to Plaintiffs' arguments (Dkt. No. 288 at 12–17) hinge on their assumption the VP-HR memo is the same discretionary management decision on eligibility as the management decision communicated in the first sentence of "**Eligible Employees**," but they never explain how to give meaning to both of those provisions without rendering either superfluous. The written notice from management described under "**Eligible**

**Employees**" would be unnecessary language if the VP-HR memo is that decision. As described above, *supra* § V, the Guide to Administration clarifies the Plan has two distinct notices, and the VP-HR memo is not the management discretionary decision. Defendants' rebuttals thus require no further response as they rest on a faulty assumption, without which the arguments all fail.

### VII. Inconsistent Interpretations

Defendants contend a severance eligible BPC merely means an employee is potentially eligible for severance, citing self-serving testimony that explains the meaning of plan terms. (Dkt. No. 288 at 15). But Kathleen Sholinsky explained the BPC system indicated "potentially eligible" because the employee would not receive severance until layoff and entry of a "layoff" termination code. (PSOF ¶¶ 23–24). The Guide to Administration does not state "severance eligible" employees by BPC who did not receive a VP-HR memo should not get severance, as Defendants represent. (Dkt. No. 288 at 15). The Guide appears created before BPCs even existed, as there is no mention of BPCs or "severance eligible." It states all employees on eFlex will get benefits continuation in the event of layoff, unless Benefits Administration is notified otherwise. (PSOF ¶ 5). After Northrop was able to program BPCs to be severance eligible or not, nobody ever notified Benefits Administration to stop non-cash severance for failure to issue a memo. (PSOF ¶ 62). Northrop could have must earlier and inexpensively created a new separation code to indicate someone is laid off but not to receive severance. (PSOF ¶¶ 60–61 & Ex. B-14 at NGC25079). The only explanation for why the new code was not created until 2013 is that Northrop always interpreted the VP-HR memo as notifying laid off employees they meet the eligibility criteria.

Defendants' argument that only the Committee's interpretation matters is wrong. Northrop is the Plan Administrator, and manages Health and Welfare Benefits Administration.

(PSOF Ex. A-3 at NGC06977). The Plan Administrator has discretion to determine which employees are eligible. (PSOF Ex. A-6 at NGC00211). Discretion to interpret is shared by the Administrator and the Committee. (*Id.* at NGC00213–14). Defendant's point is thus meritless.

**VIII.  Summary Judgment Should Be Granted on All Affirmative Defenses.**

  **A.  Defendants' First Four Defenses Were Previously Rejected.**

Defendants argue that summary judgment on their First Defense cannot be granted unless there is "a genuine dispute of material facts" on Defendants' summary judgment motion. (Dkt. No. 288 at 18). But Defendants' sole authority did not address such a defense or anything that supports that assertion. *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 135–36, 140–41 (E.D.N.Y. 2009). Not only has the Court previously decided that the Complaint states a claim, but this defense cannot preclude a finding for Plaintiff if the Court denies both parties' cross-motions or grants Plaintiffs' motion. (Dkt. No. 282 at 14). Thus, summary judgment is appropriate on their First Defense.

On the Second and Third Defenses regarding standing and subject matter jurisdiction, Defendants concede that the Court rejected their argument on their motion to dismiss and "do not intend to present evidence on this defense at trial" and have presented none in opposing this motion. (Dkt. No. 288 at 17 n. 9; Dkt. No. 282 at 15). Thus, summary judgment is appropriate.

With respect to the Fourth Defense, Defendants concede that Plaintiffs filed timely administrative claims and appeals, but argue Plaintiffs did not exhaust their "new arguments and theories." (*Compare* Dkt. No. 282 at 15 *with* Dkt. No. 288 at 18). But ERISA does not require issue exhaustion. *Supra* § III. Defendants also repeat an argument (Dkt. No. 288 at 18–19) that this Court previously rejected—that absentee class members were required to exhaust their claims. *Carlson v. Northrop Grumman Corp.*, 333 F.R.D. 415, 422 (N.D. Ill. 2019) (holding

"exhaustion is not required" by absentee class members).[3] Defendants ignore this Court's prior decisions and the authorities cited by Plaintiff and only cite non-ERISA cases.[4] Thus, summary judgment is appropriate on this defense.

### B.     The Fifth, Sixth and Seventh "Defenses" Are Not Affirmative Defenses.

Defendants explain why it made sense for them to plead these "negative defenses," but do not address Plaintiffs' authority that rebuttals of allegations are not affirmative defenses and summary judgment on such defenses is proper. (Dkt. No. 288 at 19). "Affirmative defenses are, essentially 'Yes, but'" formulations—'even if plaintiffs prove everything they have alleged they still lose" *Lait v. Genova*, No. 01-5125, 2001 WL 1249057, at *1 (N.D. Ill. Oct. 17, 2001) (striking negative defenses). As none of these defenses bar Plaintiffs from recovering if they prevail on their prima facie case, they are not affirmative defenses and summary judgment is proper.[5]

### C.     Defendants Have No Evidence or Legal Basis for Their Eighth Defense.

Defendants assert the original complaint does not put them on notice of the benefits claims of the Class Members (who terminated more than two years before Plaintiffs moved to amend the complaint. (Dkt. No. 288 at 20). But Defendants ignore Plaintiffs' Seventh Circuit authority. (*Compare id. with* Dkt. No. 282 at 17). *See also Arreola v. Godinez*, 546 F.3d 788, 796

---

[3] The Seventh Circuit recognized ERISA has "no statutory requirement of exhaustion" such as an exhaustion deadline. *In re Household Intl. Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006). Other courts in this Circuit "have repeatedly held" that exhaustion is not required for "each plaintiff to a class." *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at *6 (N.D. Ill. Apr. 30, 2015) (citing cases).

[4] Defendants' non-ERISA cases do not support their position. In *Bailiff v. Village of Downers Grove*, the court did not address any exhaustion requirement but instead held that the class included everyone whose rights were violated within the statute of limitations period before suit was filed. No. 11 C 3335, 2011 WL 6318953, at *2 (N.D. Ill. Dec. 16, 2011). In *Daniels v. Federal Reserve Bank of Chicago*, a race discrimination case, the court only addressed the requirement to file "a charge with the [administrative agency] EEOC." 194 F.R.D. 609, 617–18 (N.D. Ill. 2000).

[5] With respect to the Seventh Defense, Defendants argue Plaintiffs' motion for class certification on Counts II and III was denied. (Dkt. No. at 19). Of course, this ignores that it was without prejudice and that Plaintiffs' renewed certification motion is pending (Dkt. No. 256).

(7th Cir. 2008) (affirming relation back where plaintiff "'was challenging the same policy that is at issue in the class action claim'"); *Phillips v. Help at Home, LLC*, No. 15 C 8954, 2019 WL 266211, at *5 (N.D. Ill. Jan. 18, 2019) (finding "fair notice" where new plaintiff's claims were "clearly based on the same legal theories and facts set forth in the original Complaint"). Count I in both complaints alleges an § 1132(a)(1)(B) claim, against *the same defendants*, that Northrop denied cash severance from the Plan even though the participants "met all the conditions to receive" such benefits. (Dkt. No. 1 ¶¶ 14-36; Dkt. No. ¶¶ 53-61). The original complaint alleged that Northrop terminated Plaintiffs and "*the others in their Sector*" and did not issue a Memo or provide cash severance to them to save money. (*Id.* ¶¶ 1, 4, 48, 67). Thus, Defendants were on notice that they might be required to defend their conduct on a class-wide basis.

Defendants' arguments do not address statute of limitations for Counts II or III. (*See* Dkt. No. 282 at 18–19). First, the Plan's contractual limitations period applies only to claims for benefits. (PSOF Ex. A-3 at NGC06976–77). Second, Defendants' Interrogatory Response does not suggest otherwise. (*Id.* Ex. L No. 23). Third, the decision in *Heimeshoff v. Hartford Life & Acc. Ins. Co.* was premised on no controlling statute of limitations and that ERISA's statute of limitations in 29 U.S.C. § 1113 did not apply to a § 1132(a)(1)(B) action to recover benefits. 571 U.S. 99, 110 (2013). But § 1113 does apply to breaches of fiduciary duty in Count III. *Id.* As such, summary judgment on the Eighth Defense is proper.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' motion for partial summary judgment on Count I of the Amended Complaint and Defendants' affirmative defenses, and award cash severance benefits to those in severance eligible Benefit Program Codes.

Dated: September 11, 2020                 Respectfully submitted,

/s/ Michael Bartolic
Michael Bartolic
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60603
Tel: 312-635-1600
Email: mbartolic@michaelbartolic.com

R. Joseph Barton
Block & Leviton LLP
1735 20th Street, NW
Washington, DC 20009
Tel: 202-734-7046
Email: jbarton@blockesq.com

Vincent Cheng
Block & Leviton LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: 510-543-0489
Email: vincent@blockesq.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

was served upon all parties of record via the Electronic Filing System of the U.S. District Court

for the Northern District of Illinois on September 11, 2020.

/s/ Michael Bartolic
Michael Bartolic

16