IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN K. CARLSON and PETER DELUCA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 13-cv-02635 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| NORTHROP GRUMMAN SEVERANCE ) | |
| PLAN and NORTHROP GRUMMAN ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alan K. Carlson and Peter DeLuca have brought the present case as a putative class action against Defendants Northrop Grumman Corporation ("Northrop") and Northrop Grumman Severance Plan, alleging that Defendants interfered with class members' severance benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. This Court previously granted Plaintiffs' motion for class certification as to Count I of the Amended Complaint, in which Plaintiffs seek benefits due and clarification of rights pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). (*See* Dkt. No. 248.) But the Court declined to certify the proposed class with respect to Counts II and III. Presently before the Court is Plaintiffs' renewed motion for certification of two proposed subclasses for purposes of Counts II and III. (Dkt. No. 256.) For the reasons provided below, Plaintiffs' renewed motion is granted.

## BACKGROUND

The details of Plaintiffs' allegations regarding their layoffs from Northrop and the ERISA-governed severance plan ("Plan") have been set forth in the Court's prior opinions and thus will not be recounted here. *See Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 833–34

(N.D. Ill. 2016); *Carlson v. Northrop Grumman Corp.*, No. 13 C 02635, 2014 WL 5334038, at *1 (N.D. Ill. Oct. 20, 2014); *Carlson v. Northrop Grumman Corp.*, No. 13 C 02635, 2014 WL 1299000, at *1 (N.D. Ill. Mar. 31, 2014). In short, Plaintiffs allege that Defendants wrongfully denied Plan members their rights to severance by failing to send them a memorandum from Northrop's Vice President of Human Resources ("Eligibility Memo"). According to Plaintiffs, receipt of the Eligibility Memo was required to obtain severance benefits according to the terms of the Plan.

In October 2019, the Court certified the following class of Northrop employees with respect to Count I ("Class"):

> All persons who worked for Northrop Grumman in the United States, were regularly scheduled to work over 20 hours per week, were laid off from Northrop Grumman from January 1, 2012 and after, and who did not receive the "Cash Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under the terms of the Plan (regardless of whether they received Medical, Dental or Vision Benefits under the Plan), because they did not receive written notification from management or from a Vice President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan, as well as the beneficiaries of such persons.

(Oct. 11, 2019 Mem. Op. & Order ("2019 Class Cert. Order") at 8, Dkt. No. 248.)[1] Plaintiffs now seek to certify two subclasses—one for Count II, which claims that Defendants interfered with their rights in violation of ERISA, 29 U.S.C. § 1140, and another for Count III, which requests equitable reformation of the Plan under 29 U.S.C. § 1132(a)(3) in light of Defendants' breach of the fiduciary duties they owed to Plan participants.

## DISCUSSION

Before certifying a class (or subclass), the Court must find that the proposed class satisfies all four requirements of Federal Rule of Civil Procedure 23(a): (1) "the class is so numerous that

---

[1] The class definition also excluded certain individuals. (*See* 2019 Class Cert. Order at 2–3, 8 n.3.)

2

joinder of all members is impracticable" ("numerosity"); (2) "there are questions of law or fact common to the class" ("commonality"); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality"); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy of representatives"). Furthermore, the proposed class must fall within one of three categories under Rule 23(b): (1) a case where separate actions would create risks of incompatible standards of conduct for the party opposing the class or adjudications that would be dispositive of nonparties' claims; (2) "an action seeking final injunctive or declaratory relief;" or (3) "a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011); *see also* Fed. R. Civ. P. 23(b).

"The burden is on the plaintiffs to demonstrate, by a preponderance of the evidence, that they have met each requirement of Rule 23." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015). At the class certification stage, a court generally may not resolve merits questions. *See id.* But "if there are material factual disputes that bear on the requirements for class certification, the court must 'receive evidence if only by affidavit and resolve the disputes before deciding whether to certify the class.'" *Id.* at 377 (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)).

### I. Count II

Count II of Plaintiffs' Amended Complaint alleges that Defendants interfered with Plaintiffs' rights under the Plan in violation of ERISA, 29 U.S.C. § 1140, by failing to provide Plaintiffs their Eligibility Memos. (Am. Compl. ¶¶ 62–77, Dkt. No. 62.) The Court previously declined to certify a class as to Count II because the proposed class definition included not only those with high severance pay, but also individuals who were denied the Eligibility Memo for

3

other reasons. (*See* 2019 Class Cert. Order at 15–16.) The Court found that Plaintiffs had failed to establish that their claims were typical of those of other proposed class members but suggested that the class definition could be modified to include only those individuals who qualified for a high number of weeks of severance pay. (*Id.*) Unlike with respect to Count I, however, the Court could not *sua sponte* modify the class definition to cure the problem because it was unclear whether the revised class would be sufficiently numerous to warrant class treatment. (*Id.* at 16.)

For their renewed request for class certification as to Count II, rather than modify the class definition as the Court suggested, Plaintiffs propose certification of a subclass that would include all Class members "who worked in the Technical Services Sector at the time of their layoff from Northrop Grumman Corporation" ("Count II Subclass"). (Renewed Mot. for Class Cert. of Counts II & III ("Renewed Mot.") ¶ 1, Dkt. No. 256.) In support, Plaintiffs note that "[s]ince the filing of [the] Amended Complaint in October 2014, discovery revealed that the decision about whether to withhold the [Eligibility] Memo and therefore not provide severance pay was 'based on groups,'" rather than on employees' anticipated weeks of severance pay. (Pls.' Mem. in Supp. of Renewed Mot. ("Pls.' Mem.") at 6, Dkt. No. 257 (quoting Suppl. Decl. of R. Joseph Barton, Ex. CC, Dep. of Michael Lee Penkert ("Penkert Dep.") at 49:5–7, Dkt. No. 183-1).)

    **A.**    **Class Definition**

In opposition to the proposed Count II Subclass, Defendants first argue that the subclass should be rejected as "premised on a newly crafted theory irreconcilable with the allegations they pleaded in their complaint." (Defs.' Resp. in Opp'n to Renewed Mot. ("Opp'n") at 6, Dkt. No. 261.) As authority, Defendants cite *Anderson v. United States Department of Housing and Urban Development*, 554 F.3d 525 (5th Cir. 2008), in which displaced residents of public housing developments in New Orleans sued local and federal housing authorities to enjoin a planned

demolition of those developments and compel their repair after damage caused by Hurricane Katrina. In *Anderson*, the Fifth Circuit found that the district court had abused its discretion in certifying a class of African-American public housing residents who had received vouchers or other housing assistance that did not provide for utility assistance. *Id.* at 527–28. The Fifth Circuit explained that the plaintiffs' complaint did not mention the voucher program and that "the claims pleaded in the complaint [we]re based on a totally different course of conduct," which was the demolition of the housing developments. *Id.* at 529. The court then went on to find that the district court's class definition "changed the nature of the lawsuit and rendered the complaint inadequate." *Id.*[2]

Contrary to Defendants' assertion, however, Plaintiffs' Amended Complaint provides adequate notice of the legal theory behind the proposed Count II Subclass. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023–24 (7th Cir. 2018) (affirming the district court's decision certifying a class based on implied warranty claims that the defendant argued went beyond the original torts and contracts claims in the complaint, where the defendant was not prejudiced by the class definition and had fair notice because all the relevant facts pertaining to the warranty claims had been spelled out in the complaint). Plaintiffs do not propose an entirely new theory or new cause of action. The crux of Count II remains the same: Defendants violated

---

[2] Defendants cite several other cases in which district courts denied class certification based on a finding that the proposed class definition went beyond the claims alleged in the complaint. *See Bell v. Bimbo Food Bakeries Distrib., Inc.*, No. 11 C 3343, 2013 WL 6253450, at *9 n.8 (N.D. Ill. Dec. 3, 2013) (finding that plaintiff's failure to timely plead refined pricing and promotions claims in a class action for breach of contract provided an alternative basis for denying class certification); *Simington v. Lease Fin. Grp., LLC*, Nos. 10 Civ. 6052(KBF), 11 Civ. 8125(KBF), 2012 WL 6681735, at *1 (S.D.N.Y. Dec. 14, 2012) (denying the motion for class certification, which was based on "a new theory—the leases' unconscionability—not on their breach of contract claim as pled"); *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011) (denying the motion for class certification in which the plaintiff requested injunctive relief under a section of the Labor Code of which her complaint made "no mention," noting that "[c]lass certification is not a time for asserting new legal theories that were not pleaded in the complaint.").

5

29 U.S.C. § 1140 by interfering with Plaintiffs' rights to their ERISA benefits as a cost-saving measure. Additionally, the Amended Complaint provides Defendants sufficient notice to expect a subclass of Technical Services sector employees. It alleges, for instance, that Carlson and DeLuca both worked for Technical Services (Am. Compl. ¶ 2), and that they knew "of at least two other individuals within the same program and division of Technical Services who were also denied severance for the same reason as [them]." (*Id.* ¶ 23.) The renewed motion for class certification is thus not "based on a totally different course of conduct" from the complaint, nor have Plaintiffs "changed the nature of the lawsuit." *Anderson*, 554 F.3d at 529. Accordingly, the Court will not deny Plaintiffs' renewed motion for class certification on the ground that they are attempting to add new claims not raised in their complaint.

### B. Commonality and Typicality

The Court now turns to the Rule 23(a) requirements for class certification. The Supreme Court has noted that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (alterations and citations omitted). Both requirements speak to the question of whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* In considering commonality, the Court looks to "whether the same conduct or practice by the same defendant gives rise to the same kind of claims from all of the class members." *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 440 (7th Cir. 2015) (internal quotation marks and citation omitted). "Commonality demands more than a showing that the class members 'have all suffered a violation of the same provision of law' at the hands of the same defendant." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (quoting *Wal-Mart Stores*, 564 U.S. at 350). "[A]

6

class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores*, 564 U.S. at 348–49 (internal quotation marks and citations omitted).

Plaintiffs argue that the proposed Count II Subclass satisfies the commonality and typicality requirements, pointing out that "[u]nlike other [s]ectors, the senior leadership team for Technical Services 'determined that they would make decisions for severance based upon subunits'" because that sector "'ha[d] very low margins.'" (Pls.' Mem. at 6 (quoting Penkert Dep. at 49:12–13, 54:12).) In response, Defendants draw a comparison to *Wal-Mart Stores*, where the Supreme Court reversed certification of a class of around 1.5 million female employees in a gender discrimination case, finding commonality among class members lacking when their damages resulted from "literally millions of employment decisions" made by low-level managers. *Id.* at 352. Defendants here argue that because each subunit of the Technical Services sector was subject to different decisions, Plaintiffs have failed to establish commonality among members of the Count II Subclass. But the evidence shows that "each sector's management SLT [Senior Leadership Team] would determine whether or not their sector was going to extend severance, and typically it was based on groups." (Penkert Dep. at 49:5–7.) Even if severance decisions varied across different subunits within the Technical Services sector, Plaintiffs have made a sufficient showing that "the same decision-making body" made such choices based on the uniform criteria of profit margins and affordability. *See Chicago Teachers Union, Local No. 1*, 797 F.3d at 440 (reversing denial of class certification for an employment discrimination claim brought by more than 200 schoolteachers, where the teachers had "demonstrated commonality by asserting that a uniform employment practice (the set of criteria used to evaluate the school) used by the same decision-making body to evaluate schools was discriminatory.")

7

The proposed Count II Subclass of individuals from different subunits within the Technical Services sector have common claims because those individuals were all subject to the same policy. Moreover, Plaintiffs Carlson and DeLuca were both employees of the Technical Services sector, so their claims are typical of the subclass. (Pls.' Mem., Ex. 1, Decl. of Ming Siegel ("Siegl Decl.") ¶ 3, Dkt. No. 257-2.) The commonality and typicality requirements are thus satisfied.

### C. Numerosity

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Out of the entire Class, the evidence shows that 591 individuals were employed in the Technical Services sector. (Decl. of R. Joseph Barton in Supp. of Mot. for Class Cert. ("Barton Decl."), Ex. F, Defs.' Am. Resp. to Pls.' Third Set of Interrogatories at 5, Dkt. No. 162-6.) Thus, the Count II Subclass would include significantly more than forty members. Accordingly, the Court finds that Plaintiffs have met the numerosity requirement.

### D. Adequacy of Class Representatives and Counsel

Rule 23(a)(4) requires the Court to determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). To serve as adequate class representatives, named plaintiffs

8

must be members of the class, and share the same interests and have suffered the same injury as their fellow class members. *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017).

Defendants do not contend that Carlson and DeLuca—both employees of Northrop's Technical Services division who were laid off and not paid their severance benefits—are inadequate representatives of the proposed Count II Subclass. And the Court has no reason to suspect that Carlson and DeLuca cannot adequately represent the interests of the subclass members. As to the adequacy of class counsel, the Court has already determined that co-lead counsel here, Michael Bartolic and R. Joseph Barton, meet the requirements for appointment of class counsel under Rule 23(g). (*See* 2019 Class Cert. Order at 13–14.) Accordingly, the Court finds that the named Plaintiffs and class counsel will adequately protect the subclass's interests, as required under Rule 23(a)(4).

### E. Rule 23(b) Requirements

As discussed above, once the requirements of Rule 23(a) have been satisfied, the Court must ensure that one of the three requirements under Rule 23(b) is also met to certify a class.

To qualify for class treatment under Rule 23(b)(2), the class must be seeking primarily injunctive relief. *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). If monetary damages are also requested, calculation of such damages must be capable of mechanical, rather than requiring individual, computation. *Id.* In Count II of the Amended Complaint, Plaintiffs ask the Court to declare Defendants liable for interfering with Plaintiffs' rights under the Plan pursuant to 29 U.S.C. § 1140, and reinstate Plaintiffs as Plan beneficiaries. (*See* Am. Compl. ¶ 77.) Plaintiffs also ask for attorneys' fees pursuant to 29 U.S.C. § 1132(g) and for any other relief to which they may be entitled, including the costs of bringing the suit. (*Id.*)

9

Defendants oppose certification under Rule 23(b)(2), arguing that differences among the subunits within the Technology Services sector would prevent uniform injunctive relief. *See In re Allstate Ins. Co.*, 400 F.3d at 507 (vacating district court's order certifying a class for ERISA claims under Rule 23(b)(2), noting that "critical difference[s]" regarding the circumstances that led the plaintiffs to quit would require individual hearings to determine whether all plaintiffs actually quit due to alleged harassment). But as discussed above, Plaintiffs here have made a showing that senior leadership in the Technology Services sector made severance eligibility decisions for all the sector's employees using a uniform policy, focused on affordability. Accordingly, if the Court concluded that such a policy violated ERISA, 29 U.S.C. § 1140, injunctive relief would be appropriate for everyone within the Count II Subclass. To the extent subclass members qualify for monetary damages based on denial of their Plan benefits, such damages would be easily computed by looking at each member's severance under the Plan. *See In re Allstate*, 400 F.3d at 507 (finding that no independent calculation would be required because "if the plaintiffs get the declaration they are seeking, the benefits to which the ERISA plan entitles them will simply be read off from the plan"). And any attorneys' fees and costs would presumably be requested on behalf of the subclass as a whole, not individual members. Thus, certification of the Count II Subclass is appropriate under Rule 23(b)(2).

As all the Rule 23 requirements for class certification are satisfied, the Court grants Plaintiffs renewed motion with respect to the Count II Subclass.

## II. Count III

In Count III of the Amended Complaint, Plaintiffs seek equitable reformation of Plan terms under ERISA, 29 U.S.C. § 1132(a)(3). They claim that Defendants breached their fiduciary duty to Plan participants by failing to communicate that, as of October 2011, Defendants started

10

excluding certain employees from eligibility for severance benefits by not sending them the Eligibility Memo. This Court previously denied class certification as to Count III because the proposed class included individuals who had worked at Northrop both before and after October 2011. (*See* 2019 Class Cert Order at 17.) The interests of those two groups might differ, since those who were hired earlier would argue that they should have been told enforcement of the Plan had changed. (*Id.*) By contrast, employees hired after October 2011 only ever saw accurate Plan language stating that the Eligibility Memo was required for severance. Now, Plaintiffs propose a subclass for purposes of Count III consisting only of those Class members Northrop hired prior to October 2011 ("Count III Subclass").

### A. Commonality and Typicality

Defendants argue that there is no commonality among the members of the proposed Count III Subclass because there is no evidence Defendants ever communicated that the Eligibility Memo was purely administrative. Additionally, Defendants argue that Carlson's and DeLuca's claims are not typical of the Count III Subclass. Both Carlson's and DeLuca's deposition testimonies indicate that they believed receipt of the Eligibility Memo was not required for benefits due to their long-term experience at Northrop, both having worked there more than thirty years and having known other employees who had been laid off and received severance. (*See* Opp'n, Ex. C, Dep. of Peter DeLuca at 51:13–52:20, Dkt. No. 261-4 (answering "no" in response to the question of whether other employees who did not have DeLuca's experience were in the same position as him).)

As Defendants point out, for claims concerning misrepresentations, courts in this Circuit generally consider those claims common to the entire class only if class members all received substantially similar communications. *Compare Beaton*, 907 F.3d at 1026 (noting that

11

commonality was met because all class members were "exposed to the same message and promises," in affirming the lower court's class certification decision in a contracts and torts case against a seller for false advertising), *with In re Sears Retiree Grp. Life Ins. Litig.*, 198 F.R.D. 487, 491 (N.D. Ill. 2000) (holding that there was no commonality among class members in ERISA case for breach of fiduciary duties where the proposed class members "did not receive a uniform set of communications"). But here, Plaintiffs' claim for breach of fiduciary duty is not rooted simply in Defendants' alleged misrepresentations, but primarily in their failure to inform subclass members of a material fact—that they would strictly enforce a Plan provision that was previously not enforced. In other words, Plaintiffs argue that Defendants committed an omission, rather than a misrepresentation. While Defendants attempt to draw a distinction among members of the proposed Count III Subclass by pointing to Carlson and DeLuca's long-term experience at Northrop, their argument "places too much emphasis on plaintiffs' conduct when [the] appropriate focus in a breach of fiduciary [duty] claim is the conduct of the defendants, not the plaintiffs." *Nauman v. Abbott Labs.*, No. 04 C 7199, 2007 WL 1052478, at *3 (N.D. Ill. Apr. 3, 2007) (internal quotation marks and citations omitted) (holding that commonality was met among class members in an ERISA case that alleged the defendants made material omissions despite having a duty to disclose); *see also Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 879 (7th Cir. 2013) (confirming that, in an ERISA case for breach of fiduciary duty, the plaintiffs need only show that they suffered actual harm as a result of the breach, not that they detrimentally relied on the fiduciary's misinformation or omission).

Plaintiffs have shown that before October 2011, they were entitled—at least in practice—to severance under their Plan regardless of receipt of the Eligibility Memo, but that after that point, they lost that entitlement. (*See* Penkert Dep. at 201:16–23; Barton Decl., Ex. K,

NCG14059, Dkt. No. 162-11.). Thus, despite Count III Subclass members' varied knowledge and experience, their claims raise the common question of whether Defendants had a fiduciary duty to notify Plan participants that as of October 2011, they were essentially losing a right under the Plan. Accordingly, the Court finds that the commonality requirement is met as to the proposed Count III Subclass. And as both Carlson and DeLuca worked at Northrop prior to October 2011, typicality is met, as well.

### B. Numerosity

Again, typically a class or subclass of forty individuals is sufficient to meet the numerosity requirement under Rule 23(a)(1). *Mulvania*, 850 F.3d at 859. The Count III Subclass would include 510 Class members who worked at Northrop prior to October 2011. (Siegl Decl. ¶ 2.) Thus, Court finds that the Class III Subclass meets the numerosity requirement under Rule 23(a)(1).

### C. Adequacy of Representatives and Counsel

Named plaintiffs may be considered adequate representatives if they are part of the class, have the same interest as the class, and suffer the same injury as the class. *Conrad*, 869 F.3d at 539. As discussed above, Carlson and DeLuca are both members of the proposed Count III Subclass. Additionally, they have the same interest in reforming the Plan terms and have suffered the same injury in that they allegedly lost severance benefits to which they were previously entitled. Defendants do not argue that Carlson and DeLuca are inadequate representatives of the subclass. And as the Court previously determined, class counsel are adequate representatives. Thus, the adequacy of representatives requirement under Rule 23(a)(4) is met for the Count III Subclass.

### D. Rule 23(b) Requirements

The Court finds that certification under Rule 23(b)(2) is appropriate for Count III of Plaintiffs' Amended Complaint. Count III asks that the Court equitably reform the Plan to mirror the terms participants reasonably believed were in place and remove Defendants as Plan fiduciaries. (Am. Compl. ¶ 84). As with Count II, Plaintiffs request primarily injunctive relief—revision of the Plan language—which would apply to all members of the Count III Subclass.

## CONCLUSION

For the reasons stated above, Plaintiffs' renewed motion for class certification is granted. (Dkt. No. 256.) Count II and Count III may proceed with Plaintiffs' proposed subclass definitions and Plaintiffs Carlson and DeLuca may proceed as subclass representatives.

ENTERED:

Dated: November 23, 2020

Andrea R. Wood
United States District Judge