IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN K. CARLSON, et al., individually and on behalf of a class of similarly situated individuals, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) No. 13-cv-02635 |
| v. | )<br>) Judge Andrea R. Wood |
| NORTHROP GRUMMAN SEVERANCE PLAN, et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have brought this class action against Defendants Northrop Grumman Corporation ("Northrop Grumman") and the Northrop Grumman Severance Plan ("the Plan"), alleging that they were wrongly denied severance benefits to which they were entitled in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 277, 281.) For the reasons stated below, Defendants' motion is granted with respect to all three counts of the First Amended Complaint ("FAC"). Plaintiffs' motion is denied on the merits with respect to their request for summary judgment as to Count I and denied as moot with respect to the request for summary judgment on Defendants' affirmative defenses.

## BACKGROUND

The following facts are drawn from the parties' submissions under Local Rule 56.1.[1]

---

[1] Local Rule 56.1(a) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014) (quoting N.D.

Northrop Grumman is a global aerospace and defense technology company. (Pls.' Resp. to Defs.' Statement of Material Facts ("PRDSOMF") ¶ 1, Dkt. No 286.) Between 2010 and 2014, Northrop Grumman employed 85,000 employees across four sectors: Aerospace Systems, Electronic Systems, Technical Services, and Information Systems. (*Id.* ¶¶ 1–2.) Each sector was divided into multiple divisions, each of which oversaw numerous different programs. (*Id.* ¶ 2.) Each program typically serviced one or more contracts, most often with the federal government, pursuant to which Northrop Grumman performed tasks such as designing and maintaining weapons systems. (*Id.*)

Plaintiffs Alan Carlson and Peter DeLuca started working at Northrop Grumman in 1976 and 1974, respectively. (*Id.* ¶ 27.) Both worked in the Electronic Systems sector until 2007, when the company transferred their division to the newly formed Technical Services sector. (*Id.*) Plaintiffs claim that when Northrop Grumman transferred their division to Technical Services, it promised employees that they would retain the same benefits as they had in Electronic Systems. (Defs.' Resp. to Pls.' Statement of Material Facts ("DRPSOMF") ¶ 13, Dkt. No. 289 (citing Pls.' Statement of Material Facts, Ex. F, Dep. of Peter DeLuca ("DeLuca Dep.") 8:12–9:18, Dkt. No. 283-39).) Defendants, however, dispute that anyone at Northrop Grumman assured Plaintiffs their benefits would remain the same. (*Id.*)[2]

---

Ill. L.R. 56.1(a)(3)). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (internal citation and quotation marks omitted); *see also* N.D. Ill. L.R. 56.1(b)(3)(A). Finally, Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement...of any additional facts that require the denial of summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (internal citation and quotation marks omitted).

[2] Defendants contend that DeLuca's deposition testimony on this point is self-serving and inconsistent, as elsewhere, he stated he did not recall anyone at Northrop Grumman telling him that his benefits would remain the same after his transfer. (*See* Decl. of Samuel P. Myler, Ex. 1, DeLuca Dep. 12:2–14:4, 33:14–37:12, 51:13–53:15, Dkt. No. 290-1.) The Court has reviewed the other relevant sections of DeLuca's deposition testimony and does not see any inconsistency. DeLuca testified that he did not know which

The new Technical Services sector struggled financially, "run[ning] on a very low margin" from its creation. (*Id.* ¶ 41.) Northrop Grumman laid off Carlson and DeLuca in July 2012, effective August 3, 2012 and July 31, 2012 respectively. (PRDSOMF ¶ 28.) At that time, the Plan provided selected employees with severance benefits after layoffs. (*Id.* ¶ 3.) After their layoffs, Carlson and DeLuca both submitted claims for severance benefits through the Plan's administrative claims process. (*Id.* ¶ 30.) However, one of Northrop Grumman's directors, Margaret Collins, denied their claims, explaining that they were not entitled to benefits because they had not received a signed memorandum from a Human Resources Vice President ("HR Memo") designating them as eligible. (*Id.* ¶ 31.) Collins later testified in connection with this lawsuit that the Human Resources Director of Plaintiffs' division, Demile Gilmore (*see* DRPSOMF ¶ 47), sent her an email explaining that Plaintiffs had not received HR Memos because their sector was operating under a new contract with lower funding than the prior, expiring contract. (*Id.* ¶ 71.) As a result, "there was no money for severance." (*Id.*) Plaintiffs appealed their claims for severance benefits to the Severance Plan Review Committee ("Committee"). (PRDSOMF ¶ 32.) The Committee voted unanimously on January 31, 2013 to uphold the denial of Plaintiffs' claims. (*Id.* ¶ 34.)

Effective January 1, 2012, just months before Plaintiffs' layoffs, Northrop Grumman had adopted a new "wrap plan" document that incorporated its component benefits plans. (DRPSOMF ¶ 7.) The 2012 Summary Plan Description summarized the Plan terms and also served as part of the official Plan document. (*Id.* ¶ 8.) The terms were not materially different from the prior version dated 2010. (*Id.*) Defendants contend that under both the 2010 and 2012 Plan documents, receipt of the HR Memo was one of the conditions and eligibility requirements of coverage.

---

Northrop Grumman employee told him that his benefits would remain the same, but he insisted that he heard the assurance during a presentation. (*Id.* at 13:8–14:4.)

3

(PRDSOMF ¶ 6.) Plaintiffs do not dispute that receipt of the HR Memo was a condition for benefits but dispute that receipt of the HR Memo was an eligibility criterion. (*Id.*)

Under the section titled "Eligible Employees," the 2012 Plan document reads, in relevant part:

> You are an eligible employee if you work in the United States, you are regularly scheduled to work at least 20 hours per week and you have been notified in writing by your management that you are covered by this Plan.

(DRPSOMF ¶ 8.) Plaintiffs contend that before October 2011, management determined each employee's eligibility for severance benefits based entirely on their preassigned three-letter benefit program code in the Human Resources database. (*Id.* ¶ 17.) Northrop Grumman denies that was the case, claiming that the benefit program code only indicated employees' eligibility for continued health coverage. (*Id.*)

Later in the same paragraph of the "Eligible Employees" section, the 2012 Plan document reads:

> The fact that you received this document does not necessarily mean that you are eligible; you must also have received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to you individually by name.

(*Id.* ¶ 8.) Further, the "Conditions for Receiving Benefits" section of the 2012 Plan document lists as the first condition, "[y]ou must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (*Id.*) Defendants claim that only employees who received the HR Memo got severance benefits; Plaintiffs dispute that was the case. (PRDSOMF ¶ 10.)

Additionally, Plaintiffs acknowledge that they never received cash severance benefits but assert that they did receive certain non-cash benefits, including continued medical, dental, and

4

vision coverage. (PRDSOMF ¶ 10; DRPSOMF ¶ 69.) Defendants maintain that Plaintiffs were never actually entitled to those non-cash benefits and only received the benefits through an error related to the benefit program codes. (DRPSOMF ¶ 69.) According to Defendants, "[t]his error was fixed sometime in approximately 2014." (*Id.*)

Plaintiffs contend that prior to October 2011, everyone in the company who otherwise met the Plan's eligibility criteria received the HR Memo when they were laid off. (*Id.* ¶ 15.) Yet beginning in October 2011, Northrop Grumman started withholding HR Memos from certain individuals in the Technical Services sector (like Carlson and DeLuca) who were otherwise eligible for severance benefits. (*Id.*) According to Plaintiffs, Northrop Grumman continued to pay severance to otherwise eligible employees in its three other sectors (Aerospace, Electronics, and Information Systems) even after that time. (*Id.*) Defendants do not directly dispute these assertions, but they do take issue with Plaintiffs' phrasing.[3] (*Id.*) Defendants also point out that, historically, Technical Services employees rarely received severance benefits. (PRDSOMF ¶ 13.) Plaintiffs claim that is because most Technical Services employees were explicitly excluded from eligibility as low-cost contract employees. (*Id.*)

Plaintiffs' FAC contains three counts. Count I seeks benefits due and clarification of rights under ERISA, 29 U.S.C. § 1132(a)(1)(B). Count II alleges that Northrop Grumman violated § 510 of ERISA, 29 U.S.C. § 1140, by unlawfully interfering with Plaintiffs' rights to their benefits. And Count III seeks equitable reformation of the terms of the Plan document under ERISA, 29 U.S.C. § 1132(a)(3), to redress Northrop Grumman's alleged breach of its fiduciary duties to Plan participants.

---

[3] Plaintiffs claim that "[p]rior to October 2011, everybody in the company who met the eligibility criteria in the Severance Plan got a memo of eligibility when laid off." (DRPSOMF ¶ 15.) Defendants respond that Plaintiffs have mischaracterized the policy because receipt of the HR Memo was one of the eligibility criteria for severance. (*Id.*)

5

The Court previously granted Defendants' motion for partial summary judgment regarding the standard of review, finding that the deferential, arbitrary and capricious standard applies to this Court's review of the Committee's denial of Plaintiffs' benefits claims. (*See* Dkt. No. 230.) The Court also has certified a plaintiff class with respect to Count I under Federal Rule of Civil Procedure 23(b)(2). (*See* Oct. 11, 2019 Mem. Op. & Order ("Class Cert. Op."), Dkt. No. 248.) That class is defined as:

> All persons who worked for Northrop Grumman in the United States, were regularly scheduled to work over 20 hours per week, were laid off from Northrop Grumman from January 1, 2012 and after, and who did not receive the "Cash Portion" of the severance benefits (a.k.a. the Salary Continuation Benefits) under the terms of the Plan (regardless of whether they received Medical, Dental or Vision Benefits under the Plan), because they did not receive written notification from management or from a Vice President of Human Resources (or his/her designee) notifying them of their eligibility for severance benefits under the Plan, as well as the beneficiaries of such persons.

(*Id.* at 8.) The Court subsequently certified subclasses for Counts II and III, also under Rule 23(b)(2). (*See* Nov. 23, 2020 Mem. Op. & Order ("Second Class Cert. Op."), Dkt. No. 301.) The Count II subclass consists of class members who worked in Technical Services when Northrop Grumman laid them off. (*Id.* at 4–10.) The Count III subclass consists of class members that Northrop Grumman hired prior to October 2011, which is when Plaintiffs claim Northrop Grumman changed its enforcement of Plan requirements. (*Id.* at 10–14.)

Defendants now seek summary judgment as to all three claims. Plaintiffs, meanwhile, seek summary judgment with respect to Count I, as well as the eight affirmative defenses asserted in Northrop Grumman's answer. (*See* Defs.' Answer and Defenses ("Answer") at 10–11, Dkt. No. 129.)

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, "a party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.; see also Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1015 (7th Cir. 2016). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a summary judgment motion, the Court construes all facts in the light most favorable to the nonmoving party. *Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016). Furthermore, when parties have filed cross-motions for summary judgment, the Court must consider the motions "one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Id.* at 847.

**I.    Count I—Benefits Due and Clarification**

In Count I, Plaintiffs claim that Defendants wrongly denied them severance benefits and seek to recover those benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

The Court looks to the language of the Plan document to ascertain whether Defendants' determination that Plaintiffs were ineligible for severance was arbitrary and capricious. *Reddinger v. SENA Severance Pay Plan*, 707 F.3d 702, 707 (7th Cir. 2013); *see also Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109 (7th Cir. 1998) ("It is well established that it is the language of an ERISA plan that controls."). The Court must uphold a plan administrator's denial of benefits if it "is based on a reasonable interpretation of the relevant plan documents." *Cuddington v. N. Ind.*

7

*Pub. Serv. Co.*, 33 F.3d 813, 816–17 (7th Cir. 1994) (internal quotation marks omitted). If the plan administrator can provide a rational connection between the issue at hand, the evidence, the plan language, and its conclusion, the administrator's decision is final. *Id.* at 817. But the deferential standard does not mean courts should simply rubber stamp administrators' faulty decisions. *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996). To the contrary, an administrator's interpretation will be found to be arbitrary and capricious where it controverts the plain language of the plan. *Id.* In reviewing the language of an ERISA plan, "federal common law principles of contract interpretation govern." *Id*. "These principles require [courts] to interpret terms of ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* at 540–41. Where the language is unambiguous, extrinsic evidence should not be considered. *Id.* at 541.

In this case, the Court's analysis begins and ends with the language of the 2012 Plan document. The section governing eligibility explains that to be eligible for benefits, an employee must have "received a cover memo, signed by a Vice President of Human Resources (or his/her designee), with this document addressed to" the employee by name. (DRPSOMF ¶ 8.) The Plan document further states that, as a condition to coverage, "[y]ou must be designated as eligible for this plan by a Vice President of Human Resources (or his/her designee). You are designated if you received a memo addressed to you, notifying you of your eligibility for this benefit." (*Id.*) The Plan administrator denied Plaintiffs' claims for severance because they had not received the HR Memo and therefore had not been designated as eligible. (PRDSOMF ¶ 31.) The Committee affirmed the denials. (*Id.* ¶ 34.) The Court finds those decisions consistent with the plain language of the Plan document.

Plaintiffs nonetheless urge the Court to embrace a different interpretation of the Plan document. They argue that receipt of the HR Memo is not actually one of the eligibility criteria but instead constitutes the purely administrative step of notifying employees of their eligibility. That being the case, Plaintiffs argue, Northrop Grumman's determinations were clearly wrong because Plaintiffs met all other eligibility criteria. But Plaintiffs' proposed interpretation contradicts the basic, unambiguous reading of the Plan document's terms. An ordinary reader of average intelligence, *see Swaback*, 103 F.3d at 540–41, would understand the language to mean that employees do not qualify for severance benefits unless they have received the HR Memo.

Plaintiffs offer several other reasons why the Court should find Northrop Grumman's interpretation of the Plan documents arbitrary and capricious—none of which are persuasive. For instance, they point to several cases in which the Seventh Circuit has found plan administrators' determinations arbitrary and capricious because the administrators added new requirements for participation not included in the plan language. *See Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004) (finding the administrator's decision arbitrary and capricious where it added three qualifications for benefits that were never mentioned in the plan documentation); *Swaback*, 103 F.3d at 541–42 (finding that the defendant deviated from the clear language of the plan documents by adding a requirement that an employee be either on active payroll or medically fit to receive benefits). Plaintiffs' reliance on such cases is unavailing because, here, the Committee did not add any new requirements; instead, the language of the Plan document expressly conditions severance benefits on receipt of the HR Memo.

Plaintiffs also argue that Northrop Grumman's interpretation of the Plan documents was arbitrary and capricious under basic contract law principles. First, they contend that Northrop Grumman's interpretation renders the management decision referenced under the eligibility

9

criteria superfluous. *See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) ("[T]he plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement. All language of a plan should be given effect without rendering any term superfluous." (citation omitted)). In *Schultz*, the Seventh Circuit rejected the plaintiffs' argument that the administrator's interpretation was inconsistent with the plan as a whole, finding that the relevant language was unambiguous. *Id.* Similarly, in this case, while some of the Plan document's criteria may render others superfluous, receipt of the HR Memo is unambiguously stated as a requirement for benefits. Any argument based on contract construction and interpretation of the Plan document as a whole is unavailing in the face of the unambiguous language requiring the HR Memo. Plaintiffs' argument concerning the parties' prior course of dealing fails for the same reason. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 818–19 (7th Cir. 2010) (looking to the parties' course of dealing to interpret an ambiguous plan term); *see also Swaback*, 103 F.3d at 541 (explaining in an ERISA case that under federal common law contract interpretation principles, "[e]xtrinsic evidence should not be used where the contract is unambiguous" (quotation marks omitted)).

Plaintiffs next contend that Northrop Grumman's interpretation impermissibly creates different criteria with respect to cash severance benefits and non-cash severance benefits. Plaintiffs point to *Reich v. Ladish Co.*, 306 F.3d 519, 525 (7th Cir. 2002), in which the Seventh Circuit explains, "[o]nce a term has been defined by the Plan and interpreted by the administrator to have a particular meaning, the administrator may not change the meaning when the term is used in a different part of the Plan." The gist of Plaintiffs' argument is that because Northrop Grumman reached different determinations as to cash severance benefits and non-cash severance benefits—

even though the same eligibility criteria applied to both—its decision to deny cash benefits was arbitrary and capricious.

But even if Northrop Grumman gave Plaintiffs certain severance benefits in contravention of the Plan's terms, it is not bound by that decision with respect to other benefits. The Seventh Circuit rejected an argument similar to Plaintiffs' argument here in *McNab v. General Motors Corp.*, 162 F.3d 959 (7th Cir. 1998). There, employees claimed that because their employer had already given benefits to some employees who were ineligible under the plan terms, they should have received benefits in contravention of the plan terms too. *Id.* at 961. But the Seventh Circuit rejected the contention that the "plaintiffs, whose applications were correctly denied under the program's stated criteria, should be entitled to relief because [the defendant] was unduly generous with other employees." *Id.*; *cf. Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007) (finding that employees could not estop their employer from refusing to pay out benefits just because it had already given them some benefits to which they were not entitled). Similarly, the fact that Plaintiffs here received some non-cash severance benefits does not change the plain language of the Plan document, which conditions severance on receipt of the HR Memo.

Finally, Plaintiffs contend that Northrop Grumman's interpretation of the Plan documents is arbitrary and capricious because it leads to an absurd result—namely, that it permits the party responsible for the non-occurrence of a necessary condition, *i.e.*, receipt of the HR Memo, to use that non-occurrence to avoid performance under the Plan terms. Plaintiffs cite *Swaback*, 103 F.3d at 542–43, in which the Seventh Circuit held that employees could maintain an action for benefits where their employer misrepresented the benefits plan orally and in writing to deter employees from electing to receive benefits. In *Swaback*, the Seventh Circuit observed that "a party who prevents the occurrence of a condition precedent may not stand on that condition's non-

11

occurrence to refuse to perform his part of the contract." *Id.* at 542. But unlike *Swaback*, in this case there is no evidence that Northrop Grumman misrepresented the truth to Plan participants to prevent a condition from occurring. Northrop Grumman merely set terms for eligibility, which included designation of eligibility by means of the HR Memo. Benefits governed by ERISA often rely on events within the employer's control, such as the beneficiary's continued employment. Indeed, employers may have the power to abolish their plans entirely. *See Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir. 1995). Even here, the language of the Plan documents clearly restricts benefits to employees who are scheduled to work at least 20 hours per week, a matter over which Northrop Grumman presumably has some manner of control.

For these reasons, the Court concludes that based on the plain language of the Plan document, Defendants are entitled to summary judgment on Count I.

## II. Count II—Interference with the Attainment of Rights

In Count II, Plaintiffs claim that Northrop Grumman discriminated against them by not providing them with HR Memos in order to interfere with their attainment of severance benefits, in violation of § 510 of ERISA, 29 U.S.C. § 1140.[4]

Section 510 "makes it unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant in an employee benefits plan for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014) (internal quotation marks and alterations omitted). To succeed on a § 510 claim, a plaintiff must demonstrate that the defendant engaged in prohibited conduct with specific intent to interfere with the plaintiff's attainment of benefits. *Id.*; *see also Nauman v. Abbott Lab'ys*, 669

---

[4] In the First Amended Complaint, Plaintiffs state that they are pleading this count in the alternative to, not in addition to, their claim for benefits in Count I. (FAC ¶ 52.)

F.3d 854, 857 (7th Cir. 2012) (finding that under § 510, "employers must have been motivated by a desire to frustrate attainment or enjoyment of benefit rights" (internal quotation marks omitted)).[5] Here, Plaintiffs contend that Northrop Grumman discriminated against employees of the Technical Services sector, which had lower financial margins than other groups, by withholding their HR Memos.

In the context of § 510, courts construe the term "discriminate" broadly to "encompass[] more than the typical punishment that an employer might impose against an employee." *Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*, 18 C 05162, 2019 WL 1426286, at *3 (N.D. Ill. Mar. 29, 2019). But there are still limits to the acts that can constitute prohibited discrimination under the statute. The Seventh Circuit delineated one such limit in *Ameritech Benefit Plan Committee v. Communication Workers of America*, 220 F.3d 814 (7th Cir. 2000). In *Ameritech Benefit Plan Committee*, the Seventh Circuit explained that, "[i]f the plan itself provides for discriminatory practices, such that [the plaintiffs] do not qualify for benefits under its terms, they cannot prevail on [a § 510] ERISA claim." *Id.* at 824. In that case, the plaintiffs had taken pregnancy-related leave that their pension plan treated differently for benefits purposes than other kinds of short-term disability leave. *Id.* at 817–18. The plaintiffs brought a § 510 claim, as well as claims under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act, based on sex

---

[5] The parties disagree as to whether the arbitrary and capricious standard applies to the Court's review of Northrop Grumman's actions under § 510. This Court is persuaded by the First Circuit's reasoning that review under § 510 considers "an employer's conduct, rather than an administrator's decision, and as such, there is no administrative determination that commands deference." *Niebauer v. Crane & Co., Inc.*, 783 F.3d 914, 930 (1st Cir. 2015). In arguing that the arbitrary and capricious standard applies to Count II, Northrop Grumman cites *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649 (7th Cir. 1996). It contends that the Seventh Circuit in *Lindemann* "recognized that deferring to the plan administrator is appropriate where an ERISA § 510 claim turns on an interpretations of plan terms." (Defs.' Reply in Supp. of Mot. for Summ. J. at 8 n.6, Dkt. No. 292.) But *Lindemann* considered the deference issue specifically in the context of an administrative exhaustion requirement, noting that one function served by exhaustion is to give the reviewing court the benefit of the plan administrator's interpretation. 79 F.3d at 650. Nothing in that case dictates that the arbitrary and capricious standard should apply to a federal court's review of an employer's actions under § 510. In the end, however, the standard of review makes no difference to the Court's decision.

discrimination. *Id.* The Seventh Circuit affirmed a grant of summary judgment for the defendant on the § 510 claim, finding that the allegedly discriminatory policy was clearly included in the plan's language, and the women therefore failed to demonstrate that they were eligible or may have become so. *Id.* at 824; *see also* 29 U.S.C. § 1140 (outlawing acts intended to interfere with rights to which plan beneficiaries may become entitled).

Similarly, the plain language of Plan document here granted Northrop Grumman discretion to designate which employees received benefits by providing them HR memos. In that sense, some ability to "discriminate" was built into the Plan, as Norhtrop Grumman could choose which employees would receive the contested severance benefits and which would not. But when a benefits plan expressly affords an employer such discretion over eligibility, it is not prohibited discrimination for the employer to exercise that discretion. Moreover, this is not a case where employees were deemed eligible for plan benefits but the employer intervened in some manner to prevent those employees from attaining the benefits. *See Meredith v. Navistar Int'l Corp.*, 935 F.2d 124, 127 (7th Cir. 1991) ("The primary focus of § 510 is to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights."). Nor is this a situation where Northrop Grumman is alleged to have made its severance benefits eligibility determinations based on animus toward the affected group of employees—to the contrary, even the evidence to which Plaintiffs point indicates that the decision to treat employees in the Technical Services sector differently than employees of other sectors was based on financial considerations. (*See, e.g.,* DRPSOMF ¶ 41.)

In short, having now arrived at the summary judgment stage of the litigation, Plaintiffs have failed to adduce evidence that could support a finding that Northrop Grumman unlawfully discriminated against employees in the Technical Services sector in order to interfere with their

14

attainment of severance benefits, in violation of § 510. Northrop Grumman is therefore entitled to summary judgment on Count II.

### III. Count III—Breach of Fiduciary Duty and Equitable Reformation

Plaintiffs claim in Count III that Northrop Grumman breached its fiduciary duty by failing to inform them that in October 2011 it was going to adopt what Plaintiffs characterize as a new policy under which the HR Memo would no longer serve a mere administrative function but instead would constitute the discretionary selection of employees entitled to severance benefits. "In order to prevail on a claim for breach of fiduciary duty under ERISA, a plaintiff must prove (1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiffs." *Kannapien*, 507 F.3d at 639. The fiduciary's duties include the duty to "communicate material facts affecting the interests of beneficiaries," even when beneficiaries do not directly ask for such information. *Solis v. Current Dev. Corp.*, 557 F.3d 772, 777–78 (7th Cir. 2009) (internal quotation marks omitted). Northrop Grumman contends that it is entitled to summary judgment on Count III because Plaintiffs have not presented proof of elements two or three: that Northrop Grumman breached its fiduciary duty or that such a breach caused harm to Plaintiffs.

Northrop Grumman first argues that Plaintiffs have not demonstrated a genuine dispute of material fact concerning whether it actually changed its enforcement of Plan terms. The Court disagrees. Plaintiffs have presented deposition testimony supporting that before October 2011, all Northrop Grumman employees who faced layoffs and were otherwise eligible for severance benefits received HR Memos and, as a result, severance benefits. (*See* DRSOMF ¶ 15.) Similarly, Plaintiffs also have pointed to deposition testimony tending to show that after October 2011, that was no longer the case. (*Id.*) That is sufficient to create a genuine dispute of material fact.

15

Northrop Grumman next contends that even if it did change its policy with respect to the HR Memo, it did not breach a fiduciary duty by failing to communicate that change to participants. Northrop Grumman points to several cases in which the Seventh Circuit has rejected ERISA breach of fiduciary duty claims based on the employer's failure to correct oral misrepresentations or to tell beneficiaries about policy changes. *See Vallone v. CAN Fin. Corp.*, 375 F.3d 623, 641 (7th Cir. 2004) (finding that the defendant had not breached its fiduciary duty of loyalty "by failing to provide an explicit warning when the necessary information was already in the [plaintiffs'] hands"); *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 682 (7th Cir. 2002) (affirming summary judgment in the employer's favor, finding that its "failure expressly to inform [the plaintiff] that enrollment was a requirement of coverage was not a breach of fiduciary duty because the [health] Plan made this abundantly clear"); *Frahm v. Equitable Life Assurance Soc'y of the U.S.*, 137 F.3d 955, 961 (7th Cir. 1998) (finding no breach of fiduciary duty by an employer that changed the plaintiffs' health plans after telling them it would not do so, noting that the plan documents clearly stated policies were subject to change). The common element in these cases is that the plaintiffs already had plan documents that notified them of the policy that they later challenged. Similarly, in this case, the 2012 Plan document clearly informed Plaintiffs that their severance benefits could be denied if they did not receive HR Memos.

In opposing summary judgment as to Count III, Plaintiffs cite cases in which employers' material misrepresentations or omissions were found to constitute breaches of fiduciary duties. But none of those cases involve plan language that already contained the relevant information, as is the case here. *See Killian v. Concert Health Plan*, 742 F.3d 651, 668–70 (7th Cir. 2013) (finding a breach of the fiduciary duty where the defendant's agents misled the plaintiff as to whether his wife's hospital was in-network under her health insurance plan because the policy

16

language clearly directed participants to call agents for that information); *Solis*, 557 F.3d at 777–78 (affirming the finding that a trustee violated his fiduciary duties under ERISA when he offered plan beneficiaries a buyout of either cash or a mix of cash and property but withheld information concerning the true value of his company's property); *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991–92 (7th Cir. 1993) (affirming the finding of breach where the defendants urged the plaintiff's husband to designate his life insurance company as a beneficiary at his death but failed to tell him that the did not have to sign the form to obtain benefits).

This Court has already determined that the Plan language clearly conditioned eligibility for severance benefits on receipt of the HR Memo. Thus, Northrop Grumman did not withhold any critical information from Plaintiffs—the term it started to strictly enforce in October 2011 was always included in the Plan document. Employees who were concerned about their own eligibility for severance could have read the Plan document, seen the requirement, and inquired about the HR Memo at any time.

Because Northrop Grumman did not breach a fiduciary duty to Plaintiffs, the Court need not turn to the issue of whether equitable reformation is appropriate to address such a breach under 29 U.S.C. § 1132(a)(3). Northrop Grumman's motion for summary judgment is granted with respect to Count III as well.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Dkt. No. 277) is granted and Plaintiffs' motion for summary judgment (Dkt. Nos. 281) is denied. The Clerk is directed to enter judgment in favor of Defendants as to Counts I, II, and III. As Defendants have been granted summary judgment in their favors with respect to all counts, the Court need not

consider the merits of their affirmative defenses. Accordingly, Plaintiffs' motion for summary judgment on those defenses is denied as moot.

Dated: March 31, 2022

ENTERED:

_____
Andrea R. Wood
United States District Judge

18